**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **GREGORY GODFREY and JEFFREY SHELDON, on behalf of the MCBRIDE & SON EMPLOYEE STOCK OWNERSHIP PLAN, and on behalf of a class of all other persons similarly situated,** | |
| **Plaintiffs,** | **Case No. _____** |
| **v.** | |
| **GREATBANC TRUST COMPANY, McBRIDE & SON MANAGEMENT COMPANY, LLC, JOHN F. EILERMANN, JR., MICHAEL D. ARRI, ANDREA TEMPLETON, JOHN DOES 1-10, and McBRIDE & SON CAPITAL INC.,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiffs Gregory Godfrey and Jeffrey Sheldon, by their undersigned attorneys, on behalf of the McBride & Son Employee Stock Ownership Plan and similarly situated participants in the Plan, and their beneficiaries, allege upon personal knowledge, the investigation of their counsel, and upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.     Plaintiffs Gregory Godfrey and Jeffrey Sheldon ("Plaintiffs") bring this suit against (1) GreatBanc Trust Company ("GreatBanc"), the trustee for the McBride & Son Employee Stock Ownership Plan (the "Plan"), (2) McBride & Son Management Company, LLC, ("MS

Management Co."), the plan sponsor, named fiduciary, and plan administrator of the Plan, (3) John F. Eilermann, Jr. ("Eilermann"), a fiduciary to the Plan and Chief Executive Officer of MS Management Co., as well as the McBride & Son conglomerate of related companies that together build, finance, and sell homes in Illinois and Missouri, (4) Michael D. Arri ("Arri"), a fiduciary to the Plan and former Chief Financial Officer of the McBride & Son conglomerate of related companies, (5) Andrea Templeton ("Templeton"), a fiduciary to the Plan, acting plan administrator of the Plan, and Assistant Treasurer to the McBride & Son conglomerate of related companies, (6) John Does 1 through 10, who upon information and belief were delegated and functional fiduciaries to the Plan for the transactions at issue described below, and (7) McBride & Son Capital, Inc. ("MS Capital"), a party in interest to the Plan at the time of the transactions at issue described below, (collectively the "Defendants"), when Defendants caused the Plan to sell shares of MS Capital stock (held by the Plan for the benefit of Plan participants and beneficiaries) to MS Capital at a valuation below fair market value, resulting in losses to the Plan. Upon information and belief, Defendants did so to benefit some or all of the Defendants and other McBride & Son insiders at the expense of the Plan and its participants and beneficiaries.

2. Plaintiffs are participants in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who held vested shares of MS Capital in their accounts in the Plan from before 2015 until the shares were sold by the fiduciary Defendants on November 30, 2017.

3. This action is brought under Sections 404, 405, 406, 409, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1105, 1106, 1109, and 1132(a), for losses suffered by the Plan, and other relief, caused by the Defendants when they caused the Plan to sell shares of MS Capital at below FMV to the detriment of the Plan's participants and beneficiaries.

2

4.      As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA's fiduciary duty and prohibited transaction rules.

## JURISDICTION AND VENUE

5.      This action arises under Title I of ERISA, 29 U.S.C. §§ 1001–1191c, and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to require the Defendants to make good to the Plan losses resulting from their violations of ERISA, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

6.      This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

7.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the breaches and violations giving rise to the claims occurred in this District and the Plan's trustee, Defendant GreatBanc, is found in this District.

## PARTIES

### McBride & Son Employee Stock Ownership Plan

8.      The McBride & Son Employee Stock Ownership Plan (the "Plan") is sponsored by McBride & Son Management Company, LLC ("MS Management Co.").

9.      The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2).

10.     The Plan is an "individual account plan" or "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34).

11.     From December 1, 1987 until November 30, 2017, the Plan was an employee stock ownership plan ("ESOP") under 29 U.S.C. § 1107(d)(6) that was intended to meet the requirements of Sections 401(a) and 4975(e)(7) of the Internal Revenue Code (the "Code") and related regulations.

12.     For the benefit of Plan participants and beneficiaries, the Plan held shares of McBride & Son Capital, Inc. ("MS Capital"), which upon information and belief, held 100% of the assets of the McBride & Son home building conglomerate including all related subsidiaries (generally "MS Homes").

13.     Upon information and belief, under the Plan's eligibility requirements nearly all employees of MS Homes, with limited exceptions, were eligible to be participants in the Plan.

14.     MS Management Co. has reported on Forms 5500 filed with the U.S. Department of Labor, the Internal Revenue Service, and the Pension Benefit Guaranty Corporation that the Plan's name has been amended to be known as the McBride & Son Employee Stock Ownership Trust. However, MS Management Co. has continued to report the Plan as "McBride & Son Employee Stock Ownership Plan" in Box 1a on all filed Forms 5500 since at least 2014.

