### UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY GODFREY and JEFFREY SHELDON, on behalf of the MCBRIDE & SON EMPLOYEE STOCK OWNERSHIP PLAN, and on behalf of a class of all other persons similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>GREATBANC TRUST COMPANY, MCBRIDE & SON MANAGEMENT COMPANY, LLC, JOHN F. EILERMANN, JR., MICHAEL D. ARRI, ANDREA TEMPLETON, JOHN DOES 1 - 10, and MCBRIDE & SON CAPITAL, INC.,<br><br>                Defendants. | Case Number 18-cv-07918<br><br>Judge Matthew F. Kennelly<br><br>Magistrate Judge Michael T. Mason<br><br>**[Oral Argument Requested]** |

## MEMORANDUM OF LAW IN SUPPORT OF McBRIDE DEFENDANTS' MOTION TO DISMISS

## Table of Contents

I.  Introduction ..................................................................................................... 1

II.  Standards of Review ....................................................................................... 3

III.  Argument ....................................................................................................... 4

   A.  Plaintiffs Lack Constitutional Standing for Each of Their Claims. ................................. 4

     1.  Constitutional Standards ................................................................... 4

     2.  Plaintiffs Have Not Suffered An Injury In Fact. ............................................. 5

     3.  Plaintiffs Have Not Alleged a Real and Immediate Threat of Future Injury. .................. 6

   B.  The Complaint Fails to State a Claim Against the McBride Defendants......................... 6

     1.  The Complaint Fails to Allege Fiduciary Status. ............................................. 7

     2.  Plaintiffs Have Failed to Plead the Elements of Any Prohibited Transaction. .............. 10

     3.  Plaintiff Have Failed to Plead Breach of Fiduciary Duty. ............................... 13

     4.  Plaintiffs Fail to State a Knowing Participation Claim. ................................... 14

IV.  Conclusion ..................................................................................................... 15

Defendants McBride & Son Management Company, LLC ("McBride Management"), John F. Eilermann, Jr., Michael D. Arri, Andrea Templeton (together with Messrs. Eilermann and Arri, the "Individual Defendants"), and McBride & Son Capital, Inc. ("McBride Capital") (collectively, the "McBride Defendants")[1] move to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    Introduction

Founded in 1946, McBride & Son ("McBride") has grown to be the largest residential homebuilder in Missouri. In 1987, McBride established the McBride & Son Employee Stock Ownership Plan[2] (the "Plan" or the "ESOP") so that its employees could share in the potential growth of the company. For decades, Plan participants saw the value of their ESOP accounts increase, and, at times, soar.

Like residential homebuilders nationwide, however, McBride operates in a cyclical industry prone to significant volatility. McBride historically weathered these cycles well, but the 2008 housing crisis that spurred the Great Recession was a game changer. In less than one year, the value of company stock dropped from $465.75 to $88.20 per share. At that point, Plaintiffs, who were participants in the ESOP, decided to leave the company. Under the terms of the Plan,

---

[1] Plaintiffs group McBride Management together with the Individual Defendants under the label "MS Defendants." They *exclude* the entity they name "MS Capital" from "MS Defendants," despite its name "MS." Compl. ¶ 27. To avoid confusion, McBride Defendants do not adopt Plaintiffs' convention.

[2] An ESOP is a type of defined contribution pension benefit plan that "invests primarily in the employer's stock." *Keach v. U.S. Trust Co., N.A.*, 313 F. Supp. 2d 818, 862 (C.D. Ill. 2004), *aff'd*, 419 F.3d 626 (7th Cir. 2005). While employers are under no obligation to provide their employees with retirement plans of any sort, let alone ESOPs, Congress saw fit to offer certain tax benefits to encourage companies to establish ESOPs for their employees. Congress believed that facilitating employee ownership of corporations would align the interests of employees and employers, to the benefit of both. *See* STAFF OF THE S. COMM. ON FIN., 95TH CONG., ESOPS AND TRASOPS: AN EXPLANATION FOR Employees 10 (Comm. Print 1978) (stating that ESOPs benefit employees by providing them with a stake in the profits that they help generate for their employers). Of course, this means that, as shareholders of the corporation, participants (such as Plaintiffs) can see the value of their interests rise and fall with the fortunes of the company.

