UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY GODFREY and JEFFREY SHELDON, on behalf of the MCBRIDE & SON EMPLOYEE STOCK OWNERSHIP PLAN, and on behalf of a class of all other persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GREATBANC TRUST COMPANY, MCBRIDE & SON MANAGEMENT COMPANY, LLC, JOHN F. EILERMANN, JR., MICHAEL D. ARRI, ANDREA TEMPLETON, JOHN DOES 1 - 10, and MCBRIDE & SON CAPITAL, INC., <br><br> Defendants. | Case Number 18-cv-07918 <br><br> Judge Matthew F. Kennelly <br><br> Magistrate Judge Michael T. Mason |

## DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Plaintiffs' Motion to Compel is a thinly-veiled attempt to finagle the Court into permitting merits discovery to prop up their threadbare Complaint. The Motion points to the principle that the Federal Rules permit "broad, liberal discovery[,]" Mot. at 3 (citation omitted), ignoring the Constitutional and pleading hurdles that stand between them and merits discovery. At this stage of the case, "the party seeking jurisdictional discovery must explain how the evidence it seeks will raise a genuine issue of material fact relevant to subject matter jurisdiction." *F.D.I.C. v. Dosland*, 50 F. Supp. 3d 1070, 1078 (N.D. Iowa 2014). Plaintiffs' Motion fails to do so.

### I. Background

Plaintiffs' Complaint is based on the proposition that, as a result of the November 30, 2017 redemption of shares held by the McBride & Son Employee Stock Ownership Plan (the

1

"Plan" or the "ESOP"), they have "suffered a diminution in the value of their Plan accounts because the Plan received a reduced price for MS Capital stock." Compl. ¶ 132. The McBride Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction[1] similarly was based on a single factual premise: that Plaintiffs suffered no injury-in-fact because they did not hold shares that were included in that transaction.[2] This Court decided that limited jurisdictional discovery was needed to determine whether that premise was true or false. *See* Dkt. No. 28 ("Plaintiffs may take **limited** discovery within 30 days as stated in open court.") (emphasis added); Feb. 12, 2019 Hr'g Tr. at 10:10-15 ("[THE COURT:] [W]e are not talking about wide ranging discovery here. We are talking about an extremely modest number of documents . . . sufficient to show . . . a couple of key points[.]").

After meeting and conferring with Plaintiffs' counsel, Defendants agreed to—and did—produce (1) documents authorizing the conversion of Plaintiffs' stock on November 1, 2017, (2) bank account statements and wire transfer details evincing the conversion of Plaintiffs' stock on November 1, 2017, (3) correspondence between McBride Defendants and Plaintiffs concerning their accounts in the Plan and the 401(k) between October 2017 and April 2018, (4) Plaintiffs' 401(k) account statements from the fourth quarter of 2017 and the first quarter of 2018, (5) documents reflecting the conversion of the Plan to a profit sharing plan and the subsequent merger into the McBride 401(k) savings plan, and (6) as a courtesy (as they are not relevant to the standing question), certain documents explaining the recapitalization process referred to in correspondence to Plaintiffs. The documents Defendants produced show that the Plaintiffs'

---

[1] Defendant GreatBanc also moved to dismiss for lack of subject matter jurisdiction, adopting the reasoning of McBride Defendants. Dkt. No. 26.
[2] Defendants have also moved to dismiss Plaintiffs' claims as to the December 2015 transaction for lack of constitutional standing. Dkt. No. 24 at 5-6; Dkt. No. 26. Plaintiffs seek no documents concerning that transaction.

ESOP accounts were cashed out before the transaction alleged in the Complaint. Nothing more is needed.

## II. Argument

Despite Defendants' agreement to produce the documents described above, Plaintiffs have moved to compel production of additional documents concerning (1) the "fiduciary process" that led to the conversion of Plaintiffs' stock on November 1, 2017 and (2) "valuation reports and supporting material" used in connection with the November 1, 2017 conversion of Plaintiffs' stock. Plaintiffs fail to explain how these documents are at all relevant to the sole jurisdictional issue—whether Plaintiffs suffered a personal injury in connection with the transaction alleged in the complaint. Documents regarding the fiduciary process and valuation would not provide useful evidence of the Plaintiffs' standing. There is no circumstance or scenario that such evidence would establish that the Plaintiffs are the proper party to assert claims on behalf of the ESOP. Simply put, Plaintiffs' requests are immaterial. Indeed, this Court will search in vain for any mention of valuations or the so-called fiduciary process as a basis for McBride Defendants' motion to dismiss, and likewise no reference to the November 1, 2017 conversion in Plaintiffs' complaint. This is fatal to Plaintiffs' requests.

Plaintiffs' assertions that Defendants "refuse to produce document[s]" that show Plaintiffs were unaffected by the complained-of transaction and that Plaintiffs' requests are "specifically relevant" to "whether the [conversion of Plaintiffs stock on November 1, 2017] took place at all" are simply false. Mot. 5, 6. Defendants do not dispute that Plaintiffs are entitled to facts showing just that. But what Plaintiffs fail to acknowledge is that—after producing, among other things, documents providing the authority to convert Plaintiffs' stock, correspondence between McBride Defendants and GreatBanc concerning the conversion of

Plaintiffs' stock, bank account and wire transfer details, communication between McBride Defendants and Plaintiffs concerning their ESOP and 401(k) accounts, 401(k) account statements, and documents detailing the recapitalization process—Defendants have divulged those facts and more.

