**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS

GREGORY GODFREY, et. al.,

                   Plaintiffs,

v.

GREATBANC TRUST COMPANY, et al.,

                   Defendants.

Case Number 18-cv-07918

Judge Matthew F. Kennelly

Magistrate Judge Michael T. Mason

**[Oral Argument Requested]**

## MEMORANDUM OF LAW IN SUPPORT OF McBRIDE DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I.     Introduction ............................................................................................................... 1

II.    Legal Standard ......................................................................................................... 2

III.   Argument .................................................................................................................. 3

   A.   Plaintiffs Have Failed To Allege Fiduciary Status Of The "MS Fiduciaries." ................ 3

     1.   Plaintiffs have improperly named MS Management and MS Capital as Plan fiduciaries for several claims. ...................................................................... 4

     2.   Plaintiffs fail to allege plausibly that MS Companies is a fiduciary. ........................... 5

     3.   Plaintiffs fail to allege Eilermann, Arri, and Templeton functioned as fiduciaries. ........ 6

     4.   The Plan Committee is not a proper party for any claim. ........................................ 7

   B.   Plaintiffs Have Failed To Plead The Elements Of A Prohibited Transaction (Count I).. 8

   C.   Count II Should Be Dismissed.................................................................................. 10

   D.   Counts IV And V Challenge Acts Not Governed By ERISA........................................ 11

   E.   Even If ERISA Applied, Plaintiffs Fail To Plead A Breach In Count IV. .................... 12

   F.   Plaintiffs' Duty To Monitor Claims Should Be Dismissed (Count VI)........................ 14

   G.   Plaintiffs Fail To State Knowing Participation Claims (Counts III And V)................. 14

IV.   Conclusion .............................................................................................................. 15

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the McBride Defendants[1] move to dismiss Plaintiffs' First Amended Complaint (Dkt. No. 36) ("Amended Complaint" or "AC").

## I.    Introduction

McBride established the McBride & Son Employee Stock Ownership Plan[2] ("Plan" or "ESOP") in 1987. For decades, Plan participants saw the value of their ESOP accounts increase, and, at times, soar. Like residential homebuilders nationwide, however, McBride operates in a cyclical industry prone to significant volatility. McBride historically weathered these cycles well, but the 2008 housing crisis that spurred the Great Recession was a game changer. In less than a year, the value of company stock dropped from $465.75 to $88.20 per share.

Unlike so many of its competitors, McBride navigated its way through the financial crisis. By the close of 2016, the stock price had risen to $153. Anticipating the next potential downward cycle and recalling the experience of 2008, the company decided to eliminate the risk inherent in the investment of Plan participants' retirement savings in a single stock. To that end, the company took steps to close the ESOP and roll the assets into the company's 401(k) plan, where participants could build a more diversified retirement portfolio. In November 2017, MS Capital redeemed all of the outstanding shares of common stock held by the Plan at $187 per

---

[1] The McBride Defendants are McBride & Son Capital, Inc. ("MS Capital"), McBride & Son Management Company, LLC ("MS Management"), John F. Eilermann, Jr., Michael D. Arri, Andrea Templeton, the McBride & Son Employee Stock Ownership Plan Administrative Committee ("Plan Committee"), McBride & Son Companies, LLC ("MS Companies"), Jeffrey Schindler, and Jeffrey Todt.

[2] An ESOP is a defined contribution pension benefit plan that "invests primarily in the employer's stock." *Keach v. U.S. Trust Co., N.A.*, 313 F. Supp. 2d 818, 862 (C.D. Ill. 2004). While employers are under no obligation to provide their employees with retirement plans of any sort, let alone ESOPs, Congress saw fit to offer certain tax benefits to encourage companies to establish ESOPs for their employees, believing that facilitating employee ownership would align the interests of employees and employers, to the benefit of both. *See* STAFF OF THE S. COMM. ON FIN., 95TH CONG., ESOPS AND TRASOPS: AN EXPLANATION FOR EMPLOYEES 10 (Comm. Print 1978). Of course, this means that, as shareholders of the corporation, participants (such as Plaintiffs) see the value of their interests rise and fall with the fortunes of the company.

share (the "2017 Transaction").

