IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GODFREY, JEFFREY SHELDON, and DEBRA A. KOPINSKI, on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>GREATBANC TRUST COMPANY, MCBRIDE & SON MANAGEMENT COMPANY, LLC, MCBRIDE & SON CAPITAL, INC., MCBRIDE & SON EMPLOYEE STOCK OWNERSHIP PLAN ADMINISTRATIVE COMMITTEE, MCBRIDE & SON COMPANIES, LLC, JOHN F. EILERMANN, JR., MICHAEL D. ARRI, ANDREA TEMPLETON, JEFFREY SCHINDLER, JEFFREY TODT, and JOHN DOES 1–10, )<br><br>Defendants. ) | Case No. 18 C 7918 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Several participants in the McBride & Son Employee Stock Ownership Plan have sued several entities and officers associated with their employer and Plan sponsor, McBride & Son Capital, Inc. (MS Capital), along with the Plan trustee, Greatbanc Trust Company, alleging that the defendants violated the Employee Retirement Income Security Act (ERISA). Specifically, the plaintiffs allege that the defendants breached the fiduciary duties set forth in section 404 of ERISA, 29 U.S.C. § 1104, and executed transactions prohibited in section 406, *id.* § 1106. Greatbanc has answered the claims

that the plaintiffs assert against it. The defendants associated with MS Capital have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of the plaintiffs' claims against them for failure to state a claim.

## Background

The Plan participants' claims in this suit are based primarily on two business transactions allegedly facilitated or authorized by the defendants. The Court's descriptions of these transactions are based on allegations in the complaint and are presented in the light most favorable to the plaintiffs. *See Allen v. Greatbanc Trust Co.*, 835 F.3d 670, 673 (7th Cir. 2016).

The first transaction underlying several of the plaintiffs' claims is a 2014 reorganization of the employer and Plan sponsor. Prior to 2014, defendant McBride & Son Management Company (MS Management) was the Plan sponsor and named fiduciary in the Plan agreement. As of January 1, 2014, the Plan sponsor became MS Management's successor entity, defendant MS Capital. The Plan agreement executed after the reorganization named MS Capital as a fiduciary. The plaintiffs allege that prior to this reorganization, the Plan had been the sole shareholder of the entity that became MS Capital, but after the reorganization, it owned a smaller proportion of MS Capital shares. Another alleged effect of the reorganization was the payment of excessive compensation, to the detriment of the Plan, to MS Capital officers.

The second transaction underlying the plaintiffs' claims is a sale in November 2017 of the Plan's MS Capital stock back to MS Capital. In anticipation of this sale, MS Capital loaned the Plan approximately $1.5 million to permit it to buy inactive Plan participants out of their 8,107 shares of MS Capital. This loan valued MS Capital

shares at $187 each. One month later, the Plan transferred 8,107 shares of MS Capital to MS Capital, thereby satisfying the Plan's loan obligation. At that time, MS Capital also purchased all of the Plan's remaining MS Capital shares for $187 per share.

The plaintiffs allege that this sale harmed the Plan because the share price was below fair market value. According to the plaintiffs, the 2017 sale price was too low because the starting point for negotiating that price was a 2016 report valuing the stock at $153 per share. The plaintiffs allege that it was improper to use that $153 value as the basis for determining the ultimate sale price—even though the sale price was $187, which of course is more than $153—because the 2016 report was not prepared for the purpose of facilitating a sale of the stock. In addition, plaintiffs allege that the 2016 report discounted the stock value by fifteen percent, a discount that they contend was inapplicable to the actual sale in 2017, given the circumstances of the sale. Finally, plaintiffs allege that the 2016 report value was too low a starting point for negotiating the 2017 sale price because there were projections that MS Capital's revenue would increase in 2017.

