**UNITED STATES DISTRICT COURT**
NORTHERN DISTRICT OF ILLINOIS

GREGORY GODFREY, et. al.,

                  Plaintiffs,

v.

GREATBANC TRUST COMPANY, et al.,

                  Defendants.

Case Number 18-cv-07918

Judge Matthew F. Kennelly

Magistrate Judge Michael T. Mason

**[Oral Argument Requested]**

**MEMORANDUM OF LAW IN SUPPORT OF McBRIDE DEFENDANTS'**
**PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................ 1

II.   STANDARD OF REVIEW .............................................................................................. 3

III.  ARGUMENT ................................................................................................................... 3

   A.   Plaintiffs Challenge Corporate Acts Not Governed By ERISA. .................................... 3

      1.   ERISA's Fiduciary Standards Do Not Apply To The 2013 Reorganization Claims
           (Counts II, IV, V, VI) ............................................................................................. 4

      2.   McBride's Compensation Decisions Do Not Support An ERISA Claim
           (Counts VIII, IX, X) ............................................................................................... 5

   B.   Plaintiffs Also Fail To Allege Fiduciary Status Of The Individual Defendants In The
        Reorganization, Compensation, and Transaction Claims
        (Counts II, IV, V, VIII, IX, XII, XIV, XV). ...................................................................... 7

   C.   Plaintiffs' Corporate-Decision-Based Challenges Fail For Additional Reasons ............. 9

   D.   Plaintiffs' Co-Fiduciary Claims Fail (Counts V, IX, and XV). ..................................... 10

   E.   Plaintiffs Fail To State Knowing Participation Claims (Counts VI and X) ................... 10

IV.   CONCLUSION .............................................................................................................. 11

i

## I.    INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC," Dkt. No. 105-1) serves no purpose other than to seek a second bite at the apple on claims this Court already found legally deficient.  The Court properly held that reorganizing corporate structures and paying compensation are not fiduciary acts.  *See* 9/26/19 Order (Dkt. No. 74) ("9/26/19 Order") (dismissing the McBride Defendants from all claims arising out of the so-called "siphoning of value"—a combination of the corporate restructuring and compensation decisions).  Plaintiffs have now restated their complaint to include more *factual* detail about the corporate reorganization and compensation.  Even additional factual allegations, however, cannot remedy the fundamental *legal* problem with these claims:  they simply do not fall within ERISA's fiduciary duties.  The Court should therefore dismiss the reorganization and compensation claims like it did the last time.

Beyond that, Plaintiffs have added numerous factual allegations to claims this Court already upheld, a needless exercise that serves only to burden the Defendants.  The McBride Defendants nonetheless will not waste judicial and party resources by rearguing points on which the Court has previously ruled against them.  For the Court's convenience, the accompanying Motion includes a chart setting forth the McBride Defendants' response to each of the claims.  Although the SAC repackages the Amended Complaint's claims into different counts, the substance remains the same.  The SAC alleges that defendants breached fiduciary duties imposed by section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), and engaged in transactions prohibited by section 406, 29 U.S.C. § 1106, principally by facilitating or engaging in two transactions which allegedly affected the McBride & Son Employee Stock Ownership Plan (the "Plan").  **First**, in Counts I-VI, Plaintiffs complain about the 2013 corporate reorganization (the "2013 reorganization").  **Second**, Counts VII-X challenge the alleged consequence of this

1

reorganization—the payment of excessive compensation (the so-called "loss of value"). **Third**, Plaintiffs challenge a 2017 redemption of shares held by the Plan (the "2017 transaction") in Counts XI-XVI. Each of these three subsets of claims contains a "knowing participation" count. At the end of the SAC, Plaintiffs also allege a failure of the duty to monitor the Plan's trustee, GreatBanc Trust Company ("GreatBanc") (Count XVII).

