# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GREGORY GODFREY, et al.,

               Plaintiffs,

v.

GREATBANC TRUST COMPANY, et al.,

               Defendants.

Case No. 1:18-cv-07918

Judge Matthew F. Kennelly

Magistrate Judge Michael T. Mason

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
GREATBANC TRUST COMPANY'S
<u>PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    STANDARD FOR STATING ERISA CLAIMS ............................................. 2

III.    BACKGROUND ................................................................................................ 3

    A.    The ESOP's Fiduciaries ............................................................................ 3

    B.    The 2013 ESOP Transaction (Counts I through VI) .............................. 4

    C.    Loss of Value from 2013 to 2017 (Counts VII through X) .................... 5

IV.    ARGUMENT ..................................................................................................... 6

    A.    The 2013 ESOP Transaction Properly Alleges Violations of ERISA (Counts I, III, and V) ................................................................................ 6

        1.    Counts I and III ............................................................................. 6

        2.    Count V .......................................................................................... 8

        3.    Count III Properly Alleges Loss Causation ................................. 8

    B.    The Loss of Value from 2013 to 2017 Properly Alleges Violations of ERISA (Counts VII and X) ................................................................. 10

        4.    Count VII .................................................................................... 10

        5.    Count X ........................................................................................ 15

V.    CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alexander v. United States*,
   721 F.3d 418 (7th Cir. 2013) ................................................................2

*Allen v. GreatBanc Trust Co.*,
   835 F.3d 670 (7th Cir. 2016) ...........................................................2, 15

*Armstrong v. Amsted Indus., Inc.*,
   2004 WL 1745774 (N.D. Ill. July 30, 2004) ........................................13

*Blankenship v. Chamberlain*,
   695 F. Supp. 2d 966 (E.D. Mo. 2010)...................................................12

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ................................................................2

*Brundle on Behalf of Constellis Employee Stock Ownership Plan v. Wilmington*
   *Tr., N.A.*,
   919 F.3d 763 (4th Cir. 2019) ................................................................9

*Bryant v. International Fruit Product Co.*,
   886 F.2d 132 (6th Cir. 1989) ..............................................................13

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   874 F.2d 912 (2d Cir. 1989)................................................................12

*Eckelkamp v. Beste*,
   201 F. Supp. 2d 1012 (E.D. Mo. 2002)................................................13

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
   725 F.3d 406 (3d Cir. 2013)..................................................................9

*Fish v. GreatBanc Tr. Co.*,
   No. 09 C 1668, 2016 WL 5923448 (N.D. Ill. Sept. 1, 2016)..................8

*George v. Kraft Foods Glob., Inc.*,
   814 F. Supp. 2d 832 (N.D. Ill. 2011) ....................................................1

*Howard v. Shay*,
   100 F.3d 1484 (9th Cir.1996) ..............................................................14

*Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund v. Bank of New York Mellon Corp.*,
13-1844, 2014 WL 497737 (N.D. Ill. Feb. 6, 2014) ................................................2

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) ................................................13, 14

*Kross v. W. Elec. Co., Inc.*,
701 F.2d 1238 (7th Cir. 1983) ................................................2

*Leigh v. Engle*,
727 F.2d 113 (7th Cir. 1984) ................................................9

*Lepage v. Blue Cross & Blue Shield of Minn.*,
2008 U.S. Dist. LEXIS 49298 (D. Minn. June 25, 2008) ................................................13

*Martin v. Feilen*,
965 F.2d 660 (8th Cir. 1992) ................................................12

*McMaken v. GreatBanc Tr. Co.*,
17-cv-04983, 2019 WL 1468157 (N.D. Ill. Apr. 3, 2019) (Wood, J.) ................................................9

*Oren-Bousquet v. Lasalle Bank, N.A.*,
2008 WL 11410042 (W.D. Tex. June 13, 2008) ................................................13

*Perez v. Bruister*,
823 F.3d 250 (5th Cir. 2016) ................................................13

*Spires v. Schools*,
271 F. Supp. 3d 795 (D.S.C. 2017) ................................................12, 13, 14

*Steavens v. Elec. Data Sys. Corp.*,
2008 WL 3540070 (E.D. Mich. Aug. 12, 2008) ................................................13

*Svigos v. Wheaton Securities, Inc.*,
No. 17-cv-04777, 2018 WL 587190 (N.D. Ill. Jan. 29, 2018) (Blakey, J.) ................................................15

**Statutes**

29 U.S.C. § 1001 *et seq.* ................................................1

29 U.S.C. § 1002(21)(a) ................................................7

29 U.S.C. § 1102(a) ................................................3

29 U.S.C. § 1103(a) ................................................3

29 U.S.C. § 1103(c)(1)...................................................................................................7

29 U.S.C. §§ 1104(a), 1105(a)........................................................................................9

29 U.S.C. 1109(a).........................................................................................................10

