## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GREGORY GODFREY, JEFFREY SHELDON, and DEBRA ANN KOPINSKI, on behalf of the MCBRIDE & SON EMPLOYEE STOCK OWNERSHIP PLAN, and on behalf of a class of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREATBANC TRUST COMPANY, McBRIDE & SON CAPITAL INC., McBRIDE & SON MANAGEMENT COMPANY, LLC, JOHN F. EILERMANN, JR., and MICHAEL D. ARRI,<br><br>Defendants. | Case No. 1:18-cv-07918<br><br>Judge Matthew F. Kennelly<br><br>Magistrate Judge Michael T. Mason |

## SECOND AMENDED COMPLAINT

Plaintiffs Gregory Godfrey, Jeffrey Sheldon, and Debra Ann Kopinski ("Plaintiffs"), by their undersigned attorneys, on behalf of the McBride & Son Employee Stock Ownership Plan (the "Plan" or the "ESOP"), and any successor trusts, and similarly situated participants in the Plan, and their beneficiaries, upon personal knowledge, the investigation of their counsel, and upon information and belief as to all other matters, allege as follows against (1) GreatBanc Trust Company ("GreatBanc"), the trustee for the Plan, (2) McBride & Son Capital, Inc. ("MS Capital"), (3) McBride & Son Management Company, LLC ("MS Management"), (4) John F. Eilermann, Jr. ("Eilermann"), and (5) Michael D. Arri ("Arri") (hereafter collectively the "Defendants") in this Second Amended Complaint ("SAC"):

1

1.　　　The allegations in the SAC demonstrate plainly that Defendants are "guilty of reprehensible self-dealing" and "not the kind of divided but honest loyalty that Congress intended."[1] Their conduct plainly violated ERISA fiduciary duties.

2.　　　The largest home builder in Saint Louis, MO, the McBride & Son Homes enterprise ("McBride Enterprise")[2], was once 100% owned by all of its employees through the ESOP. However, when Eilermann and Arri assumed leadership positions in the McBride Enterprise, and thereby became fiduciaries to the ESOP[3], they began taking the value of the McBride Enterprise from the ESOP, for their own benefit, in violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

3.　　　Beginning in 2006, Eilermann and Arri paid themselves, and other corporate insiders, synthetic equity in the McBride Enterprise in the form of phantom stock and stock appreciation rights.[4] The synthetic equity represented a claim on the equity of the McBride Enterprise and therefore reduced, or diluted, the value of the assets held by the ESOP.

4.　　　When Eilermann and Arri ran up against of rules put in place by the Internal Revenue Service ("IRS") to limit how much equity and synthetic equity could be given to

---

[1] *Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir. 1992).

[2] McBride Enterprise generally refers to the McBride & Son conglomerate of subsidiaries and assets that for the relevant time period of the allegations herein were owned by McBride & Sons Enterprises, Inc., and then McBride & Sons Companies, Inc., and then finally through a combination of ownership by MS Capital and McBride & Son Companies, LLC which was referred to by Defendants in their communications as an "enterprise."

[3] Eilermann and Arri were not only fiduciaries as the only members of the Board of Directors of MS Management, which was the named fiduciary of the ESOP prior to December 31, 2013 and the only members of the Board of Directors of MS Capital, which was the named fiduciary of the ESOP after December 31, 2013, they repeatedly met the definition of an ERISA fiduciary under 29 U.S.C. § 1002(21) through their actions and authority as demonstrated in the SAC.

[4] Phantom stock and stock appreciation rights are intended to mimic the actual ownership vehicles of direct share ownership and stock options. *See infra* at ¶¶ 114 through 117 for further description.

insiders, known as "disqualified persons" under the Internal Revenue Code (the "Code"), Eilermann and Arri searched for another way to continue to take from the ESOP the value of the McBride Enterprise. By December 31, 2013, Eilermann and Arri had given themselves, and other insiders, the equivalent of 30% of the economic interests of the McBride Enterprise.

5.     On December 31, 2013, Eilermann and Arri caused the ESOP to engage in a complex corporate reorganization for their sole benefit where the ESOP would no longer own the entity that directly owned the subsidiaries and assets of the McBride Enterprise, McBride & Sons Companies, Inc. ("MS Companies, Inc."), but the ESOP would instead own the stock of a holding company, MS Capital, whose sole asset would be the Class A Units of MS Companies, Inc. after it was converted to a limited liability company, McBride & Sons Companies, LLC ("MS Companies, LLC"). As a consequence of the reorganization directed by Eilermann and Arri, the ESOP was no longer the 100% owner of the McBride Enterprise as Eilermann and Arri issued to themselves Class B Units of MS Companies, LLC. The ESOP received no consideration for this reorganization and the ESOP participants were never informed that they no longer owned 100% of the McBride Enterprise. *See infra* Counts I through VI at ¶¶ 337 through 430.

6.     From 2013 to 2017, Eilermann and Arri paid themselves, and other insiders, at least ███████ in various forms of compensation in addition to also awarding themselves further equity in the McBride Enterprise in the form of Class B Units and awarding other corporate insiders Class C Units of MS Companies, LLC. This had the effect of diluting the ESOP's ownership of the McBride Enterprise and suppressed the stock price of MS Capital. As owners of the Class B Units, Eilermann and Arri also received more favorable distributions than the ESOP. By November 30, 2017, Eilermann, Arri, and other insiders owned approximately

43% of the McBride Enterprise through their ownership of the Class B and Class C Units. The ESOP was harmed by the excessive payment of compensation and received no consideration for the dilution of their ownership of the McBride Enterprise. The ESOP participants were never informed about the excessive payment of compensation nor the dilution of their ownership of the McBride Enterprise. *See infra* Counts VII through X at ¶¶ 431 through 491.

7.      Finally, on November 30, 2017, Eilermann and Arri completed their taking of the McBride Enterprise from the ESOP when they caused MS Capital to purchase all of the shares of MS Capital stock held by the ESOP, which at this point only represented approximately 57% of the McBride Enterprise. The ESOP received consideration well below fair market value. Eilermann and Arri immediately transferred to themselves control and ownership of MS Capital. *See* Counts XI through XVI at ¶¶ 492 through 584.

8.      GreatBanc, who was supposed to be the independent discretionary trustee of the ESOP, was nothing but a rubber stamp for Eilermann and Arri, and failed to protect the ESOP participants every time it had the opportunity to act.

9.      Eilermann and Arri failed to properly monitor GreatBanc as the ESOP's trustee at all relevant times herein. Specifically, Eilermann and Arri failed to terminate GreatBanc as trustee even after GreatBanc repeatedly breached its fiduciary duties with respect to the ESOP and was sued repeatedly by the Department of Labor ("DOL") and other ESOP participants for breaches of ERISA and GreatBanc was forced into a remedial settlement agreement that governed its role with all plans it serviced. Prudent and loyal fiduciaries acting on behalf of the ESOP would have removed GreatBanc and appointed an actual independent trustee who would protect the ESOP participants. *See* Count XVII at ¶¶ 585 through 597.

10.     This lawsuit seeks to recover for the ESOP, and therefore the employees of the McBride Enterprise, the ESOP's losses, and thus its participants hard earned retirement assets, which were stolen from them by Eilermann and Arri.

11.     Defendants at all pertinent times owed to the ESOP and its participants and beneficiaries fiduciary obligations as set forth in ERISA. These obligations are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982); *see also George v. Kraft Foods Glob., Inc.*, 814 F. Supp. 2d 832, 852 (N.D. Ill. 2011). As Justice Cardozo famously put it,

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.

*Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928). Among the duties required of fiduciaries is the duty of loyalty to plan participants and beneficiaries. This duty requires that the fiduciary's decisions "must be made with an eye single to the interest of the participants and beneficiaries." *Donovan*, 680 F.2d at 271 (*citing, among other authorities*, Restatement (Second) of Trusts § 170 (1959)).

12.     Plaintiffs are participants in the ESOP, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who held vested shares of MS Capital in their accounts in the ESOP until the shares were sold on or about November 30, 2017.

13.     This action is brought under Sections 404, 405, 406, 409, and 502(a) of ERISA, 29 U.S.C. §§ 1104, 1105, 1106, 1109, and 1132(a), for losses suffered by the ESOP and for restoration to the ESOP of improper profits received by the ESOP's fiduciaries and parties in interest to the detriment of the ESOP's participants and beneficiaries and in violation of ERISA.

## JURISDICTION AND VENUE

14.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001–1191c, and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to require the Defendants to make good to the Plan losses resulting from their violations of ERISA, to restore to the Plan any profits that have been made by the breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

15.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

16.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the breaches and violations giving rise to the claims occurred in this District and the Plan's trustee, Defendant GreatBanc, is found in this District.

## PARTIES

### McBride & Son Employee Stock Ownership Plan

17.     The ESOP has been sponsored since its inception in 1987 by entities affiliated with the McBride Enterprise. Prior to and including December 31, 2013, the ESOP was sponsored by MS Management. After and including December 31, 2013, the ESOP was sponsored by MS Capital.

18.     While ESOP sponsorship has changed in name, at all relevant times herein, control of the ESOP was vested in the Board of the Directors of MS Management and the Board of Directors of MS Capital.

19.     From December 1, 1987, until November 30, 2017, the Plan was intended to be an employee stock ownership plan, or ESOP, under 29 U.S.C. § 1107(d)(6) that was intended to

meet the requirements of Sections 401(a) and 4975(e)(7) of the Code and related regulations. Specifically, the Plan is an "individual account plan" or "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34) and an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2).

20.    The Plan has been periodically amended through resolutions by the Board of Directors of MS Capital and the Board of Directors of MS Management. For purposes of the allegations herein, the Plan was amended and restated as of January 1, 2013 (hereafter the "2013 Plan Document") and as of January 1, 2017 (hereafter the ("2017 Plan Document").

21.    Prior to these amendments, the Plan was amended and restated as of January 1, 2007 (hereafter the "2007 Plan Document").

22.    For the benefit of Plan participants and beneficiaries from December 31, 2013 through November 30, 2017 the Plan held shares of stock of MS Capital. From January 8, 2010 through December 31, 2013 the Plan held shares of stock of MS Companies, Inc. Prior to January 8, 2010, the Plan held shares of stock of McBride & Sons Enterprises, Inc.

23.    Under the Plan's eligibility requirements nearly all employees of the McBride Enterprise, with limited exceptions, were eligible to be participants in the Plan.

24.    The 2017 Plan Document, the 2013 Plan Document, and the 2007 Plan Document required the Plan to be operated for the exclusive benefit of participants and beneficiaries, consistent with ERISA.

25.    The McBride & Son Employee Stock Ownership Trust ("ESOP Trust") was formed as part of the Plan and was amended and restated in its entirety effective December 27, 2013, as documented in the McBride & Son Employee Stock Ownership Trust Agreement ("2013 ESOP Trust Agreement").

26. The 2013 ESOP Trust Agreement was executed by Patrick J. De Craene ("De Craene") on behalf of GreatBanc and by Eilermann on behalf of MS Management.

27. The 2013 ESOP Trust Agreement was amended via Amendment Number One to recognize that effective January 1, 2014, MS Capital was to replace MS Management in all respects as signatory to the 2013 ESOP Trust Agreement.

28. Amendment Number One to the 2013 ESOP Trust Agreement was executed by Eilermann and Arri on behalf of MS Capital.

29. The 2013 ESOP Trust Agreement required that no part of the corpus or income of the ESOP Trust shall revert to MS Management, and later MS Capital, or be used for or diverted to purposes other than for the exclusive benefit of Plan participants and beneficiaries.

30. Effective November 30, 2017, GreatBanc, MS Capital, Eilermann, and Arri caused the Plan to sell its shares of MS Capital at below fair market value.

31. Amendment Two to the 2017 Plan Document was intended to amend the Plan to convert it from an ESOP to a profit sharing plan under Code Section 401(a) and to change the Plan name to the McBride & Son Profit Sharing Plan.

32. Effective December 15, 2017, and pursuant to the Second Amendment to the McBride & Son 401(k) Savings Plan, Amended and Restated as of January 1, 2013 (hereafter the "401(k) Plan"), the Plan was merged into the 401(k) Plan, thus effectively terminating it.

**Plaintiffs**

33. Plaintiff Gregory Godfrey is a participant, as defined in 29 U.S.C. § 1002(7), in the Plan at all relevant times. Plaintiff Godfrey resides in Wildwood, Missouri. He was vested in his account in the Plan. He was previously employed as Chief Information Officer. He was employed by the McBride Enterprise from 2001 to 2008.

34.     Plaintiff Jeffrey Sheldon is a participant, as defined in 29 U.S.C. § 1002(7), in the Plan at all relevant times. Plaintiff Sheldon resides in St. Louis, Missouri. He was vested in his account in the Plan. He was previously employed as an Information Systems Director. He was employed by the McBride Enterprise from 1998 until 2008.

35.     Plaintiff Debra Ann Kopinski is a participant, as defined in 29 U.S.C. § 1002(7), in the Plan at all relevant times. Plaintiff Kopinski resides in Cottleville, Missouri. She was vested in her account in the Plan. She was previously employed in an accounts payable capacity. She was employed by the McBride Enterprise from 2000 until 2017.

**Defendant GreatBanc**

36.     GreatBanc was engaged to act as discretionary trustee to the Plan, including with respect to the Plan's purchase or sale of MS Companies, Inc. stock and MS Capital stock, with the sole mission to act at all times in the best interests of the Plan's participants and beneficiaries in carrying out ERISA's strict fiduciary duties. GreatBanc, as described further below, failed to do so.

37.     Pursuant to the 2013 ESOP Trust Agreement, GreatBanc was granted, inter alia, the following powers (i) to make payments from the ESOP Trust to participants as directed by the Administrative Committee; (ii) to begin, maintain, or defend any litigation necessary in connection with the investment, reinvestment, and the holding of the assets of the ESOP Trust and the administration of the ESOP Trust; (iii) to provide written reports to the Administrative Committee concerning the ESOP Trust's financial records and net worth of the ESOP Trust, (iv) to retain agents, attorneys, actuaries, accountants, appraisers, valuation firms, and independent financial advisors for any purpose at the trustee's, (v) to invest in [McBride Enterprise stock] and to select an independent appraiser to assist the trustee in determining the fair market value of the

ESOP Trust (vi) to attend shareholder meetings of the [company whose stock is held by the ESOP] and act as the shareholder of record for the benefit of the ESOP Trust; and (vii) to perform any and all other acts in its judgment are considered necessary and appropriate for the ESOP Trust.

38.     Because of these responsibilities and its position as trustee of the Plan, GreatBanc was at all relevant times a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) because it was the Plan's "discretionary trustee" within the meaning of 29 U.S.C. § 1103(a) and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting management or distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

39.     GreatBanc was required by the 2013 ESOP Trust Agreement, and earlier versions of the trust agreement, to discharge its duties solely in the interest of Plan participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying the reasonable expenses of administering the ESOP Trust. GreatBanc was also required to discharge its duties with the care, skill prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims. GreatBanc was also required to discharge its duties in accordance with the documents and instruments governing the ESOP Trust and the Plan insofar as those documents and instruments are consistent with the provisions of ERISA. GreatBanc was also required to not cause the Trust to engage in any prohibited transactions prohibited by either the 2013 ESOP Trust Agreement, ERISA, or the Code.

40.     GreatBanc was at all relevant times a person providing services to the Plan.

41.     GreatBanc was at all relevant times a party in interest to the Plan under 29 U.S.C. § 1002(14)(A).

42.     GreatBanc's headquarters is located at 801 Warrenville Road, Suite 500, Lisle, Illinois 60532.

43.     GreatBanc is a subsidiary of U.S. Fiduciary Services, Inc., which is also headquartered at 801 Warrenville Road, Suite 500, Lisle, Illinois 60532.

**Defendant MS Management**

44.     Prior to and including December 31, 2013, McBride & Son Management Company, LLC ("MS Management") was the "plan sponsor" to the Plan under 29 U.S.C. § 1002(16)(B) according to the terms of the 2007 Plan Document and the 2013 Plan Document.

45.     MS Management was also the "named fiduciary" and "plan administrator" as those terms are defined in 29 U.S.C. § 1102(a) and 29 U.S.C. § 1002(16)(A), respectively, according to the terms of the 2007 Plan Document and the 2013 Plan Document.

46.     MS Management was a fiduciary to the Plan under 29 U.S.C. § 1002(21)(A) when it exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

47.     MS Management was at all relevant times a party in interest to the Plan under 29 U.S.C. § 1002(14)(A) and (C).

48.     MS Management, as a corporate entity, cannot act on its own without any human counterpart. In this regard, MS Management could only act through its Board of Directors.

49. Article 17.12 of the 2007 Plan Document and the 2013 Plan Document authorized the MS Management Board of Directors to act on behalf of MS Management as the named fiduciary and plan administrator of the Plan.

50. Eilermann and Arri were the only members of the MS Management Board of Directors for the relevant time period for the SAC prior to and including December 31, 2013.

51. Eilermann and Arri, as Directors, carried out all acts of MS Management in its role as named fiduciary and plan administrator to the Plan prior to and including December 31, 2013.

52. MS Management, before converting to a limited liability company from a corporation, was called McBride & Son Management Co.

**Defendant MS Capital**

53. Effective December 31, 2013, MS Capital, a Delaware corporation was the "plan sponsor" to the Plan under 29 U.S.C. § 1002(16)(B) to the Plan under 29 U.S.C. § 1002(16)(B) according to the terms of the 2013 Plan Document, as amended by Amendment Number Two to the 2013 Plan Document as executed December 31, 2013, and according to the terms of the 2017 Plan Document.

54. MS Capital was also the "named fiduciary" and "plan administrator" as those terms are defined in 29 U.S.C. § 1102(a) and 29 U.S.C. § 1002(16)(A), respectively, according to the terms of the 2013 Plan Document, as amended by Amendment Number Two, and the 2017 Plan Document.

55. MS Capital was a fiduciary to the Plan under 29 U.S.C. § 1002(21)(A) when it exercised discretionary authority or discretionary control respecting management of the Plan,

exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

56.     MS Capital was at all relevant times a party in interest to the Plan under 29 U.S.C. § 1002(14)(A) and (C).

57.     MS Capital, as a corporate entity, cannot act on its own without any human counterpart. In this regard, MS Capital could only act through its Board of Directors.

58.     Article 17.12 of the 2013 Plan Document and the 2017 Plan Document authorized the MS Capital Board of Directors to act on behalf of MS Capital as the named fiduciary and plan administrator of the Plan.

59.     Eilermann and Arri were the only members of the MS Capital Board of Directors from December 31, 2013 through the time period the Plan was effectively terminated.

60.     Eilermann and Arri, as Directors, carried out all acts of MS Capital in its role as named fiduciary and plan administrator to the Plan from December 31, 2013 through the time period the Plan was effectively terminated.

61.     MS Capital, as the successor named fiduciary and plan administrator of MS Management, had a duty under ERISA to investigate and remedy breaches by previous fiduciaries of the Plan.

### Defendant Eilermann

62.     Defendant John F. Eilermann, Jr. ("Eilermann") is Chief Executive Officer and President of MS Capital.

63.     Eilermann was also an officer to all of the corporate and/or limited liability company entities forming the McBride Enterprise for the time period relevant to the SAC.

64.     Eilermann was one of two members of the MS Management Board of Directors prior to and including December 31, 2013.

65.     Eilermann, as a Director, carried out all acts of MS Management in its role as named fiduciary and plan administrator to the Plan prior to and including December 31, 2013.

66.     Eilermann, as a Director of MS Management, was therefore a fiduciary to the Plan prior to and including December 31, 2013 as a named fiduciary under 29 U.S.C. § 1102(a), as the plan administrator under 29 U.S.C. § 1002(16)(A), and also as a fiduciary under 29 U.S.C. § 1002(21).

67.     Eilermann was one of two members of the MS Capital Board of Directors from December 31, 2013 through the time period the Plan was effectively terminated.

68.     Eilermann, as a Director, carried out all acts of MS Capital in its role as named fiduciary and plan administrator to the Plan from December 31, 2013 through the time period the Plan was effectively terminated.

69.     Eilermann, as a Director of MS Capital, was therefore a fiduciary to the Plan from December 31, 2013 through the time period the Plan was effectively terminated as a named fiduciary under 29 U.S.C. § 1102(a), as the plan administrator under 29 U.S.C. § 1002(16)(A), and also as a fiduciary under 29 U.S.C. § 1002(21).

70.     As further described in the SAC, including as described in Counts II, IV, VIII, XII, XIV, and XVII, Eilermann was a fiduciary to the Plan under 29 U.S.C. § 1002(21)(A) when he exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

71. Eilermann was also a party in interest to the Plan under 29 U.S.C. §§ 1002(14)(A), (H), and/or (I).

**Defendant Arri**

72. Defendant Michael D. Arri ("Arri") was Chief Financial Officer and Treasurer of MS Capital.

73. Arri was also an officer to all of the corporate and/or limited liability company entities forming the McBride Enterprise for the time period relevant to the SAC.

74. Arri was one of two members of the MS Management Board of Directors prior to and including December 31, 2013.

75. Arri, as a Director, carried out all acts of MS Management in its role as named fiduciary and plan administrator to the Plan prior to and including December 31, 2013.

76. Arri, as a Director of MS Management, was therefore a fiduciary to the Plan prior to and including December 31, 2013 as a named fiduciary under 29 U.S.C. § 1102(a), as the plan administrator under 29 U.S.C. § 1002(16)(A), and also as a fiduciary under 29 U.S.C. § 1002(21).

77. Arri was one of two members of the MS Capital Board of Directors from December 31, 2013 through the time period the Plan was effectively terminated.

78. Arri, as a Director, carried out all acts of MS Capital in its role as named fiduciary and plan administrator to the Plan from December 31, 2013 through the time period the Plan was effectively terminated.

79. Arri, as a Director of MS Capital, was therefore a fiduciary to the Plan from December 31, 2013 through the time period the Plan was effectively terminated as a named

fiduciary under 29 U.S.C. § 1102(a), as the plan administrator under 29 U.S.C. § 1002(16)(A), and also as a fiduciary under 29 U.S.C. § 1002(21).

80.     As further described in the SAC, including as described in Counts II, IV, VIII, XII, XIV, and XVII, Arri was a fiduciary to the Plan under 29 U.S.C. § 1002(21)(A) when he exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

81.     Arri was also a party in interest to the Plan under 29 U.S.C. §§ 1002(14)(A), (H), and/or (I).

**Relevant Non-Parties**

82.     Jeffrey Schindler ("Schindler") served as President to one or more of the corporate and/or limited liability company entities forming the McBride Enterprise including those that are defined as employers in the Plan's governing documents.

83.     Schindler is a party in interest to the Plan under 29 U.S.C. §§ 1002(14)(H) for all relevant times of the SAC.

84.     Jeffrey Todt ("Todt") serves as the current Chief Financial Officer of MS Capital and also served as an officer to one or more of the corporate and/or limited liability company entities forming the McBride Enterprise including those that are defined as employers in the Plan's governing documents. Todt previously served as Vice President of Accounting.

85.     Todt is a party in interest to the Plan under 29 U.S.C. §§ 1002(14)(H) for all relevant times of the SAC.

86.     Jeffrey Berger ("Berger") served as General Counsel of MS Capital and also served as an officer to one or more of the corporate and/or limited liability company entities

forming the McBride Enterprise including those that are defined as employers in the Plan's governing documents.

