UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GODFREY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREATBANC TRUST COMPANY, et al., <br><br> Defendants. | Case No. 1:18-cv-07918 <br><br> Judge Matthew F. Kennelly <br><br> Magistrate Judge Michael T. Mason |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Pursuant to Fed. R. Civ. P. 37(a), and Local Civil Rule 37.2 of the U.S. District Court for the Northern District of Illinois, Plaintiffs move this Court for an Order requiring McBride Defendants to search for and produce the following documents:

(1) Audited Financial Statements for:

    a. McBride and Son Capital, Inc. for the years ending Dec. 31, 2017 and Dec. 31, 2018

    b. McBride and Son Companies, LLC for the years ending Dec. 31, 2017 and Dec. 31, 2018; and

    c. McBride and Son Properties, LLC for the year ending Dec. 31, 2018.[1]

---

[1] Pursuant to LR 37.2, the parties met and conferred by telephone on October 19, 2020 concerning the audited financial documents sought. *See* Declaration of Mark G. Boyko ("Boyko Decl."), at ¶ 5. The parties also exchanged meet and confer letters on October 16, 2020, October 26, 2020, November 16, 2020, and December 31, 2020. *Id.* The issues raised in this Motion were discussed and negotiated in good faith but the parties were unable to reach an accord. *Id.*

    (2)    Documents related to the reimbursement from corporate assets of expenses incurred by Defendants John Eilermann.[2]

## I. Audited Financial Statements

Following the October 6, 2020 deposition of McBride treasurer Andrea Templeton, on October 16, 2020 Plaintiffs requested that McBride Defendants produce audited financial statements for the years 2013 to 2018 for three McBride related entities: (1) McBride and Son Capital, Inc., (2) McBride and Son Companies, LLC, and (3) McBride and Son Properties, LLC.[3] The parties met and conferred about the production of the audited financial statements on October 19, 2020[4] and on October 26, 2020, Plaintiff sent a letter to McBride Defendants confirming their understanding that McBride Defendants had agreed.[5]

Despite responding to the October 26, 2020 letter on November 16, 2020[6] addressing many other discovery disputes, McBride Defendants did not inform Plaintiffs <u>until December 31, 2020</u> that they disagreed with Plaintiffs' October 26 letter summary of the October 19 meet and confer that McBride Defendants had agreed to produce all of the audited financial statements sought.[7] The December 31, 2020 letter stated "We have already agreed to provide you, and have now produced, audited financial statements from the period encompassing the two contested transactions and the time between them. We note that your correspondence of October 26 was incorrect in stating that we agreed to produce the 2018 audited financial statements." Exhibit 4 at

---

[2] Pursuant to LR 37.2, the parties met and conferred by telephone on October 19, 2020 and November 23, 2020 concerning documents related to the reimbursement from corporate assets of expenses incurred by Defendants John Eilermann. *See* Boyko Decl. at ¶ 6. The parties also exchanged meet and confer letters on October 16, 2020, October 26, 2020, November 16, 2020, November 20, 2020, and December 31, 2020. *Id.* The issues raised in this Motion were discussed and negotiated in good faith but the parties were unable to reach an accord. *Id.*
[3] *See* Oct. 16, 2020 Letter from M. Boyko to S. Adams at 3 (attached as Exhibit 1 to Boyko Decl.).
[4] *See infra,* FN 1.
[5] *See* Oct. 26, 2020 Letter from T. Clark to S. Adams at 2 (attached as Exhibit 2 to Boyko Decl.).
[6] *See generally* Nov. 16, 2020 Letter from S. Adams to T. Clark (attached as Exhibit 3 to Boyko Decl.).
[7] *See* Dec. 31, 2020 Letter from S. Adams to T. Clark at 1, n1 (attached as Exhibit 4 to Boyko Decl.).

1, n1.[8] However, in addition to not producing the December 31, 2018 audited financial statements for all three entities, McBride Defendants also have not produced the December 31, 2017 audited financial statements for Capital, Inc. and Companies, LLC.

The sole objection to producing the 2017 and 2018 audited financial statements requested by Plaintiffs, that they cover a time period after the November 30, 2017 ESOP transaction date, has already been rejected by this Court in <u>December 2019</u> when this Court found that documents related to the valuation of McBride after November 30, 2017 were relevant and producible. *See* Dkt. 97 at 1 (timing objection raised by McBride Defendants in Dkt. 88 at 4–5). For the same reasons that documents from after November 30, 2017 evidencing valuations would be relevant and producible, so would the 2017 and 2018 audited financial statements for the three McBride entities. Audited financial statements are basic elementary documents to understanding the value of a company and such documents were always provided to, Stern Brothers, the entity that prepared valuations while the ESOP existed.

Given that McBride Defendants have wasted months of time in delaying their position concerning these documents, Plaintiffs respectfully request that the Court order McBride Defendants to produce these documents in two business days if the Court grants Plaintiffs' Motion.

## II. Documents related to the reimbursement from corporate assets of expenses incurred by Defendants John Eilermann

Plaintiffs' Second Amended Complaint includes claims that the ESOP was harmed from excessive compensation and perquisites paid to executives including Defendant John Eilermann, who was McBride's CEO. *See* Dkt. 127 at ¶¶ 6, 152 ("Excessive compensation was paid to Eilermann…from at least 2013 through the effective termination of the ESOP. This included the

---

[8] Despite this objection, McBride Defendants did produce the Properties, LLC audited financial statements dated December 31, 2017 at MS38244.

3

benefit of perquisites, including but not limited to, the benefit of and/or reimbursement of excessive expenses…"), 159.

