IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GODFREY, JEFFREY SHELDON, and DEBRA ANN KOPINSKI, on behalf of the MCBRIDE & SON EMPLOYEE STOCK OWNERSHIP PLAN, and on behalf of a class similarly situated persons, <br><br>  Plaintiffs, <br><br>  vs. <br><br> GREATBANC TRUST COMPANY, MCBRIDE & SON CAPITAL INC., MCBRIDE & SON MANAGEMENT COMPANY, LLC, JOHN F. EILERMANN, JR., and MICHAEL D. ARRI, <br><br>  Defendants. | Case No. 18 C 7918 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Three participants in the McBride & Son Employee Stock Ownership Plan (the Plan) filed this putative class action lawsuit for violations of the Employee Retirement Income Security Act (ERISA). Plaintiffs allege that the defendants—the Plan's sponsor, corporate officers of the sponsor, and the Plan's trustee—breached their fiduciary duties under ERISA by conducting transactions that stripped the Plan of its valuable assets and converted those assets for their own benefit. The plaintiffs seek to represent a class of 171 individuals who participated in the Plan. They have moved for class certification under Federal Rule of Civil Procedure 23. For the reasons below, the Court grants the motion.

**Background**

The Court assumes familiarity with this case's factual and procedural background, which the Court has described in its prior written opinions. *See Godfrey v. GreatBanc Tr. Co.*, No. 18 C 7918, 2020 WL 4815906 (N.D. Ill. Aug. 19, 2020) ("*Godfrey I*"); *Godfrey v. GreatBanc Tr. Co.*, No. 18 C 7918, 2019 WL 4735422 (N.D. Ill. Sept. 26, 2019) ("*Godfrey II*"). The following is a brief synopsis of the factual and procedural background, as relevant for the purposes of the present order.

Plaintiffs Gregory Godfrey, Jeffrey Sheldon, and Debra Ann Kopinski are former employees of McBride & Son Companies, Inc.—a Missouri-based home construction business—who participated in its Employee Stock Ownership Plan. Sheldon, who was McBride's Information Systems Director, started in 1998, and Godfrey, who was Chief Information Officer, started in 2001. Both left McBride in 2008. Kopinski was employed by McBride in an accounts payable role from 2000 to 2017. All three named plaintiffs are participants in the Plan. Two business transactions—both of which involved the Plan—underlie the plaintiffs' ERISA claims against the defendants. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2). The plaintiffs assert that the defendants facilitated these transactions to obtain the Plan's assets for their own benefit. They allege that the transactions caused the Plan to lose significant value and that the defendants and other corporate insiders earned tens of millions of dollars in compensation.

**A.    2013 McBride restructuring transaction**

In 2013, defendants John Eilermann, Jr., McBride's CEO, and Michael Arri, the CFO, facilitated a business reorganization for the McBride enterprise. The plaintiffs contend that the reorganization included a change of the Plan sponsor and named

fiduciary, which facilitated the transfer of valuable Plan assets to the CEO, CFO, and other corporate officers. Prior to 2013, defendant McBride & Son Management Company (MS Management) was the Plan sponsor and named fiduciary in the Plan agreement. Effective January 1, 2014, MS Management's successor, defendant MS Capital, became the Plan sponsor and fiduciary. The plaintiffs allege that prior to the 2013 transaction, the Plan had been the sole shareholder of the successor MS Capital entity. But as a result of the 2013 transaction, the Plan's ownership interest in MS Capital was diluted, and defendants Eilermann and Arri received significant MS Capital shares. In short, the plaintiffs contend, MS Capital officers received excessive compensation to the detriment of the Plan. Each plaintiff was a Plan participant and therefore owned stock MS Capital stock during the 2013 transaction.

