UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GREGORY GODFREY, et al.,**   Plaintiffs,   v.   **GREATBANC TRUST COMPANY, et al.,**   Defendants. | Case No. 1:18-cv-07918   Judge Matthew F. Kennelly   Magistrate Judge Michael T. Mason |

### PLAINTIFFS' RESPONSE TO MOTION TO EXCLUDE OPINION OF PLAINTIFFS' EXPERT DANIEL VAN VLEET

Defendants' Motion to Exclude should be denied for three reasons. *First*, Plaintiffs' expert Daniel Van Vleet ("Van Vleet") did not disclose a "new damages theory" at his deposition; he simply removed two variables he had subtracted from his concluded equity value to comport with changed assumptions proposed by Defendants' counsel. *Second*, even if this simple calculation is a "new theory," it is a permissible supplementation based on changed assumptions in a simple calculation presented in his opening report. *Third*, even assuming the basic math about which Defendants complain is a new opinion and not a permissible supplementation, Defendants have suffered no harm by its disclosure this far in advance of trial.[1]

---

[1] After Defendants filed their Motion to Exclude and the Court ordered briefing and argument on the Motion, Plaintiffs filed a Motion to Exclude (Dkt. 227). Plaintiffs believe judicial economy is best served by not deciding either Motion at this stage, but should Defendants' motion be decided prior to summary judgment, Plaintiffs believe their Motion should be decided prior to summary judgment as well.

1. **Van Vleet's calculation is not a new damages theory.**

Plaintiffs retained Van Vleet to opine on, among other issues, damages suffered by the ESOP when (1) GreatBanc approved a 2013 transaction in which the ESOP converted its 100% ownership in the McBride operating company to 57% ownership (the "2013 Transaction"); and (2) GreatBanc approved a 2017 transaction in which the ESOP sold its remaining interest in McBride for less than fair market value (the "2017 Transaction"). Van Vleet's March 19, 2021 opening damages report included an opinion that the ESOP lost governance control of McBride and marketability of the equity in the 2013 Transaction, suffering economic damages as a result. Having assumed loss of control and marketability due to the 2013 Transaction, Van Vleet also assumed lack of control and marketability for the 2017 Transaction. In his opening report, with respect to the 2017 Transaction, Van Vleet presented the value of the Plan's equity on a control basis ▮[2], subtracted the value of a discount for lack of control ▮ *id.* Rows 4&5), subtracted the value of a discount for lack of marketability ▮ *id.* Rows 6&7), and subtracted the proceeds received by the Plan in the 2017 Transaction ▮, yielding a conclusion of damages (▮ *id.* Rows 9&10).[3] All this data is presented plainly and prominently in the opening report.

Defendants' experts issued their rebuttal reports on April 30, 2021, arguing Van Vleet's assumptions about loss of control and marketability due to the 2013 Transaction were misplaced. Defense counsel asked Van Vleet how his analysis would change if the Court concluded his assumptions about control and marketability were wrong. Van Vleet explained the 2017 Transaction analysis would simply change from a minority, non-marketable value to a control, marketable value. That control marketable value, of course, was presented in Table 5 of his

---

[2] Table 5, Row 3. Van Vleet's March 19, 2021 Report. Excerpt attached hereto as Exhibit A.
[3] Additional adjustments resulted in a net damages figure of ▮.

2

original report. Essentially, Defendants argue that because Van Vleet did not present a separate table subtracting the proceeds received by the Plan ▮▮▮▮▮▮ from the control and marketable equity value ▮▮▮▮▮▮, it is improper for him to do that simple subtraction when asked to assume no discounts for lack of control and marketability, even though all the data necessary to undertake that simple subtraction is presented in Table 5 of Van Vleet's report. Van Vleet explained this at his deposition:

