**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **GREGORY GODFREY,** *et al.***,** | ) Case No.: 1:18-CV-07918 |
| | ) |
| Plaintiffs, | ) Judge Matthew F. Kennelly |
| | ) |
| -v- | ) Magistrate Judge Michael T. Mason |
| | ) |
| **GREATBANC TRUST COMPANY,** *et al.***,** | ) **Oral Argument Requested** |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**GREATBANC TRUST COMPANY'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

LEGAL STANDARD..................................................................................................................1

ARGUMENT ...............................................................................................................................2

I.      GreatBanc is Entitled to Summary Judgment on the Claims Challenging the 2013
        Reorganization (Count I, Count III, Count V)...............................................................2

        A.      The Court Should Enter Summary Judgment that the ESOP Did Not Lose
                Governance Control in the 2013 Reorganization....................................................2

        B.      Plaintiffs' Section 404 and 405 Claims Fail (Count III and V) ..............................3

                1.      GreatBanc Did Not Breach Any ERISA Duty.............................................4

                2.      There is No Evidence of Damages to the ESOP ........................................7

        C.      Plaintiffs' ERISA Section 406 Claim Fails (Count I).............................................7

                1.      There is no Violation of ERISA Section 406(a) .........................................7

                        a.      The Challenged Transaction Falls Outside Section 406(a)..............7

                        b.      The Exemption Under Section 408(e) Applies...............................8

                2.      There is no Violation of Section 406(b)(2)................................................11

II.     GreatBanc is Entitled to Summary Judgment on Claims Challenging Cash
        Compensation Paid to Management Between 2013-2017 (Count VII, Count IX)............11

        A.      ERISA Does Not Impose Duties On An Independent and Outside Third-Party
                Trustee For a Company's Cash Compensation Decisions....................................11

        B.      Even If ERISA Applies, There is No Evidence of a Breach of Duty by
                GreatBanc or Damages to the ESOP .....................................................................13

                1.      GreatBanc Did Not Breach Any ERISA Duty...........................................13

                2.      There is No Evidence of Damages to the ESOP.......................................15

        C.      GreatBanc is Entitled to Summary Judgment On Plaintiffs' Abandoned and
                Unsupported Allegations of Equity Dilution Through Free Stock
                Distributions to Management.................................................................................16

III.    GreatBanc is Entitled to Summary Judgment on the Claims Challenging the 2017
        Redemption (Count XI, Count XIII, Count XV) .............................................................16

B.      Plaintiffs' Section 404 and 405 Claims Fail (Count XIII and XV) .......................17

C.      Plaintiffs Section 406 Claim Fails (Count XI)........................................................20

IV.   CONCLUSION.................................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Akers v. Palmer*,
    71 F.3d 226 (6th Cir. 1995) ................................................................ 12

*Allen v. GreatBanc Tr. Co.*,
    835 F. 3d 670 (7th Cir. 2016) ............................................................ 4, 7

*Armstrong v. Amsted Indus., Nos. 01-cv-2963, MDL-1417*,
    2004 U.S. Dist. LEXIS 14776 (N.D. Ill. July 29, 2004) ...................... 12

*Chesemore v. Alliance Holdings, Inc.*,
    886 F. Supp. 2d 1007 (W.D. Wis. 2012) .......................................... 6, 14

*Eckelkamp v. Beste*,
    201 F. Supp. 2d 1012 (E.D. Mo. 2002) .............................................. 11

*Fish v. Greatbanc Tr. Co., No. 09-cv-1668*,
    2016 WL 5923448, 2016 U.S. Dist. LEXIS 137351 (N.D. Ill. Sep. 1, 2016) ........... 4, 7, 9, 15

*Frechter v. Zier, No. 12038-VCG*,
    2017 WL 345142, 2017 Del. Ch. LEXIS 14 (Del. Ch. Jan. 24, 2017) ..................... 2

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000) ............................................................................ 8

*Howell v. Motorola, Inc.*,
    633 F.3d 552 (7th Cir. 2011) ......................................................... 3, 7, 15

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ........................................................... 12

*Keach v. U.S. Tr. Co.*,
    240 F. Supp. 2d 840 (C.D. Ill 2002) ................................................ 6, 14

*Keach v. U.S. Tr. Co.*,
    419 F.3d 626 (7th Cir. 2005) ........................................................... 5, 14

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) ............................................................................ 8

*Martin v. Feilen*,
    965 F.2d 660 (8th Cir. 1992) ............................................................. 12

*Mira v. Nuclear Measurements Corp.*,
    107 F.3d 466 (7th Cir. 1997) ......................................................... 7, 15

*Oren-Bousquet v. Lasalle Bank, N.A.*,
    2008 WL 11410042, 2008 U.S. Dist. LEXIS 131238 (W.D. Tex. June 13, 2008) .......... 11-12

*Ellis v. Rycenga Homes, Inc.*,
484 F. Supp. 2d 694 (W.D. Mich. 2007) .......................................................................... 6, 14

**Statutes, Regulations, and Rules**

29 U.S.C. § 1002 ............................................................................................................... 8

29 U.S.C. 1104 ............................................................................................... 3, 5, 6, 14

29 U.S.C § 1105 ................................................................................................ 3, 4, 7, 15

29 U.S.C. § 1106 ............................................................................................... 7, 11, 21

29 U.S.C. § 1107 ............................................................................................................... 9

29 U.S.C. § 1108 ........................................................................................................ 8-9, 20

29 C.F.R. § 2510.3-101 ................................................................................................. 11

Federal Rule of Civil Procedure 56 ........................................................................... 1, 3

## INTRODUCTION

At the pleadings stage, Plaintiffs spun a fantastical tale about management at McBride & Son Homes ("McBride") who, through a series of transactions and other alleged misdeeds, plundered the value of the McBride Employee Stock Ownership Plan ("ESOP"), while the ESOP's trustee, GreatBanc Trust Company ("GreatBanc"), supposedly sat idly by and allowed it all to happen. None of this was true, as the undisputed facts from discovery now unquestionably prove. The facts—not Plaintiffs' unsupported allegations—are what is now before the Court at this summary judgment stage.

