## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY GODFREY, et. al., | |
| Plaintiffs, | Case Number 18-cv-07918 |
| | Judge Matthew F. Kennelly |
| v. | Magistrate Judge Michael T. Mason |
| GREATBANC TRUST COMPANY, et al., | **Oral Argument Requested** |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF McBRIDE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

STANDARD OF REVIEW ............................................................................................. 1

ARGUMENT .................................................................................................................. 2

I.    The McBride Defendants Are Entitled to Summary Judgment on the 2013
Reorganization Claims. ...................................................................................... 2

    A.    The McBride Defendants Did Not Act as Fiduciaries in the 2013 Reorganization ...... 2

    B.    The McBride Defendants Did Not Breach Fiduciary Duties in the 2013
Reorganization. ......................................................................................... 4

        1.    The McBride Defendants Engaged in a Prudent Process. ...................................... 4

        2.    The 2013 Reorganization Was in the Best Interest of Plan Participants. ............... 6

    C.    The 2013 Reorganization Did Not Involve Any Non-Exempt Prohibited
Transaction. ............................................................................................... 8

    D.    The McBride Defendants Are Entitled to Summary Judgment on the Co-Fiduciary
and Knowing Participation Claims. ........................................................... 10

II.    There Is No Genuine Dispute of Material Fact Regarding the Compensation Claims...... 10

    A.    Eilermann and Arri Did Not Function as Fiduciaries with Respect to Compensation
Decisions. .................................................................................................. 10

    B.    Eilermann and Arri Did Not Commit Any Breach Regarding Compensation. .......... 12

        1.    There Were No Stock Distributions. ................................................................. 13

        2.    Eilermann and Arri Did Not Breach Their Duties in Setting Compensation. ......... 13

III.    The McBride Defendants Are Entitled to Summary Judgment on the 2017 Redemption
Claims. ............................................................................................................. 15

    A.    MS Capital Was Not a Fiduciary With Respect to the 2017 Redemption. ................. 15

    B.    MS Capital, Eilermann, and Arri Did Not Knowingly Participate in ERISA
Violations with Respect to the 2017 Redemption. ...................................... 16

IV.    The McBride Defendants Did Not Breach Any Duty to Monitor GreatBanc. ................. 19

CONCLUSION ............................................................................................................... 21

CERTIFICATE OF SERVICE ........................................................................................ 23

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Burton v. Kohn L. Firm, S.C.*,
   934 F.3d 572 (7th Cir. 2019) ............................................................................... 1

*Coyne & Delany Co. v. Selman*,
   98 F.3d 1457 (4th Cir. 1996) ............................................................................. 19

*Dean v. Nat'l Union Workers Severance Trust Plan*,
   502 F. Supp. 3d 1320 (N.D. Ill. 2020) ............................................................... 4

*Fish v. Greatbanc Tr. Co.*,
   No. 09 C 1668, 2016 WL 5923448 (N.D. Ill. Sept. 1, 2016) ........................... 20, 21

*Hans v. Tharaldson*,
   No. 3:05-cv-115, 2011 WL 7179644 (D.N.D. Oct. 31, 2011) ......................... 16, 17

*Hunter v. Schneider Nat. Carriers, Inc.*,
   No. 10 C 7327, 2011 WL 2516517 (N.D. Ill. June 23, 2011) ............................ 1

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ........................................................................... 12

*Keach v. US Trust Co., N.A.*,
   256 F. Supp. 2d 818 (C.D. Ill. 2003) ................................................................ 16, 17

*Laime v. U.S. Trustee*,
   540 U.S. 526 (2004) ........................................................................................... 12

*Lingis v. Motorola, Inc.*,
   649 F. Supp. 2d 861 (N.D. Ill. 2009) *aff'd sub nom. Howell v. Motorola, Inc.*,

   633 F.3d 552 (7th Cir. 2011) ............................................................................. 19

*Martin v. CareerBuilder, LLC*,
   No. 19-CV-6463, 2020 WL 3578022 (N.D. Ill. July 1, 2020) ........................... 19

*Newton v. Van Otterloo*,
   756 F. Supp. 1121 (N.D. Ind. 1991) .................................................................. 21

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ........................................................................................... 2, 10

**Statutes**

26 U.S.C. § 409(p) ..................................................................................................... 4, 5

U.S.C. § 3(21)(A) ........................................................................................................... 12

29 U.S.C. § 406(b)(2) ....................................................................................................... 9

29 U.S.C. § 1002(21)(A) ............................................................................................ 10, 11

29 U.S.C. § 1104(a) ......................................................................................................... 2

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................ 1

**Regulations**

26 C.F.R. § 1.409(p)-(b)(2)(iv) ....................................................................................... 5

26 C.F.R. § 1.409(p)-1(f)(4)(iii)(A) ................................................................................ 5

29 C.F.R. § 2509.75-8 ..................................................................................................... 19

29 C.F.R. § 2510.3-101 ................................................................................................... 11

29 C.F.R. § 2510.3-101(a)(2) .......................................................................................... 12

29 C.F.R. § 2510.3-101(c)(1) .......................................................................................... 12

Final Regulation Relating to the Definition of Plan Assets,
  51 Fed. Reg. 41,262 (Nov. 13, 1986) ........................................................................ 12

## INTRODUCTION

In their Second Amended Complaint, Dkt. 127, ("SAC"), Plaintiffs spin a facially interesting narrative of how the McBride Defendants, with the help of GreatBanc Trust Co. ("GreatBanc"), systematically looted the McBride & Son Employee Stock Ownership Plan ("Plan" or "ESOP") through a corporate reorganization, grants of stock and excessive compensation to executives, and the purchase of company stock from the ESOP for less than fair market value. Now that discovery is complete, it is clear that story was nothing but that—a phenomenal work of fiction. The undisputed facts show the value of the company and the ESOP's holdings increased as a result of the 2013 reorganization; the ESOP maintained full governance control; no equity was freely awarded and compensation was in line with the market; and the ESOP received more than fair market value for its company stock. Those defendants who bore fiduciary duties engaged in prudent decision-making processes, supported by independent and experienced advisors, and they acted prudently and in the best interest of the ESOP participants. The McBride Defendants are entitled to summary judgment on all counts.

