## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| **GREGORY GODFREY, et al.,** | **Case No. 1:18-cv-07918** |
| **Plaintiffs,** | **Judge Matthew F. Kennelly** |
| **v.** | **Magistrate Judge Michael T. Mason** |
| **GREATBANC TRUST COMPANY, et al.,** |  |
| **Defendants.** |  |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT STATEMENT OF MATERIAL FACTS

Pursuant to FRCP 56(c), LR 56.1(b)(2), and LR 56.1(e), Plaintiffs hereby submit their Response to Defendants' Joint Statement of Material Facts (Dkt. 258-4).[1]

---

[1] The Defendants in this case are McBride & Son Capital, Inc. ("**MS Capital**"), McBride & Son Management Company, LLC ("**MS Management**"), John F. Eilermann, Jr. ("**Eilermann**"), Michael D. Arri ("**Arri**") (collectively the "**McBride Defendants**"), and GreatBanc Trust Company ("**GreatBanc**"). Eilermann, Arri, Jeffrey Schindler ("**Schindler**"), Jeffrey Berger ("**Berger**"), and Jeffrey Todt ("**Todt**") collectively will be referred to as the "**Five Executives**." "**McBride**" or "**Company**" refers to the McBride & Son conglomerate of subsidiaries and assets that for the time-period at issue in this case were owned by McBride & Son Companies, Inc. ("**MS Companies, Inc.**") and then through a combination of ownership by MS Capital and McBride & Son Companies, LLC ("**MS Companies, LLC**"). The McBride & Son Employee Stock Ownership Plan will be referred to as the "**ESOP**" or the "**Plan**").

References to Defendants' Joint Statement of Material Facts (Dkt. 258-4) will be noted as "**DSOF ¶ [#]**." Plaintiffs' responses to Defendants' Joint Statement of Material Facts will be noted as "**PRF ¶ [#]**." Plaintiffs' Combined Statement of Additional Material Facts and Statement of Material Facts (filed concurrently) will be noted as "**PAF ¶ [#]**." Plaintiffs' exhibits will be referenced as "**PE**." Defendants' use of "Ex." has been substituted with "**DE**" for clarity.

**THE MCBRIDE & SON EMPLOYEE STOCK OWNERSHIP PLAN**

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 1 | McBride & Son Homes ("McBride" or the "Company") is a residential homebuilder that operates principally in the St. Louis metropolitan area. (**DE 1**, 2016 Stern Brothers Valuation ("2016 Val."), MS_0003689 at MS_0003704). Since its formation in 1946, McBride has grown to be one of the largest residential homebuilders in Missouri. (**DE 2**, 2013 Trustee Briefing, MS_0007790 at MS_0007799). | Admitted. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 2 | The McBride & Son Employee Stock Ownership Plan ("ESOP" or "Plan") became effective December 1, 1987. (**DE 3**, 2017 Summary Plan Description, STERN0004518 at STERN4541). On November 30, 2017, the Plan was converted from an employee stock ownership plan to a profit sharing plan. (**DE 4**, Redemption Agreement, MS_0000319 at MS_0000332). On December 15, 2017, the assets of the profit sharing plan were transferred to the McBride & Son 401(k) Savings Plan. (**DE 5**, Trust to Trust Transfer, MS_0006239-40). | Admitted. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 3 | The ESOP was maintained pursuant to a written plan document and was designed to allow eligible employee-participants "to share in the growth and prosperity of the Company through the accumulation of Company Stock in their respective accounts." (**DE 6**, Amended and | Admitted. |

2

|   | |
|---|---|
|   | Restated 2017 Plan Document ("2017 Plan Doc."), MS_0006300 at MS_0006308; **DE 7**, Amended and Restated 2013 Plan Document ("2013 Plan Doc."), MS_0006398 at MS_0006405). |

|   | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 4 | From January 1, 2013 through December 31, 2013, the Plan was sponsored by McBride & Son Management Co. ("MS Management") and held shares of McBride & Son Companies, Inc. ("MS Companies Inc."). (**DE 7**, 2013 Plan Doc. §§ 2.8, 2.9). | Admitted. |

|   | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 5 | John Eilermann Jr. and Michael D. Arri served on the Board of Directors of MS Companies until December 31, 2013. (**DE 8**, McBride Rule 30(b)(6) Deposition ("McBride 30(b)(6) Dep.") 66:16-23). | Admitted but incomplete. Eilermann and Arri were the only members of the Board. |

|   | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 6 | From January 1, 2014 through November 30, 2017, the Plan was sponsored by McBride & Son Capital, Inc. ("MS Capital") and held shares of MS Capital. (**DE 9**, Amendment No. Two to 2013 Plan Doc., MS_0006493-94). | Admitted that MS Capital was the plan sponsor but it was from December 31, 2013 not January 1, 2014. **DE 77** - Assignment and Assumption Agreement - MS_0014310 at MS_0014310 (dated and executed December 31, 2013).<br><br>Admitted that the ESOP held MS Capital stock except that while the governing plan amendment may state it was effective January 1, 2014 (**DE 9** - Amendment No. Two to 2013 Plan Doc. - MS_000693 at MS_0006493) the Contribution Agreement states the ESOP first held shares of MS Capital as of December 31, 2013 at 11:59pm. **DE 72** - MS_0013365 at MS_0013366 (the "Initial Capital Contribution" (§ 1.2) "shall occur at 11:59 p.m., local time, on December 31, 2013" (§ 2)). |

|  | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 7 | GreatBanc appointed John Eilermann Jr. and Michael D. Arri to serve on the Board of Directors of MS Capital. (**DE 8**, McBride 30(b)(6) Dep. 12:5-14). | Admitted but incomplete. GreatBanc did not appoint any other members of the Board. |

|  | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 8 | At all relevant times from 2014 through 2017, John Eilermann Jr. and Michael D. Arri served as the Board of Managers for McBride & Son Companies, LLC ("MS Companies LLC"). (**DE 8**, McBride 30(b)(6) Dep. 81:15-25; **DE 10**, Deposition of Michael Arri ("Arri Dep.") 169:3-16; **DE 11**, 12/31/13 LLC Agreement § 5.1). | Admitted but incomplete. No other persons served on the Board of Managers of MS Companies, LLC. |

|  | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 9 | John F. Eilermann Jr. served as the CEO of McBride at all relevant times between January 1, 2013 and December 15, 2017. (**DE 12,** 2012 Stern Brothers Valuation ("2012 Val."), MS_0003210 at MS_0003226; **DE 13**, 2013 Stern Brothers Valuation ("2013 Val."), MS_0003783 at MS _003800; **DE 14**, 2014 Stern Brothers Valuation ("2014 Val."), MS_0003353 at MS_0003369; **DE 15**, 2015 Stern Brothers Valuation ("2015 Val."), MS_0005129 at MS_0005145; **DE 1**, 2016 Val., MS_0003689 at MS_0003706; **DE 16**, Deposition of John Eilermann ("Eilermann Dep.") 37:3-9). | Admitted. |

|    | Defendants' Fact | Plaintiffs' Response |
|----|------------------|----------------------|
| 10 | Michael D. Arri served as the CFO of McBride at all relevant times between January 1, 2013 and December 15, 2017. (*Id.*; **DE 8**, McBride 30(b)(6) Dep. 10:18-23). | Admitted. |

|    | Defendants' Fact | Plaintiffs' Response |
|----|------------------|----------------------|
| 11 | In addition to its board of directors, McBride also relied upon an outside advisory board of directors (the "Advisory Board"). (*Id.* 12:23-16:6; **DE 16**, Eilermann Dep. 189:14-192:16). At times relevant to this lawsuit, that outside Advisory Board consisted of qualified members, including Jim Snowden, an investment banker who had served on numerous other public and private boards; Jerry Carmody, an attorney in St. Louis; Steve Rafferty, a business consultant who had served on the advisory board since 1982; and Kip Scott, the former chief operating officer of Ryland Homes, one of the three largest homebuilders in the United States. (**DE 10**, Arri Dep. 46:5-24, 104:4-105-17, 197:8-22; **DE 16**, Eilermann Dep. 191:6-192:16; **DE 8**, McBride 30(b)(6) Dep. 12:23-16:6). The Advisory Board met at least six times each year. (**DE 8**, McBride 30(b)(6) Dep. 16:20-17:4). | Disputed. <br><br> Defendants misrepresent the roles played by these four individuals who were not employees of McBride (hereafter "Outside Individuals"). No evidence cited by Defendants states that the Outside Individuals ever called themselves a "board of directors." They were not. <br><br> Instead, a larger group of McBride employees, including the Five Executives, along with the Outside Individuals formed what was called the Advisory Board. **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 12:23 – 13:16, 18:6 – 18:14; **PE 30** - Oct. 9, 2017 Email from Templeton re Advisory Board - MS_0034136 at MS_0034136 (emailing multiple McBride employees beyond the Outside Individuals); **PE 27** - Arri - Feb. 26, 2021 Depo at 197:12 - 197:22 ("They were the outside members on the advisory board."). <br><br> The Advisory Board played no role with regard to the ESOP. **PE 18** - Templeton - Oct. 6, 2020 Depo at 274:6 – 274:10; 275:15 – 276:10; 277:15 – 278:4; **PE 19** - Schindler - Jan. 29, 2021 Depo at 51:22 – 51:24. <br><br> The Advisory Board played no role with regard to compensation paid to the executives. **PE 18** - Templeton - Oct. 6, 2020 Depo at 274:23 – 275:3. <br><br> The Outside Individuals and the Five Executives together referred to themselves as an Executive Committee of the Advisory Board, with one of the members, Schindler, stating they would sometimes meet for a sandwich after the larger Advisory Board meetings that dealt purely with homebuilding operational aspects of McBride. The Executive Committee played no role with regard to the ESOP |

5

and executive compensation. **PE 19** - Schindler - Jan. 29, 2021 Depo at 49:22 – 50:14; **PE 22** - Todt - Feb. 18, 2021 Depo at 36:17 – 36:20; 37:24 – 38:6; 42:8 – 42:18; 44:11 – 44:15; 51:19 – 51:23; 55:13 – 57:10; 74:6 – 74:17; 76:21 – 77:2; 79:14 – 79:24, 89:6 – 89:24.

To the extent the Outside Individuals met with Eilermann and Arri, it would be over dinner and drinks the night before the larger operational Advisory Board met. There were no formal meetings with just the Outside Individuals. **PE 24** - Eilermann Feb. 23, 2021 Depo at 193:20 – 194:20; **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 19:7 – 20:18; **PE 31** - Aug. 10, 2016 Email from Rafferty with Agenda - MS_0034743 at MS_0034746 (showing six scheduled "Dinner Meetings" for Eilermann, Arri, and the Outside Individuals).

The Outside Individuals were not fiduciaries and did not hold votes. **PE 24** - Eilermann - Feb. 23, 2021 - Depo at 196:15 – 196:23; **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 13:20 – 14:4.

Eilermann and Arri, in their capacity as Board members of McBride, never delegated any authority to the Outside Individuals. **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 13:20 – 14:4; 18:15 – 18:18.

GreatBanc was aware that at no time did the Outside Individuals have any ability to override the decisions of Eilermann and Arri as the only members of the Board of Directors and that the Outside Individuals had no ability to set or control the compensation of McBride executives. **PE 25** - DeCraene Feb. 24, 2021 Depo at 37:15 – 38:25; 44:23 – 45:17; **PE 5** - March 19, 2021 Goldman Report at p. 14 ¶ 65; **PE 6** - Goldman April 30, 2021 Rebuttal Report - at p. 1.

