## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**GREGORY GODFREY, *et al.*,**      ) Case No.: 1:18-CV-07918

            )

         Plaintiffs,     ) Judge Matthew F. Kennelly

            )

  -v-               ) Magistrate Judge Michael T. Mason

            )

**GREATBANC TRUST COMPANY, *et al.*,** )

            ) **Oral Argument Requested**

         Defendants.    )

            )

            )

            )

            )

## GREATBANC TRUST COMPANY'S REPLY MEMORANDUM
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND
## <u>OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

I.    GreatBanc is Entitled to Summary Judgment on the Claims Challenging the 2013 Reorganization (Count I, Count III, Count V). ...................................................1

    A.    The ESOP Did Not Lose Governance Control. ...............................1

    B.    Plaintiffs Have No Evidence of Damages for Counts III and V. .............6

    C.    GreatBanc Did Not Breach Section 404 or 405  (Count III and V). .........7

    D.    GreatBanc is Entitled to Summary Judgment on Count I. ......................8

        1.    There are No Damages for Plaintiffs' Section 406 Claim. .........8

        2.    The Challenged Transaction Falls Outside Section 406(a). .........8

        3.    The Section 408(e) Exemption Applies. .....................................9

        4.    There is no Violation of Section 406(b)(2). ..............................10

    E.    Plaintiffs' Partial Cross-Motion on Counts I and III Should be Denied. ..............11

II.    GreatBanc is Entitled to Summary Judgment on Counts VII & IX Challenging Cash Compensation Paid to Management Between 2013 & 2017. ...........................11

    A.    ERISA Does Not Impose Duties On GreatBanc Regarding Cash Compensation Decisions by McBride's Board. ....................................12

    B.    Even if ERISA Applies, There is No Breach and No Losses to the ESOP Recoverable from GreatBanc. ...................................................14

        1.    GreatBanc's Knowledge of McBride's Compensation Process. ..............14

        2.    Compensation Based on Contemporaneous Market Data. .........15

        3.    Plaintiffs Have No Evidence of Imprudence by GreatBanc. .........16

        4.    Plaintiffs Have No Viable Damages Theory Against GreatBanc. ..............18

III.    GreatBanc is also Entitled to Summary Judgment To The Extent Plaintiffs Still Assert a Free-Equity Dilution Theory in Count VII and Count IX ..................19

IV.    GreatBanc is Entitled to Summary Judgment on the Claims Challenging the 2017 Redemption (Counts XI, XIII, XV), and Plaintiffs' Cross-Motion Should be Denied .....20

i

CONCLUSION...................................................................................................................21

## **TABLE OF AUTHORITIES**

**Cases**

*Armstrong v. Amsted Indus.*,
   Nos. 01-cv-2963, MDL 1417, 2004 U.S. Dist. LEXIS 14776 (N.D. Ill. July 29, 2004) ..................... 13

*Atwood v. Burlington Indus. Equity,*
   No. 92-cv-00716, 1994 U.S. Dist. LEXIS 12347 (M.D.N.C. Aug. 3, 1994) ...................................... 13

*Blankenship v. Chamberlain,*
   695 F. Supp. 2d 966 (E.D. Mo. 2010) .............................................................................................. 12

*Brundle v. Wilmington Tr., N.A.,*
   919 F.3d 763 (4th Cir. 2019) ............................................................................................................. 5

*Brundle v. Wilmington Tr. N.A.,*
   241 F. Supp. 3d 610 (E.D. Va. 2017)................................................................................................. 5

*Delta Star, Inc. v. Patton,*
   76 F. Supp. 2d 617 (W.D. Pa. 1999) ............................................................................................... 13

*Fish v. GreatBanc Tr. Co.,*
   No. 09-cv-1668, 2016 U.S. Dist. LEXIS 137351 (N.D. Ill. Sep. 1, 2016) ................................... 8, 18

*Frechter v. Zier, No. 12038-VCG,*
   2017 WL 345142, 2017 Del. Ch. LEXIS 14 (Del. Ch. Jan. 24, 2017) ............................................. 2

*Great West Life & Annuity Ins. Co. v. Knudson,*
   534 U.S. 204 (2002) ................................................................................................................ 6, 7, 19

*Halperin v. Richards,*
   7 F.4th 534 (7th Cir. 2021) ............................................................................................................. 14

*Hill Int'l, Inc. v. Opportunity Partners L.P.,*
   119 A.3d 30 (Del. 2015) ................................................................................................................... 1

*Hill v. Tangherlini,*
   724 F.3d 965 (7th Cir. 2013) ............................................................................................................ 7

*Hurtado v. Rainbow Disposal Co.,*
   No. 17- 1605, 2018 U.S. Dist. LEXIS 118128 (C.D. Cal. July 9, 2018) ......................................... 13

*Martin v. Feilen,*
   965 F.2d 660 (8th Cir. 1992) ........................................................................................................... 12

*Milwaukee Gun Club v. Schulz,*
   979 F.2d 1252 (7th Cir. 1992) ......................................................................................................... 10

*Olson v. Morgan*,
   750 F.3d 708 (7th Cir. 2014) ............................................................................... 8

*Pizzella v. Vinoskey*,
   409 F. Supp. 3d 473 (W.D. Va. 2019) ................................................................. 5

*Spires v. Schools*,
   271 F. Supp. 3d 795 (D.S.C. 2017) ...................................................................... 13

## **Rules and Statutes**

Fed. R. Civ. P. 56 .......................................................................................... 1, 8, 10

Fed. R. Evid. 1002 ................................................................................................ 7

29 U.S.C. § 1002 ................................................................................................... 9

29 U.S.C. § 1104 ............................................................................................ 7, 8, 11, 21

29 U.S.C. § 1105 ............................................................................................. 7, 8, 21

29 U.S.C. § 1106 ..................................................................................... 8, 9, 10, 11, 20

29 U.S.C. § 1108 ........................................................................................ 9, 10, 20

## INTRODUCTION

Summary judgement is a rule of reckoning. It obliges parties to face facts, and in this case undisputed facts developed during a year of discovery that give the lie to Plaintiffs' claims against GreatBanc. No longer may Plaintiffs rely upon the presumption of truth of their allegations or simple notice pleading that they enjoyed to date to spin a fanciful narrative of alleged greed and malfeasance. Rather, GreatBanc's opening brief and Defendants' Joint Statement of Material Facts, showing Plaintiffs' allegations lack evidentiary support, placed a burden on Plaintiffs to "cit[e] to particular parts of materials in the record" indicating a genuine and material factual dispute exists for trial, or face dismissal of their claims. Fed. R. Civ. P. 56(c). They failed to do so.

