**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **GREGORY GODFREY, et al.,** | Case Number 1:18-cv-07918 |
| **Plaintiffs,** | Judge Matthew F. Kennelly |
| **v.** | Magistrate Judge Michael T. Mason |
| **GREATBANC TRUST COMPANY, et al.,** | **Oral Argument Requested** |
| **Defendants.** | |

<u>**McBRIDE DEFENDANTS' COMBINED REPLY IN SUPPORT**</u>
<u>**OF MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO**</u>
<u>**PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT**</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.    The Court Should Enter Summary Judgment in Favor of the McBride
Defendants on Plaintiffs' 2013 Reorganization Claims and Deny Plaintiffs'
Cross-Motion ..................................................................................................................... 1

        A.    The McBride Defendants were not fiduciaries for the 2013
Reorganization. .................................................................................................. 1

        B.    The 2013 Reorganization was prudent and loyal. ................................................4

II.    The McBride Defendants are Entitled to Summary Judgment on Plaintiffs'
Compensation Claims, and Plaintiffs' Cross-Motion Should be Denied ........................ 8

        A.    *Johnson* does not excuse application of the Plan Assets Regulation. ................... 8

        B.    Plaintiffs have failed to prove "obvious self-dealing." ......................................10

        C.    The undisputed material facts show that McBride is an operating
company. ............................................................................................................12

        D.    Even if ERISA applied to compensation decisions, the McBride
Defendants did not breach any fiduciary duties. ................................................14

III.    The McBride Defendants are Entitled to Summary Judgment on the 2017
Redemption Claims, and Plaintiffs' Cross Motion Should be Denied. ..........................15

        A.    MS Capital was not a fiduciary in connection with the 2017
Redemption. ......................................................................................................15

        B.    MS Capital, Eilermann, and Arri did not knowingly participate in
ERISA violations with respect to the 2017 Redemption. ..................................17

IV.    The McBride Defendants Satisfied Any Limited Duty to Monitor. ..............................19

V.    Plaintiffs' Citation to Experts Does Not Create a Dispute of Material Fact..................20

CONCLUSION............................................................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Bafford v. Northrop Grumman Corp.*,
   994 F.3d 1020 (9th Cir. 2021) ................................................................... 4

*Blankenship v. Chamberlain*,
   695 F. Supp. 2d 966 (E.D. Mo. 2010) ....................................................... 11

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ..................................................................... 13

*Brands v. Cty. of Cook*,
   No. 98 C 1288, 2000 WL 135840 (N.D. Ill. Jan. 28, 2000) ....................... 5

*Brundle v. Wilmington Trust, NA*,
   No. 1:15–cv–1494, 2016 WL 6542718 (E.D. Va. Nov. 3, 2016) ............... 21

*Chamberlain Grp., Inc. v. Lear Corp.*,
   756 F. Supp. 2d 938 (N.D. Ill. 2010) ........................................................ 21

*Delta Star, Inc. v. Patton*,
   76 F. Supp. 2d 617 (W.D. Pa. 1999) ......................................................... 11

*Fish v. Greatbanc Tr. Co.*,
   No. 09 C 1668, 2016 WL 5923448 (N.D. Ill. Sept. 1, 2016) ..................... 20

*Giles v. Ludwig*,
   No. 12-cv-6746, 2014 WL 4358475 (N.D. Ill. Sept. 3, 2014) ................ 5, 14

*Godinez v. City of Chicago*,
   No. 16-CV-07344, 2019 WL 5597190 (N.D. Ill. Oct. 30, 2019) ............... 21

*Hans v. Tharaldson*,
   No. 3:05-cv-115, 2011 WL 7179644 (D.N.D. Oct. 31, 2011) ................... 18

*Harris v. GreatBanc*,
   No. EDCV12–1648–R (DTBx), 2013 WL 1136558 (C.D. Cal. March 15, 2013) .................. 10

*Harris Trust & Savings Bank v. Salomon Smith Barney*,
   530 U.S. 238 (2000) ................................................................................. 17

*Howell v. Motorola, Inc.*,
   633 F.3d 552 (7th Cir. 2011) ..................................................................... 4

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) .................................................................. 8, 9, 11

*Keach v. U.S. Tr. Co.*,
    244 F. Supp. 2d 968 (C.D. Ill. 2003) ............................................................. 17

*Kenseth v. Dean Health Plan, Inc.*,
    610 F.3d 452 (7th Cir. 2010) ....................................................................... 13

*Lingis v. Motorola, Inc.*,
    649 F. Supp. 2d 861 (N.D. Ill. 2009), *aff'd sub nom. Howell v. Motorola, Inc.*,
    633 F.3d 552 (7th Cir. 2011) ....................................................................... 20

*Neil v. Zell*,
    677 F. Supp. 2d 1010 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010) ....................... 16

*Neil v. Zell*,
    753 F. Supp. 2d 724 (N.D. Ill. 2010) ............................................................. 17

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) .................................................................................... 8

*Perez v. Bruister*,
    823 F.3d 250 (5th Cir. 2016) ......................................................................... 3

*Spear v. Fenkell*,
    No. CV 13-2391, 2016 WL 5661720 (E.D. Pa. Sept. 30, 2016),
    *clarified on denial of reconsideration*,
    No. CV 13-2391, 2016 WL 7475814 (E.D. Pa. Dec. 29, 2016) ............................... 18

*Spires v. Schools*,
    271 F. Supp. 3d 795 (D.S.C. 2017) ............................................................. 9, 11

*Svigos v. Wheaton Securities, Inc.*,
    No. 17-cv-04777, 2018 WL 587190 (N.D. Ill. Jan. 29, 2018) ................................. 11

*United States v. N. States Invs., Inc.*,
    670 F. Supp. 2d 778 (N.D. Ill. 2009) .............................................................. 3

*Wool v. Sitrick*,
    No. 210CV02741, 2010 WL 11448099 (C.D. Cal. Aug. 10, 2010) ........................... 10

**Statutes**

26 U.S.C. § 409(l) .......................................................................................... 6, 7

29 U.S.C. § 1102 .................................................................................................... 3, 13

29 U.S.C. § 1104 ........................................................................................................ 15

29 U.S.C. § 1110 .......................................................................................................... 8

29 U.S.C. § 1113 .......................................................................................................... 5

**Rules**

L.R. 56.1 ........................................................................................................................ 1

**Regulations**

29 C.F.R. Section 2510.3-101 ............................................................................ 10, 12, 13

Prohibited Allocations of Securities in an S Corporation,
   68 Fed. Reg. 42,970 (July 21, 2003) ........................................................................ 6

## INTRODUCTION

In their opening brief, the McBride Defendants proved, element by element, why they are entitled to summary judgment on each of Plaintiffs' claims. Plaintiffs have now disputed just about all of that proof—right down to the (one would have thought) indisputable fact that McBride is a homebuilding company, not an investment vehicle. Plaintiffs may hope the Court will simply throw up its hands at the sheer volume of purported "disputes" and proceed to trial, but, when the wheat is separated from the chaff, it becomes clear that all Plaintiffs offer are legal conclusions, opinions, and characterizations, along with irrelevant, non-responsive, or immaterial facts.[1] For the reasons explained below, the Court should grant the McBride Defendants' Motion for Summary Judgment and deny Plaintiffs' Partial Motion for Summary Judgment.

