**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **GREGORY GODFREY, et al.,** | **Case No. 1:18-cv-07918** |
| **Plaintiffs,** | **Judge Matthew F. Kennelly** |
| v. | **Magistrate Judge Michael T. Mason** |
| **GREATBANC TRUST COMPANY, et al.,** | |
| **Defendants.** | |

**REPLY MEMORANDUM
IN SUPPORT OF PLAINTIFFS' MOTION
<u>FOR PARTIAL SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTON ............................................................................................... 1

II.    THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT FOR
       PLAINTIFFS ON COUNTS I AND III AGAINST GREATBANC .................................... 1

       A.    The Court Should Grant Summary Judgment on Count III's Breach of
             Loyalty Claim Against GreatBanc. ............................................................ 1

       B.    The Court Should Grant Partial Summary Judgment on Count I,
             §§ 406(a)(1)(A) and (D) Claims Against GreatBanc. .................................. 6

             1.    The 2013 Recapitalization Involved Parties In Interest. ...................... 6

             2.    GreatBanc Cannot Prove The 408(e) Exemption .............................. 7

             3.    Plaintiffs Have Several Remedies, Including Damages. ...................... 8

III.   THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT ON THE
       2013 RECAPITALIZATION AGAINST MCBRIDE DEFENDANTS. ............................ 8

       A.    The Court Should Grant Partial Summary Judgment for Plaintiffs against
             Eilermann and Arri on Count VI. ............................................................ 8

       B.    The Court Should Grant Partial Summary Judgment on the Fiduciary Status
             of MS Management, Eilermann, and Arri as to Counts I-VI. ..................... 8

IV.    ON THE LOSS OF VALUE CLAIMS FROM 2013 TO 2017, THE COURT
       SHOULD GRANT PARTIAL SUMMARY JUDGMENT FOR PLAINTIFFS ON
       THE FIDUCIARY STATUS OF EILERMANN AND ARRI ....................................... 10

V.     ON THE 2017 TRANSACTION, THE COURT SHOULD GRANT PARTIAL
       SUMMARY JUDGMENT FOR PLAINTIFFS ........................................................ 15

       A.    The Court Should Grant Partial Summary Judgment for Plaintiffs and against
             GreatBanc (Count XI). ........................................................................ 15

       B.    The Court Should Grant Partial Summary Judgment for Plaintiffs and against
             MS Capital, Eilermann, and Arri (Count XVI). ..................................... 17

VI.    ON THE FAILURE TO MONITOR GREATBANC, THE COURT SHOULD
       GRANT PARTIAL SUMMARY JUDGMENT FOR PLAINTIFFS ................................ 18

VII.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON CERTAIN
       OF DEFENDANTS' AFFIRMATIVE DEFENSES .................................................... 18

VIII.   DEFENDANTS' IMPROPER RESPONSES TO PLAINTIFFS' MATERIAL FACTS SHOULD BE STRICKEN .............................................................................. 19

IX.   CONCLUSION ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arakelian v. Nat'l W. Life Ins. Co.*,
    680 F. Supp. 400 (D.D.C. 1987) ...............................................................................10

*Bell v. Taylor*,
    827 F.3d 699 (7th Cir. 2016)............................................................................... 14, 15

*Brandt v. Grounds*,
    687 F.2d 895 (7th Cir. 1982)................................................................................10

*Brundle v. Wilmington Tr., N.A.*,
    241 F. Supp. 3d. 610 (E.D. Va. 2017) ....................................................................4

*Brundle v. Wilmington Tr., N.A.*,
    919 F.3d 763 (4th Cir. 2019)..................................................................................4

*Brundle v. Wilmington Tr., N.A.*,
    No. 15-1494, 2016 WL 6542718 (E.D. Va. Nov. 3, 2016) ....................................18

*Chesemore v. Alliance Holdings, Inc.*,
    276 F.R.D. 506 (W.D. Wis. 2011)..........................................................................2

*Chesemore v. Alliance Holdings, Inc.*,
    886 F. Supp. 2d 1007 (W.D. Wis. 2012), *aff'd sub nom. Chesemore v. Fenkell*, 829
    F.3d 803 (7th Cir. 2016) .........................................................................................2

*Curtis v. Costco Wholesale Corp.*,
    807 F.3d 215 (7th Cir. 2015)................................................................................19

*DiFelice v. U.S. Airways, Inc.*,
    497 F.3d 410 (4th Cir. 2007)..................................................................................2

*Donovan v. Cunningham*,
    <u>716 F.2d 1455 (5th Cir. 1983)</u> ................................................................................2

*Est. of Godley v. Comm'r*,
    286 F.3d 210 (4th Cir. 2002)..................................................................................3

*Fernandez v. K-M Indus. Holding Co.*,
    646 F. Supp. 2d 1150 (N.D. Cal. 2009)................................................................12

*Fish v. Greatbanc Tr. Co.*,
No. 09-1668, 2016 U.S. Dist. LEXIS 137351 (N.D. Il. Sep. 1, 2016)..........................................8, 18

*Fish v. Greatbanc Tr. Co.*,
No. 09-1668, 2016 WL 5923448 (N.D. Il. Sept. 1, 2016) ...................................................................8

*Gross v. Town of Cicero, Ill.*,
619 F.3d 697 (7th Cir. 2010)...............................................................................................................19

*Halperin v. Richards*,
7 F.4th 534 (7th Cir. 2021)...................................................................................................................2

*Harris v. GreatBanc*,
No. 12–1648, 2013 WL 1136558 (C.D. Cal. Mar. 15, 2013)............................................................13

*Howard v. Shay*,
100 F.3d 1484 (9th Cir. 1996) ............................................................................................................12

*Howington v. Ghourdjian*,
No. 00 –7394, 2002 WL 265179 (N.D. Il. Feb. 25, 2002) (Kennelly, J) ...........................................2

*Johnson v. Courtier*,
572 F.3d 1067 (9th Cir. 2009) ...........................................................................................11, 12, 13, 14

*Johnson v. Couturier*,
No. 08-17369, Dkt. 28-1, 2009 WL 4089585 (9th Cir. Jan. 9, 2009).................................................13

*Johnson v. Couturier*,
No. 08-17631, 2009 WL 2444302 (9th Cir. Jan. 30, 2009)................................................................14

*Keach v. U.S. Tr. Co.*,
244 F. Supp. 2d 968 (C.D. Ill. 2003) .................................................................................................17

*Keach v. U.S. Trust Co.*,
240 F. Supp. 2d 840 (C.D. Il. 2002).................................................................................................2, 17

*Leigh v. Engle*,
727 F.2d 113 (7th Cir. 1984)................................................................................................................2

*Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*,
379 F. Supp. 2d 968 (N.D. Il. 2005)...................................................................................................19

*Malec v. Sanford*,
191 F.R.D. 581 (N.D. Il. 2000) ..........................................................................................................20

*McMaken v. GreatBanc Tr. Co.*,
No. 17-4983, 2019 WL 1468157 (N.D. Il. Apr. 3, 2019) ..................................................................12

*Montgomery v. Aetna Plywood, Inc.*,
    39 F. Supp. 2d 915 (N.D. Il. 1998) ............................................................................7

*Pizzella v. Vinoskey*,
    409 F. Supp. 3d 473 (W.D. Va. 2019), *aff'd in part, rev'd in part sub nom, Walsh v.*
    *Vinoskey*, 19 F.4th 672 (4th Cir. 2021) ......................................................................4

