**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **GREGORY GODFREY, et al.,** | **Case No. 1:18-cv-07918** |
| **Plaintiffs,** | **Judge Matthew F. Kennelly** |
| **v.** | **Magistrate Judge Michael T. Mason** |
| **GREATBANC TRUST COMPANY, et al.,** | |
| **Defendants.** | |

## PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF SETTLEMENT

Plaintiffs Gregory Godfrey ("Godfrey"), Jeffery Sheldon ("Sheldon"), and Debra Ann Kopinski ("Kopinski") (collectively "Plaintiffs"), as representatives of a Class of similarly situated persons, and on behalf of the McBride & Son Employee Stock Ownership Plan (the "Plan") hereby move for an order preliminarily approving a class action settlement agreement, approving notice to the Settlement Class,[1] and setting a date for a fairness hearing. The proposed Settlement is between Plaintiffs and Defendants McBride & Son Capital, Inc. ("MS Capital"), McBride & Son Management Company, LLC ("MS Management"), John F. Eilermann, Jr. ("Eilermann"), Michael D. Arri ("Arri") (collectively "McBride Defendants"), and Defendant GreatBanc Trust Company ("GreatBanc").[2]

---

[1] If not defined in this document, capitalized terms have the meaning given to them in the Class Action Settlement Agreement.

[2] McBride Defendants and GreatBanc are collectively referred to herein as Defendants. Plaintiffs and Defendants are collectively referred to herein as the "Parties."

## I.      INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1000, *et seq.,* ("ERISA") matter for a gross settlement amount of $16,500,000 that Defendants will pay into a common fund for the benefit of Class Members. This is a significant recovery for the Settlement Class and falls well within the range of negotiated settlements in similar ERISA cases. No portion of the settlement payment is a tax or penalty under ERISA or the Internal Revenue Code of 1986 as amended. Should the Court grant final approval, every eligible member of the class will receive their portion of the Net Settlement Fund according to a Plan of Allocation.

The proposed settlement (the "Settlement") satisfies all of the criteria for preliminary approval. The Settlement provides an excellent result for the class under the circumstances. For these reasons, discussed in more detail below, Plaintiffs request that the Court: (a) grant preliminary approval of the Settlement Agreement attached as Exhibit A to the Declaration of Mark G. Boyko (the "Boyko Decl."); (b) approve the proposed Class Notice attached as Exhibit A to the Proposed Preliminary Approval Order; (c) appoint ILYM Group, Inc. ("ILYM") as the Settlement Administrator; (d) approve the Plan of Allocation attached as Exhibit 2 to the Settlement Agreement; (e) appoint ILYM as Escrow Agent; (f) set a date for a Fairness Hearing, and (g) set a date for a hearing on Class Counsel's motion for fees and costs and the payment of a Service Award to Plaintiffs.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.      Background

This is a class action brought on behalf of participants and beneficiaries of the Plan that alleges McBride Defendants and GreatBanc violated ERISA in connection with three

transactions: (1) a Recapitalization in late 2013 of MS Companies, Inc. to a partnership (the "2013 Recapitalization"); (2) the payment of excessive compensation to executives, including the distribution of Class B and Class C Units of MS Companies, LLC from 2013–2017, thereby diluting the value of the Plan (the "Compensation Decisions"); and (3) the purchase of all the shares of MS Capital stock held by the Plan at a below fair market price of $187 for a total of consideration of $16,493,664, which consisted of 80,094.3643 shares for $14,977,646 in cash and 8,107.0476 shares for loan forgiveness (the "2017 Transaction").

In Counts I and II of the Second Amended Complaint, Dkt. 127 (the "SAC"), Plaintiffs allege that GreatBanc, MS Management, Eilermann, and Arri (1) violated ERISA § 406(a) in connection with the 2013 Recapitalization by causing the Plan to directly transfer property of the Plan, MS Companies, Inc., to MS Capital and causing the Plan to indirectly transfer property of the Plan, MS Companies, Inc. stock, to and for the use and benefit of Eilermann and Arri and (2) violated ERISA § 406(b) in connection with the 2013 Recapitalization by causing the Plan to exchange MS Companies, Inc. stock for MS Capital stock for less than adequate consideration, which greatly benefited MS Management, MS Capital, Eilermann, and Arri as they ultimately took control and ownership of MS Companies, Inc., to the substantial detriment of the Plan.[3]

In Counts III through VI of the SAC, Plaintiffs allege that Defendants GreatBanc, MS Management, Eilermann and Arri violated their fiduciary duties to the Plan pursuant to ERISA § 404 and are personally, and jointly and severally, liable under ERISA §§ 405(a), 409(a), and 502(a)(2) for, among other things, causing the Plan to exchange MS Companies, Inc. stock with MS Capital for MS Capital stock for less than adequate consideration and failing to make a good faith determination of the fair market value of MS Companies, Inc. stock and MS Capital stock.

