# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **GREGORY GODFREY, et al.,** | **Case No. 1:18-cv-07918** |
| **Plaintiffs,** | **Judge Matthew F. Kennelly** |
| **v.** | **Magistrate Judge Michael T. Mason** |
| **GREATBANC TRUST COMPANY, et al.,** | |
| **Defendants.** | |

## DECLARATION OF MARK G. BOYKO

I, Mark G. Boyko, declare as follows:

1.      I am a member in good standing of the Bar of the State of Illinois. I am admitted to practice before this Court *pro hac vice*, and a partner at Bailey & Glasser, LLP, which is counsel for Plaintiffs in this matter

2.      All the facts stated herein are true and correct within my personal knowledge, and if called as a witness, I could and would testify competently to the facts stated herein

3.      I am more than 18 years of age, am capable of making this declaration, and have personal knowledge of the following.

4.      I make this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement.

5.      I am a partner of the law firm of Bailey & Glasser LLP, counsel to Plaintiffs in this lawsuit.

6. I have been actively involved in this lawsuit from the beginning of the investigation to the present.

7. Bailey & Glasser attorneys have been actively involved in all stages of this lawsuit, including but not limited to investigating and preparing the Second Amended Complaint (and all previous complaints), meeting and conferring with defense counsel regarding discovery and case management, reviewing Defendants' and third-party document productions, taking depositions, and representing Plaintiff at hearings and case conferences.

8. My experience and that of my firm, colleagues, and co-counsel are set forth in the respective declarations of counsel in support of Plaintiffs' Motion for Class Certification (Dkts. 160-6 & 160-7), which the Court granted on February 21, 2021 (Dkt. 205).

9. Class Counsel believe that the Settlement Agreement between the parties is fair and reasonable and in the best interests of the Class. Class Counsel's reasons for this belief are set forth in the Unopposed Motion for Preliminary Approval of Settlement.

10. Before commencing settlement negotiations, Class Counsel conducted an extensive investigation and the litigation was sufficiently advanced, such that counsel had sufficient information about the merits of the legal claims and factual allegations. The Parties engaged in extensive discovery including exchanging and responding to Interrogatories and Requests for Documents. The Parties' counsel received and reviewed approximately 100,000 pages of discovery produced by the Parties and various third parties. Class Counsel retained and consulted with four experts, who prepared detailed reports and analyses on valuation, due diligence, and compensation. Defendants' counsel likewise retained and consulted with five experts, who prepared reports on similar topics. All nine experts were deposed. The Parties also took fourteen fact depositions of eleven different witnesses. Plaintiff took the depositions of four

current or former McBride executives, one non-executive McBride employee, one GreatBanc executive, McBride's investment banker, and GreatBanc's financial advisor. All of these depositions were attended by Defendants' counsel, who also examined some of those witnesses. Defendants took the deposition of the three named Plaintiffs.

11. In addition, the Parties engaged in extensive summary judgment briefing, and thus, the parties are very knowledgeable about the facts, legal issues, and strengths and weaknesses of their respective cases.

12. The Parties conducted extensive arm's-length negotiations, with the assistance of a highly experienced and well-respected neutral mediator, Robert A. Meyer, Esq. of JAMS. The Parties each drafted and submitted comprehensive mediation statements to Mr. Meyer that were shared with all mediation attendees and focused all sides on the key issues. Counsel for the Parties (as defined in the Settlement Agreement) attended a one-day in person and partly virtual mediation at the JAMS offices in New York on July 28, 2021. The attendees vigorously engaged in the mediation process, during which the Parties' counsel each gave presentations to Mr. Meyer. Despite much deliberation, discussion, and compromise, the Parties were not able to reach a resolution at that time. Consequently, after summary judgment briefing was submitted by all side, the Parties engaged in another all day virtual mediation on April 7, 2022 with the same mediator. No global settlement was reached that time, but the parties remained committed to vigorous negotiations with the continued help of Mr. Meyer over the following weeks. These negotiations were unsuccessful until April 18, 2022, when the Parties did reach an agreement. The parties informed the Court on the same day.

13. Attached as Exhibit A is the Class Action Settlement Agreement. Exhibit 1 to the Class Action Settlement Agreement is the Proposed Preliminary Approval Order, with the Class

Notice attached as Exhibit A. Exhibit 2 to the Class Action Settlement Agreement is the Plan of Allocation and Distribution of Settlement Proceeds to Settlement Class Members. Attached as Exhibit B is the Summary of Experience of the Settlement Administrator.

I declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed at St. Louis, Missouri this 16th day of May 2022.


_/s/ Mark G. Boyko_____
Mark G. Boyko

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **GREGORY GODFREY, et al.,** | Case Number 18-cv-07918 |
| **Plaintiffs,** | Judge Matthew F. Kennelly |
| **v.** | Magistrate Judge Michael T. Mason |
| **GREATBANC TRUST COMPANY, et al.,** | |
| **Defendants.** | |

**CLASS ACTION SETTLEMENT AGREEMENT**

This Class Action Settlement Agreement ("Settlement Agreement") is entered into between Plaintiffs Gregory Godfrey, Jeffrey Sheldon, and Debra Ann Kopinski ("Plaintiffs"), individually and on behalf of the Settlement Class and the ESOP (as defined below), Defendants McBride & Son Capital, Inc., McBride & Son Management Company, LLC, John F. Eilermann, Jr., and Michael D. Arri (the "McBride Defendants"), and Defendant GreatBanc Trust Company ("GreatBanc" and, together with the McBride Defendants, "Defendants"). Plaintiffs and Defendants are collectively referred to herein as the "Parties."

<u>**ARTICLE I**</u>

<u>**DEFINITIONS**</u>

1.1     "Class Member" shall mean a member of the Settlement Class.

1.2     "Class Notice" shall mean notice of the Settlement to the Settlement Class in a form and substance substantially similar to Exhibit A to the form of Proposed Preliminary Approval Order (attached hereto as Exhibit 1 to this Settlement Agreement), to be provided pursuant to the Preliminary Approval Order in the manner and form approved by the Court and in compliance with Rule 23 of the Federal Rules of Civil Procedure.

1

1.3     "Court" shall mean the United States District Court for the Northern District of Illinois.

1.4     "Effective Date of Settlement" shall mean the first date on which the Final Order has become Final.

1.5     "ESOP" or "McBride ESOP" shall mean the McBride & Son Employee Stock Ownership Plan.

1.6     "Fairness Hearing" shall mean the hearing at which the Court will consider whether the Settlement should be approved pursuant to Rule 23 of the Federal Rules of Civil Procedure.

1.7     "Final" as used herein shall mean "final" for the purposes of 28 U.S.C. § 1291, and: (i) the time expired to file an appeal, motion for reargument, motion for rehearing, petition for a writ of certiorari or other writ ("Appeal Proceeding") with respect to a judicial ruling or order with no such Appeal Proceeding having been filed; or (ii) if an Appeal Proceeding has been filed with respect to such judicial ruling or order, (a) the judicial ruling or order has been affirmed without material modification and with no further right of review, or (b) such Appeal Proceeding has been denied or dismissed with no further right of review.

1.8     "Final Order" shall mean a final judgment and order of dismissal that is to be entered by the Court finally approving the terms of this Settlement Agreement and dismissing the Lawsuit with prejudice.

1.9     "GreatBanc" shall mean GreatBanc Trust Company, an Illinois corporation, and its past and current directors, officers, employees, representatives, attorneys, agents, parents, subsidiaries, affiliates, shareholders, trustees, advisors, predecessors, successors, beneficiaries and assigns.

1.10    "Lawsuit" shall mean the civil action captioned *Godfrey, et al. v. GreatBanc Trust Co., et al*, Case No. 1:18-cv-07918, pending in the United States District Court for the Northern District of Illinois.

1.11    "McBride" shall mean McBride & Son Capital, Inc. and McBride & Son Companies, Inc. and their past, present, or future parent companies, subsidiaries, affiliates, divisions, joint ventures, members, assigns, representatives, attorneys, agents, insurers, reinsurers, shareholders, officers, directors, managers, employees, partners, predecessors, successors, and successors-in-interest.

1.12    "Net Settlement Fund" shall have the meaning set forth in Article 8.

1.13    "Plaintiffs' Counsel" or "Class Counsel" shall mean Bailey & Glasser, LLP and The Wagner Law Group, PC.

1.14    "Preliminary Approval Order" shall mean the order preliminarily approving the Settlement substantially in the form annexed as Exhibit 1 hereto.

1.15    "Settlement" shall mean the settlement to be consummated under this Settlement Agreement.

1.16    "Settlement Administrator" and "Escrow Agent" shall mean ILYM Group, Inc. ("ILYM").

1.17    "Settlement Amount" shall mean $16,500,000.00.

1.18    "Settlement Class" shall mean all participants in the McBride & Son Employee Stock Ownership Plan, and the beneficiaries of such participants, at any time from December 31, 2013, and through December 15, 2017.  Excluded from the Settlement Class are (1) Defendants Eilermann and Arri, their immediate families, and their legal representatives, successors, and assigns, and (2) any owners of Class B and Class C Units of McBride & Son Companies, LLC

("MS Companies, LLC") during the class period, including Jeffrey Berger, Jeffrey Schindler, and Jeffrey Todt.