15.     After Defendants caused the Plan to sell its shares of MS Capital at below fair market value ("FMV") as described further below, the Plan was converted to a profit sharing plan and later merged into the McBride & Son 401(k) Savings Plan ("MS 401(k) Plan"), effectively terminating the Plan.

**Plaintiffs**

16.     Plaintiff Gregory Godfrey is a participant, as defined in 29 U.S.C. § 1002(7), in the Plan. Plaintiff Godfrey resides in Wildwood, Missouri. He was vested in his account in the Plan. He was previously employed as Chief Information Officer. He was employed from 2001 to 2008.

17.     Plaintiff Jeffrey Sheldon is a participant, as defined in 29 U.S.C. § 1002(7), in the Plan. Plaintiff Sheldon resides in St. Louis, Missouri. He was vested in his account in the Plan. He was previously employed as an Information Systems Director. He was employed from 1998 until 2008.

### Defendants

18.     Defendant GreatBanc Trust Company ("GreatBanc") was at all relevant times a "fiduciary" of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) because it was the Plan's Trustee, within the meaning of 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. GreatBanc was also a party in interest to the Plan under 29 U.S.C. § 1002(14) at all relevant times. GreatBanc's headquarters is located at 801 Warrenville Road, Suite 500, Lisle, Illinois 60532. GreatBanc was engaged at all relevant times to act as a discretionary trustee to the Plan with respect to the Plan's purchase or sale of MS Capital Stock, with the sole mission to act at all times in the best interests of the Plan's participants and beneficiaries in carrying out ERISA's strict fiduciary duties. GreatBanc, as described further below, failed to do so.

19.     GreatBanc is a subsidiary of U.S. Fiduciary Services, Inc., which is also headquartered at 801 Warrenville Road, Suite 500, Lisle, Illinois 60532.

20.     Defendant McBride & Son Management Company, LLC ("MS Management Co.") is the "plan sponsor" to the Plan under 29 U.S.C. § 1002(16)(B) and a party in interest to the Plan under 29 U.S.C. § 1002(14). MS Management Co is also the "named fiduciary" and "plan

administrator" of the Plan as those terms are defined in 29 U.S.C. § 1102(a) and 29 U.S.C. § 1002(16)(A), respectively.

21.     MS Management Co., and any individual or entity to whom it has delegated any of its fiduciary functions, was a fiduciary to the Plan under 29 U.S.C. § 1002(21)(A) when it exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

22.     MS Management Co., as a corporate entity, cannot act on its own without any human counterpart. In this regard, MS Management Co. relied directly on the other Defendants, named herein known to Plaintiffs and those unknown to Plaintiffs, to carry out its fiduciary responsibilities under the Plan and ERISA and the acts of MS Management Co.'s officers and employees alleged herein are the acts of MS Management Co.

23.     Defendant John F. Eilermann, Jr. ("Eilermann") is Chief Executive Officer of MS Management Co. and MS Capital and, upon information and belief, was a fiduciary to the Plan under 29 U.S.C. § 1002(21)(A) when he exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

24.     Defendant Michael D. Arri ("Arri"), was Chief Financial Officer of MS Management Co. and MS Capital and, upon information and belief, was a fiduciary to the Plan under 29 U.S.C. § 1002(21)(A) when he exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or

disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

25. Andrea Templeton ("Templeton"), is Assistant Treasurer and Controller of MS Management Co. and MS Capital and, upon information and belief, was a fiduciary to the Plan under 29 U.S.C. § 1002(21)(A) when she exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. Additionally, Defendant Templeton was a fiduciary to the Plan when acting as the plan administrator, she signed the Forms 5500 submitted annually to the U.S. Department of Labor on behalf of the Plan.

26. Plaintiffs are currently unaware of the additional identities and capacities of the individuals or entities that have been delegated fiduciary functions by the named Defendants in this case, including GreatBanc, MS Management Co., Eilermann, Arri, and Templeton. As such, those individuals are collectively named as John Does 1 through 10, and upon information and belief, were fiduciaries to the Plan under 29 U.S.C. § 1002(21)(A) when they exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan. Plaintiffs will substitute the real names of the John Does when they are known to Plaintiffs.

27. Defendants MS Management Co., Eilermann, Arri, Templeton, and John Does 1 through 10 are collectively hereafter referred to as the "MS Defendants."

28. Defendant McBride & Son Capital, Inc. ("MS Capital") is a party in interest to the Plan under 29 U.S.C. §§ 1002(14)(C) and/or (G).

29.     The Plan Administrator has declared MS Capital a party in interest to the Plan under 29 U.S.C. § 1002(14) in filed Form 5500s since at least 2014.