Plaintiffs could have been required to take a distribution of their ESOP accounts as a result of their departure from the company—that is, to sell their stock at a severely depressed price.

Given the significant impact this would have had on the Plaintiffs' retirement savings, the Plan administrator provided Plaintiffs (along with certain others who left the company in the first half of 2008)[3] with an option: keep their ESOP accounts invested in company stock or liquidate and invest the proceeds in an alternative investment. Both Plaintiffs elected to keep their accounts in company stock.

Unlike so many of its competitors, McBride navigated its way through the financial crisis. By the close of 2016, the stock price had risen to $153. As the company looked ahead to when the next downward cycle in the housing market might occur, it decided to eliminate the risk inherent in the investment of Plan participants' retirement savings in a single stock. To that end, the company took steps to close the ESOP and roll the assets into the company's 401(k) plan, where participants could build a more diversified retirement portfolio. In November 2017, McBride Capital redeemed all of the outstanding shares of common stock held by the Plan at $187 per share (the "2017 Transaction"). Compl. ¶ 53. Following the 2017 Transaction, the Plan was converted to a profit sharing plan and merged into the McBride 401(k) savings plan. *See id.* ¶ 15.

Now, those same Plaintiffs that the company allowed to remain in the Plan rather than forcing them to cash out at the stock's low point are contesting the way in which the 2017 Transaction was handled. The problem for Plaintiffs, though, is that ***their shares were not included in the 2017 Transaction***. Rather, the shares in Plaintiffs' ESOP accounts (along with those of the other Inactive Participants) were converted to cash *prior to* the 2017 Transaction, on

---

[3] Those participants, together with Plaintiffs, are referred to herein as the "Inactive Participants."

November 1, 2017. Because Plaintiffs were not a part of the transaction about which they complain, their claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of standing.[4]  In addition, Plaintiffs lack standing to pursue declaratory or injunctive relief because they have not alleged a real and immediate threat of future injury.  On top of that, the Complaint should be dismissed under Rule 12(b)(6) because Plaintiffs have failed to allege plausible prohibited transaction, breach of fiduciary duty, and knowing participation claims.  For all these reasons, the Court should dismiss Plaintiffs' Complaint in its entirety.

## II.    Standards of Review

Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  "It is well established that the burden of establishing proper federal subject-matter jurisdiction rests on the party asserting it—here, the plaintiff." *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).  Where, as here, a factual attack is made, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (alteration in original) (citation omitted). Importantly, "no presumptive truthfulness attaches to plaintiff's allegations" in the context of a factual attack. *Id.* (citation omitted).

Plaintiffs' Complaint should also be dismissed for failure to state a claim.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "a claim to relief that is plausible

---

[4] Plaintiffs also lack standing to bring claims with respect to the 2015 transaction about which they complain.  Specifically, in December 2015, McBride Capital acquired 14,665.4555 shares of common stock for $2,463,797, or approximately $168 per share (the "2015 Transaction").  Compl. ¶ 45. The Plan subsequently repurchased those same shares in September 2016 *at the same price*. *Id.* ¶ 52.  Plaintiffs have failed to identify any harm they suffered as a result of this round-trip transaction.

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As explained below, each of Plaintiffs' claims must be dismissed because they have failed to satisfy these minimum pleading requirements.

## III. Argument

### A. Plaintiffs Lack Constitutional Standing for Each of Their Claims.

Plaintiffs' claims for monetary, injunctive, and/or declaratory relief must be dismissed because Plaintiffs lack constitutional standing. Plaintiffs seek to recover based on harm they allegedly suffered when defendants "caused the Plan to sell shares of MS Capital at below FMV to the detriment of the Plan's participants and beneficiaries." Compl. ¶ 3. As explained below, Plaintiffs have not suffered the injury in fact required for monetary relief and have failed to allege the real and immediate threat of future harm required for injunctive or declaratory relief.