Plaintiffs principally rely on a disfavored out-of-Circuit decision in an effort to obtain a broader range of documents than those necessary to answer the jurisdictional question. Plaintiffs cite the Second Circuit's decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.* and argue they will have standing if the conversion of their shares on November 1, 2017 (a transaction not included in the Complaint) "implicates the 'same set of concerns'" as the November 30, 2017 transaction. Mot. at 2, 3, 5, 6 (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012)). Not so.

The situation presented in *NECA-IBEW* was fundamentally different from the situation here. In that case, the court had "**already held that NECA personally suffered injury** as a result of defendants' inclusion of allegedly misleading statements in the Offering Documents associated with the Certificates it purchased," and therefore possessed Article III standing. 693 F.3d at 162 (emphasis added). Having established Article III standing, the question was whether Plaintiff further had class standing to represent certain other individuals who purchased different certificates. The opposite is true here. Plaintiffs have not shown (and cannot show) they suffered any personal injury in connection with the transaction alleged in the Complaint. It is undisputed that Plaintiffs were not involved in that transaction because their Company stock was liquidated on November 1, 2017—a month before the transaction closed. Yet they ask this Court to confer Article III standing on the basis of that previous liquidation *not* alleged in the

4

Complaint, without any showing of personal harm.  They are *un*injured individuals seeking to represent absent parties—a far cry from the situation in the case on which they rely.

Moreover, numerous courts have rejected the *NECA-IBEW* decision setting forth the class standing standard Plaintiffs seek to apply.  In *In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation*, the court explained, "[t]he Court again rejects the reasoning of the Second Circuit's recent decision [in *NECA-IBEW*] on class standing.  That decision is inconsistent with Supreme Court precedent. … ***The decision is inconsistent with the prior rulings of every federal court*** to consider similar questions in the [residential mortgage-backed securities] context, including the First Circuit Court of Appeal and numerous district courts, both in and outside the Second Circuit. Those courts extend standing only to the offerings or tranches purchased by the named plaintiff."  934 F. Supp. 2d 1219, 1229 (C.D. Cal. 2013) (emphasis added) (internal citations omitted).[3]  Instead, the standard is the one articulated by the Supreme Court:  that Plaintiffs must show they have actually suffered an injury-in-fact as a result of the transaction alleged in the complaint.  *See Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1548 (2016).[4]

---

[3] *See also Oklahoma Law Enf't Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-00449, 2018 WL 4352836, at *6 (E.D. Tex. Sept. 12, 2018) (explaining that the class standing doctrine of *NECA-IBEW* "has not been adopted by the Fifth Circuit and a district court within the Fifth Circuit has rejected the doctrine in its entirety. . . .  [T]he class standing doctrine does not comport with the traditional rules of standing and [] the Supreme Court never intended to create such a doctrine.").

[4] Plaintiffs also cite a myriad of cases in which courts have found that a plan participant has standing to challenge a plan's lineup of investment options, even if the participant did not personally invest in each of the challenged funds.  Contrary to Plaintiffs' suggestion, however, those cases are far from universally accepted, and they are inapposite.  *See, e.g.*, *Wilcox v. Georgetown Univ.*, No. CV 18-422 (RMC), 2019 WL 132281, at *9 (D.D.C. Jan. 8, 2019) ("Plaintiffs clearly cannot allege an individual violation of ERISA as to the Vanguard funds, which is an investment option neither Plaintiff selected."); *Johnson v. Delta Air Lines, Inc.*, No 1:17-cv-2608, 2017 WL 10378320, at *2 (N.D. Ga. Dec. 12, 2017) ("Plaintiffs have not alleged that they were invested in the criticized funds or paid the allegedly excessive fees.  Therefore, Plaintiffs do not have standing.").  Here, Plaintiffs were not a part of the transaction at issue at all, and this line of cases does not save them.

There is no reason to relieve Plaintiffs of meeting this standard and to permit discovery outside the confines of the jurisdictional question before this Court. Accordingly, Plaintiffs' Motion should be denied.

### III.     Conclusion

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Motion to Compel Discovery be denied.

Dated: March 6, 2019

Respectfully submitted,

/s/ Lars C. Golumbic
Lars C. Golumbic (admitted *pro hac vice*)
Sarah M. Adams (admitted *pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW, Ste. 1200
Washington, DC 20006
Tel: (202) 861-6615; Fax: (202) 659-4503
Email: lgolumbic@groom.com
          sadams@groom.com

Daniel Broderick, Jr.
ARDC No. 6304632
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
Tel: (312) 641-3100; Fax: (312) 444-1669
Email: DBroderick@cassiday.com

*Counsel for Defendants McBride & Son Management Company, LLC, John F. Eilermann, Jr., Michael D. Arri, Andrea Templeton, and McBride & Son Capital, Inc.*

/s/ Michael L. Scheier
Michael L. Scheier (Ohio 0055512)
Brian P. Muething (Ohio 0076315)
Jacob D. Rhode (Ohio 0089636)
KEATING MUETHING & KLEKAMP PLL
One E. 4th Street, Suite 1400
Cincinnati, OH  45202

Tel: (513) 579-6400
Fax: (513) 579-6457
mscheier@kmklaw.com
bmuething@kmklaw.com
jrhode@kmklaw.com

Ross D. Taylor (6198181)
KEATING MUETHING & KLEKAMP PLL
125 S. Clark St., 17th Floor
Chicago, IL 60603

*Attorneys for Defendant GreatBanc Trust Company*