Plaintiffs assume there must have been something inappropriate about that decision. Knowing they cannot challenge the decision itself, since ERISA does not govern an employer's decision to terminate a plan, they maintain there must have been something wrong with the sale price. The factual allegations, however, fail to live up to the over-the-top promises in the "Background" section that a vast conspiracy is about to be revealed. They offer no coherent set of facts sufficient for the Court to conclude that, if true, the sale price was too low. Then, to bolster their inadequate claims about the 2017 Transaction, Plaintiffs throw in allegations about a 2013 corporate reorganization, without specifically explaining what happened or how they were harmed by it. The Amended Complaint turns out to be nothing more than fiery rhetoric that fails to satisfy minimum pleading standards. For this reason, the Court should dismiss the claims against the McBride Defendants with prejudice.

## II.    Legal Standard

Plaintiffs must plead "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. As explained below, each of Plaintiffs' claims must be dismissed because they have failed to satisfy these minimum pleading requirements.[3]

---

[3] Although Plaintiffs avoid using the term "fraud," that is what Plaintiffs now allege in Counts I-V. *See Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 984-85 (N.D. Ill. 2006), *aff'd*, 521 F.3d 702 (7th Cir. 2008) ("Although paragraph 71 does not use the term 'fraud' or 'fraudulent,' it alleges conduct that is classically associated with fraud: a 'scheme' and 'course of conduct' engaged in by the defendants to disseminate inaccurate and misleading information. The court finds that this allegation is sufficient to bring paragraph 71 within Rule 9(b)'s ambit.").

### III. Argument

The Amended Complaint recasts Plaintiffs' original complaint as uncovering a "secret and concerted year's long campaign" to steal from the Plan. In doing so, however, Plaintiffs have made their claims even less plausible. Conspiracy theories aside, the Amended Complaint rests on conclusory allegations made against numerous Defendants without distinction or factual support and otherwise fails to state a claim against the McBride Defendants. As a result, the Amended Complaint should be dismissed in its entirety.

### A. Plaintiffs Have Failed To Allege Fiduciary Status Of The "MS Fiduciaries."

Plaintiffs allege that "MS Fiduciaries"—which Plaintiffs define as every single McBride Defendant except Messrs. Schindler and Todt (AC ¶ 73)—all caused the Plan to engage in a prohibited transaction in 2017 (Count I). Plaintiffs further allege that "MS Fiduciaries" all breached their fiduciary duties by (1) "caus[ing] the Plan to sell MS Capital stock to MS Capital at a price below fair market value" in 2017 (Count II); (2) "fail[ing] to protect the Plan from the theft of value of Plan assets" (Count IV); and (3) "fail[ing] to monitor and [] terminate GreatBanc as Trustee" (Count VI). Each of these claims depends on an allegation of fiduciary status. *See* 29 U.S.C. § 1106(a)(1) ("A *fiduciary* with respect to a plan shall not . . . .") (emphasis added); *id.* § 1106(b) (same); *id.* § 1109(a) ("Any person *who is a fiduciary* with respect to a plan who breaches any of the responsibilities, obligations, or duties *imposed upon fiduciaries* by this subchapter shall be personally liable . . . .") (emphasis added).

---

Plaintiffs state that "[t]his suit intends to bring to bring [sic] to light, and make right, **the systematic and concerted effort** by corporate insiders **to steal for themselves**[.]" AC ¶ 1 (emphasis added). Plaintiffs aver that they "have only recently learned" that "the 2017 Transaction was the **final chapter in a secret and concerted year's long campaign** to take the value of the assets held by the ESOP." *Id.* ¶¶ 1, 158 (emphasis added). Therefore, the heightened pleading standard set forth in Rule 9(b) applies here, and Plaintiffs "must state with particularity the circumstances" surrounding the alleged fraud. *See* F.R.C.P. 9(b).