Based on the 2014 reorganization and the 2017 stock sale, the plaintiffs have asserted six ERISA claims against the Plan trustee, Greatbanc, and the moving parties—MS Capital, MS Management, McBride & Son Companies (MS Companies), officers of these entities, and the McBride & Son Employee Stock Ownership Plan Administrative Committee (Plan Committee). In counts 1 and 2, the plaintiffs allege that the defendants' roles in the 2017 stock sale violated their fiduciary duties set forth in ERISA. In count 4, the plaintiffs allege that the defendants' conduct associated with the 2014 business reorganization were also breaches of ERISA fiduciary duties. In counts

3 and 5, the plaintiffs allege that several defendants are liable as nonfiduciaries for their knowing participation in the 2017 stock sale and 2014 reorganization, respectively. Finally, in count 6 the plaintiffs allege that the defendants violated their fiduciary duties by failing to monitor and terminate Greatbanc as the trustee; according to the plaintiffs, Greatbanc should have been removed in response to its facilitation of the 2014 reorganization and 2017 stock sale—transactions that, according to the plaintiffs, harmed the Plan.

## Discussion

The moving parties have asked the Court to dismiss all of the claims against them for failure state a claim under Federal Rule of Civil Procedure 12(b)(6). The defendants challenge the adequacy of the plaintiffs' pleading of specific claims as well as their pleading of the fiduciary status of several specific defendants. The Court will first address the fiduciary status arguments and then turn to the defendants' arguments about specific claims.

**A.     Pleading standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations to state claims for relief that are facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although detailed allegations are not necessary, plausibility requires a plaintiff allege factual content sufficient for a court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addressing a motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded factual allegations and draw all reasonable

inferences in the plaintiffs' favor. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2019). No heightened pleading standard applies here, and the plaintiffs need only plead sufficient facts to show a plausible claim for relief. *Allen*, 835 F.3d at 674.[1]

**B.     Failure to plead fiduciary status**

The defendants challenge many of the plaintiffs' claims on the basis that they failed to adequately allege fiduciary status for specific defendants. "ERISA defines fiduciary status in functional terms." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 765 (7th Cir. 2013). A person is an ERISA fiduciary only "to the extent [] he exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A); *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004). This means that "a person may be an ERISA fiduciary for some purposes, but not for others." *Id*. For example, when the employer itself is also the administrator of its employee-benefits plan, "it wears two hats," and its business decisions are not necessarily all acts of an ERISA fiduciary. *Brooks*, 729 F.3d at 766. The test for ERISA fiduciary status is whether the defendant was acting in that capacity at the time it took

---

[1] The defendants hint that the plaintiffs should be held to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) because counts 1, 2, 3, 4, and 5 amount to claims of fraud. The defendants cite to a single district court decision concluding that because the fiduciary breach claim in that case was based on allegations of the defendants disseminating inaccurate information—conduct that is "classically associated with fraud"—the Rule 9(b) standard applied. *Rogers v. Baxter Int'l, Inc.*, 417 F. Supp. 2d 974, 984 (N.D. Ill. 2006). But the plaintiffs do not allege any dissemination of misinformation in this case. Regardless, the Seventh Circuit in *Allen* ruled unequivocally that no heightened pleading standard applied to ERISA claims analogous to the plaintiffs' claims in this case. *Allen*, 835 F.3d at 674.

the actions that are the basis for the plaintiff's claims. *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 471–72 (7th Cir. 2007).

### 1. Corporate officers

The defendants argue that the plaintiffs' allegations do not support a reasonable inference of fiduciary status of three corporate officers of MS Capital, MS Management, and MS Companies: John F. Eilermann, Chief Executive Officer, Michael D. Arri, Chief Financial Officer, and Andrea Templeton, Assistant Treasurer and Controller. Accordingly, defendants argue, the court should dismiss the claims against these officers in counts 1, 2, 4, and 6, which are all based on breaches of fiduciary duties. In response, the plaintiffs assert that they adequately alleged the fiduciary status of these officers and cite to the following allegations: (1) Eilermann and Templeton prepared and submitted regulatory forms designating themselves as Plan administrators; (2) Eilermann and Arri negotiated and executed the 2017 stock sale and the 2014 business reorganization; and (3) the Plan agreement authorized Eilermann and Arri to appoint, monitor, and terminate Greatbanc as the Plan trustee.