Plaintiffs' ERISA-based challenges to the 2013 reorganization and compensation decisions erroneously assume ERISA applies. As the Court previously recognized, it does not. ERISA's fiduciary standards apply to fiduciary acts—not to all corporate decisions. The Court's prior ruling on this issue is now law of the case and should not be overturned. Each of these claims therefore fails as a matter of law and must be dismissed.[1]

The SAC additionally fails to state a viable claim against Defendants Eilermann and Arri in Counts II, IV, V, VIII, IX, XII, XIV, and XV because the allegations do not plausibly suggest these individuals were acting in a fiduciary capacity when taking the actions that are the subject of the fiduciary-based claims concerning the 2013 reorganization, payment of compensation, and 2017 transaction—a fact the Court also previously recognized. 9/26/19 Order at 7-8 ("[T]he plaintiffs have failed to adequately plead the fiduciary status of Eilermann and Arri with respect to . . . th[e] two transactions."). Fiduciary status is a prerequisite to these claims, and they must be dismissed as well.

Finally, Plaintiffs' "knowing participation" claims concerning the 2013 reorganization and payment of compensation (Counts VI and X) are deficient. Both claims fail to allege any defendant facilitated a fiduciary breach and thus fail to state a claim as well.

For those reasons, and the reasons explained more fully below, the Court should grant the

---

[1] Count XVII, alleging a breach of the duty to monitor based, in part, on the 2013 reorganization and payment of compensation, should be dismissed to the extent it is premised on these claims.

McBride Defendants' motion and dismiss, in part, the same claims it previously deemed

deficient.  What remains, once again, are Plaintiffs' 2017 transaction-related fiduciary breach

and prohibited transaction claims against MS Capital (Counts XII, XIV, and XV); the "knowing

participation" claim stemming from the 2017 transaction against MS Capital, Eilermann, and

Arri (Count XVI); and the duty to monitor claim against MS Capital, Eilermann, and Arri (Count

XVII) to the extent it is premised on Plaintiffs' allegations concerning the 2017 transaction.[2]

## II.     STANDARD OF REVIEW

To survive a motion to dismiss, Plaintiffs must plead "a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." *Id*.  As demonstrated below, and consistent with this Court's prior decision,

multiple claims in the SAC should be dismissed because Plaintiffs fail to allege any fiduciary

action to sustain their ERISA-based claims.

## III.     ARGUMENT

### A.     Plaintiffs Challenge Corporate Acts Not Governed By ERISA.

The SAC reasserts Plaintiffs' claims against McBride regarding the 2013 reorganization

and the payment of compensation.  *See* 9/26/19 Order (dismissing all the named McBride

Defendants from Plaintiffs' 2013 reorganization-based claims).  To maintain these claims, of

course, ERISA must apply.  As this Court already decided, it does not and Plaintiffs' claims fail

as a matter of law.

---

[2] This motion does not address claims made against GreatBanc exclusively (Counts I, III, VII, XI, XIII).

1.      ERISA's Fiduciary Standards Do Not Apply To The 2013 Reorganization Claims (Counts II, IV, V, VI).

The Court's prior ruling—that "[c]hanging the nature of a Plan's assets through business reorganization" such as the 2013 reorganization "is a modification to an employee benefit plan and not a fiduciary action under ERISA" - presents an insurmountable hurdle for Plaintiffs. *See* 9/26/19 Order at 9 (citing *Sys. Council EM-3 v. AT&T Corp.*, 159 F.3d 1376, 1378-80 (D.C. Cir. 1998)) ("[A] corporation does not function as an ERISA fiduciary when it reorganizes into several, separate businesses and allocates its' employee-benefit plan assets among the new entities."). Plaintiffs' additional allegations do not warrant revisiting this Court's prior legal determination, which is now the law of the case. *See Happel v. Wal-Mart Stores, Inc.*, 286 F. Supp. 2d 943, 946 (N.D. Ill. 2003) ("Under the law-of-the-case doctrine, any issue that is expressly or impliedly decided is binding in subsequent proceedings before the deciding court or a lower court."); *see also United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993). To reverse the law of the case, Plaintiffs would have to offer some compelling justification. *See Tice v. Am. Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004) (noting departure from the law of the case requires "special circumstance" such as "an intervening change in law").