**Other Authorities**

Rule 8(a)(2)....................................................................................................................2

U.S. Dep't of Labor, Field Assistance Bulletin 2004-03, 2004 WL 2979777
    (EBSA) (Dec. 17, 2004).............................................................................................1

## I.    INTRODUCTION

The common thread among all of the claims alleged in Plaintiffs' Second Amended Complaint ("SAC") is that those who served as fiduciaries to the McBride & Son Employee Stock Ownership Plan (the "ESOP" or "Plan") did not meet their ERISA[1] fiduciary duties — "the highest known to law"[2] in the face of rank and egregious self-dealing at the expense of the ESOP and its participants. The SAC alleges in more than sufficient detail that GreatBanc Trust Company ("GreatBanc"), retained as the ESOP's independent discretionary trustee, failed in every respect to protect the ESOP from these fiduciary breaches.

Much of GreatBanc's Partial Motion to Dismiss the SAC ("PMTD") is based on this Court's previous order dismissing certain defendants and counts contained in Plaintiffs' First Amended Complaint ("FAC"). GreatBanc's attempt is misguided. First, GreatBanc answered the FAC, did not move to dismiss, and therefore the Court's Motion to Dismiss Order (*see* Dkt. 74) was silent as to GreatBanc's role. Second, while the Court's order found Plaintiffs did not sufficiently allege certain McBride Defendants acted in their fiduciary capacities, as opposed to their corporate ones, no such analysis applies to GreatBanc because it has no corporate hat to wear. At all times as trustee, GreatBanc served in its fiduciary capacity to the ESOP — both in its actions and in its obligation to protect the ESOP and its participants.[3] Third, and most importantly, the Court's order was limited to the allegations in the FAC.[4] The Court, at no time,

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

[2] *George v. Kraft Foods Glob., Inc.*, 814 F. Supp. 2d 832, 852 (N.D. Ill. 2011).

[3] "A plan trustee, therefore, will, by definition [at ERISA § 3(21)(A)], always be a 'fiduciary' under ERISA as result of its authority or control over plan assets." U.S. Dep't of Labor, Field Assistance Bulletin 2004-03, 2004 WL 2979777 (EBSA) (Dec. 17, 2004).

[4] Dkt. 74 at 7–8 ("Plaintiffs have failed to adequately plead the fiduciary status of Eilermann and Arri"); 9 ("Plaintiffs' allegations...do not support a reasonable inference"); 15 ("without more, this is insufficient to allege plausibly").

has made conclusions of whether any defendant named in the FAC was or was not a fiduciary as a matter of law. The PMTD pretends otherwise.

At the time the FAC was filed, Plaintiffs had very few documents in their possession to understand the complicated nature of the actions taken by the McBride Defendants and GreatBanc that resulted in the harm to the ESOP. The SAC is a result of the review of tens of thousands of pages of discovery that demonstrate the fiduciary breaches and prohibited transactions involving the ESOP's primary asset of company stock and the failures of the fiduciaries to protect the ESOP's participants. The SAC only seeks redress for conduct governed by ERISA. GreatBanc's PMTD[5] should be denied.

## II.        STANDARD FOR STATING ERISA CLAIMS

ERISA is a "remedial statute to be liberally construed in favor of employee…participants." *Kross v. W. Elec. Co., Inc.*, 701 F.2d 1238, 1242 (7th Cir. 1983). In the Seventh Circuit, a complaint brought under ERISA satisfies Rule 8(a)(2) "as long as the facts alleged tell a plausible story." *Allen v. GreatBanc Trust Co*., 835 F.3d 670, 678 (7th Cir. 2016); *accord Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) ("[T]he plausibility requirement demands only that a plaintiff provide sufficient detail 'to present a story that holds together.'") (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). A complaint alleging breaches of ERISA fiduciary duty should be "read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 594 (8th Cir. 2009) (citations omitted); *see also Allen*, 835 F.3d at 678. Additionally, "[t]he determination of a defendant's fiduciary status, particularly whether one is a functional fiduciary, is typically premature at the motion to dismiss stage as it is a fact-intensive

---

[5] All page citations to the PMTD shall be to the ECF header page number at Dkt. 115.

inquiry." *Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund v. Bank of New York Mellon Corp.*, 13-1844, 2014 WL 497737, at *4 (N.D. Ill. Feb. 6, 2014).