87.     Berger was a party in interest to the Plan under 29 U.S.C. §§ 1002(14)(H) for all relevant times of the SAC.

88.     Korschot & Company is a Missouri corporation, headquartered in Kansas City, Missouri that provides business valuation and financial advisory services under the fictitious name Stern Brothers Valuation Advisors (hereafter "Stern Brothers"). Opinions of value provided by Stern Brothers were provided to GreatBanc, MS Management, MS Capital, Eilermann, and Arri on an annual basis.

89.     Butcher Joseph Hayes ("Butcher Joseph") is a Delaware limited liability company, headquartered in St. Louis, Missouri that provides investment banking services to its clients, including mergers and acquisition services, ESOP buyout services, recapitalization services and capital advisory services.

## FACTUAL ALLEGATIONS

### The Plan's Investment in McBride Enterprise Entities

90.     The Plan originally held shares of McBride & Son Enterprises, Inc. stock ("MS Enterprises").

91.     Effective January 8, 2010, the Plan's primary investment became shares of MS Companies, Inc. stock.

92.     Effective December 31, 2013, and through November 30, 2017, the Plan's primary investment was MS Capital stock.

93.     MS Enterprises stock, MS Companies, Inc. stock, and MS Capital stock are not, and were not at any time they were held by the Plan, readily tradable on an established securities market.

94.     As of December 31, 2012, the Plan held 88,201 shares of MS Companies, Inc. stock.

95.     At the start of December 31, 2013, the Plan held 88,201 shares of MS Companies, Inc. stock.

96.     By the end of December 31, 2013, the Plan held 88,201 shares of MS Capital stock.

97.     As of December 31, 2014, the Plan held 88,201 shares of MS Capital stock.

98.     As of December 31, 2015, the Plan held 73,536 shares of MS Capital stock.

99.     As of December 31, 2016, the Plan held 88,201 shares of MS Capital stock.

100.     As of December 31, 2012, the plan administrator reported the Plan's investment in MS Companies, Inc. stock as $10,742,941 on the Plan's 2012 Form 5500.

101.     As of December 31, 2013, the plan administrator reported the Plan's investment in MS Companies, LLC as $12,595,173 on the Plan's 2013 Form 5500. This information was false, as the Plan actually held MS Capital stock which held 88,201 Class A Units of MS Companies, LLC.

102.     As of December 31, 2014, the plan administrator reported the Plan's investment in MS Capital stock as $14,817,850 on the Plan's 2014 Form 5500.

103.     As of December 31, 2015, the plan administrator reported the Plan's investment in MS Capital stock as $12,354,054 on the Plan's 2015 Form 5500.

104.    As of December 31, 2016, the plan administrator reported the Plan's investment in MS Capital stock as $13,494,818 on the Plan's 2016 Form 5500.

### Valuation of Stock Held by the Plan

105.    Stern Brothers was engaged by GreatBanc on May 25, 2010 to perform valuations for the stock held by the Plan. Arri also agreed to and accepted the engagement.

106.    As a condition of engagement with Stern Brothers, the Plan's fiduciaries were required to provide all information relating to the McBride Enterprise necessary for purposes of providing an estimate of value and in providing the estimate, Stern Brothers would rely, without any independent verification on the accuracy, completeness, and fairness of all information furnished by the fiduciaries without any independent appraisals.

107.    Consequently, MS Management, MS Capital, Eilermann, and Arri were fiduciaries in providing information to Stern Brothers.

108.    As of December 31, 2012, Stern Brothers reported a value of $121.80 per share of MS Companies, Inc. stock.

109.    As of December 31, 2013, Stern Brothers reported a value of $142.80 per share of MS Capital stock.

110.    As of December 31, 2014, Stern Brothers reported a value of $168 per share of MS Capital stock.

111.    As of December 31, 2015, Stern Brothers reported a value of $168 per share of MS Capital stock.

112.    As of December 31, 2016, Stern Brothers reported a value of $153 per share of MS Capital stock.

113.    From at least 2012 through 2016, when GreatBanc sent a copy of the valuation report created by Stern Brothers to the Plan's fiduciaries, GreatBanc acknowledged Arri's role as a fiduciary when it stated: "This report is being delivered to you in your capacity as a plan fiduciary."

### Eilermann, Arri, and Other Insiders Receive Synthetic Equity

114.    Synthetic equity is a catch-all term for a variety of economic interests in a company that do not also include the legal ownership of an equity interest. For anything that is labeled synthetic equity, the potential economic claim/benefit granted to the holder uses a company's stock price to determine the economic return, but the economic return is paid in cash instead of shares. Accordingly, the payments may dilute (i.e. reduce) the value of the business because cash leaves the company, but they don't dilute percentage ownership because no additional shares are issued.

115.    Phantom stock and stock appreciation rights ("SARs") are forms of synthetic equity.

116.    Phantom stock is intended to mimic the actual ownership vehicle of direct share ownership. SARs are intended to mimic the actual ownership vehicle of stock options.

117.    Synthetic equity represents a claim on the equity of a company and therefore reduces the value that accrues to all other stakeholders. This reduction is often referred to as dilution.

118.    Eilermann received the following phantom stock grants, approved by Arri:

| | |
|---|---|
| 2006 | ████████ |
| 2007 | ████████ |
| 2010 | ████████ |
| 2013 | ████████ |
| **Total** | ████████ |

119.    Arri received the following phantom stock grants, approved by Eilermann:

2010
2013
**Total**


120.    Schindler received the following phantom stock grants, approved by Eilermann:

2012
2013
**Total**


121.    Berger received the following phantom stock grants, approved by Eilermann:

2012
2013
**Total**


122.    Todt received the following phantom stock grants, approved by Eilermann:

2012
2013
**Total**


123.    In total, Eilermann, Arri, Schindler, Berger, and Todt were granted ▮▮▮ shares of phantom stock.

124.    Over time, the awards were amended so that by December 31, 2013, all of the phantom stock grants were synthetic equity of MS Companies, Inc., the same stock held by the ESOP.

125.    In 2011, Eilermann received a grant of ▮▮▮ SARs in MS Companies, Inc. stock, approved by Arri.

126.    In 2011, Arri received a grant of ▮▮▮ SARs in MS Companies, Inc. stock, approved by Eilermann.

127.    In total, Eilermann and Arri were granted ▮▮▮ SARs in the same stock that was held by the ESOP.

128.    By December 31, 2013, the amount of synthetic equity issued to Eilermann, Arri, Schindler, Berger, and Todt was approximately 30% of the McBride Enterprise.

### The 2013 ESOP Transaction

129.    At or around the end of 2011, Eilermann and Arri learned that they could not issue additional synthetic equity to themselves and other insiders without risking penalties and non-compliance with 26 U.S.C. § 409(p). Section 409(p) of the IRC requires that an employee stock ownership plan holding employer securities consisting of stock in an S corporation shall provide that no portion of the assets of the plan attributable to such employer securities may, during a nonallocation year, accrue for the benefit of any disqualified person. A disqualified person is someone who accrues certain thresholds of control in the employer security that the IRS deems to be abusive. IRC section 409(p) is intended to limit the establishment of ESOPs by S corporations to those that provide broad-based employee coverage and that benefit rank-and-file employees, and thus prevent the ESOPs from discriminating in favor of highly compensation employees.

130.    Consequently, Eilermann and Arri began looking for alternative structures to the McBride Enterprise that would allow them to continue awarding themselves value from the ESOP at the expense of the ESOP and its participants.

131.    Eilermann and Arri engaged Butcher Joseph, an investment bank, to assist them in their efforts.

132.    The alternative structure Eilermann and Arri then set in motion and the additional facts and actions described in this section, are what the SAC refers to as the "2013 ESOP Transaction."

133.    The 2013 ESOP Transaction was consummated through at least two legal agreements. First, a Contribution Agreement was executed by GreatBanc and Eilermann and Arri, on behalf of MS Management, on December 31, 2013, in which all of the shares of MS Companies, Inc. held by the ESOP were exchanged for the shares of a new entity, MS Capital, formed on December 31, 2013. The ESOP received no other consideration for the MS Companies, Inc. stock it exchanged.

134.    Second, GreatBanc and Eilermann and Arri, as the only Directors of MS Management, executed an Assignment and Assumption Agreement exchanging with MS Capital the MS Companies, Inc. stock held by the ESOP for MS Capital stock.

135.    As a result of the exchange, the ESOP was now the owner of 88,201 shares of MS Capital and MS Capital was now the owner of 88,201 shares of MS Companies, Inc.

136.    MS Companies, Inc. then effected a conversion from a corporation to a limited liability company and changed its name from McBride & Son Companies, Inc. to McBride & Son Companies, LLC.

137.    MS Capital's investment in the MS Companies, Inc. stock became an investment in 88,201 Class A Units of MS Companies, LLC.

138.    Eilermann and Arri were each issued ■■■■ Class B Units of MS Companies, LLC.

139.    Eilermann, Arri, Schindler, Berger, and Todt each entered into an agreement prior to the 2013 ESOP Transaction agreeing to exchange all of their awards of phantom stock and SARs in MS Companies, Inc. stock for new awards in MS Companies, LLC Class B and Class C Units. Eilermann, Arri, Schindler, Berger, and Todt received the Class B and Class C Units on January 1, 2015 as further described below. *See infra* ¶ 166. Unlike phantom stock and SARs,

which had no voting rights, Class B and Class C Units carried expansive rights to control MS Companies, LLC.

140.    The 2013 ESOP Transaction was not done for the benefit of the ESOP and its participants, but instead for the benefit of the corporate insiders such as Eilermann, Arri, Schindler, Berger and Todt.

141.    The MS Companies, Inc. stock held by the ESOP was exchanged for less than adequate consideration in the 2013 ESOP Transaction.

142.    GreatBanc, MS Management, Eilermann, and Arri knew that at the time of the exchange, MS Capital stock was worth less than MS Companies, Inc. stock because:

(a)    MS Capital stock would not directly own the McBride Enterprise but would instead only hold Class A Units of MS Companies, LLC;

(b)    Eilermann and Arri were to be the holders of Class B Units of MS Companies, LLC;

(c)    Schindler, Berger, and Todt were to be the holders of Class C Units of MS Companies, LLC;

(d)    The immediate issuing of ███ Class B Units each to Eilermann and Arri would dilute the ESOP's interest in the McBride Enterprise;

(e)    Eilermann and Arri, as the only members of the Board of Managers of MS Companies, LLC, would have discretion to issue new Class B Units and Class C Units of MS Companies, LLC;

(f)    Eilermann and Arri intended to continue to dilute the ESOP's interest in the McBride Enterprise by issuing additional Class B Units and Class C Units of MS Companies, LLC to Eilermann, Arri, Schindler, Berger, and Todt;

(g) Eilermann and Arri intended to continue to dilute the ESOP's interest in the McBride Enterprise by executing agreements to convert the previously granted phantom stock awards and SARs to Class B Units and Class C Units along with cash to satisfy federal and state income tax obligations for the benefit of Eilermann, Arri, Schindler, Berger, and Todt;

(h) Class B Unit and Class C Unit holders had superior preferential distribution rights over the Class A Units that would be held by the ESOP through MS Capital;

(i) MS Companies, LLC's operating agreement gave to Eilermann and Arri, as the only members of the Board of Managers, authority to make distributions to the holders of Class A, Class B, and Class C Units at their own discretion;

(j) Eilermann and Arri intended to make distributions to only the holders of Class B Units and Class C Units of MS Companies, LLC;

(k) The MS Companies, LLC operating agreement would give Eilermann and Arri, as holder of the Class B Units, a controlling vote in the amendment of the terms of the operating agreement;

(l) Eilermann and Arri intended that by 2018, the ESOP would own less than 40% of the McBride Enterprise; and

(m) Under the MS Companies, LLC operating agreement, the value of Class B Units and Class C units were made the equivalent to the value of a share of MS Capital.

143. There was no discussion in the Contribution Agreement about how the 2013 ESOP Transaction was in the best interest of the ESOP.

144. There was no discussion in the materials provided to GreatBanc by Butcher Joseph about how the 2013 ESOP Transaction was in the best interest of the ESOP.

145.    GreatBanc, MS Management, Eilermann, and Arri failed to protect the ESOP from the consequences of the 2013 ESOP Transaction.

146.    The opinion prepared by Stern Brothers for the 2013 ESOP Transaction failed to consider how the 2013 ESOP Transaction was in the best interests of the ESOP and its participants.

147.    The opinion prepared by Stern Brothers for the 2013 ESOP Transaction was unreliable because on December 31, 2013, the day of the exchange of the stock, Stern Brothers sent an email admitting they had not received, and therefore had not reviewed, documents that the opinion claimed to be relying on.

148.    ESOP Participants were never told by GreatBanc, MS Management, MS Capital, Eilermann, nor Arri that as a result of the 2013 ESOP Transaction they would no longer be 100% direct owners of the McBride Enterprise. In fact, communications with participants were purposely drafted to mislead participants from learning that Eilermann, Arri, Schlindler, Berger, and Todt had any direct ownership at all.

**Loss of Value from 2013 to 2017**

149.    The ESOP had a "Loss of Value from 2013 to 2017" as a deliberate consequence of the 2013 ESOP Transaction based on the facts and actions described in this section of the SAC.

150.    Any payment of excessive compensation in any form including the issuance of synthetic equity, payment of incentive pay, the award of Class B Units and Class C Units, and distributions made to Class B and Class C Unit holders lowered the ESOP's value by diminishing the value of its investment in MS Capital's holding of the Class A Units of MS Companies, LLC.

151.    As fiduciaries to the ESOP, GreatBanc, MS Capital, Eilermann, and Arri had a duty to protect the ESOP from such losses. They did not.

*Excessive Compensation*

152.    Excessive compensation was paid to Eilermann, Arri, Schindler, Berger, and Todt from at least 2013 though the effective termination of the ESOP. This included the benefit of perquisites, including but not limited to, the benefit of and/or reimbursement of excessive expenses that included repeated trips to Las Vegas.

153.    In 2013, the following compensation was paid to Eilermann, Arri, Schindler, Berger, and/or Todt:

Base Pay
Bonus
Incentive Pay
Phantom Stock/SARs
Car Expense
**Total**

154.    In 2014, the following compensation was paid to Eilermann, Arri, Schindler, Berger, and/or Todt:

Base Pay
Incentive Pay
Car Expense
**Total**

155.    In 2015, upon information and belief, at least the following compensation was paid to Eilermann, Arri, Schindler, Berger, and/or Todt:

Base Pay
Incentive Pay
Car Expense
**Total**

156.    In 2016, the following compensation was paid to Eilermann, Arri, Schindler, Berger, and/or Todt:

Base Pay
Taxable Fringe
Incentive Pay
Car Expense
**Total**



157.    In 2017, the following compensation was paid to Eilermann, Arri, Schindler,

Berger, and/or Todt:

Base Pay
Incentive Plan
Car Expense
**Total:**



*Audited Financial Statements*

158.    The following information was reported on the audited financial statements for

the McBride Enterprise:

(a)     In 2012, ▮▮▮▮▮ was reported as an expense for "ESOP and incentive plans

        expense."

(b)     In 2012, ▮▮▮▮▮ was reported as an expense for "Deferred compensation."

(c)     In 2012, ▮▮▮▮▮ was reported as a liability for "Deferred compensation."

(d)     In 2013, ▮▮▮▮▮ was reported as an expense for "ESOP and incentive plans

        expense."

(e)     In 2013, ▮▮▮▮▮ was reported as an expense for "Deferred compensation."

(f)     In 2013, ▮▮▮▮▮ was reported as a liability for "Deferred compensation."

(g)     In 2014, ▮▮▮▮▮ was reported as an expense for "ESOP and incentive plan

        expense."

(h)     In 2014, ▮▮▮▮▮ was reported as an expense for "Deferred compensation."

(i)     In 2014, ▮▮▮▮▮ was reported as a liability for "Deferred compensation."

(j)      In 2015, ███████ was reported as an expense for "ESOP and incentive plan expense."

(k)      In 2016, ███████ was reported as an expense for "ESOP and incentive plan expense."

(l)      In 2017, ███████ was reported as an expense for "ESOP and inventive plans expense."

159.     Any reported liabilities and expenses of the McBride Enterprise directly reduced the value of the ESOP because liabilities and expenses were used by Stern Brothers to calculate an opinion of the value of MS Capital stock.

*Ownership of the Class A, Class B, and Class C Units of MS Companies, LLC*

160.     Eilermann, Arri, Schindler, Berger, and Todt benefitted from the award of Class B and Class C Units of MS Companies, LLC at the direct expense of the ESOP as holder of the Class A Units through MS Capital. Eilermann and Arri possessed complete control and discretion to award Class B and Class C Units as the sole members of the "board of managers" or "managers committee" of MS Companies, LLC pursuant to the operating agreement of MS Companies, LLC.

161.     As of December 31, 2014, MS Companies, LLC had two classes of membership units outstanding. Class A Units, held by the ESOP, had voting rights and certain preferential rights to distributions based upon ESOP repurchase liabilities payable by the ESOP. Class B Units, held by Eilermann and Arri, had voting rights and certain preferential rights to distributions based upon income tax liabilities payable by the Class B Unit holders with respect to their proportionate shares of MS Companies, LLC income. Under the MS Companies, LLC operating agreement, the preferential distribution rights of Eilermann and Arri, as Class B Unit holders, were superior to the preferential distribution rights of the ESOP.

162.    At December 31, 2015, MS Companies, LLC had three classes of membership units outstanding. Class A Units, held by the ESOP, had voting rights and certain preferential rights to distributions based upon ESOP repurchase liabilities payable by the ESOP. Class B Units, held by Eilermann and Arri, had voting rights. Class C Units, held by Schindler, Berger, and Todt, did not have voting rights. Both Class B Units and Class C Units had certain preferential rights to distributions based upon income tax liabilities payable by the Class B and Class C unit holders with respect to their proportionate shares of MS Companies, LLC income. Under the MS Companies, LLC operating agreement, the preferential distribution rights of Eilermann and Arri, as Class B Unit holders, and the preferential distribution rights of Schindler, Berger, and Todt, as Class C Unit holders, were superior to the preferential distribution rights of the ESOP.

163.    At December 31, 2016, MS Companies, LLC had three classes of membership units outstanding. Class A Units, held by the ESOP, had voting rights and certain preferential rights to distributions based upon ESOP repurchase liabilities payable by the ESOP. Class B Units, held by Eilermann and Arri, that had voting rights. Class C Units, held by Schindler, Berger, and Todt, did not have voting rights. Both Class B Units and Class C Units had certain preferential rights to distributions based upon income tax liabilities payable by the Class B and Class C unit holders with respect to their proportionate shares of MS Companies, LLC income. Under the MS Companies, LLC operating agreement, the preferential distribution rights of Eilermann and Arri, as Class B Unit holders, and the preferential distribution rights of Schindler, Berger, and Todt, as Class C Unit holders, were superior to the preferential distribution rights of the ESOP.

164.    As of December 31, 2013, the ownership of the McBride Enterprise was as follows:



| | | |
|---|---|---|
| ESOP | | Class A Units |
| Eilermann | | Class B Units |
| Arri | | Class B Units |
| **Total** | | **Class A and B Units** |

165.    As of December 31, 2014, the ownership of the McBride Enterprise was as follows:



| | | |
|---|---|---|
| ESOP | | Class A Units |
| Eilermann | | Class B Units |
| Arri | | Class B Units |
| **Total** | | **Class A and B Units** |

166.    On January 1, 2015, the synthetic equity that had been reissued after the 2013 ESOP Transaction was converted into ▮ Class B Units to Eilermann, ▮ Class B Units to Arri, ▮ Class C Units to Schindler, ▮ Class C Units to Berger, and ▮ Class C Units to Todt, totaling ▮ Class B and Class C Units. ▮ phantom stock shares were converted on a one for one basis while ▮ SAR units were converted into ▮ Class B Units.

167.    During 2015, Eilermann redeemed ▮ Class B Units on September 30, 2015 resulting in additional compensation paid to him. Arri redeemed ▮ Class B Units on September 30, 2015 resulting in additional compensation paid to him.

168.    As of December 31, 2015, the ownership of the McBride Enterprise was as follows after (1) the synthetic equity that had been reissued after the 2013 ESOP Transaction was converted into Class B Units and Class C Units and (2) additional awards of Class B and Class C Units:

| | | |
|---|---|---|
| ESOP | ▮% | Class A Units |
| Eilermann | ▮% | Class B Units |
| Arri | ▮% | Class B Units |
| Schindler | ▮% | Class C Units |



| Berger | % | | Class C Units |
| Todt | % | | Class C Units |
| **Total** | | | **Class A, B, and C Units** |

169.    During 2016, Eilermann redeemed ▮ Class B Units on January 1, 2016 and ▮ Class B Units on September 30, 2016 resulting in additional compensation paid to him. Arri redeemed ▮ Class B Units on September 30, 2016 resulting in additional compensation paid to him.

170.    As of December 31, 2016, the ownership of the McBride Enterprise was as follows after additional awards of Class B and Class C Units:



| ESOP | % | | Class A Units |
| Eilermann | % | | Class B Units |
| Arri | % | | Class B Units |
| Schindler | % | | Class C Units |
| Berger | % | | Class C Units |
| Todt | % | | Class C Units |
| **Total** | | | **Class A, B, and C Units** |

171.    During 2017, Eilermann redeemed ▮ Class B Units on January 5, 2017 and ▮ Class B Units on September 25, 2017 resulting in additional compensation paid to him. Arri redeemed ▮ Class B Units on September 25, 2017 resulting in additional compensation paid to him. Berger redeemed ▮ Class C Units on June 30, 2017 resulting in additional compensation paid to him.

172.    As of November 30, 2017, the ownership of the McBride Enterprise was as follows:



| ESOP | % | | Class A Units |
| Eilermann | % | | Class B Units |
| Arri | % | | Class B Units |
| Schindler | % | | Class C Units |
| Todt | % | | Class C Units |
| **Total** | | | **Class A, B, and C Units** |

*MS Companies, LLC Distributions*

173.    Eilermann, Arri, Schindler, Berger, and Todt benefited at the expense of the ESOP by receiving distributions from MS Companies, LLC which resulted in a lower value of the Class A Units held by MS Capital for the benefit of the ESOP. Eilermann and Arri possessed complete control and discretion to initiate these distributions as the sole members of the "board of managers" or "managers committee" of MS Companies, LLC pursuant to the operating agreement of MS Companies, LLC.

174.    Distributions paid to Class B Unit holders for the year ended December 31, 2014 included $███████.

175.    Distributions paid to Class B Unit and Class C Units holders for the year ended December 31, 2015 included $███████

176.    Distributions paid to Class B Unit and Class C Unit holders for the year ended December 31, 2016 included $███████.

177.    MS Companies, LLC redeemed Class B Units from Eilermann and Arri in exchange for redemption payments totaling $███████ in 2016 and $███████ in 2015.

178.    As reported on MS Capital's audited financial statements, no distributions were paid by MS Companies, LLC to MS Capital, and thus the ESOP, as the owner of Class A Units from 2013 to 2017.

*Eilermann and Arri's Control over the Value of MS Capital Stock*

179.    The valuation report prepared by Stern Brothers as of December 31, 2015 differed from the report prepared as December 31, 2014, in that the income amount and equity amount (assets minus liabilities) of the entire McBride Enterprise were no longer considered that of MS Capital (and thus the ESOP's). Instead, MS Capital's interest in the McBride Enterprise, held through MS Capital's ownership of the Class A Units of MS Companies, LLC, was reduced by

ownership of Class B and/or Class C Units of MS Companies, LLC by Eilermann, Arri, Schindler, Berger, and Todt.