During the deposition of Ms. Templeton, Plaintiffs learned that each month McBride would automatically pay the entire monthly bill for Mr. Eilermann's personal credit card. Deposition of Andrea Templeton ("Templeton Depo"), at 204:10–205:11.[9] Mr. Eilermann would then decide unilaterally what expenses on the credit card statement were personal and would reimburse McBride by writing a check. *Id.* at 205:11–206:12. Ms. Templeton testified that Mr. Eilermann was the only individual in the entire corporation that had the privilege of having his personal card paid in full as opposed to seeking reimbursement like other employees after paying for it himself first. *Id.* at 203:14–204:17.

Regardless of the fact that Mr. Eilermann appears to have had unilateral control over the reimbursement of his expenses (*Id.* at 205:12–13, 206:5–12), the amounts and nature of the expenses reimbursed to Mr. Eilermann are clearly relevant.[10] *See, e.g., Brundle v. Wilmington Trust*, 241 F.Supp.3d 610, 638 (E.D. Vir. 2017) (A "significant aspect" of ESOP valuation is "control" and while "there is no hard and fast rule for determining who controls a company, some elements of control are generally agreed upon, including an interest which allows the shareholder to unilaterally direct corporate action"). A critical claim in the Second Amended Complaint also goes to the excessive compensation and perquisites paid to Mr. Eilermann and other executives. *See* Dkt. 127 at ¶¶ 6, 152, 159. The crux of Plaintiffs' claims in the Second Amended Complaint is that certain individuals, including Mr. Eilermann, failed to protect the ESOP and instead operated the company for their own benefit at the expense of the ESOP. Understanding the

---

[9] Attached as Exhibit 5 to Boyko Decl.
[10] Such records related to reimbursement of expenses to Mr. Eilermann are responsive at minimum to Plaintiffs' First Request for Documents Nos. 5, 6, 64, 67, 68, 70, and/or 82 and Second Request for Documents No. 2, 4, 13, 16, 18, 22, and/or 40.

amounts and nature of expenses reimbursed to him goes to this issue and Plaintiffs are otherwise not in possession of any other related discovery. Additionally, the issue of the amounts and nature of the expenses reimbursed to Mr. Eilermann go to the valuation of McBride in any year used to calculate the retirement benefits of a participant, including on the final transaction date of November 30, 2017 as excessive expenses would affect the valuation of the stock held by the ESOP. Therefore, the documents sought go directly to the claims found in Counts VII to XVII. *See* Dkt. 127 at ¶¶ 431–597.

In correspondence with Plaintiffs, McBride Defendants object in boilerplate fashion raising the time and expense of gathering these documents. However, they do not provide any specific evidence supporting this objection, nor can they. Ms. Templeton testified during her deposition that the credit card statements were scanned in each month into a system called Docuware, a system used in conjunction with McBride's computer network, and that these documents could be retrieved by her. Templeton Depo at 207:22–208:24. Ms. Templeton also testified that expenses reimbursed to Mr. Eilermann and other information was entered into McBride's general ledger accounting system. *Id*. at 208:25–209:22.

Plaintiffs respectfully request that if the Court grants Plaintiffs' Motion, the Court order McBride to produce in five business days: (1) the monthly credit card statements paid by McBride on behalf of Mr. Eilermann during the agreed upon beginning discovery date of the parties of January 1, 2013 to November 30, 2017, the date of the 2017 ESOP Transaction, and (2) reports generated from McBride's general ledger system from January 1, 2013 to November 30, 2017 that would identify entries related to (a) any receipts submitted associated with the expenses reimbursed, (b) the payment of Mr. Eilermann's personal credit card by McBride, (c) entries showing the amount and date of individual expenses that McBride did not receive reimbursement

5

Case: 1:18-cv-07918 Document #: 191 Filed: 01/11/21 Page 6 of 8 PageID #:4218

for from Mr. Eilermann, and (d) entries showing the amount and date of the monthly checks paid by Mr. Eilermann to McBride to reimburse the personal expenses paid by McBride on his behalf when it paid his entirely monthly personal card bill. Plaintiffs also request that these documents be produced in their entirety without redaction as Plaintiffs are entitled to discovery that shows the consistency each month to which the rules governing what is personal and what is not were applied. If McBride Defendants are concerned about confidentiality, they are free to utilize the attorney's eyes-only confidential designation found in the Court entered protective order.

Dated: January 11, 2021          Respectfully submitted,

By: /s/ *Mark G. Boyko*
Mark G. Boyko (IL #6288036)
mboyko@baileyglasser.com
Bailey & Glasser LLP
8012 Bonhomme Avenue, Suite 300
Clayton, MO 63105
Telephone: (314) 863-5446
Facsimile: (314)-863-5483

Patrick O. Muench (IL #6290298)
pmuench@baileyglasser.com
Bailey & Glasser LLP
3930 N. Lowell Ave.
Chicago, IL 60641
Telephone: (847) 899-1646
Facsimile: (202) 463-2103

Ryan T. Jenny
rjenny@baileyglasser.com
Gregory Y. Porter (admitted *pro hac vice*)
gporter@baileyglasser.com
Bailey & Glasser LLP
1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

6

        Thomas E. Clark Jr. (IL #6294921)
        tclark@wagnerlawgroup.com
        Jordan D. Mamorsky (*pro hac vice* to be filed)
        jmamorsky@wagnerlawgroup.com
        The Wagner Law Group, PC
        190 South LaSalle Street, Suite 2100
        Chicago, IL 60603
        Telephone: (314) 236-0065
        Facsimile: (314) 236-5743

        *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January 2021, a copy of the foregoing document was served on all counsel of record by electronic mail.

/s/*Mark G. Boyko*
Mark G. Boyko