**B.     2017 Plan redemption transaction**

In 2017, as part of another transaction, all of the Plan's MS Capital stock was sold back to MS Capital for $187 per share. Defendants Eilermann and Arri, acting on MS Capital's behalf, proposed this sale to GreatBanc, the Plan trustee, who agreed to it. The plaintiffs contend that the share price was below fair market value and thus that the transaction harmed the plan and violated ERISA. The parties dispute the amount MS Capital shareholders received through this transaction. The plaintiffs contend that corporate insiders were financially enriched because they received $343 per share, but the defendants suggest that this valuation is inaccurate and the actual value of the stock was lower.

In 2018, the plaintiffs filed this lawsuit, asserting that the defendants' conduct in connection with the 2013 business reorganization and 2017 stock sale breached their

fiduciary duties. The plaintiffs seek to certify a class of similarly situated persons—participants and beneficiaries of participants in the Employee Stock Ownership Plan—on the Plan's behalf on the ground that the defendants breached their fiduciary duties to the Plan and involved the Plan in transactions prohibited by ERISA.

## Discussion

Plaintiffs Godfrey, Sheldon, and Kopinski filed this lawsuit as representatives of a class of similarly situated persons. They seek relief on behalf of the Plan. The plaintiffs have moved under Federal Rule of Civil Procedure 23 to certify the following class of 171 members:

> All participants in the McBride & Son Employee Stock Ownership Plan, and the beneficiaries of such participants, at any time between March 29, 2013 and December 15, 2017. Excluded from the proposed Class are (1) Defendants Eilermann and Arri, their immediate families, and their legal representatives, successors, and assigns, and (2) any owners of Class B and Class C Units of McBride & Son Companies, LLC ("MS Companies, LLC") during the class period including Jeffrey Berger, Jeffrey Schindler, and Jeffrey Todt.

Pls.' Mot. for Class Cert. at 1 (dkt. no. 158). To proceed as a class, the plaintiffs must show that the proposed class satisfies Rule 23, which sets out the requirements for class certification. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017).

First, under Rule 23(a), a putative class must satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4). Rule 23(a) requires that the class is so numerous that joinder of all members is impracticable; there are common questions of law or fact; the representatives' claims are typical of those of the class; and the representatives fairly and adequately protect the interests of the class. *See id.* Second, if Rule 23(a) is

4

satisfied, then the proposed class must fall within one of the three categories in Rule 23(b). *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). The plaintiffs argue for certification under Rule 23(b)(1) or (b)(2). Pls.' Mot. for Class Cert. at 2. At the class certification stage, the Court does not "adjudicate th[e] case," but rather "select[s] the method best suited to adjudication of the controversy fairly and efficiently." *Amgen v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013).

### A.     Class definition and standing

Before turning to Rule 23, the Court must first address the defendants' challenge to the class definition. *See* Defs.' Resp. Mem. at 4-6 (dkt. no. 168). Specifically, the defendants challenge the proposed class definition as facially defective—they say "it includes individuals who do not have standing with respect to one, two, or even *all* of the 3 categories of claims alleged" and "[t]he class definition sweeps in participants regardless of whether they held stock at the time of the challenged acts." *Id.* at 5.

The Seventh Circuit has recognized "an implicit requirement under Rule 23":  a class must be "defined clearly and based on objective criteria." *Mullins v. Direct Dig., LLC.*, 795 F.3d 654, 657-59 (7th Cir. 2015). A clear definition is one that "identif[ies] a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660. "[C]lasses that are defined by subjective criteria, such as by a person's state of mind, fail the objectivity requirement." *Id.* The defendants suggest that the class is defined inappropriately for what they say is an "obviously problematic reason":  it includes individuals who left the Plan before the 2013 transaction, yet it treats all participants during the class period as the same regardless of how they were impacted by the 2013 and 2017 transactions. Defs.' Resp. Mem. at 5. The defendants

5

contend that the proposed class is overly inclusive, in part because it includes individuals who did not hold stock "at the time of the challenged acts" and therefore lack standing to sue. *Id.* The defendants say "[t]he only way" to avoid an "improper" result is through "individualized examination of each class member to determine whether they held stock at the time of each of the transactions." *Id.* at 6.