> Q. A few minutes ago, you and Sarah were discussing the concept of control and -- and whether or not the ESOP lost control as a result of the 2013 transaction. Do you recall those questions?
>
> A. I do.
>
> Q. Okay. We can agree that if the -- if the court determines that there was no loss of control as a result of the 2013 transaction, you have not calculated any economic damages in your Method 1 related to the 2013 transaction; is that right?
>
> A. Well, if there was not a loss of control that resulted from the 2013 transaction, then the Method 1 analysis, the second component of the Method 1 analysis would necessarily have to be changed in order to conduct -- in order to determine what the economic damages were that were attributable to the M&S ESOP.
>
> Q. Right. And you haven't performed that analysis sitting here today?
>
> A. Actually, I have. I've looked at it from a spreadsheet standpoint and just looked at those numbers to -- you know, just for my own information purposes. But with respect to this report, it's my opinion that they did lose control and they did lose marketability, and that's why we conducted our Method 1 analysis under that scenario. But if it's determined at some point that they didn't lose control, then just for my own benefit, I've looked at a spreadsheet analysis that would eliminate the 2013 transaction damages and recalculate the 2017 transaction damages under the assumption that the ESOP held a controlling interest position under Method 1.
>
> Q. Right. So setting aside what you did for your own benefit, if the court determines there was no loss of control as a result of the 2013 transaction, in your disclosed expert report on damages, Exhibit 150, you have not calculated any damages under that scenario?
>
> A. Well, once again, it would cause a recalculation of the second part of my Method 1 analysis, but with respect to my disclosed report, you know, there would be -- well, I have to think about this. So, first of all, the 2013 damages would no longer be in existence, because they are primarily based on the lack of control and lack of

marketability discount - -

Q. And that's – that's – that's all my question is, is, in terms of your report, what you have calculated as damages as a result of the 2013 transaction are dependent upon a finding that the ESOP lost control?

A. Well, I just want to make sure that you know what I'm going to be testifying to so that you'll understand, you know, what I'm saying here. So the Method 1 analysis is comprised of two components. There is the 2013 transaction and the 2017 transaction.

Q. Right. I'm only asking about the 2013 component.

A. Oh, you're only asking for the 2013 component then?

Q. That you've calculated.

A. Okay. I apologize. I didn't understand your question. So under the 2013 Method 1 transaction component analysis, yes, those damages would not be calculated using our Method 1 analysis. So those damages would be undetermined as of the 2013 transaction date.

Q. Right. So focusing again on that first component of Method 1, 2013 transaction, if the court were to rule there was no loss of control, you have not calculated any damages for that component of your analysis?

A. Yeah, only for the first component of Method 1. Method 2, as I was saying before, would need to be recalculated in order to quantify the damages attributable to the second component of Method 2 -- or Method 1, I'm sorry. Method 1.

Q. Right. But you haven't -- you haven't done that, because your view is that the ESOP did lose control?

A. Yeah, my Method 1 analysis is based on the assumption that the ESOP lost control in the 2013 transaction. (Van Vleet Depo. Trans. 99:8 – 103:3)

In this exchange, Van Vleet explained he assumed discounts for lack of control and marketability, but the result of his calculation would necessarily change with respect to the 2017 Transaction if those discounts did not apply. Defendants' counsel did not ask Van Vleet how that calculation would change under a hypothetical *proposed by them*—that the 2013 Transaction did not result in a loss of control and marketability. Accordingly, Plaintiffs' counsel asked Van Vleet to explain his calculations under Defendants' hypothetical:

4

> Q [by Plaintiffs' counsel]: Earlier you were asked about how your damages calculations under Method 1 would change if the court concluded that there had been no change in control in the 2013 recapitalization. And I asked if you recalled that.
>
> A. Yes, I recall that.
>
> Q. Okay. And you said something to the effect that you have done analysis on how that would impact the 2017 portion of your Method 1 damages analysis. Do you recall that?
>
> A. I do.
>
> Q. Can you provide any more specifics on your analysis?
>
> A. … These two components of my analysis are based on the assumption that the ESOP lost control in the 2013 transaction. If the ESOP did not lose control in the 2013 transaction, then the first component of my Method 1 damages analysis essentially evaporates. It disappears. It's no longer a component of the damages, because that's solely based on the loss of control and loss of marketability that the ESOP suffered in the 2013 transaction. The second component is, based on that assumption that there was a loss of control and loss of marketability, the ESOP suffered a second component of damages that we've quantified in our expert report, if the court asked me to assume that that loss of control and marketability did not happen, then the second component of my analysis, which is related to the 2017 transaction, would involve the removal of the lack of control and lack of marketability discounts that were included in that analysis…(Van Vleet Depo. Trans. 276:3 – 278:17) (objections removed)

In other words, if one assumes no loss of control and marketability, one simply removes those discounts from Van Vleet's calculation of damages. The numbers were disclosed in Van Vleet's opening report. Far from offering a "new opinion," Van Vleet merely explained how his conclusion would change if two assumptions were rejected.