Plaintiffs brought three buckets of claims against GreatBanc based on its service as trustee to the McBride ESOP during the years 2013-2017. Plaintiffs alleged that GreatBanc violated ERISA sections 404, 405, and 406 with regard to: 1) a December 31, 2013 corporate reorganization of McBride and its subsidiaries (the "2013 Reorganization") (Count I, III, and V); 2) McBride management's compensation decisions between 2013-2017 (Count VII and IX); and 3) a November 30, 2017 corporate redemption of all ESOP shares (the "2017 Redemption") (Count XI, XIII, and XV).

As discussed below, and detailed in Defendants' Joint Statement of Material Facts, the undisputed facts show GreatBanc acted prudently at all times for the exclusive benefit of the ESOP, and that the transactions and other conduct Plaintiffs challenge only benefitted—not harmed—the ESOP and its participants. The facts lead to only one reasonable conclusion: GreatBanc is entitled to summary judgment as a matter of law on all of Plaintiffs' claims.

## LEGAL STANDARD

The legal standard for summary judgment under Rule 56, and Plaintiffs' burden to come forward with evidence to support the elements of their claims, is well established. GreatBanc incorporates here the brief of the McBride Defendants regarding the summary judgment standard.

## ARGUMENT

I.  **GreatBanc is Entitled to Summary Judgment on the Claims Challenging the 2013 Reorganization (Count I, Count III, Count V)**

The undisputed facts regarding the 2013 Reorganization, including the background, structure, and benefits to the ESOP, are detailed in Defendants' Joint Statement of Materials Facts ("Defendants' Statement of Facts" or "DSOF") at paragraphs 14 to 85. Plaintiffs assert three ERISA claims against GreatBanc related to the 2013 Reorganization: Count I (alleged breach of section 406), Count III (alleged breach of section 404), and Count V (alleged breach of section 405).

### A.  The Court Should Enter Summary Judgment that the ESOP Did Not Lose Governance Control in the 2013 Reorganization

Plaintiffs claim that the ESOP lost governance control of McBride through the 2013 Reorganization based on certain provisions in the bylaws of MS Capital and the operating agreement of MS Companies LLC that were enacted as part of the company's reorganized corporate structure. Plaintiffs allege these provisions made the ESOP's stock less valuable after the 2013 Reorganization because it changed the ESOP's stock from a controlling interest to a non-controlling interest. This claim is contradicted by the clear and unambiguous terms of the governance documents and the parties' undisputed intentions and understanding.

Under the clear and unambiguous terms of the governance documents, the ESOP (through GreatBanc as Trustee) retained its governance control following the 2013 Reorganization. At the MS Capital level, the ESOP possessed the right to, among other things: i) replace the directors of MS Capital at any time through written consent (DSOF ¶ 56, Ex. 57, Article I sections 1, 9; Article II section 2)[1]; ii) amend the Bylaws at any time in any way (*Id.*, Article VII); and iii) sell all shares

---

[1] *See also Frechter v. Zier*, No. 12038-VCG, 2017 WL 345142, 2017 Del. Ch. LEXIS 14 (Del. Ch. Jan. 24, 2017) (majority stockholders in Delaware corporations have the right to remove directors with or without cause).

in MS Capital (as it did in the 2017 Redemption). (DSOF ¶ 56.) At the MS Companies LLC level, as the holder of the majority of the LLC Units at all times (through MS Capital), the ESOP had the exclusive right to, among other things: i) replace Mr. Eilermann and Mr. Arri as members of the board of managers, or increase the number of managers to five and appoint three new managers (DSOF ¶ 57, Ex. 11, Sections 1.6, 1.51, 1.81, 1.82, 5.2, 9.7); ii) restrict the power of the board of managers from taking certain actions (*Id.*, Section 5.5); and iii) compel the sale of all LLC Units (*Id.*, Section 12.6).

In addition, it is undisputed that through the 2013 Reorganization GreatBanc gained the exclusive ability to approve or disapprove all future equity awards of LLC Units in MS Companies LLC (and thus control management's ownership interest in McBride), which was a new power GreatBanc did not possess under the status quo. (DSOF ¶¶ 54-55.) If anything, then, the ESOP only *increased* its control through the 2013 Reorganization.

Furthermore, even assuming the Court were to find some ambiguity in the language of the governance documents (and there is none), the undisputed extrinsic evidence is that all parties understood and intended for the ESOP to not only maintain governance control after the 2013 Recapitalization, but also for the ESOP to gain additional control over management's future equity ownership interests. (DSOF ¶¶ 54-57.) GreatBanc is therefore entitled to summary judgment on this "part of [Plaintiffs'] claim[s]" challenging the 2013 Reorganization. Fed. R. Civ. Pro. 56(a).

### B. Plaintiffs' Section 404 and 405 Claims Fail (Count III and V)

In Count III and Count V, Plaintiffs allege that GreatBanc breached the duties of care and loyalty and to follow plan documents under ERISA section 404(a)(1) (29 U.S.C. § 1104), and that GreatBanc is also liable for co-fiduciary breaches under ERISA section 405(a) (29 U.S.C. § 1105). To succeed on a claim under section 404(a)(1), Plaintiffs must prove a breach of duty and that the breach caused damages to the ESOP. *Howell v. Motorola, Inc.*, 633 F.3d 552, 565 (7th Cir. 2011);

3

*Allen v. GreatBanc Tr. Co.*, 835 F. 3d 670, 678 (7th Cir. 2016). A claim under section 405(a) has the same elements, plus one more: knowing participation in the co-fiduciary breach, knowing failure to remedy the co-fiduciary breach, or enablement of the co-fiduciary breach by failure to comply with ERISA section 404. 29 U.S.C § 1105(a); *Fish v. Greatbanc Tr. Co.*, No. 09-cv-1668, 2016 WL 5923448, 2016 U.S. Dist. LEXIS 137351, at **185, 210-15 (N.D. Ill. Sep. 1, 2016).