## STANDARD OF REVIEW

Summary judgment is appropriate where, as here, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In response, "[t]he nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial." *Hunter v. Schneider Nat. Carriers, Inc.*, No. 10 C 7327, 2011 WL 2516517, at *1 (N.D. Ill. June 23, 2011). "If there is no triable issue of fact on even one essential element of the nonmoving party's case, summary judgment is appropriate." *Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019).

<u>**ARGUMENT**</u>

I.      **The McBride Defendants Are Entitled to Summary Judgment on the 2013 Reorganization Claims.**

With respect to the 2013 Reorganization, Plaintiffs allege that MS Management, Eilermann, and Arri breached fiduciary duties (Count IV), SAC ¶¶ 353-369, committed prohibited transactions (Count II), *id*. ¶¶ 385-399, and bear co-fiduciary liability for the breaches of GreatBanc and each other (Count V), *id*. ¶¶ 400-21. They also allege that Eilermann and Arri knowingly participated in fiduciary breaches and prohibited transactions by GreatBanc and each other (Count VI), SAC ¶¶ 422-30. The factual record proves these claims false.

**A.  The McBride Defendants Did Not Act as Fiduciaries in the 2013 Reorganization.**

Plaintiffs cannot sustain Counts II, IV, and V because each claim requires proof of fiduciary status, and the McBride Defendants did not function as fiduciaries with respect to the 2013 Reorganization. *See* 29 U.S.C. § 1104(a) ("a fiduciary shall discharge his duties . . ."); § 1106(a) ("A fiduciary with respect to a plan shall not. . ."); § 1106(b) ("A fiduciary with respect to a plan shall not . . ."), § 1105(a) ("a fiduciary with respect to a plan shall be liable . . ."). A finding that any of them served as a fiduciary for some purpose is not a finding that they were fiduciaries for all purposes; rather, "the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

As the Court has recognized, discretion or control over ERISA plan assets is necessary to give rise to fiduciary liability. Dkt. 154, Memorandum Opinion and Order ("Mem. Op.") at 11 ("The plaintiffs have plausibly alleged that the 2013 business reorganization was an act subject to ERISA's fiduciary standards, because it involved disposition of the Plan's assets—in fact it involved disposition of *all* of the Plan's assets.") (emphasis in original). Thus, to determine

2

whether a party functioned as a fiduciary with respect to the 2013 Reorganization, one must consider that party's role with respect to the transaction that implicated ERISA plan assets: the ESOP's exchange of its shares of stock. *See* Dkt. 259-4, Defendants' Joint Statement of Material Facts ("DSOF") ¶ 70.

The undisputed facts show that, rather than act on both sides of the plan assets transaction in the 2013 Reorganization, the McBride Defendants retained an independent trustee, GreatBanc, to act on behalf of the ESOP—just as they did with respect to the 2017 Redemption, discussed *infra*, § III. *See* Mem. Op. at 14-15 (dismissing fiduciary claims against Eilermann and Arri because they were on the opposite side of the transaction from the ESOP, represented by GreatBanc). McBride engaged GreatBanc "to perform additional services relating to the evaluation of the Transaction and a determination as to *whether to consent to the Transaction on behalf of the Plan and Trust*." DSOF ¶ 44 (citing Ex. 38 at GBT_0024942) (emphasis added). GreatBanc then retained its own advisors, conducted due diligence, and negotiated with McBride, securing contract terms that prohibited McBride from issuing any additional LLC Units without GreatBanc's consent on behalf of the ESOP. *Id.* ¶¶ 45-66. Finally, when the exchange of the ESOP's shares was consummated, Patrick DeCraene signed the Contribution Agreement on behalf of "GreatBanc Trust Company, not in its corporate capacity but solely in its capacity as Trustee of the McBride & Son Employee Stock Ownership Trust"[.] *Id.* ¶ 70 (citing Ex. 72 at MS_0013373).

In short, the McBride Defendants retained GreatBanc to act as the fiduciary on behalf of the ESOP in the 2013 Reorganization, and it did so. *See* Dkt. 259, GreatBanc Trust Company's Memorandum in Support of Motion for Summary Judgment ("GreatBanc Mem.") at 1-2. The McBride Defendants thus did not act as fiduciaries with respect to the 2013 Reorganization, and

they are entitled to summary judgment.

### B. The McBride Defendants Did Not Breach Fiduciary Duties in the 2013 Reorganization.

Even if they had been functioning as fiduciaries, which they were not, the McBride

Defendants are entitled to summary judgment on Count IV, the breach of fiduciary duty claim,

because (1) they engaged in a prudent process in carrying out the 2013 Reorganization, and (2)

the 2013 Reorganization was substantively prudent and in the best interest of Plan participants.

#### 1. The McBride Defendants Engaged in a Prudent Process.

"In evaluating the duty of prudence, courts look to the process the [fiduciaries] utilized

rather than the results achieved." *Dean v. Nat'l Union Workers Severance Trust Plan*, 502 F.

Supp. 3d 1320, 1330 (N.D. Ill. 2020). Eilermann and Arri, acting on behalf of MS Management,

engaged in a prudent process with respect to the 2013 Reorganization: they recognized a

looming, potentially catastrophic risk to the company and, in turn, to the ESOP, and they

engaged experienced advisors to develop and enact a solution.