The Outside Individuals were also conflicted because they were appointed by Eilermann and Arri and they received compensation controlled by Eilermann and Arri. **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 13:17 – 13:19; 14:10 – 16:3; **PE 24** - Eilermann Feb. 23, 2021 Depo at 190:16 – 190:24; **PE 25** - DeCraene Feb. 24, 2021 Depo at 37:10 – 37:14.

|    | Defendants' Fact | Plaintiffs' Response |
|----|------------------|----------------------|
| 12 | On December 18, 2001, McBride appointed GreatBanc as the successor trustee for the ESOP. (**DE 17**, GBT Successor Trustee Engagement Agreement GBT_0024951). GreatBanc retained Stern Brothers Valuation Advisors ("Stern Brothers"), which had served as the financial advisor to the ESOP since at least the early 1990s, to remain as the independent financial advisor to the ESOP and to perform the annual ESOP valuations. (**DE 18**, 8/3/17 Arri Email to Alexander, MS_0012443; **DE 27**, 3/12/19 Arri Dep. 15:17-25, 41:6-8). GreatBanc and Stern Brothers served as the ESOP's trustee and financial advisor, respectively, at all times relevant to this lawsuit. (**DE 19**, Deposition of Patrick DeCraene ("DeCraene Dep.") 24:7-25:9, 27:12-21; **DE 20**, Stern Brothers Rule 30(b)(6) Deposition ("Stern Bros. 30(b)(6) Dep.") 14:1118, 194:5-195:3, 225:3-19). | Admitted that GreatBanc was appointed successor trustee for the ESOP on December 18, 2001 except that as Defendants define McBride in in the **DSOF ¶ 1**, McBride is not the entity that appointed GreatBanc. Instead, it was Richard Sullivan, who at the time was CEO and was acting on behalf on McBride & Son Enterprises, Inc., the corporate entity of which stock was held by the ESOP at that time. *See* **DE 17** - GBT Successor Trustee Engagement Agreement - GBT_0024951 at GBT_0024957.<br><br>Admitted that GreatBanc and Stern Brothers served as the ESOP's trustee and financial advisor. |

|    | Defendants' Fact | Plaintiffs' Response |
|----|------------------|----------------------|
| 13 | Patrick DeCraene of GreatBanc began providing trustee services to the McBride ESOP beginning in early 2002, and he became GreatBanc's lead representative to the McBride ESOP. (**DE 19**, DeCraene Dep. 193:5-194:12). As such, he was in regular contact with company management, including John Eilermann and Mike Arri, and with Stern Brothers' employees. (*Id.* 164:5-16, 195:8-196:24). This included in-person due diligence meetings at McBride related to the annual valuations, as well as other | Admitted. |

| | |
|---|---|
| meetings and calls with company management and Stern Brothers throughout the year. (*Id.* at 192:14-198:17; **DE 20**, Stern Bros. 30(b)(6) Dep. 172:10-25, 202:4-205:8; **DE 16**, Eilermann Dep. 224:13-22; **DE 8**, McBride 30(b)(6) Dep. 57:25-59:18:, 62:17-64:8). | |

## DECEMBER 31, 2013 REORGANIZATION

**A.    The Company just emerged from the Great Recession.**

| | |
|---|---|
| | **Defendants' Fact** |
| 14 | McBride, like all homebuilders, operates in a cyclical industry prone to volatile swings in value. (**DE 21**, 2017 Trustee Briefing, MS_0000990 at MS_0000995). The value of stock allocated to Plan participants' accounts is likewise volatile. (**DE 22**, 2017 Employee Presentation, MS_0002796 at MS_0002804). ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ The Company's stock price by year is illustrated below:

**Value of Company Stock From 1988-2016**

███████████████████████████████████████████████████████████████ |
| | **Plaintiffs' Response** |
| | Disputed in that the evidence cited by Defendants does not demonstrate that all homebuilders operate in a cyclical industry prone to volatile swings in value.  Likewise the evidence does not demonstrate that the value of the Participants stock had volatile swings. In fact, a chart |

that appears in both exhibits cited by Defendants, shows that during the two previous "recessions" before 2008 (denoted by the gray shading), the ESOP stock price went down slightly during one and increased during the other. **DE 21 -** 2017 Trustee Briefing - MS_0000989 at MS_0000996; **DE 22 -** 2017 Employee Presentation - MS_0002796 at MS_00002805.

Admitted that Stern Brothers opinion of the value of the stock held by the ESOP was █████ ████████████████████████████████████

Admitted that the Value of Compacy Stock From 1988 - 2016 chart shows the Stern Brothers' opinion of the value of the stock held by the ESOP.

|    | Defendants' Fact | Plaintiffs' Response |
|----|------------------|----------------------|
| 15 | During the time leading up to and into the Great Recession, three of the five members of McBride's board of directors, who were also key executives—Ted Dettmer, Rick Sullivan, and Dave Marxkors—left the company ██████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ **(DE 8,** McBride 30(b)(6) Dep. 51:17-52:21, 111:16-116:16; **DE 10,** Arri Dep. 48:8-49:17; **DE 19,** DeCraene Dep. 138:7-139:10). After leaving, Mr. Dettmer and Mr. Sullivan started businesses that directly competed with McBride. (**DE 8,** McBride 30(b)(6) Dep. 112:20114:7). Numerous other key managers also left the company to go into competing businesses. (*Id*). | Disputed. Objection: Hearsay, lack of foundation, lack of personal knowledge, best evidence rule. The evidence cited by Defendants does not actually demonstrate the reasons the cited executives allegedly left McBride or that they ████████████████ ████████████████████████ ████████████████████████ ██████ ██ ██ ████ ████ ████████████████████████. Instead, Defendants only cite self-serving deposition testimony consisting largely of hearsay (what these persons told the deponents) about what third parties did and their personal motivations. This evidence is inadmissible hearsay and does not reflect the deponent's personal knowledge. Further, Mssrs. Dettmer, Sullivan, and Marxkors were never listed in any 26(a)(1) disclosure of the Defendants and, therefore, Defendants have waived any argument that their departures, and their motivations, are relevant to the claims or defenses in this case. Further, the evidence cited does not demonstrate that ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ |

|  | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 16 | The two remaining board members and key executives—John Eilermann and Mike Arri—remained at McBride. (*Id.* 115:9-15). The Company and its Advisory Board recognized that the loss of these leaders, and John Eilermann in particular—given his reputation, relationships, and successful leadership—would have been catastrophic for the company and the ESOP. (**DE 10**, Arri Dep. 54:6-57:15, 145:21-152:13; **DE 16**, Eilermann Dep. 230:23-234:24; **DE 8**, McBride 30(b)(6) Dep. 72:17-73:18; **DE 19**, DeCraene Dep. 137:3-139:10, 202:3-203:22, 250:8-251:5; **DE 20**, Stern Bros. 30(b)(6) Dep. 205:9-206:11, 226:3-228:16). | Admitted that Eilermann and Arri remained at McBride. Otherwise disputed. Objection: Lack of personal knowledge and speculation. None of Defendants' citations reflect a determination by "The Company" or the "Advisory Board/Outside Individuals." They thus certainly do not reflect a determination that speculated what "would have" happened to the Company or the ESOP if Eilermann or Arri left. The best evidence of what would have happened is what did happen when Arri left in 2018, which is that McBride constructed a new, larger corporate headquarters, a new "Design Studio," and enjoyed "success" or "economic strength and stability". See McBride Homes Moves to New Headquarters in Chesterfield Valley - Aug. 25, 2021 - *available at* https://www.mcbridehomes.com/news.php?newsID=493 (last visited January 13, 2022). |

|  | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 17 | Rather than leave, Messrs. Eilermann and Arri led McBride and its ESOP back to financial health from the operational and financial distress of the Great Recession. (**DE 22**, 2017 Employee Presentation, MS_0002796 at MS_0002806; *see* ¶¶ 18-29, *infra*). Messrs. Eilermann and Arri implemented strategic changes and business plans and reduced McBride's debt ███████ ████ (**DE 2**, 2013 Trustee Briefing, MS_0007790 at MS_0007797-98). | Disputed that there was any actual risk of Eilermann and Arri leaving, that Eilermann and Arri led McBride and the ESOP back to financial health, and that Eilermann and Arri implemented strategic changes and business plans and reduced McBride's debt by ███████████████ Objection: lack of foundation concerning Eilermann and Arri's role in causing McBride's financial outcomes, hearsay, relevance, lack of actual knowledge, and lack of best evidence. Further, Defendants failed to produce any contemporaneous documentation from the period reflected in the cited evidence. There is no evidence cited or produced of any actual risk that Eilermann and Arri would leave McBride. **PE 20** - Del Pilar Feb. 9, 2021 Depo at 109:17 – 110:9; **PE 27** - Arri Feb. 26, 2021 Depo at 55:18 – 56:12; **PE 22** - Todt Feb. 18, 2021 Depo at 118:3 – 118:10, 239:20 – 239:24; **PE 25** - DeCraene Feb. 24, 2021 Depo at |

139:2 – 139:10; **PE 21** - Korschot - Feb. 16, 2021 Depo at 228:18 – 229:2.

Plaintiffs have identified numerous actions by Eilermann and Arri which undermine the conclusion that they "led" the ESOP "to financial health." As Defendants acknowledge, the $187 per share used in the 2017 transaction was less than one-third of the ESOP stock price before the Great Recession ($624) and about one-third of the ESOP stock price when Eilermann was named CEO in 2005 ($530.40). **DE 2** - 2013 Trustee Briefing - MS_0007790 at MS_0007795; **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 114:12–13.

Defendants' own cited evidence does not reflect any change in business plans, directly contradicts the assertion that McBride's debt was reduced by ███ ███████████ and does not ascribe credit or blame for any changes (except one) to Eilermann and Arri. **DE 2 -** 2013 Trustee Briefing - MS_0007790 at MS_0007797–98; **PE 21** - Korschot Feb. 16, 2021 Depo at 98:5 – 98:9 (Korschot did not ever speak with anyone at █████████████████████).

Evidence demonstrates alternatively that the fact that McBride was ESOP and employee owned played a critical role in McBride recovering after the Great Recession including motivating employees and beneficial tax treatment. "During the housing collapse from 2008 through 2011, six of the top 10 homebuilders in St. Louis went under. McBride & Son Homes survived, and grew to 150 employees and $207 million in revenue in 2016. John Eilermann Jr., chairman and CEO, insists the reason is employee ownership. '**I don't think we would have made it through had we not been employee owned**,' he said. '**We were all on the same page — saving this company for the employees, not for some rich owner somewhere**.'" **PE 34** - "Why St. Louis companies are choosing employee ownership" at p. 1 (emphasis added); **PE 18** - Templeton Oct. 6, 2020 Depo at 257:10 – 258:16 (agreeing with Eilermann quote in **PE 34**), 26:5 – 26:19 (testifying that McBride was special and successful because its employees were willing to go above and beyond), 261:21 – 262:3 (same); **PE 35** - Mar. 23, 2013 Email from Eilermann - MS_0033655 at MS_0033655 ("████████████████████



**PE 36** - Mar. 1, 2017 Email from Eilermann - MS_0034824 at MS_0034824

**PE 20** - Del Pilar Feb. 9, 2021 Depo at 86:13 – 86:21 (employee ownership "likely contributed to the overall success" of McBride during the Great Recession); **PE 37** - The Great Housing Bust: Lessons Learned - MS_0036072 at MS_0036093 ("

**DE 3** - Summary Plan Description - STERN0004518 at STERN0004523 (summarizing why being an employee owned company would contribute to the success of McBride; "The ESOP is designed to provide a beneficial ownership interest in Company Stock for employees — the people who are primarily responsible for the success of the Company."); **PE 15** - Sheldon Mar. 11, 2020 Depo at 188:5 – 189:6; **PE 38** - January 29, 2009 Email - Plaintiffs-00001845 at Plaintiffs-00001846 (Other employees contributed to McBride's success, for

example, ███████████████
2███ ); **PE 15** - Sheldon Mar. 11, 2020 Depo at 116:4
– 116:10 (████████████); **PE 39** - October 20,
2009 Email from Godfrey to Sheldon - Plaintiffs-
00002639 at Plaintiffs-00002639 (same); **PE 17** -
Godfrey Mar. 13, 2020 Depo at 85:20 – 86:7 (same);
**PE 40** - June 3, 2011 Email from Arri to Fry -
STERN0000624 at STERN0000624 (major benefit of
loan forgiveness is that McBride would not pay
income tax on the forgiveness of debt because it was
ESOP owned); **PE 27** - Arri Feb. 26, 2021 Depo at
84:14 – 84:17 (McBride being owned by an ESOP was
brought up in the ███████████ meetings).

Additionally, Eilermann and Arri benefitted from
McBride having nearly ███████████ in equity on the
balance sheet built there by the previous CEO Richard
Sullivan. **DE 12** - 2012 Stern Brothers Valuation -
MS_0003210 at MS_0003246.