Short on substance, Plaintiffs went long on paper, hoping the length and density of their L.R. 56.1 filings, fattened by attorney argument, cut-and-paste expert opinion dressed up as fact, and citation to immaterial parts of the record, would dissuade the Court from entering summary judgment. Instead, the *material* facts, the ones relevant to summary judgment, are discrete and dispositive, and most importantly not in dispute. GreatBanc is entitled to summary judgment.

## ARGUMENT

I.   **GreatBanc is Entitled to Summary Judgment on the Claims Challenging the 2013 Reorganization (Count I, Count III, Count V).**

   A.   <u>**The ESOP Did Not Lose Governance Control.**</u>

GreatBanc's Motion asks the Court to rule that the ESOP did not lose governance control of McBride as a result of the 2013 Reorganization. GreatBanc identified undisputed facts that there was no loss of governance control as a matter of law based on the straightforward and unambiguous terms of the applicable bylaws and LLC operating agreement. (*See* DSOF ¶¶ 54-57; GBT Br. at 2-3; *Hill Int'l, Inc. v. Opportunity Partners L.P.,* 119 A.3d 30, 38 (Del. 2015) (governance documents are akin to contracts so courts apply unambiguous language as a matter of law)). Plaintiffs'

opposition brief fails to show otherwise. Indeed, stripped of hyperbole, Plaintiffs identify just a few arguments supporting an alleged loss of control; none hold water.

Plaintiffs' principal argument is that the ESOP gave up "effective control" in the 2013 Reorganization because before the reorganization, the bylaws of MS Management stated directors could be removed "with or without cause", but post-reorganization the bylaws of MS Capital stated directors could only be removed "for cause". (Opp. Br. at 14, 21.) This argument fails for any of three independent reasons.

First, under the unambiguous terms of the MS Capital bylaws, as the 100% shareholder the ESOP had the ability to change the entire composition of the board of directors at any time for any reason via written consent. (*See* DSOF ¶ 56 citing **DE 57** at Article I, § 1 and Article II, § 1 (directors must be elected by shareholders at least every annual meeting and hold office only until "respective successors are elected and qualified or until their earlier resignation or removal"); Article I § 9 (ESOP as 100% shareholder has the right to take any action at any time that could be taken at a meeting through written consent without prior notice)).

Second, the "with or without cause" versus "for cause" distinction Plaintiffs draw is legally meaningless. As a matter of black-letter law, majority shareholders in a Delaware corporation (as the ESOP was in MS Capital) have the unfettered statutory right to remove directors with or without cause, regardless of any terms in the bylaws. *See, e.g.*, *Frechter v. Zier*, No. 12038-VCG, 2017 WL 345142, 2017 Del. Ch. LEXIS 14 (Del. Ch. Jan. 24, 2017). Plaintiffs do not address this controlling legal principle, cited in GreatBanc's opening brief, in their opposition brief.

Finally, regardless of whether the MS Capital bylaws may have had "for cause" language (or any other language), the truth is that the bylaws could always be whatever the ESOP wanted them to be in a given situation. Why? Because the bylaws explicitly provide the ESOP—as the

sole shareholder of MS Capital—with the exclusive right to amend the bylaws whenever it chose. (*See* DSOF ¶ 56 citing **DE 57** at Article VII (allowing amendments upon the "vote by the holders of a majority of the outstanding stock of the Corporation entitled to vote at any annual meeting or at any special meeting"); Article I, § 9 (giving ESOP as 100% shareholder the right to take any action at any time via written consent that could be taken at a meeting, without prior notice)). Given the ESOP owned 100% of the outstanding shares of MS Capital at all times following the 2013 Reorganization (DSOF ¶ 86), the net effect of these provisions is that the ESOP enjoyed the unfettered right to amend the MS Capital bylaws however it chose, at any time, and for any reason. And there were no impediments to the ESOP's power in this regard; all it needed to do was execute a simple unanimous written consent and amend any provision of the bylaws it felt appropriate.

Plaintiffs other "loss of control" arguments fare no better. Plaintiff contends that the MS Companies LLC operating agreement barred removal of Arri and Eilermann from the Board of Managers except for cause. Here again, Plaintiffs ignore the undisputed fact that the ESOP held the trump card. For while Arri and Eilermann were the two initially appointed LLC managers, the operating agreement permitted up to five managers "as determined by a Majority Interest". (DSOF ¶ 57 citing **DE 11** at § 5.2(a).) "Majority Interest" means in excess of "(50%) of the aggregate of all Voting Interests" (*Id.* at § 1.51), and "Voting Interests" means the Class A and B Units (*Id.* at § 1.81, 1.82). It is undisputed that at all times after the 2013 Reorganization, the ESOP (through MS Capital) held the "Majority Interest"—i.e., over 50% of the aggregate of all Voting Interests in MS Companies, LLC. (DSOF ¶¶ 85, 87.) The net effect: if ever displeased with the management of Arri and Eilermann, the ESOP had the power to appoint three additional managers who could outvote them. Here again, the ESOP retained control. Moreover, the ESOP had yet another clear mechanism for taking control of the board: appointing successors to Eilermann and Arri. Pursuant

to section 5.2(c), "[e]ach Manager [would] hold office until his death, resignation, removal *or the appointment and qualification of his successor*." (*See* DSOF ¶ 57 citing **DE 11** at § 5.2(c) (emphasis added).) So in addition to the ESOP's "board-packing" right, it could also replace Arri and Eilermann in the ordinary course by exercising its majority power to appoint someone else to their spots, at which point they are no longer managers.