## ARGUMENT

I. **The Court Should Enter Summary Judgment in Favor of the McBride Defendants on Plaintiffs' 2013 Reorganization Claims and Deny Plaintiffs' Cross-Motion**

A. **The McBride Defendants were not fiduciaries for the 2013 Reorganization.**

As their opening brief explained, the McBride Defendants[2] are entitled to summary judgment on Counts II, IV, and V because the undisputed facts show they were not fiduciaries

---

[1] Plaintiffs' Combined Statement of Additional Material Facts ("PAF," Dkt. 267-2) is riddled with unsupported opinions, characterizations, and legal arguments. *See, e.g.*, PAF ¶¶ 15-16 (alleging Eilermann and Arri were "[f]iduciar[ies] to the ESOP" and "Plan Administrator[s]"); *id.* ¶¶ 38, 98, 103, 123, 124, 131, 132, 139, 144 (alleging "excessive" compensation). Such arguments do not comply with Local Rule 56.1. L.R. 56.1(d)(4) ("[S]tatements of additional facts **should not contain legal argument**.") (emphasis added). Nor is Plaintiffs' fact statement "concise." *See, e.g.*, PAF ¶¶ 18, 19, 28, 54, 79, 90, 144, 163 (containing multiple subparagraphs). Plaintiffs' Response to Defendants' Joint Statement of Material Facts ("PRF," Dkt. 267-1) likewise violates this Court's rules by responding to numerous allegations with dozens of new "facts" that do not fairly respond to any fact asserted by Defendants. L.R. 56.1(e)(2). *See, e.g.*, PRF ¶ 142 (**containing more than 46 subparagraphs**).

[2] MS Management, Mr. Eilermann, and Mr. Arri are the only remaining McBride Defendants named in Plaintiffs' 2013 Reorganization claims. Mem. Opinion & Order (Dkt. No. 154) ("Mem. Op.") at 13 (dismissing MS Capital from 2013 Reorganization claims).

for the 2013 Reorganization.  McBride Defs' Mem. in Support of Mot. for Summ. J., Dkt. No.

261 ("MSJ").  Rather, it was GreatBanc who served as the sole fiduciary to the ESOP for that

transaction—the McBride Defendants were on the *opposite* side of the transaction.  MSJ at 2.

Plaintiffs do not dispute the material facts on this issue.  Those facts show:

**(1)** GreatBanc was appointed as independent trustee to represent the ESOP for the 2013 Reorganization;

**(2)** GreatBanc had discretionary authority to approve the 2013 Reorganization on behalf of the ESOP; and

**(3)** GreatBanc exercised that discretionary authority and solely caused the ESOP to enter into the 2013 Reorganization.

*See* PRF ¶ 44 (admitting GreatBanc was engaged to serve as independent trustee to the ESOP for

the purpose of the 2013 Reorganization); DSOF[3] ¶ 44 (citing DE 38 at GBT_0024942) ("The

Company hereby appoints Trustee to perform additional services relating to the evaluation of the

[2013 Reorganization] and a determination as to whether to consent to the Transaction on behalf

of the Plan and Trust."); PRF ¶ 70 (admitting GreatBanc was a signatory to the Contribution

Agreement exchanging the ESOP's shares); DSOF ¶ 70 (citing DE 72 at MS_0013366) ("In

exchange for [MS Capital's] issuance [of MS Capital stock], the Trustee on behalf of the Trust

shall contribute ██████████ shares of common stock [held by the ESOP]."); *id.* at MS_0013373

(GreatBanc signing Contribution Agreement on behalf of "McBride & Son Employee Stock

Ownership Trust" in its capacity as Trustee).

Instead, Plaintiffs argue that the McBride Defendants had "some discretion" because they

could "stop" the 2013 Reorganization and because they signed transaction documents.  Opp. at

31.  Those facts prove nothing—they are obviously as true of *counterparties* to a transaction as

they are of fiduciaries.  What matters is whether the McBride Defendants were acting solely *on*

---

[3] Naming conventions have the same meanings as those in the McBride Defendants' opening brief.

*behalf of the Plan*, as this Court recognized in dismissing Eilermann and Arri from Plaintiffs' 2017 Redemption claims. *See* Mem. Op. at 25-26 (holding Plaintiffs failed to allege fiduciary status of Eilermann and Arri in connection with the 2017 Redemption because "plaintiffs have not alleged that Eilermann and Arri exercised any authority to approve the sale on behalf of the Plan"). The undisputed material facts provide a resounding "no": the McBride Defendants did not "exercise[] any authority to approve the [2013 Reorganization] on behalf of the Plan." *Id.*

Plaintiffs also argue that "MS Management, Eilermann, and Arri, act[ed] as the named fiduciar[ies] and [the] plan administrator." Opp. at 30. Their argument fails on multiple levels.

*First*, Eilermann and Arri are not named fiduciaries or plan administrators. No plan document identifies them as such. *See* 29 U.S.C. § 1102(a)(2) ("[T]he term 'named fiduciary' means a fiduciary who is *named in the plan*[.]") (emphasis added). Plaintiffs do not argue this Court should disregard McBride's corporate form, nor do they identify a single fact that would support abandoning the longstanding principle that a corporation's existence is separate from that of its officers and directors and may be disregarded only under narrow circumstances. *See, e.g.*, *United States v. N. States Invs., Inc.*, 670 F. Supp. 2d 778, 786 (N.D. Ill. 2009) ("[A] corporation is presumed to be separate and distinct from its officers, shareholders, and directors[.]").

*Second*, MS Management's role as "named fiduciary" does not automatically make it a fiduciary for any and all purposes.[4] Plaintiffs' view contradicts the fundamental ERISA precept that fiduciary status must focus on function rather than on title, and Plaintiffs' view would hold

---

[4] Plaintiffs' own cited case law recognizes that a named fiduciary is not a fiduciary for all acts. In *Perez v. Bruister*, 823 F.3d 250 (5th Cir. 2016), for instance, the court reasoned that the named fiduciary acted as a fiduciary with respect to a transaction *because it "served as a functional fiduciary"* not because it was a "named fiduciary." *Id.* at 259 (emphasis added). There the individual "exercised fiduciary authority" by improperly influencing the ESOP's decision-making. *Id.* Plaintiffs here have presented no facts even suggesting such a thing—nor that MS Management functioned as a fiduciary in any other way.

individuals liable as fiduciaries for acts over which they have no discretionary control. *See Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1028 (9th Cir. 2021) ("*Discretion* is one of the central touchstones for a fiduciary role.") (cleaned up).