*Reed v. Columbia St. Mary's Hosp.*,
    915 F.3d 473 (7th Cir. 2019) ...................................................................................15

*Roberts v. Advocate Health Care*,
    119 F. Supp. 3d 852 (N.D. Il. 2015) .........................................................................20

*Scalia v. Reliance Tr. Co.*,
    No. 17-4540, 2021 WL 795270 (D. Minn. Mar. 2, 2021) .........................................3

*Spires v. Schools*,
    271 F. Supp. 3d 795 (D.S.C. 2017) ...........................................................11, 13, 14

*Struve v. Electrolux Home Prods., Inc. Life Ins. Plan*,
    No. 17-8158, 2019 WL 918503 (N.D. Il. Feb. 25, 2019) ........................................15

*Svigos v. Wheaton Secs., Inc.*,
    No. 17-4777, 2018 WL 587190 (N.D. Il. Jan. 29, 2018) ..........................11, 12, 14

*United States v. N. States Invs., Inc.*,
    670 F. Supp. 2d 778 (N.D. Il. 2009) .........................................................................10

*Walsh v. Peterson*,
    No. 21-867, Dkt. 1 (E.D. Tex. Oct. 29, 2021) ...........................................................4

*Wool v. Sitrick*,
    No. 2:10-02741, 2010 WL 11448099 (C.D. Cal. Aug. 10, 2010) ...................*passim*

**Statutes**

29 U.S.C. §§ 1002(14)(A), (C) ...........................................................................................7

29 U.S.C. § 1002(14)(G) ....................................................................................................7

29 U.S.C. § 1002(18)(B) ....................................................................................................7

29 U.S.C. § 1102(14)(A) ....................................................................................................9

29 U.S.C. § 1104(a)(1) .....................................................................................................13

29 U.S.C. § 1106(a)(1)(A) and (D) .............................................................................15, 16

29 U.S.C. § 1108(e) ...........................................................................................................7

v

29 U.S.C. § 1109 ...................................................................................................................2, 13

ERISA §§ 404 and 405 ..........................................................................................................*passim*

ERISA § 406 ............................................................................................................................*passim*

ERISA § 408(3) ...............................................................................................................................6

ERISA § 408(e) ..................................................................................................................... 6, 7, 16

ERISA § 409 ......................................................................................................................................2

ERISA § 410 ....................................................................................................................................13

**Other Authorities**

29 C.F.R. § 2510-3(18)(b)(4)(ii)(I) ...............................................................................................3

29 C.F.R. § 2510.3-101(a)(2)........................................................................................................11

Local Rule 56.1 ........................................................................................................................ 19, 20

# I.    INTRODUCTON

Plaintiffs move for partial summary judgment on a discrete subset of issues, including several affirmative defenses Defendants seem to have abandoned, to narrow the issues for trial. As to those affirmative defenses, Defendants do not identify any disputed material facts, arguing only the Court should defer judgment because they might make an argument against judgment at trial.[1] That argument speaks for itself. The rest of Defendants' opposition depends on misstatements of law and ignorance of material facts.

# II.   THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT FOR PLAINTIFFS ON COUNTS I AND III AGAINST GREATBANC.

Plaintiffs move for partial summary judgment that GreatBanc breached its duty of loyalty in approving the 2013 Recapitalization (Count III) and on prohibited transaction claims against GreatBanc in Count I under ERISA §§ 406(a)(1)(A) and (D). GreatBanc responds with bogus legal arguments. The undisputed material facts prove GreatBanc approved the 2013 Recapitalization for the benefit of the Five Executives and caused a prohibited transaction by doing so.

## A.    The Court Should Grant Summary Judgment on Count III's Breach of Loyalty Claim Against GreatBanc.

The undisputed material facts prove GreatBanc was the trustee and it approved the 2013 Recapitalization. *See* Pl. Br. at 12–17.[2] Plaintiffs detail numerous facts proving the 2013 Recapitalization conferred material economic, governance, and employment benefits on Eilermann and Arri at the expense of the Plan. Pl. Br. at 13–16; PAF ¶¶ 49–72. GreatBanc argues there no breach because (1) there were no damages, and (2) it had no reason to be disloyal. GB Opp'n at 11. These

---

[1] *See* Dkt. 290 (sealed), GreatBanc Trust Company's Reply Memorandum In Support of Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Partial Summary Judgment ("GB Opp'n") and Dkt. 293 (sealed), McBride Defendants' Combined Reply In Support of Motion for Summary Judgment and Response to Plaintiffs' Partial Motion for Summary Judgment ("MB Opp'n").
[2] References to "Pl. Br." herein mean Dkt. 273 (sealed), Plaintiffs' Response to Defendants' Motion for Summary Judgment and Memorandum in Support of Cross-Motions for Partial Summary Judgment. References to "PAF" herein mean Dkt. 273-2 (sealed), Plaintiffs' Combined Statement of Material Facts

arguments fail because Plaintiffs prove damages, seek other remedies, and motive is irrelevant.

**1. Remedies.** GreatBanc contends damages are a necessary element of Plaintiffs' fiduciary breach claim. Damages are only one of several available remedies against breaching fiduciaries. *See Halperin v. Richards*, 7 F.4th 534, 546 (7th Cir. 2021) (ERISA allows actions against fiduciaries when there are no losses). ERISA § 409 provides for equitable remedies such as disgorgement of GreatBanc's fees. 29 U.S.C. § 1109. Rescission, that is, returning to the pre-2013 Recapitalization status quo, is an equitable remedy. *Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506, 516–17 (W.D. Wis. 2011) (recognizing rescission as a remedy for ERISA violations); *Howington v. Ghourdjian*, No. 00 –7394, 2002 WL 265179, *2 (N.D. Il. Feb. 25, 2002) (Kennelly, J) ("the appropriate remedy in the case of a transaction infected by a breach of fiduciary duty is rescission") (internal citation omitted). GreatBanc's argument fails as a matter of law.

**2. Breach of loyalty.** Plaintiff detailed 16 sets of facts proving GreatBanc agreed to terms favoring Eilermann, Arri, and other executives in the 2013 Recapitalization. Pl. Br. at 13–16. GreatBanc tries to deflect the facts by arguing a breach of loyalty requires proof of incentives or reasons for the trustee to be disloyal.[3] However, a "pure heart" is not a defense. *See, e.g., Keach v. U.S. Trust Co.*, 240 F. Supp. 2d 840, 845 (C.D. Il. 2002). Stated differently, "[g]ood faith is not a defense to an ERISA fiduciary's breach of the duty of loyalty." *Leigh v. Engle*, 727 F.2d 113, 124 (7th Cir. 1984)(internal citation omitted); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007); *Donovan v. Cunningham,* 716 F.2d 1455, 1467 (5th Cir. 1983). GreatBanc's argument fails as a matter of law.

**3. Plaintiffs' claims for relief**. GreatBanc argues there were no damages because there was no loss of control in the 2013 Recapitalization. In addition to the damages outlined by Plaintiffs' expert

---

[3] In its opening brief, GreatBanc cites *Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007, 1041 (W.D. Wis. 2012), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016), for the proposition that a fiduciary must have conflicts of interest to be found liable for a breach of loyalty. *Chesemore* doesn't say anything like that. It simply says where there is a substantial conflict a fiduciary may need to recuse itself. 886 F. Supp. 2d at 1041.