---

[3] In describing the Counts I-XVII below, Plaintiffs have omitted the parties dismissed from various claims pursuant to the Court's August 19, 2020 order. Dkt. 154.

Plaintiffs further allege that Eilermann and Arri knowingly participated in the fiduciary breaches and prohibited transactions associated with the 2013 Recapitalization in violation of ERISA § 502(a)(3) because they had actual knowledge of the circumstances that made the 2013 Recapitalization unlawful and proceeded to knowingly participate in the fiduciary breaches in connection with the 2013 Recapitalization.

In Counts VII through X of the SAC, Plaintiffs allege that Defendants GreatBanc Eilermann, and Arri violated their fiduciary duties to the Plan pursuant to ERISA § 404 and are personally, and jointly and severally, liable under ERISA §§ 405(a), 409(a), and 502(a)(2) for, among other things, failing to prevent the alleged excessive compensation paid from 2013 to 2017 which diluted the value of MS Capital stock. Plaintiffs allege that Eilermann and Arri knowingly participated in the fiduciary breaches associated with the Compensation Decisions in violation of ERISA § 502(a)(3) because they had actual knowledge of the circumstances that made the compensation unlawful and  knowingly participated in the fiduciary breaches.

In Counts XI and XII of the SAC, Plaintiffs allege that Defendants GreatBanc and MS Capital violated ERISA § 406(a) in connection with the 2017 Transaction by causing the Plan to sell property of the Plan, MS Capital stock, to MS Capital for less than adequate consideration and ERISA § 406(b) in connection with the 2017 Transaction by causing the Plan to sell MS Capital stock to MS Capital at a price below fair market value which benefited MS Capital, Eilermann, Arri, Schindler, and Todt as they ultimately took control and ownership of MS Capital after the 2017 Transaction, to the detriment of the Plan.

In Counts XIII through XVI of the SAC, Plaintiffs allege that Defendants GreatBanc and MS Capital, as fiduciaries to the Plan in connection with the 2017 Transaction, violated their fiduciary duties to the Plan pursuant to ERISA § 404 and are personally, and jointly and

4

severally, liable under ERISA §§ 405(a), 409(a), and 502(a)(2) for, among other things, causing the Plan to sell MS Capital stock to MS Capital for less than adequate consideration and at a price below fair market value in the 2017 Transaction and failing to make a good faith determination of fair market value of MS Capital stock in the 2017 Transaction. Plaintiffs further allege that Eilermann and Arri knowingly participated in the fiduciary breaches and prohibited transactions associated with the 2017 Transaction in violation of ERISA § 502(a)(3) because they had actual knowledge of the circumstances that made the 2017 Transaction unlawful and knowingly participated in the fiduciary breaches.

In Count XVII of the SAC, Plaintiffs allege that Defendants MS Capital, Eilermann and Arri, as fiduciaries to the Plan, violated ERISA § 404 when they failed to properly monitor GreatBanc as trustee in connection with the 2013 Recapitalization, Compensation Decisions, and 2017 Transaction and failed to remove GreatBanc as trustee after their actions and fiduciary breaches.

Defendants deny all of these allegations; deny liability; and have vigorously defended themselves in the Lawsuit. Defendants do not admit wrongdoing of any kind regarding the 2013 Recapitalization, the Compensation Decisions, or the 2017 Transaction.