1.19    "Settlement Fund Account" shall have the meaning set forth in Article 7.

1.20    "Service Awards" shall mean any amount awarded to the Named Plaintiffs, Gregory Godfrey, Jeffrey Sheldon, and Debra Ann Kopinski, in recognition of their service as class representatives.

**ARTICLE II**

**<u>CONDITIONS TO FINALITY OF SETTLEMENT</u>**

The Settlement shall be unconditional when each of the following conditions in Articles 2.1 through 2.3 has been satisfied.  The Parties will use reasonable, good faith efforts to cause each of the conditions to occur within the times indicated.

2.1.    **Condition # 1: Court Approval**.  The Settlement shall have been approved by the Court in accordance with the following steps:

2.1.1    <u>Motion for Preliminary Approval of Settlement and of Notices</u>.  On or before May 16, 2022, Plaintiffs will file a motion ("Preliminary Approval Motion") with the Court for entry of the Preliminary Approval Order in the form annexed as Exhibit 1 hereto.  Defendants may, but shall not be required to, submit papers in connection with the Preliminary Approval Motion.

2.1.2    <u>Service of Notice under the Class Action Fairness Act</u>.  Defendants shall prepare and serve the notices required by the Class Action Fairness Act of 2005, PL 109-2 (2005) ("CAFA"), as specified by 28 U.S.C. § 1715, within ten days after the Settlement Agreement is filed with the Court.

2.1.3    <u>Preliminary Approval Order; Issuance of Class Notice</u>.  The Court shall have issued the Preliminary Approval Order, substantially in the form annexed as Exhibit

4

1 hereto.  Subject to the requirements of the Preliminary Approval Order, Plaintiffs shall cause the Class Notice to be disseminated to the Class Members and shall post the Class Notice on a website for the Settlement Class within 21 days of receiving Class Member addresses.  Plaintiffs and Defendants will seek to set the Fairness Hearing for a date at least one hundred ten (110) days after the grant of Preliminary Approval.  The McBride Defendants shall provide, or cause to be provided, the names and last known addresses of the Class members and the number of vested shares of McBride stock allocated to their ESOP account as described in the Plan of Allocation.  The information in the preceding sentence shall be provided to the Settlement Administrator to the extent available with reasonable effort in electronic format, at least twenty-one (21) days prior to the deadline for mailing the Class Notice.[1]

2.1.4   <u>Motion for Final Approval of Settlement</u>.  Plaintiffs will file a motion seeking final approval of the Settlement (the "Final Approval Motion") and for approval of attorneys' fees and expenses and Service Awards to the class representatives no later than forty-five (45) days before the Fairness Hearing date set by the Court in the Preliminary Approval Order.  The language of the Final Approval Motion shall be subject to the review and input of Defendants, and Plaintiffs shall give Defendants at least five (5) business days to review the Final Approval Motion before filing.  Defendants may, but shall not be required to, submit papers in connection with the Final Approval Motion.

2.1.5   <u>The Fairness Hearing</u>.  At or after the Fairness Hearing, the Court shall have determined: (i) whether to enter the Final Order approving the Settlement and

---

[1] The Parties acknowledge that any information provided by the McBride Defendants for this purpose shall be treated as "Confidential Information" under the Court's Confidentiality Order (Dkt. No. 59).  Plaintiffs expressly acknowledge that the information may be used solely to deliver the Class Notice.

dismissing the Lawsuit; (ii) what attorneys' fees and expenses should be granted to Plaintiffs' Counsel; and (iii) what, if any, Service Awards should be awarded to the Plaintiffs.

      2.1.6   <u>Entry of Final Order</u>.  The Court shall have entered the Final Order.

**2.2.  Condition #2: Funding of Settlement Amount.**  The Settlement Amount shall have been deposited into the Settlement Fund Account in accordance with Articles 7.2, 7.3, and 7.4.

**2.3.  Condition #3: Finality of Final Order.**  The Final Order shall have become Final.

If Plaintiffs and Defendants disagree as to whether each and every condition set forth in Article 2 herein has been satisfied or waived, they shall promptly confer in good faith and, if unable to promptly resolve their differences, shall present their dispute to the Court for resolution.

**ARTICLE III**

**<u>RELEASES</u>**

    3.1    **Releases by Plaintiffs and the Settlement Class.**  Effective upon the entry of the Final Order, Plaintiffs and the Settlement Class and the ESOP on behalf of themselves, their beneficiaries, heirs, executors, representatives, successors and assigns, absolutely and unconditionally release and forever discharge GreatBanc, McBride, the McBride Defendants, the named and functional fiduciaries of the McBride ESOP, current or former shareholders, officers, directors, managers, fiduciaries, and trustees of McBride and/or the McBride ESOP and each of their respective parent companies, subsidiaries, affiliates, officers, directors, managers, employees, agents, attorneys, relations, representatives, assigns, insurers, and reinsurers (collectively, "Releasees") from all Released Claims, as defined in Article 3.2.  Notwithstanding any other provision hereof, the Releases set forth in Article 3 will remain in effect during the pendency of any Appeal Proceeding of the Final Order.  Only if any Appeal Proceeding results

6

in a reversal or vacation of the Final Order will the Releases become void and lose their effect, at which time the provisions of Article 10 will become effective.

    3.2    **Released Claims.**  The Released Claims shall include any and all claims of any nature whatsoever (including claims for any and all losses, damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs, injunction, declaration, contribution, indemnification, or any other type or nature of legal or equitable relief), whether against Releasees in their capacity as individuals, corporate entities, or in their capacities as fiduciaries, whether known or unknown, in law or equity, which arise out of, relate to, or are based on the allegations, facts, matters, claims, causes of actions, occurrences, or omissions that were or could have been asserted in the Lawsuit that relate to or arise from the facts and claims alleged in the Lawsuit (the "Released Claims").  In the event that any court with original or appellate jurisdiction over the Lawsuit issues a final determination that any portion of Article 3 herein is not enforceable, the Parties will jointly modify Article 3 herein to conform with such determination, and in any event, portions of Article 3 herein that are enforceable shall remain enforceable.

    Plaintiffs hereby expressly waive, on their own behalf and on behalf of all members of the Settlement Class and the ESOP, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction.  Section 1542 reads in pertinent part:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

3.3     **Indemnification Releases.**  Upon the payment of the amount specified in Article 7.3, GreatBanc shall completely remise, release, and forever discharge McBride, its past and current directors, officers, employees, subsidiaries, affiliates, shareholders, predecessors, successors, assigns, beneficiaries, trustees, attorneys, agents, or advisors (the "Indemnifying Party Releasees") of and from any and all causes of action, claims, debts, demands, damages, and attorneys' fees and expenses, known or unknown, accrued or unaccrued, contingent or not contingent, of every nature and kind, both at law and equity, whether federal, state, or common law, that GreatBanc had, has, or might have against the Indemnifying Party Releasees relating to the Lawsuit, except any claims arising out of the breach of this Settlement Agreement (the "Indemnifying Party Release").  This Indemnifying Party Release shall include a release of McBride's indemnification obligations with respect to the Lawsuit under the Trustee Engagement Agreements between McBride and GreatBanc, the McBride & Son Employee Stock Ownership Trust, the ESOP's plan document, and the McBride and GreatBanc Joint Defense Agreement (collectively, the "Indemnification Provisions"), and no further fees or costs will be reimbursed to GreatBanc, except as provided in this Article 3.3.

McBride hereby completely remises, releases, and forever discharges GreatBanc, its past and current directors, officers, employees, representatives, parents, subsidiaries, affiliates, shareholders, predecessors, successors, assigns, beneficiaries, trustees, attorneys, agents, or advisors (the "GreatBanc Releasees"), of and from any and all causes of action, claims, debts, demands, damages, and attorneys' fees and expenses, known or unknown, accrued or unaccrued, contingent or not contingent, of every nature and kinds, both at law and equity, whether federal, state, or common law, that McBride had, has, or might have against the GreatBanc Releasees relating to the Lawsuit, except any claims arising out of the breach of this Settlement Agreement (the "GreatBanc Release").

If, for any reason, after payment of the amounts specified in Article 7.3, the Court vacates its order approving the Settlement Agreement or the Settlement is terminated pursuant to Article X ("Triggering Event"), McBride's indemnification obligations under the Indemnification Provisions between McBride and GreatBanc shall resume on the same terms and conditions set forth in the Joint Defense Agreement. The resumed indemnification obligations shall apply only to fees, expenses, and costs that are related to, or incurred after the occurrence of, a Triggering Event, and shall continue until (1) a court issues an order finally approving a settlement of the claims against GreatBanc in the Lawsuit, (2) there is a dismissal of all claims in the Lawsuit against GreatBanc with prejudice, or (3) there is a judgment by a court following trial from which all rights of appeal have either lapsed or been exhausted.

Nothing in this section shall affect any party's obligations under the Indemnification Provisions with respect to any matter other than the Lawsuit.

3.4 **Releases of Plaintiffs and Plaintiffs' Counsel.** Defendants (on behalf of themselves and each of their respective Releasees) hereby agree and shall be deemed to have, and by operation of the Final Order shall have, fully, finally, and forever released, relinquished, and discharged, and shall forever be enjoined from prosecution of, Plaintiffs and Plaintiffs' Counsel from any and all present or past claims and causes of action, claims, debts, demands, damages, and attorneys' fees and expenses, known or unknown, accrued or unaccrued, contingent or not contingent, of every nature and kinds, both at law and equity, whether federal, state, or common law, that either or both may have against the Plaintiffs or Plaintiffs' Counsel with respect to the claims asserted in the Lawsuit.