## FACTUAL ALLEGATIONS

### McBride & Son Background

30.     Headquartered in Chesterfield, Missouri, the McBride & Son home building conglomerate of companies builds, finances, and sells residential homes in Missouri and Illinois (collectively referred to as "MS Homes").

31.     Because the MS Homes conglomerate of corporate entities and subsidiaries is privately held, Plaintiffs do not have insight into its exact corporate structure. However, upon information and belief, at all relevant times, MS Capital is believed to have been the holding company for all related corporate entities and subsidiaries.

### The Plan's Investment in MS Capital

32.     The Plan was adopted effective on December 1, 1987, by MS Management Co.

33.     The Plan was amended and restated effective January 1, 2013.

34.     The Plan covers all fulltime, non-union employees of MS Homes.

35.     The Plan was operating as a leveraged employee stock ownership plan ("ESOP") from December 30, 1997, to its divestment of company stock, and is and was subject to ERISA.

36.     As reported by the Plan Administrator as of January 1, 2014, the Plan was the sole shareholder of MS Capital. Upon information and belief, MS Capital was the holding company for all related corporate entities and subsidiaries of MS Homes, making the Plan the sole owner of the entire MS Homes conglomerate, which was therefore to be held exclusively for the benefit of the Plan's participants and beneficiaries and with the entirety of ERISA's stringent fiduciary duties protecting the Plan's, and thus the participants' and beneficiaries', investment.

37.     The primary investment held by the Plan as an ESOP is the shares of MS Capital stock.

38.     MS Capital stock is not, and was not at the time it was owned by the Plan, readily tradable on an established securities market.

39.     As of December 31, 2014, the Plan held 88,201 shares of MS Capital stock and the Plan Administrator reported a valuation of $14,817,850.

40.     As of December 31, 2015, the Plan held 73,536 shares of MS Capital stock and the Plan Administrator reported a valuation of $12,354,054.

41.     As of December 31, 2016, the Plan held 88,201 shares of MS Capital stock and the Plan Administrator reported a valuation of $13,494,818.

42.     At all relevant times and upon information and belief, GreatBanc has been the Trustee of the Plan.

43.     GreatBanc as Trustee was responsible for the management and control of the Plan's assets and had responsibility for the investment and management of such assets, including the Plan's investment in MS Capital.

44.     GreatBanc as Trustee was appointed by MS Management Co. or any fiduciary that was delegated this fiduciary function by MS Management Co.

**The 2015 ESOP Transaction**

45.     In December of 2015, the fiduciaries to the Plan allowed MS Capital to purchase 14,665 shares of common stock of MS Capital from the Plan for $2,463,797 (hereafter known as the "2015 ESOP Transaction"). This equates to a price of about $168 a share.

46.     The Plan received cash from the 2015 ESOP Transaction and the fiduciaries to the Plan later caused it to be invested in mutual funds and cash.

47.     As the alleged independent trustee for the Plan, it was GreatBanc's duty to ensure that any transactions between the Plan and MS Capital were fair and reasonable, for the exclusive benefit of the Plan's participants and beneficiaries, and that the Plan would only receive fair market value for the stock.

48.     As fiduciaries to the Plan as described above, it was the MS Defendants' duty to ensure that any transactions between the Plan and MS Capital were fair and reasonable, for the exclusive benefit of the Plan's participants and beneficiaries, and that the Plan would only receive fair market value for the stock.

49.     The price of about $168 per share for MS Capital stock was below fair market value based upon what an unrelated party would pay in an arm's length negotiated transaction as measured by comparison to sales and valuation data on other similarly situated companies in the same industry.

50.     The fiduciaries to the Plan had a dual obligation to first properly determine whether a sale of the stock from the Plan was in the best interests of the Plan's participants and beneficiaries and second, assuming such a determination could be made, that the Plan received fair market value for the MS Capital Stock to protect the interests of the Plan's participants and beneficiaries. The Plan's fiduciaries failed in both respects.

51.     Upon information and belief, the purpose of the 2015 ESOP Transaction was instead to benefit corporate insiders of the MS Homes conglomerate, including the fiduciaries to the Plan, by spinning off a MS Homes subsidiary called Builder's Bloc. In furtherance of this scheme, the fiduciaries to the Plan failed to investigate whether any other unrelated third party was interested in the purchase of MS Capital stock at a higher price.

52.     In September 2016, the fiduciaries to the Plan caused the Plan to repurchase from MS Capital 14,665 treasury shares of MS Capital stock for $2,463,797. Instead of paying cash, the transaction was financed by a ten year promissory note between MS Capital and the Plan.