#### 1. Constitutional Standards

To establish Article III standing, "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotations omitted). A particularized injury is one that affects the plaintiff in a personal and individual way. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citation omitted). Importantly, Plaintiffs do not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. *See also Summers v. Earth Island Instit.*, 555 U.S. 488, 497 (2009) ("[I]njury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.").

2.      **Plaintiffs Have Not Suffered An Injury In Fact.**

Plaintiffs' claims must be dismissed because they did not suffer an injury in fact.

Plaintiffs' sole allegation of personal injury—that they "suffered a diminution in the value of

their Plan accounts because the Plan received a reduced price for MS Capital stock" (Compl. ¶

132)—is demonstrably incorrect.  Plaintiffs did not and could not have suffered any injury due to

the Plan's sale of stock on November 30, 2017 since Plaintiffs no longer held any stock at that

time.  They were unaffected by the transaction.

Specifically, on November 1, 2017, the shares in Plaintiffs' ESOP accounts (along with

those of the other Inactive Participants) were converted to cash pursuant to the Plan.  *See*

Declaration of Patrick J. De Craene ¶¶ 3-4; Declaration of Michael D. Arri ¶¶ 3-4; Ex. D to the

Declaration of Lars C. Golumbic ("Golumbic Decl.") (2017 Plan Amendment) § 10.17.[5]  The

2017 Transaction did not close until November 30, 2017.  Compl. ¶ 53.  In short, because

Plaintiffs held no shares of company stock on the transaction date, they cannot establish any

injury they suffered as a result of that transaction.

Plaintiffs have likewise suffered no injury from the 2015 Transaction.[6]  In essence,

Plaintiffs allege that the Plan sold company stock at a deflated price.  *Id.* ¶¶ 45-51.  Yet,

Plaintiffs acknowledge the Plan repurchased the *same* number of shares at the *same* price in

---

[5] The Court may properly consider the Plan documents at this stage because, as the Seventh Circuit has
observed, "documents attached to a motion to dismiss are considered part of the pleadings if they are
referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis*, 742
F.3d 720, 729 (7th Cir. 2014) (citation and alteration omitted).  Courts routinely hold in ERISA cases that
a plan's governing documents are central to an ERISA complaint and may be considered on a motion to
dismiss.  *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

[6] Although Plaintiffs allege that McBride Capital purchased the shares "from the Plan," the 2015
Transaction was an agreed-to distribution of shares from the Plan to certain employees (not Plaintiffs)
terminated in 2015.  McBride Capital immediately purchased those shares from the terminated
employees.  The Plan repurchased the shares from McBride Capital in 2016.  The distinction is not
material to the McBride Defendants' argument.

September 2016.  *Id.* ¶ 52.  Because the Complaint concedes that the Plan recovered the allegedly undervalued shares at the same price, Plaintiffs can show no harm suffered as a result of the 2015 Transaction.  Plaintiffs therefore have suffered no injury in fact and lack Constitutional standing to pursue monetary relief.

### 3. Plaintiffs Have Not Alleged a Real and Immediate Threat of Future Injury.

Plaintiffs also lack constitutional standing to seek injunctive or declaratory relief because they do not allege a real and immediate threat of future harm.  Plaintiffs describe only *past* actions that allegedly constitute prohibited transactions and breaches of fiduciary duties.  Compl. ¶¶ 45-59.  This is fatal to Plaintiffs' request for declaratory and injunctive relief. *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.") (citation omitted).

To seek injunctive or declaratory relief "a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical[.]" *Summers*, 555 U.S. at 493.  "Even if the plaintiff has suffered a previous injury due to the defendant's conduct, the equitable remedy of an injunction is 'unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again[.]'" *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 301 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  Plaintiffs have made no such allegations here. Their requests for injunctive and declaratory relief should be dismissed for lack of standing.