ERISA recognizes only two types of fiduciaries: (1) named fiduciaries, who are so designated in the written instrument governing the plan, *see id.* § 1102(a)(2), and (2) functional fiduciaries, who become fiduciaries by virtue of the actions they take or the authority they assume on behalf of the plan, *see id.* § 1002(21). The statute makes clear that, unless an individual is a named fiduciary, a person is a fiduciary only "*to the extent*" that he or she "exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan." *Id.* (emphasis added). The "to the extent" language is critical, for it indicates that a person can be a fiduciary for one purpose, without being one for all purposes. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (holding that, for every claim of breach of ERISA fiduciary duty, "the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*") (emphasis added).

Plaintiffs group seven separate Defendants together under the title "MS Fiduciaries" and declare in conclusory fashion that each is a fiduciary for all purposes. Plaintiffs fail properly to allege fiduciary status, and their claims should be dismissed as explained below. *See Caudle v. Life Ins. Co. of N. Am.*, 33 F. Supp. 3d 1288, 1294 (N.D. Ala. 2014) ("[S]imply lumping all the Honda Defendants together as 'Honda entities' in an unacceptable shotgun format does not satisfy her Rule 8 obligation to assert her ERISA-based counts against each defendant[.]").

1. **Plaintiffs have improperly named MS Management and MS Capital as Plan fiduciaries for several claims.**

In making blanket allegations against "MS Fiduciaries," Plaintiffs assert that MS Management is liable for alleged violations of ERISA *after* MS Capital assumed the Plan, and that MS Capital is liable for alleged ERISA violations *before* it assumed the Plan. Plaintiffs assert that MS Management is liable as a Plan fiduciary in Counts I, II, IV, and VI. MS

Management cannot be liable for any of the alleged violations post-dating December 31, 2013, however, because it was not a Plan fiduciary during that period. Ex. B to Golumbic Decl. (2013 Plan Amendment) § 2.8.[4] The relevant Plan documents make clear that MS Capital—*not MS Management*—was the named fiduciary effective January 1, 2014. *See id. See also* Ex. C to Golumbic Decl. (2017 Plan Doc.) §§ 2.8, 17.1. Plaintiffs acknowledge as much. AC ¶ 30 ("[E]ffective January 1, 2014, MS Capital was to replace MS Management in all respects …"). Plaintiffs do not allege that MS Management continued to function as a fiduciary.

Conversely, in Counts IV and VI Plaintiffs purport to assert that MS Capital is liable as a Plan fiduciary for conduct *before* it assumed the Plan. The Plan documents, however, make clear that MS Management was the named fiduciary prior to January 1, 2014. Ex. A to Golumbic Decl. (2013 Plan Doc.) §§ 2.1, 17.1. The Court should therefore dismiss all counts against MS Management with respect to conduct post-dating December 31, 2013 and all counts against MS Capital with respect to conduct pre-dating January 1, 2014.

## 2. Plaintiffs fail to allege plausibly that MS Companies is a fiduciary.

Plaintiffs also include MS Companies under the "MS Fiduciaries" banner in Counts I, II, IV, and VI. Plaintiffs do not allege, however, that MS Companies was a named fiduciary. Nor do they allege that it functioned as a fiduciary. Rather, Plaintiffs allege only that "[t]o the extent that MS Companies met the definition of Employer, it was a fiduciary[.]" AC ¶ 70. Even assuming this allegation were sufficient to allege MS Companies met the definition of "Employer," the allegation fails to support fiduciary status.

---

[4] The Court may properly consider the Plan documents at this stage because they are "referred to in the plaintiff's complaint and are central to his claim." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (citation and alteration omitted). Courts routinely hold in ERISA cases that a plan's governing documents are central to an ERISA complaint and may be considered on a motion to dismiss. *See, e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

The Plan document makes clear that an "Employer" is a fiduciary "only with respect to their respective specific responsibilities for Plan and Trust administration, all as assigned in Article 17 … **none [] shall be a Fiduciary with respect to any responsibility not specifically and expressly assigned to it**."  Exs. A & B to Golumbic Decl. (2013 & 2017 Plan Docs.) § 2.27 (emphasis added).  The Plan, in turn, identifies *no* relevant fiduciary role played by "Employers." *See generally id.*  Nor do Plaintiffs identify a single Plan provision to the contrary.  Thus, the claims against MS Companies should be dismissed.