First, the Court examines whether the plaintiffs have successfully alleged the fiduciary status of Eilermann and Templeton because each signed and submitted, as the Plan's "administrator," a Form 5500 (Annual Return/Report of the Employee Benefit Plan) to the U.S. Department of Labor. This is the only allegation on which the plaintiffs rely to assert Templeton's fiduciary status. But ministerial functions like preparing and submitting regulatory filings are not discretionary acts and therefore do not support an inference of fiduciary status. *See Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1992); 29 C.F.R. § 2590.75–8, Q&A D–2 (advising that "[p]reparation of

reports required by government agencies" is a ministerial function that does not establish ERISA fiduciary status). The test for ERISA fiduciary status is functional and requires discretionary authority or control over the Plan or its assets with respect to the activities that are the basis for an ERISA claim. *See Brooks*, 729 F.3d at 765; *Caremark*, 474 F.3d at 471–72. The Form 5500 submissions by Eilermann and Templeton do not support an inference that either exercised any discretionary control or authority over the Plan with respect to the 2014 reorganization or 2017 stock sale. Because this is the only basis for the plaintiffs' claim that Templeton was a fiduciary, the Court dismisses Templeton from counts 1, 2, 4, and 6, which all involves fiduciary breaches.

The Court turns next to Eilermann and Arri. The plaintiffs allege (1) that Eilermann and Arri were fiduciaries with respect to the 2017 stock sale because they were corporate officers who negotiated and executed the sale, and (2) they were acting as fiduciaries with respect to the 2014 reorganization because they executed it. These allegations alone do not support a reasonable inference that Eilermann and Arri were acting as ERISA fiduciaries. They may well have worn two hats at different points, acting as corporate officers and as fiduciaries to the Plan. But nothing in the complaint supports a reasonable inference that they were wearing their Plan fiduciary hats, as opposed to their corporate officer hats, when planning and executing the 2014 reorganization and the 2017 stock sale.[2] *See Caremark*, 474 F.3d at 471–72. Thus,

---

[2] The plaintiffs also direct the Court to their allegation that Arri testified that he was acting as the "Plan administrator" when he executed a Plan amendment in 2017 that provided inactive participants to cash out their interests in the Plan. But none of the plaintiffs' claims allege that the execution of this amendment was a breach of fiduciary duty. And this allegation does not support an inference that Arri was acting in a

7

the plaintiffs have failed to adequately plead the fiduciary status of Eilermann and Arri with respect to counts 1, 2, and 4, which are based on those two transactions.

Finally, in defending the sufficiency of their pleading the fiduciary status of Eilermann and Arri with respect to count 6—concerning the failure to monitor and remove Greatbanc as trustee—the plaintiffs point to their allegations that the Plan agreement authorized these two individuals to appoint the Plan's trustee and that Eilermann appointed Greatbanc in 2013. This is a sufficient basis to maintain the claim of fiduciary breach in count 6 against these defendants. When corporate officers select and retain ERISA plan fiduciaries, they are exercising discretionary control over the management of that plan, and therefore they are acting in a fiduciary capacity. *See Baker*, 387 F.3d at 663; 29 C.F.R. § 2590.75–8, Q&A D–4 (explaining that when corporate officers select and retain ERISA plan fiduciaries they are acting in a fiduciary capacity). And a corporate officer's power to select and retain a plan fiduciary also imposes on that officer a fiduciary duty to monitor the appointed entity or person. *See Baker*, 387 F.3d at 663–64.

In sum, the Court dismisses Eilermann, Arri, and Templeton from counts 1, 2, and 4 and dismisses Templeton only from count 6; the Court declines to dismiss Eilermann and Arri from count 6.

### 2. MS Companies

The defendants argue that the plaintiffs failed to sufficiently allege the fiduciary status of MS Companies with respect to the 2014 reorganization or the 2017 stock sale,

---

fiduciary capacity at the time he facilitated the 2017 stock sale or the 2014 business reorganization. *See Caremark*, 474 F.3d at 471–72.

and therefore the Court should dismiss it from counts 1, 2, 4, and 6. The plaintiffs point to their allegations that MS Companies facilitated the 2014 reorganization, which resulted in the Plan holding on a proportion—rather than all—of MS Capital shares. This, the plaintiffs argue, constituted exercise of discretionary control over the Plan assets, and it affected the stock values for the 2017 sale.