They have not and cannot do so. The Court's prior ruling was undoubtedly correct, as it was premised on the fundamental ERISA precept that corporate acts are not fiduciary acts, ERISA does not engulf all of McBride's corporate decisions. No case stands for such a proposition, as this Court itself has recognized. *See* 9/26/19 Order at 15 ("Even the court in the first case of the plaintiffs' string-cite of non-binding authorities reiterates this rule."). *See also Armstrong v. Amsted Indus., Inc.*, No. 01-c-2963, 2004 WL 1745774, at *4 (N.D. Ill. July 30, 2004) ("[O]fficers of the plan's sponsoring employer[] assume fiduciary status only when and to the extent they act as plan administrators, not when they conduct business unregulated by

4

ERISA."). Indeed, a contrary holding would ignore the well-established distinction between "fiduciary" and "settlor" decisions (the "two hat" doctrine). *See Pegram v. Herdrich*, 530 U.S. 211, 225 (2000) ("[T]he trustee at common law characteristically wears only his fiduciary hat when he takes action to affect a beneficiary, whereas the trustee under ERISA may wear different hats."). Because the corporate restructuring here was not a fiduciary act, Plaintiffs cannot maintain an ERISA-based claim against the McBride Defendants by merely alleging additional factual details regarding how the reorganization occurred.[3]

Plaintiffs' passing reference to McBride's purported business motives, SAC ¶ 129 (alleging 2013 reorganization provided tax benefits to the company and its directors), is immaterial. ESOP fiduciaries are permitted to have financial interests when undertaking corporate actions, even if those are "adverse to beneficiaries." *Pegram*, 530 U.S. at 225. Thus, Plaintiffs' claims in Count II, IV, V, and VI fail as a matter of law and should be dismissed.

2.      McBride's Compensation Decisions Do Not Support An ERISA Claim (Counts VIII, IX, X).

Plaintiffs' challenges to McBride's compensation decisions stretch ERISA's fiduciary standards well beyond their scope. That McBride paid its officers annually is unsurprising and irrelevant—ERISA's fiduciary duties do not supplant business judgment. *Armstrong*, 2004 WL 1745774, at *4. Compensation (including how it is structured) is a fundamental business decision. *See Kerstein v. Plast-O-Matic Valves, Inc.*, No. 07-cv-4156, 2008 WL 2942135, at *6 (D.N.J. July 30, 2008) ("[D]ecisions such as approving loans, setting director pay . . . are business decisions that do not invoke fiduciary status under ERISA."); *Eckelkamp v. Beste*, 201 F. Supp. 2d 1012, 1023 (E.D. Mo. 2002), *aff'd*, 315 F.3d 863 (8th Cir. 2002) ("Setting

---

[3] As this Court previously acknowledged, that the reorganization resulted in an amendment to the Plan is immaterial. Employers such as McBride "do not act as fiduciaries" when they modify ERISA plans. 9/26/19 Order at 9 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)).

compensation levels is a business decision or judgment made in connection with the on-going

operation of a business. An employer's discretion in determining salaries is a business judgment

which does not involve the administration of an ERISA plan or the investment of an ERISA

plan's assets. Such a decision may ultimately affect a plan indirectly but it does not implicate

fiduciary concerns[.]'").

While Plaintiffs complain compensation "resulted in a lower value" of the ESOP, SAC ¶

173, Plaintiffs' allegations are wholly conclusory.  The SAC provides no basis, whatsoever, to

conclude that the payments were "excessive."  In any event, caselaw acknowledges that

"[v]irtually all of an employer's significant business decisions affect the value of its stock."

*Martin v. Feilen*, 965 F.2d 660, 666 (8th Cir. 1992).  "ERISA's fiduciary duties under § 1104

attach only to transactions that involve investing the ESOP's assets or administering the [P]lan."