## III. BACKGROUND

### A. The ESOP's Fiduciaries

GreatBanc, at all relevant times, served as the discretionary trustee of the ESOP pursuant to 29 U.S.C. § 1103(a) and the 2013 ESOP Trust Agreement. SAC at ¶¶ 36–38. As a fiduciary to the ESOP and under the terms of the 2013 ESOP Trust Agreement, GreatBanc was required to act in the best interests of the ESOP and its participants at all times. *Id*. at ¶ 39. GreatBanc's responsibilities to the ESOP included, but were not limited to, the power (i) to begin, maintain, or defend any litigation necessary in connection with the investment, reinvestment, and the holding of the assets of the ESOP and the administration of the ESOP; (ii) to retain agents, attorneys, actuaries, accountants, appraisers, valuation firms, and independent financial advisors for any purpose at the trustee's discretion; (iii) to invest in McBride Enterprise related stock; (iv) to select an independent appraiser to assist GreatBanc in determining the fair market value of stock held by the ESOP; (v) to attend shareholder meetings of the company whose stock is held by the ESOP and act as the shareholder of record for the benefit of the ESOP; and (vi) to perform any and all other acts that in its judgment are considered necessary and appropriate for the ESOP. *Id*. at ¶ 37.

John Eilermann ("Eilermann"), the CEO, and Michael Arri ("Arri"), the CFO, as the only persons who could, and did, act on behalf of the ESOP's named fiduciaries[6] under the governing Plan documents, had the authority to hire GreatBanc, monitor it a Plan service provider and

---

[6] McBride & Son Management Company, LLC ("MS Management") and McBride & Son Capital, Inc. ("MS Capital") were the named fiduciaries of the ESOP under 29 U.S.C. § 1102(a). SAC at ¶¶ 45, 54.

fiduciary to the ESOP, and remove it if necessary. *Id*. at ¶¶ 25–28, 45–51, 54–60.

**B.    The 2013 ESOP Transaction (Counts I through VI)**

Although Eilermann and Arri awarded themselves and other corporate insiders synthetic equity as early as 2006, Internal Revenue Service rules prohibited them from awarding more, and they began looking for alternative structures of the McBride Enterprise that would allow them to extract more value at the expense of the ESOP. SAC at ¶¶ 3, 114–132. Consequently, on December 31, 2013, MS Management, Eilermann, Arri, and GreatBanc, all in their capacity as fiduciaries, caused the ESOP to engage in a transaction involving plan assets for Eilermann and Arri's benefit where the ESOP would no longer own the entity that directly owned the subsidiaries and assets of the McBride Enterprise, McBride & Sons Companies, Inc. ("MS Companies, Inc."), but the ESOP would instead own the stock of a holding company, MS Capital, whose sole asset would be the Class A Units of MS Companies, Inc. after it was converted to a limited liability company, McBride & Sons Companies, LLC ("MS Companies, LLC"). *Id*. at ¶¶ 133–137. As an immediate consequence of the transaction involving plan assets, the ESOP was no longer the 100% owner of the McBride Enterprise, as Eilermann and Arri issued to themselves Class B Units of MS Companies, LLC. *Id*. at ¶ 138.

Counts I, III, and V allege breaches of ERISA's fiduciary duties and prohibited transaction rules against GreatBanc[7] regarding the "2013 ESOP Transaction" because a prudent and loyal trustee would not have allowed the exchange of MS Management stock for MS Capital stock, which was for less than adequate consideration. *Id*. at ¶¶ 140–148 (describing in detail why a prudent and loyal fiduciary would never have approved the 2013 ESOP Transaction given

---

[7] Claims against MS Management, MS Capital, Eilermann, and Arri are addressed in Plaintiffs' opposition to McBride Defendants' motion to dismiss.

how it benefitted Eilermann and Arri at the expense of the ESOP); 337–352 (Count I alleging prohibited transaction violations); 370–384 (Count III alleging breaches of fiduciary duty); and 400–421 (Count V alleging co-fiduciary breaches).

### C.    Loss of Value from 2013 to 2017 (Counts VII through X)

Despite having a duty to protect the assets held by the ESOP as the only persons who could, and did, act on behalf of MS Capital as named fiduciary, from 2013 to 2017, Eilermann and Arri continued to award themselves ownership of the McBride Enterprise in addition to paying themselves millions in compensation, while GreatBanc turned a blind eye. *Id*. at ¶¶ 151–172. As owners of the Class B Units of MS Companies, LLC, Eilermann and Arri also received more favorable distributions than the ESOP. *Id*. at ¶¶ 173–178. By November 30, 2017, Eilermann, Arri, and other insiders owned approximately 43% of the McBride Enterprise through their ownership of the Class B and Class C Units. *Id*. at ¶ 172. The dilution of the ESOP's ownership of the McBride Enterprise and the suppression of the stock price was a deliberate consequence of the 2013 ESOP Transaction and the subsequent actions of Eilermann and Arri, resulting in losses to the ESOP. *Id*. at ¶¶ 149–150, 194–205. But for GreatBanc's fiduciary decision to exchange MS Companies, Inc. stock for MS Capital stock, the ESOP would have owned 100% of the enterprise until the 2017 Transaction. The ESOP's losses were facilitated by Eilermann and Arri's direct ability to control the MS Capital stock price through the award of Class B and Class C Units to themselves and other insiders. *Id*. at ¶¶ 179–193.