180. The December 31, 2015 valuation report by Stern Brothers attached the MS Capital Balance Sheet which reported the total equity (assets minus liabilities) in the McBride Enterprise as ███████. Of this amount, ███████ was reported as the ESOP's equity and ███████ was reported as Eilermann, Arri, Schindler, Berger, and Todt's equity.

181. The December 31, 2015 valuation report by Stern Brothers attached the MS Capital Statements of Income which reported Income from Operations (generally income minus expenses) of the McBride Enterprise as ███████ Of this amount, ███████ was attributable to (but not paid to) the ESOP and ███████ was reported as attributable to Eilermann, Arri, Schindler, Berger, and Todt.

182. The December 31, 2015 valuation report by Stern Brothers used these lower amounts attributable to the ESOP in the different valuation methodologies used to arrive at their opinion of value of the MS Capital stock.

183. The MS Companies, LLC Operating Agreement value the Class B Units and Class C Units as equivalent to the value of one share of MS Capital common stock.

184. Consequently, the value of MS Capital stock on December 31, 2015 was directly controlled by the amount of Class B Units and Class C Units awarded to Eilermann, Arri, Schindler, Berger, and Todt.

185. Eilermann and Arri, as the managers committee of MS Companies, LLC, had sole discretion to issue Class B Units and Class C Units.

186. Therefore Eilermann and Arri had discretion, authority, and control over the value of MS Capital stock as of December 31, 2015.

187.     The December 31, 2016 valuation report by Stern Brothers attached the MS Capital Balance Sheet which reported the total equity (assets minus liabilities) in the McBride Enterprise as ████████. Of this amount, ████████ was reported as the ESOP's equity and ████████ was reported as Eilermann, Arri, Schindler, Berger, and Todt's equity.

188.     The December 31, 2016 valuation report by Stern Brothers attached the MS Capital Statements of Income which reported Income from Operations (generally income minus expenses) of the McBride Enterprise as ████████ Of this amount, ████████ was attributable to (but not paid to) the ESOP and ████████ was reported as attributable to Eilermann, Arri, Schindler, Berger, and Todt.

189.     The December 31, 2016 valuation report by Stern Brothers used these lower amounts attributable to the ESOP in the different valuation methodologies used to arrive at their opinion of value of the MS Capital stock.

190.     The MS Companies, LLC Operating Agreement value the Class B Units and Class C Units was equivalent to the value of one share of MS Capital common stock.

191.     Consequently, the value of MS Capital stock on December 31, 2016 was directly controlled by the amount of Class B Units and Class C Units awarded to Eilermann, Arri, Schindler, Berger, and Todt.

192.     Eilermann and Arri, as the managers committee of MS Companies, LLC, had sole discretion to issue Class B Units and Class C Units.

193.     Therefore Eilermann and Arri has discretion, authority, and control over the value of MS Capital stock as of December 31, 2016.

*Losses to the ESOP*

194.     GreatBanc, under the MS Capital bylaws, had the authority to appoint independent members of the MS Capital Board of Directors. They failed to do so.

195.    Eilermann and Arri, as the only members of the Board of Directors of MS Capital and under the terms of the MS Capital bylaws, had the authority to recommend the termination of a Director of MS Capital.

196.    It would have been obvious to a competent and independent board of directors of MS Capital that the value of the Plan's investment in MS Capital was being depleted and stolen at the expense of the Plan's participants and beneficiaries.

197.    It would have been obvious to a prudent trustee that the value of the Plan's investment in MS Capital was being depleted and stolen at the expense of the Plan's participants and beneficiaries.

198.    It would have been obvious to prudent and non-conflicted fiduciaries that the value of the Plan's investment in MS Capital was being depleted and stolen at the expense of the Plan's participants and beneficiaries.

199.    Thus, the GreatBanc, MS Capital, Eilermann, and Arri failed to protect the Plan from the Loss of Value from 2013 to 2017.

200.    GreatBanc, MS Capital, Eilermann, and Arri failed to protect the Plan by having independent members appointed to the Board of Directors of MS Capital.

201.    GreatBanc, MS Capital, Eilermann, and Arri failed to protect the Plan by having independent officers appointed to MS Capital and others entities inside the McBride Enterprise.

202.    GreatBanc, MS Capital, Eilermann, and Arri failed to protect the Plan by having prudent and loyal fiduciaries appointed.

203.    GreatBanc, MS Capital, Eilermann, and Arri failed to file suit in their fiduciary capacity representing the Plan's shareholder rights in MS Capital and membership rights in the Class A Units of MS Companies, LLC. A prudent and loyal fiduciary to the Plan in similar

circumstances would have brought one or more derivative actions against MS Capital, Eilermann, and Arri to remedy the failures as outlined above and would not have concluded that such derivative actions were likely to harm MS Capital, the ESOP, or any other relevant entity. Such derivative actions would have been successful, as demonstrated by the allegations herein. Such derivative actions would have recovered the substantial losses to the Plans caused by the allegations described above.

204.    It was inconsistent with MS Capital, Eilermann, and Arri's fiduciary duties to not remove GreatBanc as trustee for its breaches related to the Loss of Value from 2013 to 2017.

205.    Plan participants and beneficiaries were never informed of Loss of Value from 2013 to 2017 in the form of excessive compensation paid to Eilermann, Arri, Schindler, Berger, and Todt as described in this section of the SAC.

### The 2017 ESOP Transaction

206.    After paying Eilermann, Arri, Schindler, Berger, and Todt approximately ▮ ▮ in total compensation from 2013 to 2017 and awarding them 42.7% of the McBride Enterprise, Eilermann and Arri completed their takeover of the McBride Enterprise from the ESOP when they caused MS Capital engage in the 2017 ESOP Transaction, as described in this section of the SAC, to purchase all of its outstanding shares from the ESOP for a below fair market value. As a result of the 2017 ESOP Transaction, Eilermann, Arri, Schindler, and Todt became the sole owners of the McBride Enterprise at the direct loss of the ESOP.

207.    Stern Brothers was engaged by GreatBanc to provide services related to the 2017 ESOP Transaction. Arri agreed to and accepted the engagement on behalf of MS Capital who was responsible for paying the cost for Stern Brothers.

208.     As a condition of the engagement of Stern Brothers, MS Capital was required to provide all information relating to the McBride Enterprise necessary for purposes of providing an estimate of value and in providing the estimate, Stern Brothers would rely, without independent verification on the accuracy, completeness, and fairness of all information furnished by McBride Enterprises without an independent appraisal of any assets of the McBride Enterprise.

209.     Consequently, MS Capital, Eilermann, and Arri were fiduciaries in providing information to GreatBanc and Stern Brothers to consider for the 2017 ESOP Transaction.

210.     Butcher Joseph, the investment bank, was retained to provide services related to the 2017 ESOP Transaction for the benefit of Eilermann, Arri, Schindler, and Todt and not for the benefit of the ESOP. No investment bank was hired for the benefit of the ESOP.

211.     In fact, the Second Amendment to the Trustee Engagement Agreement with GreatBanc for services related to the 2017 ESOP Transaction, executed by Arri on behalf of Capital, Inc., only contemplated the hiring of Stern Brothers and a law firm to represent GreatBanc. It failed to contemplate the hiring of any additional providers such as an investment bank on behalf of the ESOP. This was by design.

212.     Around late September 2017, Eilermann and Arri approached GreatBanc with a proposal to purchase all of the MS Capital stock held by the ESOP (hereafter "Early October Proposal").

213.     Eilermann and Arri flew to Chicago to meet with GreatBanc to discuss the Early October Proposal and made a presentation (hereafter "Early October Presentation").

214.    The Early October Proposal by Eilermann and Arri offered to buy the MS Capital stock at a 20% premium to the December 31, 2016 valuation. The December 31, 2016, valuation was $153 per share. The Early October Proposal was for $183.20 per share.

215.    The Early October Proposal and Early October Presentation by Eilermann and Arri did not include an updated valuation of MS Capital stock by an independent and qualified valuation expert.

216.    The Early October Proposal and Early October Presentation by Eilermann and Arri did not include detailed financial statements or other appropriate updated relevant information about the performance of the McBride Enterprise that an independent and qualified valuation expert would rely on.

217.    On or about October 23, 2017, De Craene, on behalf of GreatBanc, and without additional financial material from Eilermann and Arri, engaged in further negotiations with Eilermann and Arri over their proposal to purchase MS Capital stock from the Plan.

218.    No later than October 23, 2017, De Craene, Eilermann, and Arri arrived at a price of $187 per share (the "Below FMV Sale Price").

219.    A Subscription Agreement is a promise by a company to sell a given number of shares to an investor at a certain price, and an agreement by the investor to pay that price.

220.    On November 28, 2017, Eilermann entered into a subscription agreement with MS Capital for ■ shares of MS Capital common stock at a subscription price of $187 per share. Arri executed the subscription agreement on behalf of MS Capital. The subscription agreement was approved by the consent of both Eilermann and Arri as Directors of MS Capital.

221.    On November 28, 2017, Arri entered into a subscription agreement with MS Capital for ■ shares of MS Capital common stock at a subscription price of $187 per share.

Arri executed the subscription agreement on behalf of MS Capital. The subscription agreement was approved by consent of both Eilermann and Arri as Directors of MS Capital.

222.   The purpose of the subscription agreements was that upon the execution of the sale of MS Capital stock to MS Capital from the ESOP, Eilermann and Arri would immediately be sold the shares described in the subscription agreements and would thus take control of MS Capital.

223.   On November 30, 2017 through the execution of the Redemption Agreement, GreatBanc, MS Capital, Eilermann, and Arri allowed MS Capital to purchase all the shares of MS Capital stock held by the Plan, which were transferred to MS Capital at the Below FMV Sale Price of $187 for a total of consideration of $16,493,664, which consisted of 80,094.3643 shares for $14,977,646 in cash and 8,107.0476 shares for loan forgiveness on a October 31, 2017 promissory note of $1,516,018 (discussed further below).

224.   Eilermann and Arri executed the Unanimous Written Consent of the Board of Directors of MS Capital dated November 30, 2017 on behalf of MS Capital authorizing MS Capital to enter into the Redemption Agreement.

225.   Eilermann executed the Redemption Agreement dated November 30, 2017 on behalf of MS Capital authorizing the 2017 ESOP Transaction.

226.   Shortly after Eilermann and Arri were sold shares of MS Capital under the subscription agreements, Eilermann and Arri sold MS Capital stock to Schindler and Todt.

227.   Eilermann, Arri, Schnindler, and Todt thus had 100% ownership and control of the McBride Enterprise through their ownership of MS Capital, which still owned the Class A Units of MS Companies, LLC, and through their direct ownership of Class B Units and Class C Units of MS Companies, LLC.

228.    Prior to the 2017 ESOP Transaction, ESOP participants were not informed that the ESOP only owned 57.3% of the McBride Enteprise and that Eilermann, Arri, Schindler, and Todt controlled and owned 42.7%.

229.    GreatBanc, MS Capital, Eilermann, and Arri were aware, prior to entering into the 2017 ESOP Transaction, that the goal of the 2017 ESOP Transaction was for Eilermann to control ███ of the McBride Enterprise and Arri ███.

230.    The MS Capital Balance Sheet used as part of the 2017 ESOP Transaction reported, as of October 31, 2017, the total equity (assets minus liabilities) in the McBride Enterprise as ███████. Of this amount, ███████ was reported as the ESOP's equity and ███████ was reported as Eilermann, Arri, Schindler, and Todt's equity. By this time, Berger was no longer employed at the McBride Enterprise.

231.    The MS Capital Statements of Income used as part of the 2017 ESOP Transaction reported Income, from January 1, 2017 to October 31, 2017, from Operations (generally income minus expenses) of the McBride Enterprise as ███████. Of this amount, ███████ was attributable to (but not paid to) the ESOP and ███████ was reported as attributable to Eilermann, Arri, Schindler, Berger, and Todt.

232.    An opinion of value prepared by Stern Brothers as part of the 2017 ESOP Transaction used these lower amounts attributable to the ESOP in the different valuation methodologies used to arrive at their opinion of value of the MS Capital stock.

233.    The MS Companies, LLC Operating Agreement valued the Class B Units and Class C Units as equivalent to the value of one share of MS Capital common stock. Consequently, the value of MS Capital stock on November 30, 2017 was directly controlled by

the amount of Class B Units and Class C Units awarded to Eilermann, Arri, Schindler, Berger, and Todt.

234.    Eilermann and Arri, as the managers committee of MS Companies, LLC, had sole discretion to issue Class B Units and Class C Units.

235.    Therefore Eilermann and Arri had discretion, authority, and control over the value of MS Capital stock as of November 30, 2017 as used by GreatBanc, MS Capital, Eilermann, and Arri to carry out the 2017 ESOP Transaction.

236.    The 2017 ESOP Transaction was on less favorable terms to the ESOP participants than a transaction in 2015 that resulted in the sale of a division of the McBride Enterprise.

237.    Stern Brothers, as part of the services they provided for the 2017 ESOP Transaction, was not authorized to solicit, and did not solicit, interest from any third party with respect a merger with or other business combination transaction involving the McBride Enterprise or any of its assets.

238.    In fact, no one, including GreatBanc, MS Capital, Eilermann, and Arri, solicited interest from any third party with respect to a merger with or other business combination transaction involving the McBride Enterprise or any of its assets. This was by design.

239.    Stern Brothers, as part of the services they provided for the 2017 ESOP Transaction, was not authorized to have discussions or negotiations with any third parties other than MS Capital in connection with the sale of MS Capital stock from the ESOP.

240.    In fact, no one, including GreatBanc, MS Capital, Eilermann, and Arri, had discussions or negotiations with any third parties other than MS Capital in connection with the sale of MS Capital stock from the ESOP. This was by design.

241.     GreatBanc, MS Capital, Eilermann, and Arri were aware that Eilermann and Arri were, for their own purposes, estimating annual income to the McBride Enterprise after the 2017 ESOP Transaction of ██████████ and an annual increase in fair market value of ██████████ per year through 2019. GreatBanc, MS Capital, Eilermann, and Arri allowed the 2017 ESOP Transaction to be based on less favorable assumptions which had the consequence of a drastically lower opinion of the fair market value of MS Capital stock by Stern Brothers.

242.     The opinion on the value of MS Capital stock prepared by Stern Brothers for purposes of the 2017 ESOP Transaction failed to consider material information about the value of the McBride Enterprise. For example, on March 23, 2018, an article in the St. Louis Business Journal announced that the McBride Enterprise had entered into a joint venture with J.H. Berra Construction Co. to create a new land development company, called Elite Development Services, LLC. The report, citing Eilermann, said that the joint venture was expected to hit $40 or $50 million in revenue in its first year of business. There is no mention of Elite Development Services in any materials prepared by MS Capital, GreatBanc, Eilermann, Arri, or Stern Brothers related to the 2017 ESOP Transaction. Upon information and belief, the future revenue generated by Elite Development Services was not considered in arriving at the sale price of $187 for the 2017 ESOP Transaction.

243.     The opinion on the value of MS Capital stock prepared by Stern Brothers for purposes of the 2017 ESOP Transaction was also not independent. For example, Stern Brothers and Arri conspired to establish the Below FMV Sale Price when Stern Brothers sent an email to Arri prior to the 2017 ESOP Transaction was completed stating that their calculations were resulting in a high estimate of fair market value and requesting additional information so they could change their methodology so it would result in a lower estimate of fair market value. An

independent valuation expert would not have conspired with a conflicted plan fiduciary that was seeking to buy the stock from the ESOP and would not have adjusted their methodology to arrive at a lower estimate.

244. GreatBanc, under the MS Capital bylaws, had the authority to appoint independent members of the MS Capital Board of Directors. They failed to do so.

245. Eilermann and Arri, as the only members of the Board of Directors of MS Capital and under the terms of the MS Capital bylaws, had the authority to recommend the termination of a Directors of MS Capital.

246. As the trustee for and fiduciary to the Plan, it was GreatBanc's duty to ensure that any transactions between the Plan and MS Capital were fair and reasonable, for the exclusive benefit of the Plan's participants and beneficiaries, consistent with ERISA's fiduciary duties, that the Plan would receive no less than fair market value for the stock, and that no prohibited transaction would occur involving Plan assets.

247. As fiduciaries to the Plan, it was MS Capital, Eilermann, and Arri's duty to ensure that any transactions between the Plan and MS Capital were fair and reasonable, for the exclusive benefit of the Plan's participants and beneficiaries, consistent with ERISA's fiduciary duties, that the Plan would receive no less than fair market value for the stock, and that no prohibited transaction would occur involving Plan assets.

248. Approving the Below FMV Sale Price was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties. The Below FMV Sale Price for MS Capital stock was below fair market value based upon what an unrelated party would pay in an arm's length negotiated transaction as measured by comparison to sales and valuation data on other similarly situated companies in the same industry.

249.    Article 2.26 of the 2017 Plan Document defined Fair Market Value as the dollar amount determined by an independent appraiser to be the value of Company Stock in accordance with and subject to Code Section 401(a)(28)(C).

250.    It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to rely on the December 31, 2016, valuation report which was not prepared for purposes of a sale of MS Capital stock from the ESOP. As an example, the December 31, 2016, valuation report included a 15% discount for lack of marketability, which is inapplicable to a situation where a proposal has been made to buy all the outstanding shares of MS Capital stock.

251.    The December 31, 2016, valuation report stated "[t]he conclusion of value arrived at herein is valid only for the stated purpose as of the date of the valuation."

252.    The December 31, 2016, valuation report also stated "[t]his report and the conclusion of value arrived at herein are for the exclusive use of our client for the sole and specific purpose as noted herein. They may not be used for any other purpose or by any other party for any purpose."

253.    The stated purpose of the December 31, 2016, valuation was not to value the MS Capital stock held in the Plan for sale.

254.    It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to rely on the Early October Proposal and Early October Presentation.

255.    It was inconsistent with GreatBanc's duties to not independently investigate the information provided by Eilermann and Arri in the Early October Proposal and Early October Presentation before arriving at the Below FMV Sale Price.

256.    It was inconsistent with GreatBanc's duties to agree on a sale price with Eilermann and Arri in mere weeks, demonstrating a severe lack of due diligence.

257.     It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to allow Eilermann and Arri to push a timetable for purchase that did not allow proper due diligence to occur for the benefit of the Plan's participants and beneficiaries.

258.     It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to not engage in a thorough level of due diligence prior to arriving at a sale price.

259.     De Craene of GreatBanc in a published article wrote "[a] thorough due diligence review includes a review and discussion of the year-end financial statements, the projected financial statements, the overall industry, the competitors, the suppliers, the customers, key personnel changes, management succession, new product or service offerings, the backlog, the pipeline, litigation, and any other relevant items."

260.     It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to agree on a sale price without first obtaining an updated valuation report from an independent and qualified valuation expert.

261.     It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to fail to consider alternative purchasers of MS Capital stock including, but not limited to, publicly traded competitors, privately held competitors, or other potential buyers such as private equity firms.

262.     It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to not hire an independent investment banker that would act on behalf of the Plan to explore alternative purchasers.

263.     It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to not have independent members of the Board of Directors of MS Capital appointed to operate in the best interest of the Plan's participants and beneficiaries.

264. De Craene in a published article wrote: "A board of directors consisting solely of insiders is also an area of concern for a trustee. Best practices dictate that an ESOP company has at least one or two outside, independent board members. The implementation of outside board members removes conflicts of interest that may otherwise exist. This adds a level of protection to the decisions made by the board and protects the trustee in monitoring the board. In addition, outside board members add a different perspective and bring different experiences to bear that are often helpful in the boardroom."

265. It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to approve a Below FMV Sale Price of $187 when projections called for increased revenues in 2017 and beyond.

266. It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to approve a Below FMV Sale Price of $187 when the liquidation value of the ESOP's equity in MS Capital had a higher value than what they received.

267. It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to approve a Below FMV Sale Price of $187 when Eilermann stated publicly in June 2017 that "[w]e currently have 4,000 homesites under development in St. Louis and that's the most we've ever had at one time. The 2017–2018 outlook is positive which means the St. Louis region will increasingly thrive while we continue to deliver homes in all price points."

268. It was inconsistent with MS Capital, Eilermann, and Arri's duties to not remove GreatBanc as trustee for its breaches of duty between the Early October Proposal and the sale of MS Capital stock as the Below FMV Sale Price.

269. It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to not remove Eilermann and Arri as members of the Board of Directors of MS Capital.

270.     It was inconsistent with GreatBanc, MS Capital, Eilermann, and Arri's fiduciary duties to not remove those fiduciaries acting against the best interests of the Plan as described herein.

271.     GreatBanc, MS Capital, Eilermann, and Arri had a dual obligation to first properly determine whether a sale of the MS Capital stock from the Plan was in the best interests of the Plan's participants and beneficiaries and second, assuming such a determination could be made, to ensure that the Plan received fair market value for the MS Capital stock to protect the interests of the Plan's participants and beneficiaries. They failed in both respects.

### Account Balances of Inactive Participants

272.     On October 31, 2017, Amendment Number One to the 2017 Plan Document was executed by Arri. Amendment Number One purports to provide that a former participant's "ESOP Account" and "Matching Contribution Account" (as defined in the 2017 Plan document) may be converted into cash after the former participant terminated employment with MS Capital.

273.     On October 31, 2017, a promissory note was executed between the Plan and MS Capital for $1,516,017.90 and this amount was later deposited into the Plan.

274.     Arri has filed a declaration under penalty of perjury alleging that this loan was for the purpose of converting the shares to cash held in the Plan accounts of inactive participants, including Godfrey and Sheldon.

275.     An Account Statement for the Plan shows that the loan proceeds were received on November 1, 2017. An Account Statement for the Plan shows that the liability for the loan note was entered as of November 1, 2017.

276.     An Account Statement for the Plan shows that GreatBanc purchased $1,516,017.90 in a Goldman Sachs money market fund on November 1, 2017.

277. The same Account Statement does not show the MS Capital shares held by inactive participants being liquidated for cash on November 1, 2017, nor any other day thereafter.

278. The same Account Statement instead shows that on November 30, 2017, 8,107.0476 shares of MS Capital were transferred to MS Capital in satisfaction of the $1,516,017.90 loan at a share price of $187.

279. The same Account Statement also shows that on November 30, 2017, the trust recognized the difference between the loan payment price of $1,516,017.90 and, upon information and belief, the book value of the 8,107.0476 shares at $987,438.40, demonstrating the shares remained in the accounts of the inactive ESOP participants, including Godfrey and Sheldon, until November 30, 2017, the same day the shares were sold to MS Capital for active participants.

280. Arri declared under penalty of perjury on February 5, 2019 that "[b]ased upon my review of relevant ESOP records and conversations with GreatBanc, neither Mr. Godfrey nor Mr. Sheldon held any shares of [MS Capital Stock] in their respective ESOP accounts after [November 1, 2017]." Arri produced no records demonstrating this statement to be true, either voluntarily as part of the limited discovery allowed by the Court nor under Court order as a result of Godfrey and Sheldon's Motion to Compel. In fact, during his deposition, Arri admitted Participant Valuation Summaries dated December 11, 2017, regarding Godfrey's and Sheldon's Plan accounts did not show any investment other than an investment in MS Capital stock and that the statements also did not show the date upon which their MS Capital stock was sold. Upon information and belief, Participant Valuation Summaries dated December 11, 2017 for all other active and inactive participants will show the same as Godfrey's and Sheldon's.