The defendants' characterization of the proposed class as unworkable is unpersuasive. First of all, the proposed class is clearly defined. The named plaintiffs and proposed class members were all Plan participants during a specified time period. And they do not plead individualized claims based on the fiduciaries' conduct. Rather, they allege harm *to the Plan* under 29 U.S.C. § 1109(a), which "imposes personal liability on the fiduciary whose breach of the obligations imposed by the statute results in a loss to the plan." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 481 (7th Cir. 2010).

More specifically, the plaintiffs do not seek individualized awards for the class members; rather, the class seeks to recover *the Plan's* losses as proscribed by 29 U.S.C. § 1132(a)(2). *See Kenseth*, 610 F.3d at 481-82 ("Pursuant to section 1132(a)(2), a plan participant or beneficiary (among others) may commence a civil action for appropriate relief under section 1109(a), but she may only do so in a representative capacity on behalf of the plan, not in her own behalf"). The plaintiffs explain that if the Plan recovers its losses via this lawsuit, it will then allocate any recovery to Plan participants' individual accounts in accordance with the terms of the Plan. Pls.' Reply at 3-4 (dkt. no. 173). Accordingly, the defendants' argument—that members of the proposed class suffered distinct economic injuries during the 2013 and

6

2017 transactions and therefore the class is indefinite—lacks merit.

Also, the defendants' argument that certain class members lack standing because they left the Plan or did not hold stock at the time of the transactions is unavailing. The Seventh Circuit has rejected this sort of argument. In *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007), the Court explained that participants who retired and "cashed out their pension benefits . . . and so ceased to be participants in the pension plan" remained "participants" for purposes of a class action since they sought to recover amounts that allegedly should have been in their accounts. *Id.* at 801-05. Hence, the Court concluded that they had standing to bring a class action against their employer for breach of fiduciary duty under ERISA. *Id.*; *see also Neil v. Zell*, 767 F. Supp. 2d 933, 950-51 (N.D. Ill. 2011) (concluding that the plaintiffs "and other plan participants" have standing because they "would have the benefit of an ESOP with $250 million worth of assets had Defendant abided by ERISA's requirements, while today, due to Defendant's breach, the ESOP has nothing"). Accordingly, the Court rejects the defendants' contention that the proposed class is "facially defective."

**B.     Rule 23(a)**

As previously stated, Rule 23(a) sets out four requirements for class: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4). The Court discusses each of these requirements in turn.

   **1.     Numerosity**

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Under Seventh Circuit law, "[t]he key

numerosity inquiry . . . is not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 773 (7th Cir. 2021). "Answering that question requires evaluation of the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Id.* (internal quotations and citations omitted). The defendants in this case do not dispute numerosity. The Court concludes that the proposed class in this case—which includes 171 individuals—satisfies the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "To satisfy the commonality requirement . . . there needs to be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018).

The defendants argue that the commonality requirement is not satisfied because "[c]lass members who signed releases are subject to individualized defenses that will defeat their claims." Defs.' Resp. at 15. "These individualized differences," the defendants contend, "are incompatible with class certification and would render the case unmanageable." *Id.* As the plaintiffs correctly point out, however, the commonality requirement of Rule 23(a)(2) is satisfied even if some class members signed releases, because the "'court could easily dispose of the release issue at one stroke if [defendant] were to raise it as an affirmative defense.'" Pls. Reply at 14 (quoting *Nistra v. Reliance Tr. Co.*, No. 16 C 4773, 2018 WL 835341, at *4 (N.D. Ill. Feb. 13, 2018)). As the

Seventh Circuit has indicated, the existence of releases—which form the basis of a "smattering of individual contract defenses"—does not defeat class certification. *See Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 930 (7th Cir. 2016); *Nistra*, 2018 WL 835341, at *4 (citing *Kleen* and concluding that even if several class members signed a release waiving their right to bring ERISA claims on the Plan's behalf, the court need not amend the class definition to exclude them). In short, the applicability of the releases "is a side issue," Pls.' Reply at 14, that is unlikely to cause a significant diversion from adjudication of the class's claims.