Here is Table 5 from Van Vleet's opening report, with strikethroughs to show how incorporating the assumptions proposed by Defendants—that the ESOP did not lose control or marketability in the 2013 Transaction and therefore such discounts would not apply in 2017—would change the calculation:

5

| 2017 Stock Redemption Damages | |
|---|---|
| Equity Value of M&S Companies, LLC, Controlling | ▮ |
| Times: Percentage Interest of the Subject Class A Units (%) | ▮ |
| Subject Class A Units, Controlling | ▮ |
| DLOC | ▮ |
| Subject Class A Units, ~~Non~~controlling, Marketable | ▮ |
| ~~DLOM~~ | ▮ |
| Subject Class A Units, ~~Non~~controlling, ~~Non~~marketable | ▮ |
| Common Stock of M&S Capital, Controlling | ▮ |
| 2017 Transaction Proceeds | ▮ |
| **Stock Redemption Damages** | ▮ |

As is apparent, the only changes are removing the DLOC and DLOM to account for Defendants' proposed assumptions. This is grade school math, not a new expert opinion. It is not uncommon for courts to choose between competing positions put forth by opposing valuation experts. When there are disputes about different aspects of a valuation courts often accept some proposition asserted by one expert and some by another to determined damages. In a similar ESOP case, for example, the court evaluated the competing experts' opinions on the discounted cash flow method and agreed with plaintiff's expert on the appropriate beta; with defendant's expert on the company specific risk premium and perpetual growth rate; and concluded its own discount for lack of control that fell between the two experts. *See Brundle v. Wilmington Trust*, N.A., 241 F. Supp. 3d 610, 646–48 (E.D. Va. 2017). But the court did not reject expert calculations simply because assumptions changed.

Van Vleet's calculation assuming no discounts for lack of control and marketability is not a new opinion. It is consistent with every aspect of his damages calculations and merely eliminates two assumptions to show the impact on damages. At most, his testimony is an

6

"improve[ment] upon the initial expert report" in that Van Vleet explained more explicitly how the resolution of a disputed assumption would impact his damages conclusion. *Talbert v. City of Chicago*, 236 F.R.D. 415, 423–24 (N.D. Ill. 2006) (denying motion to bar supplemental report of expert and noting as here, the challenged information was "in direct response to opposing counsel's challenges to the original expert report"). The switch in disputed variables "does not change [Plaintiffs'] theory of the case or introduce new opinions." *Black & Decker Corp. v. Positec USA Inc.*, No. 11-5426, 2015 WL 5612340, at *14 (N.D. Ill. Sept. 22, 2015) (denying motion in limine to strike supplemental expert report). Defendants' motion should be denied.

In sum, Van Vleet's opening report put Defendants on fair notice as to the calculation of damages if the Plan's equity did not suffer impairments to control and marketability as a result of the 2013 Transaction. It's obvious in Table 5 of Van Vleet's opening report.

**2. Even if changing two variables is a "new opinion" it is permissible supplementation.**

"The Rules contemplate that expert witnesses may supplement their opinions through discovery, including depositions. . . Rule 26(e)(2) expressly contemplates that experts will give opinions at their depositions." *GSI Grp., Inc. v. Sukup Mfg. Co.*, No. 05-3011, 2008 WL 4999126, at *1–2 (C.D. Ill. Nov. 20, 2008) (denying motion to strike). Even if Van Vleet's testimony on how changing two assumptions impacts his calculations can be considered a new opinion, it is a permissible supplementation. Van Vleet's opinion in his opening report is that the Plan lost control and marketability in the 2013 Transaction so he necessarily valued the 2017 Transaction on a minority, non-marketable basis. Van Vleet's deposition testimony was in response to questions by Defendants' counsel and critiques by Defendants' experts in their rebuttal reports that the Plan did not lose control or marketability via the 2013 Transaction. *See Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, No. 08-1083, 2010 WL 3894444, at *16 (N.D. Ill.