### 1. GreatBanc Did Not Breach Any ERISA Duty

The undisputed facts show GreatBanc engaged in a thorough and prudent process regarding the 2013 Reorganization and did not breach any duties under ERISA section 404(a). GreatBanc hired an experienced and qualified law firm (Moore & Van Allen) and financial advisor (Stern Brothers) to assist it with conducting diligence and negotiating and analyzing the 2013 Reorganization to ensure that changing McBride's business structure through the series of proposed transactions was fair to the ESOP. (DSOF ¶¶ 45-47.) Stern Brothers provided an opinion to GreatBanc that the 2013 Reorganization was fair to the ESOP from a financial point of view, with supporting financial analyses and schedules. (DSOF ¶ 62.) Defendants' valuation expert Jeffrey Risius reviewed the 2013 Reorganization and Stern Brothers' financial fairness opinions and analyses. (**Ex. A**, Declaration and Expert Report of Risius, at 66-71.) Mr. Risius opined that the financial framework Stern Brothers used for its fairness opinion was reasonable from a financial point of view, and allowed GreatBanc to more clearly weigh the cost-benefit analysis of proceeding with the 2013 Reorganization versus maintaining the status quo. (*Id.* at 71-73.)

In consultation with and reliance upon its legal and financial advisors, after carefully questioning and probing their advice, GreatBanc concluded the 2013 Reorganization was fair to the ESOP. (DSOF ¶¶ 65-66, *see also* ¶¶ 47-55, 58-62.) Among other significant benefits to the ESOP that GreatBanc considered in reaching this conclusion, the series of transactions in the 2013 Reorganization: i) solved the looming potential 409(p) bankruptcy risk that jeopardized all of the

4

participants' retirement savings; ii) provided a business structure that incentivized management to stay, rather than leave as managers had in the past, which was critical to maintaining and growing ESOP value; iii) simply converted management's preexisting equity stake in McBride to a different form of equity with no increase in ownership (only a potential decrease in the equity held by Arri and Eilermann upon conversion); and iv) gave GreatBanc exclusive control over all future equity awards post-2013 Reorganization (a new power it did not possesses under the status quo). (DSOF ¶¶ 16-17, 30-36, 43, 49, 54-55, 65-66.)

GreatBanc's process expert Greg Brown reviewed and analyzed GreatBanc's conduct and processes and those of its advisors regarding the 2013 Reorganization, bringing to bear his decades of experience working with and representing parties involved in similar drop-down-LLC reorganizations. (**Ex. B**, Declaration and Expert Report of Brown, at 2, 5-9, 12-17.) Mr. Brown opined that GreatBanc's process and procedures for evaluating the fairness of the 2013 Reorganization to the ESOP were consistent with the usual and customary practices of an ESOP trustee evaluating the fairness of corporate reorganizations substantially similar to the 2013 Reorganization. (*Id.* at 12.)

The only reasonable conclusion is that GreatBanc conducted itself with the same "care, skill, and prudence" of a reasonable trustee under similar circumstances in evaluating the 2013 Reorganization and determining it was fair to the ESOP. 29 USC § 1104(a)(1)(B). And although the duty of care under section 404 only "requires prudence, not prescience," *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 638 (7th Cir. 2005) (citation omitted), here GreatBanc demonstrated both. After the 2013 Reorganization, the ESOP's equity interest increased, while management's decreased (DSOF ¶¶ 43, 80, 83, 85-88.) McBride's sales also exceeded even the increased sales projections Stern Brothers used in its fairness opinion, which were only necessary to counterbalance a conservative

5

assumption that the ESOP's ownership interest would drastically decrease in future years after the 2013 Reorganization through free equity gifts of LLC Units to management (which again, GreatBanc exclusively controlled and never allowed). (DSOF ¶¶ 62-63.) These increased sales facilitated the continued growth in the value of McBride's stock held by the ESOP—an average annual growth rate in McBride's stock that exceeded 25% between 2010 and 2017 under the leadership of John Eilermann and Mike Arri, compared to only approximately 6% for public company homebuilders, and approximately 11.5% for the S&P 500 Index over that same time period. (DSOF ¶ 64.)

There is also no evidence that GreatBanc possessed conflicts of interest or otherwise did not act "solely in the interests of the participants," as needed to support a section 404(a)(1)(A) breach of loyalty claim. *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007, 1041 (W.D. Wis. 2012) *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016); 29 U.S.C. § 1104(a)(1)(A). The undisputed facts show that at all times GreatBanc acted with undivided loyalty for the exclusive benefit of the ESOP. There is similarly no evidence GreatBanc violated a specific provision in "the documents and instruments governing the plan" as required for a section 404(a)(1)(D) claim.

Regarding the section 405(a) claim (Count V), as the McBride Defendants explain in their brief and as shown by Defendants' Statement of Facts, there was no co-fiduciary breach related to the 2013 Reorganization. Plaintiffs further cannot show GreatBanc had "actual knowledge, not constructive knowledge" of such a breach, as required for co-fiduciary liability to attach under subsection 405(a)(1) and (3). *Keach v. U.S. Tr. Co.*, 240 F. Supp. 2d 840, 844 (C.D. Ill 2002); *Ellis v. Rycenga Homes, Inc.*, 484 F. Supp. 2d 694, 712 (W.D. Mich. 2007). Nor can Plaintiffs show that a breach by GreatBanc under section 404(a)(1) "has enabled" a co-fiduciary breach (assuming

one occurred), as needed for a violation of section 405(a)(1)(2), since GreatBanc did not breach any section 404 duty. 29 U.S.C. § 1105(a)(1)(2).