Leading up to and during the Great Recession, three of the five members of McBride's

board of directors, who were also key executives left the company, two of them to compete

directly with McBride. DSOF ¶ 15. Eilermann and Arri, the only remaining Board members,

recognized that McBride suffered these departures, at least in part, because the executives'

synthetic equity plans required them to *leave* the company to capture the value they held in the

these plans. *Id.* ¶¶ 15, 30, 36. Although Eilermann and Arri similarly were incentivized to leave,

they did not—they stayed and led McBride and its ESOP back to financial health from the

extreme operational and financial distress of the Great Recession. *Id.* ¶¶ 17-29, 36.

They realized, however, that something must be done to align the incentives of key

management with those of the company, or it would only be reasonable for executives to depart.

4

*Id.* ¶¶ 30-36. In addition, they recognized that the company could potentially trigger limits under Internal Revenue Code ("Code") section 409(p) that could result in bankruptcy of the company. *Id.* ¶¶ 30-33. Considering the volatility of the housing industry, Eilermann and Arri reasonably believed that a decline in the company's stock price alone could trigger a 409(p) violation *even if the company never issued any additional synthetic equity. Id.* ¶ 31.[1] The 409(p) limits further prevented McBride from issuing any additional synthetic equity under the existing plans, even though McBride's independent compensation consultant and Advisory Board had previously recommended such awards, and GreatBanc had approved them. *Id.* ¶ 32. Moreover, the company was unable to provide new synthetic equity incentives that the McBride Defendants believed would be necessary to retain the next generation of leaders. *Id.* ¶ 33.

To address these problems, McBride engaged experienced and competent financial and legal advisors: Butcher Joseph Hayes to serve as a financial advisor and to propose an optimal strategic capital structure for the company, and Morgan, Lewis & Bockius LLP to provide legal advice regarding the potential restructuring. *Id.* ¶¶ 37-40. Together, the advisors proposed a series of transactions (*see id.* ¶¶ 67-84) designed such that, after the conversion of synthetic equity (*i.e.*, phantom stock and stock appreciation rights) into actual equity (*i.e.*, LLC units), the

---

[1] Code section 409(p) places limits on the amount of "stock" (defined to include many forms of equity, synthetic equity, and deferred compensation) in an ESOP-owned S-corporation that can be held by any individual. *See generally* 26 U.S.C. § 409(p). Violations of 409(p) are catastrophic from a federal tax standpoint for the corporation and the ESOP participants. They result in an automatic 50% tax payable by the S-corporation on the amount of holdings over the limit, *id.* § 4979A(c)(2), as well as automatic disqualification of the ESOP, immediate taxation of ESOP participants on accumulated ESOP benefits due to the ESOP disqualification, and loss of S-corporation status because the disqualified ESOP is not an eligible S corporation shareholder, thereby triggering full taxation of the corporation's taxable income that formerly passed through to the ESOP on a fully tax deferred basis. *See* 26 CFR § 1.409(p)-(b)(2)(iv).

For purposes of determining "stock" ownership in applying the section 409(p) limits, certain forms of deferred compensation are converted into "shares" for purposes of this calculation by dividing the present value of that deferred compensation by the fair market value of a share of the S-corporation's stock on that date. *Id.* § 1.409(p)-1(f)(4)(iii)(A). Therefore, a decline in the S-corporation's share price, holding all other factors constant, would increase the individual's "deemed-owned shares" and potentially trip the limit.

ESOP and certain members of management would hold the same effective equity ownership of McBride as they did pre-transaction. *Id.* ¶¶ 41-43. Although it was the parties' intent that the effective ownership remain the same, *id.* ¶ 43, in actuality, management's equity ownership of McBride *decreased*, while the ESOP's *increased*. *Id.* ¶¶ 75, 85.

In addition, the company engaged GreatBanc, a competent, independent, and experienced trustee well familiar with the company and the ESOP, to evaluate the proposed 2013 Reorganization on behalf of the ESOP. *Id.* ¶¶ 13, 44. The company communicated frequently with GreatBanc, providing information and answering questions. *Id.* ¶¶ 48-53. GreatBanc conducted its own prudent fiduciary process and determined that the 2013 Reorganization would be in the best interest of ESOP participants. *See* GreatBanc Mem. at 10-11.

The undisputed material facts thus demonstrate that the McBride Defendants: (1) recognized an existential threat to the company; (2) engaged competent advisors to develop a solution, provided them with necessary information, and communicated frequently with them; and (3) engaged a competent independent fiduciary to act on behalf of the ESOP, provided it with necessary information, and communicated frequently with it. The McBride Defendants' expert, Lee Bloom, confirmed that this process reflected the appropriate exercise of judgment on the part of the McBride Defendants. *See* Ex. A (Declaration of Lee Bloom, Ex. A, Expert Report of Lee Bloom at 4-10). The McBride Defendants therefore engaged in a prudent process for deciding whether to carry out the 2013 Reorganization, and they are entitled to summary judgment on the fiduciary breach claim.

### 2. The 2013 Reorganization Was in the Best Interest of Plan Participants.

Not only was the 2013 Reorganization the result of a prudent process, it was substantively a prudent and loyal decision that was in the best interest of the ESOP participants. First and foremost, the ESOP did not lose control of McBride as a result of the 2013

Reorganization, as Plaintiffs allege. *See* GreatBanc Mem. at 2-3. The 2013 Reorganization was specifically designed such that the ESOP would retain the same effective ownership over the company as it had before the Reorganization. DSOF ¶ 43. Stern Brothers' fairness opinion concluded that value of the ESOP's ownership in McBride would effectively remain the same. *Id.* ¶ 62. This was true *even after* making a number of conservative assumptions, including an assumed significant reduction of ESOP equity through free LLC Unit awards to management, which GreatBanc never had to allow—and which, in fact, never occurred. *Id.*[2]  Ultimately, the ESOP did not lose control of McBride in the 2013 Reorganization*, see* GreatBanc Mem. at 2-3, 5, and its effective ownership percentage of the company did not decrease. DSOF ¶¶ 54-57, 80, 87-88.