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 18 |  | Disputed. <br><br> Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best Evidence. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 19 |  | Disputed. |

| | | |
|---|---|---|
| |  | Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best Evidence. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 20 |  | Disputed.<br><br>Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best Evidence in that no primary firsthand contemporaneously created documents concerning the ▮▮▮▮▮ are cited or were produced in discovery. Additionally, whether any |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 21 |  | Disputed.<br><br>Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best |

|  |  | Evidence in that no primary firsthand contemporaneously created documents concerning any ▮▮▮▮▮▮▮ are cited or were produced in discovery. Additionally, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ is pure speculation. |

| | **Defendants' Fact** | **Plaintiffs' Response** |
|---|---|---|
| 22 |  | Disputed.<br><br>Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best Evidence in that no primary firsthand contemporaneously created documents concerning any ▮▮▮▮▮▮▮ are cited or were produced in discovery. |

| | **Defendants' Fact** | **Plaintiffs' Response** |
|---|---|---|
| 23 |  | Disputed.<br><br>Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best Evidence in that no primary firsthand contemporaneously created documents concerning ▮▮▮▮▮▮▮ are cited or were produced in discovery. |

| | **Defendants' Fact** | **Plaintiffs' Response** |
|---|---|---|
| 24 |  | Disputed.<br><br>Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best Evidence in that no primary firsthand contemporaneously created documents concerning ▮▮▮▮▮▮▮ are cited or were produced in discovery. Further, ▮▮▮▮▮▮▮ |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 25 | Further contributing to the Company's and the ESOP's recovery from the impacts of the Great Recession, Mr. Arri voluntarily reduced his annual salary from approximately ███████ and Mr. Eilermann voluntarily reduced his annual salary from approximately ███████ (*Id.* 199:18-203:5; **DE 16**, Eilermann Dep. 152:21154:18; **DE 23**, 12/29/13 Fry Email to DeCraene at STERN0001274). | Disputed.<br><br>Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best Evidence in that Lack of Best Evidence in that no primary firsthand contemporaneously created documents concerning ███████ are cited or were produced in discovery. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 26 |  | Disputed.<br><br>Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Further, Defendants failed to disclose ███████ as a witness with any relevant information in any Rule 26(a)(1) disclosure. Further, Defendants failed to disclose ███████ as a witness with any relevant information in any Rule 26(a)(1) disclosure until after the close of discovery. Lack of Best Evidence in that no primary firsthand contemporaneously created documents concerning any alleged loan forgiveness by ███████ are cited or were produced in discovery including communications, presentations, or even the loan forgiveness document itself. |

16

Additionally, the hearsay speculation of Arri contradicts **DSOF ¶ 26**, in that Arri ████████████████████████████ ████████████████ **PE 27** - Arri Feb. 26, 2021 Depo at 125:23 – 125:25; 126:4 – 126:5, 126:21 – 126:23) and thus Plaintiffs dispute the contention that ████████████████████ ██████████████

Plaintiffs further dispute that Eilermann and Arri navigated the Company and the ESOP back from the harm that the Great Recession caused, as Defendants acknowledge, the $187 per share used in the 2017 transaction was less than one-third of the ESOP stock price before the Great Recession ($624) and about one-third of the ESOP stock price when Eilermann was named CEO in 2005 ($530.40). **DE 2** - 2013 Trustee Briefing - MS_0007790 at MS_0007795; **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 114:12–13.

Further, Defendants misrepresent ██████

Defendants offer no admissible evidence as to why





It also appears that

*See e.g.,* **PE 44** - Dealer Floor Plan
and Security Agreement between Regions Bank and
Fountain Dealers' Factory Super Store, Inc. - at p. 26
§ 8.02 (listing a "Change of Control to be an "Event
of Default"), at p. 2 § 1.02 (defining "Change of
Control" to mean Reginald Fountain Jr. ceasing to
serve as CEO);[2] **PE 45** - June 2017 Amended and
Restated Credit Agreement by and among Four
Springs Capital Trust Operating Partnership and
Regions Bank, et al., at p. 96 § 12.1(p) (defining "Event
of Default" to mean a "Change of Control"), at pp. 5–
6 § 1.1 (defining "Change of Control to mean the
departure of borrower's CEO, President, or COO).[3]

---

[2] *Available at* https://www.sec.gov/Archives/edgar/data/764858/000119312508203225/dex1013.htm (last
visited January 13, 2022)

[3] *Available at* https://www.sec.gov/Archives/edgar/data/1558536/000104746917004083/a2232355zex-
10_19.htm (last visited January 13, 2022)



Further, evidence in the record strongly suggests that the reason for any loan forgiveness ████████████████ **PE 21** - Korschot Feb. 16, 2021 Depo at 98:5 – 98:9 ████████████████████████ ██████████████); **PE 37** - The Great Housing Bust: Lessons Learned - MS_0036072 at MS_0036093 ██████████ ███████████████

████████████████████████████

████████████████████████████

**PE 40** - June 3, 2011 Email from Arri to Fry - STERN0000624 at STERN0000624 (major benefit of loan forgiveness is that McBride ███████████████████████████; **PE 27** - Arri Feb. 26, 2021 Depo at 84:14 – 84:17 (McBride being owned by an ESOP was brought up in the ████████ meetings).

| | | Defendants' Fact | Plaintiffs' Response |
|---|---|---|---|
| **27** | | GreatBanc and Stern Brothers credited Messrs. Eilermann and Arri—in particular their ability to work with McBride's lenders—for the Company's emergence from the Great Recession. (**DE 19**, DeCraene Dep. 186:9-17; **DE 20**, Stern Bros. 30(b)(6) Dep. 96:11-98:4; *see also* **DE 24**, del Pilar Dep. 148:16-151:3). | Disputed.<br><br>Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best Evidence in that no primary firsthand contemporaneously created documents concerning any alleged relationship Eilermann and Arri had with any banker are cited or were produced in discovery. Utter speculation on the part of GreatBanc and Stern Brothers as Defendants produced no evidence |

showing they spoke directly to any lender. *See also* **PE 21** - Korschot Feb. 16, 2021 Depo at 98:5 – 98:9 (Korschot did not ever speak with anyone at ████ about loan forgiveness)

Plaintiffs further dispute that Eilermann and Arri navigated the Company and the ESOP back from the harm that the Great Recession caused, as Defendants' acknowledge, the $187 per share used in the 2017 transaction was less than one-third of the ESOP stock price before the Great Recession ($624) and about one-third of the ESOP stock price when Eilermann was named CEO in 2005 ($530.40). **DE 2** - 2013 Trustee Briefing - MS_0007790 at MS_0007795; **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 114:12–13.

Evidence demonstrates alternatively that the fact that McBride was ESOP and employee owned played a critical role in McBride recovering after the Great Recession including motivating employees and beneficial tax treatment. "During the housing collapse from 2008 through 2011, six of the top 10 homebuilders in St. Louis went under. McBride & Son Homes survived, and grew to 150 employees and $207 million in revenue in 2016. John Eilermann Jr., chairman and CEO, insists the reason is employee ownership. '**I don't think we would have made it through had we not been employee owned**,' he said. '**We were all on the same page — saving this company for the employees, not for some rich owner somewhere**.'" **PE 34** - "Why St. Louis companies are choosing employee ownership" at p. 1 (emphasis added); **PE 18** - Templeton Oct. 6, 2020 Depo at 257:10 – 258:16 (agreeing with Eilermann quote in **PE 34**), 26:5 – 26:19 (testifying that McBride was special and successful because its employees were willing to go above and beyond), 261:21 – 262:3 (same); **PE 35** - Mar. 23, 2013 Email from Eilermann - MS_0033655 at MS_0033655 ("

**PE 36** - Mar. 1, 2017 Email from Eilermann - MS_0034824 at MS_0034824 (



; **PE 20** - Del Pilar Feb. 9, 2021 Depo at 86:13 – 86:21 (employee ownership "likely contributed to the overall success" of McBride during the Great Recession); **PE 37** - The Great Housing Bust: Lessons Learned - MS_0036072 at MS_0036093 ("

**DE 3** - Summary Plan Description - STERN0004518 at STERN0004523 (summarizing why being an employee owned company would contribute to the success of McBride; "The ESOP is designed to provide a beneficial ownership interest in Company Stock for employees — the people who are primarily responsible for the success of the Company."); **PE 15 -** Sheldon Mar. 11, 2020 Depo at 188:5 – 189:6; **PE 38** - January 29, 2009 Email - Plaintiffs-00001845 at Plaintiffs-00001846 (Other employees contributed to McBride's success, for example, ); **PE 15** - Sheldon Mar. 11, 2020 Depo at 116:4 – 116:10 (ESOP tax benefits); **PE 39** - October 20, 2009 Email from Godfrey to Sheldon - Plaintiffs-00002639 at Plaintiffs-00002639 (same); **PE 17** - Godfrey Mar. 13, 2020 Depo at 85:20 – 86:7 (same); **PE 40** - June 3, 2011 Email from Arri to Fry - STERN0000624 at STERN0000624 (major benefit of



|  |  |  |
|--|--|--|
|  |  | loan forgiveness is that McBride would not pay income tax on the forgiveness of debt because it was ESOP owned). |
|  |  | Additionally, Eilermann and Arri benefitted from McBride having nearly ▮▮▮▮▮▮▮▮ in equity on the balance sheet built there by the previous CEO Richard Sullivan. **DE 12** - 2012 Stern Brothers Valuation - MS_0003210 at MS_0003246. |

|  | **Defendants' Fact** | **Plaintiffs' Response** |
|--|--|--|
| 28 | "Of the top 25 homebuilders in St. Louis [in 2005], 15 did not survive the economic downturn[,]" but McBride and its ESOP survived and increased in value. (**DE 2**, 2013 Trustee Briefing, MS_0007790 at MS_0007799). | Disputed.<br><br>Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best Evidence in that no primary firsthand contemporaneously created documents demonstrating the reasons that any homebuilder went out of business are cited or produced in discovery. Utter speculation as to the reasons why a homebuilder may have gone out of business.<br><br>Plaintiffs further dispute that Eilermann and Arri increased the value of the ESOP after the economic downturn because, as Defendants acknowledge, the $187 per share used in the 2017 transaction was less than one-third of the ESOP stock price before the Great Recession ($624) and about one-third of the ESOP stock price when Eilermann was named CEO in 2005 ($530.40). **DE 2** - 2013 Trustee Briefing - MS_0007790 at MS_0007795; **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 114:12–13. |

|  | **Defendants' Fact** | **Plaintiffs' Response** |
|--|--|--|
| 29 |  | Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely |

on self-serving deposition testimony. Lack of Best Evidence in that no primary firsthand contemporaneously created documents demonstrating the factual assertion are cited or produced in discovery.

Evidence demonstrates alternatively that the fact that McBride was ESOP and employee owned played a critical role in McBride recovering after the Great Recession including motivating employees and beneficial tax treatment. "During the housing collapse from 2008 through 2011, six of the top 10 homebuilders in St. Louis went under. McBride & Son Homes survived, and grew to 150 employees and $207 million in revenue in 2016. John Eilermann Jr., chairman and CEO, insists the reason is employee ownership. '**I don't think we would have made it through had we not been employee owned**,' he said. '**We were all on the same page — saving this company for the employees, not for some rich owner somewhere**.'" **PE 34** - "Why St. Louis companies" are choosing employee ownership" at p. 1 (emphasis added); **PE 18** - Templeton Oct. 6, 2020 Depo at 257:10 – 258:16 (agreeing with Eilermann quote in **PE 34**), 26:5 – 26:19 (testifying that McBride was special and successful because its employees were willing to go above and beyond), 261:21 – 262:3 (same); **PE 35** - Mar. 23, 2013 Email from Eilermann - MS_0033655 at MS_0033655 ("

**PE 36** - Mar. 1, 2017 Email from Eilermann - MS_0034824 at MS_0034824 ("

**PE 20** - Del Pilar Feb. 9, 2021 Depo at 86:13 – 86:21 (employee ownership "likely contributed to the overall success" of McBride



during the Great Recession); **PE 37** - The Great Housing Bust: Lessons Learned - MS_0036072 at MS_0036093 ███████████

███████████████████████████

███████████████████████████

███████████████████████████

███ ); **DE 3** - Summary Plan Description - STERN0004518 at STERN0004523 (summarizing why being an employee owned company would contribute to the success of McBride; "The ESOP is designed to provide a beneficial ownership interest in Company Stock for employees — the people who are primarily responsible for the success of the Company."); **PE 15** - Sheldon Mar. 11, 2020 Depo at 188:5 – 189:6; **PE 38** - January 29, 2009 Email - Plaintiffs-00001845 at Plaintiffs-00001846 (Other employees contributed to McBride's success, for example, ████████████████████ ███ ); **PE 15** - Sheldon Mar. 11, 2020 Depo at 116:4 – 116:10 (ESOP tax benefits); **PE 39** - October 20, 2009 Email from Godfrey to Sheldon - Plaintiffs-00002639 at Plaintiffs-00002639 (same); **PE 17** - Godfrey Mar. 13, 2020 Depo at 85:20 – 86:7 (same); **PE 40** - June 3, 2011 Email from Arri to Fry - STERN0000624 at STERN0000624 (████████████ ████████████████████

Additionally, Eilermann and Arri benefitted from McBride having nearly ███ million in equity on the balance sheet built there by the previous CEO Richard Sullivan. **DE 12** - 2012 Stern Brothers Valuation - MS_0003210 at MS_0003246.