Last, Plaintiffs contend that the ESOP lost control in the 2013 Reorganization because Arri and Eilermann gained "unfettered control" over their own compensation. (Opp. Br. at 15.) Again, this statement is inconsistent with the undisputed facts. It is undisputed that, prior to the 2013 Reorganization, the ESOP (through GreatBanc as trustee) did not have the ability to control synthetic equity awards to management, but as part of the 2013 Reorganization, the unambiguous terms of the governance documents gave the ESOP (via the trustee) the new and exclusive power to control all equity awards. (*See* DSOF ¶¶ 54-55 citing **DE 11** at § 5.5(b); **DE 56** at § 6.1; **DE 10**, Arri Dep. 174:10-178:12.) In other words, the ESOP's control related to compensation *increased*—not decreased—following the 2013 Reorganization.[1]

Far from concluding the 2013 Reorganization "relieved it of executive compensation oversight" (Opp. Br. at 15)—as Plaintiffs allege contrary to the undisputed facts—this new control over free equity awards was explicitly negotiated, discussed, and important to GreatBanc's consideration of the 2013 Reorganization. (*See* Defendants' Responses to Additional Facts ("DRF") ¶ 78 and DSOF ¶ 66 citing **DE 28**, **DE 29**; **DE 10**, Arri Dep. 177:24-178:12.) And following the 2013 Reorganization, it is undisputed that all future equity was *purchased*, not freely given, and the undisputed facts demonstrate GreatBanc's active oversight of executive

---

[1] Plaintiffs' passing references in PAF to other provisions in the bylaws or LLC operating agreement that they suggest indicate loss of governance control are likewise contradicted by the unambiguous terms of those documents and the undisputed facts. (*See, e.g.*, DRF ¶¶ 61, 65-68, 70.)

compensation, together with the independent analysis and assistance of Stern Brothers, both of whom served as additional checks on compensation decisions already vetted by an independent third-party compensation consultant (Total Reward Strategies, "TRS"), an independent advisory board, and McBride's independent outside auditors. (*See* Section II.B, *infra*.)

The two cases Plaintiffs rely upon for their loss-of-control argument only further illustrate that GreatBanc is entitled to summary judgment. In *Brundle*, for example, an investor rights agreement executed in connection with the transaction explicitly gave only the individual sellers— not the ESOP—"the power to appoint a majority of the [] board, a key indicator of control," and furthermore "the ESOP governing plan document and the ESOP trust agreement each *required* [the trustee] to vote its shares as the [company] board (not the ESOP) directed." *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 777 (4th Cir. 2019) (citing *Brundle v. Wilmington Tr. N.A.*, 241 F. Supp. 3d 610, 626-27 (E.D. Va. 2017) (emphasis in original)). The district court further noted how contemporaneous emails also stated that the sellers, not the ESOP, had the express "right to appoint a majority" of directors and thus "retain operational control over the company[.]" *Brundle*, 241 F. Supp. 3d at 626. The undisputed facts in this case, including the unambiguous control provisions in the governance documents, are materially different.

Similarly, in *Vinosky*, the Court found the ESOP did not have governance control because it could only change one of the three ESOP trustees, and the three ESOP trustees controlled the board composition and the "vast majority of corporate matters." *Pizzella v. Vinoskey*, 409 F. Supp. 3d 473, 493-94 (W.D. Va. 2019). Nothing close to this happened on the undisputed facts here.

All of which is to say, when Plaintiffs contend the ESOP gave up governance control of McBride through the 2013 Reorganization, it is contrary to the undisputed facts. This narrow issue of control is well-suited for summary judgment, and can resolve all the 2013 Reorganization claims

against GreatBanc. This is so because, as described below, Plaintiffs' sole damages theory against GreatBanc for all 2013 Reorganization claims depends on loss-of-control. (*See* Sections I.B, I.D.1 *infra*.) [2]

### B. Plaintiffs Have No Evidence of Damages for Counts III and V.

GreatBanc argued that summary judgment should be entered on Counts III and V because both rely solely on loss-of-control damages for that necessary element of both claims. (GBT Br. at 7.) Plaintiffs offer three contrary arguments—all without merit. (Opp. Br. at 29-30.)

Plaintiffs first argue that they have damages evidence in the form of the expert opinion of Daniel Van Vleet. Plaintiffs have an insurmountable problem with that argument. Even assuming that opinion is admissible, all agree it is based solely on the ESOP's loss of governance control.[3] As shown above and in GreatBanc's opening brief, there was no loss of governance control, and that undisputed fact thus eliminates Plaintiffs' only 2013 Reorganization damages opinion.

Plaintiffs next argue that they may equitably recover "ill-gotten profits by Eilermann and Arri post-2013 that flow directly from" the 2013 Reorganization pursuant to ERISA section 409(a). (Opp. Br. at 29.) That restitution theory is a non-starter against GreatBanc. Each of the three categories of funds Plaintiffs seek to claw back are stock or compensation that Eilermann and Arri—not GreatBanc—allegedly received. (*Id.*) Plaintiffs identify no "profits" allegedly received *by GreatBanc* that it aims to recover (there are none), nor cite any authority standing for the idea that a plaintiff may obtain return-of-profits under section 409(a) from one party based on funds received by another. *See Great West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 214

---

[2] Were there some ambiguity in the documents (there is none), the external evidence of the parties' intentions the Court would then consider is unrebutted: all intended full governance control by the ESOP. (GBT Br. at 3.)

[3] *See, e.g.*, PAF ¶¶ 177-78 (2013 Reorganization damages are the "2013 Loss of Control Damages").

(2002) (noting equitable restitution "must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.").

Finally, Plaintiffs claim that GreatBanc's there-is-no-damages-evidence argument "would turn ERISA remedies on its head." (Opp. Br. at 29.) Not so. GreatBanc's position is not based on an aggressive interpretation of ERISA law, but only the well-known damages element any plaintiff must prove to assert a claim. There are no broader implications of ruling in GreatBanc's favor. Plaintiffs had ample opportunity to develop a damages theory tied to GreatBanc's alleged misconduct, which is their burden to carry. (*See* GBT Br. at 3-4, 7.) They failed.

### C.    GreatBanc Did Not Breach Section 404 or 405  (Count III and V).

GreatBanc outlined in its opening brief how the undisputed facts demonstrate that, as it relates to the 2013 Reorganization, GreatBanc did not breach section 404 or 405 duties. (GBT Br. at 3-6.) Plaintiffs fill their opposition brief, and their PRF and PAF, with irrelevant objections and unsupported accusations. (*See* Opp. Br. at 24-28.) This does not create a fact dispute.