Here, it was GreatBanc who was retained to act on behalf of the ESOP in deciding whether to engage in the 2013 Reorganization. That transfer of fiduciary authority to an independent entity should be encouraged, not stymied. Preventing the meaningful transfer of fiduciary duties to an independent fiduciary would extinguish any incentive to engage an independent fiduciary—certainly not the approach Congress would want courts to encourage. It would also effectively act as an end-run around the clear limitations on an appointing fiduciary's duty to monitor. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011) (reasoning that a standard requiring appointing fiduciaries to "continually monitor" appointees "would defeat the purpose of having trustees appointed to run a benefits plan in the first place").

### B. The 2013 Reorganization was prudent and loyal.

Plaintiffs argue there is a genuine dispute regarding the McBride Defendants' process for the 2013 Reorganization, but they fail to offer evidence (as opposed to opinion) to substantiate their argument. Opp. at 32. The McBride Defendants showed, MSJ at 4-6, that their prudent process included recognizing a potential threat to the Company, seeking expert legal and financial advice to address it, engaging an independent trustee to represent the ESOP's interests and determine whether to consent to the transaction, and providing information to the trustee.[5] Plaintiffs disagree those steps constitute a prudent process, but the material facts are undisputed.

---

[5] As previously proven, the 2013 Reorganization was also a substantively prudent and loyal decision. MSJ at 6-8. Plaintiffs fail to muster any contrary evidence. Nor can they. It is a fact that Eilermann and Arri surrendered ███████████████████████████ in connection with the 2013 Reorganization. DSOF ¶ 83. It is not a fact to argue, as Plaintiffs do, that "Eilermann and Arri never should have been entitled to the clearly excessive grant of phantom stock." PRF ¶ 83.

Instead, Plaintiffs raise a series of opinion-based arguments that do not overcome the facts the McBride Defendants have presented showing the 2013 Reorganization was prudent and loyal.[6] *See Giles v. Ludwig*, No. 12-cv-6746, 2014 WL 4358475, at *2 (N.D. Ill. Sept. 3, 2014) ("[O]pinions are just that[—]opinions[—]and are not proper statements of material fact.").

***First***, Plaintiffs' opinion that key managers "were well-incentivized" to remain with McBride, Opp. at 32, is not a fact and, in any event, is contradicted by the record.[7] *See, e.g.*, DSOF ¶ 15 (three of five directors left the Company); *id.* (citing DE 8 at 114:8-10 ("[W]hat [Eilermann and Arri] saw was there were structural problems that incentivized people to leave the company.")); *id.* ¶ 34 (citing DE 8 at 111:16:22 (acknowledging need to "eliminate any structural obstacles . . . that would incentivize a key manager to leave the company")); *id.* ¶ 15 (citing DE 8 at 52:6-11 ("[A] long list of key executives [] had left McBride between 2006 and 2013 . . . and that played into the board's decision.")); DSOF ¶ 30 ("[T]he current ownership structure [was] not optimized to provide the mechanisms and incentives necessary to see the Company and its ESOP ownership structure through another downturn."). *See Brands v. Cty. of Cook*, No. 98 C 1288, 2000 WL 135840, at *1 (N.D. Ill. Jan. 28, 2000) ("[A]ny opinion based on the unsupported factual assumptions have not been given any credence in ruling on the summary judgment motion."). Of course, as Plaintiffs point out, the leadership surely had *some* incentives

---

[6] As GreatBanc explained, the undisputed material facts show that the ESOP did *not* lose control as a result of the 2013 Reorganization. *See* GreatBanc Mot. for Summ. J at 7; GreatBanc Reply Br. at 1-6.

[7] Plaintiffs criticize McBride's synthetic equity awards from 2006 through 2012 as "excessive." Opp. at 33. That period is not part of this case. Even if it were, Plaintiffs can offer no factual support because discovery was limited to the period encompassed by Plaintiffs' claims (2013 through 2017). Although Plaintiffs have obtained some documents reflecting what those earlier synthetic equity awards were, no party has developed a full evidentiary record with respect to this period. Plaintiffs have not proven those awards were excessive, nor have Defendants gathered the evidence to refute such an argument. Plaintiffs' claims, if they intend to encompass compensation decisions from 2012 or earlier, would be time barred in any event. *See* 29 U.S.C. § 1113 (barring claims brought more than 6 years after the alleged breach).

to stay at McBride. But Plaintiffs ignore *every* incentive for McBride's leaders to leave (*e.g.*, timing departure to preserve ESOP value, insufficient ownership stake, equity accessible only through termination or sale of company, limitations on future incentive awards).[8] The uncontroverted evidence is that McBride had a good faith concern about the adequacy of its incentive programs.

**Second**, Plaintiffs misconstrue the purpose of Code section 409(p), 26 U.S.C. § 409(p). It does not set limits on *individuals holding equity* in an ESOP-owned company; rather, it limits how much *tax benefit an S corporation* can derive from being ESOP-owned. Prohibited Allocations of Securities in an S Corporation, 68 Fed. Reg. 42,970, 42,971 (July 21, 2003) ("As indicated by the legislative history above, section 409(p) is intended to limit the tax benefits of ESOPs maintained by S corporations unless the ESOP provides meaningful benefits to rank-and-file employees."). That is, Congress does not care who owns how much of the company; it only cares how much tax advantage the company enjoys. The suggestion that McBride was attempting to "evade" tax law by complying with tax law is thus nonsensical—and even more so because McBride terminated its *synthetic* equity plans (which benefitted from the ESOP's tax-favored status) in favor of *actual* ownership in an LLC (which did *not* benefit from the ESOP's tax-favored status) for those former synthetic equity holders. The 2013 Reorganization—structured on the advice of highly qualified law firms and financial advisors, with input from the independent trustee—was designed to and did comply with, rather than avoid, the tax laws.[9]

---

[8] Plaintiffs' refusal to acknowledge structural disincentives is odd not just because the factual record repeatedly references them, but because ████████████████████████████████████

[9] Plaintiffs' reference to Code section 409(l) makes no sense. Opp. at 8-9. Section 409(l) provides that, to qualify as "employer securities" (the common stock issued by the employer), the stock must have "voting power and dividend rights equal to or in excess of—that class of common stock of the

***Third***, Plaintiffs' suggestion that the section 409(p) threat facing McBride would have simply gone away is a fantasy untethered from the factual record. As the McBride Defendants have established, Eilermann and Arri were concerned that a decrease in stock price alone could trigger a 409(p) violation. MSJ at 5; DSOF ¶ 31 (citing DE 8 at 117:19 -25 ("[S]omething like stock appreciation rights and our life insurance plan . . . if the stock price dips, . . . it can cause an increase in their percentage interest. And you might trip 409(p) just because your stock price declined.")). McBride could not predict with certainty a decrease one, two, or three years into the future. Because valuations are determined on a backward-looking basis, by the time McBride would have received a valuation as of an effective date in the past, the decrease (and potential violation) would already have occurred. There is no grace period or "do-over" under the tax code. Plaintiffs' suggestions—waiting for the synthetic equity to be paid out under the agreements (which would take years) or accelerating payments due under them (which was not possible for all synthetic equity agreements[10])—would require the McBride Defendants to predict the future and thus were not viable solutions.