Van Vleet (PAF ¶¶ 177–80), the damages caused by the "loss of value" claims from 2013 to 2017 result from GreatBanc's breaches during the 2013 Recapitalization. Dkt. 127, Plaintiffs' Second Amended Complaint, the ("SAC") ¶¶ 149, 380, 381, 441, 442; Pl. Br. at 15–16 citing PAF ¶¶ 96–100, 108–111. GreatBanc ignores these claims.

**4. The facts on control.** GreatBanc is wrong on loss of control. *See* Pl. Br. at 20–21. At the very least, the Plan's loss of control involves many disputed material facts. *See* Dkt. 290-1, Defendants' Responses to Additional Facts ("DRF") ¶¶ 58–69 (repeatedly claiming the "undisputed facts disprove" Plaintiffs' undisputed facts on control). Even if the Court accepts GreatBanc's reasoning, its arguments go to control on paper, not control in fact. Who controls a company "in fact" is a fact-intensive question that looks beyond mere documents. *See Est. of Godley v. Comm'r*, 286 F.3d 210, 214 (4th Cir. 2002); *Scalia v. Reliance Tr. Co.,* No. 17-4540, 2021 WL 795270, at *35 (D. Minn. Mar. 2, 2021); *see also* Proposed Regulations Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 16732, 1988 WL 269847(F.R.) (proposed May 17, 1988) (to be codified at 29 C.F.R. § 2510-3(18)(b)(4)(ii)(I)(the "Proposed Regulations"). In the preamble to the Proposed Regulations, the DOL states that (1) "the Department's position is that the payment of a control premium is unwarranted unless the plan obtains both voting control and control in fact" and (2) "the retention of management and the utilization of corporate officials as plan fiduciaries, when viewed in conjunction with other facts, may indicate that actual control has not passed to the plan within the meaning of paragraph (b)(4)(ii)(I) of the proposed regulation." Proposed Regulations, Preamble § B(5). Control is demonstrated by: "an interest which allows the shareholder to unilaterally direct corporate action, select management, decide the amount of distribution, rearrange the corporation's capital structure, and decide whether to liquidate, merge, or sell assets." Pl. Br. at 20, citing *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 777 (4th Cir. 2019), as amended (Mar. 22, 2019) ("*Brundle III*").

Thus, even when an ESOP owns 100% of the voting stock, it does not acquire control when

the transaction allows executive *de facto* control. *Brundle III*, 919 F.3d at 771. Eilermann, Arri, and GreatBanc structured the 2013 Recapitalization so Eilermann and Arri could dominate McBride and allow the Five Executives to receive distributions diluting the Plan's equity. PAF ¶¶ 49–72, 115–123. Notably, GreatBanc, like the trustee in *Brundle*, could be fired by Eilermann and Arri, meaning GreatBanc had little practical control. *Id.* ¶¶ 3–4, 19(3), 31, 36, 130, 148, 166; *Brundle v. Wilmington Tr., N.A.,* 241 F. Supp. 3d. 610, 629 n.25 (E.D. Va. 2017) ("*Brundle II*") ("[a]lthough the ESOP owned Constellis' stock, it was still possible for Constellis to fire Wilmington as trustee because the Sellers retained control of Constellis' board").[4] Indeed, ESOP trustees have been terminated by selling shareholders who remained as directors when the trustee questioned a proposed corporate action. *See, Walsh v. Peterson*, No. 21-867, Dkt. 1 at ¶¶ 10, 21–29 (E.D. Tex. Oct. 29, 2021)[5] (Dept of Labor complaint alleging a board fired an ESOP trustee after the trustee "raised questions about the fairness to the ESOP of the proposed transactions").

In *Vinoskey*, the court found the directors of the company, not the ESOP, were in "total control" because no independent directors were elected to diminish the power of the Vinoskeys, the Vinoskeys controlled the company by virtue of their positions, and the ESOP could not remove the Vinoskeys with "relative ease" because the board of directors was controlled by them. *See Pizzella v. Vinoskey*, 409 F. Supp. 3d 473, 494 (W.D. Va. 2019), *aff'd in part, rev'd in part sub nom*, *Walsh v. Vinoskey*, 19 F.4th 672 (4th Cir. 2021).[6] Here, Eilermann and Arri could not be removed as directors or managers

---

[4] GreatBanc's attempt to distinguish *Brundle* is unavailing. Neither the Fourth Circuit nor the district court relied solely on the fact that the sellers, not the ESOP, had the right to appoint directors. GB Opp'n at 5. *See Brundle II*, 241 F. Supp. at 638 (reasoning ESOP did not have control over the company because the facts showed it could not elect management, decide the amount of distribution, rearrange the corporation's capital structure, and decide whether to liquidate, merge, or sell assets); *Brundle III,* 919 F.3d at 777 ("the record evidence that the ESOP's unique ownership structure was intentionally designed to maintain the Sellers' control over Constellis").

[5] The DOL's complaint in *Walsh* is available at *https://www.dol.gov/sites/dolgov/files/EBSA/110121-1530-RVNB.pdf* (last visited Apr. 3, 2022).

[6] The *Vinoskey* court did not find lack of control simply because the ESOP could only "change one of the three ESOP trustees," as GreatBanc suggests. GB Opp'n at 5. Rather, the court reasoned the plan had no meaningful ability to remove the Vinoskeys or reduce their "dominant presence." *Vinoskey*, 409 F. Supp. 3d at 515.

without cause; and their positions as directors of the S Corp, managers of the LLC, and the two most senior executives of the companies gave them control in fact. PAF ¶¶ 57–70.

5. **The facts on who benefited.** Lost control was only one of the many harms suffered by the Plan. GreatBanc showered benefits on Eilermann and Arri in the 2013 Recapitalization. Pl. Br. at 13–17. Consider the "before" and "after" positions of the Plan versus Eilermann and Arri.

| | The Plan | | Eilermann & Arri | |
|---|---|---|---|---|
| | Before | After | Before | After |
| Distribution rights[7] | Superior and only rights | Inferior to executives | None | Superior to Plan |
| Tax distributions to executives[8] | None | Yes | None | Yes |
| Terminate board[9] | Unrestricted | Restricted | Unrestricted | Only for cause |
| Terminate executives[10] | Unrestricted | Restricted | Unrestricted | Only for cause |
| Stock encumbered[11] | No | Yes | No right of first refusal | Right of first refusal |
| Statutory cap on executive-owned equity[12] | Yes | No | Yes | No |
| Contractual right to compete against company[13] | N/A | N/A | None | Explicit right |
| Executive wage and bonus compensation overseen by trustee[14] | Yes | No | Yes | No |

---

[7] Pl. Br. 13–17, PAF ¶¶ 54, 115–123.

[8] *Id.* at PAF ¶ 96–100; 122.

[9] *Id.* at PAF ¶¶ 61, 68, 72, 109–111, 115–123.

[10] *Id.*

[11] *Id.* at ¶ 68; Dkt. 273-1 (sealed), Plaintiffs' Response to Defendants' Joint Statement of Material Facts ("PRF") ¶ 49.

[12] DRF ¶ 49 (the purpose of the transaction was to evade anti-abuse caps on executive-owned equity).

[13] *Id.* at ¶ 72.

[14] *Id.* at ¶¶ 109, 111.

The Plan got nothing in the 2013 Recapitalization. Moreover, GreatBanc didn't seek retention agreements with executives even though purported goal was executive retention. PAF ¶ 72.