### B. Discovery

The Parties have diligently prosecuted this action and have engaged in robust discovery. They propounded and responded to written discovery. Boyko Decl. ¶ 10. The Parties engaged in extensive discovery including exchanging and responding to Interrogatories and Requests for Documents. *Id*. The Parties' counsel received and reviewed approximately 100,000 pages of discovery produced by the Parties and various third Parties. *Id*. Class Counsel retained and consulted with four experts, who prepared detailed reports and analyses on valuation, due

diligence, and compensation. *Id*. Defendants' counsel likewise retained and consulted with five experts, who prepared reports on similar topics. *Id*. Each side deposed all the experts on the other side. *Id*. The Parties also took fourteen fact depositions of eleven different witnesses. *Id*. Plaintiff took the depositions of four current or former McBride executives, one non-executive McBride employee, one GreatBanc executive, McBride's investment banker, and GreatBanc's financial advisor. *Id*. All of these depositions were attended by Defendants' counsel, who also examined some of those witnesses. *Id*. Defendants took the deposition of the three named Plaintiffs. *Id*.

### C. Motion Practice

During the course of this litigation, the Parties have engaged in extensive motions practice. Plaintiffs filed their first Complaint on November 30, 2018 (*see* Dkt. 1), First Amended Complaint (the "FAC") on March 29, 2019 (*see* Dkt. 36), and the SAC on February 26, 2020. *See* Dkt. 127. McBride Defendants filed Motions to Dismiss the Complaint, FAC, and SAC (*see* Dkts. 23, 48, 111) and GreatBanc filed Motions to Dismiss the Complaint and the SAC. Dkts. 26, 114. The Court issued an opinion on September 26, 2019 that granted in part and denied in part McBride Defendants' motion to dismiss the FAC (Dkt. 74) and issued an opinion on August 19, 2020 that granted in part and denied in part McBride Defendants' motion to dismiss the SAC and denied GreatBanc's motion to dismiss the SAC. Dkt. 154. The Parties also litigated several discovery-related motions. *See* Dkts. 30, 82, 85, 180, 191, 215.

Plaintiff filed a Motion for Class Certification on September 16, 2020. Dkt. 158. Defendants filed a joint opposition to this Motion on October 7, 2020. Dkt. 166. The Court granted Plaintiffs' Motion and certified the following Class under Rule 23(b)(1):

> All participants in the McBride & Son Employee Stock Ownership Plan, and the beneficiaries of such participants, at any time between December 31, 2013 and December 15, 2017. Excluded from the proposed Class are (1) Defendants Eilermann and Arri, their immediate families, and their legal representatives, successors, and assigns, and (2) any

owners of Class B and Class C Units of McBride & Son Companies, LLC ("MS Companies, LLC") during the class period including Jeffrey Berger, Jeffrey Schindler, and Jeffrey Todt.

Dkts. 205, 207.

The Parties filed motions to exclude certain evidence in advance of summary judgment briefing. On June 18, 2021, Defendants filed a Motion to Strike portions of Plaintiff's expert Daniel VanVleet's testimony. Dkt. 223. Plaintiffs filed an opposition to this Motion on June 28, 2021. Dkt. 231. The Court granted Defendants' Motion on August 30, 2021. Dkt. 248. On June 24, 2021, Plaintiffs filed a Motion to Exclude Evidence Pursuant to Rule 37(c)(1). Dkt. 227. Defendants filed an opposition to this Motion on July 6, 2021. Dkt. 242. On August 30, 2021, the Court denied Plaintiffs' Motion but permitted additional discovery. Dkt. 248.

Defendants filed Motions for Summary Judgment on November 12, 2021. Docs. 257, 260. Plaintiffs filed a Partial Motion For Summary Judgment against McBride Defendants and GreatBanc on January 14, 2022. Docs. 265, 266. The Parties submitted extensive oppositions and replies to the Summary Judgment Motions and Partial Summary Judgment Motions, which were fully briefed as of April 4, 2022.