3.5 **Claims Not Released**. The Releases set forth herein are not intended to include and do not include the release of any rights or duties arising out of this Settlement Agreement or any other written agreement among the Parties with respect to the Settlement, including the express

9

representations, warranties, covenants in this Settlement Agreement and its predecessor term sheet; provided, however, that the Parties and their respective counsel shall have no responsibility or liability whatsoever with respect to the method and manner of allocation of the Net Settlement Fund, and Plaintiffs, Plaintiffs' Counsel, Defendants, and Defendants' Counsel shall have no liability whatsoever with respect to the distribution of the Net Settlement Fund. The Releases set forth herein are not intended to include and do not include the release of any rights or duties arising out of any protective order issued in the Litigation or related to any breach of confidentiality or release of confidential information.

## ARTICLE IV

## COVENANTS

4.1     **Covenants Not to Sue.**  Plaintiffs and all members of the Settlement Class, and Plaintiffs' Counsel, covenant and agree, (i) not to file any claim or action against any Releasee based on a Released Claim or that is in any way related to the Lawsuit; and (ii) that the foregoing covenant and agreement shall be a complete defense to any such lawsuit or claims against any of the Releasees.  Defendants covenant and agree not to file any claim or action against Plaintiffs or Plaintiffs' Counsel relating to any claim, allegations, or conduct in the Lawsuit.  This paragraph does not apply to Claims Not Released as set forth in paragraph 3.5 above.

4.2     **Taxation of Settlement Fund Account.**  Plaintiffs acknowledge that Releasees have no responsibility for any taxes due on the Settlement Fund Account, on earnings on the Settlement Fund Account, or any amounts that Plaintiffs receive from the Settlement Fund Account.  Nothing herein shall constitute an admission or representation that any such taxes will or will not be due.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES

5.1     **Plaintiffs' Representations and Warranties.**  Each Plaintiff represents and warrants on behalf of themselves and all members of the Settlement Class as follows:

5.1.1    That Plaintiffs and their counsel have conducted an appropriate investigation and discovery, and have diligently litigated the Lawsuit.

5.1.2    That none of the Plaintiffs' claims or causes of action made in the Lawsuit or that could have been alleged in the Lawsuit against any of the Releasees have been or will be assigned, encumbered, or in any manner transferred in whole or in part.

5.1.3    That Plaintiffs shall have no surviving claim or cause of action against any of the Releasees with respect to the Released Claims or that is in any way related to the Lawsuit.

5.2     **Parties' Representations and Warranties.**  The Parties, and each of them, represent and warrant:

5.2.1    That they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among Plaintiffs' Counsel and counsel for Defendants, with the assistance and recommendation of the Mediator, Robert A. Meyer, Esq.; that in executing this Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights, obligations, and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representation, statement, or omission pertaining to any of the foregoing matters by any

11

Party or by any person representing any Party to this Settlement Agreement. With respect to the Settlement, each of the Parties assumes the risk of mistake as to facts and/or law.

        5.2.2    That they have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each person executing this Settlement Agreement on behalf of such Party. The Parties, and each of them, further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the Settlement, this Settlement Agreement, and all of the matters pertaining thereto, as he, she, or it deems necessary and appropriate.

    5.3    **Signatories' Representations and Warranties.** Each person executing this Settlement Agreement on behalf of themselves or in a representative capacity does hereby personally represent and warrant that, to the best of his or her information and knowledge formed after reasonable inquiry, he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal such individual represents or purports to represent.

## ARTICLE VI

## <u>NO ADMISSION OF LIABILITY</u>

    6.1    This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal, equitable, or factual, and are not admissions of any breaches of fiduciary duties, wrongdoing or violations of ERISA, damages or losses. The Settlement Agreement, whether or not consummated, and any discussions, negotiations, proceedings or agreements relating to the Settlement Agreement, and any matters arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be construed, offered or received against or to the prejudice of the Parties for any purpose, and in particular:

6.1.1    do not constitute and shall not be deemed to constitute any liability, breach of fiduciary duty or any other violation or wrongdoing under ERISA, or wrongdoing of any other type or kind by any of the Releasees, or give rise to any inference of wrongdoing or liability under ERISA;

6.1.2    do not constitute, and shall not be offered or received against or to the prejudice of Releasees as evidence of, any presumption, concession, or admission by Releasees with respect to the truth of any allegation by Plaintiffs or as alleged in the Lawsuit, or of any liability, breach of fiduciary duty or any other violation or wrongdoing under ERISA, damages, fault, omission, or wrongdoing of Releasees;

6.1.3    shall not be offered by or received against or to the prejudice of Releasees, in any other civil, criminal, or administrative lawsuit or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Settlement Agreement; and

6.1.4    do not constitute, and shall not be offered or received against or to the prejudice of Plaintiffs as evidence of, any presumption, concession, or admission by Plaintiffs with respect to the truth of any allegation or affirmative defense by Defendants or as alleged in the Answer.

6.2    Releasees may file this Settlement Agreement and/or the Final Order in any action that may be brought against them to support a defense or counterclaim based in principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate the liability protection granted them under any applicable insurance policies.  A Party may file this Settlement Agreement and/or the Final Order in any action that the Party brings against another Party to enforce the terms of this Settlement Agreement and/or the Final Order.

13

## ARTICLE VII

## THE SETTLEMENT FUND ACCOUNT

7.1     Plaintiffs' Counsel or the Settlement Administrator shall establish at a federally chartered financial institution reasonably acceptable to Defendants (the "Financial Institution") an interest-bearing account (the "Settlement Fund Account").  The Parties agree that the Settlement Fund Account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1.  Plaintiffs' Counsel shall provide to Defendants: (i) written notification of the date of establishment of the Settlement Fund Account; (ii) written notification of the following information regarding the Financial Institution and the Settlement Fund Account: bank name, bank address, ABA number, account number, account name, and IRS Form W-9 and taxpayer identification number; and (iii) any additional information needed to deposit the Settlement Amount into the Settlement Fund Account. Plaintiffs' Counsel shall direct the Financial Institution to make distributions by wire transfer or check from the Settlement Fund Account only in strict accordance with the Settlement Agreement and Court Orders.  No other disbursements may be authorized by Plaintiffs' Counsel.

7.2     Not later than thirty (30) calendar days after the entry of the Preliminary Approval Order, Defendants shall direct that $75,000 be deposited into the Settlement Fund Account; provided, however, that, if Plaintiffs' Counsel has not yet provided Defendants with the notifications and information required in (i)-(iii) in the preceding paragraph, then the deadline for Defendants to make the deposit into the Settlement Fund Account shall be extended to thirty (30) calendar days after the date on which Plaintiffs' Counsel provides the requisite notifications and information in (i)-(iii) in the preceding paragraph.

7.3     Not later than thirty (30) calendar days after the entry of the Final Order by the Court, Defendants shall direct that $16,425,000 be deposited into the Settlement Fund Account.

14

7.4     The Settlement Amount deposited into the Settlement Fund Account will be considered to be in the legal custody of the Court until such time as such funds may be distributed pursuant to the Final Order further order of the Court, and/or pursuant to the terms of this Settlement Agreement.  The Parties acknowledge and agree that Releasees shall have no authority, control, or liability in connection with the design, management, administration, investment, maintenance, or control of the Settlement Fund Account, or for any expenses the Settlement Fund Account may incur or any taxes that may be payable with respect to the Settlement Fund Account.

7.5     The Settlement Amount shall be the full and sole monetary contribution made by or on behalf of Releasees to Plaintiffs, the Settlement Class, any Class Member, Class Counsel, or the Settlement Administrator in connection with the Settlement.  The Settlement Amount specifically covers any claims for attorneys' fees, litigation expenses, and/or service awards by Plaintiffs.

**ARTICLE VIII**

**PAYMENTS FROM THE SETTLEMENT FUND ACCOUNT**

8.1     **Administration Expenses.**  Following the Effective Date of Settlement, Plaintiffs' Counsel may direct the Settlement Administrator in writing, without notice to Defendants or further order of the Court, to disburse from the Settlement Fund Account: (i) amounts required for payment of any taxes owed on the Settlement Fund Account, and (ii) amounts for the reasonable expenses of administering the Settlement Fund Account, including (a) reasonable expenses associated with the preparation and filing of all necessary or required tax reports and tax returns; (b) expenses associated with the preparation and issuance of any required IRS Forms 1099 associated with payments from the Settlement Fund Account; (c) fees charged and expenses incurred by the Financial Institution associated with the administration of the

Settlement Fund Account; (d) fees charges and expenses incurred by the Settlement Administrator, including reasonable costs incurred in preparing and mailing the Class Notice and any supplemental notice to the Settlement Class, in implementing the Plan of Allocation (as defined below) and in disbursing funds from the Settlement Funds Account.