### The 2017 ESOP Transaction

53.     On November 30, 2017, the fiduciaries to the Plan allowed MS Capital to purchase all the shares of MS Capital stock held by the Plan for a total of consideration of $16,493,664, which consisted of 80,094.3643 shares for $14,977,646 in cash (equating to a price of about $187 per share) and 8,107.0476 shares for loan forgiveness on the ten year promissory note of $1,516,018 (equating to a price of about $187 a share).

54.     As the alleged independent trustee for the Plan, it was GreatBanc's duty to ensure that any transactions between the Plan and MS Capital were fair and reasonable, for the exclusive benefit of the Plan's participants and beneficiaries, and that the Plan would receive no less than fair market value for the stock.

55.     As fiduciaries to the Plan as described above, it was the MS Defendants' duty to ensure that any transactions between the Plan and MS Capital were fair and reasonable, for the exclusive benefit of the Plan's participants and beneficiaries, and that the Plan would receive no less than fair market value for the stock.

56.     The price of about $187 per share for MS Capital stock was below fair market value based upon what an unrelated party would pay in an arm's length negotiated transaction as measured by comparison to sales and valuation data on other similarly situated companies in the same industry.

57.     The fiduciaries to the Plan had a dual obligation to first properly determine whether a sale of the stock from the Plan was in the best interests of the Plan's participants and beneficiaries

and second, assuming such a determination could be made, that the Plan received fair market value for the MS Capital Stock to protect the interests of the Plan's participants and beneficiaries. The Plan's fiduciaries failed in both respects.

58.     Upon information and belief, the purpose of the 2017 ESOP Transaction was instead to benefit corporate insiders of the MS Homes conglomerate including the fiduciaries to the Plan by allowing them to take control over MS Capital and thus the MS Homes conglomerate at the expense of the Plan's participants and beneficiaries. In furtherance of this scheme, the fiduciaries to the Plan failed to investigate whether any other unrelated third party was interested in the purchase of MS Capital stock at a higher price.

59.     Defendants have never explained to the Plan participants and beneficiaries the fiduciary process they engaged in to determine that selling the entirety of MS Capital stock from the Plan was exclusively beneficial to the Plan's participants and beneficiaries and that Defendants met the stringent requirements of ERISA's fiduciary duty and prohibited transaction rules in doing so.

### ERISA's Fiduciary Standards and Prohibited Transactions

60.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan. 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> (A) for the exclusive purpose of:
>
> > (i) providing benefits to participants and their beneficiaries; and
> >
> > (ii) defraying reasonable expenses of administering the plan; [and]
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such

matters would use in the conduct of an enterprise of like character and with like aims.

61. Under 29 U.S.C. § 1103(c)(1), with certain exceptions not relevant here, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

62. To satisfy 29 U.S.C. § 1104 "when facilitating a transaction involving the sale of plan assets, the fiduciary must conduct an 'adequate inquiry into the proper valuation of shares.'" *Hurtado v. Rainbow Disposal Co.*, 2018 WL 3372752, at *6 (C.D. Cal. July 9, 2018) (in which similar claims have been made against GreatBanc as trustee as in this Complaint) (*citing Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678–79 (7th Cir. 2016)).

63. ERISA also imposes explicit co-fiduciary duties on plan fiduciaries. 29 U.S.C. § 1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty. The statute states, in relevant part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participants knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

64. The general duties of loyalty and prudence imposed by 29 U.S.C. § 1104 are supplemented by a detailed list of transactions that are expressly prohibited by 29 U.S.C. § 1106, and are considered "*per se*" violations because they entail a high potential for abuse. Section 1106(a)(1) states, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –
>
>> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>>
>> (B) lending of money or other extension of credit between the plan and a party in interest;
>>
>> (C) furnishing of goods, services, or facilities between the plan and party in interest;
>>
>> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…

Section 1106(b) provides, in pertinent part, that:

> [A] fiduciary with respect to the plan shall not –
>
>> (1) deal with the assets of the plan in his own interest or for his own account,
>>
>> (2) in his individual or in any other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interest of the plan or the interest of its participants or beneficiaries, or
>>
>> (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

65. ERISA's fiduciary duty and prohibited transaction provisions prohibit fiduciaries, such as the Defendants here, from causing plans to engage in transactions with fiduciaries and parties in interest that result in benefits to the fiduciaries and parties in interest at the expense of the plan and its participants and beneficiaries.

14

66.     29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under 29 U.S.C. § 1109. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

67.     29 U.S.C. § 1132(a)(3) provides a cause of action against a non-fiduciary "party in interest" who knowingly participates in prohibited transactions or knowingly receives payments made in breach of a fiduciary's duty, and authorizes "appropriate equitable relief" such as restitution or disgorgement to recover ill-gotten proceeds from the non-fiduciary.