## B. The Complaint Fails to State a Claim Against the McBride Defendants.

In Counts I through V, Plaintiffs seek to hold each of the McBride Defendants liable under ERISA in connection with the 2015 and 2017 transactions.  Plaintiffs opine that the "true

6

purpose" of these transactions was to benefit "corporate insiders."  Conspiracy theories aside, Plaintiffs' claims lack supporting factual allegations.

### 1.  The Complaint Fails to Allege Fiduciary Status.

Plaintiffs allege that McBride Management and the Individual Defendants (1) caused the Plan to engage in prohibited transactions in 2015 and 2017 (Counts I & III) and (2) breached their fiduciary duties by "causing the Plan to sell MS Capital stock to MS Capita [sic] at a price below fair market value" in 2015 and 2017 (Counts II & IV).  As a threshold matter, both the fiduciary breach claims and the prohibited transaction claims depend on an allegation of fiduciary status.  *See* 29 U.S.C. § 1109(a) ("Any person *who is a fiduciary* with respect to a plan who breaches any of the responsibilities, obligations, or duties *imposed upon fiduciaries* by this subchapter shall be personally liable . . . .") (emphasis added); *id.* § 1106(a)(1) ("A *fiduciary* with respect to a plan shall not . . . .") (emphasis added); *id.* § 1106(b) (same).

ERISA recognizes two types of fiduciaries: (1) named fiduciaries, who are so designated in the written instrument governing the plan, *see id.* § 1102(a)(2), and (2) functional fiduciaries, who become fiduciaries by virtue of the actions they take or the authority they assume on behalf of the plan, *see id.* § 1002(21).[7]  The statute makes clear that, unless an individual is a named fiduciary, a person is a fiduciary only "*to the extent*" that he or she "exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan."  *Id.* (emphasis added).  The "to the extent" language is critical, for it indicates that a person can be a fiduciary

---

[7] ERISA section 3(21) provides, in pertinent part, that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

for one purpose, without being one for all purposes. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (holding that, for every claim of breach of ERISA fiduciary duty, "the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*") (emphasis added). *See also Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004). In short, a defendant must be a fiduciary with respect to the particular acts or omissions complained of—here, causing the Plan to sell company stock at "below fair market value" in both 2015 and 2017. Plaintiffs have failed sufficiently to allege fiduciary status with respect to *any* of the McBride Defendants, and their claims must be dismissed.

### a. Plaintiffs' Conclusory Allegation that McBride Management was a Fiduciary is Contradicted by the Plan Document.

Plaintiffs' claims are premised on the erroneous belief that McBride Management was a Plan fiduciary during the relevant time. *See* Compl. ¶ 20 (alleging that MS Management is the 'named fiduciary' and 'plan administrator'"). A "named fiduciary" is "a fiduciary who is named in the plan." 29 U.S.C. § 1102(a)(2). An "administrator" is "the person specifically so designated by the terms of the instrument under which the plan is operated . . . ." *Id.* § 1002(16)(A). McBride Management was neither.

McBride **Management** cannot be liable for any of the alleged violations because it was not a Plan fiduciary during the relevant period. McBride **Capital** assumed the Plan pursuant to a corporate reorganization in 2013. *See* Ex. B to Golumbic Decl. (2013 Plan Amendment) § 2.8. The relevant Plan documents in effect during the 2015 and 2017 transactions make clear that McBride Capital—*not McBride Management*—was the named fiduciary and Plan administrator. *See id. See also* Ex. C to Golumbic Decl. (2017 Plan Doc.) §§ 2.1, 17.1. Neither does the Complaint contain any allegation that McBride Management served as a functional fiduciary

8

with respect to the transactions at issue.  As McBride Management is not a proper defendant, the claims against it in Counts I through IV should be dismissed.

### b. Plaintiffs Fail to Allege Facts Sufficient to Show the Individual Defendants Functioned as Fiduciaries.

Here, Plaintiffs' ERISA claims against the Individual Defendants fail because Plaintiffs have failed to plead facts sufficient to show that the Individual Defendants acted as fiduciaries with respect to the 2015 and 2017 transactions.  Plaintiffs do not allege that any of the Individual Defendants were "named fiduciaries" (and the Plan documents make clear they were not).  *See generally* Exs. A & C to Golumbic Decl. (2013 and 2017 Plan Docs.).