### 3.  Plaintiffs fail to allege Eilermann, Arri, and Templeton functioned as fiduciaries.

Plaintiffs' allegations against the individual Defendants—Messrs. Eilermann and Arri, and Ms. Templeton—fail because Plaintiffs have failed to plead facts sufficient to show that these individuals acted as fiduciaries with respect to any of the challenged acts.  As an initial matter, the Plan documents make clear that none were "named fiduciaries."  *See generally id.*

Moreover, Plaintiffs do not plausibly allege that each of these individuals *in practice* exercised discretionary authority or discretionary control, such that they functioned as fiduciaries with respect to each challenged act or omission.  Plaintiffs again seek to impose fiduciary status on Ms. Templeton for all purposes because she "signed a Form 5500."  AC ¶¶ 67, 159-61 (alleging Ms. Templeton is the "delegated plan administrator" because she filed Form 5500s). *See also id.* ¶ 53 (asserting that Mr. Eilermann "is the plan administrator to the Plan when he signed a Form 5500").  This "fact," however, does not rise to the level of decision-making authority necessary to satisfy ERISA section 3(21).  *See Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1992) (holding that plan administrator whose functions were clerical, mechanical, and ministerial lacked the discretion that is the "*sine qua non* of fiduciary duty") (emphasis added) (citing 29 C.F.R. § 2509.75-8).  Even if signing a Form 5500 were

sufficient to confer fiduciary status, an individual is not made a fiduciary for all purposes. *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004). Ms. Templeton (like Mr. Eilermann) would only be a fiduciary "to the extent" that she signed Form 5500s, not for actions taken with respect to the alleged acts here. Plaintiffs do not allege that Ms. Templeton played any role whatsoever with respect to the claims alleged here.

With respect to Messrs. Eilermann and Arri, the Amended Complaint contains nothing more than conclusory, fact-free allegations that the individuals "were fiduciaries" or "exerted effective control" over the Plan.[5] While Plaintiffs point to these individuals' corporate titles (AC ¶ 60), that is not enough. *See Confer v. Custom Eng'g Co.*, 952 F.2d 34, 35 (3d Cir. 1991) ("[I]ndividual officers of an ERISA plan's fiduciary are not fiduciaries by virtue of their offices[.]"). Plaintiffs must do much more than label these individuals as fiduciaries and parrot the statutory language. *See Iqbal*, 556 U.S. at 678. Plaintiffs must plead specific facts that establish that each of them exercised the decision-making authority necessary to cause the Plan to enter into the transactions at issue or had the responsibility to perform the fiduciary functions alleged. Plaintiffs have failed to do so, and their claims must be dismissed.

**4. The Plan Committee is not a proper party for any claim.**

Plaintiffs' claims against the Plan Committee are premised on the erroneous assumption that "two or more individuals [were] appointed administrators" under the Plan. AC ¶ 68. Plaintiffs, however, acknowledge that the "Company" was, at all relevant times, the "Plan

---

[5] Plaintiffs also aver that "Arri testified under oath that he was acting as an administrator" in connection with the conversion of stock in certain former employees ESOP accounts. AC ¶ 148. Setting aside that this is a gross misstatement of Mr. Arri's testimony (which was that MS Capital was the administrator at the time), it is immaterial. Even if Plaintiffs were right, Mr. Arri's supposed role in the conversion of stock would make him a fiduciary for that purpose *only*. Fiduciary status with respect to the stock conversion cannot support a conclusion of fiduciary status with respect to the claims actually alleged in the Amended Complaint, particularly where Plaintiffs disavow that the conversion even occurred. *See* AC ¶ 140.