Changing the nature of a Plan's assets through business reorganization, however, is a modification to an employee benefit plan and not a fiduciary action under ERISA. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). When employers or plan sponsors adopt, modify, or terminate plans, they are not acting in a fiduciary capacity; rather their actions are analogous to those of the settlor of a trust. *Id.*; *see also King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). As the D.C. Circuit concluded in a similar scenario, a corporation does not function as an ERISA fiduciary when it reorganizes into several, separate businesses and allocates its employee-benefit plan assets among the new entities. *Sys. Council EM-3 v. AT&T Corp.*, 159 F.3d 1376, 1378–80 (D.C. Cir. 1998). As the court explained, the parent corporation's redistribution of the plan's assets equated to a change in the design of a trust, which is a settlor—not fiduciary—function. *Id.* at 1379–80.

In short, the plaintiffs' allegations about the actions of MS Companies in facilitating a business reorganization do not support a reasonable inference that it was acting as a fiduciary. The Court therefore dismisses MS Companies from counts 1, 2, and 4.

Finally, the plaintiffs have failed to allege plausibly that any failure by MS Companies to monitor and terminate Greatbanc was a fiduciary act. Fiduciary status is

functional under ERISA, meaning that the defendant must have acted as a fiduciary with respect to the particular misconduct alleged. See *Caremark*, 474 F.3d at 471–72. The fiduciary duty to monitor a plan trustee arises from the power to appoint fiduciaries. See *Baker*, 387 F.3d at 663–64. The plaintiffs have not alleged that MS Companies was involved in or had authority to appoint Greatbanc. The Court therefore dismisses MS Companies from count 6.

3.  **Plan Committee**

The defendants have also moved to dismiss the 'Plan Committee,' arguing that the plaintiffs have not sufficiently alleged that one existed. The plaintiffs say that a term of the Plan agreement requiring the appointment of a Plan Committee whenever there are two or more Plan administrators supports a reasonable inference that the Plan Committee was an ERISA fiduciary.

Even if the plaintiffs' allegations support a reasonable inference that the Plan Committee existed, they indicate nothing about how or to what extent the Committee exerted any discretionary authority or control over the Plan during the 2014 reorganization, the 2017 sale, or the appointment of Greatbanc as trustee. No such allegations appear in the complaint. Without this, there can be no inference of fiduciary status, and therefore the Court grants defendants' motion to dismiss the Plan Committee from all claims in which it is named: counts 1, 2, 4, and 6.

4.  **MS Capital and MS Management**

Finally, the defendants argue that the plaintiffs have not plausibly alleged that MS Capital and MS Management were acting as ERISA fiduciaries with respect to the 2014 reorganization and 2017 stock sale. Specifically, the defendants argue that the plaintiffs

10

failed to allege that MS Management was a fiduciary at any time after January 1, 2014, when it was replaced by MS Capital as the Plan sponsor, employer, and named fiduciary.  The defendants also argue that the plaintiffs have not sufficiently alleged that MS Capital was a fiduciary with respect to any activities prior to the January 1, 2014 business reorganization.

The complaint's allegations support a reasonable inference of MS Capital's status as an ERISA fiduciary with respect to all activities underlying the plaintiffs' claims—even those that occurred prior to January 1, 2014.  The 2013 Plan agreement[3] identifies as a fiduciary "any successor corporation" of MS Management—which is what MS Capital is claimed to be.  Additionally, the plaintiffs allege that an amendment to that agreement stated that MS Capital would replace MS Management "in all respects" with respect to the 2013 Plan agreement.  This supports a reasonable inference that MS Capital is properly named as a defendant with respect to claims arising from activities that occurred prior to the 2014 reorganization.