*Id.* The wisdom of this rule is clear, because "[a] broader rule would make ESOP fiduciaries

virtual guarantors of the financial success of the plan."  *Id.*; s*ee also Middleton v. Stephenson*,

No. 2:11-cv-313, 2012 WL 2224451, at \*2-3 (D. Utah June 14, 2012), *aff'd*, 749 F.3d 1197 (10th

Cir. 2014)  (dismissing ERISA breach of fiduciary claim based on allegations that defendant

caused ESOP-owned company to purchase another company owned by defendant and

improperly transferred stock, among other things, concluding that the "transaction is not

governed by ERISA"); *Housman v. Albright*, 857 N.E.2d 724, 728 (Ill. Ct. App. 2006)

(concluding that ERISA was not implicated by allegations that defendant "engaged in a scheme

of systematic corporate looting and self-dealing by using Waterfront's assets to purchase items

for himself and his friends").  Because Counts VIII, IX, and X challenge corporate decisions,

they should be dismissed.[4]

---

[4] The McBride Defendants understand GreatBanc likewise intends to move to dismiss Plaintiffs' 2013
reorganization and compensation claims.  If this Court dismisses those claims from the case, then Plaintiffs' duty to

**B.** **Plaintiffs Also Fail To Allege Fiduciary Status Of The Individual Defendants In The Reorganization, Compensation, and Transaction Claims (Counts II, IV, V, VIII, IX, XII, XIV, XV).**

The SAC alleges that Eilermann and Arri caused the Plan to engage in a prohibited transaction, breached their fiduciary duties, and are liable as co-fiduciaries in connection with the 2013 reorganization (Counts II, IV, and V). Plaintiffs further allege that Eilermann and Arri breached their fiduciary duties and are liable as co-fiduciaries for the so-called "loss of value from 2013 to 2017" (Counts VIII and IX). Finally, Plaintiffs aver that Eilermann and Arri caused the Plan to engage in a prohibited transaction, breached their fiduciary duties, and are liable as co-fiduciaries in connection with the 2017 transaction (Counts XII, XIV, and XV).

To sustain these claims, Plaintiffs must plausibly allege—in addition to alleging ERISA applies at all—that Eilermann and Arri were acting as fiduciaries with respect to each of these actions. *See* 29 U.S.C. § 1106(a)(1) ("A *fiduciary* with respect to a plan shall not . . . .") (emphasis added); *id.* § 1106(b) (same); *id.* § 1109(a) ("Any person *who is a fiduciary* with respect to a plan who breaches any of the responsibilities, obligations, or duties *imposed upon fiduciaries* by this subchapter shall be personally liable . . . .") (emphasis added); *id.* § 1105(a) ("[A] *fiduciary* with respect to a plan shall be liable . . . .") (emphasis added).[5]

_____

monitor claim (Count XVII) should be dismissed to the extent it relates to the 2013 reorganization and payment of compensation.

[5] ERISA only recognizes two types of fiduciaries: (1) named fiduciaries, who are so designated in the written instrument governing the plan, *see id.* § 1102(a)(2), and (2) functional fiduciaries, who become fiduciaries by virtue of the actions they take or the authority they assume on behalf of the plan, *see id.* § 1002(21). Neither Eilermann nor Arri is a "named fiduciary." *See* 2017 Plan Doc. (Dkt. No. 49-4) §§ 2.8, 17.1. The statute makes clear that, unless an individual is a named fiduciary, a person is a fiduciary only "to the extent" that he or she "exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21). The "to the extent" language is critical, for it indicates that a person can be a fiduciary for one purpose, without being one for all purposes. *See Pegram*, 530 U.S. at 226 (holding that, for every claim of breach of ERISA fiduciary duty, "the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint") (emphasis added).