Counts VII and X allege breaches of ERISA's fiduciary duties against GreatBanc regarding the "Loss of Value from 2013 to 2017" because a prudent and loyal trustee would have prevented losses to the value of the stock held by the ESOP including preventing the transactions from occurring, appointing independent board members, removing imprudent fiduciaries, and

filing a derivative suit on behalf of the ESOP to protect its interest in the McBride Enterprise. *Id.* at ¶¶ 431–445 (Count VII alleging breaches of fiduciary duty) and 461–482 (Count IX alleging co-fiduciary breaches).

## IV. ARGUMENT

### A. The 2013 ESOP Transaction Properly Alleges Violations of ERISA (Counts I, III, and V)

GreatBanc seeks the dismissal of Counts I, III, and V yet does not cite, quote, or address even a single word of these well pled Counts in its PMTD. PMTD at 7–11. Instead, GreatBanc argues the Court's previous dismissal of certain counts in the FAC *against the McBride Defendants* should blindly apply to Counts I and III alleged *against GreatBanc* in the SAC. It offer no legal support for such a sweeping conclusion.

#### 1. Counts I and III

Put simply, GreatBanc fails to address that Plaintiffs have pled in sufficient detail that Count I and III are centered on the exchange of MS Companies, Inc. stock, held by the ESOP, for less than adequate consideration.[8] The exchange was effectuated through the execution of documents by GreatBanc in its fiduciary capacity as trustee and by Eilermann and Arri in their fiduciary capacity on behalf of the named fiduciary at the time, MS Management.[9] Approving transactions involving plan assets, here the exchange of stock held by the ESOP, unequivocally

---

[8] SAC at ¶ 133 ("The 2013 ESOP Transaction was consummated through at least two legal agreements…in which all of the shares of MS Companies, Inc. held by the ESOP were exchanged for the shares of a new entity, MS Capital, formed on December 31, 2013. The ESOP received no other consideration for the MS Companies, Inc. stock it exchanged."); Count I ¶ 341 ("GreatBanc caused the ESOP to exchange property of the Plan, MS Companies, Inc. stock, with MS Capital for MS Capital stock."); Count III ¶ 380(a) ("Caused the Plan to exchange MS Companies, Inc. stock with MS Capital for MS Capital stock for less than adequate consideration").

[9] SAC at ¶¶ 133–135, 339 (e) and (f), 380(c) and (d). That the 2013 ESOP Transaction may have been planned by Eilermann and Arri does not negate GreatBanc's direct fiduciary involvement in approving the transaction.

involves fiduciary acts. 29 U.S.C. § 1002(21)(a) ("a person is a fiduciary with respect to a plan to the extent…he …exercises any authority or control respecting…disposition of its assets").

Count III further alleges actions GreatBanc took or failed to take that involved "discretionary authority or discretionary control respecting management" of the ESOP and/or "authority or control respecting management or disposition of" the ESOP's assets, including but not limited to: (i) hiring Stern Brothers as a service provider to the ESOP; (ii) having the authority to appoint and remove fiduciaries to the ESOP; (iii) having the authority to appoint members of the MS Management Board of Directors; and (iv) having the authority to appoint members of the MS Capital Board of Directors. 29 U.S.C. § 1002(21)(a); SAC at ¶ 375.

Any supposed corporate benefits granted to Eilermann and Arri (and other insiders) after the 2013 ESOP Transaction were the direct consequence of the exchange of MS Companies, Inc. stock for less than adequate consideration. SAC at ¶ 142 (alleging in great detail how Eilermann and Arri's ability to give themselves the McBride Enterprise was known prior to the exchange of stock and was the only reason for the exchange which served no beneficial purpose to the ESOP). To be clear, in the context of the 2013 ESOP Transaction, Plaintiffs only seek relief under ERISA in Counts I and III for actions taken or not taken by GreatBanc in its fiduciary capacity as trustee as required under ERISA and the terms of the 2013 ESOP Trust Agreement.[10] GreatBanc, as trustee, only has a fiduciary hat to wear and Plaintiffs have pled in sufficient detail its fiduciary role and obligations to the ESOP.

---

[10] Congress imposed a duty to ensure that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1); SAC at ¶ 37.

2.      **Count V**

GreatBanc and Plaintiffs agree that Court V is derivative of Counts II and IV against the McBride Defendants. *See*, *e.g.*, *Fish v. GreatBanc Tr. Co.*, No. 09 C 1668, 2016 WL 5923448, at *58 (N.D. Ill. Sept. 1, 2016) ("Co-fiduciary liability claims under ERISA section [1105] are derivative of an underlying breach of fiduciary duty, meaning that plaintiffs must prove a breach of fiduciary duty by GreatBanc in order to impose liability on defendants."). Since GreatBanc does not argue any alternative reason for dismissal of Count V, should the Court hold that Counts II and/or IV are sufficiently alleged, Count V will in turn survive.