281. De Craene declared under penalty of perjury on February 5, 2019, that "GreatBanc records indicate that neither Mr. Godfrey nor Mr. Sheldon held any shares of [MS Capital stock] in their ESOP accounts after November 1, 2017." GreatBanc produced no records demonstrating this statement to be true, either voluntarily as part of the limited discovery allowed by the Court nor under Court order as a result of Godfrey and Sheldon's Motion to Compel.

282. Inconsistent with Amendment Number One to the 2017 Plan Document, no documents were produced to Godfrey and Sheldon demonstrating that the Administrator for the Plan determined the total amount of cash and liquid assets held within the Plan that should be retained for the purposes of funding current and future benefit distributions, implementing Participants' current and future diversification elections, paying legitimate expenses of Plan administration, and satisfying any other reasonable and proper obligations of the Plan.

283. Inconsistent with Amendment Number One to the 2017 Plan Document, no documents were produced to Godfrey and Sheldon demonstrating that the Administrator determined that in 2017 the amount of cash and liquid assets held within the Plan exceeds the amount reasonably necessary to satisfy the obligations described in paragraph 282 of this First Amended Complaint.

284. Inconsistent with Amendment Number One to the 2017 Plan Document, no documents were produced to Godfrey and Sheldon demonstrating that if a conversion had been successfully done, then the cash transferred to the inactive participants was allocated to Company Stock Proceeds Accounts established on their behalf.

285. The decision to convert at $187 was done after the Below FMV Sale Price was agreed to on October 23, 2017.

286.     Arri testified under oath that Amendment Number One to the 2017 Plan Document was not conceived until after the Early October Proposal.

287.     Arri testified under oath that he was acting on behalf of MS Capital, the plan administrator, in administering the Plan. Thus, Arri was acting as a fiduciary to the Plan under ERISA.

288.     ERISA, the 2017 Plan Document, and the 2013 ESOP Trust Agreement required documentation of any conversion that could have been performed under Amendment Number One to the 2017 Plan Document.

289.     Upon information and belief, the Summary of Material Modifications describing Amendment Number One to the 2017 Plan Document was never sent to Plan participants.

290.     The Plan's 2017 Form 5500 makes no mention of inactive Plan participants having their shares allegedly converted on November 1, 2017.

291.     Godfrey and Sheldon received a letter signed by Eilermann and dated December 18, 2017, stating:

> As a former participant who still has an account under the McBride & Son Employee Stock Ownership ("ESOP"), you are being notified of some recent changes to the ESOP. McBride & Son Capital, Inc. ("Company"), which sponsors the ESOP, has recapitalized its corporate structure. As part of this recapitalization process, the Company, with the prior approval of the ESOP trustee, GreatBanc Trust Company, purchased all of the Company stock held in your Company stock account and any Company stock held in your matching contribution account.

292.     Amendment Number One to the 2017 Plan Document required that that any cash used to convert the MS Capital stock of inactive participants must come from the excess cash or other liquid assets already credited to and held in the ESOP Cash Accounts of Participants who are actively employed by MS Capital.

293.    The 2017 Plan Document in Article 2.19 defines the Employer Contribution Account to include ESOP Cash Accounts.

294.    The Plan's 2017 Form 5500 only shows $117,432 in employer contributions.

295.    Amendment Number One to the 2017 Plan Document does not provide authority to borrow cash to convert the MS Capital stock of inactive participants.

**Failure to Remove GreatBanc as Trustee**

296.    GreatBanc has been sued numerous times in federal court by plan participants and the DOL over its failures as an ESOP trustee.

297.    The DOL has instituted a number of lawsuits against GreatBanc, at least as far back as 2006 in *Chao v. Hagemeyer North America, Inc.*, No. 06-cv-01173 (D.S.C.), alleging that GreatBanc breached its fiduciary duties or otherwise violated ERISA in connection with transactions involving employee stock ownership plans owning privately held or closely held employer stock.

298.    In 2012, the DOL filed litigation against GreatBanc concerning its role in the purchase of Sierra Aluminum Company stock by the Sierra Aluminum Company Employee Stock Ownership Plan, entitled *Perez v. GreatBanc Trust Company*, No. 5:12-cv-01648-R-DTB (C.D. Cal.). In the lawsuit, the DOL alleged that GreatBanc (a) failed to adequately inquire into an appraisal that presented unrealistic and aggressively optimistic projections of Sierra Aluminum's future earnings and profitability; (b) failed to investigate the credibility of the assumptions, factual bases and adjustments to financial statements that went into the appraisal; and (c) asked for a revised valuation opinion in order to reconcile the ESOP's higher purchase price with the lower fair market value of the company stock.

299.    In a settlement agreement filed June 6, 2014 in *Perez v. GreatBanc Trust Company*, No. 5:12-cv-01648-R-DTB (C.D. Cal.) (Dkt No. 166-1), GreatBanc agreed to pay over $4.7 million to the Sierra ESOP plus $477,273 in fines to the DOL. Most significantly, and as many in the ESOP "industry" have noted, as part of the settlement agreement, GreatBanc was required to implement very specific policies and procedures whenever it serves as a trustee or other fiduciary of an ESOP in connection with transactions in which the ESOP is purchasing or selling, is contemplating purchasing or selling, or receives an offer to purchase or sell employer securities that are not publicly traded.

300.    As then U.S. Secretary of Labor Thomas E. Perez observed in the DOL press release announcing the settlement, the "more important[]" part of the settlement was to ensure "safeguards will be put in place to protect ESOPs involved in any future GreatBanc transactions."

301.    Attachment A to the Settlement in *Perez v. GreatBanc Trust Co.*, entitled "AGREEMENT CONCERNING FIDUCIARY ENGAGEMENTS AND PROCESS REQUIREMENTS FOR EMPLOYER STOCK TRANSACTIONS" consists of a 10-page set of very detailed and highly proscriptive policies that GreatBanc is required to implement whenever it serves as a trustee of an ESOP and is considering the purchase or sale of employer securities that are not publicly traded. These policies and procedures are summarized as follows:

**a. Selection and Use of Valuation Advisor.**

> i. GreatBanc is required to hire a qualified valuation advisor, investigate the advisor's qualifications, and prudently determine that it can rely on the advisor *before* entering into the transaction.

ii. GreatBanc cannot use an advisor for a transaction which has previously performed work for the ESOP sponsor (distinguished from the ESOP), any counterparty to the ESOP involved in the transaction, or any other entity that is structuring the transaction (such as an investment bank).

iii. GreatBanc is prohibited from using an advisor that has a familial or corporate relationship to itself and other transaction parties.

iv. In selecting an advisor for a transaction involving the purchase or sale of employer securities, GreatBanc has to prepare a *written* analysis addressing specified topics such as the reason for selecting the particular advisor.

v. GreatBanc has to oversee the valuation process and make sure the advisor documents certain required items; if the advisor does not do so, GreatBanc then has to prepare supplemental documentation addressing a number of matters relating to the analysis.

**b. Financial Statements.**

i. GreatBanc must request that the company provide GreatBanc and its valuation advisor with audited unqualified financial statements prepared by a CPA for the preceding five fiscal years, unless financial statements extending back five years are unavailable.

ii. In the absence of such audited financial statements, GreatBanc is required to take certain steps before proceeding with the transaction, including additional documentation of why it has chosen to proceed.

**c. Fiduciary Review Process.**

i. GreatBanc must follow a specified process and document the valuation analysis that includes (a) determine the prudence of relying on the financial statements, (b) critically assess the reasonableness of any projections, and (c) document the basis for its conclusion that the information provided was current, complete and accurate.

ii. GreatBanc must document its analysis of the valuation report in writing by assessing 16 specific items.

iii. GreatBanc must document that its personnel have (a) read and understand the report, (b) identify and question the reports assumptions, (c) make reasonable inquiry about whether the information is consistent with information in the GreatBanc's possession, (d) analyze whether the report's conclusions are consistent with the data and analysis, and (e) analyze whether the report is internally consistent.

iv. If the valuation report does not meet these criteria, then GreatBanc must not proceed with the transaction.

**d. Fair Market Value.**

GreatBanc specifically agreed that it would not cause an ESOP to purchase employer securities for more than their fair market value or sell employer securities for less than their fair market value.

302.    Given the publicity of the GreatBanc-DOL Settlement Agreement within the ESOP community, MS Capital, Eilermann, and Arri should have known about this Settlement. In

addition, GreatBanc would have had a fiduciary duty as the trustee to provide this information, if not the settlement agreement itself, to MS Capital, Eilermann, and Arri.

303.    GreatBanc failed to follow the GreatBanc-DOL Settlement Agreement with regard to their conduct in the Loss of Value from 20013 to 2017 and the 2017 ESOP Transaction.

## ERISA'S FIDUCIARY STANDARDS AND PROHIBITED TRANSACTIONS

### Fiduciary Status under ERISA

304.    Congress enacted ERISA to establish "minimum standards ... assuring the equitable character of [benefit] plans and their financial soundness." 29 U.S.C. § 1001(a). ERISA requires that "authority to control and manage the operation and administration of the plan" be vested in one or more named fiduciaries, and that these fiduciaries abide by "standards of conduct, responsibility, and obligation" to protect the plan's participants and beneficiaries. *Id*. §§ 1001(b), 1102(a).

305.    ERISA defines fiduciary status as not only the persons named as fiduciaries by a benefit plan, but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets. *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Pursuant to ERISA 29 U.S.C. § 1002(21)(A) a person is a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation ..., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA thus "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, *see id.,* thus expanding the

universe of persons subject to fiduciary duties," *Mertens,* 508 U.S. at 262, 113 S.Ct. 2063; *see also, Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1087 (N.D. Ill. 2004).

306.    A person, thus, assumes fiduciary status in three ways under ERISA: first, as a named fiduciary in the instrument establishing the employee benefit plan, ERISA §§ 402(a)(1)–(2), 29 U.S.C. §§ 1102(a)(1)–(2); second, by becoming a named fiduciary pursuant to a procedure specified in the plan instrument, ERISA § 402(a)(2), 29 U.S.C. § 1102(a)(2); third, as a "functional fiduciary" under the broad authority, control, or advice provisions of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). *Perez v. Bruister*, 823 F.3d 250, 259 (5th Cir. 2016) *citing Jordan v. Fed. Express* Corp., 116 F.3d 1005, 1014 n. 16 (3rd Cir.1997). As such, an individual may be a fiduciary as to plan functions for which the plan affords him no discretionary authority if he nonetheless exercises discretion over plan assets and specifically is the "final decision-making authority regarding the Plan." *In re Polaroid ERISA Litig*., 362 F. Supp. 2d 461, 473 (S.D.N.Y.2005).

307.    Employers assume fiduciary status only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA. *Amato v. Western Union Int'l, Inc*., 773 F.2d 1402, 1416–17 (2d Cir.1985). Employers who also function as plan administrators and therefore manage, administer, and dispose of ERISA plan assets must separate their ERISA fiduciary "hat" where they act with the discretion recognized in ERISA 29 U.S.C. § 1002(21)(A) from their employer "hat" which encompasses traditional corporate business decisions. *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000) ("ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions.")(citations omitted).

308.     Fiduciary acts, for example, include the management and administration of the plan, the management and disposition of plan assets, the dispensation of investment advice, and making benefits determinations, but do not encompass actions that involve the termination of an employer-employee relationship. *Varity Corp. v. Howe*, 516 U.S. 489, 505, 116 S. Ct. 1065, 1074, 134 L. Ed. 2d 130 (1996)(making intentional representations about the future of plan benefits in that context is an act of plan administration that is subject to ERISA fiduciary duties*; see Brooks v. Pactiv Corp*., 729 F.3d 758, 766 (7th Cir. 2013)(emphasizing fiduciary status does not extend to decisions to terminate employees because the decision does not involve the disposition of plan assets and/or management and administration of the plan).

## ESOP Fiduciaries

309.     In the context of ESOP transactions, members of an employer's board of directors are subject to ERISA fiduciary duties to the extent they have responsibility over the ESOP and over the management or disposition of its assets. *See Acosta v. Saakvitne*, 355 F. Supp. 3d 908, 920–21 (D. Haw. 2019). This has specifically been the DOL's position with respect to directors and controlling shareholders who sit on the board or effectively control the company's ESOP that is the subject of an ESOP transaction breach of fiduciary duty claim. *See Id; see also, Acosta v. Reliance Tr. Co.,* No. 17-CV-4540 (SRN/ECW), 2019 WL 3766379, at *9 (D. Minn. Aug. 9, 2019).* ("DOL alleges that, because the Directors 'orchestrated' the final ESOP transaction prior to their appointment of Reliance, and because the Directors knew the ESOP was paying Kuban 'vastly more than fair market value' as part of that transaction, the Directors 'effectively controlled' the ESOP's purchase of Kuban's stock, and thus breached the duties of prudence and loyalty they owed the ESOP as fiduciaries'"); *see also* 29 C.F.R. § 2509.75-8(D-4) ("Members of the board of directors of an employer which maintains an employee benefit plan will be

fiduciaries only to the extent that they have responsibility for the functions described in [29 U.S.C. § 1002(21)(A) ].").

310.    Where board members exercise de facto control over the plan assets, because they are board of directors of the committee and dictate on what terms the ESOP transaction would proceed they are fiduciaries with respect to that transaction under the meaning of 29 U.S.C. § 1002(21)(A). *Keach v. U.S. Tr. Co*., 234 F. Supp. 2d 872, 883 (C.D. Ill. 2002) (the test of functional fiduciary status is not simplistic or rooted in formal authority with respect to company board members and must be "flexible enough to take cognizance of the different dynamics in which these transactions can occur"). *See also, Rankin v. Rots,* 278 F. Supp. 2d 853, 872 (E.D. Mich. 2003)("Because of Conaway's and the Board of Directors broad authority in regards to the Plan, they simply cannot be dismissed at this time. Rankin has sufficiently alleged Conaway and the Outside Director's fiduciary status").

311.    While the corporate acts of corporate management are not subject to ERISA's fiduciary standards under the "two hat" doctrine, if the alleged misconduct centers on the failure of fiduciaries to take action to protect Plan assets by responding to managerial malfeasance that depleted an ESOP of its value, the misconduct is subject to ERISA's statutory scheme. *Spires v. Sch*., 271 F. Supp. 3d 795, 802–03 (D.S.C. 2017)("Mismanagement or malfeasance by the executives of an operating company is not in itself a breach of fiduciary duty under ERISA. But in this case, the alleged managerial malfeasance is not the alleged breach of fiduciary duty. The alleged breach of fiduciary duty is the failure of the Plan fiduciaries to take action to protect Plan assets by responding to managerial malfeasance that depleted the Plan assets of most of their value").

**ERISA Fiduciary Duties**

312.    ERISA imposes strict fiduciary duties upon the Defendants as fiduciaries of the

Plan. 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> (A) for the exclusive purpose of
>
> > (i) providing benefits to participants and their beneficiaries; and
> >
> > (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;
>
> …
>
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

313.    The fiduciary duties under 29 U.S.C. § 1104(a)(1)(A), (B), and (D) are referred to

as the duty of loyalty, the duty of prudence, and the duty to follow the plan document and they

are the "highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

**Duty of Loyalty**

314.    Under 29 U.S.C. § 1103(c)(1), with certain exceptions not relevant here, the

assets of a plan shall never inure to the benefit of any employer and shall be held for the

exclusive purposes of providing benefits to participants in the plan and their beneficiaries and

defraying reasonable expenses of administering the plan. This is known as the exclusive purpose

rule.

315.    According to the DOL, the "primary responsibility of fiduciaries is to run the plan

solely in the interest of participants and beneficiaries and for the exclusive purpose of providing

benefits and paying plan expenses" (emphasis added). In addition, ERISA fiduciaries "must avoid conflicts of interest" and "may not engage in transactions on behalf of the plan that benefit parties related to the plan, such as other fiduciaries, services providers or the plan sponsor." Thus, the duty of loyalty prohibits fiduciaries from acting in service of their own interests or those of a third party to the detriment of plan participants. Where fiduciaries have conflicting interests that raise questions regarding their loyalty, the fiduciaries "are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries." *Kanawi v. Bechtel*, No. 09-16253 (9th Cir. 2009) (DOL Amicus Brief).

316. To satisfy 29 U.S.C. § 1104 "when facilitating a transaction involving the sale of plan assets, the fiduciary must conduct an 'adequate inquiry into the proper valuation of shares.'" *Hurtado v. Rainbow Disposal Co.*, 2018 WL 3372752, at *6 (C.D. Cal. July 9, 2018) (in which similar claims have been made against GreatBanc as trustee as in this First Amended Complaint) (*citing Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678–79 (7th Cir. 2016)).

317. Also, in the context of an ESOP transaction, the duty of loyalty "requires that fiduciaries keep the interests of beneficiaries foremost in their minds, taking all steps necessary to prevent conflicting interests from entering into the decision-making process." *Bruister*, 823 F.3d at 261 (5th Cir. 2016) *citing Bussian v. RJR Nabisco, Inc.,* 223 F.3d 286, 298 (5th Cir.2000).

**Duty of Prudence**

318. ERISA "'imposes a "prudent person" standard by which to measure fiduciaries' investment decisions and disposition of assets.'" *Fifth Third Bancorp v. Dudenhoeffer*, __ U.S. __, 134 S. Ct. 2459, 2467 (2014) (citation omitted). This means that ERISA fiduciaries

must discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B).

319.    The duty of an ERISA trustee to behave prudently in managing the trust's assets, which in this case consisted of the assets of the ESOP, is fundamental. *Armstrong v. LaSalle Bank Nat. Ass'n*, 446 F.3d 728, 732 (7th Cir. 2006).

320.    Courts in the Seventh Circuit recognize that case law imposes on an ESOP fiduciary a still more demanding duty of prudence than a typical ERISA fiduciary because an ESOP holds employer stock only, making diversification impossible. *Neil v. Zell*, 677 F. Supp. 2d 1010, 1019 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010) *citing Armstrong v. LaSalle Bank Nat'l Ass'n,* 446 F.3d 728, 732 (7th Cir. 2006).

### Duty to Monitor

321.    Under ERISA § 404(a), an individual with discretion to appoint an ERISA fiduciary has a fiduciary duty to select, retain and monitor those whom they appoint as would a reasonably prudent businessperson. *Chesemore v. All. Holdings, Inc*., 886 F. Supp. 2d 1007, 1049 (W.D. Wis. 2012), aff'd sub nom. *Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) *citing Leigh,* 727 F.2d at 135; *Howell,* 337 F.Supp.2d at 1097–99. In *Leigh,* the Seventh Circuit held that a fiduciary who was "responsible for selecting and retaining their close business associates as plan administrators ... had a duty to monitor appropriately the administrators' actions." 727 F.2d at 135 (citations omitted). In *Ed Miniat, Inc. v. Globe Life Ins. Grp., Inc.,* 805 F.2d 732 (7th Cir.1986), the Seventh Circuit explained that corporate entities "may well have some duty to monitor" appointed plan administrators, even when the administrators are not close business associates.

322.    The Department of Labor has stated that [a]t reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan. *Chesemore,* 886 F. Supp. 2d at 1049 citing ERISA Interpretive Bulletin 75–8, 29 C.F.R. § 2509.75–8 at FR–17.

### Application of ERISA's Fiduciary Duties

323.    Application of the duty of loyalty, duty of prudence, duty to follow the plan documents, the duty to monitor, and the exclusive purpose rule generally require a fiduciary to:

(a)    Act for the exclusive benefit of plan participants and beneficiaries;

(b)    Administer and manage a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor;

(c)    Ensure that plan assets are not transferred to the fiduciaries of a plan for their personal enrichment;

(d)    Ensure all fiduciary decisions they make are prudent;

(e)    Ensure that they follow the terms of all governing plan documents including the plan document and the trust agreement;

(f)    Conduct independent, intensive and thorough investigations into, and continually monitor, matters as to which the fiduciaries have decision-making authority;

(g)    Establish a prudent process by which a fiduciary and his or her co-fiduciaries are able to make objectively reasonable analyses and decisions concerning matters as to which the fiduciaries have decision-making authority;

(h)    Make good faith and objectively reasonable analyses and decisions concerning matters as to which the fiduciaries have decision-making authority;

(i)    Be an expert in all matters regarding their responsibilities with a plan, and if not, to hire others who are experts;

(j)    Appoint only prudent service providers after engaging in a prudent and thorough process in hiring them that includes consideration of the following:

- Information about the firm itself: financial condition and experience with retirement plans of similar size and complexity;
- Information about the quality of the firm's services: the identity, experience, and qualifications of professionals who will be handling the plan's account; any recent litigation or enforcement action that has been taken against the firm; and the firm's experience or performance record; and
- A description of business practices: how plan assets will be invested if the firm will manage plan investments or how participant investment directions will be handled; and whether the firm has fiduciary liability insurance;

(k)    Prudently monitor an appointed service provider, and remove them if in the best interests of a plan, which should include a process to:

- Establish and follow a formal review process at reasonable intervals to decide to continue using the current service providers or look for replacements;
- Ensure the service provider is performing the agreed-upon services;
- Evaluate any notices received from the service provider about possible changes to their compensation and the other information they provided when hired (or when the contract or arrangement was renewed);
- Review the service providers' performance;
- Read any reports provided by the service provider;
- Ask about policies and practices (such as trading, investment turnover, and proxy voting); and
- Follow up on participant complaints associated with the service provider;

(l)    Delegate fiduciary responsibility over a plan only to appropriate parties after engaging in a prudent and thorough process of examining their qualifications to hold such a position of trust;

(m)     Prudently monitor an appointed fiduciary and remove them if in the best interests of a plan;

(n)     Prudently exercise stock voting rights which includes, but is not limited to:

    o   Appointment of independent members of the board of directors to protect a plans participants; and
    o   Remove of members of the board of directors for misconduct and injuries to a plan;

(o)     Bring derivative actions to protect a plan and its participants from breaches of fiduciary duty;

(p)     Bring derivative actions to remedy corporate action or inaction giving rise to a derivative claim when a plan's assets include employer stock;

(q)     Truthfully disclose and inform plan participants which encompasses: (1) duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries;

(r)     Ensure only accurate information is used to calculate the value of stock held by a plan; and

(s)     Document the processes used to carry out their fiduciary responsibilities.

324.    When the assets of a plan are sold or exchanged, including company stock held by a plan, application of the duty of loyalty, duty of prudence, duty to follow the plan documents, the duty to monitor, and the exclusive purpose rule require a fiduciary to:

(a)     Ensure that a plan receives no less adequate consideration for any assets sold or exchanged;

(b)     Secure an independent and thorough assessment of the valuation of employer stock through a financial advisor or legal counsel;

(c)     Undertake an appropriate investigation to determination that a plan and its participants receive no less than adequate consideration for the assets of a plan;

(d)     Pursuant to 29 U.S.C. § 1002(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or the named fiduciary pursuant to the terms of the plan and in accordance with DOL regulations;

(e)     Fair market value means the price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well informed about the asset and the market for such asset;

(f)      Make a good faith determination of fair market value relying on an independent appraiser consistent with its duties under 29 U.S.C. §§ 1104(a)(1), and the good faith determination must investigate the expert's qualifications, provide the expert with complete and accurate information, and make certain that reliance on the expert's advice is reasonably justified under the circumstances; and

(g)     A fiduciary must arrive at a determination of fair market value by way of a prudent investigation of circumstances prevailing at the time of the valuation, and the application of sound business principles of evaluation.