This aside, the defendants' arguments challenging commonality amounts to an attempt to import the "predominance" inquiry for a 23(b)(3) class—which requires "the questions of law or fact common to class members [to] predominate over any questions affecting only individual members"—into the 23(a)(2) commonality analysis. Fed. R. Civ. P. 23(b)(3). This is misguided. "[F]or purposes of [the] Rule 23(a)(2) [commonality requirement,] even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (alterations and internal quotation marks omitted); *see also Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 550 (7th Cir. 2016) ("In the wake of *Wal-Mart*, we have made clear that a prospective class must articulate at least one common question that will actually advance all of the class members' claims.").

As the Seventh Circuit explained in *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014), "[t]he critical point is the need for *conduct* common to members of the class." *Id.* at 756 (internal citations and quotations omitted). In this case, all claims concern the defendants' identical actions: (1) the 2013 transaction, during which the Plan was amended, its ownership interest in MS Capital was diluted, and alleged

9

company insiders were excessively compensated; and (2) the 2017 transaction, through which the Plan's MS Capital stock was sold back to MS Capital at below fair market value. The claims also share common questions: whether the defendants are liable under two ERISA provisions for the aforementioned conduct. Answering these questions "will resolve an issue that is central to the validity of each one of the claims in one stroke." *See Dukes*, 564 U.S. 338, 350 (2011).

### 3. Typicality

Rule 23(a) requires the class representative's claims to be typical of the rest of the potential class members. Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Lacy v. Cook County*, 897 F.3d 847, 866 (7th Cir. 2018) (internal quotation marks omitted) (alterations accepted). The plaintiffs' ERISA claims arise out of the defendants' alleged breach of their fiduciary duties to the Plan with respect to the 2013 and 2017 transactions. The defendants' conduct regarding these transactions could have formed the basis of identical ERISA claims brought by any Plan participant. Moreover, as previously noted, the plaintiffs' suit is on behalf of the Plan; no individualized relief is sought and no individualized showing of harm need be made to establish liability. *See* 29 U.S.C. § 1132(a)(2); *see Nistra*, 2018 WL 835341, at *3 (concluding typicality requirement is satisfied because the plaintiff's ERISA claim arises out of the defendant's "breach of its fiduciary duties to the Plan, and every Plan participant could bring the same claim based on the same conduct").

The defendants argue that the typicality requirement is not satisfied with respect

10

to claims concerning the 2017 transaction because of "internal class conflict." Defs.' Resp. Mem. at 8-9. The defendants say that Plan participants who voted in favor of the 2017 transaction (97 percent of the total shares) have interests distinct from the named plaintiffs, who either abstained from the vote or did not vote because their Plan accounts were liquidated and converted to cash prior to the 2017 transaction.

The defendants' argument misses the mark and conflates the typicality requirement under Rule 23(a)(3) with the adequacy requirement under Rule 23(a)(4), which the Court addresses in the next section. The requirement of typicality "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *See Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993). In this case, the named representatives' ERISA claims share the same "essential characteristics" of the "claims of the class at large" in that they seek to (1) obtain recovery owed to the Plan and (2) hold fiduciaries accountable for breaching their duties. *See id.* The named plaintiffs, like each of the class members, were all members of the Plan during the proposed class period, and are making the same claims that other class members could make to return ill-gotten gains to the Plan. The fact that some Plan participants may have voted in favor of the transaction at the time—based on false information or concealed information, the plaintiffs contend—does not make their potential claims any different from those of the named plaintiffs.

As the Seventh Circuit has explained, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d

11

225, 232 (7th Cir. 1983). Regardless of factual differences involving certain class members, the claims in this case uniformly concern the harm to the Plan resulting from the 2017 transaction. The fact that some Plan participants voted to approve a transaction that the plaintiffs claim harmed the Plan does not prevent them from satisfying the typicality requirement. Accordingly, the Court concludes that the plaintiffs' ERISA claims are typical of the claims of the proposed class.