7

Sept. 30, 2010), *order clarified sub nom. Bone Care v. Pentech*, 2010 WL 3909509 (N.D. Ill. Oct. 4, 2010) (denying motion in limine to strike where supplementation was "offered to repel testimony offered by Plaintiffs' experts in their responsive reports" and the "assertions do not appear to be so substantially different from the arguments and references included in the opening reports that they set the case on an entirely new tack"). Indeed, "there is precedent that the mere eliciting of testimony at deposition from an opposing party's expert at deposition amounts to all the disclosure necessary under Rules 26(a)(2) and 37(c)(1)." *Noffsinger v. Valspar Corp.*, No. 09-916, 2013 WL 12340338, at *5 (N.D. Ill. Jan. 4, 2013) (citation omitted) (denying motion in limine to strike expert's opinion).

Supplementation is also allowed where, as here, the expert adds additional detail that is consistent with his report. *See Est. of Gee v. Bloomington Hosp.*, No. 1:06-00094, 2012 WL 591459, at *4 (S.D. Ind. Feb. 20, 2012) ("Katsaris' deposition supplements Katsaris' initial disclosures. In other words, Katsaris' deposition does not make a 180–degree turn from his original disclosures, but provides additional detail consistent with the conclusions drawn in his initial disclosures."). "[A]n expert report need not cover every detail of what an expert might say in his or her forthcoming testimony. The purpose of an expert report "is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion.'" *Huntington Chase Condo. Ass'n v. Mid-Century Ins. Co.*, 379 F. Supp. 3d 687, 704 (N.D. Ill. 2019) (*citing Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009)) (denying motion to strike where the "deposition testimony does not introduce new opinions or issues that are not fairly within the scope of his report"). Plainly, the substance of Van Vleet's opinion on the damages suffered by the ESOP if there was no loss of control or marketability is set out in Table 5 of his opening report.

### 3. Defendants have not established harm.

Even if showing basic math could be deemed a new opinion and not a permissible supplementation, Defendants have not established how they are harmed and therefore the motion should be denied. *See Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000) (reversing district court's exclusion of an expert because there was no indication that the moving party was harmed). Tellingly, Defendants do not suggest how they could "rebut" the calculation that shows the impact of removing the discounts of lack of control and marketability. That is likely because you cannot rebut simple addition and subtraction.

And even if there was some way to "rebut" this obvious calculation, Defendants have plenty of time to prepare such an attack as no trial date has been set. See *Black & Decker*, 2015 WL 5612340, at *14 ("Given that the corrections were made more than two months before trial, both sides had adequate time to incorporate the additional information into their trial outlines. To the extent that Plaintiffs are doubtful of the basis or accuracy of Tate's revised cost calculations, these are proper topics to pursue during cross-examination."); *Bone Care Int'l, LLC*, 2010 WL 3894444, at *16 (denying motion to strike and noting the challenged supplementation was not "submitted at the eleventh hour; rather, they were presented nearly ten months prior to trial"). In other words, Defendants are on notice.

Dated: June 24, 2021          Respectfully submitted,

/s/ *Mark G. Boyko*
Mark G. Boyko (IL #6288036)
mboyko@baileyglasser.com
Bailey & Glasser LLP
34 N. Gore, Suite 102
Webster Groves, MO 63119
Telephone: (202) 463-2101
Facsimile: (304) 342-1110

9

Patrick O. Muench (IL #6290298)
pmuench@baileyglasser.com
Bailey & Glasser LLP
318 W. Adams St.
Suite 1606
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (304) 342-1110

Ryan T. Jenny
rjenny@baileyglasser.com
Gregory Y. Porter (admitted *pro hac vice*)
gporter@baileyglasser.com
Bailey & Glasser LLP
1055 Thomas Jefferson Street, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Thomas E. Clark Jr. (IL #6294921)
tclark@wagnerlawgroup.com
Jordan D. Mamorsky (IL #6337130)
jmamorsky@wagnerlawgroup.com
The Wagner Law Group, PC
190 South LaSalle Street, Suite 2100
Chicago, IL 60603
Telephone: (314) 236-0065
Facsimile: (314) 236-5743

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June 2021, a copy of the foregoing document was served on all counsel of record via ECF.

/s/ *Mark G. Boyko*
Mark G. Boyko