### 2. There is No Evidence of Damages to the ESOP

Even were there some evidence to create a genuine dispute about whether GreatBanc breached an ERISA duty (and there is not), Plaintiffs claims still fail because they cannot carry their burden of proving damages to the ESOP. *Howell*, 633 F.3d at 565; *Allen*, 835 F. 3d at 678. As discussed above, there was no loss of governance control, and loss-of-control-damages are the *only* economic loss that Plaintiffs have claimed arising from the 2013 Reorganization. Nothing else. Indeed, the undisputed evidence is that the ESOP only *benefitted* from the 2013 Reorganization. (Section I(B)(1), *supra*; DSOF ¶¶ 54-55, 63-64, 80, 85.) Thus, "even if [GreatBanc] did breach the fiduciary duties [it] owed to the plaintiffs, in violation of ERISA, the [plaintiffs] are not entitled to recovery of damages for that breach absent proof of an actual economic loss", which they cannot demonstrate in this case, making summary judgment appropriate. *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir. 1997); *see also Fish*, 2016 U.S. Dist. LEXIS 137351, at *210-15 (N.D. Ill. Sep. 1, 2016) (judgment for defendants on ERISA claims for alternative reason that plaintiffs failed to prove damages). For this additional reason, GreatBanc is entitled to summary judgment on Count III and V.

### C. Plaintiffs' ERISA Section 406 Claim Fails (Count I)

In Count I, Plaintiffs allege GreatBanc violated ERISA section 406(a)(1)(A) and (D) (29 U.S.C. § 1106(a)), and also allege GreatBanc violated ERISA section 406(b)(2) (29 U.S.C. § 1106(b)(2).

### 1. There is no Violation of ERISA Section 406(a)

#### a. The Challenged Transaction Falls Outside Section 406(a)

GreatBanc is entitled to summary judgment because the transaction that Plaintiffs

challenge falls outside the prohibitions of ERISA section 406(a)(1)(A) and (D). Specifically, as to GreatBanc, Plaintiffs challenge the second transaction that occurred as part of the 2013 Reorganization—i.e., the ESOP's contribution to MS Capital of ███ shares of MS Companies Inc. in exchange for ███ shares of MS Capital (the "Challenged Transaction"). (DSOF ¶ 70; Second Amended Complaint ¶ 341.) However, 406(a)(1)(A) and (D) cover only transactions between the plan and a "party in interest." Here, the entity on the other side of the exchange with the ESOP—MS Capital—was not a "party in interest" as defined in ERISA section 3(14). *See* 29 U.S.C. § 1002(14) (listing the individuals and entities that constitute a "party in interest"). As the Supreme Court has explained, "Congress defined 'party in interest' to encompass those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 242 (2000) (citing § 3(14), 29 U.S.C. § 1002(14)). That is because the rules of ERISA section 406(a) target "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders" and "[w]hat the 'transactions' identified in § 406(a) thus have in common is that they generally involve uses of plan assets that are potentially harmful to the plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996). Far from creating risks of plan harm and underfunding through insider dealings, it is undisputed that the Challenged Transaction involved no "party in interest" and was part of a larger business reorganization that *eliminated* these very risks by solving the business issues that jeopardized the value of the ESOP. (DSOF ¶¶ 16-17, 30-36, 49, 66.)

**b.**     **The Exemption Under Section 408(e) Applies**

Even if Plaintiffs could establish a dispute of fact regarding a violation of ERISA section 406(a) (and they cannot), GreatBanc is still entitled to summary judgment because it is undisputed factually that the exemption in ERISA section 408(e) applies. ERISA section 408(e) provides that an otherwise prohibited transaction under section 406 does not give rise to liability where the

"acquisition or sale by a plan of qualifying employer securities" is "for adequate consideration." 29 U.S.C. § 1108(e).[2] "For securities with no recognized market, as in this case, ERISA defines 'adequate consideration' to be 'the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary [of Labor]." *Fish*, 2016 U.S. Dist. LEXIS 137351, at *193-94 (citing *Keach*, 419 F.3d at 636; 29 U.S.C. § 1002(18)(B)) (internal quotation omitted).

ESOP fiduciaries will carry their burden to prove adequate consideration by showing that they arrived at their determination "'by way of a prudent investigation in the circumstances than prevailing.'" *Id.* (quoting *Keach v. United States Trust Co.*, 313 F. Supp. 2d 818, 867 (C.D. Ill. 2004), *aff'd*, 419 F.3d 626 (7th Cir. 2005)). This standard is an objective one, "which is assessed in light of all relevant facts and circumstances." *Id.* (citing *Keach*, 313 F. Supp. 2d at 867; *Montgomery v. Aetna Plywood, Inc.*, 39 F.Supp. 2d 915, 937 (N.D. Ill. 1998)) (internal quotations omitted). Moreover, a trustee "has a duty to seek independent advice where [it] lacks the requisite education, experience, and skill, but it must ultimately make its own decision based on that advice" and determine that "reliance on the advisor's advice is reasonably justified under the circumstances." *Id.* (collecting cases) (internal quotations omitted). "Assigning qualified individuals with appropriate experience to work in concert with financial and legal advisors who are also highly experienced is evidence that a trustee conducted a prudent investigation." *Id.* (collecting cases) (internal quotations omitted).