Moreover, Eilermann and Arri did not recognize any personal benefit (and no facts suggest MS Management benefited) from the 2013 Reorganization (other than, of course, through the continued strength and viability of the company). To the contrary, Eilermann and Arri agreed to surrender a significant amount of synthetic equity in connection with the conversion to LLC units as necessary for the 2013 Reorganization to occur—putting them in a *worse* equity value position compared to the synthetic equity they held pre-transaction. *Id*. ¶ 83. Plaintiffs' theory that the 2013 Reorganization left Eilermann and Arri in a better equity position relative to the ESOP is false. *See* Ex. A (Declaration of Lee Bloom, Ex. B, Rebuttal Report of Lee Bloom at 4) ("Mr. Eilermann's and Mr. Arri's ownership interest decreased from ███ ███ while the other members of Senior Management's share increased from ███████ ").

---

[2] Although the fiduciary breach determination must be made based on information known at the time of the alleged breach, it is notable that, in each year following the 2013 Reorganization before the termination of the ESOP in 2017, McBride exceeded the ███ annual revenue growth assumption that Stern Brothers determined was a reasonable assumption. DSOF ¶ 63. Stern Brothers attributed this success to the 2013 Reorganization, the issues it solved, and the alignment of incentives it provided. *Id.*

Because the 2013 Reorganization did not personally benefit Eilermann and Arri, did not decrease the ESOP's effective ownership over the company, and eliminated a real existential threat to the company, the McBride Defendants committed no fiduciary breach.

### C. The 2013 Reorganization Did Not Involve Any Non-Exempt Prohibited Transaction.

Plaintiffs allege that MS Management, Eilermann, and Arri committed prohibited transactions in the course of the 2013 Reorganization. As explained above, they did not function as fiduciaries and thus could not have violated ERISA section 406.

Even if they had functioned as fiduciaries, however, the only transaction involving ERISA plan assets was exempt from ERISA section 406 by ERISA section 408(e) because the ESOP received adequate consideration when it exchanged its MS Companies stock for MS Capital stock, as proven in GreatBanc's Memorandum in Support of its Motion for Summary Judgment. *See* GreatBanc Mem. at 9-10.

Plaintiffs further allege that Eilermann and Arri violated ERISA section 406(b)(1) by "[giving] themselves an interest in the MS Companies, Inc. stock" and "issuing themselves Class B Units of MS Companies, LLC." SAC ¶ 363. This claim fails because Plaintiffs have not identified any transaction in ERISA plan assets—only alleged transactions between Eilermann and Arri and the company. DSOF ¶¶ 67-85. That fatal legal error aside, discovery has shown that the factual premise was simply false: Eilermann and Arri never gave themselves MS Companies, Inc. stock nor issued themselves LLC Units of MS Companies LLC; rather, they received less than full value in exchange for their synthetic equity that was canceled, and they paid fair market value for additional LLC Units. *See id.* ¶¶ 81-90.[3]

---

[3] Plaintiffs further allege, again, that the Plan's exchange of assets was for less than adequate consideration, SAC ¶ 363, and, again, those allegations have been proven false above, *see supra* Part I.C; DSOF ¶¶ 66, 76, 82-90; GreatBanc Mem. at 9-10

Plaintiffs next allege that MS Management, Eilermann, and Arri violated ERISA section 406(b)(2), which prohibits a fiduciary of the plan from, "act[ing] in any transaction involving the plan on behalf of a party (or represent[ing] a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries[.]" 29 U.S.C. § 406(b)(2). Plaintiffs do not articulate on whose behalf the McBride Defendants are alleged to have acted that held interests adverse to the Plan, SAC ¶ 364, implying at most that in some fashion Eilermann and Arri increased their ownership of the company through the 2103 Reorganization, to the detriment of the Plan. *Id*. As shown above, however, Eilermann and Arri's ownership did not increase, and the ESOP's ownership did not decrease, as a result of the 2013 Reorganization, and the 2103 Reorganization was *beneficial* to the Plan. *See supra* Part I.B.2; DSOF ¶¶ 62-66, 80, 87-88.

Finally, Plaintiffs maintain that the McBride Defendants violated ERISA section 406(b)(3), ERISA's anti-kickback provision, which prohibits a fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3); SAC ¶ 365. There are no facts suggesting any McBride Defendant received any kickback. The McBride Defendants are entitled to summary judgment on this claim because the undisputed facts show that any assets Eilermann or Arri received personally were either *purchased* for fair market value, DSOF ¶¶ 85, 89, or they received less than full compensation for the synthetic equity they surrendered. *Id*. ¶ 83.

In short, the ESOP received adequate consideration in exchange for its assets; thus, all alleged prohibited transactions were exempt under ERISA section 408(e), and none of the McBride Defendants benefited at the expense of the ESOP. The ESOP suffered no losses, and MS Management, Eilermann, and Arri gained no profits from the 2013 Reorganization.

Summary judgment must be granted in their favor on the prohibited transaction claims.

### D. The McBride Defendants Are Entitled to Summary Judgment on the Co-Fiduciary and Knowing Participation Claims.

Finally, the McBride Defendants are entitled to summary judgment on the claims for co-fiduciary liability (Count V) and knowing participation (Count VI). Both counts require proof of an underlying breach, which is absent. *See supra*, Part I.A-C. In addition, with respect to any claim arising out of an ERISA violation by GreatBanc, the McBride Defendants had no reason to know of any breach: they engaged in a prudent process, hired experienced and competent advisors, and relied on them. *See supra*, Part I.B.1. None of those advisors suggested GreatBanc was breaching any duty. Similarly, they were aware that GreatBanc in turn had hired its own experienced and competent advisors, *see supra id.* If there was any flaw in GreatBanc's internal processes, there are no facts suggesting that the McBride Defendants were privy to such information. Summary judgment should be granted to the McBride Defendants.