**B.** **The Company faced a potential section 409(p) bankruptcy event and related issues.**

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 30 |  | Disputed.<br><br>Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best Evidence. Tellingly, Defendants are relying on a third-party's record about ███████████<br><br>Evidence demonstrates alternatively that Eilermann and Arri did not like the ESOP ownership because it limited the amount of excessive compensation they could pay themselves. Eilermann told his handpicked Outside Individuals the true purpose of the 2013 Recapitalization: to benefit themselves…not to benefit the ESOP:<br><br>**PE 41** - July 2, 2013 Email from Eilermann - MS_0021157 at MS_0021157 (emphasis added).<br><br>Evidence demonstrates alternatively that the fact that McBride was ESOP and employee owned played a critical role in McBride recovering after the Great Recession including motivating employees and beneficial tax treatment, thus the employee owned structure would in fact help McBride through another downturn. "During the housing collapse from 2008 through 2011, six of the top 10 homebuilders in St. Louis went under. McBride & Son Homes survived, and grew to 150 employees and $207 million in revenue in 2016. John Eilermann Jr., chairman and CEO, insists the reason is employee ownership. '**I don't think we would have made it through had we not been employee owned**,' he said. '**We were all on the same page — saving this company for the employees, not for some rich owner somewhere**.'" **PE 34** - "Why St. Louis companies are choosing employee ownership" at p. 1 (emphasis |

added); **PE 18** - Templeton Oct. 6, 2020 Depo at 257:10 – 258:16 (agreeing with Eilermann quote in **PE 34**), 26:5 – 26:19 (testifying that McBride was special and successful because its employees were willing to go above and beyond), 261:21 – 262:3 (same); **PE 35** - Mar. 23, 2013 Email from Eilermann - MS_0033655 at MS_0033655 (



**PE 36** - Mar. 1, 2017 Email from Eilermann - MS_0034824 at MS_0034824 ("

**PE 20** - Del Pilar Feb. 9, 2021 Depo at 86:13 – 86:21 (employee ownership "likely contributed to the overall success" of McBride during the Great Recession); **PE 37** - The Great Housing Bust: Lessons Learned - MS_0036072 at MS_0036093 ("

**DE 3** - Summary Plan Description - STERN0004518 at STERN0004523 (summarizing why being an employee owned company would contribute to the success of McBride; "The ESOP is designed to provide a beneficial ownership interest in

| | |
|---|---|
| | Company Stock for employees — the people who are primarily responsible for the success of the Company."); **PE 15** - Sheldon Mar. 11, 2020 Depo at 188:5 – 189:6; **PE 38** - January 29, 2009 Email - Plaintiffs-00001845 at Plaintiffs-00001846 (Other employees contributed to McBride's success, for example, ███████████████████████ ████; **PE 15** - Sheldon Mar. 11, 2020 Depo at 116:4 – 116:10 (ESOP tax benefits); **PE 39** - October 20, 2009 Email from Godfrey to Sheldon - Plaintiffs-00002639 at Plaintiffs-00002639 (same); **PE 17** - Godfrey Mar. 13, 2020 Depo at 85:20 – 86:7 (same); **PE 40** - June 3, 2011 Email from Arri to Fry - STERN0000624 at STERN0000624 (major benefit of loan forgiveness is that McBride would not pay income tax on the forgiveness of debt because it was ESOP owned). |
| | Additionally, Eilermann and Arri benefitted from McBride having nearly ████████████ in equity on the balance sheet built there by the previous CEO Richard Sullivan. **DE 12** - 2012 Stern Brothers Valuation - MS_0003210 at MS_0003246. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 31 |  | Disputed.<br> |







| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 32 |  | |







| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 33 |  | Objection: Hearsay, Relevance, Lack of Personal Knowledge. |



**C.** **The Company sought to incentivize key managers to stay at McBride.**

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 34 | Messrs. Eilermann and Arri sought to ensure key managers were incentivized to stay at the company, not incentivized to leave. (*See* **DE 8**, McBride 30(b)(6) Dep. 111:16-22). As Mr. Arri testified, "[t]he primary consideration was a desire to incentivize key managers to stay with the company and also eliminate any structural obstacles, essentially, that would incentivize a key manager to leave the company." (*Id.*) | Disputed.<br><br>Defendants present no evidence demonstrating that the Five Executives were not already incentivized given the ownership they already had in McBride through the ESOP and through the synthetic equity grants. Evidence produced alternatively shows that the Five Executives were fully incentivized, performing appropriately, and there was no risk of them leaving.<br><br> |



|    | Defendants' Fact | Plaintiffs' Response |
|----|------------------|---------------------|
| 35 | The McBride board, Advisory Board, GreatBanc, and Stern Brothers all recognized that for McBride to continue its trajectory of recovery and growth, Messrs. Eilermann and Arri and other key management had to remain with the Company and be fully incentivized to continue the Company's successful performance. (**DE 10**, Arri Dep. 54:4-57:10, 145:21-151:17; **DE 16**, Eilermann Dep. 230:23-235:17; **DE 8**, McBride 30(b)(6) Dep. 52:10-21, 111:18-112:4; **DE 19**, DeCraene Dep. 137:3-139:18, 202:9-203:22, 250:17-251:5; **DE 20**, Stern Bros. 30(b)(6) Dep. 205:16-206:4, 226:9-228:16). | Disputed.<br><br>Objection: Hearsay, Relevance, Lack of Personal Knowledge. Further, Defendants have refused to produce documents from this period and, instead, rely on self-serving depositions testimony. Lack of Best Evidence in that no primary firsthand contemporaneously created documents concerning the Board's, Outside Individual's, and Stern Brother's recognition of anything claimed are cited or were produced in discovery.<br><br>The Board of Directors of MS Management and MS Companies, Inc. never held formal meetings and kept no minutes of any decision making. **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 20:19 – 21:2, 66:14 – 67:12.<br><br>Defendants fail to cite to any evidence (and none was produced in discovery) that would demonstrate involvement by the Outside Individuals with executive compensation such as: (1) communications providing executive compensation information to the Outside Individuals, (2) communications from the Outside Individuals regarding executive compensation, and (3) evidence of meetings being held with the Outside Individuals where executive compensation was discussed. The Outside Individuals met with Eilermann and Arri alone only for dinner and drinks and as such, it is highly implausible that such meetings would result in their recommendation regarding compensation for the Five Executives. **PE 24** - Eilermann - Feb. 23, 2021 Depo at 193:20 – 194:20; **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 19:7 – 20:18; **PE 31** - Aug. 10, 2016 Email from Rafferty with Agenda - MS_0034743 at MS_0034746 (showing |

six scheduled "Dinner Meetings" for Eilermann, Arri, and the Outside Individuals).

The cited evidence also does not demonstrate that there was any lack of incentive on the part of Eilermann and Arri. In fact, evidence produced shows just the opposite.





| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 36 |  | Disputed. |



| | |
|---|---|
| | ███████████████████████ |

## C. McBride engaged financial and legal advisors to analyze alternative corporate structures, ultimately settling on the proposed 2013 Reorganization.

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 37 | MS Companies Inc. formally engaged Butcher Joseph Hayes ("Butcher Joseph") to serve as a financial advisor to the Company to assist it in analyzing its capital structure to address the foregoing issues and propose an optimal strategic capital structure. (**DE 2**, 2013 Trustee Briefing, MS_0007790 at MS_0007802; **DE 32**, 4/5/13 Butcher Joseph Engagement Letter, MS_0010512-18; **DE 33**, 4/5/13 Butcher Joseph Engagement Letter Signature Page, MS_0009130). | Admitted that MS Companies, Inc. engaged Butcher Joseph.<br><br>Otherwise disputed. Butcher Joseph was hired for the benefit of the Five Executives including with the stated purpose of getting them ████████." Butcher Joseph was not engaged on behalf of or for the benefit of the ESOP. ████████████████████████████████████████████████████████████ |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 38 | Butcher Joseph is an investment bank specializing in ESOP advisory services, including ESOP recapitalizations; Butcher Joseph professionals collectively have advised on ESOP transactions totaling more than $7 billion. (ESOP Advisory, *Butcher Joseph & Co.*, http://www.butcherjoseph.com/services#esop_advisory; *see also* **DE 24**, del Pilar Dep. 14:419:24, 47:17-48:17). | Admitted. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 39 | MS Companies Inc. engaged Morgan, Lewis & Bockius LLP ("Morgan Lewis") as its legal advisor with respect to a potential reorganization. (**DE 16**, Eilermann Dep. 143:1215; **DE 20,** Stern Bros. 30(b)(6) Dep. 352:10-16). | Admitted |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 40 | Morgan Lewis "has one of the largest interdisciplinary teams of lawyers In the United States dedicated to advising companies[] . . . and fiduciaries involved with employee stock ownership plans." Employee Stock Ownership Plans, | Admitted in part that Butcher Joseph previously worked with John Kober of Morgan Lewis. Disputed in part in that evidence suggests that McBride had never worked with Morgan Lewis until they were introduced by Butcher Jospeh. **PE 61** - Oct. 17, 2013 Email from del Pilar - MS_0010625 at MS_0010625. |

| | | |
|---|---|---|
| | http://www.morganlewis.com /services/esops. Both Butcher Joseph and McBride had previously worked with John Kober— the Morgan Lewis attorney hired to represent the Company. (**DE 24**, del Pilar Dep. 104:8-20). | |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 41 | Between 2012 and 2013, McBride management, working together with Butcher Joseph and Morgan Lewis, | Admitted in part that Eilermann and Arri worked with Butcher Joseph beginning in 2012. Disputed in part in that MS Companies, Inc. did not engage Morgan Lewis until October 2013. **PE 61** - Oct. 17, 2013 Email from del Pilar - MS_0010625 at MS_0010625.<br><br>Disputed that the end result of the plan was a |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 42 |  | |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 43 |  | Disputed. |







**D. McBride engaged GreatBanc to evaluate the proposed 2013 Reorganization on behalf of the ESOP.**

|    | Defendants' Fact | Plaintiffs' Response |
|----|------------------|----------------------|
| 44 | MS Companies Inc. engaged GreatBanc to serve as independent trustee to the ESOP in connection with the 2013 Reorganization. (**DE 38**, First Amendment to Successor Trustee Engagement Agreement ("GreatBanc Trustee Agreement"), GBT_0024942). | Admitted that GreatBanc was engaged for the 2013 Recapitalization. |

|    | Defendants' Fact | Plaintiffs' Response |
|----|------------------|----------------------|
| 45 | GreatBanc in turn engaged a financial advisor, Stern Brothers, and legal counsel, Moore & Van Allen ("MVA"), to assist it with evaluating the fairness of the 2013 Reorganization to the ESOP (Stern Brothers, MVA, and GreatBanc are sometimes referred to as the "Trustee Team"); (**DE 38**, GreatBanc Trustee Agreement § 4; **DE 39**, 2013 MVA Engagement at GBT_0012144; **DE 40**, 2013 Stern Bros. Engagement at GBT_0012149 | Admitted that GreatBanc engaged Stern Brothers and MVA for the 2013 Recapitalization. |

|    | Defendants' Fact | Plaintiffs' Response |
|----|------------------|----------------------|
| 46 | Stern Brothers was an experienced financial advisory firm with substantial ESOP experience and extensive knowledge of McBride and its operations, having served as a financial advisor to the McBride ESOP for more than 20 years. (**DE 18**, 8/3/17 Arri Email to Alexander at MS_0012443; **DE 41**, Korschot Resume, GBT_0000588; **DE 20**, Stern Bros. 30(b)(6) Dep. 172:12-25, 202:18-205:8; **DE 19**, DeCraene Dep. 213:11-21). MVA also had substantial ESOP experience and | Admitted that Stern Brothers was a financial advisory firm with ERISA experience and knowledge of McBride and its operations and provided services for the ESOP for more than 20 years.<br><br>Highly disputed that Stern Brothers was an appropriate and prudent choice as financial advisor for the ESOP given their multitude of errors and failures. *See* **PRF ¶¶ 47, 49, 51–53, 55, 59–63, 66**, *infra.* |