Consider some of their objections. Plaintiffs repeatedly object on the basis of the "best evidence rule" (*e.g.*, PRF ¶¶ 15-20, 22- 30, 35). The best evidence rule is inapplicable—that rule simply requires that a party attempting to prove the contents of a document produce the original. Fed. R. Evid. 1002. Plaintiffs also attempt to label sworn deposition testimony that is undisputed and unrebutted as "self-serving" evidence (*e.g.*, PRF ¶¶ 15, 18-30, 35). This does not prevent the Court from considering that material undisputed evidence either: "the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). Plaintiffs further raise hearsay objections where the statements referenced in the cited testimony are either non-hearsay or obviously not offered for the truth of the matter asserted (*e.g.*, PRF ¶¶ 15,

17, 18-30, 32-33, 35), and in all events are offered at a procedural stage where evidence need not be in an admissible form (just capable of later being presented in an admissible form at trial). Fed. Civ. P. 56(c)(2); *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014).

As for the evidence generally, a close review of the facts—although tedious—demonstrates Defendants' statements are supported by unrebutted evidence that is material to GreatBanc's duties under sections 404 and 405, while Plaintiffs' statements are not. (*See, e.g.,* DSOF ¶¶ 45-66; DRF ¶¶ 59-70, 73-79.) The undisputed facts show GreatBanc breached no section 404 or 405 duties related to the 2013 Reorganization. Summary judgment should be granted on Counts III and V.

**D.** **GreatBanc is Entitled to Summary Judgment on Count I.**

**1.** **There are No Damages for Plaintiffs' Section 406 Claim.**

Plaintiffs' section 406 claim fails for the same reason as their other 2013 Reorganization claims. Plaintiffs' only damages theory for their section 406 claim is the alleged "difference between the fair market value" of the shares in MS Companies Inc. that were exchanged for shares of MS Capital. (Opp. Br. at 11, 29; GBT Br. at 7.) This damages theory, Plaintiffs acknowledge, depends entirely on lost governance control—nothing more—which did not occur as a matter of undisputed fact. And, as explained above, there is also no restitution or other similar equitable remedy available against GreatBanc. Left with no damages, and no equitable remedy, Plaintiffs have no claim. Summary judgment must be entered on Count I for this reason. *See Fish v. GreatBanc Tr. Co.,* No. 09-cv-1668, 2016 U.S. Dist. LEXIS 137351, at *215 (N.D. Ill. Sep. 1, 2016) (no damages also means judgment for defendants on section 406 claim).

**2.** **The Challenged Transaction Falls Outside Section 406(a).**

GreatBanc demonstrated in its opening brief that the section 406(a)(1)(A) and (D) claims also fail because the "Challenged Transaction" did not include a party in interest. (*See* GBT Br. at

7-8.)[4] Specifically, GreatBanc showed that MS Capital—to whom the ESOP contributed its MS Companies stock in the Challenged Transaction—did not fit the statutory definition of "party in interest" under 29 U.S.C. section 1002(14), consistent with Congress's intent regarding the types of transactions section 406 is intended to prohibit. (*Id.*; DRF ¶ 12.) Without a transaction involving the ESOP's assets and a party in interest, Plaintiffs cannot prove their section 406 claim.

Plaintiffs muster just two cursory arguments in opposition. Both fail. First, Plaintiffs identify certain roles that MS Capital *later* played—as an employer, as named fiduciary of the ESOP—and claim those acts establish MS Capital as a party in interest at the time of the Challenged Transaction. (Opp. Br. at 18.) But Plaintiffs do not and cannot claim that MS Capital served in those functions *at the time* of the Challenged Transaction. Plaintiffs seemingly recognize this gap by arguing that "[a]ny existence MS Capital had prior to the 2013 Recapitalization closing made it a party in interest because it was created by GreatBanc and incorporated by Arri. 29 U.S.C. § 1002(14)(G)." (*Id.*) But those alleged actions do not make MS Capital a party in interest. It is true that Congress defined one type of "party in interest" in section 1002(14)(G), but neither "creating" nor "incorporating" an entity are part of the definition.[5]

### 3.    The Section 408(e) Exemption Applies.

Even if the Challenged Transaction included a party in interest, GreatBanc is still entitled to summary judgment because the section 408(e) exemption applies. The undisputed facts show that the exchange of MS Companies Inc. shares for MS Capital shares was at least fair market value, and also that GreatBanc conducted a good faith investigation. (GBT Br. at 8-11.) Regarding

---

[4] Recall the "Challenged Transaction" is the second transaction that occurred as part of the 2013 Reorganization—i.e., the ESOP's contribution to MS Capital of ████ shares of MS Companies Inc. in exchange for ████ shares of MS Capital. (GBT Br. at 7-8; DSOF ¶ 70; Second Amended Complaint ¶ 341.)

[5] That section references entities owned 50 percent or more by certain other parties in interest described in 29 U.S.C. § 1002(14)(A)-(E)—none of which apply to MS Capital.

value, the undisputed facts show the Challenged Transaction was not less than fair market value. (*Id.*) Plaintiffs respond with just a single substantive point: alleged loss of control means the exchange of stock was supposedly less than fair market value. (Opp. Br. at 23.) But it is undisputed there was no loss of governance control, so there is no genuine dispute of material fact regarding fair market value. As for GreatBanc's investigation, the undisputed facts demonstrate GreatBanc conducted a good faith and prudent one, in appropriate consultation with and reliance upon its legal and financial advisors. (*See, e.g.*, GBT Br. at 4-6, 10-11; DRF ¶¶ 56, 73-79.)