***Fourth***, Plaintiffs view 409(p) in a vacuum. Eliminating the 409(p) threat was important but McBride's "primary consideration" was the need "to incentivize key managers to stay with the company." DSOF ¶ 34. Even if McBride possessed a crystal ball to predict future stock price fluctuations, that ability would not have allowed McBride to provide its key managers the

---

employer…having the greatest voting power, and… dividend rights." 26 U.S.C. § 409(l)(2). The ESOP holds only one type of employer securities: MS Capital shares, which has only one class of common stock, all of which the ESOP owned. PRF ¶ 86 (admitting ESOP held 100% of the shares of MS Capital at all times between 2013 Reorganization and 2017 Redemption). The LLC units of MS Companies were an asset of *MS Capital*, not of the ESOP, so they did not need to qualify as "employer securities." Section 409(l)(2) simply does not apply to the LLC units.

[10] Phantom units awarded to Mr. Eilermann in 2006 and 2007 ████████████████████████████ ███████████████████ contained no such provision. Instead, they were available ████████████ ███████████" of the Company. *See* DSOF ¶ 36.

level of incentives the board believed was necessary.

For the foregoing reasons,[11] Plaintiffs have failed to overcome the McBride Defendants' proof that the 2013 Reorganization was prudent and loyal.[12]

## II.     The McBride Defendants are Entitled to Summary Judgment on Plaintiffs' Compensation Claims, and Plaintiffs' Cross-Motion Should be Denied

### A.     *Johnson* does not excuse application of the Plan Assets Regulation.

Plaintiffs, relying on *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009), urge the Court to commit legal error by maintaining that the Plan Assets Regulation may be disregarded when determining the "threshold question" of whether a person was acting as a fiduciary when taking the actions that allegedly constituted a breach. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). *Johnson* did *not* make a finding of fiduciary status based on alleged self-interest, as Plaintiffs ask the Court to do here. First, *Johnson* was not about fiduciary status at all but about the enforceability of an indemnification provision under ERISA § 410. *See generally Johnson*, 572 F.3d 1067; 29 U.S.C. § 1110 (prohibiting indemnification provisions that purport to relieve a fiduciary of responsibility). Far from disregarding ERISA's central question about whether the assets at issue are plan assets or corporate assets, as Plaintiffs urge here, *Johnson* in fact turned on the plan assets question. There the court rejected the defendants' argument that "section 410(a) [did] not apply because advancement would be made from corporate, not plan, assets."

---

[11] In addition, the McBride Defendants are entitled to summary judgment on the 2013 Reorganization claims because Plaintiffs have failed to prove any damages. *See* GreatBanc Reply at 7.

[12] Plaintiffs' prohibited transaction claims against the McBride Defendants also fail for the reasons identified in the McBride Defendants' opening brief. MSJ at 8-10. Plaintiffs' contention that the McBride Defendants cannot rely on GreatBanc's ERISA section 408(e) "adequate consideration" affirmative defense to defeat certain of Plaintiffs' claims, Opp. at 35, is nonsensical. If GreatBanc proves that the adequate consideration provision is satisfied, then the prohibited transaction is exempt. One transaction cannot be both exempt and non-exempt depending on who the defendant is. The McBride Defendants cannot be held liable for an ERISA violation that did not occur.

572 F.3d at 1080.  Crucially, it did so because the corporation was no longer an operating

concern, but instead was in the process of liquidating and paying out all remaining assets to the

ESOP plan participants, such that any payment of corporate assets toward defense costs would,

"dollar for dollar, reduce the funds available for distribution to ESOP participants."  *Id.*[13]

    *Spires v. Schools*, 271 F. Supp. 3d 795 (D.S.C. 2017), on which Plaintiffs rely,

highlighted the importance of this pivotal fact of dissolution—a fact not present here.  In *Spires*,

the court cited *Johnson*, explaining that, "[w]ithout the operating company exception, ERISA

fiduciary standards would attach to the management of company assets like inventory or office

supplies—'clearly an absurd result.'  *Id*. at 1077.  But when a company is being liquidated, it is

reasonable to view company assets as assets of the ESOP owning the company."  *Id*. at 808

(quoting *Johnson*).  Because *Spires* similarly involved the sale of all the company's assets, the

court concluded that the reasoning of *Johnson* applied.  In doing so, however, the court made

clear that "[t]his Court does not read *Johnson* as an abrogation of the Plan Assets Regulation.

---

[13] Plaintiffs misconstrue what the Department of Labor ("DOL") said in its *amicus* brief in *Johnson*.  Opp. at 37 n.26 (quoting Br. for the Sec. of Labor as Amicus Curiae Supporting Appellees and Requesting Affirmance at 22, *Johnson v. Couturier*, No. 08-17631, 2009 WL 2444302 (9th Cir. January 30, 2009) ("DOL Amicus Br.") ("The DOL noted, 'it makes no difference to the analysis that an ESOP's assets generally consist of its stock, and not the underlying assets of the company.'")).  The "analysis" to which DOL thought the distinction between plan assets versus corporate assets made "no difference" was *not* the determination of fiduciary status, as Plaintiffs suggest.  Rather, the "analysis" was the applicability of ERISA § 410:  "Section 410 makes no mention of plan assets whatsoever, but instead broadly 'void[s] as against public policy' any agreement that purports 'to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under' ERISA."  DOL Amicus Br. at 22.

Plaintiffs' reference to DOL's statement that "ERISA fiduciaries have an obligation to affirmatively act to protect plan assets from dissipation," Opp. at 37, n.26 (quoting DOL Amicus Br. at 11), similarly misses the point by again omitting the context.  The quotation goes on to read "which, in the context of an ESOP that is the company's sole shareholder, may include a fiduciary obligation to bring a shareholder derivative action[.]"  DOL Amicus Br. at 11.  DOL reiterates later in its brief that the manner by which claims regarding excessive compensation can be vindicated in the ERISA context is through a claim alleging that the fiduciaries failed to bring a derivative action on behalf of the plan as shareholder.  *Id*. at 27-28.  Plaintiffs did not bring such a claim, and they cannot now evade the requirements of the claims they did plead.