Finally, Defendants' responses to Plaintiffs' 16 distinct sets of facts, supported by cites to record evidence, proving Plaintiffs' breach of loyalty claim against GreatBanc in Count III (Pl. Br. at 13–17, Part VIII, *infra*), lodge no substantive denial. *See* DRF ¶¶ 38–39, 41, 53– 55, 64, 80, 83–84, 89, 96–97, 100, 111, 115–116, 118, 171–176. Those facts are therefore admitted.

### B. The Court Should Grant Partial Summary Judgment on Count I, §§ 406(a)(1)(A) and (D) Claims Against GreatBanc.

Plaintiffs move for partial summary judgment on GreatBanc's violations of ERISA § 406(a)(1). To prevail on Count I, Plaintiffs must prove: (1) GreatBanc was a fiduciary with authority to cause the Plan to engage in the 2013 Recapitalization; (2) MS Capital, Eilermann, and Arri were parties in interest to the Plan; (3) GreatBanc caused the Plan to exchange stock with MS Capital (§ 406(a)(1)(A)); and (4) the transaction resulted in the use of Plan assets, direct or indirect, for the benefit of Eilermann and Arri ERISA § 406(a)(1)(D)). Pl. Br. at 17–19. GreatBanc mistakenly argues: (1) the 2013 Recapitalization did not involve any party in interest, so there was no ERISA § 406(a) violation, (2) if ERISA § 406(a) applies, GreatBanc proved the exemption under ERISA § 408(e), and (3) Plaintiffs can't prove damages. *See* GB Opp'n at 11.

#### 1. The 2013 Recapitalization Involved Parties In Interest.

GreatBanc argues MS Capital was not a party in interest and, therefore, there was no prohibited transaction. But MS Capital was a party in interest on December 31, 2013, when it received the ESOP's 88,201.4119 outstanding shares of MS Companies, Inc. through the Contribution Agreement as part of the 2013 Recapitalization. *See e.g.,* PRF ¶ 70. MS Capital was incorporated at 5 p.m. on December 31, 2013; Eilermann and Arri were simultaneously elected as members of its Board of Directors. DRF ¶ 9; PRF ¶ 69. On the same day, MS Management assigned all its rights and responsibilities relating to the ESOP (including named fiduciary status of the

6

ESOP) to MS Capital. DRF ¶ 11. Thus, MS Capital became fiduciary and employer on December 31, 2013, making it a party in interest. 29 U.S.C. §§ 1002(14)(A), (C). It was also a party in interest because it was a corporation created by Arri (a fiduciary) and "held" by GreatBanc (a fiduciary) as trustee on behalf of the Plan. *See* DRF ¶ 9; 29 U.S.C. § 1002(14)(G). And MS Capital was an employer from the moment of inception because the various McBride entities were all part of the same "controlled group of corporations" under the Plan. *See* Dkt. 259-4, Defendants' Joint Statement of Material Facts ("DSOF") ¶ 3 citing DE 7, Amended and Restated 2013 Plan Document at §§ 2.11, 2.18.

Moreover, neither GreatBanc nor Eilermann nor Arri dispute that Eilermann and Arri were parties in interest to the Plan in the 2013 Recapitalization who received numerous benefits, direct and indirect, by using Plan assets in the transaction. Pl. Br. 13-18; Part II.A.5, *supra*. Thus, Plaintiffs' § 406(a) claim against GreatBanc survives regardless of whether MS Capital was a party in interest.

### 2. GreatBanc Cannot Prove The 408(e) Exemption

ERISA § 408(e) requires GreatBanc to prove the Plan received no less than adequate consideration for its stock in the 2013 Recapitalization. 29 U.S.C. § 1108(e). Adequate consideration for private company stock is the "fair market value of the asset as determined in good faith by the trustee or named fiduciary." Pl. Br. at 22. 29 U.S.C. § 1002(18)(B). There was no fair market value analysis of MS Capital stock conducted for the 2013 Recapitalization. Pl. Br. at 23; PRF ¶ 62; PAF ¶ 79. Thus, GreatBanc cannot claim it (or any fiduciary) "determined in good faith" MS Capital stock's fair market value. This alone dooms the ERISA § 408(e) exemption. *See, e.g, Montgomery v. Aetna Plywood, Inc.*, 39 F. Supp. 2d 915, 937 (N.D. Il. 1998) (adequate consideration under § 408(e) requires an independent valuation determining the price in good faith by way of a prudent investigation and the application of sound principles of business valuation principles).

7

### 3.   Plaintiffs Have Several Remedies, Including Damages.

According to GreatBanc, the Court cannot enter summary judgment for Plaintiffs on Count I because "Plaintiffs' only damages theory for their § 406 claim is the alleged 'difference between the fair market value' of the shares in MS Companies Inc. that were exchanged for shares of MS Capital" and "there is also no restitution or other similar equitable remedy available against GreatBanc." GB Opp'n at 8, citing *Fish v. Greatbanc Tr. Co.*, No. 09-1668, 2016 U.S. Dist. LEXIS 137351, at *215 (N.D. Il. Sep. 1, 2016).[15] As discussed in Part II.A.1, *supra*, Plaintiffs have several equitable remedies in addition to damages and Plaintiffs show damages in any event. Plaintiffs also claim damages suffered during the Loss of Value period resulted from the 2013 Recapitalization. Part II.A.3, *supra*. The extent of damages and appropriate equitable remedies are for trial.

## III.   THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT ON THE 2013 RECAPITALIZATION AGAINST MCBRIDE DEFENDANTS.

### A.   The Court Should Grant Partial Summary Judgment for Plaintiffs against Eilermann and Arri on Count VI.

Plaintiffs prove two elements of their Count VI knowing participation claim: (1) GreatBanc caused an ERISA § 406(a)(1)(D) prohibited transaction involving (2) Eilermann and Arri, who were parties in interest. Pl. Br. at 19. No McBride Defendant disputes these elements so Plaintiffs should be awarded summary judgment on them.

### B.   The Court Should Grant Partial Summary Judgment on the Fiduciary Status of MS Management, Eilermann, and Arri as to Counts I-VI.

Plaintiffs move for partial summary judgment as to the fiduciary status of MS Management, Eilermann, and Arri for Counts I through VI because it is undisputed that MS Management was the named fiduciary and plan administrator prior to and including December 31, 2013. Pl. Br. at 19–20

---

[15] GreatBanc misconstrues *Fish*. *Fish* was discussing causation (not damages) for the plaintiffs' ERISA §§ 404 and 405 claims, not the plaintiffs' § 406 claims. *See Fish v. Greatbanc Tr. Co.*, No. 09-1668, 2016 WL 5923448, at *67 (N.D. Il. Sept. 1, 2016) ("even assuming that plaintiffs succeeded in proving breaches by defendants under ERISA sections 404 and 405, the evidence shows that any such breaches did not cause any damages").

citing PAF ¶¶ 5–8.[16] It is also undisputed that as the only members of the Board of Directors of MS Management, Eilermann, and Arri were the only persons who could and did act on behalf of MS Management as part of the 2013 Recapitalization, including having the discretionary authority to stop the transaction had they wanted to and, therefore, were fiduciaries to the Plan. Pl. Br. at 20 citing PAF ¶¶ 20–21; *see also* PAF ¶¶ 15–16, 19. The fiduciary status of MS Management, Eilermann and Arri is demonstrated through multiple undisputed facts. *See* Pl. Br. at 31; *see also* PAF ¶¶ 30–34, 164.