### D. The Parties' Settlement Efforts

The Parties attempted to resolve this matter with mediator Robert A. Meyer, Esq. of JAMS. Boyko Decl. ¶ 12. The Parties submitted mediation statements to Mr. Meyer. *Id*. Counsel for the Parties attended a one-day in-person and partly virtual mediation at the JAMS offices in New York on July 28, 2021. *Id*. The attendees vigorously engaged in the mediation process, during which the Parties' counsel each gave presentations to Mr. Meyer. *Id.* Despite much deliberation, discussion, and compromise, the Parties were not able to reach a resolution at that time. *Id.* Consequently, after summary judgment briefing was submitted by all side, the Parties

engaged in another all-day virtual mediation on April 7, 2022 with the same mediator. *Id.*
Vigorous negotiations continued between the Parties, facilitated by the continued involvement of
the mediator, resulting in the execution by the Parties of a settlement Term Sheet on April 18,
2022. *Id.*

## III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement include the following:

**A.  Class.** The Court has already certified the Settlement Class as follows:

All participants in the McBride & Son Employee Stock Ownership Plan, and the
beneficiaries of such participants, at any time between December 31, 2013 and December
15, 2017. Excluded from the proposed Class are (1) Defendants Eilermann and Arri, their
immediate families, and their legal representatives, successors, and assigns, and (2) any
owners of Class B and Class C Units of McBride & Son Companies, LLC ("MS
Companies, LLC") during the class period including Jeffrey Berger, Jeffrey Schindler,
and Jeffrey Todt.

Dkts. 205, 207.

**B.  Benefits to the Settlement Class.**

*Monetary relief.*  Defendants will pay a total of $16,500,000.00 ("Settlement Amount")
into the Settlement Fund Account. The Settlement Amount, less all (i) taxes (or reserves to pay
taxes), (ii) settlement administration fees, (iii) Court-approved attorneys' fees and expenses, and
(iv) Service Awards to the Plaintiffs, shall constitute the Net Settlement Fund. The Net
Settlement Fund will be distributed to members of the Settlement Class pursuant to the Plan of
Allocation.

**C.     Notice and Administration**. The Settlement Administrator, ILYM, shall be
responsible for disseminating Class Notice, establishing a website for key case documents,
establishing an interactive voice response system to respond to enquiries, and processing
payment instructions. The Settlement Administrator shall also implement the Plan of Allocation,

subject to oversight of Class Counsel, and determine the amounts to be allocated to members of the Settlement Class in accordance with the Plan of Allocation.  Each Class Member's share of the Net Settlement Fund ("Class Member Benefit") shall be determined through the following process:

    a.  McBride shall report to the Settlement Administrator the number of vested Shares[4] held by each Class Member as of the following dates:  December 31, 2013; December 31, 2014; December 31, 2015; December 31, 2016; and November 30, 2017.  The total of each participants' vested Shares as of December 31, 2013, December 31, 2014, December 31, 2015, December 31, 2016, and November 30, 2017 shall be called the Class Member's "Yearly Vested Shares." For purposes of the November 30, 2017 Yearly Vested Shares determination, participants who were cashed out of their ESOP accounts in October or November 2017 at the share price used in the 2017 Transaction will be deemed to have held on November 30, 2017 the greatest number of shares they held at any point from October 31, 2017 through November 30, 2017.

    b.  The Settlement Administrator shall, for each Class Member, calculate the sum of that Class Member's Yearly Vested Shares.  This sum shall be that Class Member's "Cumulative Vested Shares."

    c.  The Settlement Administrator shall calculate the grand total of all Class Members' Cumulative Vested Shares.  This sum shall be called the "Total Class Shares."

---

[4] Shares is defined as shares of McBride & Son Capital, Inc. stock held inside the ESOP from December 31, 2013 through November 30, 2017.

     d.   The Settlement Administrator shall, for each Class Member, divide the Class Member's Cumulated Vested Shares by the Total Class Shares. The resulting number shall be called that Class Member's "Class Member Percentage."

     e.   The Settlement Administrator shall, for each Class Member, multiply that Class Member's Class Member Percentage by the Net Settlement Fund amount. The resulting number shall constitute that Class Member's Class Member Benefit.

ILYM shall be responsible for establishing and maintaining a qualified settlement trust to hold the Settlement Amount. Pending the distribution of the Net Settlement Fund to the Class Members, ILYM shall invest the assets of the qualified settlement trust pursuant to the agreement between ILYM and Class Counsel. ILYM's summary of experience is Exhibit B to the Boyko Declaration.