If the Settlement Agreement is terminated or does not become Final for any reason after the expenditure of funds to pay for the reasonable costs associated with the Class Notice, Plaintiffs' Counsel shall be obligated to instruct the Settlement Administrator (or an escrow agent, successor trustee, or other person with authority to disburse the funds) to return the funds remaining in the Settlement Fund Account to Defendants.

8.2    **Disbursements from Settlement Fund Account.**  Plaintiffs' Counsel shall be entitled to seek from the Court disbursement of money from the Settlement Fund Account once the Final Order becomes Final as follows:

8.2.1    <u>For Attorneys' Fees and Litigation Expenses</u>.  As provided in Article 9.1 herein.

8.2.2    <u>For Payment of any Service Awards Approved by the Court</u>.  In recognition of their service as class representatives, Plaintiffs may request a Service Award for each class representative not to exceed $25,000 per Class Representative.

8.2.3    <u>For Payment to the Settlement Class</u>.  Upon the Final Order becoming Final, and after the amounts payable pursuant to Articles 8.1 and 8.2.1 and 8.2.2 have been determined and disbursed, the net amount remaining in the Settlement Fund Account (the "Net Settlement Fund") shall be calculated by the Settlement Administrator. The Settlement Administrator shall implement the Plan of Allocation (as set forth in Exhibit 2 to this Settlement Agreement) by calculating and disbursing each Class Member's share of the Net Settlement Fund in accordance with the Plan of Allocation.

The allocable portion of the Net Settlement Fund for each Class Member shall be distributed to those Class Members directly by the Settlement Administrator. Plaintiffs, Plaintiffs' Counsel, Defendants, and Defendants' counsel shall have no responsibility or liability for or in connection with the calculations and distributions of the Net Settlement Fund among and to the members of the Settlement Class. No third-party administrator shall have any responsibility or liability for or in connection with the calculation or distribution of funds into Class Members' accounts within the McBride & Son 401(k) Savings Plan or the distribution of the Net Settlement Fund as among or to the members of the Settlement Class, except that, in the event of an error by third-party administrator in the distribution within the McBride & Son 401(k) Savings Plan following transfer to it of the Net Settlement Fund allocable among the members of the Settlement Class, the error shall be corrected within a reasonable amount of time.

## ARTICLE IX

## ATTORNEYS' FEES, LITIGATION EXPENSES, SERVICE AWARDS

9.1 **Payment of Plaintiffs' Attorneys' Fees and Litigation Expenses and Service Awards**. Plaintiffs' Counsel may apply to the Court for an award of attorneys' fees of no more than $5.5 million and expenses of no more than $979,000 and shall be paid out of, and not in addition to, the Settlement Amount. Plaintiffs may also apply to the Court for Service Awards to the class representatives, which shall be paid out of, and not in addition to, the Settlement Amount. Plaintiffs' Counsel shall file their application for attorneys' fees and litigation expenses and for Service Awards no later than forty-five (45) days before the Fairness Hearing and, thereafter, shall be entitled to receive attorneys' fees and litigation expenses, and the class representatives shall be entitled to Service Awards, from the Settlement Fund Account to the extent awarded by the Court. Defendants shall take no position with respect to Plaintiffs'

Counsel's application for attorneys' fees and litigation expenses or with respect to the Service Awards. Defendants do not agree or concede that the amount of attorneys' fees and/or any expenses that may be sought by Plaintiffs' Counsel, or the amount of the Service Awards sought for the class representatives, are appropriate or reasonable, but simply take no position. Defendants shall not cause or encourage any party, including Class Members, to oppose any motion filed regarding an award of attorneys' fees and/or expenses and/or Service Awards.

      9.2    **Separate Consideration.** The procedure for and allowance or disallowance by the Court of Plaintiffs' application for attorneys' fees and litigation expenses and for Service Awards are a separate part of the Settlement set forth in this Settlement Agreement, and are separate from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Settlement Agreement. Any order or proceeding relating to any application for attorneys' fees and litigation expenses or Service Awards that results in an amount less than the amount requested by Plaintiffs' Counsel for attorneys' fees and litigation expenses or for Service Awards, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Settlement Agreement or to affect or delay the finality of the Final Order approving the Settlement Agreement and the Settlement set forth herein. If, at the time of any disbursement from the Settlement Fund Account, there shall be a pending application for attorneys' fees or expenses or Service Awards, there shall be reserved in the Settlement Fund Account an amount equal to the amount of the pending application, until such time as the Court shall rule upon such application and such ruling shall become Final.

## ARTICLE X

## TERMINATION OF SETTLEMENT AGREEMENT

10.1    **Termination.**  This Settlement Agreement may be terminated by any Party only if: (i) the Court declines to approve the Settlement by entering the Final Order, or (ii) the Final Order entered by the Court is reversed or modified in any material respect by any Appeal Proceeding, provided that the terminating party, within fourteen (14) calendar days from the date of such event, furnishes written notice to Plaintiffs' Counsel or Defendants' counsel, as the case may be, of the termination of this Settlement, specifying the terms modified or not approved that give rise to the right to terminate.

10.2    **Consequences of Termination of the Settlement Agreement.**  If the Settlement Agreement is terminated, the following shall occur:

10.2.1  Plaintiffs' Counsel or Defendants' counsel shall promptly, after the date of termination of the Settlement Agreement, notify the Court and cause the return of any Settlement Amount to the Defendants, except for amounts disbursed or incurred pursuant to Article 8.1.

10.2.2  The Lawsuit shall for all purposes revert to its status as of the day immediately before April 18, 2022, and the Parties shall promptly request a scheduling conference with the Court.  In any subsequent proceeding, the terms of this Settlement Agreement shall not constitute nor be construed as an admission by any Party, nor be used against any Party, in any manner, whether as evidence or argument.

10.2.3  The Settlement shall be deemed void and of no further force and effect.

## ARTICLE XI

## MISCELLANEOUS

11.1     **Continuing Jurisdiction of the Court.**  The Court shall retain jurisdiction over this Lawsuit to resolve any dispute that may arise regarding the Settlement Agreement, the Class Notice, the Final Order, or any other matters relating thereto, including any dispute regarding the validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement.

11.2     **Required Disclosures Permitted.**  The Parties acknowledge and agree that they may make such public filings as required to be made under applicable law concerning the Settlement upon execution of this Settlement Agreement and the filing of this Settlement Agreement with the Court for preliminary approval.  The Parties and their counsel shall not make any statements, or take any other actions, to disparage, defame, sully or compromise the goodwill, name, brand, or reputation of any other Party or counsel.  Except as provided in Article 11.3, the Parties shall not make any public statements regarding the Settlement or Lawsuit.

11.3     **Press Release and Confidentiality.**  The Parties will create an approved press release to be released no earlier than the public filing of the Preliminary Approval Motion. Except for information in the approved press release, the terms of the Settlement are to be kept confidential except as necessary to obtain court approval of the Class Settlement, and no Party shall issue a press release or make any other public statement or disclosure related to the underlying action or the Settlement without the express written consent of the other Parties; provided, however, the Defendants may disclose the terms of the Settlement to any of their attorneys, accountants, bankers, insurers, and advisors.

11.4     **Complete Resolution.**  The Parties intend the Settlement to be the full, final, and complete resolution of the Released Claims and the Lawsuit.  The Parties and their counsel agree

that they shall not make any applications for sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure or other court rule or statute, with respect to any claim or defense in this Lawsuit.

11.5    **Governing Law.**  The construction, interpretation, operation, effect, and validity of this Settlement Agreement and all documents necessary to effectuate it shall be governed by the laws of the State of Illinois, without giving effect of laws or choice of law provisions thereof, except to the extent the laws of the United States, including federal common law, govern any matter set forth herein, in which case federal law shall govern.

11.6    **Severability.**  Except to the extent set forth in Article 9.2, the provisions of this Settlement Agreement are not severable.

11.7    **Destruction or Return of Protected Materials.**  Within sixty-three (63) calendar days after the Final Order becomes Final, the Parties shall fully comply with the applicable provisions of the Confidentiality Order (Dkt. No. 59) concerning the destruction or return of Confidential Information or other protected materials.

11.8    **Amendment of Settlement Agreement.**  Before the entry of the Final Order, the Settlement Agreement may be modified or amended only by written agreement signed by or authorized by all Parties.  Following entry of the Final Order, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties and approved by the Court.  Amendments or modifications may be made without notice to the Class Members unless notice is required by law or the Court.

11.9    **Waiver.**  The provisions of this Settlement Agreement may be waived only in writing executed by the waiving party.  The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

11.10  **Retention of Privilege.**  Nothing in this Settlement Agreement, or the negotiations relating to it, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

11.11  **Construction.**  None of the Parties shall be considered to be the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.

11.12  **Principles of Interpretation.**  The following principles of interpretation apply to this Settlement Agreement.

11.12.1  <u>Headings</u>.  The headings of this Settlement Agreement are for purposes of reference only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

11.12.2  <u>Terms of Inclusion</u>.  Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather be deemed to be followed by the words "without limitation."  The connectives "and," "or," and "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a sentence or clause all subject matter that might otherwise be construed to be outside of its scope.  The terms "herein," "hereof," and the like shall be deemed to refer to this Settlement Agreement as a whole.

11.13  **Further Assurances.**  Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement, that they will in good faith execute and deliver to each other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement, so long as such documents and

actions are consistent with the terms of this Settlement Agreement and do not effectively result in a material modification of the terms of this Settlement Agreement.