## CLAIMS FOR RELIEF

## COUNT I

**Causing and Engaging in Prohibited Transactions Forbidden by
29 U.S.C. §§ 1106(a)–(b) for the 2015 ESOP Transaction
Against GreatBanc and the MS Defendants**

68.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

69.     29 U.S.C. § 1106(a)(1)(A) prohibits a plan fiduciary, here GreatBanc and the MS Defendants, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here MS Capital stock, with a party in interest, here MS Capital, as took place in the 2015 ESOP Transaction.

70.     29 U.S.C. § 1106(a)(1)(D) prohibits GreatBanc Trust and the MS Defendants from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here MS Capital and certain corporate insiders of the MS Homes conglomerate including the MS Defendants, who were parties in interest by virtue of their

roles as fiduciaries, officers, directors, and/or employees, of any assets of the Plan, as took place in and after the 2015 ESOP Transaction with the purchase of MS Capital stock by MS Capital.

71.    The stock transactions between the Plan and the parties in interest were authorized by GreatBanc in its capacity as Trustee for the Plan and the MS Defendants in their capacity as fiduciaries to the Plan.

72.    GreatBanc and the MS Defendants caused the Plan to engage in prohibited transactions in violation of 29 U.S.C. § 1106(a) in the 2015 ESOP Transaction.

73.    29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account", "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

74.    The MS Defendants dealt with the assets of the Plan in their own interest and on their own account when they caused the Plan to sell MS Capital stock in the 2015 ESOP Transaction. As described above, the true purpose of selling the stock at a price below fair market value was to benefit MS Homes corporate insiders including MS Defendants. This was in violation of 29 U.S.C. § 1106(b)(1).

75.    GreatBanc and the MS Defendants acted on behalf of MS Capital and corporate insiders including the MS Defendants in connection with the 2015 ESOP Transaction by causing the Plan to sell MS Capital stock to MS Capital at a price below fair market value. This greatly benefited MS Capital and the MS Homes insiders including the MS Defendants to the substantial detriment of the Plan, even though GreatBanc and the MS Defendants were required to serve the

interests of the Plan in connection with any such transaction. This was in violation of 29 U.S.C. § 1106(b)(2).

76.     GreatBanc received compensation from the Plan and/or MS Capital as Trustee for the Plan in the 2015 ESOP Transaction, in the form of trustee fees, in violation of 29 U.S.C. § 1106(b)(3).

77.     GreatBanc and the MS Defendants caused and engaged in prohibited transactions in violation of 29 U.S.C. § 1106(b) in the 2015 ESOP Transaction.

78.     29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

79.     Each Defendant named in Count I is personally liable, and the Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches.

80.     Each Defendant named in Count I is personally liable, and the Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and is subject to other equitable or remedial relief as appropriate.

81.     Each Defendant named in Count I also knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties, and knew of the breach by the

other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach, and thus each Defendant named in Count I is liable for the losses caused by the breach of their co-fiduciary under 29 U.S.C. § 1105(a).

82.     GreatBanc and the MS Defendants have caused losses to the Plan and have profited for themselves by the prohibited transactions in an amount to be proved specifically at trial.

83.     The losses suffered by the participants in the Plan are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT II

### Violation of 29 U.S.C. § 1104(a)(1) for the 2015 ESOP Transaction
### Against GreatBanc and the MS Defendants

84.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

85.     29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

86.     The documents governing the Plan required that the Plan's fiduciaries comply with ERISA stringent fiduciary standards and that the Plan receive no less than fair market value for any assets sold.

87.     The duties of loyalty under 29 U.S.C. § 1104(a)(1)(A) and the duty of prudence under 29 U.S.C. § 1104(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determination that the Plan and its participants receive adequate consideration for the assets of the Plan and the participants' accounts in the Plan.

88.     Pursuant to 29 U.S.C. § 1002(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or the named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations. In order for the trustee or other named fiduciary to make a good faith determination of fair market value relying on an independent appraiser consistent with its duties under 29 U.S.C. §§ 1104(a)(1)(A) and (B), a fiduciary responsible for engaging in the good faith determination must investigate the expert's qualifications, provide the expert with complete and accurate information, and make certain that reliance on the expert's advice is reasonably justified under the circumstances.

89.     GreatBanc and the MS Defendants breached their fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when they caused the Plan to sell MS Capital stock to MS Capital at a price below fair market value in the 2015 ESOP Transaction. This caused losses to the Plan and GreatBanc and the MS Defendants profited by their violations of ERISA.

90.     29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

91.     Each Defendant named in Count II is personally liable, and the Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), to make good to the Plan the losses to the Plan resulting from the aforementioned breaches.

92.     Each Defendant named in Count II is personally liable, and the Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and is subject to other equitable or remedial relief as appropriate.