Moreover, the Complaint does not plausibly allege that any of the Individual Defendants *in practice* exercised discretionary authority or discretionary control, such that they functioned as fiduciaries with respect to the 2015 and 2017 transactions.  The Complaint identifies only *a single action* by *a single individual*—that "Defendant Templeton … signed the Forms 5500." Compl. ¶ 25.[8]  This "fact," however, does not rise to the level of decision-making authority necessary to satisfy ERISA section 3(21).  *See Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1992) (holding that plan administrator whose functions were clerical, mechanical, and ministerial lacked the discretion that is the "*sine qua non* of fiduciary duty") (emphasis added); DOL Interpretive Bulletin 75–8, 29 C.F.R. § 2509.75–8 (1988) ("[A] person who performs purely ministerial functions . . . for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary.").  Even if signing a Form 5500 were sufficient to confer fiduciary status, an

---

[8] Plaintiffs erroneously label Ms. Templeton as the "acting" plan administrator because she signed the Plan's Form 5500.  Under ERISA, the term "administrator" means "the person specifically so designated by the terms of the instrument under which the plan is operated [or] if an administrator is not so designated, the plan sponsor."  29 U.S.C § 1002(16)(A).  The Plan documents do not identify Ms. Templeton as the administrator or plan sponsor.  *See* Exs. A & C to Golumbic Decl.

individual is not made a fiduciary for all purposes. *Baker*, 387 F.3d at 660. Ms. Templeton would only have been a fiduciary "to the extent" that she signed the Forms 5500 (that is, she could only breach duties related to the filing of the Form 5500), not for actions taken with respect to the transactions at issue. The Complaint does not allege that Templeton had anything to do with the transactions.

With respect to the remaining Individual Defendants, the Complaint contains nothing more than conclusory allegations that the individuals functioned as ERISA fiduciaries. The fact that they held corporate offices is insufficient to imbue them with fiduciary responsibilities. *See Confer v. Custom Eng'g Co.*, 952 F.2d 34, 35 (3d Cir. 1991) ("We hold that individual officers of an ERISA plan's fiduciary are not fiduciaries by virtue of their offices[.]"). Plaintiffs must do much more than label the Individual Defendants as fiduciaries and parrot the statutory language. *See Iqbal*, 556 U.S. at 678. Plaintiffs must plead specific facts that establish that each of the Individual Defendants exercised the decision-making authority necessary to cause the Plan to enter into the transactions at issue. Because Plaintiffs have failed to allege such a factual predicate for their ERISA claims, their claims must be dismissed.

### 2. Plaintiffs Have Failed to Plead the Elements of Any Prohibited Transaction.

Beyond failing to plead that McBride Management and the Individual Defendants were fiduciaries with respect to the 2015 and 2017 transactions, Plaintiffs have failed to plead adequate facts in support of the additional elements of their prohibited transaction claims. Plaintiffs simply recite the prohibited transaction elements under ERISA section 406 and plead nothing more than blanket conclusory allegations against multiple parties without distinction or support. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555).

First, Plaintiffs aver that McBride Management and the Individual Defendants violated ERISA subsections 406(a)(1)(A) and (D), which provide that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—(A) sale or exchange, or leasing, of any property between the plan and a party in interest[] . . . [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1). Recognizing the chilling effect this rule would have on the implementation of ESOPs, however, Congress created an exemption to these rules. *See Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006). Under ERISA section 408(e), a plan may sell employer securities "if such acquisition, sale, or lease is for adequate consideration[.]" 29 U.S.C. § 1108(e)(1).