Administrator." *Id.* ¶ 42 (MS Capital "is, effective January 1, 2014 the … 'plan administrator'"); *id.* ¶ 46 (MS Management was "prior to January 1, 2014, the … 'plan administrator'"). The Plan documents, which are in Plaintiffs' possession, confirm as much. *See, e.g.*, Ex. D to Golumbic Decl. (2017 SPD) at 4 (MS Capital "is [] the 'Plan Administrator.'"). That is, no "Plan Committee" existed under the Plan, and the claims against it should be dismissed.[6]

**B. Plaintiffs Have Failed To Plead The Elements Of A Prohibited Transaction (Count I).**

In addition to their failure to plead fiduciary status, Plaintiffs have failed to plead adequate facts in support of the additional elements of their prohibited transaction claim. They recite the elements, but plead nothing more than blanket conclusory allegations against eight separate parties without distinction or support. *Iqbal*, 556 U.S. at 678.

First, Plaintiffs aver that the "Count I Defendants"[7] violated ERISA subsections 406(a)(1)(A) and (D).[8] On their face, those subsections prohibit *any* stock sale between a plan and the employer of its participants—which would render illegal the very ESOPs Congress sought to encourage. For this reason, Congress included a set of exemptions to work in tandem with these rules. *See Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006). Under ERISA section 408(e), a plan may sell employer securities "if such acquisition, sale, or lease is for adequate consideration[.]" 29 U.S.C. § 1108(e)(1).

---

[6] As explained above, Section III.A.3, Plaintiffs cannot rely on the erroneous belief that Ms. Templeton and Mr. Eilermann were "delegated Plan Administrators" as a result of signing a Form 5500. Moreover, Plaintiffs do not even allege that both Ms. Templeton and Mr. Eilermann were "administrators" at the same time, undercutting any notion that a committee existed.

[7] Plaintiffs refer to GreatBanc plus the mis-named "McBride Fiduciaries" as the "Count I Defendants."

[8] "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—(A) sale or exchange, or leasing, of any property between the plan and a party in interest[] . . . [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1).

Plaintiffs have put "adequate consideration" directly at issue and thus are required to offer some factual basis for the Court to believe the claims have merit. *See Scott v. Aon Hewitt Fin. Advisors, LLC*, No. 17-c-679, 2018 WL 1384300, at *11 (N.D. Ill. Mar. 19, 2018) (dismissing prohibited transaction claims as "conclusory" and explaining that although "ordinarily a plaintiff need not anticipate and attempt to plead around affirmative defenses . . . Scott specifically anticipated that Defendants would raise the statutory exemption set forth in § 408"). Indeed, the alleged failure to sell the shares for fair market value stands at the core of Plaintiffs' alleged harm. While Plaintiffs have made conclusory allegations that the "Count I Defendants" caused the Plan to sell MS Capital stock at a price below fair market value, the only apparent basis for their conclusion is their own opinion.

Although Plaintiffs complain about the December 31, 2016 valuation, AC ¶¶ 101-04, they conveniently ignore their own allegation that the sales price was *higher* than what that valuation provided. Whereas "[t]he December 31, 2016, valuation was $**153** per share," the 2017 Transaction relied upon a "Sale Price of $**187**." *Id.* ¶¶ 92, 97 (emphasis added). Plaintiffs offer no factual allegations in support of their "below fair market value" conclusion, and none that explain how they were damaged by receiving a 22% premium over the 2016 valuation price.

Second, Plaintiffs complain that the "MS Fiduciaries" violated ERISA section 406(b)(1). In support, Plaintiffs recite the statutory language—that Defendants "dealt with the assets of the Plan in their own interest and on their own account" (AC ¶ 211)—and cite to their unsupported allegations concerning the "true purpose" of the 2017 Transaction. Plaintiffs, however, fail to plead *factual* allegations supporting their supposed self-dealing theory against each of the named McBride Defendants, much less with the specificity required under Rule 9(b). Thus, the Amended Complaint fails to plead the elements of a section 406(b)(1) claim.