As for MS Management, the Court can find no allegations in the complaint suggesting that MS Management functioned as a fiduciary after the 2014 reorganization.  The plaintiffs direct the Court only to allegations stating that MS Management was a named fiduciary prior to January 1, 2014; they point to no allegation that MS Management functioned as a fiduciary at any time after January 1, 2014.  The Court dismisses MS Management from counts 1 and 2.

---

[3]  Although the Court is limited to the pleadings in deciding this motion, it may consider the Plan agreements, as they are referenced in and are central to the plaintiffs' complaint.  See *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

**C.     Claims against MS Capital based on the 2017 stock sale**

The defendants have moved to dismiss in their entirety counts 1 and 2, which are based on the defendants' alleged activities relating to the 2017 sale of the Plan's MS Capital stock back to MS Capital. At this point, the only remaining defendant on those claims that has moved to dismiss is MS Capital.

In Count 1, the plaintiffs allege that the 2017 stock sale was a prohibited transaction under section 406(a) and (b) of ERISA. 29 U.S.C. § 1106(a)–(b). Section 406(a) prohibits transactions between the Plan and a party in interest, and section 406(b) prohibits transactions between the Plan and a fiduciary. *Id.* The defendants argue that section 408 of ERISA exempts transactions like these—sales of employer securities between employee-benefit plans and the employer—from the section 406 prohibitions, so long as the sales are executed for "adequate consideration." 29 U.S.C. § 1108(e)(1). The defendants contend that the plaintiffs have failed to plausibly plead that the $187 stock-sale price did not constitute adequate consideration, because it was significantly more than the $153 price from the 2016 valuation report; they seek dismissal of count 1 on this basis.

The basic problem with this argument, as the plaintiffs point out, is that the exemptions in ERISA section 408 are affirmative defenses. *Allen*, 835 F.3d at 676. Therefore the plaintiffs do not have any burden of negating them for their claims to survive a motion to dismiss. *Id.* Dismissal based on an affirmative defense is appropriate, however, if the complaint admits all of the elements of the defense. *See, e.g., Newspin Sports*, 910 F.3d at 299–300.

That is not the case here. "Adequate consideration" for stocks without a

generally recognized market (the situation here) is the "fair market value of the asset as determined in good faith by the trustee or named fiduciary." 29 U.S.C. § 1002(18)(B). ERISA fiduciaries prove adequate consideration by demonstrating they conducted a "prudent investigation" to determine fair market value, and "the adequate consideration test focuses on the *conduct* of the fiduciaries in determining the price, not the price itself." *Eyler v. Comm'r of Internal Revenue*, 88 F.3d 445, 455 (7th Cir. 1996) (emphasis added). The extent of a fiduciary's independent inquiry into the fair market value is "critical" to determining if the fiduciary exercised the care, skill, and diligence that ERISA demands. *Id.* at 456. The plaintiffs squarely allege that the defendants did not make a good faith determination of the fair market value of the stocks prior to the 2017 sale because they did not obtain any independent valuation. Given this allegation, which the Court cannot disregard in evaluating MS Capital's affirmative defense, the complaint does not establish the defense.

In count 2, the plaintiffs allege that by facilitating the 2017 stock sale, the defendants breached their fiduciary duties under ERISA section 404. Section 404 requires fiduciaries to act solely in the interest of plan participants and beneficiaries "with the care, skill, prudence, and diligence" of an objectively prudent person. 29 U.S.C. § 1104(a); *Fish v. Greatbanc Trust Co.*, 749 F.3d 671, 679 (7th Cir. 2014). According to the plaintiffs, the 2017 stock sale constituted a breach of that duty because the defendants did not make a good faith determination of the sale price. As the Court has indicated, the plaintiffs allege that the defendants set the stock price by improperly relying on the 2016 valuation report and failing to obtain an independent, updated valuation.