The SAC does not plausibly allege this essential element. In reality, the SAC is no different from Plaintiffs' amended complaint, both in terms of its allegations and its failures. Plaintiffs essentially aver that Eilermann and Arri were functional fiduciaries because they served as corporate officers, negotiated or facilitated transactions, executed documents, and were authorized to appoint, monitor, and terminate Plan fiduciaries. *See* SAC ¶¶ 355, 451, 509. This Court already rejected these allegations as insufficient to blanket Eilermann and Arri with fiduciary status with respect to the two transactions and payment of compensation. *See* 9/26/19 Order at 7 ("These allegations alone do not support a reasonable inference that Eilermann and Arri were acting as ERISA fiduciaries. They may well have worn two hats at different points, acting as corporate officers and as fiduciaries to the Plan. But nothing in the complaint supports a reasonable inference that they were wearing their Plan fiduciary hats, as opposed to their corporate officer hats, when planning and executing [the transactions].").

The only "new" allegations Plaintiffs add are more of the same. First, as discussed extensively above, Eilermann and Arri's alleged compensation-related decisions, SAC ¶¶ 451(q), 509(u), are irrelevant. "[O]fficers of the plan's sponsoring employer[] assume fiduciary status only when and to the extent they act as plan administrators, not when they conduct business unregulated by ERISA." *Armstrong*, 2004 WL 1745774, at \*4. And this allegation does not plausibly suggest that they were acting in a fiduciary, as opposed to corporate, capacity. Payment of compensation is a quintessential business decision. ERISA does not govern "all of [McBride's] business decisions." *See* 9/26/19 Order at 15.

Second, it is irrelevant that Eilermann and Arri allegedly "provided information" to GreatBanc in its role as a corporate shareholder and its financial advisor in connection with the 2013 reorganization. *See* SAC ¶¶ 355(o), 451(p), 509(t). Providing information on behalf of a

company does not constitute a fiduciary function, as it does not involve discretionary control over plan assets or administration, as required by ERISA. *See* 29 U.S.C. §1002(21).[6]

Plaintiffs' allegations against the individual defendants with respect to the two transactions and compensation claims should be dismissed. *See* 9/26/19 Order at 7-8 ("Plaintiffs have failed to adequately plead the fiduciary status of Eilermann and Arri with respect to . . . th[e] two transactions.").

## C. Plaintiffs' Corporate-Decision-Based Challenges Fail For Additional Reasons.

Plaintiffs' fiduciary breach claims arising out of the 2013 reorganization and payment of compensation (Counts IV and VIII) additionally fail to satisfy minimum pleading standards. As an initial matter, the allegations in the SAC demonstrate the value of the assets held by the Plan *increased* after the 2013 reorganization. Indeed, whereas the value of the Plan's assets was $10.7 million at a per share price of $121.80 in 2012, SAC ¶¶ 100, 108, that value grew to $14.8 million and $168 per share by 2014. SAC ¶¶ 102, 110. Nothing in the SAC plausibly suggests the ESOP *lost* value as a result of the corporate reorganization. *See Brandt v. Grounds*, 687 F.2d 895 (7th Cir. 1982) (plaintiffs must plausibly allege a connection between the alleged wrongdoing and a loss to the plan).

Plaintiffs' compensation-related claims are particularly lacking. The SAC simply lumps payments made to Eilermann, Arri, and multiple non-parties together and alleges that the resulting sum is "excessive." Plaintiffs provide no basis for this conclusion. Such bald allegations cannot possibly suffice. *Iqbal*, 556 U.S. at 678.

---

[6] GreatBanc's alleged comment that Arri was a fiduciary "when [GreatBanc] delivered the annual valuation report," SAC ¶¶ 355(h), 509(h), is far too flimsy to support an inference that Arri was acting in a fiduciary capacity when taking the alleged actions at issue. GreatBanc cannot transform Arri into a fiduciary by providing him a document. Regardless, even if it could, Arri would be a fiduciary only with respect to his receipt of the annual valuation, and none of Plaintiffs' claims challenge this act. *See* 9/26/19 Order at 7 n.2 (rejecting Plaintiffs' reliance on allegation that Arri "testified that he was acting as the 'Plan Administrator' when he executed a Plan amendment" and noting "none of the plaintiffs' claims" challenge the amendment).