3.      **Count III Properly Alleges Loss Causation**

GreatBanc argues that Plaintiffs failed to plead loss causation with regard to Count III because the SAC alleges the valuation of MS Capital stock rose in the two years after the December 31, 2013 exchange of the Plan's MS Companies, Inc. stock for MS Capital stock. PMTD at 9–10. This is simply not so.

First, Plaintiffs alleged an extensive list of reasons why the MS Capital stock was worth less than the MS Companies, Inc. stock and thus the exchange was for less than adequate consideration. Among the reasons: (i) MS Capital stock would not directly own the McBride Enterprise but would instead only hold Class A Units of MS Companies, LLC; (ii) Eilermann and Arri were to be the holders of Class B Units of MS Companies, LLC; (iii) the immediate issuing of Class B Units to Eilermann and Arri would dilute the ESOP's interest in the McBride Enterprise; (iv) Eilermann and Arri, as the only members of the Board of Managers of MS Companies, LLC, would have discretion to issue new Class B Units and Class C Units of MS Companies, LLC; (v) Eilermann and Arri intended to continue to dilute the ESOP's interest in the McBride Enterprise by issuing additional Class B Units and Class C Units of MS Companies,

LLC to Eilermann, Arri, Schindler, Berger, and Todt; (vi) Class B Unit and Class C Unit holders had superior preferential distribution rights over the Class A Units that would be held by the ESOP through MS Capital; and (vii) Eilermann and Arri intended to make distributions to only the holders of Class B Units and Class C Units of MS Companies, LLC. SAC at ¶ 142.

Second, and quite obviously, even though the value of MS Capital went up in absolute terms, it should have been valued higher. *Brundle on behalf of Constellis Employee Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 783 (4th Cir. 2019), as amended (Mar. 22, 2019) ("although the ESOP benefited despite the breach, it would have benefited at least as much — but *ended* in a far better position — without the breach"); *McMaken v. GreatBanc Tr. Co.*, 17-4983, 2019 WL 1468157, at *10 (N.D. Ill. Apr. 3, 2019) (Wood, J.) (rejecting GreatBanc's argument in a different case that a plaintiff has no Article III standing where the value of plan assets increased).

Third, GreatBanc's argument that it did not cause the harm alleged in Count III because the 2013 ESOP Transaction was also authorized by Eilermann and Arri does not negate causation because GreatBanc had fiduciary duties to protect the ESOP from the actions of others and it failed to take various possible actions to do so, including exercising its authority to appoint independent directors to MS Capital's Board of Directors. *See* 29 U.S.C. §§ 1104(a), 1105(a); SAC at ¶¶ 37–39, 194, 200–203, 244, 375, 380.

Finally, Plaintiffs not only seek the Plan's losses, they seek disgorgement of profits and other equitable or remedial relief. SAC at ¶¶ 13, 14, 382, 383, 606 Prayer for Relief ¶¶ E, F, G, I, M, P. They are not required to plead a financial loss to seek a disgorgement remedy.[11] GreatBanc

---

[11] *See Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013) ("[D]isgorgement claims for [ERISA violations] do not require that a plaintiff suffer a financial loss, as relief in a disgorgement

has made no argument against Plaintiffs' claims to such relief.

**B.      The Loss of Value from 2013 to 2017 Properly Alleges Violations of ERISA (Counts VII and X)**

GreatBanc seeks the dismissal of Counts VII and X because according to GreatBanc: "Plaintiffs improperly seek to bring ERISA claims against GreatBanc for compensation decisions made by Eilermann and Arri solely in their corporate role as board members" and "[s]etting compensation is a quintessential business decision of corporate management that does not involve plan management or administration of plan assets, and therefore falls outside the purview of fiduciary actions governed by ERISA." PMTD at 4, 6. GreatBanc's argument is meritless and once again, it fails to cite, quote, or address a single word of Counts VII and X and thus misunderstands and misrepresents the nature of Plaintiffs' claims.

**4.      Count VII**

Count VII does not merely allege that Eilermann, Arri, and other insiders were paid too much compensation. Instead, Count VII alleges in sufficient detail that between 2013 and 2017, the value of MS Capital stock held by the ESOP was devalued when (i) Eilermann and Arri gave themselves and other insiders 43% of the McBride Enterprise through the award of Class B and Class C Units of MS Companies, LLC; (ii) the ESOP's primary asset was stock of MS Capital and MS Capital's only asset was Class A Units of MS Companies, LLC (the company that used to be owned directly by the ESOP before the 2013 ESOP Transaction and before its conversion from a C Corp to an LLC); (iii) Plaintiffs have alleged that based upon the way valuations were