**Co-Fiduciary Liability**

325.     ERISA also imposes explicit co-fiduciary liability on plan fiduciaries. 29 U.S.C.

§1105(a) provides for fiduciary liability for a co-fiduciary's breach: "In addition to any liability

which he may have under any other provision of this part, a fiduciary with respect to a plan shall

be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same

plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes

to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

or (2) if, by his failure to comply with section 404(a)(1) in the administration of his specific

responsibilities which give risk to his status as a fiduciary, he has enabled such other fiduciary to

commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes

reasonable efforts under the circumstances to remedy the breach."

326.     Where plaintiffs allege that defendants (1) knowingly participated in and/or

concealed the fiduciary breaches of other fiduciaries, (2) enabled other fiduciaries to breach their

responsibilities, and (3) knew of other fiduciaries' breaches, but took no reasonable steps to

remedy those breaches these allegations are sufficient to state a cause of action for breach of co-

fiduciary duties under 29 U.S.C. §1105(a). *Smith v. Aon Corp.*, No. 04 C 6875, 2006 WL

1006052, at *7 (N.D. Ill. Apr. 12, 2006) *citing Howell*, 337 F.Supp.2d at 1101 ("As the court

finds that Plaintiff has stated a claim against Motorola and the Director Defendants, it need not

address Plaintiff's argument that these Defendants should be held liable as 'co-fiduciaries.'").

327.     Even a proper delegation of fiduciary authority, does not remove the delegating

fiduciary's duties from co-fiduciary liability because the delegating fiduciary remains liable if the

allocation or retention of the delegation violates § 404(a)(1) or if the delegating fiduciary meets

any of the requirements in § 405(a). 29 U.S.C. § 1105(c)(2); *Chesemore,* 886 F. Supp. 2d at 1050

citing *Free v. Briody,* 732 F.2d 1331, 1335–36 (7th Cir.1984). A delegating fiduciary who knows of a breach by the delegated fiduciary cannot "escape liability by simply casting a blind eye toward the breach." *Id.* citing *Willett v. Blue Cross & Blue Shield,* 953 F.2d 1335, 1341 (11th Cir.1992) (citations omitted).

### Prohibited Transactions

328.     The general duties of loyalty and prudence imposed by 29 U.S.C. § 1104 are supplemented by a detailed list of transactions that are expressly prohibited by 29 U.S.C. § 1106, and are considered "*per se*" violations because they entail a high potential for abuse. Section 1106(a)(1) states, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –
>
>> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>>
>> (B) lending of money or other extension of credit between the plan and a party in interest;
>>
>> (C) furnishing of goods, services, or facilities between the plan and party in interest;
>>
>> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan…

Section 1106(b) provides, in pertinent part, that:

> [A] fiduciary with respect to the plan shall not –
>
>> (1) deal with the assets of the plan in his own interest or for his own account,
>>
>> (2) in his individual or in any other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interest of the plan or the interest of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

329. Section 1106 of ERISA prohibits a fiduciary of an ERISA plan from causing the plan to enter into certain transactions with a "party in interest." 29 U.S.C. § 1106. Section 1106 supplements an ERISA fiduciary's general duties of loyalty and prudence to the plan's beneficiaries, as set forth in 29 U.S.C. § 1104 "by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 241–42, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (*quoting Comm'r v. Keystone Consol. Indus., Inc.,* 508 U.S. 152, 160 (1993)). A plan need not suffer an injury in order for a court to find a transaction prohibited by Section 1106. *Etter v. J. Pease Constr. Co.,* 963 F.2d 1005, 1010 (7th Cir.1992).

330. "Congress (in ERISA § [1106]) intended to create an easily applied per se prohibition ... of certain transactions, no matter how fair, unless the statutory exemption procedures (of ERISA § 408(a)) are followed." *Chao v. Hall Holding* Co., 285 F.3d 415, 439 (6th Cir. 2002) *citing Cutaiar v. Marshall,* 590 F.2d 523, 529–30 (3d Cir.1979); *see also Eaves v. Penn,* 587 F.2d 453, 457–59 (10th Cir.1978). Lack of harm to the plan or the good faith or lack of the same on the part of the borrower are not relevant, and certainly not controlling, under ERISA § 406. Rather, "Congress was concerned in ERISA (§ 406) to prevent transactions which offered a high potential for loss of plan assets or for insider abuse." *Chao,* 285 F.3d at 439 citing *Marshall v. Kelly,* 465 F.Supp. 341, 354 (W.D.Okla.1978)).

331. In establishing that there has been compliance with the statutory mandate, "[t]he degree to which a fiduciary makes an independent inquiry is critical." *Keach v. U.S. Tr. Co*., 419 F.3d 626, 636–37 (7th Cir. 2005). "Although securing an independent assessment from a financial advisor or legal counsel is evidence of a thorough investigation," it is not a complete

defense against a charge of imprudence. *Id.* citing *Howard v. Shay,* 100 F.3d 1484, 1489 (9th Cir.1996). A fiduciary must "investigate the expert's qualifications," "provide the expert with complete and accurate information" and "make certain that reliance on the expert's advice is reasonably justified under the circumstances." *Id. citing Donovan v. Mazzola,* 716 F.2d 1226, 1234 (9th Cir.1983), and *Donovan v. Cunningham,* 716 F.2d 1455, 1474 (5th Cir.1983)).

332.    An ERISA plaintiff need not plead the absence of exemptions to prohibited transactions. It is the defendant who bears the burden of proving a section 1108 exemption. *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 676 (7th Cir. 2016) ("We now hold squarely that the section 408 exemptions are affirmative defenses for pleading purposes, and so the plaintiff has no duty to negate any or all of them"); s*ee also, Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014) ("A plaintiff is not required to negate an affirmative defense in his or her complaint[.]").

333.    ERISA's fiduciary duty and prohibited transaction provisions prohibit fiduciaries, such as the Defendants here, from causing plans to engage in transactions with fiduciaries and parties in interest that result in benefits to the fiduciaries and parties in interest at the expense of the plan and its participants and beneficiaries.

**Remedies for Fiduciary Breaches and Prohibited Transaction**

334.    29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under 29 U.S.C. § 1109. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

335.    29 U.S.C. § 1132(a)(3) provides a cause of action against a non-fiduciary "party in interest" who knowingly participates in prohibited transactions or knowingly receives payments made in breach of a fiduciary's duty, and authorizes "appropriate equitable relief" such as restitution or disgorgement to recover ill-gotten proceeds from the non-fiduciary.

336.    Non-fiduciaries, acting with actual or constructive knowledge, may be held liable under ERISA in two ways: (1) as parties in interest, for participating in a 29 U.S.C. § 1106 prohibited transaction, and (2) as non-fiduciaries, for participating in a transaction that violates ERISA. 29 U.S.C. § 1132(a)(3); *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).

## CLAIMS FOR RELIEF

## COUNT I

### Causing and Engaging in Prohibited Transactions Forbidden by 29 U.S.C. §§ 1106(a)–(b) for the 2013 ESOP Transaction Against GreatBanc

337.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

338.    Under 29 U.S.C. §§ 1106(a) and (b), fiduciaries are prohibited from causing plans to engaged in transactions with parties in interest and fiduciaries that are expressly prohibited and are considered "per se" violations because they entail a high potential for abuse and injury to a plan. *See supra* ¶ 328 through ¶ 333.

339.    GreatBanc, as the Plan's discretionary trustee, was a fiduciary under 29 U.S.C. § 1103(a) and 29 U.S.C. § 1002(21) with regard to the 2013 ESOP Transaction when:

(a)     GreatBanc was the discretionary trustee under the terms of the 2013 ESOP Trust Agreement, as amended;

(b)    GreatBanc's fiduciary responsibilities were listed in the 2013 ESOP Trust Agreement, as amended;

(c)    The 2013 Plan Document recognized that a trustee to the Plan would be a fiduciary;

(d)    GreatBanc executed the Contribution Agreement on behalf of the ESOP;

(e)    GreatBanc executed the Assignment and Assumption Agreement;

(f)    GreatBanc hired Stern Brothers as a service provider to the ESOP;

(g)    GreatBanc had the authority to appoint and remove fiduciaries to the ESOP;

(h)    GreatBanc had the authority to appoint members of the MS Management Board of Directors; and

(i)    GreatBanc had the authority to appoint members of the MS Capital Board of Directors.

340.    GreatBanc caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A). 29 U.S.C. § 1106(a)(1)(A) prohibits a fiduciary from causing a plan to engage in a sale or exchange of any property with a party in interest. Here, the 2017 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(A).

341.    GreatBanc caused the ESOP to exchange property of the Plan, MS Companies, Inc. stock, with MS Capital for MS Capital stock.

342.    MS Capital was a party in interest to the ESOP at the time of the 2013 ESOP Transaction.

343.    GreatBanc caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(D). 29 U.S.C. § 1106(a)(1)(D) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes a direct or indirect transfer of plan assets to, or use by or

for the benefit of, a party in interest. Here, the 2013 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(D).

344.    GreatBanc (1) caused the ESOP to directly transfer property of the Plan, MS Companies, Inc., to MS Capital and (2) caused the ESOP to indirectly transfer property of the Plan, MS Companies, Inc. stock, to and for the use and benefit of Eilermann and Arri.

345.    MS Capital, Eilermann, and Arri were all parties in interest to the ESOP at the time of the 2013 ESOP Transaction.

346.    GreatBanc caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(b). 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account," "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." Here, the 2013 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(b)(2).

347.    GreatBanc, in violation of 29 U.S.C. § 1106(b)(2), acted on behalf of MS Management, MS Capital, Eilermann, and Arri in connection with the 2013 ESOP Transaction by causing the Plan to exchange MS Companies, Inc. stock for MS Capital stock for less than adequate consideration. This greatly benefited MS Management, MS Capital, Eilermann, and Arri as they ultimately took control and ownership of MS Companies, Inc. stock after the 2013 ESOP Transaction, to the substantial detriment of the Plan, even though GreatBanc, as a fiduciary to the Plan, was required to act in the best interests of the Plan.

348.    GreatBanc has caused losses to the Plan and MS Management, MS Capital, Eilermann, and Arri have profited by the prohibited transactions described in this count in an amount to be proved specifically at trial.

349.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

350.    GreatBanc, is personally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

351.    GreatBanc has caused losses to the Plan and has profited for themselves by the prohibited transactions described in this count in an amount to be proved specifically at trial.

352.    The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT II

### Causing and Engaging in Prohibited Transactions Forbidden by 29 U.S.C. §§ 1106(a)–(b) for the 2013 ESOP Transaction Against MS Management, Eilermann, and Arri

353.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

354. Under 29 U.S.C. §§ 1106(a) and (b), fiduciaries are prohibited from causing plans to engaged in transactions with parties in interest and fiduciaries that are expressly prohibited and are considered "per se" violations because they entail a high potential for abuse and injury to a plan. *See supra* ¶ 328 through ¶ 333.

355. MS Management, Eilermann, and Arri were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the 2013 ESOP Transaction when:

(a) MS Management was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a) under the terms of the 2013 Plan Document;

(b) MS Management was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A) under the terms of the 2013 Plan Document;

(c) MS Management, as a corporate entity, cannot act on its own without any human counterpart. In this regard, MS Management could only act through its Board of Directors;

(d) Article 17.12 of the 2013 Plan Document authorized the MS Management Board of Directors to act on behalf of MS Management as the named fiduciary and plan administrator of the Plan;

(e) According to 29 C.F.R. § 2509.75-8(D-4) "Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries… to the extent that they have responsibility for the functions described in 29 U.S.C. § 1002(21)(A).";

(f)    Eilermann and Arri were the only members of the MS Management Board of Directors for the relevant time period for the SAC prior to and including December 31, 2013;

(g)    Eilermann and Arri, as Directors, carried out all acts of MS Management in its role as named fiduciary and plan administrator to the Plan for the relevant time period for the SAC prior to and including December 31, 2013;

(h)    GreatBanc recognized the fiduciary role of MS Management and Arri when it delivered the annual valuation report prepared by Stern Brother to Arri when it stated: "This report is being delivered to you in your capacity as a plan fiduciary";

(i)    Eilermann and Arri has the responsibility of recommending the removal of members of the MS Management Board of Directors;

(j)    Eilermann and Arri executed the Contribution Agreement on behalf of MS Management;

(k)    Eilermann and Arri executed the Assignment and Assumption Agreement on behalf of MS Management;

(l)    MS Management, Eilermann, and Arri had the authority to appoint and remove fiduciaries to the ESOP;

(m)    MS Management, Eilermann, and Arri had the authority to remove GreatBanc as trustee;

(n)    Eilermann executed the December 27, 2013 ESOP Trust Agreement as a Director of MS Management; and

(o)    MS Management, Eilermann, and Arri provided information to GreatBanc and Stern Brothers for consideration as part of the 2013 ESOP Transaction.

356. MS Management, Eilermann, and Arri caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A). 29 U.S.C. § 1106(a)(1)(A) prohibits a fiduciary from causing a plan to engage in a sale or exchange of any property with a party in interest. Here, the 2013 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(A).

357. MS Management, Eilermann, and Arri caused the ESOP to exchange property of the Plan, MS Companies, Inc., with MS Capital for MS Capital stock.

358. MS Capital was a party in interest to the ESOP at the time of the 2013 ESOP Transaction.

359. MS Management, Eilermann, and Arri caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(D). 29 U.S.C. § 1106(a)(1)(D) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes a direct or indirect transfer of plan assets to, or use by or for the benefit of, a party in interest. Here, the 2013 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(D).

360. MS Management, Eilermann, and Arri (1) caused the ESOP to directly transfer property of the Plan, MS Companies, Inc. stock, to MS Capital and (2) caused the ESOP to indirectly transfer property of the Plan, MS Companies, Inc, stock, to and for the use and benefit of MS Capital, Eilermann, and Arri.

361. MS Capital, Eilermann, and Arri were all parties in interest to the ESOP at the time of the 2013 ESOP Transaction.

362. MS Management, Eilermann, and Arri caused the Plan to engage in prohibited transactions in violation of 29 U.S.C. § 1106(b). 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own

account", "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." Here, the 2013 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(b)(1), (2), and (3).

363.    Eilermann, and Arri, in violation of 29 U.S.C. § 1106(b)(1), dealt with the assets of the Plan in their own interest and for their own account when they caused the Plan to exchange MS Companies, Inc. stock with MS Capital for MS Capital stock for less than adequate consideration. Eilermann and Arri immediately upon the exchange of MS Companies, Inc. stock for MS Capital stock, gave themselves an interest in the MS Companies, Inc. stock after converting MS Companies, Inc. into a limited liability corporation and issuing themselves Class B Units of MS Companies, LLC.

364.    MS Management, Eilermann, and Arri, in violation of 29 U.S.C. § 1106(b)(2), acted on behalf of MS Capital, Eilermann, and Arri in connection with the 2013 ESOP Transaction by causing the Plan to exchange MS Companies, Inc. stock with MS Capital for MS Capital stock for less than adequate consideration. This greatly benefited Eilermann and Arri as they ultimately took control and ownership of MS Companies, Inc. stock after the 2013 ESOP Transaction, to the substantial detriment of the Plan, even though GreatBanc, as a fiduciary to the Plan, was required to act in the best interests of the Plan.

365.    Eilermann and Arri, in violation of 29 U.S.C. § 1106(b)(3), received consideration for their own personal account from MS Management, MS Capital, GreatBanc, Eilermann, Arri, and MS Companies, LLC when they caused the Plan to exchange MS Companies, Inc. stock to MS Capital for MS Capital stock to and received consideration in the form of control and

ownership of the McBride Enterprise, ownership of Class B Units of MS Companies, LLC, and the award of synthetic equity, additional Class B Units, and other excessive compensation as outlined in the Loss of Value from 2013 to 2017.

366.     MS Management, Eilermann, and Arri have caused losses to the Plan and have profited for themselves by the prohibited transactions described in this count in an amount to be proved specifically at trial.

367.     29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

368.     MS Management, Eilermann, and Arri, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

369.     The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT III

### Violation of 29 U.S.C. § 1104(a)(1) for the
### 2013 ESOP Transaction Against GreatBanc

370.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

371.     29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

372.     These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

373.     The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan. *See supra* ¶ 323.

374.     When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties. *See supra* ¶ 324.

375.     GreatBanc, as the Plan's discretionary trustee, was a fiduciary under 29 U.S.C. § 1103(a) and 29 U.S.C. § 1002(21) with regard to the 2013 ESOP Transaction when:

(a)     GreatBanc was the discretionary trustee under the terms of the 2013 ESOP Trust Agreement, as amended;

(b)     GreatBanc's fiduciary responsibilities were listed in the 2013 ESOP Trust Agreement, as amended;

(c)     The 2013 Plan Document recognized that a trustee to the Plan would be a fiduciary;

(d)     GreatBanc executed the Contribution Agreement on behalf of the ESOP;

(e)     GreatBanc executed the Assignment and Assumption Agreement;

(f)     GreatBanc hired Stern Brothers as a service provider to the ESOP;

(g)     GreatBanc had the authority to appoint and remove fiduciaries to the ESOP;

(h)     GreatBanc had the authority to appoint members of the MS Management Board of Directors; and

(i)     GreatBanc had the authority to appoint members of the MS Capital Board of Directors.

376.     As a fiduciary of the Plan, GreatBanc was required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

377.     The documents governing the Plan, including the 2013 ESOP Trust Agreement, as amended, and the 2013 Plan Document, as amended, required GreatBanc to comply with ERISA's stringent fiduciary standards.

378.     As a fiduciary of the Plan, GreatBanc was required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to the 2013 ESOP Transaction. *See supra* ¶ 323.

379.     As a fiduciary of the Plan, GreatBanc was required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration, or fair market value, for any Plan assets sold or exchanged. *See supra* ¶ 324.

380.     GreatBanc breached its fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when it:

(a)     Caused the Plan to exchange MS Companies, Inc. stock with MS Capital for MS Capital stock for less than adequate consideration;

(b)     Failed to make a good faith determination of adequate consideration of MS Companies, Inc. stock and MS Capital stock;

(c)     Failed to prevent the execution of the Contribution Agreement;

(d)     Failed to prevent the execution of the Assignment and Assumption Agreement;

(e)     Failed to appoint independent members of the Board of Directors of MS Management;

(f)     Failed to ensure that Stern Brothers was independent from MS Management, MS Capital, Eilermann, and Arri;

(g)     Failed to hire an independent investment bank for the benefit of the Plan;

(h)     Failed to prevent Eilermann and Arri from setting in motion the 2013 ESOP Transaction;

(i)     Failed to remove Eilermann and Arri as members of the Board of Directors of MS Management;

(j)     Failed to remove MS Management, Eilermann, and Arri as fiduciaries to the ESOP;

(k)     Failed to prevent the conversion of MS Companies, Inc. to a limited liability company;

(l)     Failed to prevent Eilermann and Arri receiving Class B Units of MS Companies, LLC;

(m)     Failed to prevent Stern Brothers from providing a faulty and inadequate opinion of value;

(n)     Failed to prevent the 2013 ESOP Transaction from being for the benefit of anyone other than the ESOP;

(o)     Failed to determine that the 2013 ESOP Transaction was in the best interests of the ESOP;

(p)     Failed to prevent the dilution of value of MS Capital stock after the 2013 ESOP Transaction;

(q)     Failed to prevent the loss in value to the ESOP described in the Loss of Value from 2013 to 2017;

(r)     Failed to prevent the synthetic equity paid to Eilermann, Arri, Schindler, Berger, and Todt;

(s)     Failed to prevent Eilermann and Arri from controlling the value of MS Capital stock inside the ESOP;

(t)     Failed to prevent indemnification provisions that could result in the reduction of value to the ESOP;

(u)     Failed to ensure MS Management, Eilermann, and Arri provided truthful information;

(v)     Failed to ensure the governing plan documents were followed;

(w)     Failed to ensure that committees required by the governing plan documents were created;

(x)     Failed to prevent improper and faulty valuation methods from being used that resulted in lower values of the stock held by the ESOP as compared to prudent and appropriate valuation methods; and

(y)     Failed to inform participants about the loss to the ESOP and the improper benefit to Eilermann, Arri, Schindler, Berger, and Todt;

381.    GreatBanc has caused losses to the Plan and MS Capital, Eilermann, Arri, Schindler, Berger, and Todt have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

382.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

383.    GreatBanc, is personally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

384.    The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT IV

### Violation of 29 U.S.C. § 1104(a)(1) for the
### 2013 ESOP Transaction Against MS Management, Eilermann, and Arri

385.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

386.    29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence,

and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

387.    These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

388.    The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan. *See supra* ¶ 323.

389.    When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties. *See supra* ¶ 324.

390.    MS Management, Eilermann, and Arri were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the 2013 ESOP Transaction when:

(a)    MS Management was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a) under the terms of the 2013 Plan Document;

(b)    MS Management was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A) under the terms of the 2013 Plan Document;

(c)    MS Management, as a corporate entity, cannot act on its own without any human counterpart. In this regard, MS Management could only act through its Board of Directors;

(d)    Article 17.12 of the 2013 Plan Document authorized the MS Management Board of Directors to act on behalf of MS Management as the named fiduciary and plan administrator of the Plan;

(e)     According to 29 C.F.R. § 2509.75-8(D-4) "Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries… to the extent that they have responsibility for the functions described in 29 U.S.C. § 1002(21)(A)";

(f)     Eilermann and Arri were the only members of the MS Management Board of Directors for the relevant time period for the SAC prior to and including December 31, 2013;

(g)     Eilermann and Arri, as Directors, carried out all acts of MS Management in its role as named fiduciary and plan administrator to the Plan for the relevant time period for the SAC prior to and including December 31, 2013;

(h)     GreatBanc recognized the fiduciary role of MS Management and Arri when it delivered the annual valuation report prepared by Stern Brother to Arri when it stated: "This report is being delivered to you in your capacity as a plan fiduciary";

(i)     Eilermann and Arri had the responsibility of recommending the removal of members of the MS Management Board of Directors;

(j)     Eilermann and Arri executed the Contribution Agreement on behalf of MS Management;

(k)     Eilermann and Arri executed the Assignment and Assumption Agreement on behalf of MS Management;

(l)     MS Management, Eilermann, and Arri had the authority to appoint and remove fiduciaries to the ESOP;

(m)     MS Management, Eilermann, and Arri had the authority to remove GreatBanc as trustee;

(n) Eilermann executed the December 27, 2013 ESOP Trust Agreement as a Director of MS Management; and

(o) MS Management, Eilermann, and Arri provided information to GreatBanc and Stern Brothers for consideration as part of the 2013 ESOP Transaction.

391. As a fiduciaries of the Plan, MS Management, Eilermann, and Arri were required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

392. The documents governing the Plan, including the 2013 ESOP Trust Agreement, as amended, and the 2013 Plan Document, as amended, required MS Management, Eilermann, and Arri to comply with ERISA's stringent fiduciary standards.

393. As a fiduciaries of the Plan, MS Management, Eilermann, and Arri were required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to the 2013 ESOP Transaction. *See supra* ¶ 323.

394. As a fiduciaries of the Plan, MS Management, Eilermann, and Arri were required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration for any Plan assets sold or exchanged. *See supra* ¶ 324.