### 4. Adequacy of representation

Next, under Rule 23(a)(4), the plaintiffs must demonstrate that they "will fairly and adequately protect the interests of the class before [the court] may allow a case to proceed." *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 585 (7th Cir. 2020) (internal quotation marks omitted). To assess adequacy of representation, the Court must determine "the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests," and "the adequacy of the proposed class counsel." *See Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011).

The defendants contend that the named plaintiffs are inadequate representatives for a slew of reasons. They contend that the plaintiffs are motivated by personal animus against the McBride defendants and therefore lack standing; plaintiff Kopinski lacks sufficient knowledge of the case; and there are a number of members of the proposed class who voted in favor of the 2017 transaction and would oppose rescission of that transaction. They also make other contentions address earlier under other headings, including the arguments that Godfrey and Sheldon lack standing because they sold their shares before the 2017 transaction and that the class definition is flawed.

The plaintiffs and the class members share a powerful common interest: holding the defendants accountable for an alleged breach of their fiduciary duties under ERISA and any resulting harm to the Plan. if the plaintiffs are successful, they will obtain an award to the Plan of its losses, which is essentially coterminous with the losses of the Plan participants. Thus under Rule 23(a)(4)'s adequate representation analysis, the plaintiffs—regardless of their attitudes about the defendants—"possess the same interest" and seek to recover for "the same injury" as the other class members. *See Orr v. Shicker*, 953 F.3d 490, 499 (7th Cir. 2020).

As such, the defendants' "animus" argument is unavailing; it falls short of establishing that the plaintiffs are inadequate proposed class representatives on the basis their interests are "antagonistic or conflicting" with those of absent class members. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). That aside, the Court has a hard time seeing how it is that a class representative's purported personal dislike of a person they are suing impacts her ability to serve as an adequate representative. If defendants' contention is that these representatives would, for example, fight to the death rather than accepting a reasonable settlement for the class, there is simply no support in the record for such speculation.

The defendants' remaining arguments about standing and inadequate class definition also lack merit. As previously explained, plaintiffs in an ERISA case of this sort who were previously Plan participants have standing even if they did not hold shares at the time of the challenged transaction. *See Harzewski*, 489 F.3d at 801-05. Accordingly, Godfrey and Sheldon have standing to pursue their claims. The defendants also contend that "Kopinski's lack of knowledge" about the 2013 and 2017

13

transactions "precludes her from serving as an adequate representative." Defs.' Resp. at 13. But Kopinski's level of knowledge "is mostly relevant as a means to demonstrate [her] interest in the case and ensuring that [she] will vigorously pursue [her] claims." *Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126, 160 (N.D. Ill. 2020). As the plaintiffs explain in their reply brief, Kopinski testified during her deposition that she believed McBride executives received excessive compensation and she thought the sales price for the stock in the 2017 transaction was low. Pls.' Reply at 12-13. A class representative need not be a comprehensive or even a percipient witness regarding the defendants' conduct. Kopinski's testimony and her continued participation in the litigation activities reflects both her interest in the case and her vigorous pursuit of the ERISA claims. She is therefore an adequate representative.

Finally, the defendants' argument that the named plaintiffs are inadequate representatives because some class members approved of the 2017 transaction misses the mark. Defs.' Resp. at 8. Contrary to the defendants' contentions, there is no "internal class conflict"; all proposed class members' claims concern conduct that harmed the Plan in violation of ERISA. *Id.* As the plaintiffs suggest, the "[d]efendants present no evidence to refute [a] common sense conclusion": all proposed class members "shared an interest in having Defendants meet their fiduciary duties under ERISA" and in ensuring "the Plan received fair market value for the Capital, Inc. stock which was require to be paid by ERISA and the plan document." Pls. Reply at 5.