The undisputed facts show the MS Capital shares the ESOP received were at least "adequate consideration" for the same number of MS Companies Inc. shares the ESOP held pre-

---

[2] ERISA defines an "employer security" in relevant part as "a security issued by . . . an affiliate of such employer [of employees covered by the plan," and a "qualifying employer security" as "an employer security which is . . . stock." 29 U.S.C. § 1107(d)(1), (5).

reorganization. Indeed, the fair market value of MS Capital's ownership interest in MS Companies LLC increased immediately post-reorganization to ▮▮▮▮ per share, up from the fair market value of MS Companies Inc. pre-reorganization, which was ▮▮▮▮ per share as of 12/31/2012. (DSOF at Exs. 12-13.) And the fair market value of MS Capital's ownership interest increased again the following year, rising to ▮▮▮ per share as of 12/31/14. (DSOF at Ex. 14.) Plaintiffs' only argument that the ESOP did not receive adequate consideration is an allegation that the MS Capital shares it held post-transaction were less valuable than the MS Companies Inc. shares it held pre-transaction because the MS Capital shares represented a non-controlling (rather than controlling) ownership interest. This argument fails for all the reasons stated above. (*See* Section I(A), *supra*.)

Moreover, the undisputed facts show GreatBanc conducted a good faith and prudent investigation, in consultation with and reliance upon its qualified legal and financial advisors after carefully probing their work. (DSOF ¶¶ 45-66.) GreatBanc correctly determined that the MS Capital shares the ESOP would hold post-reorganization were worth more than the same number of shares in MS Companies Inc. that the ESOP held pre-reorganization and would have continued to hold under the status quo, based on: i) the fairness opinion and supporting analyses from Stern Brothers; ii) the fact management's preexisting equity stake in McBride would simply be converted to a different form with no increase in ownership (only a potential decrease); iii) the exclusive control over future management equity that the ESOP gained through the 2013 Reorganization (and the retention of all key aspects of governance control); iv) the business risks the 2013 Reorganization solved, which under the status quo jeopardized the entire value of the MS Companies Inc. stock that the ESOP held; and v) the new business structure that incentivized management to stay and grow the value of the MS Capital stock for the benefit of the ESOP, rather

than leave given the disincentives in the status quo structure (which would have been catastrophic to the value of the MS Companies Inc. stock that the ESOP held). (DSOF ¶¶ 16-17, 30-36, 43, 49, 54-57, 65-66.)

Thus, even assuming Plaintiffs could establish a violation of section 406(a), GreatBanc is entitled to summary judgment because the undisputed facts are the section 408(e) "adequate consideration" exemption applies.

### 2. There is no Violation of Section 406(b)(2)

As summarized above and detailed in Defendants' Statement of Facts, it is an undisputed fact that GreatBanc acted at all times and in all ways solely for the benefit of the ESOP and its participants. Because there is no evidence that GreatBanc acted "on behalf of a party . . . whose interests are adverse to the interests of the plan," summary judgment should be entered on Plaintiffs' ERISA section 406(b)(2) claim. 29 U.S.C. § 1106(b)(2). Alternatively, as outlined above, even if Plaintiffs could establish a violation of section 406(b)(2), summary judgment is still warranted because the exemption in section 408(e) applies.

## II. GreatBanc is Entitled to Summary Judgment on Claims Challenging Cash Compensation Paid to Management Between 2013-2017 (Count VII, Count IX)

Through discovery, Plaintiffs have pursued a theory that GreatBanc breached fiduciary duties under ERISA section 404(a)(1)(A), (B), and (D) (Count VII) and section 405(a) (Count IX) based solely on cash compensation decisions by McBride's board between 2013-2017.

### A. ERISA Does Not Impose Duties On An Independent and Outside Third-Party Trustee For a Company's Cash Compensation Decisions

Setting cash compensation levels "is a business decision or judgment made in connection with the on-going operation of a business" that "does not involve the administration of an ERISA plan or the investment of an ERISA plan's assets." *Eckelkamp v. Beste*, 201 F. Supp. 2d 1012, 1023 (E.D. Mo. 2002), *aff'd*, 315 F.3d 863 (8th Cir. 2002). *See also Oren-Bousquet v. Lasalle*

11

*Bank, N.A.*, 2008 WL 11410042, 2008 U.S. Dist. LEXIS 131238, at \*4 (W.D. Tex. June 13, 2008). After all, the cash of an operating company like McBride is not a plan asset, *see* 29 C.F.R. § 2510.3-101(a)(2), and while "ERISA is designed to accomplish many worthwhile objectives, [] the regulation of purely corporate behavior is not one of them." *Akers v. Palmer,* 71 F.3d 226, 229 (6th Cir. 1995). Indeed, as this Court noted in its earlier motion to dismiss decision, "ERISA does not impose liability any time a company's business expenditure affects the value of a plan's stock in the company." (Opinion and Order, Doc. 154, PageID# 2449); *see also Armstrong v. Amsted Indus.*, Nos. 01-cv-2963, MDL-1417, 2004 U.S. Dist. LEXIS 14776, at \*\*17-18, 41 (N.D. Ill. July 29, 2004); *Martin v. Feilen*, 965 F.2d 660, 666 (8th Cir. 1992).

Although in certain circumstances courts have applied ERISA to "dual-hat" corporate officers or directors who set and receive cash compensation while also serving as ERISA fiduciaries, *e.g.*, *Johnson v. Couturier*, 572 F.3d 1067, 1077 (9th Cir. 2009), there is no case we have found (and none that Plaintiffs have identified) in which a court held that an independent third-party ESOP trustee like GreatBanc has an ERISA duty to second-guess or intervene in cash compensation decisions made by corporate officers or directors. Rather, as the *Armstrong* court held, a third-party ESOP trustee "cannot be held liable for breach of fiduciary duty to plaintiffs for failure to override an employer's business decisions"—even a business decision followed by "what was, indisputably, a precipitous decline in the value of the employees' ESOP shares." *Armstrong v. Amsted Indus.*, Nos. 01-cv-2963, MDL-1417, 2004 U.S. Dist. LEXIS 14776, at \*\*13, 40-41 (N.D. Ill. July 29, 2004) (citations omitted).