## II. There Is No Genuine Dispute of Material Fact Regarding the Compensation Claims.

In Counts VIII through X, Plaintiffs bring claims against various McBride Defendants arising out of a supposed loss of value to the ESOP from 2013 to 2017 based on the payment of executive compensation (the "Compensation Claims").

### A. Eilermann and Arri Did Not Function as Fiduciaries with Respect to Compensation Decisions.

ERISA explicitly enumerates statutory standards by which to determine whether an individual has functioned as a fiduciary with respect to any given act. *See generally* 29 U.S.C. § 1002(21)(A). Application of these statutory standards must *precede* any consideration of whether there has been an ERISA violation. *See Pegram*, 530 U.S. at 225-26 (fiduciary status is a "threshold question"). Therefore, one must walk through ERISA's fiduciary definition and apply it to the action in question before proceeding to assess whether there was a breach.

10

Applying ERISA's fiduciary definition confirms that Plaintiffs are unable to clear the first hurdle—Eilermann and Arri did not function as fiduciaries with respect to the acts alleged in the Compensation Claims. As relevant here, ERISA provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]" 29 U.S.C. § 1002(21)(A). In the Compensation Claims, there are no allegations pertaining to management of the Plan; rather, the allegations pertain solely to corporate actions that allegedly had a dilutive effective on the Plan's holdings (company stock disbursements and alleged excessive compensation by the company). That leaves the only potentially applicable definition of "fiduciary" to be a person who "exercises any authority or control respecting *management or disposition of [the plan's] assets*[.]" *Id.* (emphasis added).

Plaintiffs do not claim that Eilermann and Arri gave themselves plan assets; rather, Plaintiffs allege they gave themselves *company* stock and paid themselves excessive compensation from *company* assets. These did not occur, but if they had, these alleged actions, as a matter of law, do not constitute the management or disposition of ERISA plan assets. The U.S. Department of Labor has provided clear and explicit instruction regarding when transactions in the assets of a corporate entity owned by an ERISA plan constitute transactions in ERISA plan assets, and when they do not. *See* 29 C.F.R. § 2510.3-101 ("Plan Assets Regulation"). That the plan holds some or even all of an entity's stock does not automatically convert the entity's underlying assets into ERISA plan assets. Rather, the Plan Assets Regulation provides, in relevant part:

> [I]n the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment company

11

registered under the Investment Company Act of 1940 its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity, *unless it is established that—*

(i) *The entity is an operating company*, or

(ii) Equity participation in the entity by benefit plan investors is not significant.

29 C.F.R. § 2510.3-101(a)(2) (emphasis added). The Plan Assets Regulation further provides that an "operating company" is an entity that is "primarily engaged, directly or through a majority owned subsidiary or subsidiaries, in the production or sale of a product or service other than the investment of capital." 29 C.F.R. § 2510.3-101(c)(1).[4]

Here, there can be no dispute that McBride is an operating company: it is primarily engaged in building and selling homes. DSOF ¶ 1. The ESOP's investment in McBride stock therefore does not transform McBride's assets into ERISA plan assets. Any distribution of company stock Eilermann and Arri might have effectuated (and there was none) and any payment of compensation from the company's assets did not constitute the exercise of authority or control over ERISA plan assets under 29 U.S.C. section 3(21)(A).[5] They therefore cannot give rise to fiduciary status for Eilermann or Arri, and summary judgment is warranted.

**B. Eilermann and Arri Did Not Commit Any Breach Regarding Compensation**.

---

[4] The preamble to the Plan Assets Regulation explains that the operating company exception "was intended to distinguish between companies that carry on an active trade or business, and which thus are not likely vehicles for the indirect provision of investment management services, from investment funds which may well serve as conduits for the provision of such services." Final Regulation Relating to the Definition of Plan Assets, 51 Fed. Reg. 41,262, 41,270 (Nov. 13, 1986).

[5] The notion that self-interest can give rise to fiduciary status where it would not otherwise exist is nowhere to be found in the statutory text of ERISA nor in the Department of Labor's interpretive regulations. The Ninth Circuit in *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009), was incorrect to create its own standard when Congress and the appropriate federal agency had already articulated an unambiguous standard of fiduciary conduct. *See Laime v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (quotations omitted). Even if self-interest were the standard, there are no facts suggesting that Eilermann or Arri had any self-interest in allegedly inflating compensation for Schindler, Berger, or Todt—or, for that matter, for each other. Indeed, under Plaintiffs' theory, paying excess compensation to any other person would necessarily *diminish* the value of Eilermann's and Arri's own holdings in the company, meaning none of those actions were self-interested and therefore cannot form the basis—under any theory—for fiduciary status.

Even if Eilermann and Arri had been functioning as fiduciaries with respect to the facts alleged in the Compensation Claims, the undisputed facts show they committed no breach.

### 1. There Were No Stock Distributions.

Plaintiffs allege that, "The ESOP had a 'Loss of Value from 2013 to 2017' as a deliberate consequence of the 2013 ESOP Transaction." SAC ¶ 149. As the Court has explained, "Counts 8 (breach of duties of loyalty and prudence), 9 (co-fiduciary liability), and 10 (knowing participation in fiduciary breach) are all based, at least in part, on conduct associated with the stock distributions to MS Capital officers between 2013 and 2017." Mem. Op. at 16. The McBride Defendants are entitled to summary judgment on the Compensation Claims because the alleged stock distributions that Plaintiffs insist were a "deliberate consequence" of the December 31, 2013 transaction *never occurred*. There were no distributions of MS Capital stock to executives at any point between the 2013 and 2017 transactions.

Though Plaintiffs pled sufficient facts to state this claim, discovery has proven those facts to be false—there were no "stock distributions" between 2013 and 2017, and the Plan's effective ownership interest did not decrease. *See* DSOF ¶¶ 80, 87-89. With respect to the alleged "stock distributions," company stock was *never given* to executives during this time period—only *purchased for fair market value*. *Id.* ¶ 89. Moreover, at the time of the 2017 Redemption, the ESOP owned, through its 100% ownership of MS Capital, ██████████████████████████ ████████████████████████████████████████████. *Id.* ¶¶ 80, 87-88.