| | |
|---|---|
| | expertise, including recent experience in transaction structures similar to that of the 2013 Reorganization. (**DE 19**, DeCraene Dep. 210:12-211:11). | |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 47 | When conducting due diligence, reviewing, and analyzing the 2013 Reorganization, GreatBanc, MVA, and Stern Brothers brought to bear their collective decades' worth of knowledge and experience with McBride and its industry. (**DE 19**, DeCraene Dep. 138:15-139:10; 209:8-211:11; **DE 20**, Stern Bros. 30(b)(6) Dep. 202:18-206:11, 396:18-397:17). | Disputed.<br><br>Defendants cited no evidence that MVA had any experience at all with McBride prior to the 2013 Recapitalization, such as an engagement agreement or communications.<br><br>The due diligence conducted by GreatBanc and Stern Brothers was flawed and conflicted:<br><br>(1) GreatBanc had only ever done a transaction like the 2013 Recapitalization once before, clearly demonstrating its novel and untested nature. **DE 25** - DeCraene Feb. 24, 2021 Depo at 124:7 – 124:24.<br><br>(2) Stern Brothers had never worked on a transaction that looked like the 2013 Recapitalization despite having working for over 100 ESOP plans in any given year. **PE 21** - Korschot Feb. 16, 2021 Depo at 17:21 – 17:22; 113:5 – 113:19.<br><br> |









| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 48 |  | Admitted. |







| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 50 |  | Disputed.<br><br>The due diligence conducted by GreatBanc and Stern Brothers was flawed and conflicted: |









| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 51 |  | Disputed.<br><br>The due diligence conducted by GreatBanc and Stern Brothers was flawed and conflicted: |









| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 52 |  | Disputed.<br><br>The due diligence conducted by GreatBanc and Stern Brothers was flawed and conflicted: |









| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 53 |  | Disputed.<br><br>The due diligence conducted by GreatBanc and Stern Brothers was flawed and conflicted: |









| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 54 |  | |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 55 |  | Disputed. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 56 |  | Disputed. |







| | **Defendants' Fact** | **Plaintiffs' Response** |
|---|---|---|
| 57 |  | Disputed. |







| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 58 |  | |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **59** |  | Disputed.<br><br>The due diligence conducted by GreatBanc and Stern Brothers was flawed and conflicted: |











| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 60 |  | Disputed. |









| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 61 |  | Disputed.<br><br>The due diligence conducted by GreatBanc and Stern Brothers was flawed and conflicted: |









| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **62** |  | Disputed.<br><br>The due diligence conducted by GreatBanc and Stern Brothers was flawed and conflicted: |









| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 63 | | Disputed. |



The due diligence conducted by GreatBanc and Stern Brothers was flawed and conflicted:









| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 64 |  | Disputed.<br><br>Objection: pursuant to FRE 403, as this fact's probative value is substantially outweighed by confusing the issues and misleading the trier of fact. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 65 |  | Disputed. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 66 |  | |













**E. The 2013 Reorganization closed on December 31, 2013.**

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 67 | On December 31, 2013, as set forth in more detail below, through a series of transactions, MS Companies Inc. was reorganized from an ESOP-owned S-corporation, subject to existing synthetic equity rights of key management, to a limited liability company (*i.e.*, MS Companies LLC) owned by an ESOP-owned S-corporation (*i.e.*, MS Capital) and key management, ceding to the ESOP sole discretion as to whether to allow issuance of any additional LLC Units to management. (**DE 34**, Written Consent of Board of Directors, MS_0013308-12; **DE 68**, Joint Written Consent, MS_0015093-96 at 93; **DE 69**, Plan of Conversion, MS_0015097-100; **DE 56**, Administrative Services Agreement, MS_0014365 § 6.1; **DE 11**, 12/31/13 LLC Agreement at MS_0016222; **DE 10**, Arri Dep. 174:2-178:12; **DE 19**, DeCraene Dep. 108:3-109:21; *see also* ¶¶ 68-75). | Disputed.<br><br>The ESOP did not have control over the issuance of additional LLC Units to the Five Executives. Defendants cite no evidence at all of any actual oversight or approval by GreatBanc on behalf of the ESOP of new units of MS Companies, LLC. Defendants Eilermann and Arri understood that as a result of the 2013 Recapitalization they were entirely in control of their own compensation.<br><br>The issuance of Class B and Class C Units were approved by Eilermann and Arri, not GreatBanc. |



GreatBanc demonstrated no oversight of additional units given that Defendants Eilermann and Arri did not follow basic corporate formalities and prepare and execute unit agreement or redemption agreements from January 1, 2016 to November 30, 2017. Eilermann and Arri repeatedly failed to prepare and execute unit agreements and subscription agreements when Class B and Class C Units were newly issued from January 1, 2016 to November 30, 2017, as well as redemption agreements whenever units were redeemed for cash by one of the Five Executives.

| | Defendants' Fact |
|---|---|
| **68** | As set forth above, the pre-Reorganization ownership structure of McBride was therefore graphically depicted as follows:<br><br> |
| | **Plaintiffs' Response** |
| | Admitted. |

*Formation of MS Capital*

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **69** | First, on December 31, 2013, a new holding company, MS Capital, was incorporated as an S-corporation. (**DE 70**, Certification of Incorporation, MS_0013493-96). Messrs. Eilermann and Arri were elected as members of the MS Capital Board of Directors with the agreement and consent of GreatBanc. (**DE 71**, Written Consent, MS_0013500-6; **DE 8**, McBride 30(b)(6) Dep. 12:5-14). | Admitted. |

*Contribution of MS Companies Inc. Stock for MS Capital Stock*

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **70** | Second, the ESOP's 88,201.4119 outstanding shares of MS Companies Inc. were contributed to the new holding company, MS | Admitted. GreatBanc and Arri were signatories to the Contribution Agreement that caused the MS Companies, Inc. stock to be exchanged for MS Capital |

| | |
|---|---|
| Capital, in exchange for 88,201.4119 shares of MS Capital stock. (**DE 72**, 12/31/13 Contribution Agreement, MS_0013365-73 § 1.2). | stock. *See* **DE 72 -** 12/31/13 Contribution Agreement - MS_0013365 at MS_0013373. |

*Conversion of MS Companies Inc. to MS Companies LLC*

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 71 | Third, MS Companies Inc. was converted from an S-corporation to a limited liability company (*i.e.*, MS Companies LLC). (**DE 68**, Joint Written Consent, MS_0015093-96 at 93; **DE 69**, Plan of Conversion, MS_0015097-100; **DE 72**, 12/31/13 Contribution Agreement, MS_0013365 § 3.6). | Admitted. |

| | Defendants' Fact |
|---|---|
| 72 | As set forth above, the post-Reorganization ownership structure of McBride was therefore graphically depicted as follows:  |
| | **Plaintiffs' Response** |
| | Admitted. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 73 | The MS Companies LLC Agreement provided for three classes of membership: Class A, Class B, and | Admitted. |

| | | |
|---|---|---|
| | Class C LLC units. (**DE 11**, 12/31/13 LLC Agreement §§ 1.20-1.26). | |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 74 |  | Admitted. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 75 |  | Admitted. |

*Messrs. Arri and Eilermann Purchase Initial Class B LLC Units at Fair Market Value*

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 76 |  | Disputed. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 77 |  | Admitted. |

### *MS Capital Assumes Role as Plan Sponsor*

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 78 | MS Capital assumed the role of ESOP plan sponsor from MS Management. (**DE 72**, 12/31/13 Contribution Agreement, MS_0013365 § 3.1; **DE 77**, Assignment and Assumption Agreement, MS_0014310-313; **DE 9**, Amendment No. Two to 2013 Plan Doc., MS_0006493-94). | Admitted. |

*2015 Termination and Conversion of Preexisting Synthetic Equity to LLC Units*

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 79 | | |



| | Defendants' Fact |
|---|---|
| 80 | Through their existing deferred compensation agreements, as of December 31, 2013 prior to the 2013 Reorganization, individuals in management owned the following synthetic equity interests in McBride (compared to the ESOP's ownership): |

| McBride Ownership Before 2013 Reorganization | | |
|---|---|---|
| | Units | % of Total |
| ESOP Shares of MS Companies Inc. | ██████ | |
| Total Management Synthetic Equity | ██████ | |
| John Eilermann | ██████ | |
| Michael Arri | ██████ | |
| Jeffrey Schindler | ██████ | |
| Jeffrey Berger | ██████ | |
| Jeffrey Todt | ██████ | |
| *(Source: **DE 78**, ESOP and Synthetic Equity Balances as of 12/31/2013 at MS_0024550)* | | |

| | Plaintiffs' Response |
|---|---|
| | Disputed. |
| | ████████████████████████████████████ |

Correcting for this error alone results in the following corrected chart:

| McBride Ownership Before 2013 Reorganization | | |
|---|---|---|
| | **Units** | **% of Total** |
| **ESOP Shares of MS Companies Inc.** | | |
| **Total Management Synthetic Equity** | | |
| John Eilermann | | |
| Michael Arri | | |
| Jeffrey Schindler | | |
| Jeffrey Berger | | |
| Jeffrey Todt | | |
| *(Source: DE 78, ESOP and Synthetic Equity Balances as of 12/31/2013 at MS_0024550)* | | |

| McBride Ownership Before 2013 Reorganization | | |
|---|---|---|
| | Units | % of Total |
| ESOP Shares of MS Companies Inc. | | |
| Total Management Synthetic Equity | | |



| | | |
|---|---|---|
| | John Eilermann | |
| | Michael Arri | |
| | Jeffrey Schindler | |
| | Jeffrey Berger | |
| | Jeffrey Todt | |

*(Source: DE 78, ESOP and Synthetic Equity Balances as of 12/31/2013 at MS_0024550)*

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 81 | The existing synthetic equity plans were terminated in connection with the 2013 Reorganization. (**DE 34**, Written Consent of Board of Directors, MS_0013308-12; **DE 72**, 12/31/13 Contribution Agreement, MS_0013365 (§ 3.5). | Disputed.<br><br>The synthetic equity plans were terminated effective December 31, 2013. **DE 34** - Written Consent of Board of Directors of MS Companies, Inc. dated December 31, 2013 - MS_0013308 at MS_0013310 ("the Board resolves that the Deferred Compensation agreements shall be terminated **effective immediately**…); **DE 81** - 12/31/13 Consent to Termination and Amendment - MS_0025438 at MS_0025348 (§ 2 - "The Agreements shall be terminated as of December 31, 2013").<br><br>The Five Executives were supposed to have been paid out the value of their synthetic equity agreements at the price of MS Companies, Inc. stock as of December 31, 2013. **DE 81** - 12/31/13 Consent to Termination and Amendment - MS_0025438 at MS_0025348 (§ 1 - "The Accumulated Value ultimately payable will be adjusted to reflect the share |

value of Company stock to be determined as of December 31, 2013.").