### 4.      There is no Violation of Section 406(b)(2).

Plaintiffs opposition fails to cite any part of the record, as required by Rule 56(c)(1), identifying a material fact showing that GreatBanc, in finding the 2013 Reorganization was fair to the ESOP, acted "on behalf of a party . . . whose interests are adverse to the interests of the plan." 29 U.S.C. § 406(b)(2). Summary judgment is appropriate for this reason. In addition, even if there were a section 406(b)(2) violation, the section 408(e) exemption applies for the reasons above and in GreatBanc's opening brief. There is no doubt that the plain language of section 408(e) makes it applicable to transactions otherwise prohibited under section 406(b)(2): "Section[] 1106 . . . shall not apply" if the exemption is met. 29 U.S.C. § 1108(e). By its plain language the section 408(e) exemption is not limited to section 406(a). *Milwaukee Gun Club v. Schulz*, 979 F.2d 1252, 1255 (7th Cir. 1992) ("If the plain language of the statute is clear, we do not look beyond those words") (cleaned up). Plaintiffs disagree, but the only basis is citation to inapposite case law. (Opp. Br. at 7, 24.) They cite a Sixth Circuit decision that the section 408***(b)(2)*** exemption for payment of "reasonable compensation" to a party in interest for office space or services related to a covered plan is inapplicable to the self-dealing prohibition in 406***(b)(1)***. (*Id.*) Different prohibited transaction, different exemption, no applicability here.

### E.   **Plaintiffs' Partial Cross-Motion on Counts I and III Should be Denied.**

On Count III, Plaintiffs seek partial summary judgment that GreatBanc breached its duty of loyalty under ERISA section 404(a)(1)(A). (Opp. Br. at 12-17.) Plaintiffs are not entitled to summary judgment, rather GreatBanc is, because the undisputed facts demonstrate Plaintiffs have failed to establish evidence of damages – loss of control – a necessary element of their 404 claim. (*See* Section I.B., *supra.*) Summary judgment should also be entered for GreatBanc because the undisputed facts show no breach of loyalty. Tellingly, Plaintiffs fail to point to any fact, undisputed or otherwise, showing GreatBanc had any reason or incentive to be disloyal. Plaintiffs instead present a list of demonstrably false allegations. (*See* Opp. at 13-16 (purporting to list 16 breaches of loyalty)). These allegations and unsupported argument are debunked by the undisputed facts and correct application of the law. (*See* DRF resp. to PAF cites; GBT Br. at 2-8 and DSOF cites.)[6]

Regarding Count I, Plaintiffs ask for partial "summary judgment on GreatBanc's violations of ERISA § 406(a)". (Opp. Br. at 17-19.) But as shown above, GreatBanc is entitled to summary judgment, not Plaintiffs, because the undisputed facts show the Challenged Transaction did not involve a party in interest (so section 406 is inapplicable), but even if it did the section 408(e) exemption indisputably applies, and Plaintiffs also have no damages.[7]

## II.   **GreatBanc is Entitled to Summary Judgment on Counts VII & IX Challenging Cash Compensation Paid to Management Between 2013 & 2017.**

GreatBanc moved for summary judgment on Plaintiffs' claims seeking to impose ERISA liability for the McBride Board's cash compensation decisions between 2013 and 2017. (GBT Br. at 11-13.) Plaintiffs assert that "it is appropriate to respond in tandem" to both GreatBanc and the

---

[6] GreatBanc also incorporates here by reference, the discussion and argument in the McBride Defendants' opening and reply briefs related to the 2013 Reorganization.

[7] At a minimum, should the Court disagree, then GreatBanc's ability to rely on the section 408(e) exemption is a disputed fact for trial. Plaintiffs agree. (Opp. Br. at 22-23 (application of section 408(e) exemption is "disputed")).

McBride Defendants regarding the cash compensation claims. (Opp. Br. at 38.) It is not. As explained below, the legal and factual analysis as to GreatBanc is distinct, and requires summary judgment on Counts VII and IX.

### A. ERISA Does Not Impose Duties On GreatBanc Regarding Cash Compensation Decisions by McBride's Board.

In its opening brief GreatBanc stated that, although in certain exceptional circumstances some courts have applied ERISA to "dual hat" corporate officers or directors setting their own compensation, no case held an independent and "single hat" third-party trustee like GreatBanc had an ERISA duty to second-guess or intervene in cash compensation decisions made by corporate officers and directors. Plaintiffs sarcastically chide GreatBanc for not looking hard enough.

Yet the cases cited by Plaintiffs only prove GreatBanc's point. For example, Plaintiffs' lead case is *Blankenship v. Chamberlain*, 695 F. Supp. 2d 966 (E.D. Mo. 2010). In *Blankenship*, ESOP participants sued an individual who served as ESOP trustee, CEO, and had sold the company to the ESOP; they challenged an extensive series of self-dealing and conflicted transactions. *Id*. at 968-70. In overruling a motion to dismiss, the court stated that "[b]inding authority establishes that an ERISA fiduciary *also acting in a corporate capacity* may have a fiduciary duty to bring a derivative action against himself based on knowledge of acts of corporate mismanagement or self-dealing…[.]" *Id*. at 977 (emphasis added). *Blankenship* is thus nothing like here, where Plaintiffs sue a *third-party* ESOP trustee and seek to impose on a shareholder the obligation to second-guess compensation paid to *others*. Nor is GreatBanc wearing two (or three) hats like the trustee in *Blankenship* or is the issue of suing oneself present in this case.

Plaintiffs other cited cases are in line with *Blankenship*. In *Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992), the Eighth Circuit rejected the idea that "ERISA fiduciary duties were implicated by every [] corporate transaction that 'affected' the value of that stock." *Id*. at 665. In this regard,

*Feilen* actually helps GreatBanc, and is in accord with *Armstrong v. Amsted Indus.*, where the court held a third-party trustee "cannot be held liable for breach of fiduciary duty to plaintiffs for failure to override [a] business decision"—even, unlike here, a business decision followed by "a precipitous decline in the value of the employees' ESOP shares." Nos. 01-cv-2963, MDL 1417, 2004 U.S. Dist. LEXIS 14776, at **13, 40-41 (N.D. Ill. July 29, 2004).