Courts in the Ninth Circuit likewise have declined to read *Johnson* as abrogating the Plan Assets Regulation. *See, e.g.*, *Wool v. Sitrick*, No. 210CV02741JHNPJWX, 2010 WL 11448099, at *7–8 (C.D. Cal. Aug. 10, 2010)." That was correct—as the Central District of California further explained in *Harris v. GreatBanc*, *Johnson* turned on the fact the company was being liquidated:

> Were it not for the rather unique circumstances present in the *Couturier* case, under which payments to indemnitees would reduce dollar-for-dollar the funds to be distributed to the ESOP participants pursuant to the plan of liquidation, the plan asset regulations, 29 C.F.R. Section 2510.3-101(a)(2) and 3.101(h)(3), would have applied and the assets of the plan sponsor company would not have been treated as assets of the ESOP . . . .

No. EDCV12–1648–R (DTBx), 2013 WL 1136558, at *3 (C.D. Cal. March 15, 2013). Here, McBride was and is a going concern, and disregard of the Plan Assets Regulation, even under *Johnson*, is not justified. In any event, the Seventh Circuit has never considered whether it would follow *Johnson*'s disregard of the Plan Assets Regulation, and there is no reason to assume it would expand *Johnson*'s holding to circumstances well outside those presented there.

### B. Plaintiffs have failed to prove "obvious self-dealing."

Even if self-interest could create fiduciary status where it did not otherwise exist under the statute and regulations, Plaintiffs have failed to prove the necessary "obvious self-dealing" here.[14] They assume that, because the court held they had cleared the bar for pleading fiduciary status, they are automatically entitled to summary judgment on fiduciary status. Opp. at 37. Now it is time for facts, though, and Plaintiffs have failed to prove any self-dealing, let alone the "obvious self-dealing" that even courts that disregard the Plan Assets Regulation have required.

This Court allowed the Compensation Claims to go forward based on the allegations that, "[a]cting on behalf of MS Capital, Eilermann and Arri made stock distributions to themselves

---

[14] Plaintiffs never explain how Eilermann and Arri have any self-interest in compensation paid to Schindler, Berger, or Todt.

and other high-ranking members of management between 2013 and 2017 such that the Plan's ownership interest in MS Capital dropped from well over ninety-five percent in 2013 to around sixty percent by the end of 2017." Mem. Op. at 19.[15] Although the Court was required to accept them as true at the motion to dismiss stage, it turns out they are not. The uncontroverted material facts show that (1) there were no "stock distributions" of MS Capital at all between 2013 and 2017—only purchases of LLC units of MS Companies (and the conversion of existing synthetic equity to LLC units); and (2) the Plan's ownership interest in MS Capital was at all times 100 percent in the period between 2013 Reorganization and the 2017 Redemption. *See* PRF ¶ 86 (admitting no shares of MS Capital were ever held by management, and the ESOP was 100% owner of MS Capital between 2013 Reorganization and 2017 Redemption); MSJ at 13.[16]

Thus, Plaintiffs have not proven self-dealing, let alone "obvious self-dealing" of the type that drove the *Johnson* decision. 572 F.3d at 1074 (involving allegations that the company bought defendant a $5.5 million Palm Desert home and a $325,000 golf club membership, and that the transaction at issue resulted in the defendant receiving "over $26 million in cash, title to

---

[15] The Court did not suggest that paying ordinary cash compensation could form the basis for an ERISA fiduciary breach claim. If it could, it would be impossible to determine whether a breach occurred when there is no distinction between plan and corporate assets. *See Spires*, 271 F. Supp. 3d at 808. In their argument against GreatBanc, Plaintiffs implicitly concede the only way to encompass excessive cash compensation claims into an ERISA action would be to sue a fiduciary for failure to bring a derivative action, Opp. at 40—just as DOL explained in its *Johnson* amicus brief. *See supra* n.13. This includes a fiduciary suing himself, as Plaintiffs' cases make clear. *See* Op. at 40 (citing *Blankenship v. Chamberlain*, 695 F. Supp. 2d 966, 969 (E.D. Mo. 2010); *Delta Star, Inc. v. Patton*, 76 F. Supp. 2d 617, 637 (W.D. Pa. 1999)). Plaintiffs chose not to sue the McBride Defendants for failure to bring a derivative suit, and they have identified no other path for pursuing excessive compensation claims under ERISA.

[16] Plaintiffs attempt to create factual disputes, but their disputes amount to non-responses. For instance, they dispute that LLC units were purchased using the fair market value of MS Capital stock as determined by GreatBanc and its advisors. PRF ¶ 89 (arguing "Defendants cite no evidence, nor was none [sic] produced" showing LLC units were purchased). Plaintiffs ignore Defendants' citations to deposition testimony. *See, e.g.*, DSOF ¶ 76 (citing DE 10 at 195:18-196:6 ("We purchased those units… The price was equal to the most recent ESOP value per share.")). This evidence is uncontroverted.

the Palm Desert home, [and] a Bentley automobile valued at $200,000," among other things).[17]

### C. The undisputed material facts show that McBride is an operating company.

Plaintiffs maintain that Defendants have failed to prove that McBride is an operating

company because they did not:

> demonstrate (1) which corporate entity or entities meet the definition, (2) any list
> of that entity's activities so that the Court could determine which activity or
> activities the entity 'primarily' engages in, and (3) that the McBride entity doesn't
> primarily invest in capital, given that McBride owns tens of millions of dollars in
> real estate at any given time.

Opp. at 38-39. Each argument fails.

Most obviously, Plaintiffs' suggestion that there is any doubt about the activity in which

McBride primarily engages is spurious. *See* PRF ¶ 1 (admitting McBride "is a residential

homebuilder that operates principally in the St. Louis metropolitan area"). The undisputed facts

show that "McBride is primarily engaged in the construction of residential housing and

contracting services." *See* DAF ¶ 2 (citing DE 13 at MS_0003786 (defining "McBride" to mean

McBride & Son Companies, LLC); *id.* (citing DE 12 at MS_0003213 (defining "McBride" to

mean McBride & Son Companies, Inc.)); DSOF ¶ 1.[18] Plaintiffs' concern about which specific

entity qualifies as an operating company is unfounded: the Plan Assets Regulation defines an

"operating company" as "an entity that is primarily engaged, *directly or through a majority*

---

[17] *Svigos v. Wheaton Securities, Inc.*, No. 17-cv-04777, 2018 WL 587190 (N.D. Ill. Jan. 29, 2018), was an unpublished decision on a motion to dismiss—not a case where liability was found through disregard of the Plan Assets Regulation. Moreover, the court should have applied the Plan Assets Regulation because the company was not being liquidated. Either way, the facts alleged there were much more akin to the "obvious self-dealing" in *Johnson* than even the *alleged* (and now disproven) facts here are. *Id.* at *1-2 (in which plaintiff alleged that, following her divorce from the brother of the owners of a family business, the owners engaged in a series of transactions that stripped her account of value, including booking as a corporate liability one owner's personal liability in a suit alleging he was involved in a Ponzi scheme).