Tellingly, McBride Defendants' own authority (cited elsewhere in their Opp'n), *Wool v. Sitrick*, contradicts McBride Defendants' argument that Plan fiduciaries are relieved of their duties by hiring an independent trustee. *See* MB Opp'n at 10 citing *Wool v. Sitrick*, No. 2:10-02741, 2010 WL 11448099, at *5 (C.D. Cal. Aug. 10, 2010). In *Wool*, Michael Sitrick, the controlling shareholder of an ESOP-owned company and trustee of the ESOP, hired Reliance Trust to serve as an independent ESOP trustee in a transaction in which a trust controlled by Sitrick would receive the ESOP's shares in a stock repurchase transaction. *Id.* at *2. The Court rejected Sitrick's argument (the same as McBride Defendants' here) that the hiring of Reliance Trust discharged Sitrick of his fiduciary responsibility to the ESOP: "Although the SCI Board of Directors, of which Sitrick was a member, hired Reliance to consider and approve the Stock Repurchase for the ESOP…***such does not alleviate Sitrick of his fiduciary duties owed to the ESOP.***" *Id.* at 6 (emphasis added) citing *Howard v. Shay*, 100 F.3d 1484, 1489–90 (9th Cir. 1996) ("An independent appraisal 'is not a magic wand that fiduciaries may simply wave over a transaction to ensure that their responsibilities are fulfilled ...'") (citation omitted). The *Wool* court also rejected Sitrick's wife's argument that she was not a functional fiduciary:

> With respect to Nancy Sitrick, the FAC alleges that she was an officer and director of SCI. Although not a formal trustee of the ESOP, the FAC alleges that she, along with Sitrick, "acted with discretionary authority in structuring, approving, and executing" various transactions, including the Stock Repurchase. Because ERISA defines a fiduciary liberally to include any

---

[16] Proving fiduciary status for the claims against the McBride Defendants also necessarily proves party in interest status for those persons with respect to the claims against GreatBanc because a fiduciary is a party in interest. 29 U.S.C. § 1102(14)(A).

individual who exercises control, discretion, and authority over the management or disposition of ESOP assets, the FAC provides an adequate factual basis to conclude that Nancy Sitrick was an ESOP fiduciary for purposes of the Stock Repurchase. ***For the same reasons the appointment of Reliance did not relieve Sitrick of his fiduciary duties, it similarly did not relieve Nancy Sitrick of hers***.

*Id.* at 6 (emphasis added and internal citations omitted). Likewise, Eilermann and Arri structured, approved, and executed the 2013 Recapitalization and, therefore, functioned as fiduciaries. *See e.g.* PAF ¶¶ 19–25, 30–37, 63.

McBride Defendants are wrong that a "named fiduciary" is only a fiduciary for acts by which it is also a "functional fiduciary". "[A]lthough generally an entity holds fiduciary status only to the extent it exercises control over a plan, a "named fiduciary" holds fiduciary status for all purposes." *Arakelian v. Nat'l W. Life Ins. Co.*, 680 F. Supp. 400, 404 (D.D.C. 1987) citing *Birmingham v. Sogen–Swiss Int'l Corp. Retirement Plan*, 718 F.2d 515, 521–22 (2d Cir. 1983) (a plan must designate a "named fiduciary" so that responsibility for managing and operating the plan—and liability for mismanagement—are focused with a degree of certainty); *Brandt v. Grounds*, 687 F.2d 895, 897 (7th Cir. 1982).[17]

## IV. ON THE LOSS OF VALUE CLAIMS FROM 2013 TO 2017, THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT FOR PLAINTIFFS ON THE FIDUCIARY STATUS OF EILERMANN AND ARRI.

"An action by a corporate officer who is also a plan fiduciary triggers ERISA standards where two conditions exist: the plan's assets include employer stock and the officer's decision is one from

---

[17] McBride Defendants also argue that Eilermann and Arri cannot be fiduciaries with respect to the 2013 Recapitalization because "a corporation's existence is separate from that of its officers and directors and may be disregarded only under narrow circumstances." MB Opp'n at 3 citing *United States v. N. States Invs., Inc.*, 670 F. Supp. 2d 778, 786 (N.D. Il. 2009). The *N. States Invs.* case is irrelevant as it involved no ERISA issues and only decided the narrow issue of whether federal tax liens attach to property held by the taxpayer's "alter ego." *Id.* McBride Defendants also mischaracterize the principle of law from the case which is not that "[A] corporation is presumed to be separate and distinct from its officers, shareholders, and directors" but that "While a corporation is presumed to be separate and distinct from its officers, shareholders, and directors, it may be the alter ego of another when there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." *United States v. N. States Invs., Inc.*, 670 F. Supp. 2d 778, 786 (N.D. Il. 2009) citing *Judson Atkinson Candies v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008).

which he could directly benefit." Dkt. 154 at 18. During 2014–2017, Eilermann and Arri were corporate officers, company directors, and fiduciaries to the Plan, and the only people who could and did act on behalf of MS Companies, MS Management and MS Capital, the named fiduciaries and plan administrators. Pl. Br. at 37 citing PAF ¶¶ 6–8, 11–16, 19–25, 28. Defendants admit Plaintiffs' undisputed facts showing the roles and functions of Eilermann and Arri, and the other McBride Defendants. DRF ¶¶ 6–8, 11–16, 19–24.

The Plan's sole asset was employer stock. Pl. Br. at 37 citing PRF ¶¶ 4, 6. Eilermann and Arri directly benefitted from their discretionary compensation decisions by awarding themselves millions of dollars in compensation from an ESOP-owned company. *Id.* citing PAF ¶¶ 59, 63–64, 108–114. Therefore, they are fiduciaries for their compensation decisions. And their "obvious self-dealing" "run[s] contrary to the duties of loyalty… in ERISA." *Id.* citing Dkt. 154 at 18 (quoting *Johnson v. Courtier*, 572 F.3d 1067, 1077 (9th Cir. 2009); *Svigos v. Wheaton Secs., Inc.*, No. 17-4777, 2018 WL 587190, at *8 (N.D. Il. Jan. 29, 2018); *Spires v. Schools*, 271 F. Supp. 3d 795, 803 (D.S.C. 2017).

McBride Defendants don't seriously dispute the facts asserted by Plaintiffs. Instead, they make legal arguments based on the DOL's "Plan Asset Regulation." The regulation says when a plan owns stock in an operating company the plan's assets are the shares, not the assets of the operating company. 29 C.F.R. § 2510.3-101(a)(2). The Plan Asset Regulation has no bearing on Counts VIII, IX, and X.

First, it is critical to understand that the plan asset regulation goes to prohibited transactions in plan assets under ERISA § 406, not to breach of duty under § 404. *See* Pl. Br. at 39. Plaintiffs allege breach of duty claims, not prohibited transaction claims, arising from the 2013–2017 loss in value. As discussed below, McBride Defendants ignore this critical distinction to evade this Court's prior ruling applying that ERISA's fiduciary standards applied to Counts VIII, IX, and X. Dkt. 154 at 18–19. As the Ninth Circuit explained in *Johnson*:

> *Where, as here, an ESOP fiduciary also serves as a corporate director or officer, imposing ERISA duties on business decisions from which that individual could*

11

> *directly profit does not to us seem an unworkable rule*. To the contrary, our holding
> merely comports with congressional intent in establishing ERISA fiduciary duties as "the
> highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir.1996) (quotation
> omitted). To hold otherwise would protect from ERISA liability obvious self-dealing, as
> Plaintiffs allege occurred here, to the detriment of the plan beneficiaries.