### D.    Service Award to Plaintiff and Attorneys' Fees and Costs

Subject to Court approval, Class Counsel's fees, costs and expenses, and Service Award payments to Plaintiffs shall be paid from the Settlement Amount prior to distribution to the Class Members of the Net Settlement Fund as described in the Settlement Agreement. Plaintiffs may petition the Court for an award not to exceed $25,000 each in recognition of Plaintiffs' services as class representative. Each Plaintiff shall also be entitled to an allocation under this settlement as a Class Member. Class Counsel will petition the Court for an award of attorneys' fees and

expenses not to exceed $6,479,000 million ($5,500,000 for attorneys' fees[5] and $979,000 for expenses[6]).

### E. Release of Claims

Upon satisfaction of the conditions required by the Settlement Agreement, the Parties will release each other from claims related to the Lawsuit. The releases are set forth in greater detail in Article III of the Settlement Agreement.

### F. Notice and Proposed Schedule of Events

The Settlement Agreement provides that the Parties shall provide the Settlement Administrator with the names and last known addresses of Class Members for the purpose of providing notice of the proposed settlement.

The proposed Class Notice, Exhibit A to the Proposed Preliminary Approval Order, provides all the information necessary to inform the Class Members about the nature of the Lawsuit, the terms of the Settlement, including both monetary and prospective relief, and the procedures for entering an appearance to be heard or to object to the Settlement. In addition, Class Counsel will make available to Class Members key court documents, including the SAC, the Settlement Agreement, this Motion and preliminary approval papers, Plaintiffs' Motion for Award of Attorneys' Fees, and Plaintiffs' Motion for Final Approval via a website established and maintained by the Settlement Administrator. The Class Notice will be mailed by U.S. mail, first class. Class Members' last known addresses will be drawn from McBride's employment records and from those of the recordkeeper to the Plan's successor plan. Accordingly, it is

---

[5] The maximum fee to be sought by Class Counsel has been calculated under the standard set by *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 978-80 (7th Cir. 1992) ("*Synthroid II*"), which this Court has applied in several prior orders.
[6] As of preliminary approval, Class Counsel's expenses are $962,226.33. Class Counsel will incur additional expenses including for appearance at the preliminary approval and fairness hearings.

anticipated that valid mailing addresses for most of the Class Members will be readily accessible. For undelivered or returned mail to Class Members, the Settlement Administrator will engage in various, standardized processes to identify and locate Class Members.

Plaintiffs and Defendants agree to the schedule of events as described in the Proposed Preliminary Approval Order as subject to the Court's approval.

## IV.     ARGUMENT

### A.     The Court should grant preliminary approval of the Settlement because it is fair, reasonable and adequate.

#### 1.     The standards for preliminary approval.

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Judicial approval is required regardless of whether the action is certified for trial and later settled or is certified for purposes of settlement. Manual for Complex Litigation (Fourth) § 21.61 (2004). Ultimately, to approve the proposed settlement the Court must determine that it is fair, reasonable and adequate. *Kaufman v. Am. Express Travel Related Servs. Co., Inc.,* 877 F.3d 276, 283 (7th Cir. 2017).

Before a court approves a proposed settlement, notice must be provided to the class. Fed. R. Civ. P. 23(e)(1). The parties must provide the court with information sufficient to enable the court to determine whether to give such notice of the proposal to the class. *Id.* The court examines the information provided by the parties against a number of factors to determine whether notice should be given to the class. *Id.*

The 2018 Amendments to Rule 23, effective December 1, 2018, provide guidance to federal courts considering whether to grant preliminary approval of a class action settlement. Fed. R. Civ. P. 23(e), Committee Notes. "[I]n weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court

will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)). Therefore, although the factors cited in Rule 23(e)(2) "apply to final approval, the Court looks to them to determine whether it will likely grant final approval based on the information currently before the Court"—those factors are as follows:

> (A) the class representatives and counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

>> (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

>> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

*Id.* (citing Fed. R. Civ. P. 23(e)); *accord Hays v. Eaton Grp. Attorneys*, LLC, No. CV 17-88-JWD-RLB, 2019 WL 427331, at *4 (M.D. La. Feb. 4, 2019). Plaintiff will address each of these factors, many of which overlap, below, to the extent they are applicable. There is no separate agreement required to be identified under (C)(iv).

### 2. The Class Representatives and Class Counsel have adequately represented the Class.

Rule 23(e)(2)(A) looks to whether the representative parties have adequately represented the class. *See Snyder v. Ocwen Loan Servicing, LLC*, No. 14-8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019)*; Amchem Products v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2251, 138 L.Ed.