11.14   **Survival.**  All representations, warranties, and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Settlement.

11.15   **Entire Agreement.**

11.15.1     All of the recitals and exhibits to the Settlement Agreement are material and integral parts hereof and are, except as set forth, fully incorporated herein by this reference.

11.15.2     The Parties acknowledge that this Settlement Agreement specifically supersedes any settlement terms or settlement agreements that were previously agreed upon orally or in writing by any of the Parties regarding the Lawsuit or issues of the Settlement unless specifically excluded from supersession by such prior agreement.

11.16   **Counterparts.**  This Settlement Agreement may be executed in three (3) or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.  Signatures sent by facsimile, DocuSign or by e-mail "PDF" shall be deemed originals.

11.17   **Successors and Assigns.**  This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

11.18   **Binding Effect.**  This Settlement Agreement shall be binding when signed, but the Settlement shall be effective only on the condition that the Court approves the Settlement Agreement and satisfaction of Article 2 herein.

11.19   **Notices.**  Any notice, demand, or other communication under this Settlement Agreement (other than the Class Notice, or other notices given at the direction of the Court) shall

23

be in writing and shall be deemed given upon receipt if it is addressed to each of the intended

recipients as set forth below and personally delivered, sent by registered or certified mail

(postage prepaid), or delivered by reputable express overnight courier:

IF TO PLAINTIFFS:

Mark G. Boyko
Bailey & Glasser, LLP
34 N. Gore Ave.,
Suite 102
St. Louis, MO 63119

Thomas E. Clark, Jr.
Wagner Law Group, PC
439 South Kirkwood Rd.
Suite 215
St. Louis, MO 63122

IF TO THE MCBRIDE DEFENDANTS:

Lars C. Golumbic
Groom Law Group, Chartered
1701 Pennsylvania Ave NW, Suite 1200
Washington, D.C. 20006

IF TO GREATBANC:

Michael L. Scheier
Keating Muething & Klekamp PLL
One East 4th Street, Suite 1400
Cincinnati, OH 45202

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement effective May 16, 2022.

**For Plaintiffs Gregory Godfrey, Jeffrey Sheldon, and Debra Ann Kopinski, on behalf of the McBride & Son Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated:**



_____

Mark G. Boyko as Class Counsel

**For McBride & Son Capital, Inc., McBride & Son Management Company, LLC, John F. Eilermann, Jr., and Michael D. Arri:**



_____

Lars C. Golumbic

**For GreatBanc Trust Company:**

_____

Michael L. Scheier

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **GREGORY GODFREY, et al.,** | **Case No. 1:18-cv-07918** |
| **Plaintiffs,** | **Judge Matthew F. Kennelly** |
| **v.** | **Magistrate Judge Michael T. Mason** |
| **GREATBANC TRUST COMPANY, et al.,** | |
| **Defendants.** | |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND PROPOSED NOTICE OF SETTLEMENT**

This matter has come before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement. (Dkt. 308.)

**I.    Preliminary Approval of Settlement**

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. Ultimately, to approve the proposed settlement, the Court must determine that it is fair, reasonable and adequate. *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 283 (7th Cir. 2017).

Before a court approves a proposed settlement, notice must be provided to the class. Fed. R. Civ. P. 23(e)(1). The parties must provide the court with information sufficient to enable the court to determine whether to give such notice of the proposal to the class. *Id.* The court examines the information provided by the parties against a number of factors to determine whether notice should be given to the class. *Id.*

1

The 2018 Amendments to Rule 23, effective December 1, 2018, provide guidance to federal courts considering whether to grant preliminary approval of a class action settlement. Fed. R. Civ. P. 23(e), Committee Notes. "[I]n weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)). This Court previously certified the Class. Dkt. 205. Therefore, although the factors cited in Rule 23(e)(2) "apply to final approval, the Court looks to them to determine whether it will likely grant final approval based on the information currently before the Court"—those factors are as follows:

> (A) the class representatives and counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

>> (i) the costs, risks, and delay of trial and appeal;

>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

>> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

*Id.* (citing Fed. R. Civ. P. 23(e)); *accord Hays v. Eaton Grp. Attorneys*, LLC, No. CV 17-88-JWD-RLB, 2019 WL 427331, at *4 (M.D. La. Feb. 4, 2019).

The Court held a hearing on _____, 2022. The Court concludes that, given the parties' showing, the Court has grounds for directing notices pursuant to Rule 23(e)(1) and will likely be able to approve the proposal under Rule 23(e)(2).

## II.     Class Notice

Amended Federal Rule 23(e)(1) requires that the Settlement Class be given "notice in a reasonable manner" concerning a proposed settlement, and due process likewise requires that class members generally must receive notice of the terms of settlement. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–76, 94 S. Ct. 2140, 2150–52, 40 L.Ed.2d 732 (1974); *Simer v. Rios*, 661 F.2d 655, 666–67 (7th Cir. 1981). The Court concludes that the notice proposed by Plaintiffs satisfies the requirements of Rule 23(e) and due process and is otherwise fair and reasonable. Notice will be provided by first-class mail, and the proposed Class Notice informs the Settlement Class of the nature of the suit, the pertinent terms of the Settlement (including the provisions relating to attorneys' fees and expenses, lead plaintiff award requests and administrative costs and expenses), the reasons for entering into the Settlement, and directions for obtaining additional information as well as for objecting to the Settlement.

## III.    Settlement Procedure

The Court hereby sets the following settlement procedure:

1.      ILYM, LLC is hereby appointed the Settlement Administrator and Escrow Agent;

2.      By _____, 2022 (the "Notice Date"), the Settlement Administrator will mail the Class Notice to all Class Members. Defendants shall provide the notices required by the Class Action Fairness Act of 2005, PL 109-2 (2005) within ten days after the Settlement Agreement is filed with the Court;

3

3.      Any Class Member who wishes to object to this Settlement or otherwise to be heard concerning this Settlement shall timely inform the District Court in writing of his or her objection to this Settlement and/or intent to appear at the Fairness Hearing by following the procedures set forth in the Class Notice ("Objection"). To be considered timely, the Objection must bear a postmark that is no later than fifteen (15) calendar days before the date set for the Fairness Hearing in this Order. The Objection must set forth any and all objections to this Settlement and include any supporting papers and arguments;

4.      Plaintiff will file a Motion for Attorneys' Fees, Costs, and Class Representative Service Awards no later than forty-five (45) days before the date set for the Fairness Hearing in this Order;

5.      Plaintiff will file a Motion for Final Approval of Settlement no later than forty-five (45) days before the date set for the Fairness Hearing in this Order;

6.      Plaintiff will file any responses to objections, as well as any additional information pertinent to the Court's consideration of the Settlement, no later than seven (7) days before the date set for the Fairness Hearing in this Order.

7.      The Court will hold a final fairness hearing on _____, 2022, not less than ninety (90) days after the Notice Date, at the United States District Court for the Northern District of Illinois, Eastern Division, 219 S. Dearborn St., Chicago, Illinois 60604, Courtroom 2103;

8.      The parties shall abide by all terms of the Settlement Agreement.


Dated: _____          Signed: _____

# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GREGORY GODFREY, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**GREATBANC TRUST COMPANY, et al.,**<br><br>**Defendants.** | **Case No. 1:18-cv-07918**<br><br>**Judge Matthew F. Kennelly**<br><br>**Magistrate Judge Michael T. Mason** |

## <u>NOTICE OF PROPOSED CLASS ACTION SETTLEMENT</u>

**PLEASE READ THIS NOTICE CAREFULLY.
A FEDERAL COURT AUTHORIZED THIS NOTICE.
THIS IS NOT A SOLICITATION.**

If you were a participant in or a beneficiary of the McBride & Son Employee Stock Ownership Plan (the "ESOP") at any time between December 31, 2013 through December 15, 2017 (the "Class Period"), this class action lawsuit may affect your rights.

The United States District Court for the Northern District of Illinois, having previously certified a Class, has authorized this Notice to be sent to you.

A federal lawsuit by certain former participants in the ESOP, Gregory Godfrey, Jeffrey Sheldon, and Debra Ann Kopinski (collectively the "Plaintiffs"), alleges violations of the Employee Retirement Income Security Act ("ERISA"). The Defendants are the former trustee of the ESOP, GreatBanc Trust Company, as well as McBride & Son Capital, Inc. ("MS Capital, Inc."), McBride & Son Management Company, LLC ("MS Management Co."), John F. Eilermann Jr. ("Eilermann"), and Michael D. Arri ("Arri") (collectively the "Defendants"). The Plaintiffs claim that the Defendants were fiduciaries of the ESOP and breached their fiduciary duties owed under ERISA to the ESOP.

The Court has allowed the lawsuit to proceed as a class action on behalf of all participants and beneficiaries of the ESOP during the Class Period, and the Parties have reached a class action settlement (the "Settlement").