93.     Each Defendant named in Count II also knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties, and knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach, and thus each Defendant named in Count II is liable for the losses caused by the breach of their co-fiduciary under 29 U.S.C. § 1105(a).

94.     GreatBanc and the MS Defendants have caused losses to the Plan and have profited for themselves by the breaches of fiduciary duty in an amount to be proved specifically at trial.

95.     The losses suffered by the participants in the Plan are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT III

**Causing and Engaging in Prohibited Transactions Forbidden by
29 U.S.C. §§ 1106(a)–(b) for the 2017 ESOP Transaction
Against GreatBanc and the MS Defendants**

96.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

97.     29 U.S.C. § 1106(a)(1)(A) prohibits a plan fiduciary, here GreatBanc and the MS Defendants, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here MS Capital stock, with a party in interest, here MS Capital, as took place in the 2017 ESOP Transaction.

98.     29 U.S.C. § 1106(a)(1)(D) prohibits GreatBanc Trust and the MS Defendants from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by

or for the benefit of, a party in interest, here MS Capital and certain corporate insiders of the MS Homes conglomerate including the MS Defendants, who were parties in interest by virtue of their roles as fiduciaries, officers, directors, and/or employees, of any assets of the Plan, as took place in and after the 2017 ESOP Transaction with the purchase of MS Capital stock by MS Capital.

99. The stock transactions between the Plan and the parties in interest were authorized by GreatBanc in its capacity as Trustee for the Plan and the MS Defendants in their capacity as fiduciaries to the Plan.

100. GreatBanc and the MS Defendants caused the Plan to engage in prohibited transactions in violation of 29 U.S.C. § 1106(a) in the 2017 ESOP Transaction.

101. 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account", "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

102. The MS Defendants dealt with the assets of the Plan in their own interest and on their own account when they caused the Plan to sell MS Capital stock in the 2017 ESOP Transaction. As described above, the true purpose of selling the stock at a price below fair market value was to benefit MS Homes corporate insiders including MS Defendants. This was in violation of 29 U.S.C. § 1106(b)(1).

103. GreatBanc and the MS Defendants acted on behalf of MS Capital and corporate insiders including MS Defendants in connection with the 2017 ESOP Transaction by causing the Plan to sell MS Capital stock to MS Capital at a price below fair market value. This greatly

benefited MS Capital and the MS Homes insiders including the MS Defendants to the substantial detriment of the Plan, even though GreatBanc and the MS Defendants were required to serve the interests of the Plan in connection with any such transaction. This was in violation of 29 U.S.C. § 1106(b)(2).

104.    GreatBanc received compensation from the Plan and/or MS Capital as Trustee for the Plan in the 2017 ESOP Transaction, in the form of trustee fees, in violation of 29 U.S.C. § 1106(b)(3).

105.    GreatBanc and the MS Defendants caused and engaged in prohibited transactions in violation of 29 U.S.C. § 1106(b) in the 2017 ESOP Transaction.

106.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

107.    Each Defendant named in Count III is personally liable, and the Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches.

108.    Each Defendant named in Count III is personally liable, and the Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and is subject to other equitable or remedial relief as appropriate.

109.    Each Defendant named in Count III also knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties, and knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach, and thus each Defendant named in Count III is liable for the losses caused by the breach of their co-fiduciary under 29 U.S.C. § 1105(a).

110.    GreatBanc and the MS Defendants have caused losses to the Plan and have profited for themselves by the prohibited transactions in an amount to be proved specifically at trial.

111.    The losses suffered by the participants in the Plan and the profits to the fiduciaries are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT IV

**Violation of 29 U.S.C. § 1104(a)(1) for the 2017 ESOP Transaction Against GreatBanc and the MS Defendants**

112.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

113.    29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

114.    The documents governing the Plan required that the Plan's fiduciaries comply with ERISA stringent fiduciary standards and that the Plan receive no less than fair market value for any assets sold.

115.    The duties of loyalty under 29 U.S.C. § 1104(a)(1)(A) and the duty of prudence under 29 U.S.C. § 1104(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determination that the Plan and its participants receive adequate consideration for the assets of the Plan and the participants' accounts in the Plan.

116.    Pursuant to 29 U.S.C. § 1002(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or the named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations. In order for the trustee or other named fiduciary to make a good faith determination of fair market value relying on an independent appraiser consistent with its duties under 29 U.S.C. §§ 1104(a)(1)(A) and (B), a fiduciary responsible for engaging in the good faith determination must investigate the expert's qualifications, provide the expert with complete and accurate information, and make certain that reliance on the expert's advice is reasonably justified under the circumstances.