Although some courts have held that plaintiffs generally are not required to plead around section 408's exemptions, Plaintiffs here have put "adequate consideration" directly at issue on the face of their Complaint and thus are required to offer some factual basis for the Court to believe the claims may have merit. *See Scott v. Aon Hewitt Fin. Advisors, LLC*, No. 17-c-679, 2018 WL 1384300, at *11 (N.D. Ill. Mar. 19, 2018) (dismissing prohibited transaction claims as "conclusory" and explaining that although "ordinarily a plaintiff need not anticipate and attempt to plead around affirmative defenses . . . Scott specifically anticipated that Defendants would raise the statutory exemption set forth in § 408"). Indeed, the alleged failure to sell the shares for fair market value stands at the core of Plaintiffs' alleged harm. While Plaintiffs have made conclusory allegations that McBride Management and the Individual Defendants caused the Plan to sell McBride Capital stock at a price below fair market value, the only apparent basis for their conclusion is their own opinion. Plaintiffs do not include a single factual allegation to support the conclusion that the stock price was deflated, and their claims should therefore be dismissed.

11

*See Scott*, 2018 WL 1384300, at *11 ("The Court concludes that Scott's allegations [that compensation paid to investment advisor was excessive] are not sufficient to raise the right to relief above the speculative level.").

Second, Plaintiffs complain that McBride Management and the Individual Defendants violated ERISA section 406(b)(1), which provides that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). In support, Plaintiffs simply recite the statutory language: that they "dealt with the assets of the Plan in their own interest and on their own account when they caused the Plan to sell MS Capital stock[.]" Compl. ¶¶ 74, 102. The Complaint fails to set forth a single allegation describing the supposed self-dealing and thus fails to plead the elements of a section 406(b)(1) claim.

Third, Plaintiffs maintain that McBride Management and the Individual Defendants violated ERISA section 406(b)(2), which provides that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party . . . whose interests are adverse to the interests of the plan." 29 U.S.C. § 1106(b)(2). Again, Plaintiffs provide only a conclusory assertion that "MS Defendants acted on behalf of MS Capital and corporate insiders" "by causing the Plan to sell MS Capital stock to MS Capital at a price below fair market value." Compl. ¶¶ 75, 103. Plaintiffs plead no factual allegations to support their claim that McBride Management and the Individual Defendants "acted on behalf" of McBride Capital or some unidentified "corporate insiders." As a result, these bald accusations fail.

In short, Plaintiffs only offer fact-free allegations of the type the Supreme Court has firmly instructed fail to satisfy notice-pleading standards under the Federal Rules. *See Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 8. Their conclusory statements are nowhere near "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 545, and fail to give the Court

12

any reason even to suspect an ERISA violation here.  Their prohibited transaction claims should be dismissed.

### 3.    Plaintiff Have Failed to Plead Breach of Fiduciary Duty.

Counts II and IV allege that McBride Management and the Individual Defendants breached their fiduciary duties under ERISA section 404(a) "when they caused the Plan to sell MS Capital stock to MS Capita [sic] at a price below fair market value" in 2015 and 2017. Compl. ¶¶ 89, 117.  In support, Plaintiffs assert only that (i) "[t]he price [paid in connection with the 2015 and 2017 transactions] was below fair market value based upon what an unrelated party would pay in an arm's length negotiated transaction as measured by comparison to sales and valuation data on other similarly situated companies in the same industry" (*id*. ¶¶ 49, 56) and (ii) "the fiduciaries to the Plan failed to investigate whether any other unrelated third party was interested in the purchase of MS Capital stock at a higher price."  *Id.* ¶¶ 51, 58.

Plaintiffs' fiduciary duty claims suffer in two respects.  First, as explained above, Plaintiffs have not adequately alleged that McBride Management and each of the Individual Defendants was an ERISA fiduciary.  *See supra*, Section III.B.1.