9

Third, Plaintiffs maintain that the "Count I Defendants" violated ERISA section 406(b)(2).  Plaintiffs again parrot the statutory language, alleging that Defendants "acted on behalf of MS Capital and corporate insiders" "by causing the Plan to sell MS Capital stock to MS Capital at a price below fair market value."  AC ¶ 212.  Plaintiffs include no factual allegations supporting their claim that each of the named Defendants "acted on behalf" of MS Capital or "corporate insiders."  As a result, these bald accusations fail.

In short, Plaintiffs only offer fact-free allegations of the type the Supreme Court has firmly instructed fail to satisfy notice-pleading standards under the Federal Rules, *see Iqbal*, 556 U.S. at 678; Fed. R. Civ. P. 8, let alone Rule 9's heightened pleading standard.

## C.  Count II Should Be Dismissed.

Plaintiffs claim that each of the "Count II Defendants" breached their duties "when they did not make a good faith determination of value in the 2017 ESOP Transaction[.]"  AC ¶ 227.[9] Plaintiffs again name multiple Defendants without distinction.  *Id.*  They again resort to their cursory assertion that the 2017 Transaction was "below fair market value . . . as measured by comparison to sales and valuation data on other similarly situated companies[.]"  *Id.* ¶ 100. Nowhere do Plaintiffs identify any of the supposed comparative "sales and valuation data" or provide any indication as to what the fair market value should have been or why.[10]  These conclusory statements do not suffice.  *Iqbal*, 556 U.S. at 678.

---

[9] Count II further alleges that some unspecified Defendants "failed to monitor and to remove fiduciaries, officers, managers, and officers [sic]."  *Id.* ¶ 227.  Plaintiffs nowhere identify which individuals should have been removed, or why, or which others had the authority to remove or the responsibility to monitor them.

[10] Elsewhere in the Amended Complaint, Plaintiffs aver that "it was inconsistent with … MS Fiduciaries' duties to rely on the December 31, 2016, valuation report."  *Id.* ¶ 101.  As explained above, Plaintiffs acknowledge that the price used in connection with the transaction was *not* the December 31, 2016 valuation price—it was considerably higher.  Section III.B., *supra*.

**D. Counts IV And V Challenge Acts Not Governed By ERISA.**

In Count IV, Plaintiffs allege that the "MS Fiduciaries" breached their ERISA fiduciary duties through the alleged "transfer of equity or ownership of a subsidiary" and the "payment of excessive compensation and perquisites." AC ¶ 157. Count V alleges "knowing participation" in the same. These claims rest on alleged *corporate* acts not subject to ERISA.

In complaining about the 2013 corporate restructuring, Plaintiffs have disregarded the fundamental ERISA principle that an ERISA fiduciary may wear "two hats." *See Pegram*, 530 U.S. at 225 ("[T]he trustee at common law characteristically wears only his fiduciary hat when he takes action to affect a beneficiary, whereas the trustee under ERISA may wear different hats."). This is because ERISA plans are typically sponsored by the participants' employer, which must be free to make business decisions as appropriate. As the Supreme Court explained:

> Under ERISA, … a fiduciary may have financial interests adverse to beneficiaries. Employers, for example, can be ERISA fiduciaries and still take actions to the disadvantage of employee beneficiaries, when they act as employers (*e.g.*, firing a beneficiary for reasons unrelated to the ERISA plan), or even as plan sponsors (*e.g.*, modifying the terms of a plan as allowed by ERISA to provide less generous benefits).

*Id.; see also Armstrong v. Amsted Indus., Inc.*, No. 01-c-2963, 2004 WL 1745774, *4 (N.D. Ill. July 30, 2004) ("[O]fficers of the plan's sponsoring employer[] assume fiduciary status only when and to the extent they act as plan administrators, not when they conduct business unregulated by ERISA."). ERISA claims challenging corporate acts fail as a matter of law.