The defendants argue that these allegations do not give rise to a plausible fiduciary-breach claim because the plaintiffs do not point to any comparative data indicating what the fair market value for the stocks should have been and demonstrating that $187 was below fair market value. But determining whether the defendants sold the stocks for fair market value is at least partly a question of process, not price. *See Eyler*, 88 F.3d at 455. To satisfy their duty of care in determining the sale price of stocks that are not publicly traded, it is "critical" that ERISA fiduciaries engage in an independent inquiry into price. *See id.* at 456. The plaintiffs allege that the defendants conducted no such inquiry, and they need not cite to comparative market data in order to adequately plead this sale was a fiduciary breach.

The plaintiffs' allegations support a reasonable inference of breach of fiduciary duty with respect to the 2017 stock sale. For the reasons discussed, the Court declines to dismiss counts 1 and 2 as to MS Capital.

**D.     Claim based on the 2014 business reorganization**

Count 4 alleges that by engaging in activities associated with the 2014 business reorganization, the defendants breached their ERISA fiduciary duties. The only remaining defendants on this claim that have moved to dismiss are MS Capital and MS Management. The plaintiffs claim that these defendants were not acting solely in best interest of the Plan and its participants in effectuating the reorganization because it resulted in excessive executive compensation and diminished the proportion of the Plan's holdings in MS Capital. The defendants argue that the plaintiffs have not plausibly alleged that they were acting in their fiduciary capacities during the 2014 reorganization.

The plaintiffs contend that corporate entities or officers that qualify as ERISA fiduciaries are bound, in all of their business decisions, by the fiduciary duty set forth in section 404. But this is not the rule. "In every case charging breach of ERISA fiduciary duty, the threshold question is whether the defendant was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*." *Brooks*, 729 F.3d at 765 (emphasis added). This is critical to an ERISA fiduciary-breach claim because "an entity can be a fiduciary for some purposes and not others." *See King*, 218 F.3d at 723. Even the court in the first case of the plaintiffs' string-cite of non-binding authorities reiterates this rule. *Chesemore v. All. Holdings, Inc.*, 770 F. Supp. 2d 950, 966 (W.D. Wis. 2011).

Although the plaintiffs have alleged that both MS Management and MS Capital wear many hats, including a fiduciary hat, they have not alleged that these entities were acting in their fiduciary capacities in effectuating the 2014 reorganization. Rather, the plaintiffs make only a general allegation that these entities executed the reorganization. Without more, this is insufficient to allege plausibly that in executing this transaction, MS Management and MS Capital were acting in the capacity of a fiduciary exercising control over Plan assets. *See Brooks*, 729 F.3d at 765. The Court therefore dismisses count 4 as to these defendants.

**E.     Knowing participation claims**

The defendants also seek dismissal of counts 3 and 5 of the plaintiffs' complaint; these are both claims under section 502(a)(3) of ERISA, which allows plan participants to obtain "appropriate equitable relief" from parties, including nonfiduciaries, who knowingly participate in an ERISA violation. 29 U.S.C. § 1132(a)(3); *see Harris Tr. &*

*Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 245–46 (2000). To state a claim under this provision, "the plaintiff must [plausibly] allege only that a fiduciary violated a substantive provision of ERISA and the nonfiduciary knowingly participated in the conduct that constituted the violation." *Daniels v. Bursey*, 313 F. Supp. 2d 790, 808 (N.D. Ill. 2004). "Knowing" in this context means "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust*, 530 U.S. at 251. "Participation" means assisting or facilitating the fiduciary's breach. *See Bursey*, 313 F. Supp. 2d at 808 (observing that a knowing participation claim against a nonfiduciary "essentially asserts that the nonfiduciary aided and abetted the fiduciary's breach").

Count 3 alleges knowing participation by MS Capital, MS Companies, Eilermann, Arri, and two other corporate officers—Jeffrey Schindler and Jeffrey Todt—in the ERISA violations alleged in counts 1 and 2, which both relate to the 2017 stock sale. Schindler is the president of a company whose assets are held by MS Capital. Jeffrey Todt is the current Chief Financial Officer of MS Capital. The defendants argue that the plaintiffs failed to allege that any specific defendant had knowledge of the alleged fiduciary breaches associated with the 2017 sale and that they allege no conduct by any particular defendant that would constitute participation in a fiduciary breach.