**D.    Plaintiffs' Co-Fiduciary Claims Fail (Counts V, IX, and XV).**

Plaintiffs tack on co-fiduciary liability claims to each of their other claims.  ERISA

section 405 provides that "a fiduciary with respect to a plan shall be liable for a breach of

fiduciary responsibility of another fiduciary" if, by his breach, "he has enabled such other

fiduciary to commit a breach" or "he has knowledge of a breach by such other fiduciary, [but

fails to] make[] reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. §§

1105(a)(2), 1105(a)(3).  A co-fiduciary claim is necessarily derivative of a fiduciary breach

claim.  Therefore, to the extent Plaintiffs have failed to plead any individual or act was fiduciary

in nature, they have also failed to make out a claim for co-fiduciary liability.  *Neil v. Zell*, 677 F.

Supp. 2d 1010, 1023 (N.D. Ill. 2009) *as amended* (Mar. 11, 2010) ("Plaintiffs cannot hold these

Defendants liable as co-fiduciaries without first showing that they are fiduciaries.").

**E.    Plaintiffs Fail To State Knowing Participation Claims (Counts VI and X).**

In Count VI, Plaintiffs aver that MS Capital, Eilermann, and Arri knowingly participated

in the supposed prohibited transaction and fiduciary breaches associated with the 2013

reorganization.  SAC ¶ 430.  In Count X, Plaintiffs contend Eilermann and Arri knowingly

participated in fiduciary breaches in connection with the payment of compensation.  SAC ¶ 491.[7]

To proceed with these claims, Plaintiffs must adequately allege "participation" in a fiduciary

breach.  9/26/19 Order at 16 ("'Participation' means assisting or facilitating the fiduciary's

breach."); *Daniels v. Bursey*, 313 F. Supp. 2d 790, 808 (explaining that a knowing participation

claim against a nonfiduciary "essentially asserts that the nonfiduciary aided and abetted the

fiduciary's breach").  This is where the SAC comes up short.

---

[7] Plaintiffs confusingly refer to the "prohibited transactions described in Count VII, Count VIII, and Count IX" in connection with their compensation-based "knowing participation claim.  SAC ¶ 487.  None of those counts asserts a prohibited transaction claim.

The SAC does not adequately allege any McBride Defendant facilitated a fiduciary breach. As an initial matter, Plaintiffs claims are premised on nonfiduciary acts—changing the nature of the Plan's assets through a business reorganization and paying its officers and directors. *See* Section III.A. Setting that aside, Plaintiffs allege—at most—that the individuals benefitted from the breach, not that they participated. SAC ¶ 429 ("MS Capital, Eilermann, and Arri have profited . . . ."), ¶ 490 ("Eilermann and Arri have profited…"). This Court has already declared these allegations to be insufficient. 9/26/19 Order at 18 (noting that the "assertion that [Defendants] benefitted . . . is not enough."). Thus, Counts VI and X should be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, the McBride Defendants respectfully request that the Court dismiss in part the SAC with prejudice.

Dated: February 3, 2020                      Respectfully submitted,

/s/ Lars C. Golumbic
Lars C. Golumbic (admitted *pro hac vice*)
Sarah M. Adams (admitted *pro hac vice*)
Shaun A. Gates (admitted *pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW, Ste. 1200
Washington, DC 20006
Tel: (202) 861-6615; Fax: (202) 659-4503
Email: lgolumbic@groom.com
          sadams@groom.com
          sgates@groom.com

Daniel Broderick, Jr.
ARDC No. 6304632
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
Tel: (312) 641-3100; Fax: (312) 444-1669
Email: DBroderick@cassiday.com

11

*Counsel for Defendants McBride & Son Capital, Inc., McBride & Son Management Company, LLC, John F. Eilermann, Jr., and Michael D. Arri*