---

claim 'is measured by the defendant's profits.'"); *Leigh v. Engle*, 727 F.2d 113, 122 (7th Cir. 1984) ("ERISA clearly contemplates actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries do not suffer direct financial loss."); *see also* 29 U.S.C. § 1109(a) (proving liability "to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate").

done of the Class A Units/MS Capital stock, the amount of outstanding Class B and Class C Units had a direct effect on the value of the stock held by the ESOP; and (iv) Eilermann and Arri additionally paid themselves millions in other forms of compensation including salary, perquisites, and importantly, preferential distributions as Class B Unit owners that the ESOP could now not receive as Class A Unit owners. SAC at ¶¶ 147–205. Read as a whole, these allegations do not simply allege Defendants set excessive salaries for themselves but instead allege purposeful self-dealing at the expense of the ESOP participants during a time that Eilermann and Arri, as the only persons who could act on behalf of MS Capital, were acting as fiduciaries to the ESOP.

Although Count VII involves reference to corporate actions, the remedies of harm sought by the Plaintiffs fall squarely under ERISA. GreatBanc breached its fiduciary duties when it, for example:

(1) failed to prevent the dilution of value of MS Capital stock (SAC at ¶ 441(p));

(2) failed to prevent Eilermann and Arri from controlling the value of MS Capital stock inside the ESOP (SAC at ¶ 441(s));

(3) failed to appoint independent members of the Board of Directors of MS Capital and/or failed to remove Eilermann and Arri as board members, which falls under their obligation in the 2013 ESOP Trust Agreement to act in the place of the ESOP as the sole shareholder of MS Capital (SAC at ¶¶ 37, 441(d) and (h));

(4) failed to remove MS Capital, Eilermann, and Arri as fiduciaries to the ESOP, which was within its discretion as trustee under the 2013 ESOP Trust Agreement (SAC at ¶¶ 37, 441(i)); a*nd*
(5) failed to file a derivative suit[12] against officers and directors of MS Capital and MS Companies, LLC. as it is permitted to do under the 2013 ESOP Trust Agreement to protect the shareholder interests of the ESOP in MS Capital (SAC at ¶¶ 37, 441(j)).[13]

---

[12] It is well established that ESOP participants may bring an action challenging fiduciaries' failure to take action protecting a plan, such as bringing a derivative action alleging "that the persons in control of the corporation acted in a manner unfairly prejudicial to the Company and the Plan as stockholder, and that corporate assets were wasted." *Spires v. Schools*, 271 F. Supp. 3d 795, 805 (D.S.C. 2017) (denying

GreatBanc's failure to appoint independent board members is especially egregious given GreatBanc's published opinion that:

> "[a] board of directors consisting solely of insiders is also an area of concern for a trustee. Best practices dictate that an ESOP company has at least one or two outside, independent board members. The implementation of outside board members removes conflicts of interest that may otherwise exist. This adds a level of protection to the decisions made by the board and protects the trustee in monitoring the board. In addition, outside board members add a different perspective and bring different experiences to bear that are often helpful in the boardroom."

SAC at ¶ 264. Those words, written by GreatBanc's lead person assigned to this ESOP, demonstrate the fiduciary duties owed to the ESOP and the consequences in failing to meet them. Here, the consequences from Eilermann and Arri's conflicts of interest are not merely hypothetical, they are disastrously real. The ESOP (1) received no compensation or consideration at all for the first 43% of the McBride Enterprise Eilermann and Arri gave themselves and others and (2) received well below fair market value for the last 57% in the 2017 ESOP Transaction – a transaction that did not even involve seeking bids from outside third parties. SAC at ¶¶ 6, 150, 160–172.

The harm alleged in Count VII falls within the scope of ERISA's remedies. *Johnson v. Couturier*, 572 F.3d 1067, 1077 (9th Cir. 2009) (corporate directors' diversion of plan assets to corporate insider compensation constituted fiduciary conduct, and a plausible fiduciary breach

---

motion to dismiss ERISA fiduciary duty claim); *see also Blankenship v. Chamberlain*, 695 F. Supp. 2d 966, 975–77 (E.D. Mo. 2010) (denying motion to dismiss breach of fiduciary duty claim that ESOP fiduciary failed to bring derivative claim); *Martin v. Feilen*, 965 F.2d 660, 667 (8th Cir. 1992) ("The decision not to have the ESOP assert such a claim is one of plan administration. . . . the Secretary may sue the ERISA fiduciaries for damages under § 1109 for failing to assert the derivative claim"); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 917 (2d Cir. 1989) (§ 1104(a)(1)(B) may place on trustee duty to act including to sue).