395. MS Management, Eilermann, and Arri breached their fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when they:

(a) Caused the Plan to exchange MS Companies, Inc. stock with MS Capital for MS Capital stock for less than adequate consideration;

(b) Failed to make a good faith determination of adequate consideration of MS Companies, Inc. stock and MS Capital stock;

(c) Failed to prevent the execution of the Contribution Agreement;

(d)     Failed to prevent the execution of the Assignment and Assumption Agreement;

(e)     Failed to appoint independent members of the Board of Directors of MS Management;

(f)     Failed to ensure that Stern Brothers was independent from MS Management, MS Capital, Eilermann, and Arri;

(g)     Failed to hire an independent investment bank for the benefit of the Plan;

(h)     Failed to prevent Eilermann and Arri from setting in motion the 2013 ESOP Transaction;

(i)     Failed to remove Eilermann and Arri as members of the Board of Directors of MS Management;

(j)     Failed to remove GreatBanc, MS Management, Eilermann, and Arri as fiduciaries to the ESOP;

(k)     Failed to prevent the conversion of MS Companies, Inc. to a limited liability company;

(l)     Failed to prevent Eilermann and Arri receiving Class B Units of MS Companies, LLC

(m)     Failed to prevent Stern Brothers from providing a faulty and inadequate opinion of value;

(n)     Failed to prevent the 2013 ESOP Transaction from being for the benefit of anyone other than the ESOP;

(o)     Failed to determine that the 2013 ESOP Transaction was in the best interests of the ESOP;

(p)     Failed to prevent the dilution of value of MS Capital stock after the 2013 ESOP Transaction;

(q)     Failed to prevent the loss in value to the ESOP described in the Loss of Value from 2013 to 2017;

(r)     Failed to prevent the synthetic equity paid to Eilermann, Arri, Schindler, Berger, and Todt;

(s)     Failed to prevent Eilermann and Arri from controlling the value of MS Capital stock inside the ESOP;

(t)     Failed to prevent indemnification provisions that could result in the reduction of value to the ESOP;

(u)     Failed to ensure provide truthful information to GreatBanc and Stern Brothers;

(v)     Failed to ensure the governing plan documents were followed;

(w)     Failed to ensure that committees required by the governing plan documents were created;

(x)     Failed to prevent improper and faulty valuation methods from being used that resulted in lower values of the stock held by the ESOP as compared to prudent and appropriate valuation methods; and

(y)     Failed to inform participants about the loss to the ESOP and the improper benefit to Eilermann, Arri, Schindler, Berger, and Todt;

396.    MS Management, Eilermann, and Arri have caused losses to the Plan and MS Capital, Eilermann, Arri, Schindler, Berger, and Todt have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

397.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

398.    MS Management, Eilermann, and Arri, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

399.    The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT V

**Violation of 29 U.S.C. § 1105(a), Co-Fiduciary Liability, for the 2013 ESOP Transaction Against GreatBanc, MS Management, Eilermann, and Arri**

400.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

401.    29 U.S.C. §1105(a), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary, in addition to any liability which he may have under any other provision of ERISA, if:

(1)    he participates knowingly in or knowingly undertakes to conceal an act or omission of such other fiduciary knowing such act or omission is a breach;

(2)    by his failure to comply with 29 U.S.C. § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)     he knows of a breach by another fiduciary and fails to make reasonable efforts to remedy it.

402.     Liability under 29 U.S.C. 1105(a) is known as co-fiduciary liability. *See supra* ¶ 325 through ¶ 327.

*GreatBanc*

403.     GreatBanc was a fiduciary to the Plan as described in paragraphs 339 and 375 of the SAC.

404.     GreatBanc knowingly participated in the breaches of MS Capital, Eilermann, and Arri in Count II and Count IV when they performed the actions described in the 2013 ESOP Transaction, Count I, and Count III including but not limited to the breaches and failures described in paragraph 380.

405.     GreatBanc enabled the breaches of MS Management, Eilermann, and Arri in Count II and Count IV by their own breaches of ERISA when they committed the breaches of fiduciary duty described in Count I and Count III;

406.     GreatBanc knew of the breaches of MS Capital, Eilermann, and Arri in Count II and Count IV and failed to make reasonable efforts to remedy as described in the 2013 ESOP Transaction, Count I, and Count III including but not limited to the breaches and failures described in ¶ 380.

*MS Management*

407.     MS Management was a fiduciary to the Plan as described in paragraphs 355 and 390 of the SAC.

408.     MS Management knowingly participated in (1) the breaches of GreatBanc in Count I and Count III and (2) the breaches of Eilermann and Arri in Count II and Count IV when

they performed the actions described in the 2013 ESOP Transaction, Count II, and Count IV including but not limited to the breaches and failures described in paragraph 395.

409.    MS Management enabled (1) the breaches of GreatBanc in Count I and Count III and (2) the breaches of Eilermann and Arri in Count II and Count IV by their own breaches of ERISA when they committed the breaches of fiduciary duty described in Count II and Count IV;

410.    MS Management knew of (1) the breaches of GreatBanc in Count I and Count III and (2) the breaches of Eilermann and Arri in Count II and Count IV and failed to make reasonable efforts to remedy it when they performed the actions described in the 2013 ESOP Transaction, Count II, and Count IV including but not limited to the breaches and failures described in paragraph 395.

*Eilermann*

411.    Eilermann was a fiduciary to the Plan as described in paragraphs 355 and 390 of the SAC.

412.    Eilermann knowingly participated in (1) the breaches of GreatBanc in Count I and Count III and (2) the breaches of MS Management and Arri in Count II and Count IV when he performed the actions described in the 2013 ESOP Transaction, Count II, and Count IV including but not limited to the breaches and failures described in paragraph 395.

413.    Eilermann enabled (1) the breaches of GreatBanc in Count I and Count III and (2) the breaches of MS Management and Arri in Count II and Count IV by his own breaches of ERISA when he committed the breaches of fiduciary duty described in Count II and Count IV;

414.    Eilermann knew of (1) the breaches of GreatBanc in Count I and Count III and (2) the breaches of MS Management and Arri in Count II and Count IV and failed to make reasonable efforts to remedy it when he performed the actions described in the 2013 ESOP

Transaction, Count II, and Count IV including but not limited to the breaches and failures described in paragraph 395.

*Arri*

415.    Arri was a fiduciary to the Plan as described in paragraphs 355 and 390 of the SAC.

416.    Arri knowingly participated in (1) the breaches of GreatBanc in Count I and Count III and (2) the breaches of MS Management and Eilermann in Count II and Count IV when he performed the actions described in the 2013 ESOP Transaction, Count II, and Count IV including but not limited to the breaches and failures described in paragraph 395.

417.    Arri enabled (1) the breaches of GreatBanc in Count I and Count III and (2) the breaches of MS Management and Eilermann in Count II and Count IV by his own breaches of ERISA when he committed the breaches of fiduciary duty described in Count II and Count IV;

418.    Arri knew of (1) the breaches of GreatBanc in Count I and Count III and (2) the breaches of MS Managment and Eilermann in Count II and Count IV and failed to make reasonable efforts to remedy it when he performed the actions described in the 2013 ESOP Transaction, Count II, and Count IV including but not limited to the breaches and failures described in paragraph 395.

419.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

420.     GreatBanc, MS Management, Eilermann, and Arri, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

421.     The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT VI

### Knowing Participation in Breaches of Fiduciary Duties & Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3) for the 2013 ESOP Transaction Against MS Capital, Eilermann, and Arri

422.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

423.     29 U.S.C. § 1132(a)(3) permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

424.     The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under 29 U.S.C. § 1132(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Soloman Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

425.     MS Capital, Eilermann, and Arri were all parties in interest to the Plan under 29 U.S.C. § 1002(14).

426.    As a result of the fiduciary breaches and prohibited transactions described in Counts I through V, (1) MS Capital, Eilermann, and Arri received ownership, control, and the benefit of MS Companies, Inc. stock as a result of the 2013 ESOP Transaction that otherwise would have been Plan assets to be used exclusively for the benefit of the Plan participants and beneficiaries, and (2) Eilermann and Arri received the compensation and benefits described in the Loss of Value from 2013 to 2017.

427.    MS Capital, Eilermann, and Arri had actual knowledge of the circumstances that made the transactions unlawful in Counts I through V, when they performed the actions described in the 2013 ESOP Transaction, Count II, and Count IV including but not limited to the breaches and failures described in paragraph 395.

428.    Despite knowledge of these the circumstances, MS Capital, Eilermann, and Arri proceeded to knowingly participate in the breaches described in Counts I through V, when they performed the actions described in the 2013 ESOP Transaction, Count II, and Count IV including but not limited to the breaches and failures described in paragraph 395.

429.    MS Capital, Eilermann, and Arri have profited from the fiduciary breaches described in Counts I through V in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets and consideration that belong to the Plan.

430.    By knowingly participating in these breaches and violations, MS Capital, Eilermann, and Arri as parties in interest to the Plan are subject to appropriate equitable relief including disgorgement of any profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part

of the MS Companies, Inc. stock and consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## COUNT VII

### Violation of 29 U.S.C. § 1104(a)(1) for the
### Loss of Value from 2013 to 2017 Against GreatBanc

431.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

432.     29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

433.     These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

434.     The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan. *See supra* ¶ 323.

435.     When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties. *See supra* ¶ 324.

436.     GreatBanc, as the Plan's discretionary trustee, was a fiduciary under 29 U.S.C. § 1103(a) and 29 U.S.C. § 1002(21) with regard to the Loss of Value from 2013 to 2017 when:

(a)     GreatBanc was the discretionary trustee under the terms of the 2013 ESOP Trust Agreement, as amended;

(b)    GreatBanc's fiduciary responsibilities were listed in the 2013 ESOP Trust Agreement, as amended;

(c)    The 2013 Plan Document recognized that a trustee to the Plan would be a fiduciary;

(d)    The 2017 Plan Document recognized that a trustee to the Plan would be a fiduciary;

(e)    GreatBanc executed the Contribution Agreement on behalf of the ESOP;

(f)    GreatBanc executed the Assignment and Assumption Agreement;

(g)    GreatBanc had the authority to appoint and remove fiduciaries to the ESOP;

(h)    GreatBanc had the authority to appoint members of the MS Management Board of Directors; and

(i)    GreatBanc had the authority to appoint members of the MS Capital Board of Directors.

437.    As a fiduciary of the Plan, GreatBanc was required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

438.    The documents governing the Plan, including the 2013 ESOP Trust Agreement, as amended, the 2013 Plan Document, as amended, and the 2017 Plan Document, as amended, required GreatBanc to comply with ERISA's stringent fiduciary standards.

439.    As a fiduciary of the Plan, GreatBanc was required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to Loss of Value from 2013 to 2017. *See supra* ¶ 323.

440.    As a fiduciary of the Plan, GreatBanc was required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration, or fair market value, for any Plan assets sold or exchanged. *See supra* ¶ 324.

441.    GreatBanc breached its fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when it:

(a)     Caused the Plan to exchange MS Companies, Inc. stock with MS Capital for MS Capital stock for less than adequate consideration;

(b)     Failed to prevent the execution of the Contribution Agreement;

(c)     Failed to prevent the execution of the Assignment and Assumption Agreement;

(d)     Failed to appoint independent members of the Board of Directors of MS Capital;

(e)     Failed to ensure that Stern Brothers was independent from MS Management, MS Capital, Eilermann, and Arri;

(f)     Failed to prevent Eilermann and Arri from paying themselves the excessive compensation described in the Loss of Value from 2013 to 2017;

(g)     Failed to prevent the value of MS Capital stock from being valued below fair market value;

(h)     Failed to remove Eilermann and Arri as members of the Board of Directors of MS Capital;

(i)     Failed to remove MS Capital, Eilermann, and Arri as fiduciaries to the ESOP;

(j)     Failed to file a derivative suit against officers and directors of MS Capital and MS Companies, LLC. Such derivative claims would have been successful and would have recovered damages on behalf of the Plan;

(k)     Failed to prevent the conversion of MS Companies, Inc. to a limited liability company;

(l)     Failed to prevent Eilermann and Arri receiving Class B Units of MS Companies, LLC

(m)     Failed to prevent Stern Brothers from providing faulty and inadequate opinions of value;

(n)     Failed to prevent the compensation paid as described in the Loss of Value from 2013 to 2017 from being for the benefit of Eilermann, Arri, Schindler, Berger, and Todt;

(o)     Failed to protect the best interests of the ESOP;

(p)     Failed to prevent the dilution of value of MS Capital stock;

(q)     Failed to prevent the loss in value to the ESOP described in the Loss of Value from 2013 to 2017;

(r)     Failed to prevent the synthetic equity paid to Eilermann, Arri, Schindler, Berger, and Todt;

(s)     Failed to prevent Eilermann and Arri from controlling the value of MS Capital stock inside the ESOP;

(t)     Failed to prevent indemnification provisions that could result in the reduction of value to the ESOP;

(u)     Failed to ensure MS Capital, Eilermann, and Arri provided truthful information;

(v)     Failed to ensure the governing plan documents were followed;

(w)     Failed to ensure that committees required by the governing plan documents were created;

(x) Failed to prevent improper and faulty valuation methods from being used that resulted in lower values of the stock held by the ESOP as compared to prudent and appropriate valuation methods; and

(y) Failed to inform participants about the loss to the ESOP and the improper benefit to Eilermann, Arri, Schindler, Berger, and Todt;

442. GreatBanc has caused losses to the Plan and Eilermann, Arri, Schindler, Berger, and Todt have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

443. 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

444. GreatBanc, is personally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

445. The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT VIII

### Violation of 29 U.S.C. § 1104(a)(1) for the
### Loss of Value from 2013 to 2017 Against MS Capital, Eilermann, and Arri

446.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

447.     29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

448.     These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

449.     The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan. *See supra* ¶ 323.

450.     When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties. *See supra* ¶ 324.

451.     MS Capital, Eilermann, and Arri were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the Loss of Value from 2013 to 2017 when:

(a)     MS Capital was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a) under the terms of the 2013 Plan Document and the 2017 Plan Document;

(b)     MS Capital was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A) under the terms of the 2013 Plan Document and the 2017 Plan Document;

(c)     MS Capital, as a corporate entity, cannot act on its own without any human counterpart. In this regard, MS Capital could only act through its Board of Directors;

(d)     Article 17.12 of the 2013 Plan Document and 2017 Plan Document authorized the MS Capital Board of Directors to act on behalf of MS Capital as the named fiduciary and plan administrator of the Plan;

(e)     According to 29 C.F.R. § 2509.75-8(D-4) "Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries… to the extent that they have responsibility for the functions described in 29 U.S.C. § 1002(21)(A)";

(f)     Eilermann and Arri were the only members of the MS Capital Board of Directors from December 31, 2013 through the effective termination of the Plan;

(g)     Eilermann and Arri, as Directors, carried out all acts of MS Capital in its role as named fiduciary and plan administrator to the Plan from December 31, 2013 through the effective termination of the Plan;

(h)     GreatBanc recognized the fiduciary role of MS Capital and Arri when it delivered the annual valuation report prepared by Stern Brother to Arri when it stated: "This report is being delivered to you in your capacity as a plan fiduciary";

(i)     Eilermann and Arri had the responsibility of recommending the removal of members of the MS Capital Board of Directors;

(j)     Eilermann and Arri executed the Contribution Agreement on behalf of MS Management;

(k)     Eilermann and Arri executed the Assignment and Assumption Agreement on behalf of MS Management;

(l)     MS Capital, Eilermann, and Arri had the authority to appoint and remove fiduciaries to the ESOP;

(m)     MS Capital, Eilermann, and Arri had the authority to remove GreatBanc as trustee;

(n)     Eilermann executed the December 27, 2013 ESOP Trust Agreement as a Director of MS Management;

(o)     Eilermann and Arri executed Amendment Number One to the December 27, 2013 ESOP Trust Agreement;

(p)     MS Capital, Eilermann, and Arri provided information to GreatBanc and Stern Brothers for consideration as part of the 2013 ESOP Transaction; and

(q)     Eilermann and Arri were the only managers of MS Companies, LLC and Eilermann and Arri had direct control over the value of the MS Capital stock as managers of MS Companies when (1) they had total discretion to award additional Class B and Class C Units which directly reduced the income and equity attributable to the Class A Units held by MS Capital and (2) Stern Brothers used the reduced income and equity amounts in calculating the value of MS Capital stock in 2013, 2014, 2015, 2016, and 2017.

452.    As fiduciaries of the Plan, MS Capital, Eilermann, and Arri were required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

453.    The documents governing the Plan, including the 2013 ESOP Trust Agreement, as amended, the 2013 Plan Document, as amended, and the 2017 Plan Document, as amended, required MS Capital, Eilermann, and Arri to comply with ERISA's stringent fiduciary standards.

454.    As fiduciaries of the Plan, MS Capital, Eilermann, and Arri were required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to the Loss of Value from 2013 to 2017. *See supra* ¶ 323.

455.    As fiduciaries of the Plan, MS Management, Eilermann, and Arri were required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration for any Plan assets sold or exchanged. *See supra* ¶ 324.

456.    MS Capital, Eilermann, and Arri breached their fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when they:

(a)    Caused the Plan to exchange MS Companies, Inc. stock with MS Capital for MS Capital stock for less than adequate consideration;

(b)    Failed to prevent the execution of the Contribution Agreement;

(c)    Failed to prevent the execution of the Assignment and Assumption Agreement;

(d)    Failed to appoint independent members of the Board of Directors of MS Capital;

(e)    Failed to ensure that Stern Brothers was independent from MS Management, MS Capital, Eilermann, and Arri;

(f)    Failed to prevent Eilermann and Arri from paying themselves the excessive compensation described in the Loss of Value from 2013 to 2017;

(g)     Failed to prevent the value of MS Capital stock from being valued below fair market value;

(h)     Failed to remove Eilermann and Arri as members of the Board of Directors of MS Capital;

(i)     Failed to remove GreatBanc, MS Capital, Eilermann, and Arri as fiduciaries to the ESOP;

(j)     Failed to file a derivative suit against officers and directors of MS Capital and MS Companies, LLC. Such derivative claims would have been successful and would have recovered damages on behalf of the Plan;

(k)     Failed to prevent the conversion of MS Companies, Inc. to a limited liability company;

(l)     Failed to prevent Eilermann and Arri receiving Class B Units of MS Companies, LLC

(m)     Failed to prevent Stern Brothers from providing faulty and inadequate opinions of value;

(n)     Failed to prevent the compensation paid as described in the Loss of Value from 2013 to 2017 from being for the benefit of Eilermann, Arri, Schindler, Berger, and Todt;

(o)     Failed to protect the best interests of the ESOP;

(p)     Failed to prevent the dilution of value of MS Capital stock;

(q)     Failed to prevent the loss in value to the ESOP described in the Loss of Value from 2013 to 2017;

(r)     Failed to prevent the synthetic equity paid to Eilermann, Arri, Schindler, Berger, and Todt;

(s)     Failed to prevent Eilermann and Arri from controlling the value of MS Capital stock inside the ESOP;

(t)     Failed to prevent indemnification provisions that could result in the reduction of value to the ESOP;

(u)     Failed to ensure MS Capital, Eilermann, and Arri provided truthful information;

(v)     Failed to ensure the governing plan documents were followed;

(w)     Failed to ensure that committees required by the governing plan documents were created;

(x)     Failed to prevent improper and faulty valuation methods from being used that resulted in lower values of the stock held by the ESOP as compared to prudent and appropriate valuation methods; and

(y)     Failed to inform participants about the loss to the ESOP and the improper benefit to Eilermann, Arri, Schindler, Berger, and Todt;

457.    MS Capital, Eilermann, and Arri have caused losses to the Plan and Eilermann, Arri, Schindler, Berger, and Todt have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

458.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been

made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

459.    MS Capital, Eilermann, and Arri, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

460.    The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT IX

**Violation of 29 U.S.C. § 1105(a), Co-Fiduciary Liability, for the Loss of Value from 2013 to 2017 Against GreatBanc, MS Capital, Eilermann, and Arri**

461.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

462.    29 U.S.C. §1105(a), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary, in addition to any liability which he may have under any other provision of ERISA, if:

(1)    he participates knowingly in or knowingly undertakes to conceal an act or omission of such other fiduciary knowing such act or omission is a breach;

(2)    by his failure to comply with 29 U.S.C. § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)    he knows of a breach by another fiduciary and fails to make reasonable efforts to remedy it.

463.    Liability under 29 U.S.C. 1105(a) is known as co-fiduciary liability. *See also* ¶ 325 through ¶ 327.

*GreatBanc*

464.    GreatBanc was a fiduciary to the Plan as described in paragraph 436 of the SAC.

465.    GreatBanc knowingly participated in the breaches of MS Capital, Eilermann, and Arri in Count VIII when they performed the actions described in the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and Count VII including but not limited to the breaches and failures described in paragraph 441.

466.    GreatBanc enabled the breaches of MS Capital, Eilermann, and Arri in Count VIII by their own breaches of ERISA when they committed the breaches of fiduciary duty described in Count VII;

467.    GreatBanc knew of the breaches of MS Capital, Eilermann, and Arri in Count VIII and failed to make reasonable efforts to remedy it when they performed the actions described in the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and Count VII including but not limited to the breaches and failures described in paragraph 441.

*MS Capital*

468.    MS Capital was a fiduciary to the Plan as described in paragraph 451 of the SAC.

469.    MS Capital knowingly participated in (1) the breaches of GreatBanc in Count VII and (2) the breaches of Eilermann and Arri in Count VIII when they performed the actions described in the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and Count VIII including but not limited to the breaches and failures described in paragraph 456.

470.    MS Capital enabled (1) the breaches of GreatBanc in Count VII and (2) the breaches of Eilermann and Arri in Count VIII by their own breaches of ERISA when they committed the breaches of fiduciary duty described in Count VIII;

471.    MS Capital knew of (1) the breaches of GreatBanc in Count VII and (2) the breaches of Eilermann and Arri in Count VIII and failed to make reasonable efforts to remedy it when they performed the actions described in the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and Count VIII including but not limited to the breaches and failures described in paragraph 456.

*Eilermann*

472.    Eilermann was a fiduciary to the Plan as described in paragraph 451 of the SAC.

473.    Eilermann knowingly participated in (1) the breaches of GreatBanc in Count VII and (2) the breaches of MS Capital and Arri in Count VIII when he performed the actions described in the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and Count VIII including but not limited to the breaches and failures described in paragraph 456.

474.    Eilermann enabled (1) the breaches of GreatBanc in Count VII and (2) the breaches of MS Capital and Arri in Count VIII by his own breaches of ERISA when he committed the breaches of fiduciary duty described in Count VIII;

475.    Eilermann knew of (1) the breaches of GreatBanc in Count VII and (2) the breaches of MS Capital and Arri in Count VIII and failed to make reasonable efforts to remedy it when he performed the actions described in the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and Count VIII including but not limited to the breaches and failures described in paragraph 456.

*Arri*

476.    Arri was a fiduciary to the Plan as described in paragraph 451 of the SAC.

477.    Arri knowingly participated in (1) the breaches of GreatBanc in Count VII and (2) the breaches of MS Capital and Eilermann in Count VIII when he performed the actions

described in the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and Count VIII including but not limited to the breaches and failures described in paragraph 456.