**C.    Rule 23(b)**

The plaintiffs seek to certify the class under Rule 23(b)(1) or (b)(2). Pls.' Mot. for Class Cert. at 2. First, they contend that the class satisfies Rule 23(b)(1)(A) and (B),

14

which applies when "prosecuting separate actions by . . . individual class members" would, under Rule 23(b)(1)(A), risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" or, under Rule 23(b)(1)(B), risk "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(A)-(B). In the alternative, the plaintiffs rely on Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

In *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345 (N.D. Ill. 2007) (Kennelly, J.), the Court concluded that a proposed class of participants in a profit sharing and savings plan who alleged breach of fiduciary duties under ERISA section 502(a)(2) met the requirements of Rule 23(b)(1) because (b)(1)(A) and (b)(1)(B) were each satisfied. *Id.* at 357 ("Plaintiffs bring their claims on behalf of the Plan . . . to recover benefits owed under the Plan . . . . [R]ecovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA.") (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 (1999) ("[a]mong the traditional varieties of representative suit encompassed by Rule 23(b)(1)(B) were those involving the 'presence of property which called for distribution or management") (internal quotations and citations omitted)).

As in *Brieger*, the plaintiffs in this case "bring their claims on behalf of the Plan,

[and thus] adjudications of the representative plaintiffs' suit would, as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan." See *Brieger*, 245 F.R.D. at 357. For this reason, the proposed class satisfies Rule 23(b)(1)(A) and Rule 23(b)(1)(B). Thus the Court need not consider the arguments for certification under Rule 23(b)(2). See *Nistra*, 2018 WL 835341, at *3 ("The proposed class . . . satisfies Rule 23(b)(1)(B); given this, there is no need to consider [the] arguments for certification under Rule 23(b)(1)(A) or (b)(2)."). The Court observes, however, that certification under Rule 23(b)(2) would also be appropriate. See *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364 (7th Cir. 2012) (concluding that Rule 23(b)(2) is an appropriate vehicle for claims of several thousand participants in cash balance pension plan alleging ERISA violations); *George v. Kraft Foods Glob., Inc.*, 251 F.R.D. 338, 353 (N.D. Ill. 2008) (certifying class alleging breach of fiduciary duty based on ERISA under both Rule 23(b)(1) and 23(b)(2)).

## Conclusion

For the foregoing reasons, the Court grants plaintiffs' motion for class certification [dkt. no. 158]. The Court certifies the following class under Rule 23(b)(1):

> All participants in the McBride & Son Employee Stock Ownership Plan, and the beneficiaries of such participants, at any time between March 29, 2013[1] and December 15, 2017. Excluded from the proposed Class are (1) Defendants Eilermann and Arri, their immediate families, and their legal representatives, successors, and assigns, and (2) any owners of Class B and Class C Units of McBride & Son Companies, LLC ("MS Companies, LLC") during the class period including Jeffrey Berger, Jeffrey Schindler, and Jeffrey Todt.

---

[1] The plaintiffs indicated in their reply brief that they "do not object to beginning the Class Period on December 31, 2013, rather than March 29, 2013." Pls.' Reply at 4 n.7. The Court assumes that based on this, the appropriate start date is December 31, 2013. If this is incorrect, this should be explained in the parties' joint submission to the Court.

The parties do not dispute whether plaintiffs' counsel meets Rule 23(g)'s requirement of adequate class counsel. The Court therefore appoints the following attorneys as class counsel: Mark G. Boyko, Patrick O. Muench, Ryan T. Jenny, and Thomas E. Clark Jr. Furthermore, neither party in this case has yet addressed the nature of class notice. Under Rule 23(c)(2)(A), the Court "may direct appropriate notice to the class" for "any class certified under Rule 23(b)(1) or (b)(2)." Fed. R. Civ. P. 23(c)(2)(A). The Court directs the plaintiffs to provide defendants with a proposed class notice by February 24, 2021; directs both sides to confer by February 26, 2021; and provide a joint proposal (or competing proposals) to the Court by March 1, 2021. Any issues will be discussed at the telephonic status hearing set for March 3, 2021.

                                                _____
                                                   MATTHEW F. KENNELLY
                                                   United States District Judge

Date: February 21, 2021