Because ERISA does not impose fiduciary duties on third-party trustees for a company's cash compensation decisions, Count VII and Count IX fail as a matter of law, and summary judgment should be entered in favor of GreatBanc.

12

**B. Even If ERISA Applies, There is No Evidence of a Breach of Duty by GreatBanc or Damages to the ESOP**

**1. GreatBanc Did Not Breach Any ERISA Duty**

GreatBanc is entitled to summary judgment even if ERISA applies because there is no evidence that GreatBanc breached any duty. There is no contemporaneous evidence—none—that GreatBanc failed to recognize any red or even yellow flag regarding the cash compensation paid to McBride management. The undisputed facts show just the opposite. The evidence demonstrates GreatBanc had every reason to believe the cash compensation paid to McBride management was reasonable and determined through a sound and independent process. The facts show:

- Each year McBride engaged an independent and reputable St. Louis-based compensation consultant, Total Rewards Strategies ("TRS"), to provide market-level compensation recommendations. McBride paid its management consistent with those market-level recommendations. (DSOF ¶¶ 91-93, 102-106.)

- McBride's independent Advisory Board met six times a year and provided input about the company's management compensation and TRS's recommendations. The Advisory Board included the former COO of a top three homebuilder in the United States, who had expertise regarding management compensation for companies like McBride. (DSOF ¶¶ 11, 95, 108.)

- McBride's outside accounting firm conducted annual audits of McBride, was aware of management compensation, and never flagged it as excessive. (DSOF ¶ 107.)

- McBride shared compensation information and various TRS reports with GreatBanc and its financial advisor Stern Brothers. GreatBanc and Stern Brothers talked with and questioned TRS. (DSOF ¶¶ 96, 98, 109.)

- Each year GreatBanc and Stern Brothers evaluated the compensation data they received from McBride and never found any basis to object. In particular, each year Stern Brothers evaluated McBride's compensation compared to data from comparable public companies as well as compared to Stern Brothers' internal database of compensation for the approximately 220 other companies it valued each year. (DSOF ¶¶ 101, 109-111.)

GreatBanc's process expert Greg Brown reviewed and analyzed these undisputed facts and GreatBanc's and its financial advisors' conduct related to management compensation, bringing to bear his decades of experience working with and representing ESOP trustees in similar

circumstances. (**Ex. B**, Expert Report of Brown, at 9-10, 17-20.) Mr. Brown opined that GreatBanc acted consistent with the usual and customary practices of an independent ESOP Trustee regarding management compensation between 2013-2017. (*Id.* at 17.) On this point, Plaintiffs cannot offer any evidence, be it fact or expert, to the contrary.

Accordingly, even if ERISA applies, the undisputed facts show GreatBanc conducted itself with the same "care, skill, prudence, and diligence under the circumstances then prevailing" that another reasonable trustee acting "in a like capacity and familiar with such matters would use" regarding the McBride board's setting of cash compensation. 29 U.S.C. § 1104(a)(1)(B). This defeats Plaintiffs' section 404(a)(1)(B) duty of care claim, which again, requires only a showing "of prudence, not prescience." *Keach*, 419 F.3d at 638 (citation omitted). There is likewise no evidence that GreatBanc possessed conflicts of interest or otherwise did not act "solely in the interest of the participants," as needed to support a section 404(a)(1)(A) breach of loyalty claim. *Chesemore*, 886 F. Supp. 2d at 1041 (W.D. Wis. 2012); 29 U.S.C. § 1104(a)(1)(A). Nor is there any evidence GreatBanc violated a specific provision in "the documents and instruments governing the plan" as required for a section 404(a)(1)(D) claim—cash salaries paid by McBride have nothing to do with the plan's documents or assets.

In the same way, if ERISA applies GreatBanc is also entitled to summary judgment on Plaintiffs' section 405(a) claim (Count IX). As the McBride Defendants explain in their brief and as shown by Defendants' Statement of Facts, there was no co-fiduciary breach related to the company's cash compensation decisions. Plaintiffs also cannot show GreatBanc had "actual knowledge, not constructive knowledge" of any such breach, as required for co-fiduciary liability to attach under subsection 405(a)(1) and (3). *Keach*, 240 F. Supp. 2d at 844; *Ellis*, 484 F. Supp. 2d at 712. Nor can Plaintiffs show that a breach by GreatBanc under section 404(a)(1) "has enabled"

a co-fiduciary breach (assuming one occurred), as needed for a violation of section 405(a)(1)(2), since GreatBanc breached no section 404 duty. 29 U.S.C. § 1105(a)(1)(2).

### 2.     There is No Evidence of Damages to the ESOP

In addition to the lack of any breach, if ERISA applies GreatBanc is entitled to judgment for another reason: Plaintiffs have no evidence that McBride's cash compensation decisions from 2013-2017 caused damage to the ESOP. Based solely on unreliable and litigation-concocted opinions from their so-called compensation expert—not any contemporaneous record evidence— Plaintiffs argue that the cash paid to McBride's management was too high because it exceeded the alleged 50% level of market peers. But even assuming those opinions about the 50% level of market compensation are true (they are not) and also that McBride's management was entitled to be paid only those amounts (also not true), this at most suggests something about the level of the company's cash expenditures—it says nothing about damages suffered by the ESOP participants.