### 2. Eilermann and Arri Did Not Breach Their Duties in Setting Compensation.

Even if Eilermann and Arri had functioned as fiduciaries with respect to the payment of executive compensation between 2013 and 2017, they committed no breach. Every year from 2013 through 2016, Eilermann and Arri caused McBride to engage an independent compensation

consultant, Michael Lackey of Total Rewards Strategies ("TRS"), to perform an analysis of the market compensation rates for key managers at McBride: Eilermann, Arri, Schindler, Berger, and Todt. *Id.* ¶¶ 91-93, 102-03. Mr. Lackey was experienced, qualified, independent, and well familiar with McBride, and he had advised numerous other prominent businesses. *Id*. As part of the annual process, McBride provided financial documents and information to Mr. Lackey in response to his requests, including McBride's audited financial statements, forecasts, budgets, and historical compensation data. *Id*. ¶ 96 (citing Ex. 8 at 22:15-26:18). Mr. Lackey also met with company executives and with members of the Advisory Board. *Id.* ¶¶ 94-98, 103-111. TRS, in turn, prepared a report that ███████████████████████████████████████ ████████████████████████████████████ *Id.* ¶¶ 103-05.

After reviewing TRS's analysis, Eilermann and Arri developed a proposed compensation package for each of the five key managers. *Id.* ¶ 105. That proposal was based upon TRS's recommended compensation ranges, the performance of the company, and the performance of the individual manager. *Id.* (citing Ex. 8 at 22:15-23). Eilermann and Arri shared TRS's reports, along with their compensation proposals, with McBride's outside Advisory Board, which was comprised of highly qualified individuals who were well suited to review compensation data. *Id; see also* ¶¶ 11, 95-96, 105. The Advisory Board was familiar with McBride's performance and met regularly with management to discuss the company's financial results and goals. *Id.* ¶ 11, 16, 32, 95, 108, 110. Additionally, Eilermann and Arri shared certain of TRS's reports with GreatBanc and its valuation advisor, Stern Brothers, and provided them with actual compensation information each year. *Id.* ¶¶ 96, 109. GreatBanc reviewed management's executive compensation process and decisions each year. *Id.* ¶¶ 109-111. There is no indication that any of these parties ever raised any issues with TRS's compensation analysis or McBride's

compensation proposals. Ultimately, the corporate board (comprised of Eilermann and Arri) made a final decision on compensation. *Id.* ¶¶ 102-11. McBride paid its executives in line with the market rates, as determined by TRS. *Id.* ¶ 106. To the extent Eilermann and Arri owed any fiduciary duties to the ESOP in determining executive compensation, those duties were fulfilled.[6]

### III. The McBride Defendants are Entitled to Summary Judgment on the 2017 Redemption Claims.

#### A. MS Capital Was Not a Fiduciary With Respect to the 2017 Redemption.

Following the Court's ruling on the McBride Defendants' Partial Motion to Dismiss Second Amended Complaint, Dkt. 111, Counts XII (prohibited transactions), XIV (breach of fiduciary duty), XV (co-fiduciary liability), and XVI (knowing participation) remained against MS Capital. Mem. Op. at 26. Because MS Capital was indisputably not a fiduciary with respect to the 2017 Redemption, MS Capital is entitled to summary judgment on Counts XII, XIV, and XV. (Count XVI is discussed *infra*, section III.B.)

MS Capital was not a fiduciary to the Plan with respect to the 2017 Redemption, for the same reasons this Court already concluded that Eilermann and Arri were not fiduciaries—it was a *counterparty* to the transaction with the Plan. DSOF ¶ 146. This Court explained:

> The plaintiffs have alleged that Eilermann and Arri, *acting on behalf of MS Capital*, proposed to buy the Plan's MS Capital stock. When GreatBanc agreed to this sale proposal, Eilermann and Arri, *acting on behalf of the MS Capital*, bought MS Capital stock from the Plan. Thus, the plaintiffs have alleged that the role of Eilermann and Arri in this transaction was that of the purchaser of the Plan's shares. The plaintiffs have not alleged that Eilermann and Arri exercised any authority to approve the sale on behalf of the Plan. The plaintiffs have therefore failed to plausibly allege the fiduciary status of these two defendants with respect to the 2017 stock sale.

---

[6] Count IX (co-fiduciary liability) and Count X (knowing participation) both rely on an underlying breach of ERISA duties. Because there was no breach by any McBride Defendant or by GreatBanc, *see generally* GreatBanc Mem. at 1-21, there can be no derivative liability. Even if there were a breach by GreatBanc, there are no facts suggesting that the McBride Defendants were aware that GreatBanc had committed a breach. The McBride Defendants are entitled to summary judgment on these counts as well.

Mem. Op. at 25-26 (emphasis added). There is no factual dispute regarding the lack of fiduciary status on the part of MS Capital with respect to the 2017, and summary judgment is warranted in its favor on Counts XII, XIV, and XV.[7]

### B. MS Capital, Eilermann, and Arri Did Not Knowingly Participate in ERISA Violations with Respect to the 2017 Redemption.

Plaintiffs claim that MS Capital, Eilermann, and Arri knowingly participated in the 2017 Redemption-related alleged ERISA violations set forth in Counts XI through XV. For the reasons described *supra* and in GreatBanc's Memorandum in Support of its Motion for Summary Judgment, there were no ERISA violations resulting from the 2017 Redemption.[8] Even if there were, however, the knowing participation claims against MS Capital, Eilermann, and Arri are demonstrably false.