The Five Executives benefitted at the expense of the ESOP when Eilermann and Arri chose to compensate the Five Executives using the share price as of December 31, 2014 of



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 82 |  | Disputed. |





| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 83 |  | Disputed. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 84 |  | |



| | Defendants' Fact |
|---|---|
| 85 | Following the conclusion of the 2013 Reorganization (including the eventual conversion of synthetic equity to LLC Units on January 1, 2015), together with the initial 1,485 Class B Units Messrs. Arri and Eilermann purchased at fair market value, management owned the following equity interests in McBride (compared to the ESOP's ownership): |

| McBride Ownership After 2013 Reorganization | | | | | | |
|---|---|---|---|---|---|---|
| | Class A LLC Units | Class B LLC Units | | Class C LLC Units | | |
| | MS Capital (100% ESOP Owned) | Eilermann | Arri | Schindler | Berger | Todt |
| 1/1/14 (Balance) | | | | | | |
| 1/1/15 (Synthetic Equity Conversion) | | | | | | |
| Total | | | | | | |
| % of Total | | | | | | |
| *Source: (**DE 83**, 1/1/2015 Phantom Stock and SAR Conversions and Tax Reimbursements, MS_0029919; **DE 37**, Arri Email re Equity History at 3).* | | | | | | |

| Plaintiffs' Response |
|---|
| Admitted that the table accurately summarizes the ownership in MS Companies, LLC (not "McBride") using the value as opined by Stern Brothers. |

## PURCHASE AND REDEMPTION OF CLASS B AND C UNITS AT FAIR MARKET VALUE BETWEEN 2015–2017

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 86 | Following the 2013 Reorganization, no shares of MS Capital were ever held by management. At all relevant times between 2014-2017, the ESOP remained the sole and 100% owner of MS Capital. (**DE 37**, Arri Email re Equity History; **DE 84**, Equity Transactions by Member 2016 & 2017 at STERN0001130-1132; **DE 72**, 12/31/13 Contribution Agreement, MS_0013365 § 1.2) | Admitted with the caveat that the statement is only accurate until the 2017 Transaction occurred on November 30, 2017. |

| | **Defendants' Fact** |
|---|---|
| **87** | From 2015-2017, the following MS Companies LLC Unit purchases and redemptions occurred: |

| Event | Class A | Class B Units | | Class C Units | | |
|---|---|---|---|---|---|---|
| | MS Capital (100% ESOP Owned) | Eilermann | Arri | Schindler | Berger | Todt |
| Units at 1/1/15 | | | | | | |
| Purchase 1/1/15 | | | | | | |
| Redemption 9/30/15 | | | | | | |
| Units at 12/31/15 | | | | | | |
| *Ownership % at* | | | | | | |
| Redemption 1/5/16 | | | | | | |
| Purchases 1/19/16 | | | | | | |
| Redemption 9/30/16 | | | | | | |
| Units at 12/31/16 | | | | | | |
| *Ownership % at* | | | | | | |
| Redemption 1/5/17 | | | | | | |
| Purchase 1/5/17 | | | | | | |
| Purchase 1/19/17 | | | | | | |
| Redemption 6/30/17 | | | | | | |
| Redemption 9/25/17 | | | | | | |
| Units at 11/20/17 | | | | | | |
| *Ownership % at* | | | | | | |

(**DE 84**, Equity Transactions by Member 2016 & 2017 at STERN0001130-1132; **DE 85**, Equity Ownership History at MS_0030897; **DE 86**, Equity Ownership Email at 3; **DE 37**, Arri Email re Equity History at 3).

| **Plaintiffs' Response** |
|---|
| Admitted that the table accurately reflect the number of units for MS Companies, LLC that Eilermann and Arri claimed existed and that were used to pay excessive compensation to the Five Executives and as part of the 2017 Transaction. Disputed, however, that the chart represents the accurate and legal ownership of MS Companies, LLC. Eilermann and Arri repeatedly failed to prepare and execute unit agreements and subscription agreements when Class B and Class C Units were newly issued from January 1, 2016 to November 30, 2017, as well as redemption agreements whenever units were redeemed for cash by one of the Five Executives. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 88 | Comparison of the charts set forth in paragraphs 80 and 87 above reveals that the ESOP's ownership of equity interests in McBride increased between 2013 and 2017, and management's decreased. | Disputed as patently false.<br><br>The chart in **DSOF ¶ 80** is wrong for the reasons noted in **PRF ¶ 80** where Plaintiffs assert that the ESOP's equity interest in MS Companies, Inc. is ███████ when the errors are corrected whereas the ESOP's equity interest in MS Companies, LLC after the 2013 Recapitalization in **DSOF ¶ 87** decreased to ██████ as of November 20, 2017. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 89 |  | Disputed. |





| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 90 |  | Disputed. |



**MANAGEMENT COMPENSATION DECISIONS BETWEEN 2013–2017**

**A. McBride Engaged An Independent Third Party Compensation Consultant**

|   | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 91 | At all times relevant to the lawsuit, and beginning in 2010, McBride engaged an independent compensation consultant, Michael Lackey of Total Rewards Strategies ("TRS"), to study the company's management compensation and provide feedback and recommendations. (**DE 8**, McBride 30(b)(6) Dep. 22:12-28:6). | Disputed.<br><br>TRS was not independent. They were handpicked by Eilermann. **PE 23** - McBride 30(b)(6) Depo at 25:6 – 25:16.<br><br>Further, TRS was not independent in that they reported only to Eilermann and Arri. There were no independent board members and no independent compensation committee was formed despite it being widely regarded as a best practice and required under the terms of the MS Capital Bylaws. |







| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 92 | Prior to founding TRS, Mr. Lackey served as Management Principal and Global Compensation Practice leader of JPMorgan Compensation and Benefits Strategies, National Compensation Practice Leader for Palmer & Cay, and Manager of the St. Louis office and Compensation Practice Leader for Towers Perrin. (Global Equity Org., *Planned speakers for the 2010 GEO Conference*, https://www.globalequity.org/geo/2010speakers (last visited November 12, 2021)). | Objection: Hearsay, relevance. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 93 | "Among the clients that Mr. Lackey has served are Anheuser-Busch InBev, Ascension Health, AT&T, Bank of America, BJC Health Care, Bunge Limited, Charter Communications, Commerce | Objection: Hearsay, relevance. |

| | |
|---|---|
| Bancshares, Emerson Electric, Haynes International, The Kauffmann Foundation, LCA-Vision, MEMC Electronics, MedSource Technologies, Missouri Foundation for Health, Monsanto, Sigma-Aldrich, Smurfit-Stone Corporation, United Van Lines, The United Way of Greater St. Louis and U.S. Bancorp." (*Id*). | |

**B. Management Compensation Decisions Prior to the 2013 Reorganization**

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 94 | [redacted] | Admitted. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 95 | McBride's independent Advisory Board provided input and suggestions about the company's executive compensation. (*Id.* 25:3-26:11, 28:2-6; **DE 10**, Arri Dep. 104:4-9; **DE 19**, DeCraene Dep. 44:3-45:12). | Disputed.<br><br>The evidence cited does support the alleged facts. Defendants fail to cite to any evidence (and none was produced in discovery) that would demonstrate involvement by the Outside Individuals with executive compensation such as: (1) communications providing executive compensation information to the Outside Individuals, (2) communications from the Outside Individuals regarding executive compensation, and (3) evidence of meetings being held with the Outside Individuals where executive compensation was discussed. Given that Todt and Schindler testified they had no involvement with making executive compensation decisions (**PE 22** - Todt Feb. 18, 2021 Depo at 36:10 – 36:12, 36:21 – 37:2, 37:21 – 37:23, 38:10 – 38:15, 74:18 – 74:25; 77:3 – 77:10; **PE 19** - Schindler Jan. 29, 2021 Depo at 58:6 – 58:11; 59:4 – 59:8; 59:25 – 60:8; 66:5 – 66:12; 67:23 |

|  |  | – 70:10), it is highly implausible and nearly fantastical that executive compensation would be discussed in a public setting such as the dinner and drinking meetings that were the only meeting where the Outside Individuals met with only Eilermann and Arri. **PE 24** - Eilermann Feb. 23, 2021 Depo at 193:20 – 194:20; **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 19:7 – 20:18; **PE 31** – Aug. 10, 2016 Email from Rafferty with Agenda - MS_0034743 at MS_0034746 (showing six scheduled "Dinner Meetings" for Eilermann, Arri, and the Outside Individuals). |

|  | **Defendants' Fact** | **Plaintiffs' Response** |
|---|---|---|
| 96 | | |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 97 |  | |





| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 98 |  | Disputed. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 99 | | |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **100** |  | Disputed. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 101 |  | Disputed. |



**C. Management Cash Compensation Decisions Post-2013 Reorganization**

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 102 |  | Disputed. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **103** |  | Disputed. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 104 |  | Disputed. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 105 |  | Disputed. |

| | Defendants' Fact |
|---|---|
| 106 |  |





**Plaintiffs' Response**

Disputed.





| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **107** |  | Disputed. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 108 | | Disputed. |



**E. McBride Provided GreatBanc and Stern Brothers With Information Regarding Management Cash Compensation Post 2013-Reorganization and They Had No Basis to Object**

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 109 | | |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 110 |  | Disputed. |





| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 111 |  | Disputed. |



## NOVEMBER 30, 2017 REDEMPTION

### A. Management was concerned with another potential downturn

| | Defendants' Fact |
|---|---|
| 112 | Between December 2013 and December 2016, the fair market value of MS Capital as determined by Stern Brothers was as follows: |

| Valuation Date | Fair Market Value of MS Capital as Determined by Stern Brothers |
|---|---|
| December 31, 2013 | |
| December 31, 2014 | |
| December 31, 2015 | |
| December 31, 2016 | |

*(Source: DE 13, 2013 Val. at MS_0003785; DE 14, 2014 Val. at MS_0003355; DE 15, 2015 Val. at MS_0005131; DE 1, 2016 Val. MS_0003689 at MS_0003691).*

| | |
|---|---|
| **Plaintiffs' Response** | |
| Admitted that the table contains the value of the stock as opined by Stern Brothers. | |

| | **Defendants' Fact** | **Plaintiffs' Response** |
|---|---|---|
| **113** |  | Disputed. *see also* **PE 85** - "Building strength in residential real estate" dated Jan. 20, 2017[6] - at 2 ("McBride CEO John Eilermann Jr. said the company did so well in 2014 and 2015 that it ran low on available lots, and the 750 homes closed in 2016 were sold for a higher price on average. **Eilermann said he's optimistic about the company's prospects in 2017**, noting 11 new communities coming online this year have a combined 1,995 lots between them — the largest being a 528-home Eureka community called Arbors of Rockwood, which is slated to be ready for new construction in the spring. Homes are expected to range from $192,900 to $450,000. '**There is absolutely pent-up demand**,' Eilermann said. In all, he said he expects McBride to close on nearly 900 homes this year. That would be a 20 percent increase |

---

[6] *Available at* https://www.bizjournals.com/stlouis/news/2017/01/20/buildingstrength.html (last visited January 13, 2022).



over 2016." (emphasis added));

"We currently have **4,000 homesites** under development in St. Louis and that's **the most we've ever had** at one time." **PE 87** - "Advancing St. Louis: John Eilermann of McBride & Sons Homes" dated June 8, 2017 - Plaintiffs-00001029 at Plaintiffs-00001032 (emphasis added). Eilermann then went on to say: "**The 2017–2018 outlook is positive** which means the St. Louis region will increasingly thrive while we continue to deliver homes in all price points." **PE 87** - "Advancing St. Louis: John Eilermann of McBride & Sons Homes" dated June 8, 2017 - Plaintiffs-00001029 at Plaintiffs-00001032.







| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 114 |  | Disputed. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 115 |  | Disputed. |





| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 116 |  | Disputed. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 117 | | Disputed. |



|     | Defendants' Fact | Plaintiffs' Response |
| --- | --- | --- |
| 118 | In July 2017, MS Companies engaged Butcher Joseph to serve as the company's financial advisor with respect to a potential redemption of ESOP shares. (**DE 114**, 7/25/17 Butcher Joseph Engagement Letter, MS_0002132-38). | Admitted that Butcher Joseph was engaged by MS Companies, LLC but disputed that it was to serve as MS Companies, financial advisor. Instead, Butcher Joseph was hired for the benefit of Eilermann, Arri, Schindler, and Todt who would be the sole owners of MS Capital at the conclusion of the 2017 Transaction. *See* **PRF ¶ 149**, *infra*. |

|     | Defendants' Fact | Plaintiffs' Response |
| --- | --- | --- |
| 119 | At the beginning of September 2017, Mr. Arri contacted Mr. DeCraene about such a redemption. (**DE 115**, 9/5/2017 Arri Email to DeCraene, GBT_0008073-74). | Disputed. |

|     | Defendants' Fact | Plaintiffs' Response |
| --- | --- | --- |
| 120 | In September 2017, MS Capital engaged RubinBrown to assist with | Admitted. |

compiling and presenting the Company's financial statements and to provide services related to compiling the Company's cash, notes receivable inventory, and loans and notes payable balances. (**DE 117,** 9/20/2017 RubinBrown Engagement Letter, MS_0019405-14; **DE 118**, 9/26/2017 RubinBrown Engagement Letter, MS_0019432-41).