Moreover, the ESOP trustees in *Feilen* were deeply conflicted personally, not an independent, third-party trustee like GreatBanc. *Delta Star, Inc. v. Patton*, 76 F. Supp. 2d 617 (W.D. Pa. 1999) is the same: the deeply conflicted ESOP trustee in *Delta Star* was sued related to *his own* compensation. Same with *Spires v. Schools*, 271 F. Supp. 3d 795 (D.S.C. 2017), another case where the ESOP defendants were accused of overpaying themselves. *Atwood v. Burlington Indus. Equity,* No. 92-cv-00716, 1994 U.S. Dist. LEXIS 12347, at *8-9 (M.D.N.C. Aug. 3, 1994), an unreported, pre-*Twombly* decision on the pleadings, similarly involved a transaction where "the ESOP trustee's parent company. . . helped to finance the public offering, thereby creating a 'blatant' conflict of interest for the trustee." Finally, *Hurtado v. Rainbow Disposal Co*., No. 17-1605, 2018 U.S. Dist. LEXIS 118128 (C.D. Cal. July 9, 2018) has nothing at all to do with compensation or a trustee's oversight of day-to-day corporate affairs.[8]

The takeaway: GreatBanc argued that Plaintiffs' attempt to hold it liable under ERISA for compensation decisions is without support in the text of ERISA or case law. Plaintiffs cannot identify a case that holds a third-party trustee like GreatBanc liable for a corporation's executive cash compensation decisions. And this should be no surprise. To hold otherwise would effectively

---

[8] Plaintiffs make a passing reference to the fact GreatBanc cites authority "it referred to in its motion to dismiss," which Plaintiffs opposed. (Opp Br. at n.31). That motion to dismiss briefing (and the Court's decision on it) does not help Plaintiffs now, and they rightly do not contend that it does. The pleadings-stage presumptions are gone, and the Court did not address the cash compensation theory that during discovery became the basis for Counts VII and IX.

impose state-law officer and director duties on "single-hat" third-party trustees tasked solely with administering a plan for the benefit of participants—a result fundamentally at odds with ERISA. "Unlike with dual-hat directors and officers, ERISA does not contemplate single-hat fiduciaries owing any parallel duties to the corporation", nor that they "be forced to worry about whether directors and officers were complying with separate corporation-law duties." *Halperin v. Richards*, 7 F.4th 534, 551 (7th Cir. 2021). Yet Plaintiffs attempt just that by arguing ERISA requires third-party trustees like GreatBanc to oversee, manage, and second-guess cash compensation decisions by officers and directors that have nothing to do with administering the plan or its assets.[9]

### B. Even if ERISA Applies, There is No Breach and No Losses to the ESOP Recoverable from GreatBanc.

Plaintiffs fail to identify genuine, material facts, disputing that (i) McBride's executive compensation process, guided by an independent qualified consultant, was reasonable, (ii) resulted in market-based compensation that did not require shareholder intervention, (iii) GreatBanc's consideration of executive compensation was prudent, or (iv) that GreatBanc caused any damage to the ESOP. Thus, even if ERISA applies, summary judgment must still be entered for GreatBanc.

#### 1. GreatBanc's Knowledge of McBride's Compensation Process.

Start with GreatBanc's knowledge of McBride's process. GreatBanc detailed the evidence of a deliberate and considered process by McBride for determining executive compensation. (GBT Br. at 13-14.) One aspect of that process known to GreatBanc was that McBride retained a third-party compensation consultant (TRS), who was highly qualified and had worked for clients such as Anheuser-Busch, Bank of America, and Monsanto, among others. (DSOF ¶¶ 91-93.) Every year, TRS provided McBride with reports showing compensation levels at 50% and 75% of

---

[9] In addition to the above, GreatBanc also argued in its opening brief that ERISA did not impose such a duty because cash compensation does not involve plan assets. (*See* GBT Br. at 11). GreatBanc incorporates by reference here the McBride Defendants' plan-assets reply argument.

14

comparable market peers. (DSOF ¶¶ 94, 97, 106 (citing **DE 104** to **107**).) Another aspect of McBride's process known to GreatBanc was the involvement of its advisory board, which independently reviewed the TRS reports and the levels of compensation, and whose membership included Kipp Scott, an individual familiar with executive compensation levels for homebuilding companies like McBride, having served as the COO of Ryland Homes (one of the three largest homebuilders in the United States). (DSOF ¶¶ 11, 95, 108.) A final example: an outside auditing firm (RubinBrown) conducted annual audits of McBride, was aware of the compensation paid to management, and never raised an issue or suggested compensation was excessive. (DSOF ¶ 107.)

In their opposition brief, Plaintiffs *say* those facts are disputed, but what they submit in response are either irrelevant facts, inapplicable objections, or lawyer argument about facts they cannot dispute. (*See* PRF ¶¶ 91-95, 97, 106-108; Section I.C., *supra*.) The facts regarding McBride's process for setting compensation, and GreatBanc's knowledge of it, are undisputed.

### 2. Compensation Based on Contemporaneous Market Data.

Furthermore, over the time period at issue, the undisputed evidence shows GreatBanc also knew Eilermann and Arri were paid consistent with TRS's independent guidance. (DSOF ¶¶ 106, 109-111.) Plaintiffs attempt to create a dispute regarding the total amounts Eilermann and Arri were paid by citing the error-riddled and intentionally-inflated "total compensation" numbers presented by their so-called compensation expert, Stephen Kirkland. (PRF ¶ 106). But Eilermann and Arri followed TRS's independent market guidance *even in Kirkland's telling.* Compare Kirkland's numbers with TRS's independent guidance at the 75% level of market peers:

| Total Aggregate Compensation Paid From 2013 to 2016 | |
|---|---|
| Eilermann | Arri |
| TRS: ███████████ | TRS: ███████████ |
| Kirkland: ███████ | Kirkland: ███████ |
| (Actual): ███████ | (Actual): ███████ |

(*See* DSOF ¶ 106 (citing **DE 104** to **107**); PRF ¶ 106.)[10] Kirkland's made-up number for Eilermann is still over ███████ *less* than TRS's independent and contemporaneous market guidance, and for Arri just ██████████████████ off TRS's independent guidance. (*Id*.) Consider the remarkable implications of this fact. Even in Plaintiffs' fantasy world, this is *still not* a case where management enriched themselves by flouting the expert guidance of an independent compensation consultant (to say nothing of the additional oversight by the advisory board and auditors).

### 3.     <u>Plaintiffs Have No Evidence of Imprudence by GreatBanc.</u>

Even were there a disputed fact suggesting a flaw in McBride's compensation process (and there is not), Plaintiffs still must show that *GreatBanc*, in its role as a shareholder and not company management, somehow violated ERISA by not taking action. Plaintiffs argue that GreatBanc should have "remov[ed] Eilermann and Arri as board members of MS Capital" (a tacit admission of the ESOP's clear governance control), or "fil[ed] a derivative suit" to "protect the Plan" from allegedly excessive cash compensation. (Opp. Br. at 43-44.) But even assuming the compensation was "excessive" (it was not), Plaintiffs do not and cannot identify *any* facts—none—that suggest GreatBanc should have seen any red or even yellow flags indicating something was amiss that required shareholder intervention in a corporate decision.