[18] The statement that McBride is "primarily engaged" in homebuilding is repeated in every single annual valuation between 2012 and 2017. *See* DAF ¶ 2.

*owned subsidiary or subsidiaries*, in the production or sale of a product or service other than the investment of capital." 29 C.F.R. § 2510.3-101(c)(1) (emphasis added). MS Capital and MS Companies, which are "primarily engaged in the development and construction of residential housing," through their various subsidiaries,[19] clearly meet this definition. *See* DAF ¶¶ 2-3 (citing DE 36 at GBT_001890 ("The Company [defined as MS Capital and MS Companies and its subsidiaries] is engaged primarily in the development and construction of residential housing.")).

Finally, even if McBride has at times held millions of dollars' worth of real estate for development, under the Plan Assets Regulation, "[t]he term 'operating company' includes . . . a 'real estate operating company'[.]" 29 C.F.R. § 2510.3-101(c)(1). Generally speaking, a company is a real estate operating company if half its assets are invested in real estate that it is managing or developing. *Id.* § 2510.3-101(e). McBride easily meets this definition. McBride's real estate and construction in progress exceeded 50% of its total assets in all relevant years. DAF ¶ 4.[20] Thus, even if McBride did primarily engage in real estate investment rather than homebuilding, its assets still are not ERISA plan assets.

In short, Plaintiffs' operating company arguments provide no basis for them to dodge application of this fundamental principle of ERISA.[21]

---



[19] ███████████████████████████████████████████████████████████████
████████████████████████████████████████████████

[20] ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████

[21] Plaintiffs' suggestion that application of the "operating company" provisions is an affirmative defense that Defendants had an obligation to raise turns the parties' burdens on their head. "In order to state a claim under [ERISA § 404], a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan."). *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *see also Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). Here, where Plaintiffs' claims do not pertain to managing or administering the Plan,

**D.      Even if ERISA applied to compensation decisions, the McBride Defendants did not breach any fiduciary duties.**

There is no dispute regarding the McBride Defendants' process for determining executive compensation.  It started with engaging a compensation consultant (TRS) to prepare an analysis of market compensation rates for McBride's top executives and, after sharing those recommendations with its outside advisors and soliciting feedback, ended with the board setting compensation within the range established by the consultant.  MSJ at 13-15.

Plaintiffs disagree with the conclusions drawn from these facts, but that does not preclude summary judgment.  For instance, Plaintiffs opine on compensation "best practice[s]" and contend TRS's compensation ranges were excessive.  Opp. at 41.  Plaintiffs' opinions are "just that[,] opinions" and "not proper statements of material fact."  *Giles*, 2014 WL 4358475, at *2. When Plaintiffs do attempt to create factual disputes, they fail under the slightest scrutiny:

- Plaintiffs assert there was "no real process" for setting compensation.  Opp. at 41.  To the contrary, the process was outlined in McBride Defendants' opening brief and was explained during depositions in this case.  *See* MSJ at 13-15; DSOF ¶ 91 (citing DE 8 at 22:12-28:6 (describing compensation setting process)).

- Plaintiffs claim there is no evidence showing McBride's outside advisors "were involved in compensation decisions," Opp. at 42, but again the factual record says otherwise.  DSOF ¶ 95 (citing DE 8 at 26:2-7 ("[TRS] contacted each of the members of the outside advisory [board]. . . .  [H]e met with each of them separately, face to face, to discuss what they knew about [Eilermann and Arri's] role with the company and [their] performance.").

- Plaintiffs point out that MS Capital's Bylaws provide for a "compensation

---

Plaintiffs' only possibility for making this *prima facie* showing of fiduciary status is to prove that the Defendants were managing or disposing of plan assets.  *See* 29 U.S.C. § 1102(21)(A) (defining the circumstances under which a person can be held to be acting as a fiduciary).  To succeed in so proving, Plaintiffs must prove that McBride's assets constitute ERISA plan assets as defined in the Plan Assets Regulation that contains the operating company definition.  Because proof that the assets in question satisfy the Plan Assets Regulation is part of Plaintiffs' *prima facie* case, Plaintiffs' failure of proof in this regard is encompassed in the Fourth Affirmative Defense set forth in the McBride Defendants' Answer to the Second Amended Complaint, to the effect that Plaintiffs' SAC fails to state a cause of action upon which relief can be granted.  Dkt. 164 at 57 (incorporating affirmative defenses from the McBride Defendants' partial answer to Plaintiffs' Second Amended Complaint, Dkt. 129).

committee," but they do not explain how any outcome would have been different had the Company observed that formality—nor can they, when Eilermann and Arri were the only two Board members, so they necessarily would have constituted the compensation committee, performing the same tasks they were already performing.

- Plaintiffs take issue with the fact that there were no written performance reviews. Again, this is not a dispute of fact but a dispute over the significance of facts. And this fact is meaningless, where the Board evaluated the performance of McBride's executives day in and day out, regardless of whether it memorialized such evaluation in writing. *See* MSJ at 14; DSOF ¶ 105 (citing DE 8 at 23:21-25 ("[T]he board would review the company's original goals for the year. They would review the performance for the year, both of the company in general and John Eilermann in particular.")). Plaintiffs have failed to show written performance reviews would have changed the outcome of the compensation process.

These "disputes" are all a distraction. ERISA, if it applied to cash compensation at all, would require only that Eilermann and Arri have discharged their duties "with the care, skill, prudence, and diligence" of a prudent person acting in a similar capacity. 29 U.S.C. § 1104. Plaintiffs have not demonstrated that Eilermann and Arri fell short of what would be expected of a prudent person operating in a similar business. McBride satisfied this standard by reasonably relying on their compensation consultant and soliciting feedback from their advisors.

## III. The McBride Defendants are Entitled to Summary Judgment on the 2017 Redemption Claims, and Plaintiffs' Cross Motion Should be Denied.

### A. MS Capital was not a fiduciary in connection with the 2017 Redemption.

Plaintiffs contend that MS Capital was a fiduciary for the 2017 Redemption simply because it was a named fiduciary of the ESOP. Opp. at 54. Not so—such a view contradicts the "touchstone" of fiduciary status: discretion. *See supra* Part I.A. The uncontroverted facts show MS Capital had no discretionary authority over the 2017 Redemption because it had no discretion to act on behalf of the ESOP. As MS Capital's engagement agreement with GreatBanc provides:

> The Company has asked the Trustee to consider a transaction in which 100% of the outstanding shares of stock . . . will be redeemed and the Plan will be converted to a profit sharing plan and merged with and into the McBride & Son 401(k) Savings

Plan (the "Offer").