*Johnson,* 572 F.3d at 1077) (emphasis added).

McBride Defendants argue the Court should ignore the fiduciary status test it adopted, cited

above, because the Ninth Circuit decision in *Johnson* involved a company in liquidation, not an

"operating company" governed by the Plan Asset Regulation. MB Opp'n at 8–9. But in *Johnson*,

the Ninth Circuit did not consider liquidation to be dispositive to fiduciary status. *Johnson,* 572 F.3d at

1077. Other courts have rejected McBride Defendants' interpretation. *See e.g., Fernandez v. K-M Indus.*

*Holding Co.*, 646 F. Supp. 2d 1150, 1155 (N.D. Cal. 2009) ("The court's decision [in *Johnson*] did not

turn on [liquidation]."). As Judge Wood of this District explained, even if an ESOP-owned company

is an operating company, *Johnson*'s standard applies. *McMaken v. GreatBanc Tr. Co.*, No. 17-4983, 2019

WL 1468157, at *6 (N.D. Il. Apr. 3, 2019). Judge Wood "agree[d] with the majority [of court decision]

that the indirect imposition of costs on the Plan is a cognizable harm for a claim for breach of fiduciary

duty." *Id.*; *see also Svigos*, 2018 WL 587190, at *8 (declining to dismiss § 404 claims under the Plan Asset

Regulation because "Plaintiff alleges a sufficiently close relationship between the Defendants, their

responsibilities with respect to the Plan, their positions at Wheaton, the management of the Plan, and

the management of Plan assets to support the inference that Defendants acted as plan fiduciaries when

they allegedly engaged in self-dealing transactions"); *Wool,* 2010 WL 11448099, at *7 (plaintiffs

adequately alleged officers of ESOP-owned company were fiduciaries where "the Transaction was a

business decision that resulted in substantial pecuniary gain for" the officers).[18]

---

[18] In *Wool*, the court applied the Plan Asset Regulation to bar the plaintiffs' prohibited transaction claims
because the plaintiffs did not allege facts showing that ESOP assets were "compromised" through the alleged
prohibited transaction. *Wool*, 2010 WL 11448099, at *8, citing *Johnson*, 572 F.3d at 1080. But, once again,
Plaintiffs here do not allege a prohibited transaction in Counts VIII, IX, and X. McBride Defendants' other

McBride Defendants also misrepresent the import of the *Spires* decision. The "dissolution" issue was irrelevant to the court's analysis on breach of fiduciary duties under ERISA § 404:

> According to the Piggly Wiggly Defendants, the corporate acts of corporate management are not subject to ERISA's fiduciary standards even if an ESOP owns the company. The Court agrees. ***Mismanagement or malfeasance by the executives of an operating company is not in itself a breach of fiduciary duty under ERISA. But in this case, the alleged managerial malfeasance is not the alleged breach of fiduciary duty. The alleged breach of fiduciary duty is the failure of the Plan fiduciaries to take action to protect Plan assets by responding to managerial malfeasance that depleted the Plan assets of most of their value.*** Plaintiffs allege the Fiduciary Defendants failed to take action because they placed their personal interest in self-dealing with Company assets above their fiduciary duty to protect the value of Plan assets. Those allegations are sufficient to state a claim under 29 U.S.C. § 1109 for violation of the fiduciary duties imposed by 29 U.S.C. § 1104(a)(1).

*Spires*, 271 F. Supp. 3d at 802–03.[19]

McBride Defendants also argue *Johnson* did not abrogate the Plan Asset Regulation. This is a red herring; the regulation does not apply to Plaintiffs' breach of duty claims. The authorities cited by McBride Defendants apply the Plan Asset Regulation only to ERISA § 406 and § 410 claims, not ERISA § 404 claims. *Spires*, at 802–804; 805–809 (considering regulation as to 406 claims, but not 404 claims); *Wool*, 2010 WL 11448099, at *7–8 (applying regulation to 406 claims); *Harris*, 2013 WL 1136558, at *3 applying regulation to 410 claims); *See also,* Pl. Br. at 39. McBride Defendants ignore this critical distinction.[20]

---

case on this issue, *Harris v. GreatBanc*, No. 12–1648, 2013 WL 1136558, at *3 (C.D. Cal. Mar. 15, 2013), addressed the viability of claims under ERISA § 410, not § 404, and had nothing to do with self-dealing compensation.

[19] To the extent the Plan Asset Regulation and the company's dissolution status impacted the court's analysis, it did so only as to the prohibited transaction claims, underscoring Plaintiffs' argument that the Plan Asset Regulation has no place in assessing Plaintiffs' fiduciary breach claims. *Id.* at 806–809.

[20] McBride makes an odd argument that Plaintiffs "implicitly concede the only way to encompass excessive cash compensation claims into an ERISA action would be to sue a fiduciary for failure to bring a derivative action." MB Opp'n at 11, n.15 citing *Johnson* for this premise. Not true. In *Johnson*, for example, the plaintiffs alleged five separate ways in which defendant Couturier breached his fiduciary duties to the ESOP (failing to bring derivative suit was just one of them). The core allegation of fiduciary breach in *Johnson* was that "Couturier and Johanson approved each of these agreements while acting as ERISA fiduciaries. By engaging in these acts of self-dealing, they breached their duty of loyalty to the ESOP participants and permitted the ESOP's equity interest to be massively diluted. These acts are clearly within the jurisdiction of ERISA." *See* Answering Brief of Appellees to Briefs Filed by Appellants Clair R. Couturier, Jr. and David R. Johanson, *Johnson v. Couturier*,

So then, McBride Defendants argue "Plaintiffs have failed to prove "necessary" "obvious self-dealing." MB Opp'n at 10–11. McBride Defendants invent this legal standard. A "necessary" showing of "obvious" self-dealing is not what this Court, *Johnson*, *Spires*, *Svigos*, or *Wool* require. They also argue Plaintiffs do not prove the excess stock distributions they alleged in the complaint. MB Opp'n at 10–11. This, again, is a red herring. Plaintiffs prove Eilermann and Arri had unfettered discretion to decide their wage and bonus compensation and used that discretion to award themselves millions of dollars in cash, which impaired and harmed the value of the Plan's stock.[21] Plaintiffs meet the Court's fiduciary status test. Dkt. 154 at 18.

Finally, McBride Defendants argue the "undisputed material facts" prove McBride was an "operating company." MB Opp'n at 12–13. As noted above, this is irrelevant to Plaintiffs' ERISA § 404 claims. Even so, the Court should strike the "operating company" affirmative defense because McBride Defendants first raised it in their summary judgment motion. *See* Pl. Br. at 38, FN 28. The operating company exception issue is an affirmative defense under Seventh Circuit law: "[a]n affirmative defense is a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true." *Bell v. Taylor*, 827 F.3d 699, 705 (7th Cir. 2016). Affirmative defenses cannot be raised for the first time at summary judgment without prejudicing the opposing party who has not been on notice and not pursued discovery accordingly.

---

No. 08-17369, Dkt. 28-1, at 40, 2009 WL 4089585 (9th Cir. Jan. 9, 2009). Likewise, the DOL amicus brief in *Johnson* stated, without qualification, that: "Defendants are incorrect that challenges to the amount of corporate compensation fall outside of ERISA altogether…for one thing, all of the defendants in this case were fiduciaries and are alleged to have directly participated in breaches when acting as ERISA fiduciaries, including by signing off on transactions on behalf of the Plan, and advantaging themselves at the expense of the Plan." Brief for the Sec. of Labor as Amicus Curiae Supporting Appellees and Requesting Affirmance at 22, *Johnson v. Couturier*, No. 08-17631, 2009 WL 2444302 (9th Cir. Jan. 30, 2009).