2d 689 (1997) (courts look at whether the representatives' interest are in any way antagonistic to or in conflict with those of the class members). Where, as here, the injuries allegedly suffered by the named Plaintiff are the same as those that the class is alleged to have suffered, the adequacy requirement is usually satisfied. *Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997).

Plaintiffs, Mr. Godfrey, Mr. Sheldon, and Ms. Kopinski, have proven to be exemplary class representatives and in fact this Court has already found them to be adequate in certifying the proposed class with Plaintiffs as representatives. Dkt. 205 at 12–14. Mr. Godfrey, Mr. Sheldon, and Ms. Kopinski have spent significant time on behalf of the putative class in this hard-fought litigation, spanning approximately three and a half years. Their efforts include responding to counsel requests, reviewing documents, and providing deposition testimony. If Mr. Godfrey, Mr. Sheldon, and Ms. Kopinski had not been willing to act as class representative and prosecute the case on behalf of others similarly situated, there would be no settlement benefits at all for other Class Members.

In addition, Class Counsel are well qualified and vigorously prosecuted this class action, including engaging in substantial discovery efforts, filing or responding to the numerous motions listed above, defending three pleadings, successfully moving for class certification, attending two separate mediation sessions, and preparing a Partial Summary Judgment Motion and opposing Defendants' Summary Judgment Motions. Class Counsel have long experience in employee benefits and ERISA law and their significant expertise is demonstrated by the declarations attached to Plaintiff's Motion for Class Certification. Boyko Decl. ¶ 8; *see also* Dkts. 160-6 & 160-7. The "adequacy of representation" factor of Rule 23(e)(2)(A) is met. Further, the Court

14

has already ruled that Class Counsel are qualified and experienced in certifying this lawsuit as a class action. Dkt. 205.

### 3. The proposed settlement was negotiated at arm's length.

The Settlement here was achieved through extensive, arm's length settlement negotiations under the guidance of the mediator, Robert A. Meyer, Esq., and continued discussion between the Parties. Mr. Meyer has extensive experience mediating complex class actions and commercial disputes, including ERISA class actions.[7] In addition to the in-person mediation sessions, Mr. Meyer communicated with the Parties by phone and e-mail on numerous occasions before, during, and after mediation to assist in achieving a settlement. With his assistance, the Parties ultimately reached agreement to key settlement terms on April 18, 2022.

Prior to mediating with Mr. Meyer, the Parties had already engaged in robust discovery. "The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong v. Bd. Of Dirs. Of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). In this case, the Parties have completed both fact discovery (including 14 fact depositions) and expert discovery, as well as summary judgment briefing, and therefore had a thorough opportunity to test their claims and defenses and understand the strengths and weaknesses of their positions.

Having a comprehensive grasp of the facts and the legal issues, the Parties prepared detailed, substantive mediation briefs. The Parties' respective positions and arguments were also subjected to vigorous questioning and analysis by the mediator, Mr. Meyer.

---

[7] Mr. Meyer's experience and qualifications are detailed at http://www.jamsadr.com/meyer/.

15

In sum, the robust discovery process, the pre-mediation discussions, the mediation briefing, the sharing of information during mediation, and the involvement of Mr. Meyer support a finding that the settlement was reached through robust investigation and was fairly and honestly negotiated.

4.    **The relief provided for the Class is adequate taking into account the costs, risks, and delay of trial and appeal.**

Litigation would be lengthy and expensive if this action were to proceed. Trial was set for the summer of 2022, and regardless of the outcome, there likely would have been appeals that followed, further delaying resolution and causing more expense. This factor weighs strongly in favor of approval.

And there were certainly risks of proceeding through trial and the appeals process as Plaintiffs, GreatBanc, and McBride Defendants had vastly different views about Defendants' liability and the likely outcome of the litigation. Plaintiffs' core allegations — that certain Defendants breached their fiduciary duties in three transactions, the 2013 Recapitalization, the Compensation Decisions, and the 2017 Transaction, and Defendants committed prohibited transactions in the 2013 Recapitalization and 2017 Transaction — rested on facts that were strongly contested by GreatBanc and McBride Defendants.  In addition, the Parties contested core legal issues that could have been resolved unfavorably to Plaintiffs on appeal.