**Please read the following information carefully to find out what the lawsuit is about, what the terms of the proposed settlement are, what rights you have to object to the**

**proposed settlement if you disagree with its terms, and what deadlines apply to the right to object to the proposed settlement.**

WHAT THIS LAWSUIT IS ABOUT

In summary:

(1) Plaintiffs allege that, on December 31, 2013, Defendants GreatBanc, MS Management Co., Eilermann, and Arri caused the ESOP to engage in a corporate reorganization for the benefit of certain corporate executives. The result was that the ESOP would no longer hold shares of McBride & Son Companies, Inc. ("MS Companies, Inc."). Plaintiffs allege MS Companies, Inc. had previously owned all of the subsidiaries and assets of the McBride & Sons Homes group of interrelated companies (collectively the "McBride Enterprise"), while certain executives held the equivalent of 30% of the economic interest of the McBride Enterprise. After the reorganization, the ESOP would own the stock of a holding company, McBride & Son Capital, Inc. ("MS Capital, Inc."), which would in turn own the newly-issued Class A Units of MS Companies, Inc. after it was converted to a limited liability company, McBride & Sons Companies, LLC ("MS Companies, LLC"). Plaintiffs allege that, as a consequence of the reorganization, the ESOP was no longer the sole owner of the McBride Enterprise, as the economic interests in the McBride Enterprise held by Defendants Eilermann and Arri and other executives were converted to Class B and Class C Units of MS Companies, LLC.

(2) Plaintiffs allege that, from 2013 to 2017, Defendants Eilermann and Arri, and other corporate executives, received excessive compensation in various forms in addition to awarding themselves further equity in the McBride Enterprise in the form of Class B Units and Class C Units of MS Companies, LLC. Plaintiffs allege this had the effect of diluting the ESOP's ownership of the McBride Enterprise and suppressing the stock price of MS Capital. Plaintiffs also allege the corporate executives who owned Class B and Class C Units received more favorable distributions than the ESOP, which owned Class A Units. Plaintiffs allege that Defendants GreatBanc, MS Capital, Inc., Eilermann, and Arri breached their fiduciary duties under ERISA when the ESOP was harmed by the excessive payment of compensation and received no consideration for the dilution of its ownership of the McBride Enterprise, and ESOP participants were never informed about the excessive payment of compensation nor the dilution of their ownership of the McBride Enterprise.

(3) Plaintiffs allege that, on November 30, 2017, Defendants GreatBanc and MS Capital, Inc. caused the ESOP to sell the shares of MS Capital stock held by the ESOP for below fair market value, thereby depriving the ESOP participants of retirement benefits. Plaintiffs further allege that Defendants Eilermann and Arri knowingly participated in these breaches of ERISA. Plaintiffs allege the sale was done for the benefit of Defendants Eilermann and Arri and other executives, who would become the owners of the McBride Enterprise after the ESOP was terminated.

(4) Plaintiffs allege that Defendants MS Management Co., MS Capital, Inc., Eilermann, and Arri failed to properly monitor and remove GreatBanc as trustee to the ESOP.

Plaintiffs' allegations are detailed in Plaintiffs' Second Amended Complaint, and Defendants' responses are detailed in their Answers to Plaintiffs' Second Amended Complaint. The Complaint and Answers are available at www.McBrideESOPSettlement.com, as is the Court's Order on Defendants' Motions to Dismiss the Second Amended Complaint and Order granting Plaintiffs' Motion for Class Certification. Future Orders may also be posted to that website.

Defendants deny that they violated any law or duty owed to the ESOP or its participants. Specifically, Defendants maintain that the fiduciaries of the ESOP at all times acted prudently and loyally and in the best interest of ESOP participants.  Among various other defenses, Defendants argue that the referenced LLC units were purchased by McBride executives, not awarded, and that the amount paid for the ESOP's stock was not less than fair market value, and that all the alleged actions of the Defendants benefited, and did not harm, the ESOP and its participants.

### 1.  Am I a part of the Class?

The Court decided that the following persons are in the Class. If you fit this description, then you are a Class Member. You are receiving this Notice based on records indicating that you are likely a Class Member.

> All participants in the McBride & Son Employee Stock Ownership Plan, and the beneficiaries of such participants, at any time between December 31, 2013 and December 15, 2017. Excluded from the proposed Class are (1) Defendants Eilermann and Arri, their immediate families, and their legal representatives, successors, and assigns, and (2) any owners of Class B and Class C Units of McBride & Son Companies, LLC ("MS Companies, LLC") during the class period including Jeffrey Berger, Jeffrey Schindler, and Jeffrey Todt.

### 2.  What is involved in the Settlement?

Under the Settlement, if approved, Defendants will pay $16.5 million into a "Settlement Fund" in exchange for the dismissal of the case, releases against future litigation, and other terms described in more detail below and governed by the Settlement Agreement.

### 3.  Where can I learn more?

If you would like to see more after reading this Notice, a copy of the operative Complaint, the Court's Order on Class Certification, the Settlement Agreement, and other Settlement-related briefs and order are available at www.McBrideESOPSettlement.com

### 4.  Has the Court decided who is right?

No. At the time of the Settlement, the Parties had briefed the Court on each parties' Motions for Summary Judgment, but the Court had not yet made a ruling on those motions or at trial. The Settlement does not represent a finding by the Court or admission by any party about the strength of each parties' respective claims and defenses.

### 5. Do I have a lawyer in this case?

The Court has decided that the lawyers representing the Plaintiffs are qualified to represent you and all the Class Members. The lawyers are called "Class Counsel" and include Mark G. Boyko, Patrick O. Muench, Ryan T. Jenny, and Thomas E. Clark Jr. You can reach them through the contact information below:

| Mark G. Boyko | Thomas E. Clark Jr. |
|---|---|
| Bailey Glasser LLP | The Wagner Law Group, P.C. |
| 34 N. Gore, Suite 102 | 439 South Kirkwood Road, Suite 215 |
| Webster Groves, MO 63119 | Kirkwood, MO 63122 |
| | |
| (202) 463-2101 | (314) 236-0065 |
| mboyko@baileyglasser.com | tclark@wagnerlawgroup.com |

### 6. Should I get my own attorney?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. If you want to hire your own lawyer, you can, but you will have to pay for that lawyer. For example, you can ask your own lawyer to appear in Court for you if you want someone other than Class Counsel to speak for you, but Class Counsel is obligated to represent your interests as part of the Class regardless of whether you retain your own separate lawyer.

### 7. How will Class Counsel be paid?

Class Counsel will seek attorneys' fees from the Settlement Amount, plus expenses they incurred in prosecuting the case, of no more than $5.5 million in fees and $979,000 in expenses, and a Service Award for the named Plaintiffs from the Class Settlement Amount of up to $25,000 each ($75,000 total). The fee application and supporting papers will be filed on or before _____, 2022. After that date, you may review the application and supporting papers at www.McBrideESOPSettlement.com. You may file an objection to the request for attorneys' fees and expenses and to the Case Contribution Award under the same procedures for objecting to the Settlement. Any attorneys' fees, expenses and Service Awards approved by the Court, and the expenses incurred by the Settlement administrator in sending this Notice and otherwise administering the Settlement, will be paid from the Settlement Amount.

### THE TERMS OF THE SETTLEMENT

To avoid the additional expense, further delay, and uncertainty of the outcome of the Lawsuit and other lawsuits: (i) Plaintiffs and the Class defined, and (ii) Defendants have agreed to a Settlement that provides monetary payments to Plan participants. These and other terms of the Settlement are set forth in the Class Action Settlement Agreement dated May 16, 2022 ("Settlement Agreement"), and are summarized below.

1.    <u>The Payment and Allocation of the Settlement Fund</u>:

<u>(a)</u> Pursuant to the terms of the Settlement, Defendants will make payments totaling $16,500,000 (the "Settlement Amount") to the Settlement Fund Account.

<u>(b)</u> The "Net Settlement Fund" shall be the Settlement Amount, plus any interest earned while in the Settlement Fund Account, less:

(1) Administrative Expenses, currently estimated to be less than $25,000;

(2) Attorney's Fees and Expenses, which shall not exceed $5,500,000 in fees and $979,000,000 in expenses, for a total not to exceed $6,479,000; and

(3) Service Awards to the Named Plaintiffs, as approved by the Court and limited to $25,000 per Named Plaintiff, or $75,000 total.

<u>(c)</u> The Net Settlement Fund will be allocated and distributed in accordance with the Plan of Allocation approved by the Court, a copy of which is available on the website established by the Settlement Administrator as indicated below. A Settlement Class Member's share of the Net Settlement Fund will be based on his or her proportionate share of vested shares of McBride stock in the Plan from December 31, 2013 through November 30, 2017. Stated as a fractional share, a Class Member's allocation will be the total number of his or her vested shares each year during the class period divided by the total number of all Class Member's vested shares. Settlement Class Members will not need to submit a claim to receive payment, but may have the option of directing contributions into a tax-qualified retirement account. Payments will be calculated and allocated based on Plan records. Class Members with a current account in the McBride 401(k) Plan will receive a deposit into their 401(k) Plan account. Settlement Class Members who no longer have an account in the 401(k) Plan will receive a payment from the Settlement Administrator, with the option to deposit the funds in an Individual Retirement Account or other tax qualified account. If you (1) do not have a current account in the McBride 401(k) Plan, and (2) would like to direct the Settlement Administrator to make your payment directly into a tax-qualified account, such as an IRA, please instruct the Settlement Administrator to make the direct rollover by going to the settlement website, www.McBrideESOPSettlement.com, and filling out the required form. If you do not fill out the form, and do not have a current account in the McBride 401(k) Plan, you will still participate in the Settlement and the Settlement Administrator will mail you a check in your name.