117.    GreatBanc and the MS Defendants breached their fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when they caused the Plan to sell MS Capital stock to MS Capita at a price below fair market value in the 2017 ESOP Transaction. This caused losses to the Plan and GreatBanc and the MS Defendants profited by their violations of ERISA.

118.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

119.    Each Defendant named in Count IV is personally liable, and the Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), to make good to the Plan the losses to the Plan resulting from the aforementioned breaches.

120.    Each Defendant named in Count IV is personally liable, and the Defendants are jointly and severally liable, under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3), to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and is subject to other equitable or remedial relief as appropriate.

121.    Each Defendant named in Count IV also knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled the other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties, and knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach, and thus each Defendant named in Count IV is liable for the losses caused by the breach of their co-fiduciary under 29 U.S.C. § 1105(a).

122.    GreatBanc and the MS Defendants have caused losses to the Plan and have profited for themselves by the breaches of fiduciary duty in an amount to be proved specifically at trial.

123.    The losses suffered by the participants in the Plan are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT V

**Knowing Participation in Breaches of Fiduciary Duties & Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3) for the 2015 ESOP Transaction and the 2017 ESOP Transaction, Against MS Capital**

124.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

125.    Defendant MS Capital was a party in interest to the Plan under 29 U.S.C. § 1002(14).

126.     Defendant MS Capital knew (1) about the existence of the Plan, (2) about the purchase of MS Capital stock in the 2015 ESOP Transaction, (3) about the purchase of MS Capital stock in the 2017 ESOP Transaction, (4) that GreatBanc and the MS Defendants were fiduciaries to the Plan, (5) that the 2015 ESOP Transaction was not for fair market value, (6) that the 2017 ESOP Transaction was not for fair market value, (7) that GreatBanc and the MS Defendants engaged in transactions prohibited under 29 U.S.C. §§ 1106(a) and (b), (8) that the true purpose of the 2015 ESOP Transaction was to benefit MS Homes corporate insiders including the MS Defendants, and (9) that the true purpose of the 2017 ESOP Transaction was to benefit MS Home corporate insiders including the MS Defendants.

127.     Despite knowledge of these breaches and violations, Defendant MS Capital proceeded to knowingly participate in the 2015 ESOP Transaction and the 2017 ESOP Transaction.

128.     By knowingly participating in these breaches and violations, Defendant MS Capital as a party in interest to the Plan is subject to appropriate equitable relief including disgorgement of any profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the MS Capital stock to be restored to the Plan, or to be subject to other appropriate equitable relief.

## CLASS ACTION ALLEGATIONS

129.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the McBride & Son Employee Stock Ownership Plan, and the beneficiaries of such participants, at any time between the 2015 ESOP Transaction and the 2017 ESOP Transaction, inclusive of the Transactions. Excluded from the Class are the shareholders who bought shares in MS Capital in the sales, and their immediate families; the directors of MS Capital; and legal

representatives, successors, and assigns of any such excluded persons.

130. The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiffs at this time, the Plan's Form 5500 filings indicate that as of December 31, 2015, there were 171 participants and deceased participants whose beneficiaries were receiving or entitled to receive benefits in the Plan and, as of December 31, 2016, there were 169 such individuals.

131. Questions of law and fact common within the Class as a whole include, but are not limited to, the following:

    A. Whether GreatBanc served as Trustee in the Plan's sales of MS Capital stock;

    B. Whether GreatBanc and the MS Defendants were ERISA fiduciaries of the Plan;

    C. Whether GreatBanc and the MS Defendants caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to sell MS Capital stock to MS Capital, a party in interest, in the 2015 ESOP Transaction and the 2017 ESOP Transaction;

    D. Whether GreatBanc and the MS Defendants engaged in good faith valuations of the MS Capital stock in connection with the 2015 ESOP Transaction and the 2017 ESOP Transaction;

    E. Whether GreatBanc and the MS Defendants caused the Plan to receive less than fair market value for MS Capital stock in the 2015 ESOP Transaction and the 2017 ESOP Transaction;

    F. Whether GreatBanc and the MS Defendants engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the 2015 ESOP Transaction and the 2017 ESOP Transaction;

G. Whether GreatBanc and the MS Defendants engaged in a prohibited transaction under ERISA by receiving consideration for their own account in the 2015 ESOP Transaction and the 2017 ESOP Transaction;

H. Whether GreatBanc and the MS Defendants breached their fiduciary duties under ERISA in the 2015 ESOP Transaction and the 2017 ESOP Transaction;

I. Whether MS Capital was a party in interest;

J. Whether MS Capital, as a party in interest, knowingly participated in the fiduciary breaches of GreatBanc and the MS Defendants;

K. The proper valuation of the Plan's holdings in MS Capital stock for the 2015 ESOP Transaction and the 2017 ESOP Transaction;

L. The amount of losses suffered by the Plan and its participants as a result of GreatBanc and the MS Defendants' ERISA violations; and

M. The appropriate relief for Defendants' violations of ERISA.

132. Plaintiffs' claims are typical of those of the Class. For example, Plaintiffs, like other Plan participants in the Class, suffered a diminution in the value of their Plan accounts because the Plan received a reduced price for MS Capital stock, resulting in them suffering a loss in the present because GreatBanc and the MS Defendants failed to correct the underpayments to the Plan.

133. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

134. Class certification of Plaintiffs' Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications

which would establish incompatible standards of conduct for the Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

135.    In the alternative, class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to each member of the Class, making appropriate declaratory and injunctive relief with respect to the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' violations of ERISA.

136.    The names and addresses of the Class members are available from Defendants and the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## ENTITLEMENT TO RELIEF

137.    By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled to sue each of the Defendants who are fiduciaries and/or parties in interest pursuant to 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in 29 U.S.C. § 1109, including for recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable relief as the Court may deem appropriate.

138.    By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled pursuant to 29 U.S.C. § 1132(a)(3) to sue any of the Defendants for appropriate equitable relief to redress the wrongs described herein.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A.     Declare that Defendants GreatBanc and the MS Defendants breached his, her, or its fiduciary duties under ERISA;

B.     Declare that Defendants GreatBanc and the MS Defendants caused the Plan to engage in and themselves engaged in prohibited transactions and thereby breached their duties under ERISA;

C.     Declare that Defendant MS Capital knowingly participated in the breaches of ERISA by Defendants GreatBanc and the MS Defendants;

D.     Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan losses resulting from the breaches of ERISA and restore any profits it has made through use of assets of the Plan;

E.     Declare the 2015 ESOP Transaction and 2017 ESOP Transaction to be prohibited transactions and (1) require any fiduciary or party in interest who engaged in a prohibited transaction to disgorge any profits made, (2) declare a constructive trust over the proceeds of any such transaction, and (3) provide any other appropriate equitable relief, whichever is in the best interest of the Plan;

F.     Order Defendants to provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

G.    Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

H.    Order the removal of any of the breaching fiduciaries from their position as fiduciaries for the Plan and enjoin any of the breaching fiduciaries from acting as fiduciaries for any plan that covers any MS Homes employees or any members of the Class;

I.    Appoint an Independent Fiduciary to manage the Plan to the extent necessary and the costs of such Independent Fiduciary to be paid for by any Defendants found to have breached their fiduciary duties or otherwise violated ERISA;

J.    Order (1) a constructive trust be placed on any proceeds from any sale of MS Capital stock that may have happened after termination of the Plan or will happen in the future including the award of MS Capital stock to any employee or officer or director of the MS Homes conglomerate (hereafter "Post Termination Sales") by a breaching fiduciary or party in interest, (2) disgorgement of profits made by a breaching fiduciary or party in interest from any Post Termination Sales, (3) rescission of any Post Termination Sales by a breaching fiduciary or party in interest, or (4) any other appropriate equitable relief against a breaching fiduciary or party in interest related to a Post Termination Sale, whichever is in the best interest of the Plan;

K.    Order pursuant to 29 U.S.C. § 1056(d)(4) that any amount to be paid to the Plan accounts of the class can be satisfied by using or transferring any breaching

fiduciary's ESOP account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability;

L.    Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

M.    Order Defendant GreatBanc to disgorge any fees it received in conjunction with its services as Trustee for the Plan as well as any earnings and profits thereon;

N.    Order Defendants to pay pre-judgment and post-judgment interest;

O.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives and their counsel as class counsel; and

P.    Award such other and further relief as the Court deems equitable and just.

Dated: November 30, 2018            Respectfully submitted,

                                    **BAILEY & GLASSER LLP**

                                    By: /s/ *Mark G. Boyko*
                                         Mark G. Boyko (IL #6288036)
                                         mboyko@baileyglasser.com
                                         8012 Bonhomme Avenue, Suite 300
                                         Clayton, MO 63105
                                         Telephone: (314) 863-5446
                                         Facsimile: (314)-863-5483

                                         Patrick O. Muench (IL #6290298)
                                         pmuench@baileyglasser.com
                                         3930 N. Lowell Ave.
                                         Chicago, IL 60641
                                         Telephone: (847) 899-1646
                                         Facsimile: (202) 463-2103

                                         Ryan T. Jenny
                                         rjenny@baileyglasser.com
                                         Gregory Y. Porter (*pro hac vice* to be filed)
                                         gporter@baileyglasser.com
                                         Bailey & Glasser LLP

1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

*Attorneys for Plaintiff*