Second, the Complaint fails to put McBride Management and the Individual Defendants on notice of the claims against them.  Although Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," that statement must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Here, however, Plaintiffs simply lump McBride Management, Messrs. Eilermann and Arri, Ms. Templeton, and GreatBanc together without making any effort to specify what each defendant supposedly did or did not do that caused a breach.  Instead, Plaintiffs assert only that "the fiduciaries to the Plan

13

failed to investigate whether any other unrelated third party was interested in the purchase of MS

Capital stock at a higher price." Compl. ¶¶ 51, 58. Plaintiffs' unsupported assertion that "[t]he

price [paid in connection with the 2015 and 2017 transactions] was below fair market value"

exacerbates this pleading deficiency. *Id.* ¶¶ 49, 56. Nowhere do Plaintiffs identify any of the

supposed comparative "sales and valuation data" or provide any indication as to what the fair

market value should have been or why. In short, Plaintiffs' conclusory allegations leave

McBride Management and the Individual Defendants to speculate as to (i) the factual basis for

Plaintiffs' claim, and (ii) their supposed individual involvement in the conduct underlying

Plaintiffs' claims. Plaintiffs' breach of fiduciary duty claims should be dismissed.

### 4. Plaintiffs Fail to State a Knowing Participation Claim.

In Count V, Plaintiffs seek to impose liability on McBride Capital under ERISA section

502(a)(3), 29 U.S.C. § 1132(a)(3), on the theory that McBride Capital, as a non-fiduciary party

in interest, "knowingly participated" in the alleged prohibited transactions and breaches of

fiduciary duties.[9] In addition to failing to allege the underlying prohibited transactions and

fiduciary breaches, Plaintiffs also fail to plead knowing participation.

Plaintiffs have not adequately alleged that McBride Capital "*knowingly* participated" in

the alleged prohibited transactions and breaches of fiduciary duty. *See Harris Tr. & Sav. Bank v.

Salomon Smith Barney Inc.*, 530 U.S. 238, 251 (2000) (emphasis in original) ("[T]he [defendant

facing a knowing participation claim] must be demonstrated to have had actual or constructive

knowledge of the circumstances that rendered the transaction unlawful. Those circumstances, in

turn, involve a showing that the *plan fiduciary*, with actual or constructive knowledge of the

---

[9] As explained above, *supra* Section III.B.1.a., Plaintiffs incorrectly identify McBride Management and
McBride Capital. Even assuming Plaintiffs' facts were correct, they have failed to state claim.

facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction."). Plaintiffs rest only on supposition and speculation that McBride Capital knew, among other things, that the transactions were "not for fair market value," that the other defendants "engaged in transactions prohibited" by ERISA, and "that the true purpose [of the transactions] was to benefit MS Homes corporate insiders including the MS Defendants." Compl. ¶ 126. Plaintiffs have not alleged with any degree of specificity that McBride Capital possessed the requisite knowledge. *See id.* Absent such facts, Plaintiffs have not adequately pled their knowing participation claim.

With respect to Plaintiffs' claim of knowing participation in a breach of fiduciary duty, the Complaint fails for the additional reason that there are no factual allegations that McBride Capital "*participated*" as contemplated by case law. Plaintiffs must allege participation in the actual breach of the duty, not simply participation as a counter-party to a transaction. Participation means "affirmative assistance—or a failure to act when required to do so—that enables a breach [of fiduciary duty] to proceed." *DeLaurentis v. Job Shop Tech. Servs., Inc.*, 912 F. Supp. 57, 64 (E.D.N.Y. 1996) (dismissing knowing participation claim). That is, participation must be direct involvement that facilitates the fiduciary's alleged breach. As Plaintiffs have failed to plead any such involvement here, Count V should be dismissed.

## IV.   Conclusion

For the foregoing reasons, the McBride Defendants respectfully request that the Court Dismiss the Complaint in full.

Dated: February 5, 2019          Respectfully submitted,

/s/ Lars C. Golumbic

Lars C. Golumbic (admitted *pro hac vice*)
Sarah M. Adams (admitted *pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW, Ste. 1200
Washington, DC 20006
Tel: (202) 861-6615; Fax: (202) 659-4503
Email: lgolumbic@groom.com
       sadams@groom.com

Daniel Broderick, Jr.
ARDC No. 6304632
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
Tel: (312) 641-3100; Fax: (312) 444-1669
Email: DBroderick@cassiday.com

*Counsel for Defendants McBride & Son Management Company, LLC, John F. Eilermann, Jr., Michael D. Arri, Andrea Templeton, and McBride & Son Capital, Inc.*

16