Plaintiffs' allegations present an even starker contrast than that described in *Pegram*, where the Supreme Court acknowledged that ERISA fiduciaries may make even unfavorable changes to benefit plans while wearing their settlor hats. Here, Plaintiffs' allegations are based not on changes to the *Plan* by corporate decision-makers—which would have been permissible

11

anyway—but on changes to the *corporation*. Such corporate decisions concerning organizational structure are simply not governed by ERISA.[11] Nor are Plaintiffs' compensation-related claims. Compensation is a quintessential business decision not subject to ERISA. *Kerstein v. Plast-O-Matic Valves, Inc.*, No. 07-cv-4156, 2008 WL 2942135, *6 (D.N.J. July 30, 2008) ("[D]ecisions such as approving loans, setting director pay … are business decisions that do not invoke fiduciary status under ERISA.").

Plaintiffs' passing comment that these corporate acts "would adversely impact MS Capital's or MS Enterprise's equity value and therefore the value of Plan assets," AC ¶ 157, does not salvage their claims. Such a broad rule would "make ESOP fiduciaries virtual guarantors of the financial success of the plan." *Martin v. Feilen*, 965 F.2d 660, 666 (8th Cir. 1992). *See Middleton v. Stephenson*, No. 2:11-cv-313, 2012 WL 2224451, *2-3 (D. Utah June 14, 2012) (dismissing ERISA breach of fiduciary claim based on allegations that defendant caused ESOP-owned company to purchase another company owned by defendant and improperly transferred stock, among other things, concluding that the "transaction is not governed by ERISA"); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 257 (5th Cir. 2008) (affirming dismissal of ERISA claims based on false SEC filings, explaining that filing of financial statements were "made in [defendant's] corporate capacity"). Because Counts IV and V complain about *corporate* acts not governed by ERISA, Plaintiffs' claims should be dismissed.

**E. Even If ERISA Applied, Plaintiffs Fail To Plead A Breach In Count IV.**

Even if ERISA did apply, Plaintiffs' fiduciary breach claims in Count IV fail to meet minimum pleading standards. Count IV combines multiple Defendants together and fails to

---

[11] Although the complained-of transaction resulted in an amendment to the Plan, "[w]hen employers [adopt, modify, or terminate ERISA plans], they do not act as fiduciaries, but are analogous to the settlors of a trust." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).

distinguish among actions taken by individual Defendants. It also refers broadly to multiple acts over a multi-year period, altogether failing to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted).

Plaintiffs' "excessive compensation" claims are particularly egregious. While Plaintiffs refer to "Deferred" or "Incentive Compensation" paid in 2012-2016 (AC ¶¶ 168-72), the Amended Complaint contains no allegations whatsoever as to who received compensation or how much was received by each person, much less on what basis Plaintiffs conclude that it was "excessive." Instead, their conclusion rests *solely* on the erroneous belief that "the December 31, 2016, valuation report stated excessive owner's compensation and other perquisites were being paid to insiders." *Id.* ¶ 186. The *actual* quotation says the opposite. In addressing the "Premium for Control/Discount For Minority Interest," the valuation report provided that:

> Using the Market Approach – *Guideline Public Company Method*, the value multiples were derived based on publicly traded minority shares, and a control premium could be feasible. However, the Company's benefit streams already include adjustments that would be made for the elements of control that are available to the ESOP. **Since the Company's earnings will not change significantly due to elimination of any discretionary items, such as excessive owners' compensation and other perquisites, a control shareholder could not realize a lot more for a majority interest than a minority holder could realize under current conditions.**

Ex. E to Golumbic Decl. That is, because there was *no* "excessive owners' compensation and other perquisites" that could be eliminated if a new control shareholder took over the Company, there was no reason for the valuator to apply a control premium. Plaintiffs simply fail to comprehend the report, leaving them with zero support for their "excessive compensation" theory and no grounds upon which to assert their claims.[12]

---

[12] While Plaintiffs make repeated reference to the supposed "siphoning" of value, they do not even identify what the value of their ESOP accounts were *prior to* the alleged wrongdoing.