On the question of knowledge of the fiduciary breach, the plaintiffs have alleged that the defendants in count 3 had knowledge of the following with respect to the 2017 stock sale: (1) MS Capital executed the 2017 sale; (2) it approved a sale price without first obtaining an independent valuation, which was a breach of fiduciary duty under section 404 of ERISA; and (3) the sale was a prohibited transaction under section 406

of ERISA. Knowledge of these facts constitutes "knowledge of the circumstances that rendered the transaction unlawful" under ERISA. *See Harris Trust*, 530 U.S. at 251. The plaintiffs' allegations in this regard are sufficient.

The next question is whether the plaintiffs' allegations support a reasonable inference that the defendants participated in the fiduciary breach associated with the 2017 stock sale. The plaintiffs contend that they have adequately alleged the participation of Schindler and Todt in that the two now hold some of the MS Capital stock that was sold from the Plan in 2017. But this falls short of a plausible allegation that they engaged in any conduct constituting "participation" in a fiduciary breach, which requires assisting or facilitating a breach, not simply benefitting from one. *See Daniels*, 313 F. Supp. 2d at 808; *In re Bausch & Lomb Inc. ERISA Litigation*, No. 06-CV-6297, 2008 WL 5234281, at *12 (W.D.N.Y. Dec. 12, 2008). The Court dismisses Schindler and Todt from count 3.

The complaint is similarly silent regarding any conduct by MS Companies associated with the 2017 stock sale. The Court therefore dismisses MS Companies from count 3.

With respect to the conduct of MS Capital, Eilermann, and Arri, the plaintiffs have alleged that Eilermann and Arri developed the 2017 sale proposal and negotiated the sale price and terms and that these defendants and MS Capital approved the sale and executed it. Viewed in the light most favorable to the plaintiffs, these allegations support a reasonable inference that they helped facilitate the 2017 stock sale and the associated fiduciary breaches. The Court declines to dismiss these defendants from count 3.

The Court turns next to defendants' motion to dismiss count 5, which alleges knowing participation by MS Companies, Eilermann, Arri, Schindler, and Todt in the fiduciary breaches associated with the 2014 business reorganization. As with the claims asserted against Schindler, Todt, and MS Companies in count 3, the complaint lacks allegations that these defendants facilitated or assisted in fiduciary breaches associated with the 2014 reorganization. The Court dismisses these defendants from count 5.

The extent of the plaintiffs' allegations of the involvement of Eilermann and Arri in the reorganization is a single assertion that they benefited from it, which (as just discussed) is not enough. The Court dismisses Eilermann and Arri from count 5.

**F.    Claim for failure to monitor and remove Greatbanc as trustee**

Finally, in count 6 the plaintiffs allege that the defendants' failure to remove Greatbanc as trustee constituted a breach of fiduciary duty under section 404 of ERISA. 29 U.S.C. § 1104(a)(1). Given rulings earlier in this opinion, the only remaining defendants on this claim are Eilermann, Arri, MS Capital, and MS Management. The defendants make a single argument in asking the Court to dismiss count 6: if the Court dismisses counts 1 through 5, it should also dismiss count 6, which defendants say depends on the other claims. The Court has not dismissed counts 1, 2, or 3, and these defendants are not entitled to dismissal of count 6.

## Conclusion

For the foregoing reasons, the Court dismisses all claims against the Plan Committee, Templeton, Todt, Schindler, and MS Companies and also dismisses the following defendants from the following claims: MS Management from counts 1, 2 and

4; Eilermann from counts 1, 2, 4, and 5; Arri from 1, 2, 4, and 5; and MS Capital from count 4. The Court otherwise denies the defendants' motion [dkt. no. 48]. What remains are counts 1 and 2 against MS Capital and Greatbanc; count 3 against MS Capital, Eilermann, and Arri; count 4 against Greatbanc; and count 6 against MS Capital, MS Management, Eilermann, and Arri. Those defendants are directed to answer those claims within 21 days of this order.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 26, 2019