[13] These are in addition to many other fiduciary breaches alleged in Count VII, which are too numerous to address here given that GreatBanc has not addressed a single one in their PMTD. *See* SAC at ¶ 441.

because where an "ESOP fiduciary also serves as a corporate director or officer, imposing ERISA duties on business decisions from which that individual could directly profit does not to us seem an unworkable rule"); *see also Perez v. Bruister*, 823 F.3d 250, 259 (5th Cir. 2016) (even though director abstained from voting on ESOP transactions, as owner of company he still functioned as fiduciary because of his self-dealing in effectuating deals).[14]

This principle was emphasized recently in the case, *Spires v. Schools*, where the plaintiffs alleged on behalf of a class of participants of the Piggly Wiggly ESOP that Piggly Wiggly executives engaged in "over-compensation, insider deals, and mismanagement… which contributed to the financial downturn of the Company and reduced the value of Plan assets, to the financial detriment of the Participants and Beneficiaries, including the Plaintiffs." *Spires v. Schools*, Amended Complaint, 16-616 (D.S.C. May 23, 2016) Dkt. No. 50. at ¶ 129. The Court found this conduct was not corporate in nature, governed by ERISA, and that the plan fiduciaries could have, but did not, bring a derivative complaint against the Piggly Wiggly executives to rid the plan of their wrongdoing. *Spires v. Schools*, 271 F. Supp. 3d 795, 805. District Judge Gergel emphasized that:

Plaintiffs do not merely allege the Fiduciary Defendants qua corporate management made

---

[14] The cases cited by GreatBanc are easily distinguishable. *See Eckelkamp v. Beste*, 201 F. Supp. 2d 1012 (E.D. Mo. 2002) (there were no allegations of self-dealing by corporate insiders and procedurally this was a summary judgment decision which supports the argument that the PMTD should be denied); *Oren-Bousquet v. Lasalle Bank, N.A.*, 2008 WL 11410042, at *4 (W.D. Tex. June 13, 2008) (no allegations of self-dealing or direct control over value of plan assets like here); *Lepage v. Blue Cross & Blue Shield of Minn.*, 2008 U.S. Dist. LEXIS 49298, at *15–16 (D. Minn. June 25, 2008) (addressed issues of classification of employee for payroll and FLSA purposes, which has no bearing here); *Steavens v. Elec. Data Sys. Corp.*, 2008 WL 3540070, at *3 (E.D. Mich. Aug. 12, 2008) (addressed claim that defendants violated ERISA by not crediting overtime pay, which also has no bearing here); *Armstrong v. Amsted Indus., Inc.*, 2004 WL 1745774, at *1 (N.D. Ill. July 30, 2004) (was a summary judgment decision involving the purchase of an unrelated company where plaintiffs admitted it did not involve a fiduciary act and there were no allegations of self-dealing); *Bryant v. International Fruit Product Co.*, 886 F.2d 132, 134–135 (6th Cir. 1989) (conduct at issue was an amendment to a plan as opposed to here which involves the direct dilution of plan assets).

poor decisions regarding real property leases or other poor business decisions. They also allege the Fiduciary Defendants deliberately colluded to transfer Company assets to themselves, necessarily depleting the value of Plan assets, and as Plan fiduciaries decided not to protect Plan participants because the Fiduciary Defendants' self-interest was adverse to the interests of Plan participants. Under ERISA, employers "owe a duty ... [as] ... trustees to avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan."

*Id.* at 803 (internal quotations and citations omitted).

Likewise, in *Johnson*, ESOP participants brought an ERISA fiduciary action against the ESOP-owned company's president and directors, who were ESOP trustees and fiduciaries, claiming company-paid overcompensation to the self-dealing president harmed the ESOP. *Johnson*, 572 F.3d at 1072–74, 1076–77. Like GreatBanc here, the defendants there argued "that the setting of executive compensation is a business decision not subject to ERISA." *Id.* at 1075. The Ninth Circuit rejected the argument, explaining that executive compensation is within ERISA's purview when there exists self-dealing by ERISA fiduciaries for personal gain:

Decisions relating to corporate salaries generally do not fall within ERISA's purview. But where plan assets include the employer's stock, the value of those assets depends on the employer's equity. . . . [W]e conclude that applying ERISA to the instant case does not risk encompassing within its confines any and all day-to-day corporate decisions shielded by the business judgment rule. Where, as here, an ESOP fiduciary also serves as a corporate director or officer, imposing ERISA duties on business decisions from which that individual could directly profit does not to us seem an unworkable rule. To the contrary, our holding merely comports with congressional intent in establishing ERISA fiduciary duties as "the highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir.1996) (quotation omitted). To hold otherwise would protect from ERISA liability obvious self-dealing, as Plaintiffs allege occurred here, to the detriment of the plan beneficiaries.

*Id.* at 1077. That holding applies equally here, where the Plan is an ESOP, Eilermann and Arri are alleged to be ERISA fiduciaries, and self-dealing overcompensation to the executives of an ESOP-owned company is alleged. Judge Blakey of this District followed *Johnson*'s "persuasive logic" in *Svigos v. Wheaton Securities, Inc.*, No. 17-4777, 2018 WL 587190, at *9 (N.D. Ill. Jan.