478.    Arri enabled (1) the breaches of GreatBanc in Count VII and (2) the breaches of MS Capital and Eilermann in Count VIII by his own breaches of ERISA when he committed the breaches of fiduciary duty described in Count VIII;

479.    Arri knew of (1) the breaches of GreatBanc in Count VII and (2) the breaches of MS Capital and Eilermann in Count VIII and failed to make reasonable efforts to remedy it when he performed the actions described in the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and Count VIII including but not limited to the breaches and failures described in paragraph 456.

480.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

481.    GreatBanc, MS Capital, Eilermann, and Arri, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

482.     The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT X

**Knowing Participation in Breaches of Fiduciary Duties & Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3) for the Loss of Value from 2013 to 2017 Against Eilermann and Arri**

483.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

484.     29 U.S.C. § 1132(a)(3) permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

485.     The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under 29 U.S.C. § 1132(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Soloman Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

486.     Eilermann and Arri were both parties in interest to the Plan under 29 U.S.C. § 1002(14).

487.     As a result of the fiduciary breaches and prohibited transactions described in Count VII, Count VIII, and Count IX, Eilermann, and Arri received excessive compensation and benefits described in the Loss of Value from 2013 to 2017 including excessive compensation, excessive incentive pay, excessive reimbursement of expenses, excessive perquisites, excessive awards of additional Class B Units, awards of synthetic equity in MS Capital, the conversion of synthetic equity into Class B Units, excessive distributions as Class B Units holders, preferential

rights as Class B Units holders, and excessive redemption of Class B Units that otherwise would have been Plan assets to be used exclusively for the benefit of the Plan participants and beneficiaries.

488.    Eilermann and Arri had actual knowledge of the circumstances that made the transactions unlawful in Counts VII through IX, when they performed the actions described in the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and Count VIII including but not limited to the breaches and failures described in paragraph 456.

489.    Despite knowledge of these the circumstances, Eilermann and Arri proceeded to knowingly participate in the breaches described in Counts VII through IX, when they performed the actions described in the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and Count VIII including but not limited to the breaches and failures described in paragraph 456.

490.    Eilermann and Arri have profited from the fiduciary breaches described in Counts VII through IX in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets and consideration that belong to the Plan.

491.    By knowingly participating in these breaches and violations Eilermann and Arri as parties in interest to the Plan are subject to appropriate equitable relief including disgorgement of any profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring Plan assets and consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

### COUNT XI

**Causing and Engaging in Prohibited Transactions Forbidden by
29 U.S.C. §§ 1106(a)–(b) for the 2017 ESOP Transaction
Against GreatBanc**

492.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

493.     Under 29 U.S.C. §§ 1106(a) and (b), fiduciaries are prohibited from causing plans to engage in transactions with parties in interest and fiduciaries that are expressly prohibited and are considered "per se" violations because they entail a high potential for abuse and injury to a plan. *See supra* ¶ 328 through ¶ 333.

494.     GreatBanc, as the Plan's discretionary trustee, was a fiduciary under 29 U.S.C. § 1103(a) and 29 U.S.C. § 1002(21) with regard to the 2017 ESOP Transaction when:

(a)     GreatBanc was the discretionary trustee under the terms of the 2013 ESOP Trust Agreement, as amended;

(b)     GreatBanc's fiduciary responsibilities were listed in the 2013 ESOP Trust Agreement, as amended;

(c)     The 2017 Plan Document recognized that a trustee to the Plan would be a fiduciary;

(d)     GreatBanc executed the Redemption Agreement on behalf of the ESOP;

(e)     GreatBanc had the authority to appoint and remove fiduciaries to the ESOP;

(f)     GreatBanc had the authority to appoint members of the MS Management Board of Directors; and

(g)     GreatBanc had the authority to appoint members of the MS Capital Board of Directors.

495.     GreatBanc caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A). 29 U.S.C. § 1106(a)(1)(A) prohibits a fiduciary from causing a plan to engage in a sale or exchange of any property with a party in interest. Here, the 2017 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(A).

496.    GreatBanc caused the ESOP to sell property of the Plan, MS Capital stock, to MS Capital. The Plan received less than adequate consideration for this exchange.

497.    MS Capital was a party in interest to the ESOP at the time of the 2017 ESOP Transaction.

498.    GreatBanc caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(D). 29 U.S.C. § 1106(a)(1)(D) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes a direct or indirect transfer of plan assets to, or use by or for the benefit of, a party in interest. Here, the 2017 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(D).

499.    GreatBanc (1) caused the ESOP to directly transfer property of the Plan, MS Capital stock, to MS Capital and (2) caused the ESOP to indirectly transfer property of the Plan, MS Capital stock, to and for the use and benefit of Eilermann, Arri, Schindler, and Todt.

500.    MS Capital, Eilermann, Arri, Schindler, and Todt were all parties in interest to the ESOP at the time of the 2017 ESOP Transaction.

501.    GreatBanc caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(b). 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account", "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." Here, the 2017 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(b)(2).

502.    GreatBanc, in violation of 29 U.S.C. § 1106(b)(2), acted on behalf of MS Capital, Eilermann, Arri, Schindler, and Todt in connection with the 2017 ESOP Transaction by causing the Plan to sell MS Capital stock to MS Capital at a price below fair market value. This greatly benefited MS Capital, Eilermann, Arri, Schindler, and Todt as they ultimately took control and ownership of MS Capital after the 2017 ESOP Transaction, to the substantial detriment of the Plan, even though GreatBanc, as a fiduciary to the Plan, was required to act in the best interests of the Plan.

503.    GreatBanc has caused losses to the Plan and MS Capital, Eilermann, Arri, Schindler, and Todt have profited by the prohibited transactions described in this count in an amount to be proved specifically at trial.

504.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

505.    GreatBanc, is personally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

506.    The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT XII

**Causing and Engaging in Prohibited Transactions Forbidden by
29 U.S.C. §§ 1106(a)–(b) for the 2017 ESOP Transaction
Against MS Capital, Eilermann, and Arri**

507. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

508. Under 29 U.S.C. §§ 1106(a) and (b), fiduciaries are prohibited from causing plans to engage in transactions with parties in interest and fiduciaries that are expressly prohibited and are considered "per se" violations because they entail a high potential for abuse and injury to a plan. *See supra* ¶ 328 through ¶ 333.

509. MS Capital, Eilermann, and Arri were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the 2017 ESOP Transaction when:

(a) MS Capital was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a) under the terms of the 2013 Plan Document and the 2017 Plan Document;

(b) MS Capital was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A) under the terms of the 2013 Plan Document and the 2017 Plan Document;

(c) MS Capital, as a corporate entity, cannot act on its own without any human counterpart. In this regard, MS Capital could only act through its Board of Directors;

(d) Article 17.12 of the 2013 Plan Document and 2017 Plan Document authorized the MS Capital Board of Directors to act on behalf of MS Capital as the named fiduciary and plan administrator of the Plan;

(e)     According to 29 C.F.R. § 2509.75-8(D-4) "Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries… to the extent that they have responsibility for the functions described in 29 U.S.C. § 1002(21)(A)";

(f)     Eilermann and Arri were the only members of the MS Capital Board of Directors from December 31, 2013 through the effective termination of the Plan;

(g)     Eilermann and Arri, as Directors, carried out all acts of MS Capital in its role as named fiduciary and plan administrator to the Plan from December 31, 2013 through the effective termination of the Plan;

(h)     GreatBanc recognized the fiduciary role of MS Capital and Arri when it delivered the annual valuation report prepared by Stern Brother to Arri when it stated: "This report is being delivered to you in your capacity as a plan fiduciary";

(i)     Eilermann and Arri had the responsibility of recommending the removal of members of the MS Capital Board of Directors;

(j)     Eilermann and Arri, as Directors, executed the Redemption Agreement on behalf of MS Management;

(k)     Arri, as a Director of MS Capital, executed the Second Amendment to the 2013 ESOP Trust Agreement;

(l)     Eilermann and Arri executed the Unanimous Written Consent of the Board of Directors of MS Capital dated November 30, 2017 on behalf of MS Capital authorizing MS Capital to enter into the Redemption Agreement;

(m)   Arri, on behalf of MS Capital, executed the Second Amendment to Trustee Engagement Agreement dated November 20, 2017 which appointed and authorized GreatBanc to consider the 2017 ESOP Transaction;

(n)   Arri agreed and accepted the agreement with Stern Brothers who was hired to provide an opinion on the fairness of the 2017 ESOP Transaction and provide an opinion on the value of MS Capital stock as of November 30, 2017;

(o)   Eilermann and Arri executed the Assignment and Assumption Agreement on behalf of MS Management;

(p)   MS Capital, Eilermann, and Arri had the authority to appoint and remove fiduciaries to the ESOP;

(q)   MS Capital, Eilermann, and Arri had the authority to remove GreatBanc as trustee;

(r)   Eilermann executed the December 27, 2013 ESOP Trust Agreement as a Director of MS Management;

(s)   Eilermann and Arri executed Amendment Number One to the December 27, 2013 ESOP Trust Agreement;

(t)   MS Capital, Eilermann, and Arri provided information to GreatBanc and Stern Brothers for consideration as part of the 2013 ESOP Transaction; and

(u)   Eilermann and Arri were the only managers of MS Companies, LLC and Eilermann and Arri had direct control over the value of the MS Capital stock as managers of MS Companies when (1) they had total discretion to award additional Class B and Class C Units which directly reduced the income and equity attributable to the Class A Units held by MS Capital and (2) Stern Brothers

used the reduced income and equity amounts in calculating the value of MS Capital stock in 2013, 2014, 2015, 2016, and 2017.

510.     MS Capital, Eilermann, and Arri caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(A). 29 U.S.C. § 1106(a)(1)(A) prohibits a fiduciary from causing a plan to engage in a sale or exchange of any property with a party in interest. Here, the 2017 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(A).

511.     MS Capital, Eilermann, and Arri caused the ESOP to sell property of the Plan, MS Capital stock, to MS Capital.

512.     MS Capital was a party in interest to the ESOP at the time of the 2017 ESOP Transaction.

513.     MS Capital, Eilermann, and Arri caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(D). 29 U.S.C. § 1106(a)(1)(D) prohibits a fiduciary from causing a plan to engage in a transaction that constitutes a direct or indirect transfer of plan assets to, or use by or for the benefit of, a party in interest. Here, the 2017 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(a)(1)(D).

514.     MS Capital, Eilermann, and Arri (1) caused the ESOP to directly transfer property of the Plan, MS Capital stock, to MS Capital and (2) caused the ESOP to indirectly transfer property of the Plan, MS Capital stock, to and for the use and benefit of Eilermann, Arri, Schindler, and Todt.

515.     MS Capital, Eilermann, Arri, Schindler, and Todt were all parties in interest to the ESOP at the time of the 2017 ESOP Transaction.

516.     MS Capital, Eilermann, and Arri caused the Plan to engage in prohibited transactions in violation of 29 U.S.C. § 1106(b). 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account", "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." Here, the 2017 ESOP Transaction was a prohibited transaction under 29 U.S.C. § 1106(b)(1), (2), and (3).

517.     MS Capital, Eilermann, and Arri, in violation of 29 U.S.C. § 1106(b)(1), dealt with the assets of the Plan in their own interest and for their own account when they caused the Plan to sell MS Capital stock to MS Capital at a price below fair market value. Eilermann and Arri immediately upon the transfer of MS Capital stock to MS Capital, took ownership and control of MS Capital.

518.     MS Capital, Eilermann, and Arri, in violation of 29 U.S.C. § 1106(b)(2), acted on behalf of MS Capital, Eilermann, Arri, Schindler, and Todt in connection with the 2017 ESOP Transaction by causing the Plan to sell MS Capital stock to MS Capital at a price below fair market value. This greatly benefited MS Capital, Eilermann, Arri, Schindler, and Todt as they ultimately took control and ownership of MS Capital after the 2017 ESOP Transaction, to the substantial detriment of the Plan, even though MS Capital, Eilermann, and Arri, as fiduciaries to the Plan, were required to act in the best interests of the Plan.

519.     MS Capital, Eilermann, and Arri, in violation of 29 U.S.C. § 1106(b)(3), received consideration for their own personal account from GreatBanc, MS Capital, Eilermann, and Arri when they caused the Plan to sell MS Capital stock to MS Capital at a price below fair market

value and for the benefit of MS Capital, Eilermann, and Arri as they ultimately took control and ownership of MS Capital after the 2017 ESOP Transaction.

520.     MS Capital, Eilermann, and Arri have caused losses to the Plan and have profited for themselves by the prohibited transactions described in this count in an amount to be proved specifically at trial.

521.     29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

522.     MS Capital, Eilermann, and Arri, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

523.     The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT XIII

### Violation of 29 U.S.C. § 1104(a)(1) for the 2017 ESOP Transaction Against GreatBanc

524.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

525.    29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

526.    These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

527.    The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan. *See supra* ¶ 323.

528.    When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties. *See supra* ¶ 324.

529.    GreatBanc, as the Plan's discretionary trustee, was a fiduciary under 29 U.S.C. § 1103(a) and 29 U.S.C. § 1002(21) with regard to the 2017 ESOP Transaction when:

(a)    GreatBanc was the discretionary trustee under the terms of the 2013 ESOP Trust Agreement, as amended;

(b)    GreatBanc's fiduciary responsibilities were listed in the 2013 ESOP Trust Agreement, as amended;

(c)    The 2017 Plan Document recognized that a trustee to the Plan would be a fiduciary;

(d)    GreatBanc executed the Redemption Agreement on behalf of the ESOP;

(e)     GreatBanc had the authority to appoint and remove fiduciaries to the ESOP;

(f)     GreatBanc had the authority to appoint members of the MS Management Board of Directors; and

(g)     GreatBanc had the authority to appoint members of the MS Capital Board of Directors.

530.    As a fiduciary of the Plan, GreatBanc was required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

531.    The documents governing the Plan, including the 2013 ESOP Trust Agreement, as amended, and the 2017 Plan Document, as amended, required GreatBanc to comply with ERISA's stringent fiduciary standards.

532.    As a fiduciary of the Plan, GreatBanc was required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to the 2017 ESOP Transaction. *See supra* ¶ 323.

533.    As a fiduciary of the Plan, GreatBanc was required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration, or fair market value, for any Plan assets sold or exchanged. *See supra* ¶ 324.

534.    GreatBanc breached its fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when it:

(a)     Caused the Plan to sell MS Capital stock to MS Capital for less than adequate consideration and at a price below fair market value in the 2017 ESOP Transaction;

(b)    Failed to make a good faith determination of fair market value of MS Capital stock in the 2017 ESOP Transaction;

(c)    Failed to independently investigate the information provided by Eilermann and Arri in the Early October Proposal and Early October Presentation before arriving at the Below FMV Sale Price;

(d)    Failed to engage in a thorough level of due diligence prior to arriving at a sale price;

(e)    Failed to obtain an updated valuation report from an independent and qualified valuation expert before agreeing on a sale price;

(f)    Failed to consider alternative purchasers of MS Capital stock including, but not limited to, publicly traded competitors, privately held competitors, or other potential buyers such as private equity firms;

(g)    Failed to request or receive third party bids to determine the fair market value of MS Capital stock;

(h)    Failed to hire an independent investment banker that would act on behalf of the Plan to explore alternative purchasers;

(i)    Failed to consider MS Enterprise projections that called for increased revenues in 2017 and beyond in agreeing on a below fair market value sale price;

(j)    Failed to consider that the liquidation value of MS Capital would be higher than the consideration the ESOP would receive;

(k)    Failed to independently investigate the information provided by Eilermann and Arri in the Early October Proposal and Early October Presentation before arriving at the Below FMV Sale Price;

(l)      Failed to engage in a thorough level of due diligence prior to arriving at a sale price;

(m)      Failed to obtain an updated valuation report from an independent and qualified valuation expert before agreeing on a sale price;

(n)      Failed to consider alternative purchasers of MS Capital stock including, but not limited to, publicly traded competitors, privately held competitors, or other potential buyers such as private equity firms;

(o)      Failed to request or receive third party bids to determine the fair market value of MS Capital stock;

(p)      Failed to hire an independent investment banker that would act on behalf of the Plan to explore alternative purchasers;

(q)      Failed to consider MS Enterprise projections that called for increased revenues in 2017 and beyond in agreeing on a below fair market value sale price;

(r)      Failed to consider that the liquidation value of MS Capital would be higher than the consideration the ESOP would receive;

(s)      Failed to prevent the execution of the Redemption Agreement;

(t)      Failed to prevent execution of the Unanimous Written Consent of the Board of Directors of MS Capital dated November 30, 2017;

(u)      Failed to prevent the execution of the November 28, 2017 subscription agreement between MS Capital and Eilermann;

(v)      Failed to prevent the execution of the November 28, 2017 subscription agreement between MS Capital and Arri;

(w)      Failed to appoint independent members of the Board of Directors of MS Capital;

(x)    Failed to ensure that Stern Brothers was independent from MS Capital, MS Companies, LLC, Eilermann, and Arri;

(y)    Failed to hire an investment bank for the benefit of the Plan;

(z)    Failed to prevent Eilermann and Arri from setting in motion the 2017 ESOP Transaction;

(aa)   Failed to remove Eilermann and Arri as members of the Board of Directors of MS Capital;

(bb)   Failed to remove MS Capital, Eilermann, and Arri as fiduciaries to the ESOP;

(cc)   Failed to prevent Stern Brothers from providing a faulty and inadequate opinion of value;

(dd)   Failed to prevent the value of MS Capital stock from being valued below fair market value;

(ee)   Failed to prevent the 2017 ESOP Transaction from being for the benefit of anyone other than the ESOP;

(ff)   Failed to determine that the 2017 ESOP Transaction was in the best interests of the ESOP;

(gg)   Failed to prevent the dilution of value of MS Capital stock after the 2013 ESOP Transaction;

(hh)   Failed to prevent the loss in value to the ESOP described in the Loss of Value from 2013 to 2017;

(ii)   Failed to prevent the synthetic equity paid to Eilermann, Arri, Schindler, Berger, and Todt;

(jj)     Failed to prevent Eilermann and Arri from controlling the value of MS Capital stock inside the ESOP;

(kk)    Failed to prevent indemnification provisions that could result in the reduction of value to the ESOP;

(ll)     Failed to ensure MS Capital, Eilermann, and Arri provided truthful information;

(mm)  Failed to ensure the governing plan documents were followed;

(nn)    Failed to ensure that committees required by the governing plan documents were created;

(oo)    Failed to prevent improper and faulty valuation methods from being used that resulted in lower values of the stock held by the ESOP as compared to prudent and appropriate valuation methods;

(pp)    Failed to inform the ESOP participants that Eilermann, Arr, Schindler, and Todt already owned 42.7% of the McBride Enterprise; and

(qq)    Failed to inform participants about the loss to the ESOP and the improper benefit to Eilermann, Arri, Schindler, Berger, and Todt.

535.    GreatBanc has caused losses to the Plan and MS Capital, Eilermann, and Arri have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

536.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been

made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

537.     GreatBanc, is personally liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

538.     The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT XIV

### Violation of 29 U.S.C. § 1104(a)(1) for the 2017 ESOP Transaction Against MS Capital, Eilermann, and Arri

539.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

540.     29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

541.     These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

542.     The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan. *See supra* ¶ 323.

543.     When plan assets are sold or exchanged, the duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties. *See supra* ¶ 324.

544.     MS Capital, Eilermann, and Arri were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the 2017 ESOP Transaction when:

(a)     MS Capital was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a) under the terms of the 2013 Plan Document and the 2017 Plan Document;

(b)     MS Capital was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A) under the terms of the 2013 Plan Document and the 2017 Plan Document;

(c)     MS Capital, as a corporate entity, cannot act on its own without any human counterpart. In this regard, MS Capital could only act through its Board of Directors;

(d)     Article 17.12 of the 2013 Plan Document and 2017 Plan Document authorized the MS Capital Board of Directors to act on behalf of MS Capital as the named fiduciary and plan administrator of the Plan;

(e)     According to 29 C.F.R. § 2509.75-8(D-4) "Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries… to the extent that they have responsibility for the functions described in 29 U.S.C. § 1002(21)(A)";

(f)     Eilermann and Arri were the only members of the MS Capital Board of Directors from December 31, 2013 through the effective termination of the Plan;

(g)    Eilermann and Arri, as Directors, carried out all acts of MS Capital in its role as named fiduciary and plan administrator to the Plan from December 31, 2013 through the effective termination of the Plan;

(h)    GreatBanc recognized the fiduciary role of MS Capital and Arri when it delivered the annual valuation report prepared by Stern Brother to Arri when it stated: "This report is being delivered to you in your capacity as a plan fiduciary";

(i)    Eilermann and Arri had the responsibility of recommending the removal of members of the MS Capital Board of Directors;

(j)    Eilermann and Arri, as Directors, executed the Redemption Agreement on behalf of MS Management;

(k)    Arri, as a Director of MS Capital, executed the Second Amendment to the 2013 ESOP Trust Agreement;

(l)    Eilermann and Arri executed the Unanimous Written Consent of the Board of Directors of MS Capital dated November 30, 2017 on behalf of MS Capital authorizing MS Capital to enter into the Redemption Agreement;

(m)    Arri, on behalf of MS Capital, executed the Second Amendment to Trustee Engagement Agreement dated November 20, 2017 which appointed and authorized GreatBanc to consider the 2017 ESOP Transaction;

(n)    Arri agreed and accepted the agreement with Stern Brothers who was hired to provide an opinion on the fairness of the 2017 ESOP Transaction and provide an opinion on the value of MS Capital stock as of November 30, 2017;

(o)    Eilermann and Arri executed the Assignment and Assumption Agreement on behalf of MS Management;

(p)    MS Capital, Eilermann, and Arri had the authority to appoint and remove fiduciaries to the ESOP;

(q)    MS Capital, Eilermann, and Arri had the authority to remove GreatBanc as trustee;

(r)    Eilermann executed the December 27, 2013 ESOP Trust Agreement as a Director of MS Management;

(s)    Eilermann and Arri executed Amendment Number One to the December 27, 2013 ESOP Trust Agreement;

(t)    MS Capital, Eilermann, and Arri provided information to GreatBanc and Stern Brothers for consideration as part of the 2013 ESOP Transaction; and

(u)    Eilermann and Arri were the only managers of MS Companies, LLC and Eilermann and Arri had direct control over the value of the MS Capital stock as managers of MS Companies when (1) they had total discretion to award additional Class B and Class C Units which directly reduced the income and equity attributable to the Class A Units held by MS Capital and (2) Stern Brothers used the reduced income and equity amounts in calculating the value of MS Capital stock in 2013, 2014, 2015, 2016, and 2017.

545.    As a fiduciaries of the Plan, MS Capital, Eilermann, and Arri were required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

546.    The documents governing the Plan, including the 2013 ESOP Trust Agreement, as amended, and the 2017 Plan Document, as amended, required MS Capital, Eilermann, and Arri to comply with ERISA's stringent fiduciary standards.

547. As a fiduciaries of the Plan, MS Capital, Eilermann, and Arri were required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to the 2017 ESOP Transaction. *See supra* ¶ 323.

548. As a fiduciaries of the Plan, MS Capital, Eilermann, and Arri were required to strictly apply ERISA's fiduciary duties in ensuring the Plan received no less than adequate consideration, or fair market value, for any Plan assets sold or exchanged. *See supra* ¶ 324.