Plaintiffs disclosed no computation of damages in fact discovery because no damages exist, and if they did, it would require detailed and complex expert analysis. (*See* Plaintiffs' 3rd Amend. Initial Disclosures, Doc. 227-7, PageID #5262-3 (stating that "Plaintiffs require . . . the assistance of financial experts"); Plaintiffs' Responses to Interr., Doc. 239-1, PageID #5914) (stating that "computation of the amount of monetary relief . . . will likely require expert testimony"). Plaintiffs' sole damages expert does not attempt to calculate *any* economic damages to the ESOP between 2013-2017 based on management compensation. For this alternative reason, the Court should grant summary judgment on Count VII and IX. *Howell*, 633 F.3d at 565; *Mira*, 107 F.3d at 473; *Fish*, 2016 U.S. Dist. LEXIS 137351, at *210-215.

C. **GreatBanc is Entitled to Summary Judgment On Plaintiffs' Abandoned and Unsupported Allegations of Equity Dilution Through Free Stock Distributions to Management**

At the pleading stage, Count VII and IX primarily focused on alleged free stock distributions given to management from 2014-2017, which Plaintiffs claimed caused significant dilution of the ESOP's equity interest. That theory was therefore the sole focus of the Court's prior motion to dismiss decision on those claims. (*See*, *e.g.*, Opinion and Order, Doc. 154, at PageID #2450) (addressing alleged "MS Capital stock distributions to officers"). Discovery quickly disproved Plaintiffs' allegations. The undisputed record evidence shows that: i) management never received any MS Capital stock (the ESOP held 100% of MS Capital stock at all times); ii) all LLC Units in MS Companies LLC that management obtained after the 2013 Reorganization were purchased at fair market value, never freely given; and iii) the ESOP's equity interest increased between 2013 to 2017, while management's equity interest decreased. (DSOF ¶¶ 80, 85-89.) Left with no support for the original theory they plead, Plaintiffs pivoted to the new theory addressed above, i.e., that GreatBanc somehow breached ERISA duties because the cash compensation paid to management was too high. GreatBanc is entitled to summary judgement on Plaintiffs' abandoned original theory, just like the new theory they pursued in discovery, because there is no evidence that GreatBanc breached an ERISA duty or the ESOP was damaged.

III. **GreatBanc is Entitled to Summary Judgment on the Claims Challenging the 2017 Redemption (Count XI, Count XIII, Count XV)**

The undisputed facts regarding the 2017 Redemption, including the rationale, timing, and benefits of the transaction to the ESOP, are discussed in depth in Defendants' Statement of Facts at paragraphs 112 to 148. Plaintiffs assert three ERISA claims against GreatBanc related to the 2017 Redemption: Count XI (breach of section 406), Count XIII (breach of section 404), and Count XV (breach of section 405).

16

**B.    Plaintiffs' Section 404 and 405 Claims Fail (Count XIII and XV)**

In Count XIII and XV, like their other claims, Plaintiffs allege GreatBanc breached the duties of care and loyalty and to follow plan documents under ERISA section 404(a)(1), and that GreatBanc is also liable for co-fiduciary breaches under ERISA section 405(a). The elements Plaintiff must prove to establish these claims are set out above. (*See* Section I(B), *supra*.) The undisputed evidence shows that GreatBanc did not violate any ERISA duty.

To start, there is no allegation—and certainly no evidence—that suggests GreatBanc had divided loyalties or was motivated to act outside the best interests of the ESOP and its participants with regard to the 2017 Redemption (which resulted in GreatBanc losing its job as trustee). This defeats any claim that GreatBanc breached its duty of loyalty under section 404(a)(1)(A). There is also no evidence GreatBanc violated a specific provision in "the documents and instruments governing the plan", supporting summary judgment on the section 404(a)(1)(D) claim.

With respect to GreatBanc's duty of care, the undisputed facts show GreatBanc is entitled to judgment. The undisputed facts are that GreatBanc engaged in a thorough and prudent process regarding the 2017 Redemption. GreatBanc hired Moore & Van Allen and Stern Brothers to assist it with conducting diligence and negotiating and analyzing the 2017 Redemption, given their expertise in similar ESOP transactions, and their familiarity and knowledge of McBride. (DSOF ¶ 125.) GreatBanc thereafter engaged in diligence and negotiation of the proposed 2017 Transaction, working closely with its advisors. (DSOF ¶¶ 126-144.) GreatBanc, its advisors, and McBride management all considered the potential of a third-party sale process, but rejected it because no third-party sale was a viable option nor could any such sale provide the same value and benefits to the participants as the 2017 Redemption. (DSOF ¶¶ 127-129.)

As part of its process in evaluating and negotiating the 2017 Redemption, GreatBanc obtained two valuation reports from Stern Brothers—one as of October 13, 2017, indicating the

fair market value of McBride's shares was ███ per share, and one as of November 30, 2017, indicating the fair market value of McBride's shares was ███ per share. (DSOF ¶¶ 130, 141.) GreatBanc also requested and received a sensitivity analysis from Stern Brothers to assist with negotiations and ensure the share price was fair, as well as a legal diligence memorandum from Moore & Van Allen. (DSOF ¶¶ 132-133, 141.) GreatBanc further obtained a financial fairness opinion from Stern Brothers. (DSOF ¶ 141).

GreatBanc carefully analyzed, probed, discussed, and considered the advice and opinions of its legal and financial advisors, including in two fiduciary committee meetings where the advisors presented and were questioned by the fiduciary committee members. (DSOF ¶¶ 130-133, 141-144.)

GreatBanc negotiated deal terms beneficial to the ESOP that were not part of the Company's offer to redeem the ESOP's shares. Those included, among other things, a final redemption price of ███ per share, event protection if the company was sold for a higher value within three years of the redemption, and management's commitment to mandatory contributions to the participants' 401(k) accounts at specified levels (DSOF ¶¶ 134, 136.)