The Supreme Court held that a non-fiduciary "party in interest" may be liable for knowing participation in limited circumstances where the non-fiduciary had "actual or constructive knowledge of the circumstances that rendered the [underlying] transaction unlawful." *Id.* In the context of an ESOP transaction, where a plaintiff establishes a breach of duty on the part of a fiduciary, non-fiduciary defendants may invoke "the substantive equivalent of a modified bona fide purchaser defense by establishing that [he or she] gave value for the trust property." *Hans v. Tharaldson*, No. 3:05-cv-115, 2011 WL 7179644, at *16 (D.N.D. Oct. 31, 2011) (quoting *Keach v. US Trust Co*., N.A., 256 F. Supp. 2d 818, 822 (C.D. Ill. 2003)). "If the nonfiduciaries are able to make such a showing, a presumption of good faith attaches, and the burden shifts back to the plaintiff to establish that the nonfiduciary defendants acted 'in bad faith

---

[7] Summary judgment is additionally warranted in favor of all remaining McBride Defendants on all counts related to the 2017 Redemption because there was no breach of fiduciary duty, no harm to the ESOP, and no non-exempt prohibited transaction because the sale of the ESOP's stock holdings was for no less than fair market value, for the reasons explained in GreatBanc's memorandum. *See* GreatBanc Mem. at 11-20.

[8] Because Eilermann and Arri were not fiduciaries, nor was MS Capital, *see supra*, Part III.A, Plaintiffs' remaining knowing participation claims necessarily depend on them demonstrating a fiduciary breach by GreatBanc.

or had actual or constructive notice of the circumstances that rendered the transaction unlawful.'" *Id.* (quoting *Keach*, 256 F. Supp. 2d at 822). A defendant is entitled to the presumption of good faith where plaintiffs do "not contest that the stock purchase transactions were for 'value'"—*i.e.*, "not gratuitous" and involving "consideration that was more than nominal." *Keach*, 256 F. Supp. 2d at 822.

Here, although Plaintiffs maintain that the ESOP was underpaid for the redemption, there is no dispute that the ESOP received more than nominal value. DSOF ¶ 146. Thus, the "presumption of good faith and lack of knowledge" attaches "unless Plaintiffs are able to rebut that presumption." *Keach*, 256 F. Supp. 2d at 822.

Plaintiffs cannot rebut the presumption. Indeed, under similar circumstances, the *Hans* court disposed of claims against non-fiduciary selling shareholders on summary judgment where there was "simply a lack of evidence to support a conclusion that they had actual knowledge of the circumstances that the stock purchase could be unlawful for failure to provide adequate consideration.'" *Hans*, 2011 WL 7179644, at *17. The court also rejected plaintiff's argument that the sellers "should have questioned the form of the transaction or . . . known their reliance on . . . an independent ESOP valuation professional was unreasonable." *Id.* at *17. Given the "complex valuation principles" involved, the "alleged unlawfulness would not be apparent to lay persons." *Id.* The court reasoned that holding otherwise would "require counterparties to a transaction[] with an ESOP plan to monitor for compliance with ERISA's intricate details – something the Supreme Court in *Harris Trust* cautioned against." *Id.*

Additionally, in *Keach*, the court rejected a claim against a non-fiduciary selling shareholder where there was "no indication that he was involved in the [ESOP's] decision making processes" and the "only indication of his involvement in the record is that he would

provide financial information to [the valuation firm] and others involved in the due diligence process . . . upon request." 256 F. Supp. 2d at 827.

Here, the undisputed facts show that the McBride Defendants did not know of any alleged breach by GreatBanc and did not have any reason to know. None of them was involved in GreatBanc's decision-making process in which it evaluated and approved the 2017 Redemption—they did not have any access to the Stern Brothers valuation on which GreatBanc relied in determining that the price paid for participants' stock was reasonable. DSOF ¶¶ 130-34 (citing Ex. 8 at 134:22-135:15, 141-44). None of the McBride Defendants attended the meeting at which GreatBanc's fiduciary committee voted to approve the redemption transaction, nor did they otherwise have any say in its approval. *Id.* ¶ 142. The company and GreatBanc each engaged legal and financial advisors who were highly experienced with ESOP transactions and familiar with the company. *Id.* ¶¶ 118, 120, 124, 125. GreatBanc and its advisors conducted extensive due diligence and financial analysis and asked questions. *Id.* ¶¶ 125-28, 130-33, 142. GreatBanc's counsel negotiated the terms of the redemption on behalf of the ESOP. *Id.* ¶ 134.

Moreover, the undisputed facts demonstrate that Mr. Eilermann and Mr. Arri did not have any reason to believe the ESOP's purchase price was below fair market value. Neither Eilermann nor Arri is a valuation professional, and thus neither had reason to question the validity of the share price set forth in Stern Brothers' valuations. To the contrary, the company's initial offer was specifically designed to represent a 20 percent premium over the company's most recent valuation of ███████ per share, as of December 31, 2016. *Id.* ¶¶ 113, 123. There can be no question that Eilermann and Arri reasonably believed that the 2017 Redemption price of ███████ per share exceeded fair market value. *Id.* ¶¶ 123, 134.

Far from "knowingly participating" in any breach, Eilermann and Arri had no involvement

in GreatBanc's process for approving the 2017 Redemption and, in fact, had a good faith belief that the redemption price was more than fair market value. There are no facts suggesting that MS Capital, as a corporate entity, possessed additional knowledge that Eilermann and Arri did not. Summary judgment should be granted on Count XVI in favor of all the McBride Defendants.