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 121 | On October 4, 2017, McBride and Butcher Joseph sent GreatBanc a Trustee Briefing that they had prepared for the proposed redemption (labeled as "Project Homecoming"). (**DE 24**, del Pilar Dep. Ex. 43 at MS_0000989-1011). The briefing addressed the rationale and benefits of a redemption transaction, the significant risks facing the company going forward, the disproportionate balance of shares and value in participants over 50 years old, and the volatility risk to their retirement savings. (*Id.* at MS_0000993-1010; *see also* **DE 24**, del Pilar Dep. 196:9212:22). The Trustee Briefing included illustrative transaction assumptions and results, along with an appendix of financial schedules. (*Id.*) | Disputed.<br><br>Eilermann and Arri encouraged the redemption for their own benefit after creating the "story" of the stock price to justify the redemption. *See* **PRF ¶ 113,** *supra.*<br><br>The redemption at a price well below fair market value including below book value was done for the benefit of Eilermann and Arri, not the ESOP. *See* **PRF ¶ 115,** *supra.* |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 122 | The Trustee Briefing also made clear that, although not legally required, McBride wanted to make the redemption transaction subject to a pass-through vote of all ESOP participants, because, unlike the 2013 Reorganization, the proposed | Disputed.<br><br>The participants were given limited and incomplete information. *See* **PRF ¶ 137,** *infra.* |

|  |  |
|---|---|
| redemption would terminate the ESOP and replace it with a different, albeit more diversified retirement savings plan. (**DE 24**, del Pilar Dep. Ex. 43 at MS_0000992-93; *see also* **DE 24**, del Pilar Dep. 203:3-204:7). It was critical to McBride management that the employee participants express their views about terminating the ESOP and adopting a more diversified plan through a formal and confidential vote. (*Id*.; **DE 18**, 8/3/17 Arri Email to Alexander, MS_0012443; **DE 10**, Arri. Dep. 230:3231:5; **DE 24**, del Pilar Dep. 203:3-204:7; **DE 16,** Eilermann Dep. 171:13-173:14). |  |

|  | **Defendants' Fact** | **Plaintiffs' Response** |
|---|---|---|
| **123** | On October 18, 2017, MS Capital made an initial offer to GreatBanc to redeem the ESOP's remaining shares at ███████████████████ ██████████████ | Disputed. <br><br> The offer, in reality, was being made on behalf of and for the benefit of Eilermann, Arri, Schindler, and Todt who would be the sole owners of MS Capital at the conclusion of the 2017 Transaction. *See* **PRF ¶ 149**, *infra*. |

|  | **Defendants' Fact** | **Plaintiffs' Response** |
|---|---|---|
| **124** | MS Capital engaged GreatBanc to serve as independent transaction trustee to the ESOP in connection with the 2017 Redemption. (**DE 120**, Second Amendment to GreatBanc Trustee, GBT_0005725-29). | Admitted GreatBanc was engaged as trustee. Otherwise disputed. <br><br> The words "independent transaction trustee" do not appear anywhere in the cited evidence. <br><br> GreatBanc was not hired to replace MS Capital as the named fiduciary and plan administrator of the Plan. *See* **PAF ¶¶ 9**–14. <br><br> Defendants cite to no evidence that the governing plan document was amended prior to the 2017 Transaction to remove MS Capital as the named fiduciary and plan administrator of the Plan. |

|  | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 125 | Given their expertise and familiarity with McBride, GreatBanc again engaged MVA and Stern Brothers to act as its legal and financial advisors for purposes of analyzing and negotiating the proposed redemption transaction. (**DE 19,** DeCraene Dep. 164:2-16, 233:2238:2; **DE 48**, Compliance Report at GBT_0001541; **DE 121**, 2017 Stern Bros. Engagement, GBT_001565-66; **DE 122**, 2017 MVA Engagement, GBT_0001560-64). | Disputed.<br><br>MVA and Stern Brothers should never have been retained based on the flawed and conflicted work performed on the 2013 Recapitalization. *See* **PRF ¶¶ 47, 49, 51 – 53, 55, 59–63, 66**, *supra*.<br><br>Further, MVA provided a legal memorandum as part of the 2017 Transaction that included demonstrably incorrect information including an entire section on a completely different ESOP plan. The entire section entitled "TRUSTEE'S INVESTIGATION" in the legal memo prepared by Moore & Van Allen and provided to the GreatBanc Fiduciary Committee, contained information about another transaction for a different ESOP.  |

|  | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 126 | The Trustee Team conducted the due diligence necessary to analyze the fairness of the proposed redemption to the ESOP, with management providing financial projections and other information to the Trustee Team. (**DE 19**, DeCraene Dep. 253:23-255:7; **DE 48**, Compliance Report at GBT_0001541-50). The projections McBride management | Disputed.<br><br>The due diligence engaged in by GreatBanc was flawed and conflicted:  |

provided to GreatBanc and Stern Brothers were the same projections that McBride management provided to prospective outside lenders. (**DE 10,** Arri Dep. 110:7-112:9).







|  | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 127 | As part of their diligence process, Stern Brothers and GreatBanc considered and discussed with management whether there might be other potential buyers for McBride, but neither management nor the Trustee Team concluded this was a viable option. (**DE 19**, DeCraene Dep. 184:19-186:17; **DE 20**, Stern Bros. 30(b)(6) Dep. 166:15-172:9, 174:15-178:14; **DE 45**, 2/20/13-10/10/17 Notes at STERN0011018-19). GreatBanc and Stern Brothers knew from their decades of experience with McBride that the company was the largest homebuilder in a very difficult market. (**DE 19**, DeCraene Dep. 184:19-186:17; **DE 20**, Stern Bros. 30(b)(6) Dep. 174:15-178:14). They were also aware that the national homebuilders who might be potential buyers had all pulled out of St. Louis, including most recently Pulte Homes. (*Id.*) The Trustee Team was also aware that, because McBride was a large unionized homebuilder, potential buyers were afraid of McBride's union-related pension withdrawal liability. (**DE 20**, Stern Bros. 30(b)(6) Dep. 175:13-176:25). | Disputed that third party bids were considered. In fact, Eilermann and Arri prevented them from ever happening despite them being beneficial to the ESOP (**PE 5** - Goldman March 19, 2021 Report at p. 20 ¶ 87):

(1) GreatBanc in their Answer to the SAC admitted that they were not engaged or retained to solicit third party bids as part of the 2017 Transaction. **PE 2** - GreatBanc's Answer to SAC (**Dkt. 163**) - at ¶ 238 ("GreatBanc admits that it did not solicit bids from third parties with respect to the 2017 Transaction, states that **it was not engaged or retained to do so**…" (emphasis added));

(2) Eilermann and Arri had control over the engagement of GreatBanc for the 2017 Transaction. **DE 120** - Second Amendment to GreatBanc Trustee - GBT_0005725 at GBT_0005725, 27 (MS Capital was signatory); **PAF ¶¶ 23–24** (Eilermann and Arri controlled MS Capital). Consequently, by preventing GreatBanc from soliciting third party bid, Eilermann and Arri benefitted at the expense of the ESOP by limiting the only potential buyers to just themselves. *See* **DSOF ¶ 149** (Eilermann and Arri owned the majority of MS Capital after the 2017 Transaction was finished);

(3) Eilermann admitted in his deposition that he and Arri as the only members of the MS Capital Board of Directors made the decision not to solicit third party bids, a decision that greatly benefitted him. **PE 24** - Eilermann Feb. 23, 2021 Depo at 122:12 – 122:21. Eilermann also did not instruct Butcher Joseph to run a process to solicit third party bids as part of the 2017 Transaction. **PE 24** - Eilermann Feb. 23, 2021 Depo at 119:16 – 120:5; **PE 20** - del Pilar Feb. 9, 2021 Depo at 124:14 – 125:3.

(4) Eilermann further testified that had he and Arri wanted to hire an investment bank to solicit third party bids as part of the 2017 Transaction, he could have. **PE 24** - Eilermann Feb. 23, 2021 Depo at 120:6 – 121:13. Butcher Joseph had ample experience in seeking third party bids to sell a company such as McBride had Eilermann and Arri chosen to engage |

them. **PE 20** - del Pilar Feb. 9, 2021 Depo at 19:20 – 23:2, 34:4 – 36:15. Butcher Joseph took their direction from Eilermann and Arri only, and not Todt nor the Outside Individuals. **PE 20** - Del Pilar Feb. 9, 2021 Depo at 119:18 – 121:10; and

(5) Stern Brothers was also prevented from soliciting third party bids because they were not authorized to have discussions or negotiations with any third parties others than MS Capital. **DE 133** - 2017 Fairness Opinion - GBT_0005060 at GBT_0005063



**PE 2** - GreatBanc's Answer to SAC (**Dkt. 163**) - at ¶ 237 ("GreatBanc states that Stern Brothers was not engaged to solicit bids from third parties with respect to the 2017 Transaction…").

Disputed that there would not have been interest by national homebuilders for an opportunity to purchase McBride, as there had been a demonstrate history in the past:

(1) In 2006, ESOP participants were informed that an offer from a potential outside purchaser had been made of ▮▮▮▮▮▮▮▮ as calculated by Stern Brothers and this offer was rejected because it wasn't enough. **PE 15** - Sheldon - Mar. 11, 2020 Depo at 63:10 – 65:16.

(2) McBride's market position and dominance would have been attractive to a third-party bidder according to Stern Brothers. **PE 21** - Korschot - Feb. 16, 2021 Depo at 103:9 – 103:16; 2/20/13-10/10/17 Notes - STERN0010988 at STERN0011000–01 (McBride had attributes such as employee talent and lot position that a national acquirer would have found attractive).

(3) In 2012, Eilermann and Arri were "approached by a few national builders about acquisition." **PE 131** -

Apr. 16, 2012 Email from Eilermann to Butcher - MS_0035209 at MS_0035209.

(4) In 2013, Eilermann and Arri had discussions with ████████, a national homebuilder who had expressed interest in a purchase of McBride's assets. **PE 41** - July 2, 2013 Email from Eilermann - MS_0021157 at MS_0021157; **PE 23** - McBride 30(b)(6) Feb. 19, 2021 Depo at 36:10 – 37:22; **PE 22** - Todt Feb. 18, 2021 Depo at 177:3 – 177:21, 186:5 – 186:18.

(5) On 2021, the number two homebuilder in St. Louis was purchased demonstrating that there is outside interest in the St. Louis market. "Home construction shakeup: Cincinnati company buys St. Louis' No. 2 homebuilder" - St. Louis Post Dispatch - April 1, 2021.[7]

Disputed that McBride was a large, unionized homebuilder ██████████████████████████



---

[7] *Available* at https://www.stltoday.com/pr/business/fischer-homes-expands-to-st-louis-via-agreement-with-payne-family-homes/article_69ba4caa-92fb-11eb-8cd3-5cb9017bff17.html (last visited January 13, 2022).