The undisputed evidence shows the opposite. GreatBanc and its financial advisor, Stern Brothers, independently probed the levels of executive compensation and never had any basis to object. GreatBanc and Stern Brothers not only knew TRS had been retained and was providing independent market compensation analysis each year, but GreatBanc and Stern Brothers had direct discussions with TRS about their work. (DSOF ¶ 109.) In addition, each year McBride provided GreatBanc and Stern Brothers with annual compensation information, including at times the

---

[10] TRS provided no report for 2017 compensation because the 2017 Redemption occurred before year-end.

reports from TRS. (*Id.*) GreatBanc reviewed and evaluated the relevant compensation information. (DSOF ¶¶ 101, 111 (citing **DE 19** at 206:3-207:17).) As Mr. DeCraene testified, GreatBanc monitored compensation decisions to ensure "the board was acting in our interest as shareholder" (*id.*), and what GreatBanc saw was that its shareholder realized annual value growth **exceeding 25%** between 2010 to 2017, compared to **only 6%** for public homebuilders and 11.5% for the market. (DSOF ¶ 64; PRF ¶ 64.) Stern Brothers also independently evaluated the compensation information against not only compensation data from comparable public companies used in its annual valuations of McBride, but also against its internal database of approximately 220 other companies it valued every year—further bringing to bear decades of experience with McBride and its industry. (DSOF ¶ 101, 111 (citing deposition testimony).) Those are the undisputed facts.

The most Plaintiffs offer in opposition are critiques of TRS's work, which are based not on *any* contemporaneous record facts, but instead exclusively on Kirkland's opinion, running a flawed analysis in 2021, about what he believes should have been the right levels of compensation. This opinion is unsupported by record facts and useless for evaluating *GreatBanc's* conduct. In fact, Kirkland testified under oath that he does not offer an opinion about GreatBanc's process for reviewing executive compensation, nor would he be qualified to do so. (DRF ¶ 183.) Plaintiffs are thus left with only attorney say-so; an assertion that had GreatBanc hired a second compensation consultant (in addition to TRS), that consultant would have hypothetically been in agreement with Kirkland (and against TRS, the advisory board, Stern Brothers' independent analysis, and McBride's auditors). (*E.g.*, Opp. Br. at 42; PRF ¶ 97.) This is speculative nonsense—not a material record fact. At best, Kirkland offers unsupported criticism of *TRS*. For a claim against *GreatBanc*, however, Plaintiffs needed to show that TRS fell short, *McBride* was wrong to follow TRS's guidance in setting compensation (and the other elements of its process failed), and

*GreatBanc was careless and imprudent* in relying on both McBride's process and its own review and independent financial advisor. Plaintiffs fail on all of these points.

Recognizing the gaping evidentiary hole in their claims against GreatBanc, Plaintiffs' last ditch argument is to claim there must be a material dispute of fact because GreatBanc cited the opinion and report of its expert, Greg Brown, and "Brown's testimony has been rebutted by Plaintiffs' experts. PAF § 183." (Opp. Br. at 42.) It is true that GreatBanc cited to Brown; he persuasively applies his experience and expertise to the undisputed facts in opining that GreatBanc acted consistent with the usual and customary practices of an independent ESOP Trustee regarding management compensation between 2013 and 2017. (GBT Br. at 13-14.) What is not true is the contention that Plaintiffs rebutted his opinions. Each of the three experts Plaintiffs purport to cite in PAF 183—Kirkland, Goldman, and Van Vleet—all confirmed under oath that they did not offer any opinion regarding GreatBanc's conduct related to executive compensation. (*See* DRF ¶ 183.)[11]

In the end, Plaintiffs simply have no evidence (and no rebuttal expert opinion) that GreatBanc violated any duties. Summary judgment should thus be entered for GreatBanc.

### 4. **Plaintiffs Have No Viable Damages Theory Against GreatBanc.**

Even if Plaintiffs somehow overcome all of the above arguments on liability, GreatBanc should still prevail on Counts VII and IX because Plaintiffs have no cognizable damages theory against GreatBanc. (GBT Br. at 15.) Plaintiffs respond by claiming the Plan is entitled "to disgorgement of the excessive compensation and proportional distributions…[.]" (Opp. Br. at 44.) As for equitable "disgorgement", Plaintiffs make clear that all of the allegedly excessive

---

[11] Plaintiffs call Greg Brown's opinions about usual and customary practices "dubious," but courts have repeatedly credited and relied upon his testimony and 40-plus years of experience and expertise regarding the conduct of trustees and other parties in ESOP matters, including within this District. *See Fish*, 2016 U.S. Dist. LEXIS 137351, at ¶¶ 33-34, 36, 67, 155, 162, 349-50, 364, 366 (summarizing and relying upon testimony and opinions, including "usual and customary practice that he has observed in advising the various constituencies involved in ESOP transactions").

compensation was paid to persons *other than* GreatBanc. (*Id*.) Plaintiffs cite no case law or theory—and there is none—that would allow Plaintiffs to disgorge from *GreatBanc* that which it never received in the first place. *See Great West*, 534 U.S. at 214. Regarding the reference to "proportional distributions", Plaintiffs appear to be arguing for some other alternative form of equitable disgorgement; e.g., that if amounts paid to *others* (including non-parties) that Kirkland declares as "excessive" were not paid as compensation but instead hypothetically as distributions, the ESOP would have a right to some proportion of those imaginary distributions. Whatever this theory is, it is clearly not a viable claim for recoverable damages against GreatBanc.