…

The Trustee will be a sole independent and full discretionary trustee with respect to its evaluation and determination of whether to accept the Offer.

DSOF ¶ 124 (citing DE 120 at GBT_0005725).

MS Capital could not have functioned as a fiduciary as Plaintiffs contend because it was on the ***opposite*** side of the transaction from GreatBanc and thus the ESOP. *See* MSJ. at 15-16; DSOF ¶¶ 124-34, 141-44. Courts, including this one, have recognized the critical distinction between "*working* for the ESOP" and "*negotiating* with it." *Neil v. Zell*, 677 F. Supp. 2d 1010, 1021 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010); *see* Mem. Op. at 25-26 (finding Eilermann and Arri were not fiduciaries for the 2017 Redemption because plaintiffs alleged only that they were "*acting on behalf* of" MS Capital to purchase plan shares, not "exercis[ing] any authority to approve the sale on behalf of the Plan") (emphasis added). Adopting Plaintiffs' argument "would make it impossible for anyone to negotiate a transaction with an ESOP for fear that it might be deemed unfavorable to the plan beneficiaries." *Neil*, 677 F. Supp. 2d at 1021.

That MS Capital engaged and could have terminated GreatBanc or not agreed to the Redemption does not change the analysis. *See* Opp. at 54. By engaging GreatBanc to serve as independent trustee, MS Capital at most retained fiduciary *monitoring* duties, which the undisputed facts show it satisfied. *See infra* Part IV. Plaintiffs' arguments that MS Capital signed documents and could have stopped the transaction are as unpersuasive for the 2017 Redemption as they are for the 2013 Reorganization because they do not demonstrate discretionary control over plan assets. *See supra* Part I.A.[22]

---

[22] Summary judgment is additionally warranted in favor of MS Capital for Counts XII, XIV, and XV because there was no breach of fiduciary duty, no harm to the ESOP, and no non-exempt prohibited transaction for the reasons explained in GreatBanc's memorandum and reply. *See* Dkt. 259, GreatBanc

**B.      MS Capital, Eilermann, and Arri did not knowingly participate in ERISA violations with respect to the 2017 Redemption.**

Plaintiffs argue that MS Capital, Eilermann, and Arri knowingly participated in ERISA violations relating to the 2017 Redemption. Opp. at 55. First, no ERISA violations occurred. *See* MSJ at 16 & n.8; *supra* Part III.A. Beyond that, Plaintiffs' attempt to shirk their evidentiary burdens fails. Here, where the ESOP received "more than nominal" consideration, there attaches a rebuttable presumption that the purchasers acted in good faith. *See* Opp. at 55; MSJ at 16-17. That fact shifts the burden to Plaintiffs to establish that the McBride Defendants acted in bad faith or had actual or constructive knowledge that the Redemption was unlawful. *Id*. Plaintiffs' argument that there is no presumption of good faith (and therefore no resulting burden on them), *see* Opp. at 55; MSJ at 16-17, is incorrect. In *Neil v. Zell*, the court's holding was limited to allegations of knowing participation by the ESOP's fiduciary trustee—the case did not hold that plaintiffs need only allege knowledge of transaction details for *non-fiduciary counterparties* like the McBride Defendants. *See* 753 F. Supp. 2d 724, 731 (N.D. Ill. 2010); MSJ at 15; *cf.* Opp. at 55. Plaintiffs' argument further ignores that at least one court in this Circuit has interpreted *Harris Trust & Savings Bank v. Salomon Smith Barney*, 530 U.S. 238 (2000), which *Neil* applies, to *require* the burden-shifting analysis. *See, e.g.*, *Keach v. U.S. Tr. Co.*, 244 F. Supp. 2d 968, 974 (C.D. Ill. 2003) (holding the presumption of good faith and burden-shifting analysis "is consistent with the . . . comment by the Supreme Court in *Harris Trust* that strongly suggests that the party seeking to recover against the party-in-interest would bear the burden of proof with respect to the knowledge component of the inquiry"); *see* MSJ at 16-17.[23]

_____

Trust Company's Memorandum in Support of Motion for Summary Judgment ("GreatBanc Mem.") at 16-20; GreatBanc Reply at 1-6.

[23] Plaintiffs cite *Spear v. Fenkell*'s observation that a "difference in value . . . may be evidence" of actual or constructive notice in support of their suggestion that the McBride Defendants have "misrepresent[ed]

Plaintiffs do not dispute that the ESOP received value in the Redemption, PRF ¶ 146, and they make no attempt to rebut the attendant presumption of good faith. *See* Opp. at 55-56; MSJ at 17. Nor could they. The McBride Defendants were not privy to GreatBanc's internal processes, and no fact in the record would have put them on notice of any alleged breach. MSJ at 18-19. That the Court allowed Plaintiffs' knowing participation claim to survive a motion to dismiss is not dispositive here, where discovery has proven certain of the underlying allegations to be false. *Compare* Opp. at 56 (declining to dismiss the knowing participation claim based in part on allegation that MS Capital "approved a sale price without first obtaining an independent valuation"), *with* PRF ¶¶ 130-131 (conceding that Stern Brothers provided GreatBanc with a valuation report for the 2017 Redemption). Plaintiffs' allegation that "the sale was a prohibited transaction under section 406" of ERISA likewise is not dispositive because it alleges a legal conclusion, and the McBride Defendants dispute the transaction was non-exempt. *See* Opp. at 56 (quoting Mem. Op. at 16-17).

Plaintiffs' suggestion that the record "abounds" with disputed material facts about the McBride Defendants' knowledge of fiduciary violations is misleading. Opp. at 56. Most of Plaintiffs' cited "facts" are actually opinions or mischaracterizations of the record. For example, Plaintiffs' contention that the valuation was "predicated on projections that included millions of dollars of executive compensation far outside the median range," *id.*, is pure opinion: there has

---

the import" of *Hans v. Tharaldson*, No. 3:05-cv-115, 2011 WL 7179644, at *16 (D.N.D. Oct. 31, 2011). Opp. at 56-57 (citing *Spear v. Fenkell*, No. CV 13-2391, 2016 WL 5661720, at *40 (E.D. Pa. Sept. 30, 2016), *clarified on denial of reconsideration*, No. CV 13-2391, 2016 WL 7475814 (E.D. Pa. Dec. 29, 2016)). Plaintiffs are incorrect. Putting aside that *Spear* is an "unpublished, out-of-circuit district court decision," Opp. at 55, the undisputed facts show that Eilermann and Arri reasonably believed that the 2017 Redemption price, as *a 20 percent premium over the prior valuation*, exceeded fair market value. *See* Mem. at 18; Opp. at 56-57. Plaintiffs therefore cannot establish bad faith or actual or constructive notice by the McBride Defendants as required to rebut the presumption of good faith. *See* MSJ at 17.