[21] McBride similarly seeks to draw the same distinction in *Svigos* about the extent of the excessive compensation affecting the fiduciary status analysis. But in *Svigos*, like *Johnson*, the court reasoned fiduciary status existed because the executive's self-dealing wrongfully depleted the company's assets, in turn diminishing the value of the stock—the ESOP's asset. The degree of excess compensation did not factor into the analysis. *Svigos*, 2018 WL 587190, at *7.

*See Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 479 (7th Cir. 2019) (ruling that district court abused its discretion in considering affirmative defense that was not asserted prior to summary judgment).

McBride Defendants respond by arguing the defense was encompassed in its Fourth Affirmative Defense, "failure to state a claim," in any event. *See* MB Opp'n at 13, FN 21. Nonsense. The "operating company" exception does not go to whether Plaintiffs can prove any element of their fiduciary breach claims (fiduciary status, duty, breach, causation, and loss) on Counts VIII, IX, and X. Rather, as McBride Defendants contend, it is a defense claiming the conduct alleged is not subject to ERISA at all, making it an affirmative defense under the rule set forth in *Taylor*. Even if the operating company exception could be encompassed in the failure to state a claim defense, that Fourth Affirmative Defense plainly did not put Plaintiffs on notice that McBride Defendants would raise a purportedly dispositive operating company defense. The failure to state a claim defense is nothing more than a general denial of liability that does not provide notice. Otherwise, defendants could simply raise that one defense and leave plaintiffs guessing about what affirmative defenses are actually in play. *See Struve v. Electrolux Home Prods., Inc. Life Ins. Plan*, No. 17-8158, 2019 WL 918503, at *5–6 (N.D. Il. Feb. 25, 2019) ("an affirmative defense must comply with Rule 8(a) by providing 'a short and plain statement' of the nature of the defense," and most courts apply "the *Twombly* and *Iqbal* pleading standard to the pleading of affirmative defenses") (internal citations omitted).

## V. ON THE 2017 TRANSACTION, THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT FOR PLAINTIFFS

### A. The Court Should Grant Partial Summary Judgment for Plaintiffs and against GreatBanc (Count XI).

Plaintiffs move for partial summary judgment on prohibited transaction claims against GreatBanc in Count XI, alleging violations of 29 U.S.C. § 1106(a)(1)(A) and (D). Pl. Br. at 46. To win this claim, Plaintiffs must prove: (1) GreatBanc was a fiduciary with authority to cause the Plan to engage in the 2017 Transaction; (2) MS Capital, Eilermann, and Arri were parties in interest to the

Plan; (3) GreatBanc caused the Plan to sell stock to MS Capital as to ERISA § 406(a)(1)(A); and (4) GreatBanc caused a transaction which resulted in the use of Plan assets for the benefit of Eilermann and Arri as to ERISA § 406(a)(1)(D). 29 U.S.C. § 1106(a)(1)(A) & (D). Because Plaintiffs prove these elements, the Court should grant summary judgment on Plaintiffs' prima facie case in Count XI.

- GreatBanc admits it was Trustee for the Plan at the time of the 2017 Transaction. *See* DRF ¶ 4. GreatBanc also admits Arri retained GreatBanc to serve as trustee to evaluate and authorize the 2017 Transaction. DRF ¶ 146. GreatBanc thus had authority and control over the Plan's stock when it entered into the agreement that redeemed the Plan's shares of MS Capital. Pl. Br. at 47 citing PRF ¶ 145. This proves the first element of each prohibited transaction—GreatBanc was the fiduciary authorized to execute the transaction for the Plan.

- It is undisputed that MS Capital, Eilermann and Arri were parties in interest to the Plan in the 2017 Transaction. Pl. Br. at 47 citing PAF ¶¶ 9–14, 23–24. This proves the second element of each prohibited transaction.

- GreatBanc caused the Plan to engage in the 2017 Transaction when it signed, with Eilermann, the Redemption Agreement whereby the Plan sold its MS Capital stock to MS Capital, a party in interest. Pl. Br. at 47 citing PRF ¶ 145. This proves the third and final element of Plaintiffs' ERISA § 406(a)(1)(A) claim as to MS Capital.

- GreatBanc caused the Plan to engage in the 2017 Transaction, which transferred property of the Plan—stock in MS Capital—to MS Capital. Pl. Br. at 48 citing PRF ¶ 145. This proves the third and final element of Plaintiffs' ERISA § 406(a)(1)(D) claim as to MS Capital.

- GreatBanc caused the Plan to engage in the 2017 Transaction, benefiting Eilermann and Arri because they had subscription agreements to purchase the MS Capital stock from the company and immediately after the 2017 Transaction became the sole owners of MS Capital stock. Pl. Br. at 48 citing PRF ¶ 149. This proves the third and final element of Plaintiffs' ERISA § 406(a)(1)(D) claim as to Eilermann and Arri.

GreatBanc claims it proves the ERISA § 408(e) exemption applies. GB Opp'n at 20–21. Not so. There are numerous disputed material facts on the fair market value of Plan's stock as of the 2017 Transaction. Pl. Br. at 48–51. Further, fair market value is the province of experts. The valuation experts in this case dispute fair market value. That dispute cannot be resolved at summary judgment, yet Defendants' fair market value argument depends on this Court striking Mr. Van Vleet's opinions in their entirety when there is no such pending motion. GB Opp'n at 20. Moreover, determining in

16

good faith the fair market value of private company stock in a sale transaction begs for a market test. Defendants' own expert testified that as an independent director of an ESOP-owned company selling itself to a third party, he sought competitive bids to arrive at a "pretty great price" above the prior year's valuation and higher than the first bid received. PRF ¶ 126 (5). This is even more important when insiders who control the projections are buying the company. PRF ¶ 142. But McBride Defendants objected to marketing the company and GreatBanc acquiesced. PRF ¶¶ 126–127. That is not good faith.

### B. The Court Should Grant Partial Summary Judgment for Plaintiffs and against MS Capital, Eilermann, and Arri (Count XVI).

As detailed immediately above, Plaintiffs prove two elements of the Count XVI knowing participation claim: (1) a § 406(a)(1)(D) prohibited transaction occurred and (2) the party in interest status of Eilermann and Arri with respect to the 2017 Transaction Pl. Br. at 48. The Court should grant partial summary judgment on those elements.

McBride Defendants argue summary judgment is inappropriate because a presumption of good faith applies and the burden is on Plaintiffs to prove actual or constructive knowledge. MB Opp'n at 17 citing *Neil v. Zell*, 753 F. Supp. 2d 724, 731 (N.D. Il. 2010). However, MS Capital, Eilermann, and Arri had constructive knowledge of circumstances that rendered their reliance on the 2017 Transaction valuation determinations unreasonable and should have placed them on notice that the transaction could be unlawful. Pl. Br. at 56–57; PAF ¶¶ 163, 170–175.[22]

---

[22] McBride Defendants apply *Keach v. U.S. Tr. Co.*, 244 F. Supp. 2d 968, 975 (C.D. Ill. 2003) to assert they did not knowingly participate. MB Opp'n at 17. But this case is unlike *Keach* where the court stressed that defendant, through the introduction of evidence, could credibly assert to have relied upon "competent professional advisors" and their determinations to ensure the transaction in question was lawful. *Id.* at 975–976. McBride Defendants introduce no such evidence here. MB Opp'n at 17 (defending summary judgment based upon application of burden shifting standard without reference to any record evidence regarding their knowledge).