Defendants asserted affirmative defenses and vigorously denied all of these allegations and defended their actions with respect to 2013 Recapitalization, the Compensation Decisions, and 2017 Transaction. Defendants pointed to evidence that supports the conclusion that they

16

have no liability and retained experts who support such conclusions. If the Lawsuit were to proceed through trial, Plaintiffs would have to overcome these defenses and arguments.

The Parties also strongly disagree on the proper measure of damages. Defendants contend that the Plan and its participants were not harmed by the 2013 Recapitalization the Compensation Decisions, or the 2017 Transaction. Plaintiffs, on the other hand, argued that the value of the Plan's shares was significantly depressed through the actions of Defendants during the Class Period. The Parties have exchanged various letters and position papers supporting their differing views of what a proper measure of damages should be and presented their theories extensively in fact discovery, expert discovery, and during summary judgment briefing.

These fact intensive inquiries regarding damages would have likely led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence, or positions on respective burdens of proof, would carry the day and be considered dispositive. Likewise, there was uncertainty about the measure of damages that the Court would apply in this case.

In light of the inherent uncertainty, the total settlement amount of $16,500,000.00 is a good result for the Class. As courts in this Circuit have noted, "[a] settlement need not provide the class with the maximum possible damages to be reasonable." *Douglas v. W. Union Co.*, No. 14-1741, 2018 WL 4181484, at *6 (N.D. Ill. Aug. 31, 2018). A district court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to the plaintiffs," for "the essence of settlement is compromise." *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (internal quotation marks omitted). A settlement is properly "a bilateral exchange . . . where both sides gain as well as lose something." *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d

17

1106, 1135 (7th Cir. 1979) (internal quotation marks omitted). Indeed, even recoveries representing a very small percentage of the defendant's maximum exposure may be found to be fair, adequate and reasonable. *See, e.g.*, *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla.1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig*., No. 94-1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig*., 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Where the Class faces numerous risks of losing, including at trial or on appeal, not to mention the years of delay should this Lawsuit proceed through an appeal, the Settlement Agreement represents the best realistic recovery for all members of the Class, and it is well within the range of possible approval.

Although it is not an enumerated factor in amended Rule 23, courts have traditionally considered competent counsel's evaluation of risk and adequacy of relief. Courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce,* 690 F.2d 616, 634 (7th Cir. 1982) (citation omitted), and counsel for the Parties are competent and have experience in ERISA litigation, including ESOP litigation. Moreover, as discussed below with respect to the

extensive litigation and negotiation process that occurred before Settlement, there is no indication that it is the result of collusion.

For the reasons stated above with respect to the strength of Plaintiffs' case compared to the amount of the settlement, serious questions of law and fact exist, putting both sides at risk of an adverse result.

Compared to the costs, risks and delay of trial and appeal, the immediate and certain payment of $16,500,000.00 to the Class outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take—including trial, post-trial and post-judgment briefing, and appeals—for any judgment to be reduced to actual payment to the members of the Class. For these reasons, the immediate contribution of $16,500,000.00 outweighs the mere possibility of future relief of an uncertain amount.

### 5. Additional Rule 23(e)(2) Factors

In addition to the above, Rule 23(e)(2)(C) requires the Court to consider: whether the relief provided for the class is adequate, taking into account:

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment.

And Rule 23(e)(2)(D) requires that the Court consider whether class members are treated equitably relative to each other. All of these factors also weigh heavily in favor of approval.

The Settlement Agreement offers cash compensation in the aggregate amount of $16,500,000.00 with the net amount (after payment of such attorneys' fees and costs, including notice and related costs, and Plaintiffs' Service Awards as may be allowed by the Court) guaranteed to be paid to the Class Members. There will be no reversion of any part of the

Settlement Amount to Defendants. Payments will be made automatically, making the distribution process highly effective.

The Plan of Allocation, Exhibit 2 to the Settlement Agreement, will allocate the Net Settlement Fund to each Class Member in proportion to the vested company shares that he or she held in the Plan compared to the total vested company shares held in the Plan by all Class Members. Such a plan treats all Class Members equally and equitably.