2.    <u>Class Members' Release of Claims.</u> In exchange for payment of the Settlement Amount by Defendants and satisfaction of the conditions contained in the Settlement Agreement, all Class Members and the Plan will release (or give up) any claims they have related to this Lawsuit or otherwise included as a "Released Claim" pursuant to Section 3.2 of the Settlement

Agreement. Class Members and any successor trustee will be prohibited from bringing or pursuing any other lawsuits or actions based on any of the Released Claims. The Releases and Released Claims are set forth in full in the Settlement Agreement, which can be viewed online at www.McBrideESOPSettlement.com, or requested from Class Counsel.

## STATEMENT REGARDING THE POTENTIAL OUTCOME OF THE LAWSUIT

As with any Lawsuit, the Plaintiffs and Defendants would face an uncertain outcome if the Lawsuit were not settled. Continued litigation could result in a judgment greater or less than the amount obtained in the Settlement, or no recovery at all. The Plaintiffs and Defendants disagree about whether Defendants did anything wrong, and they do not agree on the amount, if any, that would be recoverable even if Plaintiffs prevailed at trial. Defendants have denied, and continue to deny, the claims and contentions of the Plaintiffs in the Lawsuit, have denied, and continue to deny, any wrongdoing or liability whatsoever, and are entering into the Settlement solely to avoid the cost, disruption and uncertainty of litigation. A settlement avoids the expense, further delay and uncertainty of a trial and gives money to Class Members more quickly. The Plaintiffs and the attorneys for the Class think the Settlement is best for all Settlement Class Members.

## THE SETTLEMENT APPROVAL PROCESS

The Court has granted preliminary approval of the proposed Settlement, and has approved this Notice to the Class. The Settlement will not take effect, however, until it receives final approval from the Court after an opportunity for Class Members to object, as described below. Following the deadline for objecting to the Settlement, the Court will hold a Fairness Hearing on _____, 2022 at the United States District Court, located at 219 S. Dearborn Street, Chicago, Illinois 60604. The date and location of the Fairness Hearing is subject to change by order of the Court, which will appear on the Court's docket for this Lawsuit and on the settlement website, www.McBrideESOPSettlement.com.

## THE OPPORTUNITY TO OBJECT TO THE SETTLEMENT

If you are a Class Member, you can object to the settlement if you do not like any part of it. To object, you must send your objection to the Court, at the United States District Court for the Northern District of Illinois, 219 S. Dearborn, Chicago, Illinois 60604 and to the Parties at the following addresses:

**To Class Counsel:**

| | |
|---|---|
| Mark G. Boyko<br>Bailey Glasser LLP<br>34 N. Gore, Suite 102<br>Webster Groves, MO 63119<br><br>(202) 463-2101<br>mboyko@baileyglasser.com | Thomas E. Clark Jr.<br>The Wagner Law Group, P.C.<br>439 South Kirkwood Road, Suite 215<br>Kirkwood, MO 63122<br><br>(314) 236-0065<br>tclark@wagnerlawgroup.com |

**To Defendants' Counsel:**

| Lars C. Golumbic | Michael L. Scheier |
|---|---|
| Groom Law Group, Chartered | Keating Muething & Klekamp PLL |
| 1701 Pennsylvania Ave NW, Suite 1200 | One East 4th Street, Suite 1400 |
| Washington, D.C. 20006 | Cincinnati, OH 45202 |

Objections must be filed with the Court on or before _____, 2022. Objections filed after that date will not be considered. Any Class Member failing to submit a timely objection will be deemed to have waived any objection they may have. Any untimely objection will be barred absent an order from the Court.

Objections must include: (1) the case name and number; (2) your full name, current address, telephone number and signature; (3) the reasons why you think the court should not approve the Settlement, along with any legal support known to you or your counsel; (4) whether your objection applies only to you, or to a specific subset of the Class, or to the entire Class; (5) whether you or your counsel intends to personally appear and/or testify at the Fairness Hearing; and (6) a list of any persons you or your counsel may call to testify at the Fairness Hearing in support of your objection; (7) the name and address of any attorney representing or advising you concerning your objection.

Anyone who files and serves a timely written objection in accordance with the instructions above may, but need not, also speak at the Fairness Hearing, either in person or through qualified counsel retained at his or her own expense, so long as their timely-filed written objection indicates their intent to do so. Any comment or objection that is timely filed will be considered by the Court even in the absence of a personal appearance by the Class Member or that Class Member's counsel.

The Court will consider Class Member objections in deciding whether to grant final approval. Class Members who do not comply with these procedures, or who miss the deadline to file an objection, lose the opportunity to have their objection considered by the Court or to appeal from any order or judgment entered by the Court regarding the Settlement.

### ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS FOR NAMED PLAINTIFFS

Class Counsel have litigated this case for approximately four years without compensation. They will seek attorneys' fees from the Settlement Amount, plus expenses they incurred in prosecuting the case, of no more than $5.5 million in fees and $979,000 in expenses, and Service Awards for the Named Plaintiffs from the Settlement Amount of up to $25,000 each ($75,000 total). The fee application and supporting papers will be filed on or before _____,

2022. After that date you may review the application and supporting papers at www.McBrideESOPSettlement.com. You may file an objection to the request for attorneys' fees and expenses and to the Service Awards under the same procedures for objecting to the Settlement. Any attorneys' fees, expenses and Service Awards approved by the Court, and the expenses incurred by the Settlement administrator in sending this Notice and otherwise administering the Settlement, will be paid from the Settlement Amount.

### GETTING MORE INFORMATION

You can visit the website at www.McBrideESOPSettlement.com, where you will find the full Settlement Agreement, the Court's order granting Preliminary Approval of the Settlement, this Notice, and other relevant pleadings and documents. If you cannot find the information you need on the website, you may also contact Class Counsel for more information.

**Please do not contact the Court, McBride, or GreatBanc. They will be unable to provide you with additional information.**

Dated: _____, 2022      By Order of the United States District Court
District Judge Matthew F. Kennelly

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **GREGORY GODFREY, et al.,** | **Case No. 1:18-cv-07918** |
| **Plaintiffs,** | |
| | **Judge Matthew F. Kennelly** |
| **v.** | |
| | **Magistrate Judge Michael T. Mason** |
| **GREATBANC TRUST COMPANY, et al.,** | |
| **Defendants.** | |

**PLAN OF ALLOCATION AND DISTRIBUTION OF**
**SETTLEMENT PROCEEDS TO SETTLEMENT CLASS MEMBERS**

1.      The Net Settlement Fund[1] shall be allocated to the Class Members and distributed in accordance with this Plan of Allocation.

2.      **Calculation of Class Member Benefits.** Each Class Member's share of the Net Settlement Fund ("Class Member Benefit") shall be determined through the following process:

a.   McBride shall report to the Settlement Administrator the number of vested Shares[2] held by each Class Member as of the following dates:  December 31, 2013; December 31, 2014; December 31, 2015; December 31, 2016; and November 30, 2017.  The total of each participants' vested Shares as of December 31, 2013, December 31, 2014, December 31, 2015, December 31, 2016, and November 30, 2017, shall be called the Class

---

[1] Unless otherwise defined in this Plan of Allocation, capitalized terms have the meanings ascribed to them in the Settlement Agreement.

[2] Shares is defined as shares of McBride & Son Capital, Inc. stock held inside the ESOP from December 31, 2013, through November 30, 2017.

1

Member's "Yearly Vested Shares." For purposes of the November 30, 2017 Yearly Vested Shares determination, participants who were cashed out of their ESOP accounts in October or November 2017 at the share price used in the 2017 Transaction will be deemed to have held on November 30, 2017, the greatest number of shares they held at any point from October 31, 2017, through November 30, 2017.

b.  The Settlement Administrator shall, for each Class Member, calculate the sum of that Class Member's Yearly Vested Shares. This sum shall be that Class Member's "Cumulative Vested Shares."

c.  The Settlement Administrator shall calculate the grand total of all Class Members' Cumulative Vested Shares. This sum shall be called the "Total Class Shares."

d.  The Settlement Administrator shall, for each Class Member, divide the Class Member's Cumulated Vested Shares by the Total Class Shares. The resulting number shall be called that Class Member's "Class Member Percentage."

e.  The Settlement Administrator shall, for each Class Member, multiply that Class Member's Class Member Percentage by the Net Settlement Fund amount. The resulting number shall constitute that Class Member's Class Member Benefit.

**3.    Form of Distribution.** Class Members with an undistributed account in the McBride & Son 401(k) Savings Plan ("401(k) Plan") shall receive a deposit of their Class Member Benefit directly into their 401(k) Plan accounts. Distribution of such deposits to the

Class Members' 401(k) Plan accounts shall be made in accordance with the terms of the 401(k) Plan. Class Members who do not have an undistributed account in the 401(k) Plan will be notified by the Settlement Administrator of their entitlement to receive their Class Member Benefit from the Net Settlement Fund and will be given an opportunity to elect whether to receive such payment directly or by means of a rollover to an eligible retirement plan. In the event that the Settlement Administrator fails to receive a response from a Class Member prior to distributions, the Settlement Administrator shall issue the distribution payable to the same payee as that designated by the Class Member with respect to his previous distribution from the ESOP.