**F. Plaintiffs' Duty To Monitor Claims Should Be Dismissed (Count VI).**

In Count VI, Plaintiffs aver that MS Fiduciaries "failed to monitor and failed to terminate GreatBanc as trustee for the conduct described herein." AC ¶ 266. As an initial matter, Plaintiffs' sweeping reference to "the conduct described herein" fails to put Defendants on notice of the claims against them. That Plaintiffs bring this claim against "MS Fiduciaries" collectively, without identifying the source of any Defendant's supposed duty to monitor, only exacerbates the confusion. Setting this pleading failure aside, Count VI is derivative of Counts I-V, which are deficient. Even if this Court were to wade through Plaintiffs' pleading, the Amended Complaint is replete with conclusory allegations against GreatBanc and its supposed involvement in a prohibited transaction and breaches of fiduciary duty. Should the Court dismiss Counts I-V, Count VI must be dismissed as well.

**G. Plaintiffs Fail To State Knowing Participation Claims (Counts III And V).**

Plaintiffs also fail to state knowing participation claims. Again, Plaintiffs fail to allege facts distinguishing among the multiple Defendants they have sued, thereby failing to give Defendants adequate notice of the claims against them.

Specifically, Plaintiffs claim that Count III, for knowing participation in the prohibited transactions and breaches of fiduciary duty in connection with the 2017 Transaction, is against MS Capital, MS Companies, and Messrs. Eilermann, Arri, Schindler, and Todt, but they refer only to the "Count III Defendants" collectively. AC ¶¶ 237-42. There are no allegations describing how each of the six Defendants "*knowingly* participated."[13] Instead, Plaintiffs rest on

---

[13] *See Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 251 (2000) ("[Defendant] must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful. Those circumstances, in turn, involve a showing that the plan fiduciary, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction.") (alteration omitted).

conclusory assertions that the "Count III Defendants" knew that the 2017 Transaction was "below fair market value," that other Defendants were "engaged in prohibited transactions" and "breached their fiduciary duties," and that they knew about the "true purpose" of the 2017 Transaction. AC ¶ 239. Yet there are no factual allegations explaining who supposedly knew what or when. *See id.* Count V—alleging that MS Companies, and Messrs. Eilermann, Arri, Schindler, and Todt "knowingly participated" in the "payment of excessive compensation and perquisites [and] the corporate reorganization" (AC ¶ 258)—likewise fails to put Defendants on notice. Both claims also fail to provide facts to support the "participation" prong of Plaintiffs' knowing participation claims. This Court will search in vain for any relevant individual reference to Messrs. Schindler and Todt. They are not personally alleged to have taken *any* action in furtherance of the supposed breaches. There are no allegations as to what *any* individual Defendant actually did, as required to support a knowing participation claim. *See DeLaurentis v. Job Shop Tech. Servs., Inc.*, 912 F. Supp. 57, 64 (E.D.N.Y. 1996) (explaining that participation means "affirmative assistance—or a failure to act when required to do so—that enables a breach to proceed"). As a result, Counts III and V should be dismissed.

## IV. Conclusion

For the foregoing reasons, the McBride Defendants respectfully request that the Court Dismiss the claims against the McBride Defendants with prejudice.

Dated: May 3, 2019                      Respectfully submitted,

                                        /s/ Lars C. Golumbic
                                        Lars C. Golumbic (admitted *pro hac vice*)
                                        Sarah M. Adams (admitted *pro hac vice*)
                                        Shaun A. Gates (admitted *pro hac vice*)
                                        GROOM LAW GROUP, CHARTERED
                                        1701 Pennsylvania Ave., NW, Ste. 1200

Washington, DC 20006
Tel: (202) 861-6615; Fax: (202) 659-4503
Email: lgolumbic@groom.com
        sadams@groom.com
        sgates@groom.com

Daniel Broderick, Jr.
ARDC No. 6304632
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
Tel: (312) 641-3100; Fax: (312) 444-1669
Email: DBroderick@cassiday.com

*Counsel for Defendants McBride & Son Capital, Inc., McBride & Son Management Company, LLC, John F. Eilermann, Jr., Michael D. Arri, Andrea Templeton, the McBride & Son Employee Stock Ownership Plan Administrative Committee, McBride & Son Companies, LLC, Jeffrey Schindler, and Jeffrey Todt*