29, 2018) (Blakey, J.), when he held in finding the plaintiff's claims sufficient:

> Here, Defendants' actions directly affected the Plan assets under their control. If, as alleged, Paul and John arranged to pay Paul sham fees out of Wheaton's assets, they diverted Plan assets to Paul, and engaged in self-dealing of the most obvious kind. Allowing Defendants to exempt such actions from ERISA liability by simply relabeling them as "corporate acts" would be contrary to the plain language and underlying purpose of Congress in enacting ERISA, which included a "desire to offer employees enhanced protection for their benefits."

*Id.* (citations omitted).

GreatBanc had the discretion to stop Eilermann and Arri from giving themselves the McBride Enterprise in the shadows through an LLC structure that ESOP participants were never told about. Count VII sufficiently alleges that GreatBanc failed to do so.

Finally, GreatBanc's argument that the executives were not overly compensated is based on documents outside the SAC that are not properly considered. PMTD at 7 & n.5.[15] This is not a motion for summary judgment. Plaintiffs adequately alleged harm to the ESOP, including the unreasonable and imprudent dilution of MS Capital stock. *See* SAC ¶¶ 149–205. GreatBanc's assertions otherwise are improper. *Allen*, 835 F.3d at 676.

### 5. Count X

Plaintiffs agree that Count X is derivative of Count VIII. If Count VIII is found sufficiently pled, Count X should survive. GreatBanc makes no argument to the contrary.

## V. CONCLUSION

For these reasons, and those identified in Plaintiffs' Opposition to McBride Defendants' Partial Motion to Dismiss, GreatBanc's Partial Motion to Dismiss should be denied.

---

[15] GreatBanc's uncited factual statement is far from gospel, given that discovery to date shows these compensation studies stopped prior to the 2013 ESOP Transaction.

Dated:  February 24, 2020                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ *Mark G. Boyko.*
　　　　　　　　　　　　　　　　　　Mark G. Boyko (IL #6288036)
　　　　　　　　　　　　　　　　　　mboyko@baileyglasser.com
　　　　　　　　　　　　　　　　　　Bailey & Glasser LLP
　　　　　　　　　　　　　　　　　　8012 Bonhomme Avenue, Suite 300
　　　　　　　　　　　　　　　　　　Clayton, MO 63105
　　　　　　　　　　　　　　　　　　Telephone: (314) 863-5446
　　　　　　　　　　　　　　　　　　Facsimile: (314)-863-5483

　　　　　　　　　　　　　　　　　　Patrick O. Muench (IL #6290298)
　　　　　　　　　　　　　　　　　　pmuench@baileyglasser.com
　　　　　　　　　　　　　　　　　　Bailey & Glasser LLP
　　　　　　　　　　　　　　　　　　333 S. Wabash Ave.
　　　　　　　　　　　　　　　　　　Suite 2736
　　　　　　　　　　　　　　　　　　Chicago, IL 60604
　　　　　　　　　　　　　　　　　　Telephone: (312) 995-7143
　　　　　　　　　　　　　　　　　　Facsimile: (304) 342-1110

　　　　　　　　　　　　　　　　　　Ryan T. Jenny
　　　　　　　　　　　　　　　　　　rjenny@baileyglasser.com
　　　　　　　　　　　　　　　　　　Gregory Y. Porter (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　gporter@baileyglasser.com
　　　　　　　　　　　　　　　　　　Bailey & Glasser LLP
　　　　　　　　　　　　　　　　　　1055 Thomas Jefferson Street, NW
　　　　　　　　　　　　　　　　　　Suite 540
　　　　　　　　　　　　　　　　　　Washington, DC 20007
　　　　　　　　　　　　　　　　　　Telephone: (202) 463-2101
　　　　　　　　　　　　　　　　　　Facsimile: (202) 463-2103

　　　　　　　　　　　　　　　　　　Thomas E. Clark Jr. (IL #6294921)
　　　　　　　　　　　　　　　　　　tclark@wagnerlawgroup.com
　　　　　　　　　　　　　　　　　　Jordan D. Mamorsky (*pro hac vice* to be
　　　　　　　　　　　　　　　　　　filed)
　　　　　　　　　　　　　　　　　　jmamorsky@wagnerlawgroup.com
　　　　　　　　　　　　　　　　　　The Wagner Law Group, PC
　　　　　　　　　　　　　　　　　　190 South LaSalle Street, Suite 2100
　　　　　　　　　　　　　　　　　　Chicago, IL 60603
　　　　　　　　　　　　　　　　　　Telephone: (314) 236-0065
　　　　　　　　　　　　　　　　　　Facsimile: (314) 236-5743

　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of February 2020, a copy of the foregoing document was served on all counsel of record via ECF.

/s/ *Mark G. Boyko*
Mark G. Boyko