549. MS Capital, Eilermann, and Arri breached their fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when it:

(a) Caused the Plan to sell MS Capital stock to MS Capital for less than adequate consideration and at a price below fair market value in the 2017 ESOP Transaction;

(b) Failed to make a good faith determination of fair market value of MS Capital stock in the 2017 ESOP Transaction;

(c) Failed to request or receive third party bids to determine the fair market value of MS Capital stock;

(d) Failed to prevent the execution of the Redemption Agreement;

(e) Failed to prevent execution of the Unanimous Written Consent of the Board of Directors of MS Capital dated November 30, 2017;

(f) Failed to prevent the execution of the November 28, 2017 subscription agreement between MS Capital and Eilermann;

(g) Failed to prevent the execution of the November 28, 2017 subscription agreement between MS Capital and Arri;

(h) Failed to appoint independent members of the Board of Directors of MS Capital;

(i)    Failed to ensure that Stern Brothers was independent from MS Capital, MS Companies, LLC, Eilermann, and Arri;

(j)    Failed to hire an investment bank for the benefit of the Plan;

(k)    Failed to prevent Eilermann and Arri from setting in motion the 2017 ESOP Transaction;

(l)    Failed to remove Eilermann and Arri as members of the Board of Directors of MS Capital;

(m)    Failed to remove MS Capital, Eilermann, and Arri as fiduciaries to the ESOP;

(n)    Failed to prevent Stern Brothers from providing a faulty and inadequate opinion of value;

(o)    Failed to prevent the value of MS Capital stock from being valued below fair market value;

(p)    Failed to prevent the 2017 ESOP Transaction from being for the benefit of anyone other than the ESOP;

(q)    Failed to determine that the 2017 ESOP Transaction was in the best interests of the ESOP;

(r)    Failed to prevent the dilution of value of MS Capital stock after the 2013 ESOP Transaction;

(s)    Failed to prevent the loss in value to the ESOP described in the Loss of Value from 2013 to 2017;

(t)    Failed to prevent the synthetic equity paid to Eilermann, Arri, Schindler, Berger, and Todt;

(u)    Failed to prevent Eilermann and Arri from controlling the value of MS Capital stock inside the ESOP;

(v)    Failed to prevent indemnification provisions that may result in the reduction of value to the ESOP;

(w)    Failed to ensure MS Capital, Eilermann, and Arri provided truthful information;

(x)    Failed to ensure the governing plan documents were followed;

(y)    Failed to ensure that committees required by the governing plan documents were created;

(z)    Failed to prevent improper and faulty valuation methods from being used that resulted in lower values of the stock held by the ESOP as compared to prudent and appropriate valuation methods;

(aa)    Failed to inform the ESOP participants that Eilermann, Arr, Schindler, and Todt already owned 42.7% of the McBride Enterprise;

(bb)    Failed to inform participants about the loss to the ESOP and the improper benefit to Eilermann, Arri, Schindler, Berger, and Todt; and

(cc)    Failed to prudently monitor and remove GreatBanc as trustee of the Plan.

550.    MS Capital, Eilermann, and Arri have caused losses to the Plan and MS Capital, Eilermann, and Arri have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

551.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been

made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

552.    MS Capital, Eilermann, and Arri, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

553.    The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT XV

### Violation of 29 U.S.C. § 1105(a), Co-Fiduciary Liability, for the 2017 ESOP Transaction Against GreatBanc, MS Capital, Eilermann, and Arri

554.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

555.    29 U.S.C. §1105(a), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary, in addition to any liability which he may have under any other provision of ERISA, if:

(1)    he participates knowingly in or knowingly undertakes to conceal an act or omission of such other fiduciary knowing such act or omission is a breach;

(2)    by his failure to comply with 29 U.S.C. § 1104(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)    he knows of a breach by another fiduciary and fails to make reasonable efforts to remedy it.

556.    Liability under 29 U.S.C. 1105(a) is known as co-fiduciary liability. *See supra* ¶ 325 through ¶ 327.

*GreatBanc*

557.    GreatBanc was a fiduciary to the Plan as described in paragraphs 494 and 529 of the SAC.

558.    GreatBanc knowingly participated in the breaches of MS Capital, Eilermann, and Arri in Count XII and Count XIV when they performed the actions described in the 2017 ESOP Transaction, Count XI, and Count XIII including but not limited to the breaches and failures described in paragraph 534.

559.    GreatBanc enabled the breaches of MS Capital, Eilermann, and Arri in Count XII and Count XIV by their own breaches of ERISA when they committed the breaches of fiduciary duty described in Count XI and Count XIII;

560.    GreatBanc knew of the breaches of MS Capital, Eilermann, and Arri in Count XII and Count XIV and failed to make reasonable efforts to remedy it when they performed the actions described in the 2017 ESOP Transaction, Count XI, and Count XIII including but not limited to the breaches and failures described in paragraph 534.

*MS Capital*

561.    MS Capital was a fiduciary to the Plan as described in paragraphs 509 and 544 of the SAC.

562.    MS Capital knowingly participated in (1) the breaches of GreatBanc in Count XI and Count XIII and (2) the breaches of Eilermann, and Arri in Count XII and Count XIV when they performed the actions described in the 2017 ESOP Transaction, Count XII, and Count XIV including but not limited to the breaches and failures described in paragraph 549.

563.    MS Capital enabled (1) the breaches of GreatBanc in Count XI and Count XIII and (2) the breaches of Eilermann and Arri in Count XII and Count XIV by their own breaches

of ERISA when they committed the breaches of fiduciary duty described in Count XII and Count XIV;

564.    MS Capital knew of (1) the breaches of GreatBanc in Count XI and Count XIII and (2) the breaches of Eilermann and Arri in Count XII and Count XIV and failed to make reasonable efforts to remedy it when they performed the actions described in the 2017 ESOP Transaction, Count XII, and Count XIV including but not limited to the breaches and failures described in paragraph 549.

*Eilermann*

565.    Eilermann was a fiduciary to the Plan as described in paragraphs 509 and 544 of the SAC.

566.    Eilermann knowingly participated in (1) the breaches of GreatBanc in Count XI and Count XIII and (2) the breaches of MS Capital and Arri in Count XII and Count XIV when they performed the actions described in the 2017 ESOP Transaction, Count XII, and Count XIV including but not limited to the breaches and failures described in paragraph 549.

567.    Eilermann enabled (1) the breaches of GreatBanc in Count XI and Count XIII and (2) the breaches of MS Capital and Arri in Count XII and Count XIV by his own breaches of ERISA when he committed the breaches of fiduciary duty described in Count XII and Count XIV;

568.    Eilermann knew of (1) the breaches of GreatBanc in Count XI and Count XIII and (2) the breaches of MS Capital and Arri in Count XII and Count XIV and failed to make reasonable efforts to remedy it when they performed the actions described in the 2017 ESOP Transaction, Count XII, and Count XIV including but not limited to the breaches and failures described in paragraph 549.

*Arri*

569.    Arri was a fiduciary to the Plan as described in paragraphs 509 and 544 of the SAC.

570.    Arri knowingly participated in (1) the breaches of GreatBanc in Count XI and Count XIII and (2) the breaches of MS Capital and Eilermann in Count XII and Count XIV when they performed the actions described in the 2017 ESOP Transaction, Count XII, and Count XIV including but not limited to the breaches and failures described in paragraph 549.

571.    Arri enabled (1) the breaches of GreatBanc in Count XI and Count XIII and (2) the breaches of MS Capital and Eilermann in Count XII and Count XIV by his own breaches of ERISA when he committed the breaches of fiduciary duty described in Count XII and Count XIV;

572.    Arri knew of (1) the breaches of GreatBanc in Count XI and Count XIII and (2) the breaches of MS Capital and Eilermann in Count XII and Count XIV and failed to make reasonable efforts to remedy it when they performed the actions described in the 2017 ESOP Transaction, Count XII, and Count XIV including but not limited to the breaches and failures described in paragraph 549.

573.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

574. GreatBanc, MS Capital, Eilermann, and Arri, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

575. The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## COUNT XVI

**Knowing Participation in Breaches of Fiduciary Duties & Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3) for the 2017 ESOP Transaction Against MS Capital, Eilermann, and Arri**

576. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

577. 29 U.S.C. § 1132(a)(3) permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

578. The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under 29 U.S.C. § 1132(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Soloman Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

579. MS Capital, Eilermann, and Arri were all parties in interest to the Plan under 29 U.S.C. § 1002(14).

580. As a result of the fiduciary breaches and prohibited transactions described in Counts XI through XV, MS Capital, Eilermann, and Arri received ownership and control of MS

Capital stock as a result of the 2017 ESOP Transaction that otherwise would have been Plan assets to be used exclusively for the benefit of the Plan participants and beneficiaries.

581.    MS Capital, Eilermann, and Arri had actual knowledge of the circumstances that made the transactions unlawful in Counts XI through XV, when they performed the actions described in the 2017 ESOP Transaction, Count XII, and Count XIV including but not limited to the breaches and failures described in paragraph 549.

582.    Despite knowledge of these the circumstances, MS Capital, Eilermann, and Arri proceeded to knowingly participate in the breaches described in Counts XI through XV, when they performed the actions described in the 2017 ESOP Transaction, Count XII, and Count XIV including but not limited to the breaches and failures described in paragraph 549.

583.    MS Capital, Eilermann, and Arri have profited from the fiduciary breaches described in Counts XI through XV in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the MS Capital stock and consideration that belong to the Plan.

584.    By knowingly participating in these breaches and violations, MS Capital, Eilermann, and Arri as parties in interest to the Plan are subject to appropriate equitable relief including disgorgement of any profits, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the MS Capital stock and consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## COUNT XVII

**Violation of 29 U.S.C. § 1104(a)(1) for Failure to Monitor and Terminate GreatBanc as Trustee to the Plan Against MS Capital, Eilermann, and Arri**

585.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

586.    29 U.S.C. § 1104(a)(1) requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administration of the plan, (B) with "care, skill, prudence, and diligence" and (D) to act in accordance with the documents and instruments governing the plan insofar as those documents and instruments are consistent with ERISA.

587.    These duties are known as the duty of loyalty, the duty of prudence, and duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

588.    The duty of loyalty, the duty of prudence, and the duty to follow the plan documents require strict application of the fiduciary duties to a fiduciary's responsibilities regarding a plan. *See supra* ¶ 323.

589.    MS Capital, Eilermann, and Arri were fiduciaries under 29 U.S.C. § 1102(a), 29 U.S.C. § 1002(16)(A), and 29 U.S.C. § 1002(21) with regard to the monitoring and termination of GreatBanc when:

(a)    MS Capital was the named fiduciary of the Plan as defined in 29 U.S.C. § 1102(a) under the terms of the 2013 Plan Document and the 2017 Plan Document;

(b)    MS Capital was the plan administrator of the Plan as defined in 29 U.S.C. § 1002(16)(A) under the terms of the 2013 Plan Document and the 2017 Plan Document;

(c)    MS Capital, as a corporate entity, cannot act on its own without any human counterpart. In this regard, MS Capital could only act through its Board of Directors;

(d)    Article 17.12 of the 2013 Plan Document and 2017 Plan Document authorized the MS Capital Board of Directors to act on behalf of MS Capital as the named fiduciary and plan administrator of the Plan;

(e)    According to 29 C.F.R. § 2509.75-8(D-4) "Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries… to the extent that they have responsibility for the functions described in 29 U.S.C. § 1002(21)(A)";

(f)    Eilermann and Arri were the only members of the MS Capital Board of Directors from December 31, 2013 through the effective termination of the Plan;

(g)    Eilermann and Arri, as Directors, carried out all acts of MS Capital in its role as named fiduciary and plan administrator to the Plan from December 31, 2013 through the effective termination of the Plan;

(h)    GreatBanc recognized the fiduciary role of MS Capital and Arri when it delivered the annual valuation report prepared by Stern Brother to Arri when it stated: "This report is being delivered to you in your capacity as a plan fiduciary";

(i)    Arri, as a Director of MS Capital, executed the Second Amendment to the 2013 ESOP Trust Agreement;

(j)    Arri, on behalf of MS Capital, executed the Second Amendment to Trustee Engagement Agreement dated November 20, 2017 which appointed and authorized GreatBanc to consider the 2017 ESOP Transaction;

(k)    MS Capital, Eilermann, and Arri had the authority to appoint and remove fiduciaries to the ESOP;

(l)     MS Capital, Eilermann, and Arri had the authority to remove GreatBanc as trustee;

(m)     Eilermann executed the December 27, 2013 ESOP Trust Agreement as a Director of MS Management; and

(n)     Eilermann and Arri executed Amendment Number One to the December 27, 2013 ESOP Trust Agreement.

590.     As a fiduciaries of the Plan, MS Capital, Eilermann, and Arri were required to comply with the duty of loyalty, the duty of prudence, and the duty to follow the plan documents. *See supra* ¶ 312 through ¶ 322.

591.     The documents governing the Plan, including the 2013 ESOP Trust Agreement, as amended, the 2013 Plan Document, as amended, and the 2017 Plan Document, as amended, required MS Management, MS Capital, Eilermann, and Arri to comply with ERISA's stringent fiduciary standards.

592.     As a fiduciaries of the Plan, MS Management, MS Capital, Eilermann, and Arri were required to strictly apply ERISA's fiduciary duties in carrying out their fiduciary responsibilities with regard to monitoring and terminating GreatBanc as trustee. *See supra* ¶ 323.

593.     MS Capital, Eilermann, and Arri breached their fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) when they:

(a)     Failed to properly monitor GreatBanc as trustee;

(b)     Failed to remove GreatBanc as trustee after their actions and fiduciary breaches as part of the 2013 ESOP Transaction;

(c)     Failed to remove GreatBanc as trustee after their actions and fiduciary breaches as part of the Loss of Value from 2013 to 2017;

(d)     Failed to remove GreatBanc as trustee after their actions and fiduciary breaches as part of the 2017 ESOP Transaction;

(e)     Failed to remove GreatBanc after they were repeatedly sued by other ESOP participants and the DOL for failures under ERISA;

(f)     Failed to remove GreatBanc after they entered into the settlement agreement with the DOL in 2014;

(g)     Failed to remove GreatBanc after they knew or should have known that GreatBanc is not properly capitalized to protect plans they act as fiduciaries to in the case of losses to the plan; and

(h)     Failed to remove GreatBanc when the amount covered by their fiduciary insurance policy was reduced from earlier years.

594.    MS Capital, Eilermann, and Arri have caused losses to the Plan and MS Capital, Eilermann, and Arri have profited by the breaches of fiduciary duty described in this count in an amount to be proved specifically at trial.

595.    29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits which have been made through use of assets of the plan, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

596.    MS Capital, Eilermann, and Arri, are personally, and jointly and severally, liable under 29 U.S.C. §§ 1109(a), 1132(a)(2) and (a)(3) to make good to the Plan the losses to the Plan resulting from the aforementioned breaches and to restore to the Plan any profits made through

the use of Plan assets or through their control of the Plan, and are subject to other equitable or remedial relief as appropriate.

597.    The losses suffered by the participants in the Plan and the profits to the fiduciaries and parties in interest are coterminous with those of the Plan, and each Plaintiff's individual loss is proportional to the losses of fellow participants.

## CLASS ACTION ALLEGATIONS

598.    Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the McBride & Son Employee Stock Ownership Plan, and the beneficiaries of such participants, at any time between March 30, 2013 (or earlier as permitted by the applicable statute of limitation) and December 15, 2017. Excluded from the Class are Eilermann and Arri and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

599.    The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiffs at this time, the Plan's Form 5500 filings indicate that as of December 31, 2015, there were 171 participants and deceased participants whose beneficiaries were receiving or entitled to receive benefits in the Plan and, as of December 31, 2016, there were 169 such individuals.

600.    Questions of law and fact common within the Class as a whole include, but are not limited to, the following:

> A.    Whether GreatBanc served as Trustee to the Plan for the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and the 2017 ESOP Transaction;

> B.    Whether GreatBanc, MS Management, MS Capital, Eilermann, and Arri were ERISA fiduciaries of the Plan;

C.  Whether GreatBanc, MS Management, MS Capital, Eilermann, and Arri caused the Plan to engage in prohibited transactions under ERISA by causing the 2013 ESOP Transaction and the 2017 ESOP Transaction;

D.  Whether GreatBanc, MS Management, MS Capital, Eilermann, and Arri engaged in good faith valuations of the stock held by the Plan in connection with the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and the 2017 ESOP Transaction;

E.  Whether GreatBanc, MS Management, MS Capital, Eilermann, and Arri caused the Plan to receive less than fair market value for MS Capital stock in the 2017 ESOP Transaction and less than adequate consideration for the MS Companies, Inc. stock in the 2013 ESOP Transaction;

F.  Whether GreatBanc, MS Management, MS Capital, Eilermann, and Arri breached their fiduciary duties under ERISA with regard to the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and the 2017 ESOP Transaction;

G.  Whether MS Capital, Eilermann, and Arri, as parties in interest, knowingly participated in prohibited transactions and fiduciary breaches;

H.  Whether GreatBanc, MS Management, MS Capital, Eilermann, and Arri breached their co-fiduciary duties with respect to the 2013 ESOP Transaction, the Loss of Value from 2013 to 2017, and the 2017 ESOP Transaction.

I.  Whether MS Capital, Eilermann, and Arri breached their fiduciary duties in failing to remove GreatBanc as trustee;

J.  The proper valuation of the Plan's holdings in stock;

    K.  The amount of losses suffered by the Plan and its participants as a result of GreatBanc, MS Management, MS Capital, Eilermann, and Arri's ERISA violations;

    L.  The amount of profits gained by the Plan's fiduciaries and parties in interest as a result of GreatBanc, MS Management, MS Capital, Eilermann, and Arri's ERISA violations; and

    M.  The appropriate relief for Defendants' violations of ERISA.

601.    Plaintiffs' claims are typical of those of the Class. For example, Plaintiffs, like other Plan participants in the Class, suffered (1) a loss in the value of their Plan accounts when MS Companies, Inc. stock was exchanged for MS Capital stock; (2) a loss in the value of their Plan accounts from the excessive compensation and award of Class B and Class C Units described in the Loss of Value from 2013 to 2017; and (3) a diminution in the value of their Plan accounts because the Plan received a lower than fair market value price for MS Capital stock.

602.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

603.    Class certification of Plaintiffs' Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

604.    In the alternative, class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to each member of the Class, making appropriate declaratory and injunctive relief with respect to the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' violations of ERISA.

605.    The names and addresses of the Class members are available from Defendants and the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## ENTITLEMENT TO RELIEF

606.    By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled to sue each of the Defendants who are fiduciaries and/or parties in interest pursuant to 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in 29 U.S.C. § 1109, including for recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable relief as the Court may deem appropriate.

607.    By virtue of the violations set forth in the foregoing paragraphs, Plaintiffs and the Class are entitled pursuant to 29 U.S.C. § 1132(a)(3) to sue any of the Defendants for appropriate equitable relief to redress the wrongs described herein.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendants and for the following relief:

A.    Declare that Defendants GreatBanc, MS Management, MS Capital, Eilermann, and Arri breached their fiduciary duties under ERISA;

B.    Declare that Defendants GreatBanc, MS Management, MS Capital, Eilermann, and Arri caused the Plan to engage in and themselves engaged in prohibited transactions and thereby breached their duties under ERISA;

C.    Declare that Defendants MS Capital, Eilermann and Arri knowingly participated in the breaches of ERISA by Defendants GreatBanc, MS Management, MS Capital, Eilermann, and Arri;

D.    Declare that Defendants GreatBanc, MS Management, MS Capital, Eilermann, and Arri breached their co-fiduciary duties under ERISA;

E.    Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan those losses resulting from the breaches of ERISA and restore any profits it has made through use of assets of the Plan;

F.    Declare the 2013 ESOP Transaction to be a breach of fiduciary duty and prohibited transaction and (1) require any fiduciary or party in interest who profited or engaged in a prohibited transaction to disgorge any profits made, (2) declare a constructive trust over the proceeds of any such transaction, and (3) provide any other appropriate equitable relief, whichever is in the best interest of the Plan;

G.    Declare the Loss of Value from 2013 to 2017 to be a breach fiduciary duty and (1) require any fiduciary or party in interest who profited to disgorge any profits made, (2) declare a constructive trust over the profits, and (3) provide any other appropriate equitable relief, whichever is in the best interest of the Plan;

H.    Declare the 2017 ESOP Transaction to be a breach of fiduciary duty and prohibited transaction and (1) require any fiduciary or party in interest who

profited or engaged in a prohibited transaction to disgorge any profits made, (2) declare a constructive trust over the proceeds of any such transaction, and (3) provide any other appropriate equitable relief, whichever is in the best interest of the Plan;

I. Order Defendants to provide other appropriate equitable relief to the Plan, and any successor trust, and its participants and beneficiaries, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

J. Order the proceeds of any recovery for the Plan, and any successor trust, to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

K. Order the removal of any of the breaching fiduciaries from their position as fiduciaries for the Plan and enjoin any of the breaching fiduciaries from acting as fiduciaries for any plan that covers any McBride Enterprise employees or any members of the Class;

L. Appoint an Independent Fiduciary to manage the Plan to the extent necessary and the costs of such Independent Fiduciary to be paid for by any Defendants found to have breached their fiduciary duties or otherwise violated ERISA;

M. Order (1) a constructive trust be placed on any proceeds resulting from the breaches in Count I through Count XVII, (2) disgorgement of profits made by a breaching fiduciary or party in interest resulting from the breaches in Count I

through Count XVII, (3) any rescission as necessary resulting from the breaches in Count I through Count XVII, and/or (4) any other appropriate equitable relief against a breaching fiduciary or party in interest resulting from the breaches in Count I through Count XVII, whichever is in the best interest of the Plan;

N.    Order pursuant to 29 U.S.C. § 1056(d)(4) that any amount to be paid to the Plan accounts of the class can be satisfied by using or transferring any breaching fiduciary's ESOP account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability;

O.    Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

P.    Order Defendant GreatBanc to disgorge any fees it received in conjunction with its services as trustee for the Plan as well as any earnings and profits thereon;

Q.    Order Defendants to pay pre-judgment and post-judgment interest;

R.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives, and their counsel as class counsel; and

S.    Award such other and further relief as the Court deems equitable and just.

Dated: December 30, 2019            Respectfully submitted,

**BAILEY & GLASSER LLP**

By: /s/ Mark G. Boyko

    Mark G. Boyko (IL #6288036)
    mboyko@baileyglasser.com
    Bailey & Glasser LLP
    8012 Bonhomme Avenue, Suite 300
    Clayton, MO 63105

Telephone: (314) 863-5446
Facsimile: (314)-863-5483

Patrick O. Muench (IL #6290298)
pmuench@baileyglasser.com
Bailey & Glasser LLP
3930 N. Lowell Ave.
Chicago, IL 60641
Telephone: (847) 899-1646
Facsimile: (202) 463-2103

Ryan T. Jenny
rjenny@baileyglasser.com
Gregory Y. Porter (admitted *pro hac vice*)
gporter@baileyglasser.com
Bailey & Glasser LLP
1055 Thomas Jefferson St., NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Thomas E. Clark Jr. (IL #6294921)
tclark@wagnerlawgroup.com
Jordan D. Mamorsky (*pro hac vice* to be filed)
jmamorsky@wagnerlawgroup.com
The Wagner Law Group, PC
190 South LaSalle Street, Suite 2100
Chicago, IL 60603
Telephone: (314) 236-0065
Facsimile: (314) 236-5743

*Attorneys for Plaintiffs*