The ESOP participants were each given the opportunity to confidentially vote their shares and direct GreatBanc whether to approve or disapprove the 2017 transaction. (DSOF ¶¶ 135-140.) McBride held an employee meeting in October 2017 to disclose details about the proposed redemption, the history leading up to the proposed transaction and future business risks and threats, and how the proposed transaction would impact participants. (DSOF ¶ 135.) GreatBanc attended the presentation to answer participant questions. (*Id.*) McBride thereafter held follow-up meetings for participants with additional questions, and also provided the opportunity for participants to review McBride's historical financial information. (DSOF ¶ 137.) After negotiations were

complete, a detailed information statement (reviewed and edited by GreatBanc and its advisors) was also furnished to each ESOP participant that explained the 2017 Transaction, its price and terms, the transfer of proceeds to the 401(k) plan, and the voting process. (DSOF ¶ 136.) The participants voted ███████ shares "for" the deal, which represented 87% of all allocated shares and 93.5% of voting participants. (DSOF ¶ 138.) Only ███████ shares were voted "against" the deal, and ███████ were voted "abstain". (*Id.*)

After completion of the due diligence and negotiation process, in consultation with and reliance upon its legal and financial experts, and in accord with the overwhelming direction of the ESOP participants and its own independent determination that the 2017 Redemption (as revised with the terms GreatBanc negotiated) was fair to the ESOP, GreatBanc voted the allocated ESOP shares consistent with the participants' direction. (DSOF ¶¶ 143-144.)

GreatBanc's process expert Greg Brown reviewed and analyzed the 2017 Redemption and GreatBanc's diligence, review, and negotiation process, including GreatBanc's consultation with and reliance upon its financial and legal advisors, as well as the information provided to participants for purposes assuring an informed pass-through vote. (**Ex. B**, Declaration and Expert Report of Brown, at 10-12, 20-25.) Mr. Brown opined that measured against the hundreds of ESOP redemption transactions he has assisted in negotiating on behalf of independent ESOP trustees or sponsor company management, GreatBanc's negotiation of the 2017 Redemption was arms-length, informed and robust. (*Id.* at 20.) He also opined that GreatBanc's process and procedures regarding the 2017 Redemption were consistent with the usual and customary practices of an independent ESOP trustee evaluating the fairness of redemption transactions substantially similar to the 2017 Redemption. (*Id.*)

Mr. Brown further opined that the information and materials provided to the ESOP participants prior to their vote contained common and customary disclosures made by management in redemption transactions substantially similar to the 2017 Redemption. (*Id.* at 21.) He also opined that GreatBanc's decision to follow the overwhelming direction of the voting ESOP participants in favor of the 2017 Redemption was consistent with the common and usual practice of an independent ESOP trustee in substantially similar situations. (*Id.*) There is no fact or opinion evidence to the contrary.

Plaintiffs cannot marshal any evidence in support of their section 404(a)(1)(B) claim that disputes the fact and opinion evidence of GreatBanc's prudence and care in connection with the 2017 Redemption. As detailed in Defendants' Statement of Facts and the brief of the McBride Defendants, there are likewise no facts to support Plaintiffs' claim for co-fiduciary breach under section 405(a). GreatBanc is entitled to summary judgment on Count XIII and XV.

### C. Plaintiffs Section 406 Claim Fails (Count XI)

Plaintiffs allege in Count XI that GreatBanc violated ERISA section 406(a)(1)(A) and (D), as well as section 406(b)(2).

Plaintiffs' claim that GreatBanc violated ERISA section 406(a) fails because the undisputed evidence is that the "adequate consideration" exemption in section 408(e) applies. (*See* discussion of section 408, *supra* Section I(C)(1)(b).) The price the ESOP received as consideration for its shares exceeded fair market value, and there is no question that GreatBanc arrived at this determination by way of a prudent investigation in the circumstances then prevailing, as summarized above and detailed in Defendant's Statement of Facts. (DSOF ¶¶ 126-144.) Defendants' valuation expert Jeff Risius also performed an independent valuation of McBride as of November 30, 2017, and like Stern Brothers, concluded that the price the ESOP received as consideration for its shares exceeded fair market value. (**Ex. A**, Declaration and Expert Report of

Risius, at 1-28.) Furthermore, the ESOP participants overwhelming and independently determined the redemption price of ▮▮ per share was fair, particularly given the historic volatility and recent trajectory of the stock price (which had most recently fallen to ▮▮ per share as of December 31, 2016). (DSOF ¶¶ 112, 138.)

Plaintiffs' claim that GreatBanc violated ERISA section 406(b)(2) also fails. There is no evidence GreatBanc ever acted "on behalf of a party . . . whose interests are adverse to the interests of the plan", 29 U.S.C. § 1106(b)(2), and alternatively because the exemption in section 408(e) would apply even if there were a violation of section 406(b)(2).

## IV.    **CONCLUSION**

For the foregoing reasons, the Court should grant GreatBanc summary judgment on all of Plaintiffs' claims.

Dated: November 12, 2021                    Respectfully submitted,

*/s/ Michael L. Scheier*
Michael L. Scheier (Ohio 0055512)
Brian P. Muething (Ohio 0076315)
Jacob D. Rhode (Ohio 0089636)
Keating Muething & Klekamp PLLC
One E. 4th Street, Suite 1400
Cincinnati, OH 45202
Tel:(513) 579-6400
Fax: (513) 579-6457
mscheier@kmklaw.com
bmuething@kmklaw.com
jrhode@kmklaw.com

Ross D. Taylor (6198181)
Keating Muething & Klekamp PLLC
125 S. Clark St., 17th Floor
Chicago, IL 60603

*Counsel for Defendant GreatBanc Trust Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 12, 2021, I caused true and correct copies of the foregoing to be filed electronically using the Court's CM/ECF system and to thereby be served upon all registered participants identified in the Notice of Electronic Filing in this matter on this date. This document is available for viewing and downloading on the CM/ECF system.

*/s/ Michael L. Scheier*