## IV. The McBride Defendants Did Not Breach Any Duty to Monitor GreatBanc.

Plaintiffs allege in Count XVII that MS Capital, Eilermann, and Arri breached their fiduciary duties to monitor and terminate GreatBanc as Plan trustee. The undisputed facts demonstrate that the McBride Defendants satisfied their duties.[9]

Although those who appoint fiduciaries have a duty to monitor them, 29 C.F.R. § 2509.75-8 at FR-17, courts have been unequivocal that this duty has "clear limits," *Lingis v. Motorola, Inc*., 649 F. Supp. 2d 861, 881 (N.D. Ill. 2009), *aff'd sub nom. Howell v. Motorola, Inc*., 633 F.3d 552 (7th Cir. 2011), and "does not "expose[] the appointing fiduciary to open-ended liability." *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465-66 & n.10 (4th Cir. 1996). To the contrary, courts "have properly taken a restrictive view of the scope of this [monitoring] duty and its attendant potential for liability." *Id*. A monitoring fiduciary need only review the appointed fiduciary's performance "[a]t reasonable intervals" and "in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards." *Lingis*, 649 F. Supp. 2d at 881 (quoting Dep't of Labor Interpretive Bulletin, 29 C.F.R. § 2509.75-8 at FR-17). Thus, Plaintiffs' theory that the McBride Defendants were required to constantly supervise and second-guess GreatBanc is baseless.

Creating such a standard "would defeat the purpose of having trustees appointed to run a

---

[9] Monitoring claims are derivative claims that require an antecedent breach. *Howell*, 633 F.3d at 563; *Martin v. CareerBuilder, LLC*, No. 19-CV-6463, 2020 WL 3578022, at *6 (N.D. Ill. July 1, 2020). MS Capital, Eilermann, and Arri cannot be liable for failing to monitor GreatBanc because, as shown above and in GreatBanc's memorandum, GreatBanc did not breach its fiduciary duties. *See* GreatBanc Mem. at 4-7, 13-16.

benefits plan in the first place." *Howell*, 633 F.3d at 573. Imposing such an intrusive duty would be particularly inappropriate in the case of an ESOP transaction in which the purchaser is on the *opposite* side of the transaction as the ESOP's trustee and has appointed the trustee for the specific purpose of providing independent professional judgment on behalf of the ESOP. *See Fish v. Greatbanc Tr. Co.*, No. 09 C 1668, 2016 WL 5923448, at *53 (N.D. Ill. Sept. 1, 2016) ("[R]equiring defendants to inject themselves into GreatBanc's decision-making process to satisfy ERISA's duty to monitor is contrary to the very reason an ESOP sponsor should hire an independent fiduciary."). Rather, courts have found the duty to monitor to be satisfied where the appointing parties held occasional meetings with the trustee, familiarized themselves with the trustee's negotiating positions, and communicated frequently with the trustee. *See, e.g.*, *Fish*, 2016 WL 5923448, at *53 (granting summary judgment for defendants where defendants "gained a foundational understanding of the nature of GreatBanc's responsibilities, a basic understanding of the work performed by GreatBanc, and an awareness that GreatBanc was acting in the best interests of the ESOP participants").

Applying these standards, the McBride Defendants are entitled to summary judgment on Count XVII. GreatBanc had served as trustee to the ESOP for more than a decade and was in regular contact with the McBride Defendants through in-person due diligence meetings related to the annual valuations, as well as other meetings and calls with company management and Stern Brothers throughout the year, DSOF ¶¶ 12-13; as a result, the McBride Defendants had more than simply a "foundational understanding" of GreatBanc's duties and capabilities. *Fish*, 2016 WL 5923448, at *53. Then, for each transaction, the McBride Defendants, GreatBanc, and their respective advisors exchanged numerous communications and held multiple meetings regarding the proposed details of the transactions, as well as their underlying rationales and objectives,

including discussing revised scenarios and additional information requested by GreatBanc's advisors. Specifically, for the 2013 Reorganization, the McBride Defendants were aware that GreatBanc was provided access to a McBride data room, held multiple meetings and calls with the company's advisors, and negotiated terms of the reorganization documents with the company's legal counsel. DSOF ¶¶ 50, 54. For the 2017 Redemption, the McBride Defendants were aware that GreatBanc and its advisors reviewed management's financial projections, discussed with management the prospect of a third party sale, and reviewed Stern Brothers' valuation report and sensitivity analysis, negotiated the terms of the Redemption with McBride management, and even edited the Information Statement that McBride provided to the ESOP participants. *Id.* ¶¶ 126, 128-29, 130-33, 136. This level of oversight is more than sufficient to fulfill a fiduciary's duty to monitor, *see Fish*, 2016 WL 5923448, at *53, and nothing in the McBride Defendants' numerous interactions with GreatBanc suggested that GreatBanc was failing to appropriately discharge its duties as ESOP trustee. *See Newton v. Van Otterloo*, 756 F. Supp. 1121 (N.D. Ind. 1991) (directors did not breach fiduciary duty by failing to properly monitor plan administrator because there was "nothing that could be deemed to have put the Board members on notice of possible misadventure by their appointees"). The McBride Defendants are entitled to summary judgment on the duty to monitor claims.

## CONCLUSION

For the reasons set forth above, there is no genuine dispute of material fact on any claim against the McBride Defendants, and they each are entitled to summary judgment on all counts.

Dated: November 12, 2021                Respectfully submitted,

                                        /s/ *Lars C. Golumbic*

                                        Lars C. Golumbic (admitted *pro hac vice*)
                                        Sarah M. Adams (admitted *pro hac vice*)
                                        Shaun A. Gates (admitted *pro hac vice*)

Rachael E. Hancock (admitted *pro hac vice*)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW, Ste. 1200
Washington, DC 20006
Tel: (202) 861-6615; Fax: (202) 659-4503
Email: lgolumbic@groom.com
     sadams@groom.com
     sgates@groom.com
     rhancock@groom.com


Daniel Broderick, Jr.
ARDC No. 6304632
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
Tel: (312) 641-3100; Fax: (312) 444-1669
Email: DBroderick@cassiday.com

*Counsel for Defendants McBride & Son Management Company, LLC, John F. Eilermann, Jr., Michael D. Arri, and McBride & Son Capital, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2021, I electronically filed the foregoing document with the clerk of the court for The Northern District of Illinois, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

Dated: November 12, 2021

By: <u>/s/ *Lars C. Golumbic*       </u>
     Lars C. Golumbic