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 128 | GreatBanc also considered that retaining Mr. Eilermann and Mr. Arri was essential to maintaining the value of the Company. (**DE 19**, DeCraene Dep. 186:9-17). This further complicated a sale to an outside buyer given that any potential sale would need to include a significant incentive for these key leaders to remain with the Company. (*Id.*) | Disputed.<br><br>Objection: speculation as to what potential third party buyers would do.<br><br>As noted above, GreatBanc was not engaged to solicit third party bids under the agreement signed by Eilermann and Arri. *See* PRF ¶ 127, *supra*.<br><br>Further disputed in that the self-serving deposition testimony does not demonstrate that GreatBanc performed any kind analysis at all to determine whether this was actually true and whether it was in the best interest of the ESOP. Further demonstrate that GreatBanc's "diligence" was improper given that they were concerned with the McBride that would be owned by Eilermann and Arri after the 2017 Transaction, not the one that was currently owned by the ESOP to which it owed its duty to maximize the amount of money it received for the MS Capital stock to achieve fair market value. Additionally (1) there's no evidence that key leaders would need to remain with the Company; (2) there's no evidence an outside buyer would want key leaders to remain with the Company; and (3) there's no evidence any "key leaders" would need additional incentives in order to stay with the company. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 129 |  | Disputed.<br><br>Objection: speculation, best evidence, hearsay.<br><br>Entirety of evidence cited is self-serving deposition testimony.<br><br>Third party bids were never considered because Eilermann and Arri prevented third party bids from |



ever happening by limiting the engagement of GreatBanc. *See* **PRF ¶ 127**, *infra.*

There would have been third party interest had Eilerman and Arri allowed there to be. *See* **PRF ¶ 127**, *infra.*



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 130 | Following its due diligence and initial valuation work, Stern Brothers provided GreatBanc with a draft valuation report as of October 13, 2017, which was circulated to GreatBanc's fiduciary committee. (**DE 123**, 10/18/2017 Nuzzo Email to Greenwald et al. at GBT_0003499-3593). Stern Brothers' valuation conclusion was that the fair market value of McBride's shares was ███ per share as of October 13, 2017. (*Id.* at GBT_0003502). | Disputed.<br><br>The draft valuation report was flawed and unreliable for the same reasons as the final valuation report. *See* **PRF ¶ 142**, *infra*.<br><br>The process engaged in by GreatBanc was also flawed and conflicted. *See* **PRF ¶ 126**, *supra*. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 131 | On October 20, 2017, the GreatBanc fiduciary committee met for initial discussion of the proposed redemption and Stern Brothers' initial valuation analysis, with | Disputed.<br><br>The draft valuation report that was reviewed at the meeting was flawed and unreliable for the same |

| | |
|---|---|
| representatives from Stern Brothers and MVA attending and presenting. (**DE 124**, 10/20/17 Minutes, GBT_0001577-79; **DE 19**, DeCraene Dep. 259:21-266:5; **DE 20**, Stern Bros. 30(b)(6) Dep. 251:12-263:19; *see generally* **DE 125**, 10/20/17 Notes, GBT_0000914-929). The committee members asked numerous questions of the advisors, who provided answers after discussion at this meeting. (*Id*). | reasons as the final valuation report. *See* **PRF ¶ 142**, *infra*.<br><br>The process engaged in by GreatBanc was also flawed and conflicted. *See* **PRF ¶ 126**, *supra*. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **132** | | |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 133 |  | Disputed. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 134 |  | Disputed. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 135 | While GreatBanc was negotiating terms with management, the Company held an employee meeting on October 23, 2017 to disclose details about the proposed ESOP redemption transaction to ESOP participants, why the transaction was being proposed, and how it would impact them if a deal were closed. (**DE 127**, 2017 Employee Presentation with Notes at MS_0000215-46). Mr. DeCraene attended that presentation to answer questions from ESOP participants. (*Id.* at MS_0000245-46; **DE 19,** DeCraene Dep. 243:9-244:22). ESOP participants were told that they would have an opportunity to approve or reject the redemption by confidential written ballots. (*Id.* at MS_0000241; **DE 19,** DeCraene Dep. 243:5-15; **DE 16,** Eilermann Dep. 173:2-14). | Disputed.<br><br>The information provided to the ESOP participants was insufficient and did not include all of the information about the 2017 Transaction:<br><br>(1) The information provided to participants did not include the level of detail that was included in the materials in the possession of GreatBanc and MS Capital. *Compare* **DE 127**, 2017 Employee Presentation with Notes at MS_0000215–46 & **DE 128**, Information Statement**,** MS_0006247–0006259 *with* **DE 132** - Stern Brothers' Valuation Report, dated November 30, 2017 - GBT_0004999 & **DE 133** - Stern Brothers' Fairness Opinion, dated November 30, 2017 - GBT_0005060.<br><br>(2) In fact, on November 15, 2017, an ESOP participant wrote to DeCraene concerned they did not have enough information about the 2017 Transaction and noted specifically that ▮▮▮▮▮ |



(3) the participants at the October 23, 2017 meeting were mislead by Eilermann where he

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 136 | Once the negotiations were concluded, an Information Statement was furnished to each ESOP participant. (**DE 128,** Information Statement**,** MS_0006247-0006259). GreatBanc and its advisors reviewed and edited the Information Statement before it was circulated. (**DE 19,** DeCraene Dep. 240:9-241:11; **DE 129,** 10/20/2017 Nuzzo Email to DeCraene et al., GBT_0005257-92). In particular, the Information Statement disclosed the redemption price of ▮▮▮ per share, as well as the structure of the redemption transaction. (**DE 128**, Information | Disputed.<br><br>The process engaged in by GreatBanc was flawed and conflicted. *See* **PRF ¶ 126**, *supra.*<br><br>The information provided to the ESOP participants was insufficient and did not include all of the information about the 2017 Transaction. *See* PRF 135, *supra.* |



Statement at MS_0006253).

|     | Defendants' Fact | Plaintiffs' Response |
|-----|------------------|----------------------|
| 137 | In addition to the October 23, 2017 presentation and the Information Statement, McBride also offered participants the opportunity to attend additional follow-up meetings about the redemption and provided the opportunity for participants to review McBride's historical financial information. (*See generally id.*; **DE 127**, 2017 Employee Presentation with Notes; *see also* **DE 130**, Deposition of Debra Kopinski ("Kopinski Dep.") 222:12-223:12). | Disputed.<br><br>The process engaged in by GreatBanc was flawed and conflicted. *See* **PRF ¶ 126**, *supra*.<br><br>The information provided to the ESOP participants was insufficient and did not include all of the information about the 2017 Transaction. *See* PRF 135, *supra*. |

|  | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 138 | The ESOP participants voted heavily in favor of the 2017 Redemption, with 58,208.1849 shares voting for, only 1,369.9242 shares voting against, and 772.2320 abstaining. (Dkt. 166-16, Decl. of Jeff Scholl; Dkt. 166-17, Decl. of Jeff Scholl Ex. A; Dkt. 166-18, Decl. of Jeff Scholl Ex. B; Dkt. 166-19, Decl. of Jeff Scholl Ex. C; **DE 19**, DeCraene Dep. Ex. 96 at GBT_0005500-14). This constituted approximately 93.5% of voting participants (representing approximately 87% of the 66,920.6617 allocated shares) voting to approve the transaction. (*Id*). | Disputed.<br><br>The process engaged in by GreatBanc was flawed and conflicted. *See* **PRF ¶ 126**, *supra*.<br><br>The information provided to the ESOP participants was insufficient and did not include all of the information about the 2017 Transaction. *See* **PRF 135**, *supra*. |

|  | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 139 | The participant votes were kept confidential. Neither management nor any party other than GreatBanc or the Trustee Team ever learned how any particular participant voted. **(DE 128**, Kopinski Defs.' Dep. Ex. 25 at MS_0006247, 6255-56; **DE 16**, Eilermann Dep. 173:214). | Disputed.<br><br>Objection: Lack of personal knowledge and hearsay as to Eilermann testifying on behalf of "management" or "any other party." |

|  | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| 140 |  | Disputed. |



| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **141** | After diligence and negotiations were complete, GreatBanc's advisors provided GreatBanc with final reports on the 2017 Redemption. (**DE 132**, 2017 Valuation Report, GBT_0004999-5037; **DE 133**, 2017 Fairness Opinion, GBT_0005060-64). Stern Brothers provided GreatBanc with an updated valuation report as of November 30, 2017, which concluded that the fair market value of MS Capital was ███ per share. (**DE 132**, 2017 Valuation Report, GBT_0004999-5037). Stern Brothers also provided GreatBanc with a fairness opinion that the 2017 Redemption was fair to the ESOP from a financial point of view, and that the proceeds received by the ESOP in the 2017 Redemption were not less than adequate consideration. (**DE 133**, 2017 Fairness Opinion, GBT_0005060-64). MVA provided | Disputed.<br><br>The process engaged in by GreatBanc was flawed and conflicted. *See* **PRF ¶ 126**, *supra*.<br><br>The valuation report and fairness opinion were flawed and unreliable. *See* **PRF ¶ 142**, *infra*. |

| | |
|---|---|
| GreatBanc with a legal diligence memorandum. (**DE 19,** DeCraene Dep. Ex. 96 at GBT_0005500-14). | |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **142** |  | Disputed.<br><br>Stern Brother's updated valuation analysis was flawed and unreliable for the following reasons: |



























| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **143** |  | Disputed.<br><br>The process engaged in by GreatBanc was flawed and conflicted. *See* **PRF ¶ 126**, *supra*.<br><br>The valuation report and fairness opinion were flawed and unreliable. *See* **PRF ¶ 142**, *supra*.<br><br>GreatBanc should not have voted in favor of the transaction. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **144** | After completion of the due diligence and negotiation process, in consultation with and reliance upon its legal and financial experts, and in accord with the overwhelming direction of the ESOP participants | Disputed.<br><br>The process engaged in by GreatBanc was flawed and conflicted. *See* **PRF ¶ 126**, *supra*. |

| | |
|---|---|
| and its own independent termination that the redemption transaction was fair to the ESOP, GreatBanc voted the allocated ESOP shares consistent with the participant votes (and all unallocated shares in favor, as it was entitled to do under the Plan). (*See* ¶¶ 126-143, *supra*; *see also* **DE 134**, 11/30/17 Minutes**,** GBT_0000930-32; **DE 19,** DeCraene Dep. Ex. 97, GBT_0001465-69; **DE 136**, 11/30/17 Notes, GBT_0001567-73). | The valuation report and fairness opinion were flawed and unreliable. *See* **PRF ¶ 142**, *supra*.<br><br>GreatBanc should not have voted in favor of the transaction. |

## B. MS Capital Redeemed Shares Held By Plan On November 30, 2017

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **145** | The 2017 Redemption closed on or about November 30, 2017. (**DE 4**, Redemption Agreement, MS_0000319-36; **DE 8**, McBride 30(b)(6) Dep. 127:24-128:2). | Admitted but incomplete. GreatBanc signed the Redemption Agreement on behalf of GreatBanc and Eilermann on behalf of MS Capital.<br><br>**DE 4 -** Redemption Agreement - MS_0000319 at MS_0000330. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **146** |  | Admitted. |

## C. The Plan converts from an ESOP to a Profit Sharing Plan

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **147** | On November 30, 2017, the Plan was converted from an employee stock ownership plan to a profit sharing plan. (**DE 4**, Redemption Agreement at MS_0000332-36). | Admitted. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **148** | On December 15, 2017, the assets of the profit sharing plan were transferred to the McBride & Son 401(k) Savings Plan. (**DE 5**, Trust to Trust Transfer, MS_0006239-40). | Admitted. |

## D. Management Stock Transaction Following the 2017 Redemption

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **149** | In December 2017, Messrs. Eilermann, Arri, Todt, and Schindler purchased units of MS Capital at ▮▮▮ per share. (**DE 65**, 2017 Eilermann Subscription Agreement, **DE 66**, 2017 Arri Subscription Agreement, **DE 139**, Stock Purchase Agreement, MS_0038275-80; **DE 140**, Arri-Todt Stock Purchase Agreement, MS_0038263-68; **DE 141**, Eilermann-Todt Stock Purchase Agreement, MS_0038269-74; **DE 142**, Deposition of Jeffrey Todt ("Todt Dep.") 70:19-25, 123:22-124:5; **DE 143**, Deposition of Jeff Schindler ("Schindler Dep.") 118:15-122:9). | Admitted but incomplete. Eilermann and Arri had outstanding subscription agreements to purchase MS Capital stock from the company at the time of the 2017 Transaction and became the sole owners of MS Capital stock immediately after the 2017 Transaction until they sold a minority portion to Schindler and Todt. |

| | Defendants' Fact | Plaintiffs' Response |
|---|---|---|
| **150** | Mr. Schindler left McBride in 2018. (**DE 143**, Schindler Dep. 13:3-4, 14:2-6; **DE 144**, Schindler Dep. Ex. | Admitted that Schindler left McBride in 2018.<br><br>Otherwise disputed. |

14 at MS_0024263).





Dated: January 14, 2022                         Respectfully submitted,

By: _/s/ *Mark G. Boyko*_

Mark G. Boyko (IL #6288036)
mboyko@baileyglasser.com
Bailey & Glasser LLP
34 N. Gore Ave. - Suite 102
Webster Groves, MO 63119
Telephone: (314) 863-5446
Facsimile: (314)-863-5483

Patrick O. Muench (IL #6290298)
pmuench@baileyglasser.com
Bailey & Glasser LLP
318 W. Adams St., Ste. 1606
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (202) 463-2103

Ryan T. Jenny
rjenny@baileyglasser.com
Gregory Y. Porter (admitted *pro hac vice*)
gporter@baileyglasser.com
Bailey & Glasser LLP
1055 Thomas Jefferson St., NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Thomas E. Clark Jr. (IL #6294921)
tclark@wagnerlawgroup.com
Jordan D. Mamorsky (IL #6337130)
jmamorsky@wagnerlawgroup.com
The Wagner Law Group, PC
190 South LaSalle Street, Suite 2100
Chicago, IL 60603
Telephone: (314) 236-0065
Facsimile: (314) 236-5743

*Attorneys for Plaintiffs*