## III. GreatBanc is also Entitled to Summary Judgment To The Extent Plaintiffs Still Assert a Free-Equity Dilution Theory in Count VII and Count IX

GreatBanc moved for summary judgment to the extent Plaintiffs still attempt to base some aspect of Count VII and Count IX on a theory of free-equity dilution after the 2013 Reorganization. (*See* GBT Br. at 16.) Plaintiffs' cursory response fails to create a genuine dispute of material fact. (Opp. Br. at 45-46.) Any such claim can be resolved based on one undisputed fact: after the 2013 Reorganization, all LLC Units (i.e., equity) were *purchased* at fair market value, never freely given. (DSOF ¶ 89.) Plaintiffs' claim this fact is "disputed" because they do not have documents "showing the Five Executives exchanging cash" for those LLC Units, and because they alternatively allege the executives used excessive cash compensation to make these purchases. (PRF ¶ 89.) As for any challenge about excessive cash compensation, as addressed above, that claim fails. Regarding equity purchases at fair market value, Defendants cite sworn, unrebutted deposition testimony from multiple witnesses, which establishes this undisputed fact on summary judgment. (DSOF ¶ 89.) Plaintiffs' additional attempt to sow confusion regarding what are otherwise straightforward facts about the ESOP's ownership of the equity upside in McBride before and after the 2013 Reorganization does not create a genuine dispute of material fact either.

(PRF ¶¶ 80, 87.) Again, it is undisputed any and all equity was *purchased* at fair-market value—prices that Plaintiffs do not and cannot challenge—making their quibbling about percentage calculations immaterial to their free-equity dilution theory.

### IV. GreatBanc is Entitled to Summary Judgment on the Claims Challenging the 2017 Redemption (Counts XI, XIII, XV), and Plaintiffs' Cross-Motion Should be Denied

Regarding the 2017 Redemption claims, GreatBanc showed that it followed a rigorous process to analyze and approve the transaction; that it negotiated more favorable terms to the ESOP's benefit; that participants voted overwhelmingly in favor of the transaction; and that more than adequate consideration was paid. (GBT Br. at 16-21; DSOF ¶¶ 112-144.)

Plaintiffs respond that GreatBanc is not entitled to summary judgment on their section 406(a) claim (Count XI), and cross-move for summary judgment on that claim. (Opp. Br. at 46-51.) GreatBanc's motion should be granted, and Plaintiffs' cross-motion denied, because the undisputed facts show the section 408(e) exemption has been satisfied. (GBT Br. at 16-21.) Plaintiffs say the facts are disputed or in their favor, citing almost exclusively PRF 142. (Opp. Br. at 48-51.) But there, rather than address Defendants' simple statement that GreatBanc's fiduciary committee met and discussed the transaction with its advisors (or the other undisputed facts), Plaintiffs respond by pasting *some 13 pages and 46 paragraphs* of regurgitated content from the expert reports of Van Vleet and Goldman. Plaintiffs never address Defendants' simple statement of fact. This violates the letter and spirit of LR 56.1. But that impropriety aside, Van Vleet's cited opinions do not address GreatBanc's process and conduct and do not create a genuine dispute of material fact for summary judgment purposes. And the only substantive portion of Goldman's report that addresses the 2017 Redemption raises a single procedural point—nothing about GreatBanc's due diligence or the price the ESOP received or could have received—just that GreatBanc should have solicited third-party bids for McBride. (*See* DRF ¶ 183 citing **DE 165**,

Goldman Dep., 246:2-21, 3/19 Report at ¶¶ 8(3), 93.) The undisputed *evidence*, however, shows GreatBanc and management both considered the possibility of third-party bidders, drawing from decades of experience about the St. Louis homebuilding market and the failure of every larger public homebuilder there, before rejecting a third-party sale as unrealistic and unlikely to produce a value anywhere close to what McBride was offering, particularly given the time and expense of any such process. (DSOF ¶¶ 127-129.) Goldman's unsupported statement to the contrary does not create a genuine dispute of material fact.

As with the section 406(a) claim, GreatBanc is also entitled to summary judgment on Plaintiffs' other 2017 Redemption claims. There is no evidence to support a violation of section 406(b) (the second part of Count XI), and even if there were, the section 408(e) exemption applies (Section I.D.4., *supra*), and has been satisfied as discussed above and in GreatBanc's opening brief. Plaintiffs' opposition to summary judgment on Count XIII (section 404) and Count XV (section 405) likewise fail. The undisputed material facts demonstrate that GreatBanc fulfilled its fiduciary duties related to the 2017 Redemption by voting all allocated ESOP shares in favor of the redemption consistent with the informed direction from the participants. (GBT Br. at 16-20.)[12]

## CONCLUSION

The Court should grant GreatBanc summary judgment on all of Plaintiffs' claims and deny the motion of Plaintiffs to the extent it seeks relief against GreatBanc.[13]

---

[12] The participant vote was preceded by distribution of written information about the transaction to all participants, and a company meeting, which GreatBanc attended, to discuss the proposed redemption and respond to participant questions, plus follow-up meetings and a chance for participants to review further financial information. Plaintiffs did not develop any evidence that the written informational materials or the presentations made to participants at the meetings were substantively deficient, that the overwhelming favorable vote was uninformed, or that GreatBanc's decision to vote the allocated ESOP shares consistent with participant direction was imprudent. (DSOF ¶¶ 135-140.)

[13] Plaintiffs' request for summary judgment on three affirmative defenses (Opp. Br. at 59-61) is moot because GreatBanc is entitled to summary judgment on all claims. Regardless, it would be premature and inefficient to rule on the applicability of those three defenses now, before the parties know what claims may or may not proceed to trial.

Dated: March 14, 2022

Respectfully submitted,

*/s/ Michael L. Scheier*
Michael L. Scheier (Ohio 0055512)
Brian P. Muething (Ohio 0076315)
Jacob D. Rhode (Ohio 0089636)
Keating Muething & Klekamp PLL
One E. 4th Street, Suite 1400
Cincinnati, OH 45202
Tel:(513) 579-6400
Fax: (513) 579-6457
mscheier@kmklaw.com
bmuething@kmklaw.com
jrhode@kmklaw.com

Ross D. Taylor (6198181)
Keating Muething & Klekamp PLL
125 S. Clark St., 17th Floor
Chicago, IL 60603

*Counsel for Defendant GreatBanc Trust Company*

## CERTIFICATE OF SERVICE

I certify that on March 14, 2022, I caused true and correct copies of the foregoing to be filed electronically using the Court's CM/ECF system and to thereby be served upon all registered participants identified in the Notice of Electronic Filing in this matter on this date. This document is available for viewing and downloading on the CM/ECF system.

*/s/ Michael L. Scheier*