been no finding that compensation was excessive, and Plaintiffs' cited facts do not establish otherwise. *See* PRF ¶ 142; DSOF ¶¶ 107-108. Likewise, their claim that Eilermann and Arri "prevented" GreatBanc from going to market to price the Plan's shares is unsupported and irrelevant. *See* PRF ¶ 127 (quoting GreatBanc's admission that it simply was "not engaged or retained" to solicit bids from third parties); *see also* Opp. at 56-57 (citing no support for claim that executives purchased stock because Stern Brothers' valuations were "low," *see* PAF ¶ 160). Other supposed "facts" selectively cite quote from the record that appear to suit Plaintiffs' narrative while ignoring the ones that undermine it. *See, e.g.*, Opp. at 56 (quoting meeting notes informally referring to the "story" that stock peaked and that McBride had plenty of available lots without also citing to the undisputed facts that both management and the ESOP's participants believed the stock price had, in fact, peaked, *see* DSOF ¶¶ 112-14); PAF ¶ 159 (quoting portion of Eilermann's email that 2017 Redemption was a "great opportunity for me" but omitting immediately preceding phrase that "[i]t is a great transaction for the employees").

Plaintiffs' suggestion that the Redemption offer was based on a value "less than the book value of McBride" is similarly deficient, Opp. at 56—book value is an accounting concept that has no bearing on whether the ESOP's purchase price was below *fair market value*, which is ERISA's statutory standard. Most importantly, as detailed above, none of Plaintiffs' proffered "facts" contradicts the undisputed fact that the McBride Defendants did not—and could not—have knowledge of any alleged fiduciary breaches by GreatBanc, as GreatBanc sat on the opposite side of the table. *See* Opp. at 56-57; MSJ at 18-19; *supra* Parts I.A & III.A. Summary judgment on Count XVI should thus be granted in favor of the McBride Defendants.

## IV. The McBride Defendants Satisfied Any Limited Duty to Monitor.

The facts regarding Plaintiffs' duty to monitor claim cannot be disputed: McBride regularly communicated with GreatBanc and its valuation advisor through in-person due

diligence meetings, telephone conferences, and email annually throughout the relevant time period for ESOP administrative purposes and in connection with the challenged transactions. MSJ at 19. Hundreds of emails between these parties, which were produced during discovery, along with uncontroverted deposition testimony from every witness to testify on the subject, bear those details out. In the face of those facts, Plaintiffs make a legal argument that McBride's level of monitoring was "woefully deficient." Opp. at 58. Not so. Courts have held that holding telephonic meetings, engaging in email correspondence, and developing a general understanding of the trustee's duties and work satisfy the limited duty to monitor. *Fish v. GreatBanc*, No. 9 C 1668, 2016 WL 5923448, at *53 (N.D. Ill. Sept. 1, 2016).[24]

Finally, Plaintiffs argue McBride should have "aggressively monitored" GreatBanc because GreatBanc has been sued before. Opp. at 58-59. That one of the largest institutional trustees in the country has been sued (most often by the same attorneys representing Plaintiffs) is as unsurprising as it is irrelevant. The duty to monitor is limited. *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 881 (N.D. Ill. 2009), *aff'd sub nom. Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011). Even if McBride were required to consider GreatBanc's involvement in litigation, the undisputed facts show it did. *See* Defs' Resp. to PAF ¶ 167.

## V.     Plaintiffs' Citation to Experts Does Not Create a Dispute of Material Fact

Plaintiffs believe summary judgment can be defeated simply by citing expert testimony. Opp. at 34 (arguing that "conflicting expert testimony creates a disputed material fact"). That is

---

[24] Plaintiffs twist themselves into knots attempting to distinguish the facts of *Fish* from those here. For instance, they argue the level of monitoring in *Fish* "went far beyond what happened here," Opp. at 58, but then include quotations from *Fish* showing that GreatBanc "held telephonic meetings with members of management and management's legal [counsel]" and "had extensive email communications with management and management's legal and financial advisors." *Id.* (quoting *Fish*, 2016 WL 5923448, at *52. Telephone calls, email correspondence, and in-person meetings all occurred here.

not the law in this circuit. "[N]ot every contention asserted by an expert will suffice to create a genuine issue of material fact to defeat summary judgment." *Chamberlain Grp., Inc. v. Lear Corp.*, 756 F. Supp. 2d 938, 951 (N.D. Ill. 2010) (cleaned up). Though Plaintiffs found a case, Opp. at 34 (citing *Godinez v. City of Chicago*, No. 16-CV-07344, 2019 WL 5597190 (N.D. Ill. Oct. 30, 2019)), in which this Court concluded that it needed a trial to weigh the credibility of competing cause-of-death experts, that case applied *Chamberlain*, which made explicitly clear that "[e]xpert disagreement is not necessarily enough in itself to preclude summary judgment." 756 F. Supp. 2d at 951. Where the court decides it has enough information to decide a case on summary judgment, the fact that experts are involved does not stand in the court's way. The Court should reject Plaintiffs' efforts to stave off summary judgment by citing expert testimony.

## **CONCLUSION**

For the foregoing reasons, and all of the reasons in the McBride Defendants' opening brief, as well as, where relevant, the reasons set forth in GreatBanc's opening and reply briefs, this Court should grant the McBride Defendants' Motion for Summary Judgment and deny Plaintiffs' Partial Motion for Summary Judgment.[25]


Dated: March 14, 2022                           Respectfully submitted,

                                                /s/ *Lars C. Golumbic*
                                                Lars C. Golumbic (admitted *pro hac vice*)
                                                Sarah M. Adams (admitted *pro hac vice*)
                                                Shaun A. Gates (admitted *pro hac vice*)
                                                Rachael Hancock (admitted *pro hac vice*)

---

[25] Plaintiffs' request for summary judgment on certain of the McBride Defendants' affirmative defenses, Opp. at 59-61, should be denied. Should the case proceed past summary judgment, the McBride Defendants should be permitted to present evidence as to class members who executed releases and/or waived claims. Plaintiffs' principal cited case recognizes as much. *Brundle v. Wilmington Trust, NA*, No. 1:15–cv–1494 (LMB/IDD), 2016 WL 6542718, *16 (E.D. Va. Nov. 3, 2016) (recognizing defendants can raise defenses against class members at a later time).

GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW, Ste. 1200
Washington, DC 20006
Tel: (202) 861-6615; Fax: (202) 659-4503
Email: lgolumbic@groom.com
       sadams@groom.com
       sgates@groom.com
       rhancock@groom.com

Daniel Broderick, Jr.
ARDC No. 6304632
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
Tel: (312) 641-3100; Fax: (312) 444-1669
Email: DBroderick@cassiday.com

*Counsel for Defendants McBride & Son
Capital, Inc., McBride & Son Management
Company, LLC, John F. Eilermann, Jr., and
Michael D. Arri*