## VI.     ON THE FAILURE TO MONITOR GREATBANC, THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT FOR PLAINTIFFS

The McBride Defendants do not dispute their fiduciary status to monitor GreatBanc. *See* MB Opp'n at 20. The dispute concerns whether McBride Defendants adequately monitored GreatBanc. McBride rehashes its argument that "[c]ourts have held that holding telephonic meetings, engaging in email correspondence, and developing a general understanding of the trustee's duties and work satisfy the limited duty to monitor." MB Opp'n at 20 citing *Fish,* 2016 WL 5923448, at *53. *Fish* does not stand for the principle that the duty to monitor can be satisfied by sporadic telephone calls, email correspondence, and in-person meetings as McBride claims. *See* Pl. Br. at 57–59 (describing the diligent monitoring of GreatBanc in *Fish* that well surpasses the undisputed facts here). Moreover, McBride Defendants elsewhere acknowledge that they did not assess GreatBanc's investigation. *See e.g.,* PAF ¶¶ 90, 167–169; PRF ¶¶ 66–67, 89–90, 115, 126, 142.

## VII.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON CERTAIN OF DEFENDANTS' AFFIRMATIVE DEFENSES.

Defendants have the burden of establishing their defenses, but they do not substantively respond to any of Plaintiffs' arguments on certain affirmative defenses or otherwise attempt to meet those burdens. *See* MB Opp'n at 21, FN 25 and GB Opp'n at 21, FN 13. Plaintiffs have moved for summary judgment on the defenses of waiver (GreatBank's Fifth and McBride Defendants' Sixth Affirmative Defenses), estoppel (All Defendants' Sixth Affirmative Defenses), and ratification, acquiescence and/or consent (All Defendants' Seventh Affirmative Defenses). Dkt. 267 at 73. Having not marshalled any in opposition, Defendants cannot defeat Plaintiffs' Motion for Summary Judgment on them. *See Brundle v. Wilmington Tr., N.A.*, No. 15-1494, 2016 WL 6542718, at *16 (E.D. Va. Nov. 3, 2016) ("*Brundle I*") (granting plaintiff's motion for summary judgment on waiver, release, accord, and satisfaction because defendant did not dispute motion).

## VIII.  DEFENDANTS' IMPROPER RESPONSES TO PLAINTIFFS' MATERIAL FACTS SHOULD BE STRICKEN

Across their responses to Plaintiffs' Statement of Material Facts, Defendants lodge boilerplate

form objections that (1) they disagree with Plaintiffs' facts; (2) Plaintiffs' facts present legal argument

(3) Plaintiffs' facts present "incomplete" evidence; and (4) Plaintiffs' expert testimony cited in

Plaintiffs' facts have supposedly been "discredited and disproven."[23] These form objections are

widespread. Indeed, Defendants label at least 59 of Plaintiffs' statements of fact as improper for stating

"legal conclusions" or "legal argument" without explaining why any of these statements of fact make

a legal argument or are otherwise improper statements of law. Objections that "the excerpt is

incomplete" are also littered throughout Defendants' response (*see e.g.*, DRF ¶¶ 53–54, 61, 66–68, 70–

71, 74, 77)[24] as well as objections that state Defendants' "disagreement" with facts relevant to the 2013

Recapitalization. *See e.g.,* DRF ¶¶ 46–47, 49–55, 64, 69, 71–72, 80–81. These "objections" are not

permitted in the Seventh Circuit and should result in the facts being deemed admitted. *See Curtis v.*

*Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (holding that district court properly deemed

facts admitted where opposing party failed to comply with Local Rule 56.1 by offering boilerplate

objections rather than providing a clear denial and specific citations to evidence in the record). A party

---

[23] GreatBanc repeatedly asserts that the Court should not consider Plaintiffs' expert testimony because Plaintiffs' experts have been supposedly "discredited and disproven" by Defendants' experts. *See e.g.,* DRF ¶¶ 38, 54, 57–59, 61–63, 66, 102. Defendants' citations purporting to show their experts "discredit" Plaintiffs' experts merely cite Defendants' expert reports generally without pinpoint citations showing how Plaintiffs' experts have been supposedly "discredited." *See* DRF ¶ 38, 54, 66, 102–103, 111, 116–118, 121–122, 124, 150, 152, 177–180. GreatBanc also relies on Defendants' expert testimony in support of its motion for summary judgment. *See* Dkt. 258 at 4–5, 13–14, 19–20). GreatBanc could, but elected not to, move to exclude any of Plaintiffs' expert testimony at summary judgment. The Court may properly consider expert opinions and computations at summary judgment and at the summary judgment stage the Court should not make credibility determinations as to which expert(s) are more credible than the other. *See Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 379 F. Supp. 2d 968, 985 (N.D. Il. 2005) (plaintiff and defendant relied upon expert testimony in their undisputed statement of facts and the court refrained from making credibility determinations of the experts' testimony because credibility determinations go to the weight of the evidence).
[24] In lodging an objection that evidence is supposedly incomplete, GreatBanc is simply telling the factfinder to go look at the rest of a document to verify accuracy. This is not permitted. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) (striking statement of facts that lacked direct citation to easily identifiable support in the record and explaining that "Judges are not like pigs, hunting for truffles buried in [the record]").

19

opposing summary judgment must admit or deny each proposed fact, and "in the case of any disagreement" must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Il. L.R. 56.1(b)(3)(B); *see Roberts v. Advocate Health Care*, 119 F. Supp. 3d 852, 854 (N.D. Il. 2015) (denying a fact that has evidentiary support "does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment"); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Il. 2000) ("A general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial").

## IX.  CONCLUSION

For the reasons stated above and in Plaintiffs' brief, Plaintiffs' Motions for Partial Summary Judgment should be granted.

Dated: April 4, 2022                                  Respectfully submitted,

By: */s/ Mark G. Boyko*
Mark G. Boyko (IL #6288036)
mboyko@baileyglasser.com
Bailey & Glasser LLP
34 N. Gore Ave. – Suite 102
Webster Groves, MO 63119
Telephone: (314) 863-5446
Facsimile: (314)-863-5483

Patrick O. Muench (IL #6290298)
pmuench@baileyglasser.com
Bailey & Glasser LLP
318 W. Adams St., Ste. 1606
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (202) 463-2103

Ryan T. Jenny
rjenny@baileyglasser.com
Gregory Y. Porter (admitted *pro hac vice*)
gporter@baileyglasser.com
Bailey & Glasser LLP
1055 Thomas Jefferson St., NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Thomas E. Clark Jr. (IL #6294921)
tclark@wagnerlawgroup.com
Jordan D. Mamorsky (IL #6337130)
jmamorsky@wagnerlawgroup.com
The Wagner Law Group, PC
190 South LaSalle Street, Suite 2100
Chicago, IL 60603
Telephone: (314) 236-0065
Facsimile: (314) 236-5743

*Attorneys for Plaintiffs*

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 4th day of April, 2022, a copy of the foregoing document was

served on all counsel of record via ECF.

/S/ *MARK G. BOYKO*

Mark G. Boyko