With regard to attorneys' fees, Class Counsel will apply for Court approval of an award of attorneys' fees in a separate motion of no more than $5,500,000, which amount has been calculated using the standard set forth in *Synthroid II*. Class Counsel will also seek reimbursement for litigation expenses, currently estimated to be $962,226.33, not to exceed $979,000. The requested fee is within the range of approved fee awards in this jurisdiction. The Class will be notified of the amount of the fees and litigation expenses to be requested in the Notice. The attorney's fees and expenses shall be paid from the Settlement Amount.

Each of these additional factors thus favors approval.

All of the factors discussed in caselaw and in Rule 23(e)(2) thus support preliminary approval of the proposed Settlement. Accordingly, Plaintiffs and Class Counsel request that the Court grant preliminary approval and permit notice to the Class.

**B.     The Court Should Approve the Notice Plan and Schedule a Final Approval Hearing.**

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement provides for notice to the Class, and an opportunity for Class Members to object to approval of the Settlement and to Class Counsel's fee petition. *See* Exhibit A to the Proposed Preliminary Approval Order. The Parties have agreed, subject to Court approval, to a notice plan, which calls for individual mailed notice that will provide Class Members with sufficient

20

information to make an informed decision about whether to object to the proposed Settlement. *Id*. The Class Notice informs Class Members of the nature of the action, the litigation background and the terms of the agreement, including the definition of the Class, the relief provided by the Settlement Agreement, the intent of Class Counsel to seek fees and costs, the Service Awards to Plaintiffs to be sought, the scope of the releases and binding nature of the Settlement on Class Members, and the uncertain nature of litigation. *Id*. In addition, the Class Notice informs Class Members that additional documents, including the Settlement Agreement and Plaintiff's Motion for Award of Attorneys' Fees, will be available via the settlement website. *Id*. The Class Notice also describes the procedure for objecting to the Settlement and states the date, time and place of the final approval hearing. *Id.* The Class Notice and the manner in which it will be disseminated to Class Members satisfy Rule 23(e)(1) and constitutional due process concerns.

Plaintiffs request that the Court approve ILYM as Settlement Administrator and Escrow Agent. As detailed in Exhibit B to the Boyko Decl., ILYM has extensive experience in the administration of settlements of this type.

Finally, Plaintiffs request that the Court schedule a fairness hearing on Plaintiffs' motion of an award of reasonable attorneys' fees and Service Awards to Plaintiffs, as set forth in the Proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Class Members to object to approval of the Settlement, and considering final approval of the Settlement.

## VI.    CONCLUSION

As set forth above, the proposed settlement meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully request that the Court issue an Order: (a) granting preliminary approval of the Settlement Agreement; (b) approving the proposed Class Notice; (c)

appointing ILYM as the Settlement Administrator; (d) approving the Plan of Allocation; (e)

appointing ILYM as Escrow Agent; (f) setting a date for a Fairness Hearing; and (g) setting a

date for a hearing on Class Counsels' motion for fees and costs and the payment of a Service

Award to Plaintiffs.

Dated: May 16, 2022                        Respectfully submitted,

By: /s/ *Mark G. Boyko*
Mark G. Boyko (IL #6288036)
mboyko@baileyglasser.com
Bailey & Glasser LLP
34 N. Gore Ave., Suite 102
Webster Groves, MO 63119
Telephone: (314) 863-5446
Facsimile: (314)-863-5483

Patrick O. Muench (IL #6290298)
pmuench@baileyglasser.com
Bailey & Glasser LLP
318 W. Adams St., Suite 1606
Chicago, IL 60606
Telephone: (312) 500-8680
Facsimile: (202) 463-2103

Ryan T. Jenny
rjenny@baileyglasser.com
Gregory Y. Porter (admitted *pro hac vice*)
gporter@baileyglasser.com
Bailey & Glasser LLP
1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Thomas E. Clark Jr. (IL #6294921)
tclark@wagnerlawgroup.com
Jordan D. Mamorsky (IL #6337130)
jmamorsky@wagnerlawgroup.com
The Wagner Law Group, PC
190 South LaSalle Street, Suite 2100
Chicago, IL 60603
Telephone: (314) 236-0065
Facsimile: (314) 236-5743

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 16, 2022, I caused a true and correct copy of the foregoing to be filed electronically using the Court's CM/ECF system and to be thereby served upon all registered participants identified in the Notice of Electronic Filing in this matter on this date.

*/s/ Mark G. Boyko*