4.   **Remainder.** Following the voidance of checks issued pursuant to the above, any remaining Settlement Funds shall, if greater than or equal to $100,000, be distributed to all Class Members as an additional payment distributed in accordance with the steps described in Section 2 above, and, if less than $100,000, be paid into the 401(k) Plan to cover administrative or advisory expenses not currently paid for by Defendants. If a second distribution is made to the Class, then, at the conclusion of such distribution, any remaining Settlement Funds shall be paid into the McBride 401(k) Plan to cover administrative costs.

# EXHIBIT B



## Overview of Our Firm:

ILYM Group, Inc is a class action administration, legal notification, and direct media outlets firm. With over 20 years of combined experience, our primary commitments are to client satisfaction, cutting edge technology and data management security, seamless case management and delivery of case expectations. Because, of our adherence to these commitments, ILYM Group, Inc is a one of the fastest growing, Woman Owned Business (NAPW), in the industry and has become the go-to firm for class action administration and legal notification. ILYM Group, Inc works with the top defense and plaintiff firms across the United States.

### AREAS OF EXPERTISE:

| | | |
|---|---|---|
| • Wage and Hour | • Consumer | • TCPA |
| • FLSA | • Finance | • Antitrust |
| • Insurance and Health Care | • ERISA | • Securities |

<u>Ramirez v JC Penney.</u>

- ERISA Case with a class size of 26,000.

<u>Kruger, et al. v. Novant Health</u>

- ERISA Case with a class size of $32 million.

<u>Abbott, et al. v. Lockheed Martin Corp.</u>

- ERISA Case with $62 million.

<u>Jacqueline Jones vs. I.Q. Data International, Inc.</u>

- TCPA Case with a class size of 93,993. Performed a reverse look-up to obtain Class Member information. We were able to obtain contact information for 93.82% of the Class that did not have a name or address.

<u>Reza Barani vs. Wells Fargo Bank, N.A.</u>

- TCPA Case with a class size of 82,874. Performed a reverse look-up to obtain Class Member information. We were able to obtain contact information for 87.84% of the Class that did not have a name or address.

<u>Kimberly Roberts, et al. v. T.J. Maxx of CA, LLC, et al.</u>

- Wage & Hour Case with a class size of 82,549.

<u>Robert Stone, et al. v. Universal Protection Services, LP, et al.</u>

- Wage & Hour Case with a class size of 75,351.

# ILYM | GROUP, Inc.

### SETTLEMENT ADMINISTRATION EXPERTS

ILYM Group, Inc. is operational 24/7 delivering true client and class member availability. Our call center is open 24/7/365 days a year, even holidays and is full digital, automated and multilingual. ILYM Group Inc.'s mail and media center is a state-of-the-art facility, fully digital and USPS integrated. We can accommodate cases of any size, from ten class members to multi-millions. ILYM Group, Inc. prides itself on its commitment to service, quality, value pricing and availability. We've committed ourselves to being the best Class Action Administration and Notification Company in our industry. Through our years of experience, ILYM Group, Inc. is dedicated to exceeding our client's expectations.

## PRE-SETTLEMENT CONSULTATION

➢ **Administration Consultation**: Meeting to determine objectives and expectations by both parties. All reporting and responsibilities will be agreed upon as will the seamless process to access data. We will also discuss the opportunities to identify class members with the proposed print and web-based media for optimum reach. Additionally, all expectations and delivery of those results will be planned for and mapped accordingly.

## MAILING AND NOTIFICATION

➢ **Fulfillment and Correspondence**: All provided settlement information will be published via United States Postal Service (USPS first class standards) to the proposed mailing class. Notifications will include a Claim ID and how to respond, or Opt-Out, based on the stipulations.

➢ **Reverse Lookup**: A confidential reverse phone or reverse cell lookup will provide; owner's name, location, address history, carrier, phone type (landline or cell phone) and more. Our reverse lookup is powered by an extensive database which includes hundreds of millions of cell phone, landline, residential and unlisted number. Our software collects data from multiple data sources and carriers across the US. Our average "hit ratio" ranges from 93% - 98%.

➢ **Creating Class Database**: All Data is verified and filtered to eliminate duplication against the United States Postal Service (USPS) National Change of Address (NCOA) database. ILYM Group, Inc. will also certify and validate with the Coding Accuracy Support System (CASS) and Track Your Class (TYC) for zone delivery.

➢ **Claim Forms**: ILYM Group, Inc. will email all claim forms, whenever possible, to have accurate reporting and tracking of all class requests. Emails will contain full text claim forms.

➢ **Translations**: When needed, ILYM Group, Inc. will translate notices to any language needed to reach Class members.

➢ **Remails**: Returned mail will be scanned, re-verified and re-mailed. All returned mail is data warehoused and reported to both parties' counsels in a weekly report.



**MEDIA & INTERNET BANNER ADS**
**Notice Publication**

➤ *Legal Notices*: ILYM Group, Inc. can provide a Media Proposal to maximize reach based on quantitative and qualitative methodologies.

➤ *Electronic Publication (Banner Ads)*: ILYM Group, Inc. will utilize Internet Banner Noticing efforts and web technologies for maximum reach via the World Wide Web.

➤ *Electronic Mail Notices*: ILYM Group, Inc. can email an estimated number of class members a full text notice. We are compliant with all search engines and Internet Service Providers (ISP) so that our emails are always "White List" accepted with minimal returns.

➤ *Reach*: Every case has its own proposed reach and exposure percentage. We filter, verify and scrub the data to improve reach results.

➤ *Services Included*: Analysis, Documentation, Research and Methodologies, Execution and Reporting.

**PROJECT MANAGEMENT**

➤ *Case Notification, Maintenance and Management*: ILYM Group, Inc.'s Senior Project Managers will provide all Account Management, Pre-Consultation to Case Conclusion, Reporting and Claims Processing. Design, negotiation and implementation, upon approval, of all forms and notices, all distribution reporting and filings with the court.

➤ *Claims Processing*: All claims can be submitted by USPS, Internet, Fax, and Email or Online submission. Claims will be processed and recorded with matching ILYM database ID's. E-claims will have corresponding records of intake. All deficient claims will be notified via USPS and make provisions for class member to re-submit claims.

➤ *Call Center*: ILYM Group, Inc. will support class members with a toll-free number to get the most up-to-date case settlement information. Customer service representatives will be available 24/7/365 as will recorded messages. All class members are given the options to best serve their needs and to receive case information.

➤ *Internet Support*: Class members can log on to a provided website and view, print or submit information and claim forms regarding the settlement. Frequently Asked Questions (FAQ's) will be provided as well. Class members may download the claim form with mailing and fax instructions provided on the form.

➤ *Objection and Request for Exclusion*: All objections and request for exclusion, opt-out, will be data warehoused, dated and reported. Postmarks will serve for exclusion dating and will be forwarded to both counsels' no more than 5 days post submission. Objection will be reviewed by ILYM Group, Inc. to determine the timeliness and basis of the objection. All information will be forwarded to both parties counsel, along with any representation information from the class member, within 5 days.



**DATA ADMINISTRATION AND NETWORK SECURITY**

➢ *Network Security*: All provided data is encrypted, stored and hosted in a Tier 4, SAS70 certified environment.

➢ *Database Administration:* To be developed with all electronically provided data. Class members will be assigned ILYM Group, Inc. internal tracking ID's to ensure all collected member data coincides with all received claims.

**DISTRIBUTION AND SETTLEMENT FUNDING**

➢ *Distribution and Management*: Upon receipt of settlement funds, ILYM Group, Inc. will open a QSF Account for proceeds of the Gross Settlement Payment. The deposited funds will then be managed per the Settlement Agreement. All funds will be settled with class members and counsel along with all federal and state income tax reporting.

➢ *Check Printing and Mailing*: Claims processed, quantified and approved by clients, will be processed for distribution. All checks will be printed and mailed via USPS first class standards. ILYM Group, Inc. will reissue checks in accordance with the Settlement Agreement.

➢ *Preparation, Filing and Reporting of Taxes*: ILYM Group, Inc. will ensure taxes are filed in accordance to all federal, state and local employment tax returns. All taxes associated with the settlement will be paid on time to tax authorities. All filings and returns (e.g., 1099s, W-2s, etc.) will be done properly and timely with the appropriate authorities. All QSF steps and obligations with federal, state and/or local law will be followed.

**CASE CONCLUSION**

➢ *Data Manager Final Report*: All database and electronic documentation will be sent in reports weekly and at the conclusion of the Administration engagement. Call center activity, e-claims, mailed, and faxed claims will be included in all reporting.

➢ *Project Manager Final Report*: All case and class related information will be provided on a weekly basis and at the conclusion of the Administration engagement. Mailing and media final analysis, exclusions, objections, and all other claims processing outcomes, status reports and final court documentations will be included.

➢ *Affidavits*: ILYM Group, Inc. will provide all affidavits in support of analysis and media reach, final approvals and settlement. Expert Testimony and Media Methodologies will be determined.

➢ *Document Retention*: Unless otherwise directed, ILYM Group, Inc. will destroy all undeliverable notices on the effective date of the settlement or when the case is no longer subject to appeal. ILYM Group, Inc. will correspond for one year after the final distribution or until the case is no longer subject to appeal.